**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IME WATCHDOG, INC.,

                       Plaintiffs,

         -against –

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, and IME COMPANIONS, LLC,

               Defendants.

 

SAFA GELARDI and IME COMPANIONS, LLC,

            Third-Party Plaintiffs,

-against –

CARLOS ROA and DANIELLA LEVI,

            Third-Party Defendants.

Civil Action No.: 1:22-cv-1032

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**

KOUTSOUDAKIS & IAKOVOU LAW
GROUP, PLLC
Steven Siegler, Esq.
40 Wall Street, 49th Floor
New York, New York 10012
*Attorneys for Defendants Safa Abdulrahim*
*Gelardi, Vito Gelardi, and IME Companions LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

LEGAL STANDARD.........................................................................................................3

    a.  Irreparable Harm ...............................................................................................3

    b.  Likelihood of Success ........................................................................................4

    c.  Serious Questions Test and Balancing of the Equities ..................................5

LEGAL ARGUMENT.......................................................................................................5

    A.  Plaintiff Has Not Met the Requirements for a Preliminary Injunction.........................5

      1.  Plaintiff Has Not Demonstrated Irreparable Harm ..................................5

      2.  Plaintiff Has Not Demonstrated a Likelihood of Success .......................7

        a.  DTSA and Misappropriations of Trade Secret Claims....................7
          (1) Plaintiff's Trade Secret Claims are Barred by the
              Statute of Limitations.................................................................8
          (2) Plaintiff's Client Lists and IME Report Forms Are Not
              Trade Secrets...........................................................................10

        b.  Unfair Competition ........................................................................12

        c.  Tortious Interference Claims ..........................................................13
          (1) Interference with Prospective Economic Advantage................13
          (2) Interference with Contract ......................................................15

        d.  Unjust Enrichment, Civil Conspiracy and Conversion Claims .....................16
          (1) Unjust Enrichment .................................................................16
          (2) Civil Conspiracy ....................................................................17
          (3) Conversion ............................................................................17

      3.  Serious Merits and Balancing of the Equities.......................................18

CONCLUSION.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F.Supp.2d 582 (E.D.N.Y. 2000) ..................... 13

*Am. Metro. Enterprises of New York, Inc. v. Warner Bros. Recs.*, 389 F.2d 903 (2d Cir. 1968)... 4

*Apollo Technologies Corp. v. Centrosphere Indus. Corp.*, 805 F.Supp. 1157 (D.N.J. 1992). ....... 5

*Arb Upstate Comms LLC v. R.J. Reuter, L.L.C.*, 93 A.D.3d 929 (3d Dep't 2012)...................... 17

*Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191 (E.D.N.Y. 2017) (Hall, J.) .................... 7, 10, 11

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474 (S.D.N.Y. 2010) ......... 14

*Black Radio Network, Inc. v. NYNEX Corp.*, 2000 WL 64874 (S.D.N.Y. Jan. 25, 2000)............ 15

*Carson Optical v. eBay Inc.,* 202 F.Supp.3d 247 (E.D.N.Y. 2016)............................................... 13

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115 (2d Cir. 2008). ......................... 14

*Citigroup Glob Mkts., Inc. v. VCG Special Opps Master Fund*, 598 F.3d 30 (2d Cir. 2010) ... 5,18

*CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011)…………………3

*Clark v. Childs*, 416 F. Supp. 3d 221 (E.D.N.Y. 2017)……………………………………..… 3,4

*Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492 (S.D.N.Y. 2015), aff'd, 668 F. App'x 373 (2d
    Cir. 2016) ...................................................................................................................... 16

*Donovan v. Cit Bank, N.A.*, No. 1:21-CV-4374, 2021 WL 3884218 (E.D.N.Y. Aug. 31, 2021)…3

*Eastin-Phelan Corp. v. Hal Roach Studios, Inc.*, 350 F.Supp. 1328 (S.D.N.Y. 1972).................. 5

*Express Gold Cash, Inc. v. Beyond 79, LLC*, 2019 WL 4394567 (W.D.N.Y. Sept. 13, 2019) .... 16

*F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814 (2d Cir. 1979) ....................... 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ............................ 3, 6

*Flexible Techs., Inc. v. World Tubing Corp.*, 910 F. Supp. 109 (E.D.N.Y. 1996) ........................ 6

*Forest City Daly Hous., Inc. v. Town of N. Hempstead,* 175 F.3d 144 (2d Cir.1999)................... 3

*General Elec. Co. v. American Wholesale Co*., 235 F.2d 60 (7th Cir. 1956); .............................. 5

*Great Lakes Motor Corp. v. Johnson*, 156 A.D.3d 1369 (2017). ................................................ 17

*Gulf & Western Corp. v. Craftique Productions, Inc*., 523 F.Supp. 603 (S.D.N.Y. 1981). ........... 4

*Henessey Food Consulting LLC v. Prinova Solus, LLC*, 2022 WL 160272 (N.D.N.Y. 2022) .... 14

