**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IME WATCHDOG, INC., | |
| Plaintiff, | Civil Action No.: 1:22-cv-1032 |
| -against – | |
| SAFA ABDULRAHIM GELARDI, VITO GELARDI, and IME COMPANIONS, LLC, | |
| Defendants. | |
| SAFA GELARDI and IME COMPANIONS, LLC, | |
| Third-Party Plaintiffs, | |
| -against – | |
| CARLOS ROA and DANIELLA LEVI, | |
| Third-Party Defendants. | |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF/THIRD-PARTY DEFENDANTS' APPLICATION FOR A PRELIMINARY INJUNCTION**

KOUTSOUDAKIS & IAKOVOU LAW GROUP, PLLC
Steven Siegler, Esq.
Madeline Perez, Esq.
40 Wall Street, 49th Floor
New York, New York 10012
*Attorneys for Defendants Safa Abdulrahim*
*Gelardi, Vito Gelardi, and IME Companions LLC*

## TABLE OF CONTENTS

**Contents**

**PRELIMINARY STATEMENT** ...............................................................................1

**PROCEDURAL HISTORY** ...................................................................................4

**LEGAL ARGUMENT** .........................................................................................6

**A.  Plaintiff's Renewed Attempt to Shut Down Companions Should be Rejected**................7

    1.  Plaintiff's *De Facto* Motion for Reconsideration Should be Rejected.......................7

    2.  Plaintiff's Attempt to Subvert the Law of the Case Should be Rejected………...............10

    3.  Plaintiff's Attempt to Gain a Second Bite at the Apple Should be Rejected……………10

**B. Plaintiff Has Still Not Shown Irreparable Harm**………………………………………11

    1.  Plaintiff's Witnesses Are Not Credible………………………………………………12

    2.  Plaintiff's "List" is Speculative and Inaccurate……………………………………… 15

    3.  Plaintiff's Reliance on Non-Binding, Factually Distinguishable Cases…………………16

**CONCLUSION** ...................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) ................................10

*Arminius Schleifmittel GmbH v. Design Indus.*, 2007 WL 534573 (M.D.N.C. Feb. 15, 2007) 4, 17

*Clark v. Childs,* 416 F.Supp.2d 221 (E.D.N.Y. 2017)..................................................................11

*Coleman v. New York City Transit Auth.,* 37 N.Y.2d 137 (1975)…………………………….12

*Curtis v. Greenberg*, No. 20-CV-824 (PKC) (LB), 2022 WL 173108 (E.D.N.Y. Jan. 19, 2022).10

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)...............................11

*Garvin GuyButler Corp. v. Cowen & Co.,* 155 Misc.2d 39 (1992)………………………….…18

*Gluco Perfect, LLC v. Perfect Gluco Prods., Inc.,* 2014 WL 4966102 (E.D.N.Y. 2014)……….18

*Golden Crust Patties, inc. v. Bullock,* 957 F.Supp.2d 186 (EDNY Jul. 16, 2013)……………18

*Hughes v. Ester C Co.*, 330 F.Supp.3d 862 (E.D.N.Y. 2018) ......................................................10

*Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2nd Cir. 1979)........11

*Johnson v. Holder*, 564 F.3d 95 (2d Cir. 2009)...........................................................................10

*Lee v. City Brewing Corp.,* 279 N.Y. 380 (1975)……………………………………………….12

*Mendez-Caton v. Caribbean Fam. Health Ctr.*, 340 F.R.D. 60 (E.D.N.Y. 2022).........................7

*National Union Fire Ins. Co. v. Stroh Cos.,* 265 F.3d 97 (2d Cir. 2001)………………………7

*Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) ......................7, 8, 9

*QBE Americas, Inc. v. Allen,* 2022 WL 889838 (S.D.N.Y. Mar. 24, 2022)……………………18

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995)............................................................7

*Thompson v. N.Y. Cent. R. Co.*, 361 F.2d 137 (2nd Cir. 1966) ...................................................11

*United States v. Robinson,* 560 F.2d 507 (2d Cir. 1977)…………………………………….…13

*Van Buskirk v. United Grp. of Companies, Inc.,* 935 F.3d 49 (2d Cir. 2019) ......................7, 8, 9

*WHIC LLC v. NextGen Laboratories, Inc*., 341 F.Supp.3d 1147 (U.S. D. Haw. 2018) ..........4, 17

**Other**

4 Handbook of Fed. Evid. § 607:7 (9th ed.)………………………………………………..11

Fed. R. Evid. 403………………………………………………………………………...12

## PRELIMINARY STATEMENT

Irreparable harm is the hurdle that Plaintiff simply cannot overcome. There is no irreparable harm to Plaintiff if Companions keeps operating during the pendency of this litigation. The Court so found on two occasions and should do so again.

