UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

IME WATCHDOG, INC.

                                       Plaintiffs,

            -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
And IME COMPANIONS, LLC,

                           Defendants.

———————————————————————————

SAFA GELARDI and IME COMPANIONS, LLC

               Third-Party Plaintiffs,

         -against

CARLOS ROA and DANIELLA LEVI,

               Third-Party Defendants

———————————————————————————

**ANSWER TO THIRD PARTY COMPLAINT BY CARLOS ROA WITH COUNTERCLAIMS**

**Civil Action: 1:22-cv-1032**

Third-Party Defendant CARLOS ROA by his attorney, LEO SHALIT, PC, as and for a response to Third-Party Plaintiff's Complaint responds as follows, upon information and belief, under the penalties of perjury.:

      1.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 as they related to other parties and Third -Party Defendant Roa denies the allegations contained in Paragraph 1 as they relate to him.

2.      Third-Party Defendant Roa denies the allegations contained in Paragraph 2.

3.      Third-Party Defendant Roa denies the allegations contained in Paragraph 3.

## JURISDICTION AND VENUE

4.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4.

5.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5

## THE PARTIES

6.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.

7.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7.

8.      Admit that Third-Party Defendant Roa resides in New York State but Third-Party Defendant Roa denies the remainder of the allegations contained in Paragraph 8.

9.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9

## MATERIAL FACTS

10.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10.

11.      Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11.

12.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.

13.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

15.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.     Third-Party Defendant Roa denies the allegations contained in Paragraph 16.

17.     Third-Party Defendant Roa denies the allegations contained in Paragraph 17.

18.     Third-Party Defendant Roa denies the allegations contained in Paragraph 18.

19.     Third-Party Defendant Roa denies the allegations contained in Paragraph 19.

20.     Third-Party Defendant Roa denies the allegations contained in Paragraph 20.

21.     Third-Party Defendant Roa denies the allegations contained in Paragraph 21.

22.     Third-Party Defendant Roa denies the allegations contained in Paragraph 22.

23.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24.

25.     Third-Party Defendant Roa denies the allegations contained in Paragraph 25.

26.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26.

27.     Third-Party Defendant Roa denies the allegations contained in Paragraph 27.

28.     Third-Party Defendant Roa denies the allegations contained in Paragraph 28.

29.     Third-Party Defendant Roa denies the allegations contained in Paragraph 29.

30.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

31.     Third-Party Defendant Roa denies the allegations contained in Paragraph 31.

32.     Third-Party Defendant Roa denies the allegations contained in Paragraph 32.

33.     Third-Party Defendant Roa denies the allegations contained in Paragraph 33.

34.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34.

35.     Third-Party Defendant Roa denies the allegations contained in Paragraph 35.

## AS AND FOR THE FIRST CAUSE OF ACTION - BREACH OF DUTY OF LOYALTY

36.     Third-Party Defendant Roa denies the allegations contained in Paragraph 36.

37.     Third-Party Defendant Roa denies the allegations contained in Paragraph 37.

38.     Third-Party Defendant Roa denies the allegations contained in Paragraph 38.

39.     Third-Party Defendant Roa denies the allegations contained in Paragraph 39.

40.     Third-Party Defendant Roa denies the allegations contained in Paragraph 40.

41.     Third-Party Defendant Roa denies the allegations contained in Paragraph 41.

## AS AND FOR THE SECOND CAUSE OF ACTION - BUSINESS DEFAMATION

42.     Third-Party Defendant Roa denies the allegations contained in Paragraph 42.

43.     Third-Party Defendant Roa denies the allegations contained in Paragraph 43.

44.     Third-Party Defendant Roa denies the allegations contained in Paragraph 44.

45.     Third-Party Defendant Roa denies the allegations contained in Paragraph 45.

46.     Third-Party Defendant Roa denies the allegations contained in Paragraph 46.

47.     Third-Party Defendant Roa denies the allegations contained in Paragraph 47.

48.     Third-Party Defendant Roa denies the allegations contained in Paragraph 48.

49.     Third-Party Defendant Roa denies the allegations contained in Paragraph 49.

**AS AND FOR THE THIRD CAUSE OF ACTION - INJURIOUS FALSEHOOD**

50.     Third-Party Defendant Roa denies the allegations contained in Paragraph 50.

51.     Third-Party Defendant Roa denies the allegations contained in Paragraph 51.

52.     Third-Party Defendant Roa denies the allegations contained in Paragraph 52.

53.     Third-Party Defendant Roa denies the allegations contained in Paragraph 53.

54.     Third-Party Defendant Roa denies the allegations contained in Paragraph 54.

55.     Third-Party Defendant Roa denies the allegations contained in Paragraph 55.

56.     Third-Party Defendant Roa denies the allegations contained in Paragraph 56.

57.     Third-Party Defendant Roa denies the allegations contained in Paragraph 57.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACTS**

