UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IME WATCHDOG, INC.,

                  Plaintiff,

        - against -

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, and IME COMPANIONS LLC,

                  Defendants.
------------------------------------------------------------x
SAFA ABDULRAHIM GELARDI and IME
COMPANIONS LLC,

                  Third-Party Plaintiffs,

        - against -

CARLOS ROA,

                  Third-Party
                  Defendant.
------------------------------------------------------------x
CARLOS ROA,

                  Third-Party
                  Counter Claimant,

        - against -

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, and IME COMPANIONS LLC,

                  Third-Party
                  Counter Defendants.
------------------------------------------------------------x

                             **MEMORANDUM & ORDER**
                             22-CV-1032 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

        On May 13, 2022, the Court issued an order preliminarily enjoining IME Companions LLC

("Companions"), Safa Abdulrahim Gelardi, and Vito Gelardi (collectively, "Defendants") from,

among other things, contacting IME Watchdog, Inc.'s ("Watchdog" or "Plaintiff") current clients,

employees, or agents, and directed Defendants to return to Plaintiff all originals and copies of documents and records that contain Plaintiff's trade secrets and confidential and proprietary information. (*See* Preliminary Injunction, Dkt. 66-1, at 2–3.) The Court also directed the parties to meet and confer regarding the retention of an independent forensic analyst to conduct an analysis of all of Defendants' records and electronic accounts, and to equally share the cost of the forensic analysis. (*Id.* at 3.) On June 8, 2022, the Court issued an amended preliminary injunction enjoining the parties from making any statements to third parties regarding this case that can be construed as misleading and any statements about each other that can be construed as defamatory and/or disparaging. (*See* Amended Preliminary Injunction, Dkt. 80, at 3.)

Before the Court is Plaintiff's motion to reconsider the equal allocation of costs for the forensic analysis. (*See* Plaintiff's Letter Motion to Reconsider ("Pl. Mot."), Dkt. 67, at 1–2.) Plaintiff also seeks clarification (1) "as to whether Defendants are enjoined from servicing customers Defendants obtained by using Plaintiff's trade secrets and confidential and proprietary information, including Subin & Associates . . . and contacting every single customer listed on the 2016 customer sales summary report," (2) "as to when Defendants are required to return all documents, records, and information that contain Plaintiff's trade secrets and confidential and proprietary information," and (3) regarding whether Plaintiff "remains entitled to seek a permanent injunction shutting Defendants' business down if discovery and/or a forensic analysis establishes that Companions was built entirely on misappropriated information and poached clients." (*Id.* at 2–3.)

Defendants oppose Plaintiff's motion for reconsideration and argue that costs of the forensic examination should be allocated equally, as the Court ordered, and that Defendants should not be barred from servicing their current customers that Plaintiff alleges were wrongfully

obtained.  (Defendants' Opposition to Plaintiff's Letter Motion to Reconsider ("Defs. Opp."), Dkt.

73.)  Defendants also state that they have returned all of Plaintiff's documents and records, and if

electronic copies still exist, that such copies should "be returned after the forensic examination

take[s] place to avoid allegations that Companions deleted documents."  (*Id.* at ECF[1] 4.)

Defendants further seek an order requiring Plaintiff "to identify its current clients by name and to

provide proof that such client is 'current,' meaning doing business with Watchdog as of May 13,

2022."  (*Id.*)  In response, Plaintiff argues that "this is more appropriately addressed in discovery,

subject to a confidentiality stipulation and [o]rder to be entered into between the parties."

(Plaintiff's Reply ("Pl. Rep."), Dkt. 74, at 3.)

For the reasons stated herein, the Court denies Plaintiff's motion for reconsideration and

denies Defendants' request to order Plaintiff's production of a list of current customers.

## DISCUSSION

The Court assumes the parties' familiarity with the facts and procedural background of the

case and adopts the factual findings set forth in the May 13, 2022 Memorandum and Order

(Preliminary Injunction M&O, Dkt. 66).

