UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IME WATCHDOG, INC.,

                              Plaintiff,

         -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                          Defendants.
----------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

                          Third-Party Plaintiffs,

         -against-

CARLOS ROA,

                          Third-Party Defendant.
----------------------------------------------------------------X
CARLOS ROA,

                          Third-Party Counter-Claimant,

         -against-

SAFA ABUDLRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

                          Third-Party Counter-Defendants.
----------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC) (JRC)

**FIRST AMENDED COMPLAINT**

Plaintiff IME WatchDog, Inc. ("IME WatchDog"), by its attorneys Milman Labuda Law Group PLLC, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, as and for its First Amended Complaint against Defendants IME Companions LLC (hereinafter "Companions" or the "Corporate Defendant"), Safa Abdulrahim Gelardi (hereinafter "Safa"), Vito Gelardi (hereinafter "Vito"), Gregory Elefterakis ("Elefterakis"), Roman Pollak ("Pollak"), Anthony Bridda ("Bridda"), Nicholas Elefterakis ("Nicholas"), Nicholas Liakis ("Liakis"),  (Safa, Vito, Elefterakis, Pollak, Bridda, Nicholas, and Liakis collectively hereinafter the "Individual Defendants") (the Corporate Defendant and the Individual Defendants collectively hereinafter the "Defendants"), hereby alleges as follows:

## NATURE OF THE CASE

1.      This is an action for damages and injunctive relief related to Defendants' bribery of Plaintiff's key employee resulting in the misappropriation of Plaintiff's confidential information and trade secrets resulting in Defendants': (i) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (ii) misappropriation of trade secrets under New York common law; (iii) unfair competition under New York common law; (iv) tortious interference with contractual relations, business relations, and prospective economic advantage; (v) unjust enrichment; (vi) civil conspiracy; and (vii) conversion.

2.      Defendants' diabolical scheme to leech off of Plaintiff's business causing Plaintiff's decimation must be stopped.

3.      In addition, Defendants must pay for damages for the harm they have caused to Plaintiff's business.

## PARTIES

4.      IME WatchDog was at all times relevant and remains a corporation duly incorporated under the laws of the State of New York with its principal place of business in Queens County, New York.  Daniella Levi, Esq. is its sole shareholder & Chief Operating Officer.

5.      Upon information and belief, Companions is a limited liability company duly organized under the laws of the State of New York with its principal place of business located in Kings County, New York.

6.      Upon information and belief, the Safa and Vito are married, both members of the Corporate Defendant, and each reside in Richmond County, New York.

7.      Upon information and belief, Elefterakis, Pollak, Bridda, Nicholas, and Liakis are each residents of the State of New York and had a direct ownership interest in Companions from November 2017 through August 2018.

8.      As set forth herein,  Elefterakis, Pollak, Bridda, Nicholas, and Liakis knew that Safa and Vito engaged in illegal conduct related to their foray into the IME observer business and each willingly, voluntarily, and knowingly joined in Safa's and Vito's wrongful conduct.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 given that Plaintiff pursues claims under the DTSA, a federal law.

10.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants because they are part of the same case or controversy and arise under a common nucleus of operative facts.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §  1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and each of the Defendants reside in this district.

## FACTS

12.     Daniella Levi, Esq. ("Mrs. Levi") is a personal injury attorney who is the President of Daniella Levi & Associates, P.C., a personal injury law firm representing injured plaintiffs.

13.     Since 2002, Mrs. Levi dealt with the dreaded so-called independent medical examination ("IME") of her clients.

14.     Throughout the first decade of her practice in the personal injury field, Mrs. Levi was often frustrated by insurance carriers' use of IMEs to prevail in cases.

15.     In fact, she refers to IMEs as "insurance medical exams," conducted by doctors hired by the insurance companies and, therefore, they are anything but "independent."

16.     Mrs. Levi's injured clients had to attend those IMEs and would report to her thereafter that the so-called examination generally lasted for only a few minutes; those short exams generally produced voluminous reports detailing how either Mrs. Levi's clients' injuries were not causally related to the accident, or that they completely healed.

17.     The defendants, by and through their insurance carriers and defense counsel, use these IME reports in support of motions for summary judgment or at the time of trial.

18.     Since the IME exam is an integral part of the litigation and an adversarial event, Mrs. Levi always felt that it was important that clients not attend them unaccompanied.

