UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
  IME WATCHDOG, INC.,

                                      Plaintiff,

              -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                                     Defendants.
-----------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

                                Third-Party Plaintiffs,

              -against-

CARLOS ROA,

                                Third-Party Defendant.
-----------------------------------------------------------------X
CARLOS ROA,

                                Third-Party Counter-Claimant,

              -against-

SAFA ABUDLRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

                                Third-Party Counter-Defendants.
-----------------------------------------------------------------X

**Case No.: 1:22-cv-1032 (PKC) (JRC)**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SAFA ABDULRAHIM GELARDI AND IME COMPANIONS LLC'S  MOTION TO DISMISS ITS CAUSE OF ACTION FOR DEFAMATION AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR LEAVE TO AMEND THE COMPLAINT**

    **MILMAN LABUDA LAW GROUP PLLC**
      Jamie S. Felsen, Esq.
      Emanuel Kataev, Esq.
      3000 Marcus Avenue, Suite 3W8
      Lake Success, NY 11042-1073
      (516) 328-8899 (office)
      jamiefelsen@mllaborlaw.com
      emanuel@mllaborlaw.com

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................................... 1

**ARGUMENT**........................................................................................................................ 4

    **I.**    **PLAINTIFF HAS PROPERLY PLED A CLAIM FOR DEFAMATION**
        *per se* ............................................................................................................... 4

    **II.**   **DEFENDANTS CANNOT SEEK REFUGE BEHIND ALLEGED**
        **STATEMENTS OF OPINION** ........................................................................ 7

    **III.**  **DEFENDANTS' REFERENCE TO PLAINTIFF'S PRINCIPAL IS**.......... 9
        **DEFAMATORY** ............................................................................................ 9

    **IV.**  **LEAVE TO REPLEAD MUST BE GRANTED IN THE EVENT OF**
        **DISMISSAL**................................................................................................. 12

    **V.**   **PLAINTIFF'S CROSS-MOTION FOR LEAVE TO AMEND MUST BE**
        **GRANTED**................................................................................................... 13

**CONCLUSION** ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

Armstrong v. Simon & Schuster, Inc.,
    85 N.Y.2d 373 (1995) .................................................................................................. 8

Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.,
    1990 WL 129970 (E.D.N.Y. Aug. 24, 1990) ............................................................. 13

Celle v. Filipino Reporter Enters. Inc.,
    209 F.3d 163 (2d Cir. 2000) .................................................................................... 5, 7

Chicherchia v. Cleary,
    616 N.Y. S.2d 647 (2d Dept. 1994) .......................................................................... 11

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991) ........................................................................................ 12

Cruz v. TD Bank, N.A.,
    742 F.3d 520 (2d Cir. 2013) ...................................................................................... 12

Cuthbert v. Natl. Org. for Women,
    207 A.D.2d 624 (3d Dept. 1994) ............................................................................... 10

Dalbec v. Gentleman's Companion, Inc.,
    828 F.2d 921 (2d Cir. 1987) ...................................................................................... 10

Daytree at Cortland Square, Inc. v. Walsh,
    332 F. Supp. 3d 610 (E.D.N.Y. 2018) ....................................................................... 10

Elliot-Leach v. New York City Dep't of Educ.,
    201 F. Supp. 3d 238 (E.D.N.Y. 2016) ....................................................................... 12

Elliot-Leach v. New York City Dep't of Educ.,
    710 Fed. Appx. 449 (2d Cir. 2017) ............................................................................ 12

Ello v. Singh,
    531 F. Supp. 2d 552 (S.D.N.Y. 2007) ......................................................................... 8

Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.,
    No. 94-CIV.-4518, 1997 WL 26293 (S.D.N.Y. Jan. 22, 1997) ................................. 13

Kirch v. Lib. Media Corp.,
    449 F.3d 388 (2d Cir. 2006) ...................................................................................... 10

Liberman v. Gelstein,
　　80 N.Y.2d 429 (1992) ....................................................................................................... 4