*Hughes v. Ester C Co.,* 330 F.Supp.3d 862 (E.D.N.Y. 2018)...................................................... 16

*Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367 (S.D.N.Y. 2020) ................................. 7

*Italverde Trading, Inc. v. Four bills of Lading Numbered LRNNN 12095, et. al*, 485 F. Supp.2d 187 (E.D.N.Y. 2007) ................................................................................................ 15

*ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467 (2007)…….…………………………………12

*Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547 (E.D.N.Y. 1995)………..……………10

*Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir. 1979) ........... 4

*Jackson Dairy Inc. v. H.P. Hood & Sons Inc.*, 596 F.2d 70 (2d Cir. 1979) ........................ 3, 6, 18

*JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31 (2d Cir. 2015)……..……………3

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995) ........................ 12

*Katz v. Travelers*, 241 F. Supp. 3d 397 (E.D.N.Y. 2017)……………………………………..15

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996)................................................. 15

*Lesesne v. Brimecome*, 918 F. Supp. 2d 221 (S.D.N.Y. 2013) .................................................... 15

*Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634 (S.D.N.Y. 2012). ................. 12, 13

*Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, 49 Misc. 3d 1210(A) (N.Y. Sup., N.Y. Cnty, 2015) ....................................................................................................................... 13, 17

*Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259 (W.D.N.Y. 2018) ..................... 15

*Nat'l Coal. for Pub. Ed. & Religious Liberty v. Califano*, 446 F. Supp. 193 (S.D.N.Y. 1978)...... 4

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999)…………………………………10

*Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017)........................................... 16

*Phoenix Beverages, Inc. v. Exxon Mobil Corp.*, No. 1:12-CV-3771, 2015 WL 588826 (E.D.N.Y. Feb. 11, 2015)..................................................................................................................... 3

*Raja v. Burns*, No. 19-CV-01328, 2019 WL 1118044 (E.D.N.Y. Mar. 11, 2019) ....................... 3

*Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1998).......................................... 3

*State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249 (2002)......................................... 17

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007)……………………………………………3

*Synergetics USA, Inc. v. Alcon Lab'ys, Inc.*, 2009 WL 2016872 (S.D.N.Y. July 9, 2009)………9

*Temurian v. Piccolo*, No. 18-CV-62737, 2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) ………..11

*Thompson v. New York Cent. R. Co.*, 361 F.2d 137 (2d Cir. 1966)............................................... 4

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27 (2d Cir. 1995) ................................ 4, 7

*Travelex Currency Services, Inc. v. Puente Enters, Inc.*, 499 F.Supp.3d 385 (S.D.N.Y. 2020)... 14

*Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.*, 350 F.Supp.3d 143 (E.D.N.Y. 2018)…… ……………7

*U.S. v. Lange*, 312 F.3d 263 (7th Cir. 2002)……………………………………………   11

*U.S. v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980)........................................................ 3

*USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2d Cir. 1995) ......................... 3

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137 (2d Cir. 2005)............................. 4, 6

*Wickes v. Belgian Am. Educ. Found., Inc.,* 266 F. Supp. 38 (S.D.N.Y. 1967)............................. 4

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008)........................................ 6

*Zirvi v. Flatley*, 433 F.Supp.3d 448 (S.D.N.Y. 2020), *aff'd,* 838 F.App'x 582 (2d Cir. 2020), *cert. denied,* 142 S. Ct. 311 (2021)................................................................................. 9

**Statutes**

18 U.S.C. § 1836(b) ......................................................................................................... 6

18 U.S.C. § 1836(d) ......................................................................................................... 7

18 U.S.C. 1839(3) ............................................................................................................ 9

## PRELIMINARY STATEMENT

Defendants Safa Abdulrahim Gelardi ("Ms. Gelardi"), Vito Gelardi ("Vito"), and IME Companions, LLC ("IME Companions") (collectively the "Defendants"), submit this memorandum of law, along with the attached affidavit of Safa Geraldi, dated March 14, 2022 ("Gelardi Affidavit"), in opposition to Plaintiff's application for a preliminary injunction.

On February 25, 2022, Plaintiff commenced this lawsuit alleging: (i) violation of the Defend Trade Secrets Act of 2016; (ii) misappropriation of trade secrets under New York common law; (iii) unfair competition under the New York common law; (iv) tortious interference with contractual relations, business relations, and prospective economic advantage; (v) unjust enrichment; (vi) civil conspiracy; and (vii) conversion. [ECF Doc. No. 1]. Defendants filed their Answer and Counterclaims, as well as a Third-Party Complaint against Carlos Roa and Daniella Levi. [ECF Doc. No. 25].

Prior to the filing of the Answer, Plaintiff filed an application for a preliminary injunction against the Defendants. Plaintiff is requesting a mandatory injunction, i.e., one that changes the status quo by, among other things, shutting down an operating business and requiring disclosure of records outside the normal discovery process and without any safeguards in place. Plaintiff's application should be held to a higher standard because of these extraordinary requests for relief. Plaintiff's first hurdle is to demonstrate to the Court that it is or will be suffering immediate and irreparable harm. Plaintiff cannot overcome this obstacle because, quite simply, 1) the alleged harm has been ongoing for several years and Plaintiff is still enjoying success and, 2) any damage alleged to have been suffered can be adequately compensated by money damages. Since Plaintiff cannot prevail on this threshold issue, this application should be denied.