On April 5, 2022, the Court entered an order permitting the parties to file supplemental briefs on a very narrow issue. The issue is whether Companions should be enjoined from operating the parts of Companions that were built on Defendants' alleged wrongful appropriation of Plaintiff's trade secrets.[1] The Court specified the evidence it wanted from Plaintiff. The Court wanted evidence of: 1) which customers Plaintiff lost due to alleged unfair competition, 2) whether Defendants disseminated Plaintiff's confidential information, and 3) whether Plaintiff was suffering long-term, extensive financial damage caused by the alleged unfair competition.[2] This evidence is what the law requires of a movant who seeks the extraordinary remedy of a mandatory preliminary injunction.[3]

Plaintiff did not submit this evidence of irreparable harm. Indeed, Plaintiff conceded that it cannot provide such evidence when it ignored the narrow scope of this inquiry and reverted to arguing that Companions should be shut down entirely.[4] Plaintiff's "supplemental brief" is actually a stealth motion for reconsideration or amendment/alteration of the Court's April 5, 2022 Order.

---

[1] Order of April 5, 2022 (Chen, J.) ("April 5 Order").

[2] Transcript of Hearing before the Hon. Pamela K. Chen, April 4, 2022 ("Tr."), attached to the Certification of Steven Siegler, Esq., dated April 15, 2022 ("Siegler Cert."), at 157:9-19, 158:1-5, 158:17-19, 169:24-170; *see also* Order of February 28, 2022 (Chen, J.) ("February 28 Order") ("Loss of trade secrets and client relationships does not establish irreparable harm absent a showing that there is an imminent risk of dissemination of trade secrets and that plaintiff's injuries are not compensable through an award of damages.")

[3] April 5 Order.

[4] "There is no way to slice and dice Defendants' operations…the only appropriate remedy is to completely shut down the business…." Plaintiff's Memorandum of Law in Further Support of its Motion for a Preliminary Injunction, filed April 8, 2022 (ECF No. 44), at p. 1-2.

Plaintiff's attempt to get the Court to reverse itself – without filing a formal motion for reconsideration – is improper.

In any event, the merits of Plaintiff's stealth motion for reconsideration rest upon the affidavits of biased, coerced, and compromised witnesses such as Mr. Adam Rosenblatt, Mr. Carlos Roa, and Ms. Daniella Levi.

- Mr. Rosenblatt is a serial liar who detested his boss and sought to destroy her company, IME Watchdog Inc. ("Watchdog"), for years. His efforts to destroy Watchdog predated his discussions with Safa Gelardi.[5] Once he was confronted by Mr. Rambam with evidence of his wrongful conduct, Mr. Rosenblatt panicked and started lying in order to save himself from possible jail time, a civil lawsuit, loss of his job, or worse.[6]

- Mr. Roa, the salesman with the "gift of gab,"[7] breached his duty of loyalty to Companions when he went to Watchdog with damaging information in January 2022 and continued to collect his paycheck from Companions until March 2022. He personally profited from the alleged wrongdoing, including during the January through March period.[8] Mr. Roa then took a job with Watchdog and defamed Ms. Gelardi, during the scope of his employment, in an effort to get Companions' observers to quit.[9]

---

[5] Tr. 155:12-14 (the Court deemed credible Ms. Gelardi's testimony that Adam Rosenblatt gave her Plaintiff's confidential information unsolicited and without payment).
[6] Tr. 146:7-23; *see also* Tr. 147:4-9 (Mr. Rosenblatt thought he would be arrested).
[7] Tr. 100:4-5.
[8] Tr. 100:20-25.
[9] Affidavit of Safa Gelardi, dated March 29, 2022 (ECF Docket No. 30), at par. 7-18.

- Ms. Levi has no personal knowledge of any of the relevant events. The only evidence she presents which is not rank hearsay is how she started Watchdog. Watchdog was not even her idea, it was Dr. Ronald Rosenblatt's idea.[10] She has no independent knowledge of what customers were allegedly stolen by Companions or whether Companions disseminated any of Watchdog's confidential information (it did not). She is conspicuously silent on whether the alleged misappropriation has put Watchdog on the brink of financial ruin.[11]

Beyond the lack of credibility of its witnesses, Plaintiff's "sampling and non-exhaustive" list of customers that Companions allegedly "stole" contains the names of customers that Companions won through fair competition, including Subin & Associates and Zemsky & Saloman. These entities have submitted affidavits which corroborate Ms. Gelardi's testimony in this regard.[12] The list also includes a firm owned by Ms. Gelardi's business partner's nephew, Nick Elefterakis.[13] It also includes 21 firms that are not clients of Companions.[14] Plaintiff's list appears to have been based off the panicked and confused recollections of Mr. Rosenblatt, who gave Plaintiff's information to other of its competitors and apparently cannot recall who went where.