58.     Third-Party Defendant Roa denies the allegations contained in Paragraph 58.

59.     Third-Party Defendant Roa denies the allegations contained in Paragraph 59.

60.     Third-Party Defendant Roa denies the allegations contained in Paragraph 60.

61.     Third-Party Defendant Roa denies the allegations contained in Paragraph 61.

62.     Third-Party Defendant Roa denies the allegations contained in Paragraph 62.

63.     Third-Party Defendant Roa denies the allegations contained in Paragraph 63.

## AS AND FOR THE FIFTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

64.     Third-Party Defendant Roa denies the allegations contained in Paragraph 64.

65.     Third-Party Defendant Roa denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65.

66.     Third-Party Defendant Roa denies the allegations contained in Paragraph 66.

67.     Third-Party Defendant Roa denies the allegations contained in Paragraph 67.

68.     Third-Party Defendant Roa denies the allegations contained in Paragraph 68.

69.     Third-Party Defendant Roa denies the allegations contained in Paragraph 69.

70.     Third-Party Defendant Roa denies the allegations contained in Paragraph 70.

71.     Third-Party Defendant Roa denies the allegations contained in Paragraph 71.

## AS AND FOR THE SIXTH CAUSE OF ACTION - SLANDER

72.     Third-Party Defendant Roa denies the allegations contained in Paragraph 72.

73.     Third-Party Defendant Roa denies the allegations contained in Paragraph 73.

74.     Third-Party Defendant Roa denies the allegations contained in Paragraph 74.

75.     Third-Party Defendant Roa denies the allegations contained in Paragraph 75.

76.     Third-Party Defendant Roa denies the allegations contained in Paragraph 76.

77.     Third-Party Defendant Roa denies the allegations contained in Paragraph 77.

78.     Third-Party Defendant Roa denies the allegations contained in Paragraph 78.

## AS AND FOR THE SEVENTH CAUSE OF ACTION - CONTRIBUTION

79.     Third-Party Defendant Roa denies the allegations contained in Paragraph 79.

80.     Third-Party Defendant Roa denies the allegations contained in Paragraph 80.

81.     Third-Party Defendant Roa denies the allegations contained in Paragraph 81.

Any Allegations Not Specifically Addressed or that have been missed in a response are

Denied. All Allegations and Demands in the "Wherefore" and "Prayer For Relief" are denied.

Further, all questions of law are referred to this Honorable Court.

## THIRD-PARTY DEFENDANT CARLOS ROA'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

82.     Plaintiff failed to state a claim upon which relief can be granted against the

Answering Defendant.

### SECOND AFFIRMATIVE DEFENSE

83.     Any alleged damage to Plaintiff was caused in whole and/or in part by the acts of

others over whom the Answering Defendant exercised no control.

### THIRD AFFIRMATIVE DEFENSE

84.     Defendant hereby gives notice that it intends to reply upon such other and further

defenses as may become available or apparent during discovery in this case, and thus, it

reserves the right to amend it Answer to assert any such defenses.

### FOURTH AFFIRMATIVE DEFENSE

85.     The Third-Party Plaintiffs have unclean hands.

### DEMAND FOR JURY TRIAL

86.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Third-Party

Defendant Carlos Roa hereby demands a trial by jury.

Wherefore, the Answering Defendant demands judgement dismissing the allegations made against them in the Amended Complaint, together with costs, indemnification , contribution, attorney's fees, interest and compensatory and punitive damages.

## COUNTERCLAIMS

87.     Third-Party Defendant Carlos Roa, as and for his counterclaims against Third-Party Plaintiffs IME Companions LLC and Safa Abdulrahim Gelardi and Defendant Vito Gelardi for various violations of the New York Labor Law ("NYLL"), alleges as follows:

## JURISDICTION

88.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367(a) in that the counterclaims are so related to the claims made by Plaintiff against Defendants and those made by Third-Party Plaintiffs against Carlos Roa so as to form the same case or controversy under Article III of the United States Constitution and Rule 13 of the Federal Rules of Civil Procedure.