## I.  Standard of Review

Federal Rule of Civil Procedure "59(e) allows a litigant to file a 'motion to alter or amend

a judgment.'"  *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting Fed. R. Civ. P. 59(e)).  "A

party may move for reconsideration and obtain relief only when the party identifies an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (brackets

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

omitted).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Id.*

"Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and ellipsis omitted), as amended (July 13, 2012).  "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued."  *Banister*, 140 S. Ct. at 1703 (citing 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, pp. 163–64 (3d ed. 2012)).  "The time for [seeking reconsideration under Rule 59] is short—28 days from entry of the judgment, with no possibility of an extension."  *Id.* (citing Fed. R. Civ. P. 6(b)(2)).

## II.    Cost Allocation for the Forensic Analysis

Rule 26(b) of the Federal Rules of Civil Procedure provides that a party may obtain discovery "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  While there is a presumption that "the responding party must bear the expense of complying with discovery requests," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978), the district court "may, for good cause, issue an order" "specifying terms, including . . . the allocation of expenses, for the disclosure or discovery," Fed. R. Civ. P. 26(c)(1)(B).

A forensic examination is not routine discovery conducted as a matter of course.  A forensic search of an electronic device "involves an exhaustive search of [the device's] entire hard drive"

and "a hard drive's unallocated space, which is the space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software." *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 270 (E.D.N.Y. 2013) (internal quotation marks omitted).  Thus, "[f]orensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature." *Aminov v. Berkshire Hathaway Guard Ins. Cos.*, 21-CV-479 (DG) (SJB), 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022) (citation omitted); *see also* Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment ("Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy.  The addition of testing and sampling to Rule 34(a)[2] with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances.  Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.").

Plaintiff argues that the Court should reconsider the equal allocation of the forensic examination costs and it "should have required Defendants to bear the entire burden of producing discovery, especially given the presumption that the party responding to discovery requests bears all costs associated with production."  (Pl. Mot., Dkt. 67, at 1.)  According to Plaintiff, the Court should have applied the seven-factor test for determining cost-shifting in electronic discovery disputes set forth in *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. May 13,

---

[2] Among other things, Rule 34(a) provides that "[a] party may serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test, or sample [documents or electronically stored information] in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1)(A).

2003).  (*Id.*)  Plaintiff's arguments are unavailing.  First, the Court notes that Plaintiff has not pointed to any "controlling law" that "would have altered the disposition of the underlying motion."  (Pl. Mot., Dkt. 67, at 1.)  Second, despite seeking a forensic analysis in its preliminary injunction papers (*see* Dkt. 44, at 17; Dkt. 55[3], at 4, 5–6), Plaintiff completely failed to address how the costs of such forensic analysis should be allocated, and, more specifically, did not present any argument regarding *Zubulake*'s seven factors.  It is well established that "courts will not address new arguments . . . that the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703 (citation omitted).  Lastly, even if the Court were to apply the *Zubulake* factors, it would not reallocate cost-sharing here.

*Zubulake* set forth the following relevant factors to aid courts in analyzing which party should bear the cost of electronic discovery: "1. The extent to which the request is specifically tailored to discover relevant information; 2. The availability of such information from other sources; 3. The total cost of production, compared to the amount in controversy; 4. The total cost of production, compared to the resources available to each party; 5. The relative ability of each party to control costs and its incentive to do so; [and] 7. The relative benefits to the parties of obtaining the information."[4]  217 F.R.D. at 322.  Notably, "[w]hen evaluating cost-shifting, the

---

[3] In its April 25, 2022 Docket Order, the Court found that Plaintiff's supplemental reply memorandum of law in support of its motion for a preliminary injunction did not comply with the Court's Individual Practices and Rules because Plaintiff filed a reply in excess of ten pages without seeking leave to file excess pages.  (*See* 4/25/2022 Docket Order.)  The Court therefore only considered arguments up to and including page ten of Plaintiff's supplemental reply brief.  (*Id.*) In any event, even if the Court were to consider the remaining pages, Plaintiff did not make any arguments regarding the allocation of costs for the requested forensic analysis in those excess pages.