19.     However, the reality was that on an industry-wide basis, it was almost always the case that clients attended IMEs alone, for a couple of reasons.

20. First, it was too expensive and disruptive to law practices to have a paralegal and/or attorney out of the office for, sometimes, hours at a time.

21. Second, there was a risk that, if an attorney who attended the IME with his or her client had to testify at trial about what truly transpired, any such attorney would be disqualified on the basis of being a fact witness pursuant to Rule 3.7 of the New York Rules of Professional Conduct.

22. Mrs. Levi therefore saw a real need for a service that could fulfill this very important function at an economically feasible price point.

23. After much thoughtful deliberation, in or about May 2011, Mrs. Levi decided to pull the trigger on her idea and launch IME WatchDog, Inc.

24. The business idea was to provide "watch dogs" to personal injury law firms that would accompany personal injury law firm clients to IMEs and report back about what did and did not occur during those IMEs.

25. Mrs. Levi came up with the concept, developed forms of reports for the "watch dogs" to complete relating to the different types of IMEs (i.e., orthopedic, neurological, chiropractic, and other modalities), established price lists, established recruitment and training procedures for the watch dogs, and started the IME observer ("watch dog") business from scratch.

26. Mrs. Levi built a customer database through her long-lasting relationships and friendships with other personal injury attorneys who she frequently interacted with in court, through memberships in different legal organization such as New York State Trial Lawyers Association, American Association for Justice, various bar associations, and related list services.

27. These relationships took Mrs. Levi years to build and it took time for IME WatchDog to grow as a business and achieve the success and reputation it has today.

28.     The documents and checklists Mrs. Levi created that are used by IME WatchDog's IME observers are confidential and proprietary, and took great costs and efforts to create.

29.     In its infancy, IME WatchDog came under attack by the insurance industry who tried in various ways to keep the "watch dogs" out of the exam room.

30.     The insurance industry acted to do so by, *inter alia*, including language in their IME notices specifically prohibiting the use of IME WatchDog, cancelling IME appointments if a client was accompanied by a watch dog, filing motions to exclude watch dogs from the exam room, and seeking to preclude watch dogs from being able to testify at trial.

31.     Mrs. Levi went through painstaking efforts, time, and money in the form of legal fees to fight the insurance carriers to make it the law of the land in the Appellate Divisions of the State of New York that "watch dogs" and observers are permitted to accompany plaintiffs to IMEs.  This included, *inter alia*, suing Baker, McEvoy, Morrissey & Moskovits, P.C. ("Baker McEvoy") to enjoin them from refusing to move forward with IMEs with a "watch dog" or observer present.

32.     Ultimately, IME WatchDog prevailed in obtaining a temporary restraining Order, and subsequently litigated its case through appeal against Baker McEvoy; the Hon. James E. D'Auguste, J.S.C. succinctly summarized IME WatchDog's legal battle in a 2016 decision:

> The [conditions, inter alia, that no non-attorney may be present, placed] in Baker McEvoy's IME demand have become such a widespread problem that the law firm has been barred from serving IME notices containing conditions that purport to exclude a non-attorney representative present at the examination—exactly what has been protested in the instant case—in a plenary action. See IME Watchdog, Inc. v. Baker, McEvoy, Morrissey & Moskovitz, P.C., Index No.: 21822/2016E, NYLJ 1202756064297 (Sup.Ct., Bronx County Apr. 19, 2016) (granting [Plaintiff] a temporary restraining order and preliminary injunction against Baker McEvoy).

> On appeal, the Appellate Division, First Department, which had originally stayed the enforcement of an injunction, vacated the stay and permitted the injunction to go into effect. <u>See</u> <u>IME Watchdog, Inc. v. Baker, McEvoy, Morrissey & Moskovitz, P.C.</u>, 2016 WL 4133495 (1st Dept. Aug. 4, 2016).
>
> Thus, Baker McEvoy is also prohibited under this separate order from the Appellate Division from the exact conduct that is the subject of the instant motion practice. Although the Appellate Division decision in IME Watchdog was issued in August, Baker McEvoy never communicated with this Court that it is not permitted to interfere with a non-attorney's presence at a physical examination.

<u>See</u> <u>Steinbok v. City of New York</u>, 53 Misc. 3d 1205(A) (Sup. Ct. N.Y. Cty. 2016).