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.,LLC,
　　797 F.3d 160 (2d Cir. 2015)............................................................................................ 12

LPD New York, LLC v. Adidas Am., Inc.,
　　No. 15-CIV.-6360 (MKB), 2022 WL 4450999 (E.D.N.Y. Sept. 24, 2022) ............................ 7

Macineirghe v. Cnty. Of Suffolk,
　　No. 13-CIV.-1512, 2015 WL 4459456 (E.D.N.Y. July 21, 2015) ........................................ 8

Margolies v. Rudolph,
　　No. 21-CIV.-2447 (SJB), 2022 WL 2062460 (E.D.N.Y. June 6, 2022).................................. 7

McKenzie-Morris v. V.P. Records Retail Outlet, Inc.,
　　1:22-CIV.-1138 (GHW), 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022) ............................ 12

Mestecky v. N.Y.C. Dep't of Educ.,
　　791 Fed. Appx. 236 (2d Cir. 2019)....................................................................................... 7

Moraes v. White,
　　No. 21-CIV.-4743, 2021 WL 5450604 (S.D.N.Y. Nov. 22, 2021) ........................................ 8

Neiman–Marcus Co. v. Lait,
　　107 F. Supp. 96 (S.D.N.Y. 1952) ....................................................................................... 11

Prince v. Fox Tel. Stations, Inc.,
　　93 A.D.3d 614 (1st Dept. 2012)......................................................................................... 10

Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp,
　　LLC, 813 F. Supp. 2d 489 (S.D.N.Y. 2011 ........................................................................... 4

Sokolski v. Trans Union Corp.,
　　178 F.R.D. 393 (E.D.N.Y. 1998)....................................................................................... 13

Sorvillo v. St. Francis Preparatory Sch.,
　　607 Fed. Appx. 22 (2d Cir. 2015)......................................................................................... 8

Steinhilber v. Alphonse,
　　68 N.Y.2d 283 (1986) .......................................................................................................... 7

Torain v. Liu,
　　279 Fed. Appx. 46 (2d Cir. 2008)......................................................................................... 8

Travelex Currency Services, Inc. v. Puente Enterprises, Inc.,
　　No. 18-CIV.-1736 (ER), 2019 WL 1259102 (S.D.N.Y. Mar. 19, 2019)................................ 5

Vacold LLC v. Cerami,
    No. 00-CIV.-4024 (AGS), 2002 WL 193157 (S.D.N.Y. Feb. 6, 2002) .................................. 12

Wexler v. Allegion (UK) Ltd.,
    No. 16-CIV.-2252 (ER), 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018) ................................ 10

Zenith Radio Corp. v. Hazeltine Research, Inc.,
    401 U.S. 321, 330 (1971) ..................................................................................................... 13

**Statutes**

Fed. R. Civ. P. 15 ..................................................................................................................... 13

New York Penal Law § 240.50 .................................................................................................. 7

New York Penal Law § 240.55 .................................................................................................. 7

New York Penal Law § 240.60 .................................................................................................. 7

**PRELIMINARY STATEMENT**

Plaintiff IME WatchDog, Inc.'s (hereinafter "Plaintiff" or "IME WatchDog") First Amended Complaint alleges that Defendants Safa Abdulrahim Gelardi ("Safa") and IME Companions LLC ("Companions") engaged in defamation when Safa stated, among other things, that: (i) Plaintiff's principal, Daniella Levi, Esq. ("Mrs. Levi"), "stole" the idea for the business concept behind the services provided by IME WatchDog; (ii) Plaintiff's principal Mrs. Levi is a greedy and ruthless attorney; and (iii) that Plaintiff is abusing the law to sue Defendants out of business.

Defendants engage in all manner of semantics and hone in on Plaintiff's allegations concerning Mrs. Levi to argue that their statements are not defamatory *per se* because the statements made are "of and concerning" Mrs. Levi rather than IME WatchDog, and that the statements made do not impugn business integrity or creditworthiness nor impute incompetence or dishonesty to plaintiff in its profession, trade, or business.