1

Secondly, Plaintiff's application falls flat because Plaintiff is unlikely to succeed on the merits of its claims, for several reasons. Chief among these is that Plaintiff has missed the statute of limitations on its Defend Trade Secret Act and misappropriation claims. Plaintiff knew or should have known that its confidential business information had been leaked in 2017 because a host of competitors – all using similar pricing, websites, forms, systems and processes – popped up out of nowhere in 2017 and 2018. Plaintiff knew or, in the exercise of due diligence should have known, that its alleged trade secrets were leaked in 2017 or, at the very latest, 2018. Why Plaintiff did not investigate these events (or merely look at its president's computer) is baffling. Plaintiffs were not diligent in pursuing their claims and now it is too late

Lastly, the balance of the equities favors Defendants. Putting Companions out of business at the start of this case would upend the life of Ms. Gelardi, her husband, and her three children without protect Plaintiff at all. Ms. Gelardi has stopped all communication with Adam Rosenblatt. Further, the evidence will show that the vast majority of Companion's business has been developed and grown through old fashioned hard work, dedication, and perseverance. If it is determined that Defendants did wrong (which they do not admit), they will compensate Plaintiff for its lost revenues which are attributable to Defendants unfair competition (if any).

For these reasons, and as set forth in more detail below, the Defendants respectfully request the Court to deny Plaintiff's application for a preliminary injunction

## STATEMENT OF FACTS

Defendants respectfully refer the Court to the Affidavit of Safa Gelardi, dated March 28, 2022, the Affidavit of Arnold Baum, dated March 15, 2022, and the Affidavit of Jason Zemsky, Esq., dated March 15, 2022, for a full recitation of the facts referenced herein.

**LEGAL STANDARD**

To prevail on a motion for a preliminary injunction, the party seeking relief must demonstrate, by a preponderance of the evidence: 1) irreparable harm; and 2) either (1) a likelihood of success on the merits or (2) sufficiently serious questions as to the merits to make them a fair ground for litigation and the balance of hardships tipping decidedly in favor of the moving party. *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015); *U.S. v. Siemens Corp.*, 621 F.2d 499, 505 (2d Cir. 1980) (citing *Jackson Dairy Inc. v. H.P. Hood & Sons Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)); *Forest City Daly Hous., Inc. v. Town of N. Hempstead,* 175 F.3d 144, 149-150 (2d Cir. 1999); *Donovan v. Cit Bank, N.A.*, No. 1:21-CV-4374, 2021 WL 3884218 (E.D.N.Y. Aug. 31, 2021) (Chen, J.) . "A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Clark v. Childs*, 416 F. Supp. 3d 221, 223 (E.D.N.Y. 2017) (Hall, J.) (*citing Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007); *CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 141 (E.D.N.Y. 2011) (Mauskopf, J.); *see also*, *Raja v. Burns*, No. 19-CV-01328, 2019 WL 1118044 (E.D.N.Y. Mar. 11, 2019) (Chen, J.).

a.    Irreparable Harm

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Clark*, *supra*, 416 F.Supp.2d at 223 (*citing Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *JBR, Inc.*, *supra*, 618 F.App'x at 33 ("Irreparable harm…is the 'sine qua non for preliminary injunctive relief.'") (*quoting USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995); *Phoenix Beverages, Inc. v. Exxon Mobil Corp.*, 12-CV-3771, 2015 WL 588826 (E.D.N.Y. Feb. 11, 2015) (Chen., J.). Without it, the Court need not consider any of the other injunctive relief factors. *Clark*, *supra*, 416 F.Supp.2d at 223; *see also*, *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2nd Cir.

1998). To satisfy the irreparable harm requirement, the moving party must demonstrate an "actual and imminent" injury that cannot be remedied by an award of money damages. *Clark*, *supra*, 416 F.Supp.2d at 223. Actual, imminent and immediate injury is generally injury that has occurred within a matter of days or weeks from the date the injunction is sought, not years. *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144-45 (2nd Cir. 2005). Further, "[i]f the injury complained of may be compensated by award of monetary damages, then an adequate remedy at law exists and no irreparable injury may be found as matter of law." *Gulf & Western Corp. v. Craftique Prods., Inc*., 523 F.Supp. 603, 607 (S.D.N.Y. 1981). The moving party must make a clear showing of the threat of irreparable harm. *Nat'l Coal. for Pub. Ed. & Religious Liberty v. Califano*, 446 F. Supp. 193, 195 (S.D.N.Y. 1978). A movant's failure to show that irreparable injury could result or that money damages would be insufficient is grounds for denial of the motion for a preliminary injunction. *Thompson v. N.Y. Cent. R. Co*., 361 F.2d 137, 146 (2nd Cir. 1966). Mere speculation that there is a possibility that the party seeking the injunction may in some unproved way suffer loss or damage is not sufficient. *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co*., 604 F.2d 755, 763 (2nd Cir. 1979).