Lastly, Plaintiff's application for an injunction suffers from a dearth of binding, reported precedent from the courts of the Eastern District and Second Circuit. Plaintiff's leading cases are an unreported district court opinion from the Middle District of North Carolina and a decision from

---

[10] Tr. 83:3-12.
[11] Plaintiff's Complaint states that Watchdog has "grow[n] as a business and achieve[d] success." Complaint, Par. 23.
[12] Affidavit of Arnold Baum, dated March 15, 2022 (ECF Docket No. 27); Affidavit of Jason Zemsky, dated March 15, 2022 (ECF Docket No. 28); Tr. 93:15-94:10.
[13] Tr. 92:14-16.
[14] Supplemental Affidavit of Safa Gelardi, dated April 15, 2022, at par. 4.

the District of Hawaii.[15] These cases are not binding upon this Court and are factually distinguishable.

For these reasons, as explained in more detail below, we respectfully request the Court to deny Plaintiff's renewed attempt to shut down Companions during the pendency of this action.

## **PROCEDURAL HISTORY**

On or about February 25, 2022, the Plaintiff filed this action accusing Defendants of misappropriation of trade secrets and unfair competition. (ECF Docket #1). Along with its Complaint, Plaintiff filed an ex parte motion for a temporary restraining order. (ECF Docket # 6-13). Plaintiff sought an injunction preliminarily enjoining Companions from operating its business, among other relief. (ECF Docket #6).

On February 28, 2022, this Court denied Plaintiff's application because it had not carried its burden. "Plaintiff has not introduced sufficient evidence to warrant the 'extraordinary remedy' of a temporary restraining order on those bases." Order of February 28, 2022 (Chen, J.). Said the Court:

> Loss of trade secrets and client relationships does not establish irreparable harm absent a showing that there is an imminent risk of dissemination of trade secrets and that plaintiff's injuries are not compensable through an award of damages.

Order of February 28, 2022 (Chen, J.). The Court then ordered Plaintiff to serve the Defendants by March 2, 2022, scheduled an in-person hearing for March 16, 2022. *Id.*

On March 8, 2022, Defendants appeared by their counsel, who requested an adjournment of the show cause hearing over Plaintiff's objection. (ECF Docket Nos. 21-22). The Court granted Defendants' request and set a new date of April 4, 2022. Order of March 10, 2022 (Chen, J.).

---

[15] Plaintiff relies upon *Arminius Schleifmittel GmbH v. Design Indus.*, 2007 WL 534573 (M.D.N.C. Feb. 15, 2007) and *WHIC LLC v. NextGen Laboratories, Inc.*, 341 F.Supp.3d 1147 (D. Haw. 2018).

4

On or about March 23, 2022, Defendants filed their Answer, Counterclaims and Third-Party Complaint against Daniella Levi and Carlos Roa. (ECF Docket No. 25). On March 29, 2022, Defendants filed for a preliminary injunction against Mr. Roa and Ms. Levi. (ECF Docket No. 30).

On April 4, 2022, the Court conducted a four-hour hearing on Plaintiff's application for a preliminary injunction. Plaintiff requested, among other things, that Companions be shut down during the pendency of this litigation. The Court rejected this argument, finding there was not sufficient evidence of irreparable harm. Order of April 5, 2022 (granting Plaintiff's motion for a preliminary injunction as to Defendants' anticipated franchising of IME Companions LLC and as to ongoing or future communications with Plaintiff's employees and agents but denying all other relief). However, on the issue of whether Companion is using allegedly misappropriated trade secrets in its current operations, and disseminating this information, such that Plaintiff is suffering irreparable harm, the Court requested supplemental briefing. Said the Court:

> With respect to Plaintiff's request to preliminarily enjoin Defendants from operating the parts of IME Companions LLC *that were built on Defendants' wrongful appropriation of Plaintiff's trade secrets*, the Court sets the following schedule for parties' supplemental briefs on the issue of irreparable harm allegedly supporting *that aspect* of the requested injunction.

Order of April 5, 2022 (emphasis added). This is the only issue which the supplemental briefing was supposed to address. *Id*.