## FACTS

89.     Roa commenced employment with IME Companions, LLC, Safa, and Vito in early 2018 as an IME observer.

90.     After working his way up the ranks, Roa began to work in the office with Safa instead of at IMEs outside in early 2019.

91.     During the course of Roa's employment, he was customarily paid on a bi-weekly basis in the amount of $3,500.00 per bi-weekly payroll period, with $2,500.00 by check and $1,000.00 in cash, such that this annual salary totaled $91,000.00.

92.     Roa earned this "salary" despite the fact that he regularly worked eighty (80) hour workweeks, and IME Companions, LLC, Safa, and Vito encouraged him to work more hours.

93.     Roa was not exempt from overtime, because he was not a licensed professional, did not exclusively perform non-manual labor in an office setting, and never supervised two (2) or more employees such that the professional, administrative, or executive exemptions to overtime could apply.

94.     Roa was also not paid weekly as required by law for manual laborers such as himself who was required to travel to IME appointments.

95.     In addition, up until he objected to certain activities that he learned violated the law, Roa earned a commission of twelve percent (12%) for IME services ordered due to his efforts.

96.     Furthermore, IME Companions, LLC, Safa, and Vito misclassified Roa as an independent contractor in an effort to willfully violate the federal and state wage and hour laws.

97.     Upon information and belief, IME observers that IME Companions, LLC, Safa, and Vito hired were similarly misclassified as independent contractors.

98.     Specifically, IME Companions, LLC, Safa, and Vito knew that Roa was supposed to be treated like a regular employee.

99.     However, instead of following the law, IME Companions, LLC, Safa, and Vito cheated by paying him as an independent contractor to save money on overtime expenses.

100.   During the course of Roa's employment, he learned that Safa and Adam Rosenblatt, an employee of IME WatchDog, made a deal in 2017 whereby Rosenblatt provided IME Companions, LLC, Safa, and Vito with confidential and detailed information about IME WatchDog in exchange for money.

101.   During the course of Roa's employment, he learned that IME Companions, LLC, Safa, and Vito instructed Rosenblatt to purposely sabotage IME WatchDog's relationships with its customers by causing IME WatchDog to miss appointments, arrive late, delay reports, and otherwise be unresponsive or provide poor customer service.

102.   After each act of sabotage, Rosenblatt would inform IME Companions, LLC, Safa, and Vito to call the customer in order to solicit their business away from IME WatchDog for themselves.

103.   Often times, Safa would direct Roa to call these customers and instructed Roa on exactly what to say to make these customers come to them instead of IME WatchDog.

104.   Initially, Roa was not aware of what was going on, but slowly and surely, Roa figured it out.

105.   Later, Safa became uninhibited about what she did and even joked about how easy it was to get Rosenblatt to give her the information she needed to succeed in her business.

106.   Over time, IME Companions, LLC, Safa, and Vito's acts weighed on Roa as immoral and he objected to performing these tasks by telling them he did not want to do them.

10

107.    Besides this, IME Companions, LLC, Safa, and Vito asked Roa to engage in other acts which he later understood to be illegal and unethical.

108.    For example, IME Companions, LLC, Safa, and Vito instructed Roa to fabricate IME reports for customers when another observer failed to show up for an IME.

109.    As another example, IME Companions, LLC, Safa, and Vito instructed Roa to change the length of time that each IME took so that the bill to the customer would be artificially increased.

110.    Roa objected to these practices, as well, by stating to IME Companions, LLC, Safa, and Vito that he was not willing to do this

111.    In retaliation for his objections, IME Companions, LLC, Safa, and Vito stopped paying Roa commissions like they used to.

112.    During the course of Roa's employment, Roa was scared to speak out or come forward with the information in his possession for fear of his safety, fear of retribution, and fear of losing his livelihood.

113.    While Roa knew that the acts IME Companions, LLC, Safa, and Vito engaged in were morally wrong, Roa had to put food on the table at home and earn a living.

114.    However, over time, Roa began to conduct research on what IME Companions, LLC, Safa, and Vito were doing and eventually learned that their conduct was likely illegal.