[4] The remaining factor—"[t]he importance of the issues at stake in the litigation," *Zubulake*, 217 F.R.D. at 322—does not apply to this case.  As the Court in *Zubulake* explained, "the importance of the issues at stake in the litigation" is only relevant in cases that have "the potential for broad public impact," which is not the situation here, *id.* at 323.

central question must be, does the request impose an 'undue burden or expense' on the responding party." *Id.* "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)." *Id.* at 318 (emphasis omitted). "'Accessible' data is stored in a readily usable format that 'does not need to be restored or otherwise manipulated to be usable' and 'inaccessible' [data] is not readily usable and must be restored to an accessible state before the data is usable." *Estate of Shaw v. Marcus*, 14-CV-3849 (NSR) (JCM), 2017 WL 825317, at *3 (S.D.N.Y. Mar. 1, 2017) (quoting *Zubulake*, 217 F.R.D. at 320).

Here, application of the *Zubulake* factors affirms the Court's prior conclusion that the costs of the forensic examination should be borne equally by the parties. The first and second factors weigh slightly against cost-sharing. While Plaintiff's request for a forensic examination is broad, it is aimed to discover relevant information regarding Defendants' preliminarily established possession and use of Plaintiff's trade secrets and proprietary information. And Plaintiff presumably has no other means of accessing this information, at least completely, except by way of forensic examination.[5] "Third, the total cost of the forensic examination is likely to be far less than the total amount in controversy. This weighs in favor of cost-shifting [onto Plaintiff]." *Id.* at *6. "The fourth factor is neutral, given that the parties' financial positions are not fully apparent" to the Court. *Id.* The fifth factor weighs strongly in favor of cost-shifting onto Plaintiff due to the animosity between the parties and extremely litigious nature of the parties' positions thus far, as evident by the docket in this case. (*See, e.g.*, 6/8/2022 Docket Order; 6/9/2022 Docket Order;

---

[5] The Court notes, however, that Plaintiff does have access to, and can search, the electronic devices and accounts of its employee, Adam Rosenblatt, who shared this information with Defendants in the first place, and thus has an alternative means, even if limited, of obtaining this information.

6/10/2022 Docket Order.)  In particular, Plaintiff's overly aggressive stances at times, including positions it has taken in the instant briefing, causes the Court to be concerned that Plaintiff seeks to use the forensic examination and the expense of it to punish Defendants and drain their resources.  It is clear that, should the Court impose the entire burden of the forensic examination on Defendants alone, Defendants would have little ability to control the costs of the examination, which is Court-imposed and must be broad as required by the Court.  (*See* 6/2/2022 Docket Order ("[T]he Court reiterates that the forensic analyst is required to conduct an analysis of *all* of Defendants' records and electronic accounts and Defendants are required to provide *complete and unrestricted* access to their records and electronic accounts to the forensic analyst." (internal quotation marks omitted); *see also id.* ("[I]t is the forensic analyst's duty to review all records and electronic accounts and determine which contain relevant information, and which do not. Defendants do not get to control and obstruct this process.").)  Moreover, should Plaintiff not be required to bear the burden of the forensic examination, it will have no incentive to control its costs and will likely seek to broaden its scope, which will lead to further unnecessary motion practice and incurrence of exorbitant forensic examination fees.  Finally, the seventh factor, though it weighs in Plaintiff's favor, is "the least important because it is fair to presume that the response to a discovery request generally benefits the requesting party." *Zubulake*, 217 F.R.D. at 323.