33.     Thereafter, in <u>Henderson v. Ross</u>, the Second Department held that a plaintiff is entitled to be examined [at his or her IME] in the presence of his or her attorney or other legal representative, if necessary, so long as they do not interfere with the conduct of the examination. <u>See</u> 147 A.D.3d 915 (1st Dept. 2017).

34.     In <u>Martinez v. Pinard</u>, the First Department similarly held as much.  <u>See</u> 160 A.D.3d 440 (1st Dept. 2018); <u>see also</u> <u>Santana v. Johnson</u>, 154 A.D.3d 452 (1st Dept. 2017).

35.     As set forth by the First Department in <u>Markel v. Pure Power Boot Camp, Inc.</u>, "IME observers or 'watchdogs' are typically hired by plaintiff's lawyers to assist their clients in filling out forms at the examining doctor's office. More importantly, according to plaintiff, the presence of an IME observer deters examining doctors hired by defendants from inquiring about matters beyond the scope of the particular action[,] keeps the IME process honest[,] and to serve as the attorney's 'eyes and ears' [to observe] what occurred during the IME, and then [report] that information back to plaintiff's attorney."  <u>See</u> 171 A.D.3d 28, 30-32 (1st Dept. 2019).

36.     Indeed, in <u>Markel</u>, the First Department held that an IME observer's notes constitute materials prepared for trial, bringing them within the conditional or qualified privilege protections of New York Civil Practice Law & Rules ("CPLR") § 3101(d)(2), which materials

may be obtained only upon a showing that the requesting party has a substantial need for them in the preparation of its case and that, without undue hardship, the requesting party is unable to obtain the substantial equivalent by other means.  See Markel, 171 A.D.3d at 31.

37.     After costly legal battles to successfully fight for its right to exist, IME WatchDog has spent over a decade marketing its services and cultivating relationships with its customers, many of whom were customers of IME WatchDog from its inception.

38.     IME WatchDog's carefully curated customer preferences and customer relations are vital to its business; possession of that decades-long developed information provides IME WatchDog a unique competitive advantage in the IME observer industry.

39.     Since 2011 when it was formed, IME WatchDog employed Adam Rosenblatt ("Rosenblatt") initially as an administrative assistant, and then as a watch dog himself.

40.     In or about 2016, Rosenblatt became President of IME WatchDog.

41.     At all relevant times, Mrs. Levi was and remains the sole shareholder of IME WatchDog, and serves as its Chief Operating Officer ("COO").

42.     As President, Rosenblatt had access to IME WatchDog's entire database, including the identity of all of its customers and clients, their contact information, their preferences, pricing information, and all of the financial details of IME WatchDog.

43.     The only other individual who has access to this information is Mrs. Levi, the COO.

44.     IME WatchDog took reasonable measures to keep this information secret, including restricting access of its database that contains this information only to Mrs. Levi and Rosenblatt, who are in managerial positions and who are required to maintain confidentiality of the documents.

45.     This information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means from others who could otherwise obtain economic value from the disclosure or use of the information.

46.     This information is related to services used in and intended for use in interstate or foreign commerce because IME WatchDog has its observers travel out of the State of New York to the States of New Jersey and Pennsylvania in the regular course of its business.

47.     Rosenblatt was in a position of trust at IME WatchDog and was required, as President of IME WatchDog, to provide his utmost duty of loyalty to his employer, IME WatchDog.

48.     On or about January 28, 2022, Mrs. Levi received a text message from an unknown number asking to meet with her to discuss the decline in revenues of IME WatchDog.

49.     Mrs. Levi, along with her son, met this individual on February 2, 2022, and he identified himself as Carlos Roa ("Roa"), an employee of Defendants.

50.     During their meeting, Mrs. Levi was presented with compelling documentary evidence that Rosenblatt has been selling information related to IME WatchDog's customers and related financial information of IME WatchDog to the Defendants since in or about June or July of 2016.

51.     These acts are in violation of Rosenblatt's fiduciary duty, and Defendants' actions constitute, among other things, theft of trade secrets and unfair competition.

52.     Moreover, Defendants knew and had reason to know that the trade secrets and confidential information they obtained from Rosenblatt – including customer lists, financial information, and details about customers – were acquired by improper means.

53.     In fact, Defendants bribed Rosenblatt with money in exchange for him providing them with IME WatchDog's trade secrets (through Zelle payments, cash payments, and wire transfers), which included customer lists, financial information, and details about customers.