However, this is inaccurate, as Defendants' false statement that Plaintiff's business concept was stolen by its principal in and of itself is defamatory *per se* because, to the average person, a business born out of the theft of someone else's idea necessarily impugns its business integrity and casts a shadow of dishonesty over it.

Moreover, the allegations in the First Amended Complaint that Defendants' statement concerning Plaintiff's principal, Mrs. Levi, is a "greedy and ruthless attorney" is part of a pattern and practice by Defendants to defame Plaintiff. Indeed, the allegations are directly related to forensic discovery that has been uncovered during this litigation that, in addition to utilizing Plaintiff's confidential information to steal Plaintiff's customers, Defendants have engaged in a scheme to defame Plaintiff to steal even more customers of Plaintiff.

Defendants achieved their goal to plunder Plaintiff's business by informing personal injury law firms (including Plaintiff's law firm customers) that they are not "safe" with Plaintiff because it is "owned by a law firm," whereas Defendants are not owned by a law firm and, thus, are "safe" with Defendants. Defendants also falsely stated that Mrs. Levi is known to give kickbacks in order to steal personal injury plaintiffs. Defendants have been spreading lies to Plaintiff's customers that Mrs. Levi is a greedy and ruthless personal injury attorney who utilizes Plaintiff's IME services as a guise to steal personal injury clients.

The allegation in the First Amended Complaint is merely another example of Defendants' ongoing scheme to defame Plaintiff to further its goal to steal Plaintiff's customers. Notwithstanding the foregoing, to err on the side of caution, Plaintiff seeks leave to amend its complaint to add these additional allegations concerning the history of Defendants' defamatory statements.[1]

These statements directly impugn Plaintiff's business integrity because Defendants claim IME WatchDog is designed to steal personal injury plaintiffs from its law firm customers.

Defendants' dastardly acts thus definitely constitute defamation *per se*. To the extent it is necessary to allege the prior defamatory statements by Defendants to further support the basis for the defamatory statement in the GoFundMe page, Plaintiff should be granted leave to file a proposed Second Amended Complaint, discussed further *infra*.

---

[1] At the show cause hearing on April 4, 2022, Plaintiff presented evidence of Defendants' direct disparagement of Plaintiff. See ECF Docket Entry 46-1 at 43:16-45:17, 66:13-67:19 ("Q *You emphasize in the first paragraph of your e-mail that we are not a law firm*, correct? **A Correct.** Q In the second paragraph, second sentence, you stated *IME WatchDog does have the reputation of stealing clients because the owner who is an attorney provides kickbacks to her Watchdogs*, correct? … Q You stated this in an e-mail to Mr. Cherny, correct? **A If that's what it says, yes.** Q *You also said that those clients can easily -- can be easily traced back to Daniella Levi*, correct? **A Correct.** Q In this e-mail, *you disparaged Mrs. Levi and said to Mr. Cherny that she stole Watchdog clients*, correct? **A No.**"); see also Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl.") ¶ 4, Ex. C (January 18, 2019 e-mail).

2

Defendants also argue that their separate statements made on social media concerning Plaintiff constitute nonactionable opinion and, therefore, the defamation claim must be dismissed. This argument is meritless for several reasons. First, Defendants have falsely stated that Plaintiff's business model is built on a concept stolen by its principal, which statement is not an opinion but is a fact that can be readily determined as true or false. Second, Plaintiff has cross-moved to amend the pleadings to assert defamation on entirely different statements. Third, the statements Defendants made in Safa's combined Facebook-GoFundMe page post are all false and impugn Plaintiff's business integrity; specifically: (i) "[s]he is suing us out of business solely because she cannot compete;" (ii) "[she] is refusing to settle because agian [*sic*] her tactic is to sue us out of business;"[2] (iii) Plaintiff's allegations of bribery are false; (iv) Plaintiff's principal herself stole the idea for Plaintiff's business model from someone else twelve years ago; and (v) Plaintiff obtained so-called "inside information" from Defendants' employee for months, insinuating improper conduct.