  b. <u>Likelihood of Success</u>

   A party seeking a preliminary injunction must show there is a likelihood that it will succeed on its claims at trial. *Am. Metro. Enters. of New York, Inc. v. Warner Bros. Recs*., 389 F.2d 903 (2nd Cir. 1968). A mere possibility of success is not adequate. *See, e.g., Wickes v. Belgian Am. Educ. Found., Inc.,* 266 F. Supp. 38, 42 (S.D.N.Y. 1967). Where an injunction will alter, rather than maintain, the status quo, courts in the Second Circuit impose a higher standard. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2nd Cir. 1995). A mandatory injunction should only issue upon a "clear showing" that the moving party is entitled to the relief requested. *Id*. In

the absence of compelling evidence, or if the parties are in a serious dispute over conflicting issues of fact, the Court should not enter the injunction. *Eastin-Phelan Corp. v. Hal Roach Studios, Inc.*, 350 F.Supp. 1328 (S.D.N.Y. 1972); *General Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 60 (7th Cir. 1956); *Apollo Technologies Corp. v. Centrosphere Indus. Corp.*, 805 F.Supp. 1157 (D.N.J. 1992).

      c.    <u>Serious Questions Test and Balancing of the Equities</u>

In the absence of a showing of a likelihood of success on the merits, the Court may consider whether the moving party has raised "serious questions" going to the merits and also has shown that the balance of hardships weighs decidedly in the movants' favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010); *Jackson Dairy, Inc.,* 596 F.2d at 72. The "serious question" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 815-19 (2d Cir. 1979). The moving party must establish, by a preponderance of the competent, credible evidence, that "the balance of hardships tips decidedly" in its favor. *Jackson Dairy,* 596 F.2d at 72. The Court must decide, in its sound discretion, whether the entry of the injunction will harm the non-moving party more than it would help the moving party.

## **<u>LEGAL ARGUMENT</u>**

**A.**    **Plaintiff Has Not Met the Requirements for a Preliminary Injunction**

    1.    <u>Plaintiff Has Not Demonstrated Irreparable Harm</u>

There is no immediate and irreparable harm in this case. The alleged injury, i.e., the leaking of Watchdogs' business information, occurred in April 2017. Gelardi Aff., Par. 18-20; Affidavit of Daniella Levi, dated February 25, 2022 (ECF Doc. 8) ("Levi Aff. I"), Par. 44. According to Plaintiff and its witness, Carlos Roa, Adam Rosenblatt's alleged communications with Ms. Gelardi

have been going on for years. Levi Aff. I, Par. 27-29. These communications are now at an end (although, inexplicably, Watchdogs continues to employ Mr. Rosenblatt). Gelardi Aff., Par. 8; Levi Aff. I, Par. 57. The fact that Watchdogs claims to have just discovered Mr. Rosenblatt's conduct (which is highly unlikely), does not change the fact that Watchdogs' injuries date back to 2017 or, at the latest, 2018. Watchdogs is not suffering immediate harm. *Weight Watchers Int'l, Inc.*, 423 F.3d at 137. The lack of immediacy is fatal to Plaintiff's request for a preliminary injunction.

Further, Watchdogs is still going strong. Complaint, Par. 23 (Watchdogs has "grow[n] as a business and achieve[d] success and reputation it has today."). Damage to Watchdogs' business, if any, can be compensated by a disgorgement of profits and/or compensation for lost business based on the number of IME observer appointments Watchdogs lost unfairly to Companions (if any). Plaintiff concedes this point when it quantifies its damages as "more than $1,000,000 in revenue." Sealed Affidavit of Daniella Levi, dated February 25, 2022 ("Levi Aff. II), Par. 31. "If money damages would be adequate compensation, a preliminary injunction will not issue." *Flexible Techs., Inc. v. World Tubing Corp.*, 910 F. Supp. 109, 113 (E.D.N.Y. 1996); *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

Plaintiff has not met its burden of persuading the Court that a preliminary injunction is required in this case. Without a clear showing of irreparable harm, Plaintiff's entire application must be denied. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 22 (2008) (holding that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). We respectfully request the Court to deny Plaintiff's application for a preliminary injunction on this threshold issue.