In this regard, the Court gave Plaintiff very specific directions about the type of evidence it was looking for. "You need to tell me which clients, the magnitude of the loss, and why it actually meets the standard of irreparable harm….I think you know you have to focus more about the long-term effects on plaintiff's business." Tr. 169:24-170. The Court reiterated these instructions, asking Plaintiff to 1) identify "those clients that they've lost to IME Companions," Tr. 158:1-5, and 2) show that Plaintiff is "losing so much money that they may go out of business," Tr. 157:9-

19, 158:17-19. In its Order of April 5, 2022, the Court gave Plaintiff further guidance when it reasoned that:

> a preliminary injunction is 'an extraordinary remedy never awarded as of right,' and it is not appropriate where losses are compensable by monetary damages. The Court reiterates that no presumption of irreparable harm arises upon the determination that a trade secret has been misappropriated. 'We have previously observed that 'the loss of trade secrets cannot be measured in money damages' where that secret, once lost, is 'lost forever.' Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. That reading is not correct.... Where a misappropriator seeks only to use those secrets-without further dissemination or irreparable impairment of value-in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.'

Order of April 5, 2022 (internal citations omitted).

On or about April 8, 2022, Plaintiff submitted a "supplemental brief" which requested the exact same relief the Court previously denied, *i.e.,* the complete shutdown of Companions. Plaintiff specifically argued that "[t]here is no way to slice and dice Defendants' operations…the only appropriate remedy is to completely shut down the business…." Plaintiff's Memorandum of Law in Further Support of its Motion for a Preliminary Injunction, filed April 8, 2022 (ECF No. 44), at p. 1-2.

## LEGAL ARGUMENT

Plaintiff's concession that it cannot "slice and dice" Companions is fatal to its renewed application for a preliminary injunction. Plaintiff has conceded this point because it has no evidence as to which customers were lost due to the Companions' alleged misappropriation of trade secrets, whether Companions has disseminated its confidential information to others (it has

not), and what the long-term financial effects of the alleged misappropriation have been. The Court gave Plaintiff the opportunity to present this evidence of irreparable harm, and Plaintiff failed to do so. This should end the Court's inquiry.

Instead of addressing the Court's concerns and following the Court's directions, Plaintiff filed what is essentially a *de facto* motion to reconsider, reargue, amend or alter the Court's decision. This is wholly improper and a waste of the Court's time and resources. Even assuming, *arguendo*, that the Court permits Plaintiff to proceed with its stealth motion for reconsideration, its arguments as to irreparable harm rely upon a rogues' gallery of biased, coerced, and compromised witnesses, an inaccurate "list" of purportedly stolen clients, and non-binding case law from sister courts which are factually distinguishable from the matter at bar.

We respectfully request the Court to deny Plaintiff's renewed and inappropriate motion to shut down Companions during the pendency of this action.

**A.      Plaintiff's Renewed Attempt to Shut Down Companions Should be Rejected**

1.   Plaintiff's *De Facto* Motion for Reconsideration Should be Rejected

A motion for reconsideration or reargument under Local Civil Rule 6.3 is subject to a "strict" standard. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such a motion is an "extraordinary request that is granted only in rare circumstances." *Van Buskirk v. United Grp. of Companies, Inc.,* 935 F.3d 49, 54 (2d Cir. 2019). A motion for reconsideration may only be granted where the moving party "shows that the court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion." *Mendez-Caton v. Caribbean Fam. Health Ctr.*, 340 F.R.D. 60, 74 (E.D.N.Y. 2022). The moving party may not adduce new facts, issues or arguments not previously presented to the court. *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (citing *Polsby v. St. Martin's Press, Inc.,*

2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). "No affidavits shall be filed by any party unless directed by the Court." Local Civil Rule 6.3. The reason for the rule prohibiting the proffer of new evidence is simple:

> 'to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.' A party making such a motion 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.'

*Polsby v. St. Martin's Press, Inc*., 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal citations omitted). For example, in the Van Buskirk decision, supra, the moving party provided the court with sworn declarations on the relevant issue, for the first time, upon its motion for reconsideration. Id. The Second Circuit Court of Appeals upheld the District Court's denial of the motion for reconsideration. The Court reasoned as follows:

> [S]ince Plaintiffs had not provided the district court with that evidence until the motion for reconsideration — and did not explain why they failed to provide the declarations in response to the order to show cause — the district court overlooked nothing at the time of the dismissal.

*Van Buskirk, supra*, 935 F.3d at 54.