115.    He learned this by researching the law and figuring out that IME Companions, LLC, Safa, and Vito violated the Defend Trade Secrets Act by bribing Rosenblatt to obtain confidential information.

116.    After a lot of soul searching, Roa decided to do what was right and inform the owner of IME WatchDog about what IME Companions, LLC, Safa, and Vito were doing.

117.    In doing so, Roa "blew the whistle" on IME Companions, LLC, Safa, and Vito's illegal conduct.

118.    Roa then cooperated with a private investigator in providing a sworn declaration in support of IME WatchDog's claims against IME Companions, LLC, Safa, and Vito on February 17, 2022, and this declaration was then filed with this Court unbeknownst to IME Companions, LLC, Safa, and Vito.

119.    On March 1, 2022, IME Companions, LLC, Safa, and Vito were served with a lawsuit by IME WatchDog.

120.    Among the papers served were Roa's declaration dated February 17, 2022.

121.    Within approximately an hour, Roa was terminated because he submitted an affidavit in support of IME WatchDog's requests for relief.

## COLLECTIVE ACTION ALLEGATIONS

122.    Pursuant to 29 U.S.C. § 207, Roa seeks to prosecute his FLSA claims as a collective action on behalf of all persons who are or were formerly employed by IME Companions, LLC, Safa, and Vito at any time since May 2019 to the entry of this judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA, and who were not paid overtime compensation at rates not less than one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

123.    This collective action class is so numerous that joinder of all members is impracticable.

124.    Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of IME Companions, LLC, Safa, and Vito, upon information and belief, there are more than twenty (20) in the class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

125.    Roa will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.

126.    Roa has no interest that is contrary to, or in conflict with, the members of this collective action.

127.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

128.    Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.

129.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because IME

Companions, LLC, Safa, and Vito have acted on grounds generally applicable to all members.

130.    Among the common questions of law and fact under the FLSA common to Roa and other Collective Action Members are the following:

a.    whether IME Companions, LLC, Safa, and Vito employed the Collection Action Members within the meaning of the FLSA;

b.   whether IME Companions, LLC, Safa, and Vito failed to keep true and accurate time records for all hours worked by Roa and the Collective Action Members;

c.    what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.   whether IME Companions, LLC, Safa, and Vito failed to post or keep posted a notice explaining the minimum   wages and overtime pay rights provided by the FLSA in any area where Roa and the Collective Action Members are employed in violation of C.F.R. § 516.4;

e.    whether IME Companions, LLC, Safa, and Vito failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty hours per workweek in violation of the FLSA and the regulations promulgated thereunder;

f.   whether IME Companions, LLC, Safa, and Vito's violations of the FLSA are willful as that term is used within the context of the FLSA; and

g.   whether IME Companions, LLC, Safa, and Vito are liable for all damages claimed hereunder including, but not limited to, compensatory, punitive, and statutory damages, interest, costs and disbursements, and attorneys' fees; and

131.    Roa knows of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a collective action.

## **CLASS ACTION ALLEGATIONS**

132.    Roa sues on his own behalf and on behalf of a class of persons under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

133.    Roa brings his New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since 2017 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the New York Labor law, and who have not been paid overtime wages and have not been paid in excess of the state-mandated minimum wage in violation of the New York Labor Law (the "Class").

134.    Upon information and belief, the persons in the Class identified above are so numerous that joinder of all members is impracticable.

135.    Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of IME Companions, LLC, Safa, and Vito, upon information and belief, there are more than twenty (20) members of the Class during the Class Period.

136.    Roa's claims are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

137.   IME Companions, LLC, Safa, and Vito have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

138.   Roa is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

139.   Roa has the same interest in this matter as all other members of the Class, and Roa's claims are typical of the Class.

140.   There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class including, but not limited to the following:

a.   whether IME Companions, LLC, Safa, and Vito employed the members of the Class within the meaning of the New York Labor Law;

b.   whether IME Companions, LLC, Safa, and Vito failed to keep true and accurate time records for all hours worked by Roa and members of the Class;

c.   what proof of hours worked is sufficient where the employers fail in their duty to maintain time records;

d.   whether IME Companions, LLC, Safa, and Vito failed and/or refused to pay the members of the Class premium pay for hours worked in excess of ten hours per day and/or forty hours per  workweek within the meaning of the New York Labor Law;

e.   whether IME Companions, LLC, Safa, and Vito failed and/or refused to pay members of the Class the state-mandated minimum wage;

f.  whether IME Companions, LLC, Safa, and Vito's violations of New York Labor Law are willful as that term is used within the context of the statute; and

g.   whether IME Companions, LLC, Safa, and Vito are liable for all damages claimed hereunder including, but not limited to, compensatory, punitive, and statutory damages, interest, costs and disbursements, and attorneys' fees.