The Court notes that the *Zubulake* factors are not meant to be applied mechanically.  *Id.* Instead, they are meant to aid the Court in exercising its discretion to account for the undue burden and expense of discovery on the responding party.  Here, the information subject to forensic analysis likely is stored in both accessible and inaccessible formats,[6] which means that, without

---

[6] On June 27, 2022, the Court So Ordered the parties' consent order regarding the forensic examination, which provides that the forensic examiner will search Defendants' records and electronic accounts for existing and potentially deleted information and, if the forensic examiner

cost-sharing, it will impose an undue burden on Defendants. *Id.* at 318 ("In fact, whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)."). Thus, even assuming there is a presumption that Defendants should bear the costs of the forensic examination, and applying the *Zubulake* factors here, the Court finds that the parties should bear the cost of the forensic examination equally, and that there is no basis for reconsideration of the Court's previous determination on this issue.[7]

## III.   Restrictions on Defendants' Contact with Plaintiff's Current Customers

On May 13, 2022, the Court, among other things, enjoined Defendants from contacting Plaintiff's current clients, employees, and agents. (Preliminary Injunction, Dkt. 66-1, at 2, Dkt. 80, at 2; *see also* Amended Preliminary Injunction, Dkt. 80, at 3.) Plaintiff now "seeks clarification as to whether Defendants are enjoined from servicing customers Defendants obtained by using Plaintiff's trade secrets and confidential and proprietary information, including Subin & Associates . . . and contacting every single customer listed on the 2016 customer sales summary report." (Pl. Mot., Dkt. 67, at 3.) The Preliminary Injunction does not bar Defendants from

---

discovers that certain information was deleted, the extent to which it can be recovered. (*See* 6/27/2022 Docket Order; Dkt. 90.)

[7] In its reply, Plaintiff argues that the Court should reconsider the equal allocation of costs for public policy reasons and to send "a message that crime does not pay." (Pl. Rep., Dkt. 74, at 3.) This is not a valid basis for a motion to reconsider. "Rule 59 is not a vehicle for . . . presenting the case under new theories, . . . or otherwise taking a second bite at the apple." *Analytical Survs., Inc.*, 684 F.3d at 52. In any event, even though the Court has issued a preliminary injunction based on findings it made after holding an evidentiary hearing, Plaintiff still bears the burden to prosecute this case to completion and persuade the jury or the Court of the merits of its claims, if it can. Plaintiff is reminded that this is a *civil* case and that no findings of *criminality* have been made here. *See Woodby v. Immigration and Naturalization Serv.*, 385 U.S. 276, 284–85 (differentiating between the burden of proof in criminal cases—"the duty of proving the essential facts beyond a reasonable doubt," and in civil cases—"the duty of prevailing by a mere preponderance of the evidence").

continuing to service their current customers.  In fact, there is no language in the Preliminary Injunction that can be interpreted as such.  Thus, while Plaintiff styles this as a request for a "clarification," it is in reality a request to reconsider the relief granted by the Preliminary Injunction and to broaden its scope.[8]  Apparently recognizing as much, in its reply, Plaintiff argues that the Court's findings of fact and law "require, logically, that Defendants be precluded from contacting any of Plaintiff's customers in the 2016 customer list or – at a minimum – the issuance of an appropriate court-authorized notice that: (i) the foregoing factual findings have been made; (ii) Plaintiff originally serviced these customers in 2016; (iii) a likelihood of success on the merits of Plaintiff's claims of misappropriation has been made; and (iv) the customer should cease doing business with Defendants."  (Pl. Rep., Dkt. 74, at 3.)

The Court denies Plaintiff's motion to reconsider the scope of the Preliminary Injunction and to enjoin Defendants from continuing to work with Subin & Associates and other current customers listed on Watchdog's 2016 customer sales summary report that Adam Rosenblatt shared with Safa Gelardi.  In the May 13, 2022 Memorandum and Order, the Court found that Plaintiff was seeking an overly broad preliminary injunction and that "[w]hile it is undisputed that Plaintiff did, in fact, lose trade secrets and customers to Defendants, at this stage of the proceeding, before discovery or forensic analysis has been conducted, the Court cannot make a finding that Companions is built entirely on misappropriated information and poached clients."  (Preliminary Injunction M&O, Dkt. 66, at 16–17.)  The Court thus ordered a forensic analysis of all of Defendants' records and electronic accounts to determine the extent to which Defendants' business