54.     The unauthorized disclosure by Rosenblatt of IME WatchDog's customer lists, financial data, and information to Defendants provided critical information to a competitor entity that would have no other way to obtain such information and was used as "roadmap" and "step by step manual" for Defendants to establish its operations.

55.     Plaintiff's trade secrets and confidential information that  Rosenblatt gave to Defendants provided Defendants with the ability to duplicate operational, service and development techniques that IME WatchDog has spent years, and even a decade, establishing; meanwhile, Defendants gained access to information that they would have no other way of obtaining.

56.     Defendants misappropriated such confidential and trade secret information by engaging in bribery.

57.     No permission was given to Rosenblatt to sell customer lists, financial information, and details about IME WatchDog's customers to anyone.

58.     No permission was given to Defendants to have access to any of Plaintiff's customer lists, financial information, and details about IME WatchDog's customers.

59.     It is obvious from Defendants' brazen tactics that they are actively engaged in a scheme to plunder and destroy the company Mrs. Levi built for over ten years.

60.     At the meeting, Roa also informed Mrs. Levi that the Defendants are in the process of creating a franchise from the business that Mrs. Levi worked so hard to create.

10

61.     Upon information and belief, a significant number of customers have been solicited by Defendants using Plaintiff's trade secrets and confidential information inappropriately and illegally acquired by the Defendants.

62.     Following the filing of the original complaint in this case on February 25, 2022, a show cause hearing was conducted before the Hon. Pamela K. Chen, U.S.D.J. on April 4, 2022.

63.     There, Safa testified that she opened Companions with Elefterakis, whom Safa presented with the idea of running a competing business to IME WatchDog by showing him two (2) invoices from IME WatchDog.

64.     Safa owned half of the business, while Elefterakis owned a quarter of it; two other individuals named Roman Pollak and Anthony Bridda owned the remaining quarter in equal shares.

65.     In addition, Nicholas and Liakis – nephews of Elefterakis – had an indirect ownership interest in Companions and/or were otherwise involved in forming and operating Companions.

66.     Elefterakis, Pollak, Bridda, Nicholas, and Liakis were each aware of and privy to the confidential trade secrets Safa and Vito misappropriated from IME Watchdog (through Rosenblatt) and each of the Individual Defendants nonetheless decided to participate in and profit from Companions.

67.     Further, on or about June 8, 2022, Defendants created a "GoFundMe" page seeking $250,000.00 in donations to fund their defense in this case wherein Defendants made statements such as: (i) "Business was doing so well we caught up with our number one competitor, who is a greedy ruthless attorney That is abusing the law to sue me out of business because she has the means to do so. This lawsuit is costing her nothing as she is using her

connections to represent her. She is using fear tactics and is bullying us broke using the legal system;" (ii) "She is suing us out of business solely because she cannot compete. our attorney told us her tactic is to sue us bankrupt;" and (iii) "[she] is refusing to settle because agian [*sic*] her tactic is to sue us out of business.

68.     Defendants published these statements on the "GoFundMe" page and republished them on Defendant Safa's Facebook page, as well.

69.     Defendants published these statements despite the fact that this Court specifically Ordered the parties on April 4, 2022 not to make any statements about the other parties that can be misconstrued as defaming.

70.     On or about the same day, Defendants wrote various false and disparaging statements on Facebook that: (i) Safa "never bribed anyone;" (ii) "these are all false accusations;" (iii) "She [referring to Mrs. Levi] took [the idea for her business] 12 years ago;" (iv) "you should know she was in contact with my employee for months and used him for inside information against me and now he works for her as well."  Each of the foregoing statements from the GoFundMe page and the Facebook posts are false, disparaging, and constitute defamation *per se*.

71.     Further, the statements were made with actual malice because Defendants' Facebook page is accessible to a multitude of personal injury attorneys, many of whom know and/or recognize Mrs. Levi, and Defendants made these posts with the knowledge that the personal injury attorney community will read what Safa wrote.

72.     Immediate injunctive relief and a permanent injunction is necessary to prevent Defendants and Rosenblatt from destroying the customer relationships and goodwill that IME WatchDog has spent a decade building, from franchising a business which they stole from IME Watchdog, and causing further imminent and irreparable financial harm to IME WatchDog.