Finally, Defendants argue that the defamatory statements are not "of and concerning" Plaintiff, but – rather – its principal.

This argument is similarly unavailing, as Mrs. Levi stands as the face of IME WatchDog in that she built the business by speaking to the colleagues she works with and sees in court on a day-to-day basis. Both the Second Circuit and the Appellate Division have found the owners of a business intertwined with the business in assessing the "of and concerning" requirement for defamation claims and denied motions to dismiss in that regard.

Indeed, at the pre-motion conference before this Court on December 6, 2022, this Court specifically rejected Defendants' argument in this regard.

---

[2] Plaintiff submitted a written settlement offer to Defendants at their request on June 6, 2022; Defendants never responded to the offer.

3

Moreover, as this Court also recognized, the average reader would – and at least one reader who was a personal injury attorney *did* – recognize that Defendants were writing about Plaintiff and Mrs. Levi. See Declaration of Jonathan D. Warner, Esq. (hereinafter "Warner Decl.") at ¶ 4, Ex. C. There is thus no basis to argue that Defendants' defamatory statements were not "of and concerning" Plaintiff. See Kataev Decl. ¶ 4, Ex. B at 4:7-6:4, 22:2-24, 23:22-24:15 ("I reject the argument that there is any daylight between Ms. Levi and the company because of some of the reasons that you said, but more because ultimately everything is linked back to the actual case and WatchDog is clearly the business and the business is referred to throughout this allegedly defaming statement").

Accordingly, Defendants' motion to dismiss the defamation claim must be denied

## ARGUMENT

### I. Plaintiff has Properly Pled a Claim for Defamation *per se*

"Defamation *per se* consists of … the following [as relevant here]: (1) a statement charging an individual with a serious crime; [or] (2) a statement that tends to injure another in his trade, business, or profession; …'" See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 433-34 (1992)). Relevant here, a statement that injures another in his trade, business, or profession "must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities." See Liberman, 80 N.Y.2d at 436. Put differently, "[t]he allegedly defamatory statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession or office itself.'" See Pure Power Boot Camp, 813 F. Supp. 2d at 550 (quoting Liberman, 80 N.Y.2d at 436).

4

Whether a defamatory statement constitutes defamation per se is context specific. See Travelex Currency Services, Inc. v. Puente Enterprises, Inc., No. 18-CIV.-1736 (ER), 2019 WL 1259102, at *8–9 (S.D.N.Y. Mar. 19, 2019).

As the Second Circuit has explained:

> The line between statements that are defamatory *per se* and those that require proof of special damages remains fuzzy. One useful general rule is that a writing which tends to disparage a person in the way of his office, profession or trade is defamatory *per se* and does not require proof of special damages. A related rule is that [w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed.

See Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 179-180 (2d Cir. 2000) (citations and internal quotation marks omitted).

In Travelex Currency Services, *supra*, Travelex defamed PEI after terminating their business relationship because its CEO wrote to DFW Airport and falsely claimed that PEI was engaged in criminal activity at DFW and IAH Airports, which included making "illegal claims on Texas unemployment insurance, that PEI was a "bad actor" and was "earning millions on the backs of unprotected workers at DFW Airport. See Travelex Currency Services, Inc., No. 18-CIV.-1736 (ER), 2019 WL 1259102, at *3.

The court in Travelex specifically reasoned that because Travelex, through Hewitt, allegedly made statements tending to disparage and impugn the basic integrity and creditworthiness of PEI as a business, and that the statements specifically accused PEI of insurance fraud and other wrongful acts, this was sufficient to state a claim upon which relief can be granted for defamation. See Travelex Currency Services, Inc., No. 18-CIV-1736 (ER), 2019 WL 1259102, at *9.

The facts are no different here.