2.      Plaintiff Has Not Demonstrated a Likelihood of Success

In order for the Court to grant Plaintiff's request for a mandatory injunction, i.e., shutting down Defendants' business and providing unfettered access to their computer systems and records prior to discovery, Plaintiff must persuade the Court in a clear and substantial way that it will succeed on its claims. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2nd Cir. 1995). Plaintiff cannot demonstrate a clear and substantial likelihood that it will succeed in its claims against Defendants, so injunctive relief is not appropriate.

a.   *DTSA and Misappropriation of Trade Secret Claims*

The Defend Trade Secrets Act authorizes a trade secret owner to file a civil action in federal district court seeking relief for misappropriation of a trade secret that "relates to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b). To prevail on such a claim, a plaintiff must prove that: (1) the plaintiff possessed a trade secret; (2) the trade secret related to a product or service used in, or intended for use in, interstate or foreign commerce; and 3) the defendant misappropriated the trade secret. *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020). Notably, there is a three-year statute of limitations period which begins to accrue when the act of misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). The statute of limitations begins to run when a plaintiff "knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used." *Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.*, 350 F.Supp.3d 143, 178 (E.D.N.Y. 2018) (Matsumoto, J.). Further, information will not be protected as a trade secret if it is publicly available information or if the plaintiff fails to take reasonable measures to protect it. *Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 195 (E.D.N.Y. 2017) (Hall, J.). As argued below, Plaintiff failed to bring its claims in a timely manner and has not proven that

7

its business information is a trade secret. Plaintiff has not demonstrated it has a clear and substantial likelihood of success on the merits of its DTSA and misappropriation of trade secret claims, and therefore its application for a preliminary injunction must be denied.

(1) Plaintiff's Defend Trade Secret Act and Misappropriation Claims are Barred by the Statute of Limitations

The evidence in this matter shows that Plaintiff and its owner, Ms. Levi, failed to act when she knew or should have known that her company's confidential information had been leaked in 2017 and 2018. She knew or should have known that Adam Rosenblatt was the leaker, as he was the only person besides her who had access to this information. Levi Aff. I, Par. 33. Ms. Levi knew or should have known that Adam Rosenblatt was leaking her confidential information because a host of competitors including Satellite, Companions, Guards, Smartdogs, and Sharks started springing up out of nowhere between late 2017 and early 2019. Gelardi Aff., Par. 60-65. It is impossible to fathom that an intelligent, successful, trailblazing attorney and entrepreneur – a SuperLawyer and one of the top attorneys in North America – who has run her own successful law firm for 19 years – did not have the common sense to at least inquire why all these competitors sprang up at the same time, with the similar prices, website, forms, processes and systems as Watchdogs. Gelardi Aff., Par. 5. All Ms. Levi had to do was look in Adam's computer for the answer. Aff. of Levi II, Par. 26. Defendants believe Ms. Levi knew she had claims against Companions for years but laid in wait for Companions to become successful. Now, when Companions is more of a threat (though still not the size of Watchdogs), Ms. Levi is looking to either get a piece of the business or a payout.

New York law governing the accrual of statutes of limitations is even less permissive for Plaintiff than the law under the DTSA. Statutes of limitations accrue for misappropriation claims under New York law when the defendant first discloses the trade secret or when the defendant first

makes use of the plaintiff's ideas. *Zirvi v. Flatley*, 433 F.Supp.3d 448, 461 (S.D.N.Y.

2020), *aff'd,* 838 F.App'x 582 (2d Cir. 2020), *cert. denied,* 142 S. Ct. 311 (2021) (citations

omitted). The case of *Synergetics USA, Inc. v. Alcon Lab'ys, Inc.*, 2009 WL 2016872 (S.D.N.Y.

July 9, 2009) is informative. In *Synergetics*, the plaintiff asserted that the defendant stole product

drawings from its predecessor. *Id.* at 1. The plaintiff had knowledge of the similarities of its

product and the defendant's product for a number of years. *Id*. However, the plaintiff did not sue

until after the three-year statute of limitations for misappropriation of a trade secret expired. *Id*.

The Court granted summary judgment to the defendant on this claim. Said the Court:

> Under New York law, a misappropriation of trade secret claim must
> be brought within three years of its accrual. New York follows the
> traditional definition of accrual—a cause of action accrues at the
> time and in the place of the injury. Misappropriation first accrues
> either when defendant discloses the trade secret or when he first
> makes use of plaintiff's ideas. The date of accrual may be extended
> under the continuing tort doctrine where the defendant has kept a
> secret confidential but continued to use it for commercial
> advantage. Where, however, the defendant discloses the secrets
> revealed to him, there can be no continuing tort of unlawful use.
> Thus, where the plaintiff had knowledge of the defendant's
> misappropriation and use of its trade secret, the continuing tort
> doctrine does not apply.

*Id*. at *2 (citations and internal citations omitted). In our case, Watchdog and its owner, Ms. Levi,

a smart and savvy businesswoman, entrepreneur and lawyer, knew that Companions, Guards,

Sharks, Smartdogs, and a host of other competitors seemingly sprang out of nowhere in late 2017

and 2018. The companies all had the same or similar pricing, website, forms, processes and

systems as Watchdogs. Gelardi Aff., Par. 58-70. Companions and the other competitors were

openly operating these businesses. Ms. Levi knew or should have known, in 2017 or 2018, at the

latest, that her business model for IME observation companies had been leaked. Watchdogs' cause

of action accrued in 2017 or 2018, at the latest. Plaintiff had an obligation to file its trade secret

lawsuits at that point, not almost five years later. By failing to assert its rights when the misappropriation became public knowledge, Watchdog is prevented from doing so now. Plaintiff does not have a likelihood of success on its DTSA and misappropriation claims.