In the matter at bar, Plaintiff has made *a de facto*/stealth motion for reconsideration because it is asking the Court for the very relief that the Court previously denied, *i.e.*, to shut down Companions completely during the pendency of this action.[16] *See* Court's Order of April 5, 2022 (granting Plaintiff's motion for a preliminary injunction as to Defendants' anticipated franchising of IME Companions LLC and from having any ongoing or future communications with Plaintiff's employees and agents but denying all other relief). This *de facto*/stealth motion is procedurally

---

[16] "There no way to slice and dice Defendants' operations…the only appropriate remedy is to completely shut down the business…." Plaintiff's Memorandum of Law in Further Support of its Motion for a Preliminary Injunction, filed April 8, 2022 (ECF No. 44), at p. 1-2.

and substantively infirm. The sole purpose of the supplemental briefing was to allow Plaintiff an opportunity to show that it will suffer irreparable harm if Defendants are allowed to continue operating the parts of IME Companions LLC that were built on "Defendants' [alleged] wrongful appropriation of Plaintiff's trade secrets." Order of April 5, 2022 (Chen, J). Specifically, the Court directed Plaintiff to provide competent evidence that 1) identifies "those clients that they've lost to IME Companions," Tr. 158:1-5, and 2) shows Plaintiff is "losing so much money that they may go out of business," Tr. 157:9-19, 158:17-19. The Court gave Plaintiff clear instructions in this regard:

> You need to tell me which clients, the magnitude of the loss, and why it actually meets the standard of irreparable harm….I think you know you have to focus more about the long-term effects on plaintiff's business.

Tr. 169:24-170. Plaintiff did not produce a scintilla of evidence on these points. Instead, Plaintiff ignored the Court's instruction and injected new "facts" (from biased, compromised, and coerced witnesses) which are not only irrelevant to the Court's inquiry but self-serving, biased, conclusory, and fabricated. *See generally*, Affidavits of Adam Rosenblatt and Carlos Roa, filed April 8, 2022. This attempt to "plug the gaps" and "open a dialogue" to "advance new theories or adduce new evidence" to sway the Court from its initial ruling should not be countenanced. *Polsby*, 2000 WL 98057, at *1. Further, Plaintiff has no explanation why it did not submit these affidavits the first time around. *Van Buskirk*, *supra*, 935 F.3d at 54.

The Court has adjudicated the issue of whether Companions will continue to operate during the pendency of this case. If Plaintiff wishes to make a motion for reconsideration, it should do so at the proper time and in the proper manner – not in a stealth submission to the Court. We respectfully request that the Court deny Plaintiff's renewed application to shut down Companions during the pendency of this action.

2.  Plaintiff's Attempt to Subvert the Law of the Case Should be Rejected

The Court decided on April 5, 2022, to let Companions continue to operate during the pendency of this case because Plaintiff failed to adduce sufficient evidence of irreparable harm. Order of April 5, 2022 (Chen, J.). This decision is now the "law-of-the-case." Under this doctrine, the Court's decision is binding precedent to be followed throughout this litigation, unless "cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009); see also *Hughes v. Ester C Co.*, 330 F.Supp.3d 862, 875–76 (E.D.N.Y. 2018) (Chen, J.). The matter at bar has not proceeded to a Rule 16 conference, let alone discovery. There has been no exchange of records and no witness or party depositions. Plaintiff's self-serving, biased, conclusory and non-factual affidavits do not present a "cogent and compelling" reason for the Court to stray from its prior decisions. We respectfully request that the Court deny Plaintiff's renewed application to shut down Companions on the basis of the law-of-the-case doctrine.

3.  Plaintiff's Attempt to Gain a Second Bite at the Apple Should be Rejected

To the extent Plaintiff's supplemental brief is a *de facto* motion to alter or amend of judgment under Fed. R. Civ. P. 59, the Court should reject it out of hand. As Your Honor stated earlier this year in the matter of *Curtis v. Greenberg*, No. 20-CV-824 (PKC) (LB), 2022 WL 173108 (E.D.N.Y. Jan. 19, 2022), "'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Curtis, supra*, at *2 (citing *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

In the matter at bar, the Court gave Plaintiff an opportunity to show that it will suffer irreparable harm if Companions is allowed to continue operating the parts of IME Companions LLC "that were built on Defendants' [alleged] wrongful appropriation of Plaintiff's trade secrets."

10

Order of April 5, 2022 (Chen, J.). Instead of presenting any competent evidence on this point, however, Plaintiff has presented self-serving, biased, conclusory and fabricated affidavits from coached, coerced, and compromised witnesses. These affidavits prove nothing – other than Plaintiff will go to any length to destroy Companions and/or force it to pay a large settlement or royalty payments – and if that includes having Ms. Gelardi's family and all of her employees thrown into the street, so be it. We respectfully request the Court to deny, once again, Plaintiff's motion to shut down Companions during the pendency of this action.