## FIRST CONTERCLAIM AGAINST
## IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – NYLL § 740

141.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

142.    Roa was an employee under the NYLL § 740(1)(a) in that he was an individual who performed services for an under the control and direction of IME Companions, LLC, Safa, and Vito for wages or other remuneration.

143.    IME Companions, LLC, Safa, and Vito were Roa's employer under the NYLL § 740(1)(b).

144.    Roa disclosed to this Court by way of his February 17, 2022 declaration that he reasonably believes IME Companions, LLC, Safa, and Vito violated the law.

145.    Roa also objected to participating in IME Companions, LLC, Safa, and Vito's acts of obtaining and using confidential information to unfairly compete with IME WatchDog, which acts gave Roa the reasonable belief that such acts were in violation of the law, namely, the violations of the Defend Trade Secrets Act.

146.    In response to Roa's objections, IME Companions, LLC, Safa, and Vito engaged in the retaliatory act of terminating him.

147.    Roa did not make a good faith effort to notify IME Companions, LLC, Safa, and Vito that their conduct was illegal because Roa reasonably believed that reporting the conduct would result in a destruction of evidence or other concealment of the illegal activities, policies, and practices.

148.    Further, Roa did not make a good faith effort to notify IME Companions, LLC, Safa, and Vito that their conduct was illegal because Roa reasonably believed that IME Companions, LLC, Safa, and Vito were already aware that their activities, policies, and practices were illegal and they would not correct them.

149.    By terminating Roa in retaliation for his objections to IME Companions, LLC, Safa, and Vito's illegal conduct, Roa is entitled to relief, including, but not limited to, compensation for lost wages, benefits, and other remuneration, the payment of reasonable costs, disbursements, and attorneys' fees, and the payment of punitive damages because IME Companions, LLC, Safa, and Vito's violations were willful, malicious, and wanton in that they immediately terminated Roa upon learning that Roa reported their illegal conduct.

**SECOND CONTERCLAIM AGAINST IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – FLSA OVERTIME**

150.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

151.    Upon information and belief, IME Companions, LLC, Safa, and Vito earned gross annual revenues of at least $500,000.00 in 2019, 2020, 2021, and 2022.

152.    IME Companions, LLC, Safa, and Vito were required to pay Roa an overtime premium of one-and-one-half times his regular rate of pay for all hours worked in excess of forty (40) hours per week.

153.    Rather than pay Roa as required by law, IME Companions, LLC, Safa, and Vito misclassified him as an independent contractor in a willful attempt to evade the federal wage and hour laws.

154.    Roa's regular rate was $21.88 ($1,750.00 per week divided by 80 hours per week), and thus, his overtime rate is $32.82.

155.    As such, his half-time differential is $10.94 per overtime hour.

156.    Roa's unpaid overtime hours amount to $437.60 ($10.94 times 40 overtime hours) per week, such that he is entitled to approximately $68,265.60 for the 156 week period of his employment with IME Companions, LLC, Safa, and Vito.

### THIRD CONTERCLAIM AGAINST IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – NYLL OVERTIME

157.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

158.    IME Companions, LLC, Safa, and Vito were required to pay Roa an overtime premium of one-and-one-half times his regular rate of pay for all hours worked in excess of forty (40) hours per week.

159.    Rather than pay Roa as required by law, IME Companions, LLC, Safa, and Vito misclassified him as an independent contractor in a willful attempt to evade the federal wage and hour laws.

160.    Roa's regular rate was $21.88 ($1,750.00 per week divided by 80 hours per week), and thus, his overtime rate is $32.82.

161.    As such, his half-time differential is $10.94 per overtime hour.

162.    Roa's unpaid overtime hours amount to $437.60 ($10.94 times 40 overtime hours) per week, such that he is entitled to approximately $68,265.60 for the 156 week period of his employment with IME Companions, LLC, Safa, and Vito.