---

[8] Plaintiff writes that, "[i]n the event that this Court clarifies otherwise, Plaintiff respectfully reserves the right to move for reconsideration on that issue."  (Pl. Mot., Dkt. 67, at 3 n.3.)  The Court does not intend to give Plaintiff yet another bite at the apple and will not consider further briefing or argument on this issue.

has been built on misappropriated information, including customer information (*id.*; Preliminary Injunction, Dkt. 66-1; Amended Preliminary Injunction, Dkt. 80), and reiterated the importance and scope of the forensic analysis in a recent docket order (*see* 6/2/2022 Docket Order). Plaintiff's argument that it continues to suffer irreparable harm "by virtue of [its] lost customers" is unavailing, as the Court already has addressed any imminent irreparable harm to Plaintiff by issuing a preliminary injunction that enjoins "Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them" from "using in any manner whatsoever Plaintiff's trade secrets and confidential and proprietary information," "contacting Plaintiff's current clients, employees, and agents," franchising Companions, or "destroying any documents . . . that are presently in Defendants' personal or corporate possession." (Preliminary Injunction, Dkt. 66-1; Amended Preliminary Injunction, Dkt. 80.)

The Court therefore will not broaden the scope of the Preliminary Injunction at this stage and denies Plaintiff's request for the issuance of a notice to customers listed in Watchdog's 2016 customer sales summary report directing such customers to cease doing business with Companions.[9] Moreover, in light of Defendants' representation that they have returned all of Plaintiff's physical documents and records (Def. Opp., Dkt. 73, at ECF 4), the Court agrees that the return of electronic copies is appropriately deferred until after the forensic examination is complete, so as not to impede, distort, or otherwise affect that examination. However, the Court confirms that Plaintiff may seek a permanent injunction in this case that would effectively shut

---

[9] Plaintiff also states that "Defendants are informing certain law firms about the existence of this case" and "thus seeks leave to submit this Court's decisions to law firms." (Pl. Rep., Dkt. 74, at 3.) While the Court sees no issue with the parties advising their customers that there is a pending legal action in which they are involved, the docket for which is publicly available and easily accessible by attorneys that are the parties' customers, the parties are reminded that the Amended Preliminary Injunction enjoins them from making any misrepresentations regarding this case or making any disparaging and/or defamatory statements regarding each other.

down Defendants' business "if discovery and/or a forensic analysis establishes that Companions was built entirely on misappropriated information and poached clients."  (Pl. Mot., Dkt. 67, at 3.)

## IV.     Plaintiff's Identification of Its Current Customers

In their response to Plaintiff's motion, Defendants seek an order requiring Plaintiff "to identify its current clients by name and to provide proof that such client is 'current,' meaning doing business with Watchdog as of May 13, 2022."[10]  (Def. Opp., Dkt. 73, at ECF 4.)  Plaintiff argues that "this is more appropriately addressed in discovery, subject to a confidentiality stipulation and [o]rder to be entered into between the parties."  (Pl. Rep., Dkt. 74, at 3.)

The Court agrees with Plaintiff that such a disclosure should be addressed through discovery and protected by a protective order, and thus will not require Plaintiff to produce a list of its current customers to Defendants.  However, Plaintiff is strongly encouraged to cooperate with Defendants regarding the production of this information.  If Plaintiff does not advise Defendants regarding its current clients, it cannot later complain that Defendants have not complied with the Preliminary Injunction.  Any further disputes regarding the discovery of this information should be addressed to the Honorable James R. Cho.

### CONCLUSION

For the reasons stated herein, the Court denies Plaintiff's motion to reconsider and Defendants' request to require Plaintiff to identify its current clients.

---

[10] Defendants write that Companions "reserves the right to submit additional briefing if necessary and if permitted by the Court."  (Def. Opp., Dkt. 73, at ECF 4.)  As the Court already explained in response to a similar statement from Plaintiff, the Court "does not intend to give [Defendants] yet another bite at the apple and will not consider further briefing or argument on this issue" (*supra* note 8).

SO ORDERED.

_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated:  June 28, 2022
        Brooklyn, New York