73.     In addition to securing the return of its misappropriated information to it by Defendants and enjoining them from engaging in any further illegal activity, it is essential that IME WatchDog be permitted to forensically examine the Defendants' email accounts, computers, cellular phones, and any other electronic devices or cloud storage accounts, to determine the exact nature and extent of Defendants' unlawful bribery scheme to steal IME WatchDog's customers.

### AS AND FOR ITS FIRST CAUSE OF ACTION
**(Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 – All Defendants)**

74.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

75.     Defendants' actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. § 1836.

76.     Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its customers, contact information, and all details related to customers, including *inter alia*, their preferences and pricing, in addition to private and confidential financial information, as well as Plaintiff's forms and checklists that its observers use at IMEs.IME WatchDog made and makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to Rosenblatt, the President of IME WatchDog, and Mrs. Levi, who are entrusted to act in the best interests of IME WatchDog.

77.      Defendants were prohibited by law from bribing Rosenblatt to obtain confidential information and trade secrets of IME WatchDog.

78.     The trade secret information belonging to Plaintiff that Defendants possess derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

79.     Indeed, Defendants utilized this very information as a road map to open a competing business and unfairly competed against IME WatchDog in dastardly fashion.

80.     Defendants knew that this information contained trade secrets belonging to IME WatchDog.

81.     Defendants have no right to retain or use any of IME WatchDog's trade secrets or other confidential and proprietary information due to their illegal conduct.

82.     Upon information and belief, Defendants are retaining and using that information to compete with IME WatchDog; IME WatchDog did not consent to Defendants' use of the information as set forth above.

83.     At all relevant times, Defendants knew that the information provided to them by Rosenblatt contained Plaintiff's proprietary trade secrets that they had no right to receive and could not receive absent the improper acts of Rosenblatt.  Defendants' conduct thus constitutes knowing, willful, and  malicious misappropriation.

84.     Defendants have used Plaintiff's trade secrets to sell, through interstate commerce, services that compete with the services that Plaintiff markets, causing substantial loss of sales to Plaintiff and damage to its relationships with its clients.

85.     Defendants have wrongfully acquired and used Plaintiff's trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others.

86.     The public policy in favor of protecting Plaintiff's interest in maintaining its trade secrets outweighs any interest Defendants could have in using Plaintiffs' trade secrets.

87.     As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the misappropriation of its trade secrets and loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of trade secrets.

## AS AND FOR A SECOND CAUSE OF ACTION
### Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – All Defendants)

88.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

89.     IME WatchDog operates its business in interstate commerce in New York, New Jersey, and Pennsylvania,  and the trade secrets misappropriated by Defendants are related to, and intended for use in, interstate commerce, as Defendants sought to franchise the business.

90.     As set forth above, Defendants improperly acquired Plaintiff's trade secrets, including information regarding Plaintiff's business, operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, and other confidential business and/or financial information that was secret, valuable in the industry, and had not been disclosed to anyone except Mrs. Levi and Rosenblatt.

91.     The aforementioned documents qualify as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3).   The misappropriated documents concerned Plaintiff's operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, including financial, business, and economic information, plans, methods, techniques, procedures, formulas and processes.

92.     Furthermore, Plaintiff has taken reasonable measures to keep such information secret by, among other things, limiting highly sensitive information to Mrs. Levi and Rosenblatt.

93.     The trade secrets misappropriated by Defendants include the trade secrets which required substantial resources, time and investment by Plaintiff to create and/or develop, and derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Plaintiff's competitors.

94.     Defendants' misappropriation of Plaintiff's trade secrets has caused it to suffer harm, including but not limited to the loss of clients, loss of reputation and customer goodwill, and loss of the confidentiality of, and investment in, its trade secrets.

95.     This harm cannot be adequately remedied at law and requires permanent injunctive relief.  Plaintiff will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendants' continued misappropriation of Plaintiff's trade secrets and failure to return Plaintiff's documents containing Trade Secrets, including Plaintiff's top revenue clients will cause Plaintiff further loss of clients, customers, accounts and/or market share.

96.     This imminent injury is neither remote nor speculative, because Plaintiff has already been harmed in precisely this manner by Defendants' misappropriation and use thereof, and will continue to be irreparably harmed in the absence of a permanent injunction.

97.     Defendants will not suffer harm from the rightful return of Plaintiff's proprietary information and trade secrets, and will not be prevented from conducting their ordinary business.

98.     Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Plaintiff's expense.  The ongoing, continuing and future harm to Plaintiff cannot be adequately remedied at law and requires permanent injunctive relief.