5

Specifically, Safa – as the principal of Companions, and in an effort to build her business that she had been attempting to steal from Plaintiff – made statements that: (i) Plaintiff's business model was built on theft; (ii) Plaintiff "used" an employee of Defendants for "inside information;" and (iii) Plaintiff is suing Defendants solely because it cannot compete with Defendants; and (iv) Plaintiff has made false accusations of bribery regarding Defendants.  See Kataev Decl. ¶ 3, Ex. A at ¶¶ 3, 62-78, 147-155.

Defendants argue to the contrary by placing their head in the sand concerning the Facebook post and focusing solely on the GoFundMe page.  This obviously does not suffice.

In addition, the defamatory statement contained in the First Amended Complaint was made in furtherance of Defendants' prior defamatory statements to impugn the business integrity of IME WatchDog by falsely stating it is used as a funnel for Plaintiff's principal to poach personal injury plaintiffs to her own law firm from law firm customers.  Defendants' message has been clear: law firms should not utilize IME WatchDog because doing so will result in the law firms losing their personal injury clients to IME WatchDog's principal who is a personal injury lawyer just like all of IME WatchDog's clients.  All of the foregoing statements are defamatory *per se* because they directly impugn the integrity of IME WatchDog as a business.

By stating that Plaintiff's principal stole the idea for her business model, Defendants inform the personal injury legal community that Plaintiff is operated by an untrustworthy individual.  By stating that Plaintiff used Defendants' employee for inside information, Defendants impugn upon Plaintiff the very conduct Defendants are charged with in this case.  By stating that Plaintiff's pursuit of these claims is motivated by anticompetitive measures hurts Plaintiff's reputation because it tells the personal injury legal community that Plaintiff will take improper means to defeat its competition.

Finally, by stating that Plaintiff has made false accusations of bribery against Defendants, they are impugning Plaintiff with the commission of a crime, as it is unlawful to state someone committed a crime if it is not true. See New York Penal Law §§ 240.50, 240.55, and 240.60 (falsely reporting an incident in the third, second, and first degree, respectively).

Accordingly, Plaintiff sufficiently pled a claim for defamation *per se*. To the extent it is determined she has not, Plaintiff respectfully submits that it has sufficiently pled special damages in its proposed second amended complaint.

**II.     Defendants cannot seek refuge behind alleged statements of opinion**

"Ordinarily, opinion statements have absolute protection, and are non-actionable since they are 'not capable of being objectively characterized as true or false.'" See LPD New York, LLC v. Adidas Am., Inc., No. 15-CIV.-6360 (MKB), 2022 WL 4450999, at *16 (E.D.N.Y. Sept. 24, 2022) (citing Mestecky v. N.Y.C. Dep't of Educ., 791 Fed. Appx. 236, 239 (2d Cir. 2019).

In determining whether a statement is a factual assertion—as opposed to a nonactionable opinion—a court examines three factors: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] ... readers or listeners that what is being read or heard is likely to be opinion, not fact. See Margolies v. Rudolph, No. 21-CIV.-2447 (SJB), 2022 WL 2062460, at *4 (E.D.N.Y. June 6, 2022).

"[T]he 'essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were ... written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.'" See Celle, 209 F.3d at 178 (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 290 (1986)).

"Court[s] [consider] the import of the post[ ] holistically, without attempting to artificially disentangle fact from opinion." See Moraes v. White, No. 21-CIV.-4743, 2021 WL 5450604, at *11 (S.D.N.Y. Nov. 22, 2021). "At bottom, the inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff." See Torain v. Liu, 279 Fed. Appx. 46, 46 (2d Cir. 2008).

In addition, generally, a plaintiff must allege specific false statements made by the defendant to adequately plead defamation. See Sorvillo v. St. Francis Preparatory Sch., 607 Fed. Appx. 22, 24 (2d Cir. 2015).

However, one exception to this rule is defamation by implication, which is "premised not on direct [false] statements but on false suggestions, impressions and implications arising from otherwise truthful statements." Id. (quoting Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 380-81 (1995)).