(2) Plaintiff's Client Lists and IME Report Forms Are Not Trade Secrets

The Defend Trade Secrets Act considers only certain categories of information to be a "trade secret." These categories are listed as "financial, business, scientific, economic, or engineering information, including patterns, plans, compilations, program devices, designs, prototypes, methods, processes, procedures, programs, or codes, whether tangible or intangible." DTSA, 18 U.S.C. 1839(3). With respect to customer lists and other commonly known trade information, the Second Circuit and this District have long recognized that this information can only be treated as a trade secret if it is "not otherwise readily ascertainable." *Art & Cook, Inc.*, 416 F. Supp. 3d at 195 (*quoting N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999)) (Hall, J.). Thus, contact lists that contain little more than publicly available information are not protected under the DTSA or New York common law. *Id*. at 191; *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 557-58 (E.D.N.Y. 1995) (list of retail merchants not a trade secret where the customers were "openly engaged in business and generally known in the trade").

The case of *Art & Cook, Inc.* is illustrative. In that case, the alleged trade secret infringer took a list of buyer information for over 70 companies from his employer and took it to a competitor. *Id*. at 196. However, the court found that the list was little more than a compilation of publicly available information such as emails and phone numbers of buyers at well-known companies. *Id*. This information could be easily found on the internet. *Id*. The court thus found that the plaintiff could not demonstrate a likelihood of success on the merits on its DTSA and misappropriation claim. *Id*.

10

In the matter at bar, Plaintiff claims trade secret protection for, *inter alia*, "the identity of all its customers" and "their contact information." Complaint, Par. 61. However, the names, addresses, email addresses, and other contact information for personal injury law firms in the New York area are publicly available on the internet or can be provided by internet marketing firms for a fee. Gelardi Aff., Par. 51-53. Watchdogs, Companions, Satellite, Observers, Guards, Sharks, Smartdogs, and ZR Per Diem all have access to this information. Gelardi Aff., Par. 69. Plaintiff's customer lists are not trade secrets.

A second requirement for creating a trade secret is that the owner of the information must take reasonable measures to keep such information secret. *Id*. The case of *U.S. v. Lange*, 312 F.3d 263 (7th Cir. 2002), describes the "reasonable measures" required to convert information into a trade secret. In *Lange*, the company kept its information in a locked room, kept the number of copies of the information to a minimum, encrypted or coded its information, and labeled the information as protected intellectual property, among other things. *Id*. at 266. These measures were not taken here. In *Art and Cook*, *supra*, 416 F.Supp.3d at 197, the Eastern District found that the plaintiff did not take reasonable measures to protect its information because it did not ask its key employees to sign a handbook and non-disclosure agreement. Since the plaintiff failed to take this "imminently reasonable measure to protect its information," the court could not find that it was likely to succeed on the merits of this claim. *Id*.; *see also*, *ExpertConnect, L.L.C. v. Fowler*, No. 18-CV-4828, 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019) (reasonable steps included non-disclosure agreements and employee handbook prohibiting employees from misusing confidential information); *Temurian v. Piccolo*, No. 18-CV-62737, 2019 WL 1763022, at *11 (S.D. Fla. Apr. 22, 2019) (failure to have confidentiality agreement in place defeated any claim that the information was a trade secret).

In the instant matter, there is no evidence that Plaintiff required Mr. Rosenblatt to sign a nondisclosure agreement, confidentiality agreement, non-competition agreement, or other type of agreement which would prevent him from leaking his employer's information. Nor is there evidence of an employee handbook requiring confidentiality. Without these commonsense measures, there is no trade secret protection. Further, Watchdogs has maintained a website since 2011 that has, at various times, listed its prices, its services, its IME report template, a description of the IME observer process, its associations and memberships, and a list of its clients. Watchdogs' website still contains this information. Gelardi Aff., Par. 68. Under these circumstances, Plaintiff does not have a substantial likelihood of success on its DTSA and misappropriation claims.

####  b.   *Unfair Competition*

There are two common-law theories of unfair competition under New York law, misappropriation and palming off. *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007). To prove a misappropriation/unfair competition claim under New York law, Plaintiff must show (1) misappropriation of the labors and expenditures of another; and (2) bad faith. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2nd Cir. 1995). Bad faith is an essential element of an unfair competition claim. *See Id.*; *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012). Plaintiff has not demonstrated, in a clear and substantial way, a likelihood of success on this claim because (1) Defendants earned the vast majority of their success fairly through hard work and dedication; and (2) this claim is duplicative of the misappropriation claim.