**B. Plaintiff Has Still Not Shown Irreparable Harm**

Plaintiff has still not met its burden of demonstrating irreparable harm. We respectfully request the Court to deny Plaintiff's application for the third time.

This Court, in its Order of February 28, 2022, found that Plaintiff had not carried its burden of showing irreparable harm as to the continued operation of Companions. The Court stated that a loss of trade secrets and client relationships "does not establish irreparable harm absent a showing that there is an imminent risk of dissemination of trade secrets and that plaintiff's injuries are not compensable through an award of damages." *See Faiveley Transp. Mahmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009). Further, "even if the court finds that Plaintiff has shown that there is an actual and imminent risk that Defendants will use Plaintiff's trade secrets..., the harm that would result is measureable and compensable through an award of damages after trial." *Liberty Power Corp., LLC v. Katz,* No. 10-CV-1938 (NGG) (CLP), 2011 WL 256216, at *6 (E.D.N.Y. Jan. 26, 2011).

Later, in the Court's Order of April 5, 2022, the Court again found that irreparable harm does not exist solely because trade secrets may have been misappropriated:

> 'We have previously observed that 'the loss of trade secrets cannot
> be measured in money damages' where that secret, once lost, is 'lost

11

forever.' Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. That reading is not correct.... Where a misappropriator seeks only to use those secrets-without further dissemination or irreparable impairment of value-in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.'

Order of April 5, 2022 (internal citations omitted). Plaintiff has provided no additional evidence of irreparable harm, apart from conclusory, speculative and self-serving testimony from biased, coerced, and compromised witnesses. The Court must find, again, that irreparable harm does not exists.

1. Plaintiff's Witnesses Are Not Credible

Plaintiff's renewed application is based on two completely new and different affidavits from Ms. Levi and Mr. Roa, and an initial affidavit from Adam Rosenblatt. Plaintiff has not explained, or even attempted to explain, why these affidavits were not provided in its first application. The Court should not even consider these affidavits because the witnesses have not testified in open court and been cross-examined. In any event, these witnesses are not credible.

Certain matters such as a financial interest in the outcome, a business relationship, or employment potentially give rise to a witness's untrustworthy partiality. See 4 Handbook of Fed. Evid. § 607:7 (9th ed.). *See also Lee v. City Brewing Corp.*, 279 N.Y. 380, 384 (1975) (stating it is "firmly established, that an actor in the transaction at issue, having a motive to shield himself from blame, would be an interested witness"); *Coleman v. New York City Transit Auth.*, 37 N.Y.2d 137, 142–43 (1975) (holding the bias of a witness in favor of the party calling him may be shown by evidence of family, business or close social relationships to affect his or her credibility and it

is for the same purpose that it is competent to show the interest of a witness in the case). Because a witness's bias and interest in the matter can put his or her trustworthiness into question, Federal Rule of Evidence 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. *See also United States v. Robinson*, 560 F.2d 507, 514 (2d Cir. 1977) (stating the trial judge must weigh the probative value of the evidence against its tendency to create unfair prejudice and his determination will rarely be disturbed on appeal).

In the matter at bar, Plaintiff's renewed application for a preliminary injunction to shut down Companions entirely during the pending of this action is based on false and fabricated testimony from biased, coerced, and compromised witnesses. This "rogues' gallery" of characters cannot be believed.

### a)   Adam Rosenblatt's Credibility

Adam Rosenblatt is an unreliable witness. Mr. Rosenblatt continuously betrayed his employer, Watchdog, by breaching his fiduciary duties for years on end. His misconduct predated his involvement with Ms. Gelardi. He and his father, Ronald Rosenblatt approached Ms. Gelardi in late 2016 and 2017 to ask for help in starting a competing business to Adam's employer. Tr. 31:18-25. Adam wanted to start a competing business because he detested his employer. Gelardi Aff., par. 18. Adam Rosenblatt then gave Ms. Gelardi confidential Watchdog material voluntarily and without payment or promise of payment. The Court so found. Tr. 155:12-14 (the Court deemed credible Ms. Gelardi's testimony that Adam Rosenblatt gave her Plaintiff's confidential information unsolicited and without payment). When he failed to interest Ms. Gelardi in helping him start a competitor to Watchdog, he shopped Watchdog's confidential information to Law

13

Cash, which eventually started a company called IME Guards with Jamal Aaron, a formed Watchdog. Gelardi Aff., Par. 63. Mr. Rosenblatt's feeble attempt to lay blame on Ms. Gelardi for these actions – which occurred years before any Zelle payments – makes him a uniquely unreliable source of information.