**FOURTH CONTERCLAIM AGAINST IME COMPANIONS, LLC,
SAFA GELARDI, AND VITO GELARDI – NYLL UNPAID COMMISSIONS**

163.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

164.    At all relevant times, Roa and members of the putative class have been employees within the meaning of NYLL § 190, et seq., and any supporting New York State Department of Labor regulations.

165.    At all relevant times, IME Companions, LLC, Safa, and Vito have been employers within the meaning of NYLL § 190, et seq., and any supporting New York State Department of Labor regulations.

166.    IME Companions, LLC, Safa, and Vito failed to pay Roa and members of the putative class commissions earned in accordance with the agreed upon terms of their employment.

167.    Due to IME Companions, LLC, Safa, and Vito's violations of the NYLL, Roa and members of the putative class are entitled to recover from Defendants unpaid wages, interest, attorneys fees and costs.

## FIFTH CONTERCLAIM AGAINST IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – BREACH OF CONTRACT (ALTERNATIVELY PLED)

168.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

169.    Roa and other employees entered into employment agreements with IME Companions, LLC, Safa, and Vito, including implied and/or express contracts.

170.    IME Companions, LLC, Safa, and Vito failed to pay Roa and other employees commissions pursuant to these contracts.

171.    Roa and other employees performed their obligations under their agreements with IME Companions, LLC, Safa, and Vito.

172.    IME Companions, LLC, Safa, and Vito breached the agreement by failing to pay Roa and other employees commissions.

173.    IME Companions, LLC, Safa, and Vito's failure to pay is a breach of the agreement.

174.    As a result of the breach, Roa and the other employees have suffered damages in an amount to be determined at trial.

## SIXTH CONTERCLAIM AGAINST IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – FLSA PAY FREQUENCY

175.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

176.    IME Companions, LLC, Safa, and Vito failed to timely pay Roa and the putative collective action members on a weekly basis as required by law, entitling them to liquidated damages for the aforesaid payments.

177.    As a result of IME Companions, LLC, Safa, and Vito's willful and unlawful acts, Roa and the putative collective action members have been deprived of compensation, and are entitled to liquidated damages.

## SEVENTH CONTERCLAIM AGAINST IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – NYLL PAY FREQUENCY

178.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

179.    IME Companions, LLC, Safa, and Vito failed to timely pay Roa and the putative class action members on a weekly basis as required by law, entitling them to liquidated damages for the aforesaid payments.

180.    As a result of IME Companions, LLC, Safa, and Vito's willful and unlawful acts, Roa and the putative class action members have been deprived of compensation, and are entitled to liquidated damages.

## EIGHTH CONTERCLAIM AGAINST IME COMPANIONS, LLC, SAFA GELARDI, AND VITO GELARDI – NYLL RETALIATION

181.    Roa incorporates all preceding paragraphs of this answer with counterclaims with the same force and effect as if fully set forth at length herein.

182.    Roa was forced to enroll into direct deposit and never authorized enrollment into direct deposit.

183.    NYLL § 192 prohibits mandating direct deposit unless the employee consents.

184.    Roa complained to IME Companions, LLC, Safa, and Vito about his enrollment in direct deposit without permission.

185.    IME Companions, LLC, Safa, and Vito retaliated against Roa by taking work away from him.

186.    Similarly, Roa was forced to work without meal breaks as required by law.

187.    NYLL § 162 provides that employers must provide a thirty (30) minute meal break for each employee.

188.    Roa complained to IME Companions, LLC, Safa, and Vito about their failure to provide him with meal breaks.

189.    IME Companions, LLC, Safa, and Vito retaliated against Roa by taking work away from him.

**WHEREFORE,** Defendant hereby demands judgment as follows:

    **a.**  That the Complaint be dismissed in its entirety.

    **b.**  That judgment on all Counterclaims is granted against IME Companions, LLC, Safa, and Vito in amount to be determined at trial with pre-judgment interest, post-judgment interest, costs, attorneys' fees, and punitive damages for Roa

    **c.**  That this Court grant such other further and different relief as may be just, equitable, and proper.

Dated: Greenvale, New York
      May 3, 2022

                        Very truly yours,

                        ___LEO SHALIT___/LS/_____
                        By: Leo Shalit, Esq
                        Attorneys for Third Party Defendant
                        Carlos Roa
                        45 Glen Cove Road
                        Greenvale, NY 11548
                        646.957.0009