99.     The public interest would not be disserved by the issuance of an injunction preventing Defendants from misappropriating Plaintiff's Trade Secrets.

100.    Accordingly, Plaintiff is entitled to an injunction, pursuant to 18 U.S.C. 1836(b)(3)(A), enjoining Defendants from continuing to use Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Plaintiff's trade secrets, and requiring Defendants to return and/or destroy the trade secrets improperly accessed and retained by Defendants, pursuant to 18 U.S.C. 1836(b)(3)(A)(ii).

### AS AND FOR A THIRD CAUSE OF ACTION
**(Misappropriation – All Defendants)**

101.    IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

102.    Defendants' actions, as set forth herein, constitutes misappropriation under New York law.  Defendants currently possess information belonging to and used in the operation of IME WatchDog's business, which information constitutes confidential, proprietary and trade secret information under New York law.

103.    Such information was developed by IME WatchDog through great effort and expense, in terms of manpower, time and costs, and legal fees, and is extremely valuable to IME WatchDog, as it is crucial to the operation of its business, cannot  be easily acquired or duplicated by others, and, if made available to others, would enable them to compete with IME WatchDog to IME WatchDog's detriment.

104.    IME WatchDog makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to those who, like Rosenblatt, is a corporate officer of IME WatchDog.

17

105.     Upon information and belief, Defendants knowingly  and improperly bribed Rosenblatt to obtain and use such trade secrets and confidential information, violating the law.

106.     The improperly retained information constitute trade secrets and Defendants' actions pose a real and actualized risk that they will and have misappropriated these secrets by using the information to their advantage or for their own personal economic gain and with the willful and malicious intent to injure IME WatchDog's business.

107.     As a result, IME WatchDog has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in anamount to be proven at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Unfair Competition – All Defendants)

108.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

109.     As a result of Defendants' bribery of Rosenblatt to obtain confidential trade secrets, Defendants have stolen customers from IME WatchDog.

110.     As a result of Defendants' use of the trade secrets they bribed Rosenblatt to obtain, Defendants have caused economic damages to IME WatchDog along with diminishing its goodwill.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Tortious Interference – All Defendants)

111.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

112.     Plaintiff has entered into valid written agreements with its clients and customers concerning the provision of IME observer services.

113.     Through their bribery of Plaintiff's key employee and President, Rosenblatt, Defendants were at all relevant times aware of these agreements between Plaintiff and its clients and customers.

114.     Defendants intentionally provided financial incentives in the form of bribes to Rosenblatt to induce him to direct Plaintiff's customers to Defendants in violation of the law.

115.     Defendants' conduct is a crime, codified in New York's Penal Law at §§ 180.03 and 180.00 as Commercial bribery.

116.     Defendants further induced Rosenblatt to obtain and provide Plaintiff's confidential information to Defendants.

117.     Defendants knew that it was illegal to engage in bribery to obtain Plaintiff's confidential information and trade secrets.

118.     Defendants' conduct has caused Plaintiff to lose sales as well as cause injury to Plaintiff's brand and reputation with its clients.

119.     As a consequence of Defendants' acts to steal clients of IME WatchDog, IME WatchDog has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

120.     Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Unjust Enrichment – All Defendants)

121.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

122.     Plaintiff has invested substantial time, money, and effort into developing and maintaining its confidential information and trade secrets in promoting and selling its IME observer services, including its customer & client lists, as well as the forms and checklists Mrs. Levi prepared for IME observers to utilize.

123.     Defendants have used and continue to use Plaintiff's confidential information to compete with Plaintiff and funnel Plaintiff's business opportunities away from Plaintiff to Defendants.

124.     As a result of Defendants' use of Plaintiff's confidential information and trade secrets, Defendants have all been enriched at Plaintiff's expense by, among other things, receiving substantial revenues from sales of services that compete with Plaintiff's services without bearing the expense and risk of identifying the services and developing the clients, customers, marketing plans, and materials necessary to achieve the sales.

125.     As a consequence of Defendants' acts to steal customers of IME WatchDog, IME WatchDog has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Civil Conspiracy – All Defendants)

126.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

127.     Defendants conspired with each other for an unlawful purpose, to wit: obtaining Plaintiff's confidential information and developing a business to compete with Plaintiff using Plaintiff's confidential information obtained by the illegal act of bribery.