Defamation by implication "occurs where '[a] combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff.'" See Macineirghe v. Cnty. Of Suffolk, No. 13-CIV.-1512, 2015 WL 4459456, at *10 (E.D.N.Y. July 21, 2015) (internal quotations and citation omitted). To prevail on a claim of defamation by implication, a plaintiff generally must "show that the defendants intended such implication when making the statement at issue." Id. (quoting Ello v. Singh, 531 F. Supp. 2d 552, 580 (S.D.N.Y. 2007)). Ultimately, "[t]he Court must decide, as a matter of law, whether the challenged statements are opinion." Id. (citations omitted).

Here, Defendants made statements that Plaintiff "stole" the idea behind its business, used an employee of Defendants for inside information, instituted this lawsuit as a means of competing with Defendants, and falsely accused Defendants of committing a crime.

8

All of these statements are those of fact, not opinion, as one can readily determine whether: (i) something was "stolen;" (ii) an employee was "used" for inside information; (iii) a lawsuit was "filed" or "instituted" for the purpose of engaging in anti-competitive measures; and (iv) whether Plaintiff's accusation of Defendants having engaged in bribery is false. Therefore, none of these statements can be determined to constitute non-actionable opinion.

In addition, although not specifically alleged in the First Amended Complaint, discovery has just recently uncovered that Defendants routinely informed Plaintiff's customers that Plaintiff's business was designed by Mrs. Levi as a ruse for her to steal Plaintiff's customers' personal injury plaintiffs and retain them as clients for her personal injury law firm.

This conduct, which Plaintiff has evidence last occurred in May 2022[3] and which Plaintiff requests leave to include in its proposed Second Amended Complaint, constitutes defamation *per se*, with the implication being that because Defendants are not owned by a law firm, their customers are "safe." None of these allegations are opinion. And Defendants made these statements solely to encourage Plaintiff's customers to take their business from Plaintiff to Defendants.

Accordingly, the conduct Plaintiff complains of does not constitute non-actionable opinion.

## III. Defendants' Reference To Plaintiff's Principal is Defamatory

Defendants argue that because Mrs. Levi was directly defamed, Plaintiff could not have been defamed. However, Plaintiff does not allege that Mrs. Levi was independently defamed.

Indeed, Plaintiff alleges Defendants made and continue to make defamatory statements about "Plaintiff and its principal." See Kataev Decl. ¶ 3, Ex. A at ¶ 148.

---

[3] Plaintiff submits that this conduct also constitutes a violation of the Amended Preliminary Injunction. See ECF Docket Entry 80 at 3 ¶ D ("The parties are preliminarily enjoined from making any statements to third parties, oral or written, regarding this case, that can be construed as misleading and any statements about each other that can be construed as defamatory and/or disparaging").

9

Moreover, "[c]ourts have allowed claims where the statement did not identify the plaintiff, [and instead] named an individual who was understood to represent that plaintiff." See Daytree at Cortland Square, Inc. v. Walsh, 332 F. Supp. 3d 610, 632 (E.D.N.Y. 2018) (statement about a company – Daytree – was "of and concerning" two individuals – the Datres – because "(1) the Datres were the only principals of Daytree, and 'as the owners of such [a] closely-held corporation,' their 'personal reputations are inseparably intertwined,' (2) '"Daytree" is a homophone for "Datre,' " and (3) '[p]ublic response ... [demonstrated that the Datres and Daytree] received equal and distinctly separate harm'"); see also Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921, 923 (2d Cir. 1987) (finding statement identifying plaintiff by her maiden name and address qualified as "of and concerning" plaintiff because the audience "need[ed] only believe that it was about her"); Wexler v. Allegion (UK) Ltd., No. 16-CIV.-2252 (ER), 2018 WL 1626346, at *9 (S.D.N.Y. Mar. 30, 2018) (statement identifying a company – Zero – was "of and concerning" the plaintiff – Wexler – because "[a]ccording to Wexler, his wide-spread reputation in the industry made him 'synonymous with Zero' and people in the industry would have understood that a reference to 'old Zero management' was effectively a reference to Wexler"); Prince v. Fox Tel. Stations, Inc., 93 A.D.3d 614 (1st Dept. 2012) (affirming denial of defendants' motion to dismiss defamation claim, in which motion court found that news broadcast was of and concerning plaintiff, even though, on its face, broadcast referred to different entity with similar name, as statement reasonably understood to be about plaintiff); Cuthbert v. Natl. Org. for Women, 207 A.D.2d 624, 625-26 (3d Dept. 1994) (statement referring to person easily identified as plaintiff actionable); Kirch v. Lib. Media Corp., 449 F.3d 388, 399 (2d Cir. 2006) (noting that a statement may be defamatory where, "though not naming the plaintiff, [it] could have been understood by a reasonable reader as being, in substance, actually about [it]").