As Defendant states in her affidavit, Ms. Gelardi grew her business organically with the help of Greg Elefterakis. She expended "months and months of hard work" to build her company to where it is now. She learned the business from the ground up. She worked nights and weekends attending CLE and NYSTA events, she personally visited offices of lawyers in hopes of gaining

them as clients, and she invested thousands of dollars into marketing. Gelardi Aff., Par. 34-44, 49-57. These were her own efforts and had nothing to do with Plaintiff. Defendants' hard work and resulting success is due to her hard work, dedication, perseverance and total commitment to her business and not, in any significant way, from Plaintiff's leaked information.

Additionally, an unfair competition claim based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action. *See Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F.Supp.2d 582, 599-600 (E.D.N.Y. 2000) (citations omitted) (treating unfair competition claims based on trade secret misappropriation as a single cause of action); *Carson Optical v. eBay Inc.,* 202 F.Supp.3d 247, 267-69 (E.D.N.Y. 2016) (dismissing an unfair competition claim that failed to state an independent cause of action under New York law). Here, Plaintiff's unfair competition claim is based on the same set of facts as the DTSA and misappropriation claims. In fact, Plaintiff's Memorandum of Law states, "[t]his idea and the forms Levi created were misappropriated by the Defendants to unfairly compete against Plaintiff," showing that the two claims are based on the same allegations. As such, Plaintiff has not shown a clear and substantial likelihood of success on this claim.

### c. *Tortious Interference Claims*

#### (1) Interference with Prospective Economic Advantage

In a tortious interference with prospective economic advantage claim, a plaintiff must show that (1) there was a reasonable expectation of entering into a valid business relationship; (2) the defendant shared that knowledge of that expectation; (3) a purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) due to this interference, the plaintiff suffered an injury. The essential element of this claim is that the complaining party would have obtained the economic advantage but for the defendant's interference. *Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, 49 Misc. 3d 1210(A) (N.Y. Sup. 2015).

13

To satisfy the third prong, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff. *Henessey Food Consulting LLC v. Prinova Solutions, LLC*, 2022 WL 160272 (N.D.N.Y. 2022) (*quoting B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (quotation omitted)).

For purposes of tortious interference with business relations under New York law, if a defendant has acted with a permissible purpose, such as ***normal economic self-interest***, wrongful means have not been shown. *Travelex Currency Services, Inc. v. Puente Enters, Inc.*, 499 F.Supp.3d 385 (S.D.N.Y. 2020). Here, Plaintiff has not shown that Defendants acted with any purpose other than "normal economic self-interest." *Id*. Next, "[a] claim for interference with advantageous business relationships must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). Plaintiff has not shown how Defendants' alleged tortious conduct caused Plaintiff to lose business. As discussed, there are numerous IME observer companies for law firms to choose from. In fact, they often use various IME observer companies simultaneously because they need someone at a specific time. If someone is not available at one IME observer company, they will move on to the next company without impairing any existing business relationship. Gelardi Aff., Par. 70. Further, Watchdogs is enjoying success and a good reputation. Complaint, Par. 23. Plaintiff will not be able to show it lost business based on anything other than market factors and fair, healthy competition.

Further, the "weight of authority . . . requires a plaintiff to identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013). Here, Plaintiff does not identify

any specific relationships that Defendants allegedly interfered with. Plaintiff has not specified the name or number of customers lost to Companions unfairly. *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259 (W.D.N.Y. 2018) (granting motion to dismiss where Plaintiff did not identify specific relationships); *Katz v. Travelers*, 241 F. Supp. 3d 397 (E.D.N.Y. 2017) ("Failure to identify specific business entities with which the Plaintiffs had business relationships is fatal to their tortious interference with business advantage claims"); *Black Radio Network, Inc. v. NYNEX Corp.*, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000) (concluding that the plaintiff's allegations of "lost customers" were insufficient to support a claim for tortious interference with prospective economic advantage). Plaintiff does not and cannot identify a single, specific customer, contract, or prospective business relationship that was "interfered with." As a result, Plaintiff has not satisfied its burden of showing a clear and substantial likelihood of success on its tortious interference with prospective economic advantage claim.

(2) Tortious Interference with Contract

To state a claim for tortious interference with contract, Plaintiff must allege (1) the existence of a valid contract between Plaintiff and a third party; (2) that Defendant knew of the contract; (3) that Defendant intentionally procured the third party to breach the contract; (4) an actual breach of the contract; and (5) damages. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996). By virtue of the industry, IME observer customers do not enter into agreements with IME observer companies to use their services exclusively for future IME observation appointments. The nature of the work is premised on convenience, i.e., which company has someone available at the specific time requested. Gelardi Aff., Par. 70.  Plaintiff does not have a likelihood of success on this claim as there are no contracts. *Italverde Trading, Inc. v. Four bills of Lading Numbered LRNNN 12095, et. al*, 485 F. Supp.2d 187 (E.D.N.Y. 2007) ("[U]nder New

15

York law, a plaintiff is required to show that a contract was actually breached to prevail on a claim of tortious interference with contract.") This claim will not survive a dispositive motion.

In any event, Plaintiff's claims for tortious interference are barred by the three-year statute of limitations, as discussed above. For these reasons, Plaintiff does not have a clear and substantial likelihood of success on the merits of their tortious interference claims.