Further, Mr. Rosenblatt's Declaration – which, tellingly, was not proffered in Plaintiff's initial application – is coerced and compromised. On March 1, 2022, two private investigators interrogated Mr. Rosenblatt in his office. Tr. 146:7-23. The interrogation was a surprise. The interrogators set a trap for Mr. Rosenblatt by getting him to lie about his actions. He initially denied everything. When confronted with documentary evidence of his wrongdoing, Mr. Rosenblatt panicked and started lying in order to save himself from possible jail, a civil lawsuit, loss of his job, or worse. Tr. 147:4-9 (Mr. Rosenblatt thought he would be arrested). Is it any surprise that he began exaggerating, lying, and inventing facts out of whole cloth? Mr. Rosenblatt is a terrified, desperate man whose testimony cannot be trusted.

### b) *Carlos Roa's Credibility*

Carlos Roa is a biased witness motivated by greed. His testimony cannot be relied upon. Carlos is a sweet-talker, a salesman with the "gift of gab." Tr. 100:4-5. He breached his duty of loyalty to Companions when he approached its competitor, Watchdog, in January 2022. He then collected a paycheck from Companions for the next two months, all while plotting to join Watchdog. He profited off the alleged wrongdoing. Tr. 100:20-25. He provided Watchdog with information damaging to his employer in return for a job. Mr. Roa then defamed Ms. Gelardi, during the scope of his employment by Watchdog, in an effort to get Companions' observers to quit. Affidavit of Safa Gelardi, dated March 29, 2022 (ECF Docket No. 30), at par. 7-18. Now he

works for Watchdog and has every motivation to keep his employer happy. This is an individual motivated by greed. As such, Mr. Roa cannot be trusted as a credible witness.

>    c) *Daniella Levi's Credibility*

Daniella Levi's testimony is misinformed. Ms. Levi has no independent knowledge of what customers were allegedly stolen by Companions or whether Companions disseminated any of Watchdog's confidential information (it did not). Supplemental Gelardi Aff., par 14. She only knows what Adam Rosenblatt and Carlos Roa told her. Ms. Levi is conspicuously silent on whether the alleged misappropriation has put Watchdog on the brink of financial ruin. From her silence on this point, the Court can infer that Watchdog is doing quite well. Plaintiff's Complaint confirms this. Complaint, Par. 23. Watchdog is not on the brink of financial ruin and any alleged misappropriate of trade secrets can be compensated by money damages. Further, Ms. Levi is seeking $2,000,000 in damages from Ms. Gelardi and has the motivation to exaggerate her claims. Her testimony, to the extent it even comes from her personal knowledge, is not credible. Her comments on Ms. Gelardi's testimony are improper, prejudicial and should be disregarded. *See* Supplemental Declaration of Daniella Levi, dated April 8, 2022, par. 8-16.

>    2. Plaintiff's "List" is Speculative and Inaccurate

Plaintiff's "sampling and non-exhaustive" list of customers that Companions allegedly "stole" is wildly inaccurate. It contains the names of customers that Companions won through fair competition, including Subin & Associates and Zemsky & Saloman. The list also includes at least 21 law firms that are not even clients of Companions. This list does not show that irreparable harm exists.

Plaintiff claims it lost its biggest customer, Subin & Associates, to interference by Adam Rosenblatt and Safa Gelardi. *See* Declaration of Daniella Levi, dated April 8, 2022, at Par. 36 and

Exhibit B to same. But the evidence shows that this customer was won fairly by Companions in January 2018. Defendants have submitted the sworn affidavit of the Chief Financial Officer of Subin & Associates to establish this fact. Mr. Arnold Baum testified in his affidavit that:

> [o]n or about January 2018, the firm was introduced to Safa Gelardi through a contact named Greg Elefterakis. She introduced a new IME service to us called IME Companions. My firm was using IME Watchdog. We were unhappy with their service. We started using IME Companions and have been ever since. We are happy with the service from IME Companions.

Affidavit of Arnold Baum, dated March 15, 2022 (ECF Docket No. 27). Mr. Baum, who is a customer with no stake in the outcome of this litigation, corroborated Ms. Gelardi's testimony. Tr. 93:14-94:10. Defendants also obtained the affidavit of another client who Plaintiff claims was stolen by Companions, the law firm of Zemsky & Salomon. Jason Zemsky, another disinterested witness, averred that his firm was unhappy with Watchdogs, so he switched to another competitor, IME Guards. He then took his business to IME Companions after a visit from Safa Gelardi and Carlos Roa. Affidavit of Jason Zemsky, dated March 15, 2022 (ECF Docket No. 28). A third name on the "list" is the Elefterakis Elefterakis & Panek firm, which is Ms. Gelardi's business partner's nephew, Nick Elefterakis. Tr. 92:14-16. The list also includes 21 firms that are not clients of Companions. Supplemental Affidavit of Safa Gelardi, dated April 15, 2022, at par. 4. Plaintiff's list appears to have been based off the panicked and confused recollections of Mr. Rosenblatt, who gave Plaintiff's information to other competitors and apparently cannot recall who went where. Tr. 37:9-15; 145:6-11; 148:11-13.