128.     Defendants have entered into a civil conspiracy to engage in, *inter alia*, misappropriation, unfair competition, unjust enrichment, and tortious interference with contract.

129.     Defendants each agreed to this common goal.

130.     Defendants acted in concert with the specific object of harming Plaintiff for their own personal gain.

131.     Each Defendant performed an overt act in furtherance of the conspiracy.

132.     The unlawful conduct alleged herein, including acts directed into the State of New York, were committed in furtherance of that conspiracy.

133.     As a result of the Defendants' combined, concerted, and continued efforts, Plaintiff was, is, and continues to be damaged.

134.     As a consequence of Defendants' acts to steal customers of IME WatchDog, IME WatchDog has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Conversion – All Defendants)**

135.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

136.     Plaintiff has a possessory right and legal ownership to the confidential information and trade secrets referenced herein.

137.     Defendants exercised unauthorized dominion over Plaintiff's confidential information and trade secrets.

138.     Defendants   willfully   exercised   unauthorized   dominion   over   Plaintiff's confidential information and trade secrets to the detriment of Plaintiff.

139.     Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets was and is to the exclusion of Plaintiff's rights.

140.     Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets constitutes conversion.

141.     Defendants have thus committed the tort of conversion under New York common law.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Defamation – IME Companions LLC and Safa)

142.     IME WatchDog incorporates by reference each of the foregoing allegations as though fully set forth herein.

143.     The Defendants have published, made, and continue to make defamatory and false statements of fact about Plaintiff and its principal to third parties.

144.     These statements include false allegations to the effect that Plaintiff's principal stole the idea for her business from someone else, is a greedy and ruthless attorney, and that Plaintiff is abusing the law to sue Defendants out of business, constituting defamation *per se*.

145.     The Defendants made, and continue to make, the aforementioned statements knowing they were, and are, false and/or with reckless disregard as to their truth or falsity.

146.     The defamatory statements made by the Defendant are highly injurious to Plaintiff's reputation and good will in its trade or business and within the realm of its business community.  The statements made, and continued to be made by the Defendants are made with actual malice because the statements are designed with the intent of damaging Plaintiff's reputation and good will.

147.    The Defendants' statements were made without privilege or authorization.

148.    As a direct and proximate result of the Defendant' conduct, Plaintiff has suffered special damages consisting of, *inter alia*, reputational harm and loss of good will.

### DEMAND FOR JURY TRIAL

149.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, IME WatchDog hereby demands a trial by jury on all issues so triable in this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor as against Defendants as follows:

a.    Compensatory damages for misappropriation of IME WatchDog's goodwill, misappropriation and unfair competition, violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, tortious interference with contract, business relations, and prospective economic advantage, unjust enrichment, and civil conspiracy according to proof at trial, including but not limited to, lost profits, disgorgement of all profits and revenues received by Defendants, and – to the extent calculable – damages for reputational damage, lost customers, lost relationships, lost revenue, loss of goodwill, corrective advertising, and all other available damages;

b.    Injunctive relief restraining and enjoining Defendants from further violations of the DTSA, including the use of confidential information or trade secrets of Plaintiff, and unfairly competing with Plaintiff in any manner;

c.    Ordering that Defendants return all of IME WatchDog's confidential and proprietary information, including a forensic examination of all of Defendants' computing devices, cellular phones, and cloud storage sites;

d.    Permanently shuttering IME Companions LLC and any prohibiting the individual defendants or their agents from engaging in any similar business, whether directly or indirectly;

e.    Punitive and exemplary damages in an amount to be determined at trial in this case;

f.    Interest (pre-judgment & post-judgment);

g.    Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

h.    Enjoining Defendants from operating their business by virtue of its illegal conduct;

i.    Ordering that Defendants pay the costs of suit, including attorneys' fees; and

j.    Such other and further relief as this Court deems just, equitable, and proper.

Dated: Lake Success, New York
        October 13, 2022

                                   Respectfully submitted,

                                   **MILMAN LABUDA LAW GROUP PLLC**


                                   _____/s_____
                                   Jamie S. Felsen, Esq.
                                   Emanuel Kataev, Esq.
                                   3000 Marcus Avenue, Suite 3W8
                                   Lake Success, NY 11042-1073
                                   (516) 328-8899 (office)
                                   (516) 328-0082 (facsimile)
                                   jamiefelsen@mllaborlaw.com
                                   emanuel@mllaborlaw.com