Indeed, "[t]he reference to the party alleging defamation may be indirect and may be shown by extrinsic facts." See Chicherchia v. Cleary, 616 N.Y. S.2d 647, 648 (2d Dept. 1994).

Here, any statement concerning Mrs. Levi is readily intertwined with Plaintiff, especially where – as Defendants wrote in the Facebook post – the comments relate to Mrs. Levi's company, IME WatchDog, Inc.

Accordingly, Defendants cannot seek refuge behind the illusory claim that none of her statements are defamatory as to the Plaintiff, as opposed to Mrs. Levi, both because Mrs. Levi and the Plaintiff are inextricably intertwined (as evidenced by an attorney's quick connection between her post and this case on Facebook),[4] and because the GoFundMe page together with the Facebook posts can easily be inferred to discuss Plaintiff such that those who know the Plaintiff understand what Safa meant by her post.

Indeed, the entire crux of the Facebook and GoFundMe posts along with Defendants' prior defamatory statements dissuading Plaintiff's customers from using Plaintiff because Mrs. Levi utilizes Plaintiff as a ruse to steal personal injury clients is to destroy Plaintiff's business by having Plaintiff's customers bring their business to Defendants.

Moreover, the argument that Safa merely made non-actionable statements of opinion similarly carries no water. When Safa stated that "she was in contact with my employee and for months used him for inside information against me," this statement constituted defamation as to the way Plaintiff conducts its business.

It therefore bears emphasis that "[a] corporation may be defamed by words directed at its employees if they are such as to discredit the method by which its business is conducted." See Neiman–Marcus Co. v. Lait, 107 F. Supp. 96, 101 (S.D.N.Y. 1952).

---

[4] See Warner Decl. ¶ 4, Ex. C.

11

In that regard, Defendants focus on the statements made in the GoFundMe page myopically fail to acknowledge the other defamatory statements she made.

Accordingly, Defendants' defamatory statements were "of and concerning" Plaintiff.[5]

## IV.     Leave to Replead Must Be Granted in the Event of Dismissal

In the event that dismissal is granted, Plaintiff respectfully seeks leave to amend, which shall be freely given when justice so requires. See Fed. R. Civ. P. 15(a). Indeed, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" See Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also Vacold LLC v. Cerami, No. 00-CIV.-4024 (AGS), 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016), aff'd, 710 Fed. Appx. 449 (2d Cir. 2017).

Moreover, "[w]ithout the benefit of a ruling [from the Court], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." See McKenzie-Morris v. V.P. Records Retail Outlet, Inc., 1:22-CIV.-1138 (GHW), 2022 WL 18027555, at *12 (S.D.N.Y. Dec. 30, 2022) (citing Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015).

Accordingly, leave to replead should be granted to the extent Defendants succeed on their motion to dismiss and any deficiencies are identified by the Court.

---

[5] Defendants argue, without any authority, and in a conclusory manner, that the defamation claims against Companions should be dismissed because Plaintiff failed to identify any allegedly defamatory statement made by Companions. This argument must be rejected, as Safa's Facebook page contains the business logo of Companions such that a reasonable reader could attribute it to Companions.