### d.  *Unjust Enrichment, Civil Conspiracy, and Conversion Claims*

#### (1) Unjust Enrichment

To prevail on a claim of unjust enrichment, the plaintiff must show that "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 500 (S.D.N.Y. 2015), aff'd, 668 F. App'x 373 (2d Cir. 2016). "Unjust enrichment is a quasi-contract claim that contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Id.* Plaintiff has not shown a likelihood of success because this claim is duplicative of its other claims and Plaintiff has not shown any evidence that Defendant was enriched by the alleged conduct.

Plaintiff's unjust enrichment claim relies on the same facts as their other causes of action. Duplicative claims of this sort are subject to summary dismissal. *See Hughes v. Ester C Co.*, 330 F.Supp.3d 862, 877 (E.D.N.Y. 2018) (dismissing Plaintiffs' unjust enrichment claim because it duplicated conventional contract or tort claims); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (granting motion to dismiss where "Plaintiff's unjust enrichment claim relies on the same facts as his other causes of action"). Further, Plaintiff has not shown any evidence that Defendants were enriched from their alleged conduct. *Express Gold Cash, Inc. v. Beyond 79, LLC*, 2019 WL 4394567, at *9 (W.D.N.Y. Sept. 13, 2019) (holding that, "[a] plaintiff's allegation that a defendant received benefits, standing alone, is insufficient to establish a cause of action to

recover damages for unjust enrichment.") Plaintiff has not adduced any evidence, such as tax documents, profit and loss statements, or other documentary evidence, to show that it has suffered a decline in revenue, nor that Defendants have benefitted at Plaintiff's expense. Plaintiff has not demonstrated that it is clearly and substantially likely to succeed on this claim.

(2) Civil Conspiracy

New York does not recognize civil conspiracy as an independent cause of action, therefore, such a "claim" or "cause of action" may be asserted only when there are allegations of a primary tort, and in addition the following four elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Great Lakes Motor Corp. v. Johnson*, 156 A.D.3d 1369, 1371-72 (2017).

Because Plaintiff had not demonstrated a clear and substantial likelihood of success of its primary tort claims, its conspiracy claim must fail.

(3) Conversion

Conversion occurs when someone, "intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, 49 Misc. 3d 1210(A), at *4 (N.Y. Sup., N.Y. Cnty., 2015). "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249 (2002); *Arb Upstate Comms LLC v. R.J. Reuter, L.L.C.*, 93 A.D.3d 929, 931 (3d

Dep't 2012) (holding that, "[t]he subject matter of a conversion action must constitute identifiable tangible personal property, real property and interests in business opportunities will not suffice.").

Plaintiff incorrectly alleges that Defendants' access to Plaintiff's leaked information constitutes conversion. However, Adam Rosenblatt, Watchdogs' president, willingly provided this information to Defendants in an attempt to start a business with them, which Defendants rejected. Gelardi Aff., Par. 16-24. Rosenblatt often expressed how he did not like his boss, how she was impossible to work for, how he was underpaid, and how he wanted to start his own company. Gelardi Aff, Par. 18. Further, Plaintiff has not adduced evidence that Defendants took or interfered with the leaked information in derogation of Plaintiff's rights. The information was "copied rather than destroyed or taken." *Marsh USA, Inc.*, *supra*, at *4. For these reasons, Plaintiff has not satisfied its burden of persuasion that it clearly and substantially is likely to succeed on the merits of this claim.

3.   Serious Merits and Balancing of Equities

If the Court finds that Plaintiff has not shown a likelihood of success on the merits, it may still consider whether Plaintiff has raised "serious questions" going to the merits and also has shown that the balance of hardships weighs decidedly in the movants' favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). In this analysis, Plaintiff must also establish that "the balance of hardships tips decidedly" in its favor. *Jackson Dairy, supra*, 596 F.2d at 72. The Court must decide, in its sound discretion, whether the entry of the injunction will harm the non-moving party more than it would help the moving party.

In the matter at bar, the imposition of mandatory injunction shutting down Companions would cause severe hardship to Ms. Gelardi and her family. Ms. Gelardi and her husband run a family business and are reliant on their hard-earned income from Companions to support

themselves and their three children. Gelardi Aff., Par. 1-2. Putting Companions out of business while this case is pending would be an extraordinary measure as it would change the status quo and upend the lives of five people. Allowing Watchdogs unfettered access to Companions' proprietary and confidential information, without any safeguards in place and outside the normal discovery process, would likewise be a drastic and unnecessary measure.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's application for a preliminary injunction must be denied.

Dated: New York, New York
        March 28, 2022

Respectfully Submitted,

**KOUTSOUDAKIS & IAKOVOU
LAW GROUP, PLLC**

 /s/ Steven Siegler

By: Steven Siegler, Esq.
*Attorneys for Defendants*
40 Wall Street, 49th Floor
New York, NY 10005
(212) 404-8644
steven@kilegal.com