3.   Plaintiff's Reliance on Non-Binding, Factually Distinguishable Cases

The case law relied upon by Plaintiff is non-binding, unpersuasive and factually distinguishable.

Plaintiff relies primarily on two decisions from sister courts outside the Eastern District of New York and the Second Circuit. Plaintiff relies on the holding in *WHIC LLC v. NextGen Laboratories, Inc.*, 341 F.Supp.3d 1147 (D.Haw. 2018) to prove that a loss of goodwill and reputation is irreparable. This case is substantially different than the case at hand. There, defendants were former employees of Plaintiff who breached their fiduciary duty to their company by telling their clients to follow them to a new business, where the new business's clients were all former clients of Plaintiff. *Id*. at 1165. They did this by falsely telling the clients that the former business was no longer operating and that the clients would ***need*** to come to the new business. *Id*. This is not what happened in this case. Further, in *WHIC*, the court ordered that defendants must stop servicing the former clients of Plaintiff – it did not cease all business operations of Defendant. *Id*. at 1167.

Next, Plaintiff incorrectly relies on a North Carolina case, *Arminius Schleifmittel GmbH v. Design Industries,* to show that if defendants invoke their Fifth Amendment privilege to self-incrimination, then the court must grant a preliminary injunction because Plaintiff's claims could not be responded to or denied. *Arminius Schleifmittel GmbH v. Design Indus*., 2007 WL 534573 (M.D.N.C. Feb. 15, 2007). In this case, Defendant Gelardi invoked her Fifth Amendment privilege solely to the allegations surrounding the Zelle payments. Everything else asked by Plaintiff was responded to by Ms. Gelardi. Plaintiff incorrectly misstated the holding of this case and as a result, this case cannot be used to support their position.

In addition, the *Arminius Schleifmittel GmbH* case involves a unique product invented by the plaintiffs and used by the defendants. Defendants were thus the only competitor on the market once they misappropriated plaintiff's product. However, in the case at hand, there are multiple competing businesses on the market. *Id*. at *5-6. Plaintiff cannot prove that any loss on their end

is a gain for Defendants. If IME Companions must be shut down, then so do all of the other competitor businesses such as IME Guards and IME Sharks. But that would be absurd. It would not be in the public interest for the Court to find irreparable harm in this case.

Plaintiff's reliance on its other cases is misplaced. *QBE Americas, Inc*., *Flip Flop Shops Franchise Company LLC*, and *Garvin Guybutler Corp*., each involve employees leaving their employer with confidential company information in order to start a new business where an injunction would halt the new business from operating. *QBE Americas, Inc. v. Allen*, 2022 WL 889838 (S.D.N.Y. Mar. 24, 2022); *Flip Flop Shops Franchise Company LLC v. Neb*, 2016 WL 9275403; *Garvin GuyButler Corp. v. Cowen & Co.,* 155 Misc.2d 39 (1992). Here, Companions has been operating for more than five years, and none of the Defendants are prior employees of Watchdog. Similarly, the cases of *Mister Softee*, *Gluco Perfect, LLC*, and *Golden Crust Patties, Inc*, are otherwise distinguishable as they each deal specifically with trademark infringement. *Mister Softee v. Diaz*, 2020 WL (EDNY Jul. 2, 2020); *Gluco Perfect, LLC v. Perfect Gluco Prods., Inc*., 2014 WL 4966102 (E.D.N.Y. 2014); *Golden Crust Patties, inc. v. Bullock*, 957 F.Supp.2d 186 (EDNY Jul. 16, 2013). Plaintiff uses these cases to allege that any loss which is difficult to measure is generally irreparable. This may be so in a trademark infringement case, but that is not the case here. Plaintiff has put many cases before the Court that do not apply to this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to deny Plaintiff's renewed application to shut down Companions completely during the pendency of this case.

18

Dated:  New York, New York
        April 15, 2022

                                    Respectfully Submitted,

**KOUTSOUDAKIS & IAKOVOU**
**LAW GROUP, PLLC**


 /s/ Steven Siegler
_____
By: Steven Siegler, Esq.
40 Wall Street, 49th Floor
New York, NY 10005
(212) 404-8644
steven@kilegal.com
*Attorneys for Defendants/Third-Party*
*Plaintiffs*

19