**V.      Plaintiff's Cross-Motion for Leave to Amend Must Be Granted**

Rule 15(a) of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule") provides that a court "should freely give leave [to amend] when justice so requires." See Fed. R. Civ. P. 15(a)(2). The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." See Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citation omitted).

Further, amendments are generally favored because they "tend to facilitate a proper decision on the merits." See Sokolski v. Trans Union Corp., 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks omitted) (quoting Junior Gallery, Ltd. v. Neptune Orient Line, Ltd., No. 94-CIV.-4518, 1997 WL 26293, at *2 (S.D.N.Y. Jan. 22, 1997)). The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).

Here, Plaintiff became aware at the show-cause hearing of a January 18, 2019 e-mail from Defendants to one of its law firm customers that emphasized Defendants were not a law firm, identified Plaintiff as having a reputation for stealing personal injury clients because the owner who is an attorney provides kickbacks to her agents, and that those personal injury clients can easily traced back to Mrs. Levi. See ECF Docket Entry 46-1 at 43:16-45:17, 66:13-67:19; see also Kataev Decl. ¶ 5, Ex. C. This pattern and practice palpably continued over the years, with the most recent example of same occurring on May 18, 2022, after the filing of this lawsuit and just five (5) days after this Court Ordered the parties to refrain from, among other things, making any statement that can be misconstrued as defamatory, and later codifying this Order in an Amended Preliminary Injunction. See ECF Docket Entries 46-1 at 164:22-165:1 and 80 at 3 ¶ D.

13

Plaintiff only learned about this May 18, 2022 defamatory statement after January 12, 2023 during discovery following production by the forensic examiner in this case.

By reiterating to law firm customers that Defendants are not a law firm following a telephone call in which Defendants are alleged to have stated that the law firm customer's personal injury plaintiffs are not safe with IME WatchDog, Plaintiff has adequately stated a claim for relief on its defamation claim, both directly and by implication.

Therefore, because evidence of this additional defamatory statement (made within one year such that they are not beyond the statute of limitations) came to light only recently due to the production of discovery by the forensic analyst, Plaintiff must be permitted leave to amend its complaint to add further allegations supporting and bolstering its defamation claim. Indeed, there is no evidence of bad faith, undue delay, or prejudice to Defendants in granting this relief.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss the cause of action for defamation must be denied, and Plaintiff's cross-motion for leave to amend the complaint must be granted.

Dated: Lake Success, New York
       February 6, 2023                 Respectfully submitted,

                                               **MILMAN LABUDA LAW GROUP PLLC**
                                                 _____/s_____
                                                 Jamie S. Felsen, Esq.
                                                 Emanuel Kataev, Esq.
                                                 3000 Marcus Avenue, Suite 3W8
                                                 Lake Success, NY 11042-1073
                                                 (516) 328-8899 (office)
                                                 (516) 328-0082 (facsimile)
                                                 jamiefelsen@mllaborlaw.com
                                                 emanuel@mllaborlaw.com

                                                 *Attorneys for Plaintiff*
                                                 *IME WatchDog, Inc.*

**VIA ECF**
Warner & Scheuerman
<u>Attn</u>: Jonathan D. Warner, Esq.
6 West 18th Street, 10th Floor
New York, NY 10011-4602
(212) 924-7111 (telephone)
(646) 692-0166 (direct dial)
(212) 924-6111 (facsimile)
jdwarner@wslaw.nyc

*Attorneys for Defendants*
*Third-Party Plaintiffs*
*Third-Party Counterclaim Defendants*
*Safa Abdulrahim Gelardi*
*Vito Gelardi, and*
*IME Companions LLC*

**VIA ECF**
Leo Shalit, P.C.
Attn: Leo Shalit, Esq.
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481 (facsimile)
leo@shalit-law.com

*Attorneys for*
*Third-Party Defendant*
*Carlos Roa*

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804

15