UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IME WATCHDOG, INC.,

                    Plaintiff,

    -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                    Defendants.
------------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

                    Third-Party Plaintiffs,

    -against-

CARLOS ROA,

                    Third-Part Defendant.
------------------------------------------------------------------X
CARLOS ROA,

                      Third-Party Counter-Claimant,

    -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

                    Third-Party Counter-Defendants.
------------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC)(JRC)

**REPLY MEMORANDUM OF LAW OF DEFENDANTS SAFA ABDULRAHIM GELARDI AND IME COMPANIONS LLC IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S NINTH CAUSE OF ACTION IN THE AMENDED COMPLAINT**

**WARNER & SCHEUERMAN**
Attorneys for Defendants
Safa Abdulrahim Gelardi, Vito Gelardi
and IME Companions, LLC
6 West 18th Street, 10th Floor
New York, New York 10011
(212) 924-7111

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

REPLY STATEMENT ENT OF FACTS.......................................................................................1

REPLY ARGUMENT ..............................................................................................................6

POINT I:  DEFENDANTS DID NOT MAKE ANY STATEMENT
OF FACT WHICH IMPUGNED THE BASIC INTEGRITY
OR CREDITWORTHINESS OF PLAINTIFF'S BUSINESS...........................6

CONCLUSION.......................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

Enigma Software Group USA, LLC v. Bleeping Computer LLC,
194 F.Supp.3d 263 (S.D.N.Y. 2016)..................................................................................9-10

Executive Trim Constr., Inc. v. Gross, 525 F.Supp.3d 357 (N.D.N.Y. 2021)......................................9

Kforce, Inc. v. Alden Personnel, Inc., 288 F.Supp.2d 513 (S.D.N.Y. 2003)........................................9

Mapinfo Corp. v. Spatial Re-Engineering Consultants, 2006 WL 2811816 (N.D.N.Y. 2006).............8

Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,
813 F.Supp.2d 489 (S.D.N.Y. 2011).....................................................................................5-6;7

Shea v. Angulo, 1994 WL 86374 (S.D.N.Y. 1994)..............................................................................8

Thorsen v. Sons of Norway, 996 F.Supp.2d 143 (E.D.N.Y. 2014).....................................................10

Travelex Currency Services, Inc. v. Puente Enterprises, Inc.,
2019 WL 1259102 (S.D.N.Y. 2019)....................................................................................7-8

## REPLY STATEMENT OF FACTS

The instant reply statement of facts has been necessitated by the dishonesty of plaintiff's opposing Memorandum of Law in distorting and embellishing plaintiff's allegations of defamation and in commingling plaintiff's newly-concocted (and time-barred) allegations of defamation in its proposed Second Amended Complaint with the allegations of defamation in its First Amended Complaint.

At the pre-motion conference held on December 6, 2022, the Court made it clear that the central issue on this motion would be whether Safa's statements concerning plaintiff's use of aggressive litigation tactics against Companions were sufficient to state a claim sounding in defamation *per se*, to wit: whether Safa's statements impugned the basic integrity, competence and creditworthiness of plaintiff's business as an "IME watchdog." The statements were made in Safa's GoFundMe Page and Facebook Post and were set forth at ¶'s 67 and 70 of plaintiff's First Amended Complaint. The Court specifically requested caselaw addressing whether statements concerning a company's aggressive litigation tactics against a competitor impugn the basic integrity, competence and creditworthiness of the company's business.

Confronted with ample caselaw showing that Safa's statements concerning plaintiff's bullying litigation tactics are insufficient to state a claim of defamation *per se* and lacking any evidence of special damages, plaintiff has resorted to misrepresenting its own First Amended Complaint and the alleged defamatory statements pled therein. Plaintiff repeatedly states in its Memorandum of Law that its defamation claim is based upon Safa's statements that plaintiff had "stolen" its business idea. Plaintiff even puts the words "stole" and "stolen" in quotes to show that Safa is being quoted. Plaintiff states in its Memorandum of Law that the "First Amended Complaint…

alleges, among other things, [that] Safa stated... that... Plaintiff's principal, Daniella Levi, Esq... 'stole' the idea for the business concept behind the services provided by IME Watchdog...." Plaintiff argues that "Defendants' false **statement** that Plaintiff's business concept was **stolen** by its principal is in and of itself defamatory *per se* because, to the average person, a business born out of the **theft** of someone else's idea necessarily impugns its business integrity and casts a shadow of dishonesty over it." (Emphasis added). Plaintiff repeats on seven separate occasions that Safa had "stated" that plaintiff had "stolen" its business model.

The truth, however, is that plaintiff did **not** allege in its First Amended Complaint that Safa had "stated" that Levi had "stolen" plaintiff's business model. The word "stole" does not appear in ¶67 of the First Amended Complaint, where plaintiff sets forth the alleged defamatory statements from Safa's GoFundMe Page. The word "stole" does not appear in ¶70 of the First Amendment Complaint, where plaintiff sets forth the alleged defamatory statements from Safa's Facebook Post. Nor does the word "stole" appear in either the GoFundMe Page or the Facebook Post, which defendants attached to their moving papers to ensure that the Court would see the actual words used by Safa. A review of the actual words employed by Safa prove that "stole" is a self-serving attribution by plaintiff concocted in an attempt to tailor the facts to fit the law.[1]

Similarly deceptive is plaintiff's attempt to save its defamation claim by accusing Safa of stating that Levi had committed a crime. Not only is this allegation nowhere to be found in plaintiff's First Amended Complaint (or in its Proposed Second Amended Complaint), but it is based upon yet another distortion of the words actually used by Safa coupled with a self-serving

---

[1] IME used the word "stole" at ¶144 of its First Amended Complaint, but did not allege that Safa had used the word "stole" or had "stated" that the business idea had been "stolen."

interpretation of New York's Penal Law. Plaintiff's new and unpleaded claim that Safa committed defamation *per se* by accusing plaintiff of a crime is based upon Safa's response, "I never bribed anyone...," to a Facebook comment made by Jason Paris stating that "[i]t seems like you... bribed her employee." Accordingly, pursuant to plaintiff's unpleaded theory of liability, if someone simply denies an accusation of commercial bribery in a civil litigation, such person is committing defamation *per se* by implying that the accuser had made a false report of criminal conduct. Putting aside the apparent absurdity of plaintiff's newly-concocted theory of liability, the fact remains that the sections of the Penal Law cited by plaintiff only make it illegal to falsely report an incident. Even plaintiff lacks the temerity to maintain that Safa had accused plaintiff of falsely reporting an incident.

Plaintiff concedes the deficiencies in its First Amended Complaint by cross-moving to amend in response to defendants' motion and by conflating its proposed Second Amended Complaint with its First Amended Complaint in its opposing arguments. Indeed, plaintiff repeatedly cites to the newly-minted allegations in its proposed Second Amended Complaint as "proof" that its First Amended Complaint states a claim of defamation *per se*, although plaintiff has not been granted leave to amend for a second time. Plaintiff argues throughout its Memorandum of Law that defendants committed defamation *per se* by making "defamatory statements to impugn the business integrity of IME Watchdog by falsely stating it is used as a funnel for Plaintiff's principal to poach personal injury plaintiff to her own law firm from law firm customers."

But plaintiff's argument that defendants had defamed plaintiff by <u>allegedly</u> stating that plaintiff's business is used by Levi as a funnel to steal personal injury clients from plaintiff's law firm customers is based solely upon the new allegations of defamation set forth in plaintiff's proposed Second Amended Complaint, which allegations are irrelevant to whether plaintiff's First Amended

Complaint states a claim. To make matters worse, plaintiff's new claim of defamation *per se* is based upon matters which have allegedly occurred "[s]ince in or about November 2017," although the tort of defamation is subject to a one-year Statute of Limitations. Moreover, plaintiff's claim that this alleged defamatory statement has been repeated within the one-year limitation period is based upon non-party Eugene Liddie's email of May 18, 2022 (the "May 18th Email"), which makes no reference to either IME or Levi and does not accuse anyone of stealing any clients.

The May 18th Email submitted as "proof" that defendants have been defaming plaintiff by telling others that plaintiff is used by Levi as a funnel to steal personal injury clients contains nothing more than self-promotional statements, explaining why the email's recipient should hire Companions. Neither plaintiff nor Levi are mentioned, much less disparaged. Not a single statement in this email could reasonably be construed to be "of and concerning" plaintiff. Nor could any statement be construed as defamatory, let alone as defamatory *per se*. The May 18th Email does not state that either plaintiff or Levi steal personal injury clients. Nor does it imply that plaintiff or Levi steal personal injury clients.

We beseech the Court to review the actual writings (the May 18th Email, the GoFundme Page and the Facebook Post) when determining whether defendants made any statements which impugned the basic business integrity, competence and creditworthiness of plaintiff's business. The writings must be reviewed for their actual content since plaintiff cannot be trusted to accurately state or quote the contents of any of the statements upon which plaintiff's defamation claim purports to stand.

Plaintiff has again failed to demonstrate that it sustained special damages. Plaintiff has simply alleged at ¶154 of its proposed Second Amended Complaint that "[t]he defamatory

statements have caused special damages in the form of lost business from both existing customer law firms and prospective customer law firms...," without identifying any of the customers which were allegedly lost and without itemizing any of its alleged special damages.

Plaintiff's failure to adequately plead special damages in its proposed Second Amended Complaint is particularly egregious in light of plaintiff's counsel's statements on the record at the pre-motion conference that plaintiff would attempt to circumvent the instant motion by amending its complaint to plead special damages by December 19, 2022. Plaintiff instead waited until February 6, 2023 to serve a cross-motion to amend, and its proposed Second Amended Complaint fails to set forth any special damages.

## REPLY ARGUMENT

### DEFENDANTS DID NOT MAKE ANY STATEMENT OF FACT WHICH IMPUGNED THE BASIC INTEGRITY OR CREDITWORTHINESS OF PLAINTIFF'S BUSINESS.

Plaintiff's opposing papers confirm that plaintiff has failed to state a claim of defamation *per se* based upon the actual words used by Safa on social media. Indeed, plaintiff concedes at pg. 4 of its Memorandum of Law, when citing Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F.Supp.2d 489 (S.D.N.Y. 2011), that the alleged defamatory statements must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is incompatible with the proper conduct of the business, trade, profession or office itself. Plaintiff has failed to cite any statement actually made by Safa which targeted the specific standards of performance relevant to plaintiffs business and which imputed conduct that is incompatible with the proper conduct of plaintiff's business as an IME "watchdog." Nor has plaintiff cited any case showing that the allegations in its First Amended Complaint

concerning plaintiff's use of "bullying" litigation tactics are sufficient to state a claim of defamation *per se*.

Plaintiff's reliance on Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, confirms the complete absence of any authority supporting plaintiff's defamation claim. In Pure Power, the Court **dismissed** the plaintiff's defamation per se claim, although the defendant had stated that plaintiff's principal: (a) "hated homosexuals;" (b) treated her employees "like garbage;" (c) was a "loose cannon;" (4) fired an employee because he was gay; and (e) was a "liar." The Pure Power Court held:

> While the Court concludes, as a factual matter, that Defendant Lee denigrated Brenner and Pure Power to Pure Power clients, as a legal matter Lee's statements do not rise to the level of defamation. Plaintiffs failed to adduce any competent evidence showing that any statements made by Lee caused pecuniary or economic harm to Brenner, or to Pure Power more generally. Moreover, Plaintiffs have failed to establish that any of the alleged statements made by Lee constitute defamation per se. Lee did not allege that Brenner committed a serious crime or had a "loathsome disease," or that Brenner was unchaste. Although some of Lee's statements did indirectly touch upon the manner in which Brenner operated Pure Power, Plaintiffs have failed to establish that any of Lee's statements would tend to injure Brenner in her trade, business, or profession. The statements that Brenner treated her employees "like garbage" and fired an employee because he was gay are not sufficiently targeted at the specific standards of performance relevant to her duties as the owner of Pure Power to qualify as defamation per se. These statements do not impute fraud or misconduct to Brenner, nor do they suggest a general unfitness, incapacity, or inability to perform her duties. Further, the statements that Brenner "hates homosexuals" and was "a loose cannon" and a liar do not specifically reflect upon her competence as a fitness instructor or as an owner of Pure Power, but, rather, constitute a "more general reflection" upon Brenner's character and, therefore, do not fall within the "trade, business, or profession" exception.

813 F.Supp.2d at 550-551[2].

Plaintiff's heavy reliance on the readily distinguishable case of Travelex Currency Services, Inc. v. Puente Enterprises, Inc., 2019 WL 1259102 (S.D.N.Y. 2019) is similarly misplaced. In Travelex, unlike the present case, the defendants impugned the basic integrity of plaintiff PEI as a business by telling an airport client of PEI that: (a) PEI had engaged in criminal activity at the airport by "making illegal claims on Texas insurance;" (b) PEI was a "bad actor" which earned "millions on the backs of unprotected workers;" and (c) PEI's actions could expose the airport to "significant liability." In short, the defendants told the plaintiff's airport client that plaintiff had engaged in wage theft and insurance fraud in connection with the services plaintiff rendered for the airport, while warning the airport that it could face liability due to plaintiff's misconduct. Recognizing that these false statements targeted the actual services provided by PEI at the airport, the Travelex Court held that they were sufficient to state a claim of defamation *per se* against a corporation. The Travelex Court held:

> Relevant here, a statement that injures another in his trade, business, or profession "must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities." Put differently, "[t]he allegedly defamatory statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession or office itself.'"
>
> Travelex, through Hewitt, allegedly made statements tending to disparage and impugn the basic integrity and creditworthiness of PEI as a business: Indeed, the statements specifically accused PEI of insurance fraud and other wrongful acts. What's more, Hewitt

---

[2] The Pure Power Court further held that "with the exception of Lee's statements regarding Brenner's firing of one of her drill instructors, the Court finds the remaining allegedly defamatory statements to be statements of pure opinion, and not fact." Safa's statements here were likewise opinion rather than fact.

-7-

>mentioned that DFW Airport could be subjected to "significant liability" unless DFW acted in response to PEI's misdeeds as a "bad actor."

2019 WL 1259102*8-9 (Citations omitted).

While plaintiff argues that "[t]he facts are no different here," the truth is that the facts are vastly different here where plaintiff has failed to identify any statement made by Safa which impugned the basic integrity and creditworthiness of plaintiff as a business or which targeted the specific standards of performance relevant to plaintiff's business. Plaintiff is in the business of attending independent medical examinations of personal injury plaintiffs on behalf of plaintiffs' attorneys. The basic integrity of plaintiff's business pertains to whether it provides those services to its customer law firms in a competent and honest manner. Safa never made any statement impugning improper conduct by plaintiff in the exercise of its basic core mission as an "IME watchdog." Safa merely stated that plaintiff was attempting to bully and sue Companions out of business with its superior finances and legal connections. But how plaintiff treats its competitors in Court (or how plaintiff's owner came up with its business idea in the first place) is not central to plaintiff's business. Plaintiff is not a law firm, meaning that any comments made concerning plaintiff's litigation tactics or the greed and ruthlessness of its attorney owner are insufficient to state a claim. See Shea v. Angulo, 1994 WL 86374*3 (S.D.N.Y. 1994); Mapinfo Corp. v. Spatial Re-Engineering Consultants, 2006 WL 2811816, note 18 (N.D.N.Y. 2006).

Plaintiff acknowledges the deficiencies in its First Amended Complaint by conjuring up new allegations of defamation in opposition to defendants' motion to dismiss. In fact, plaintiff does not even argue in opposition that Safa's statements that Levi was attempting to bully and sue Companions out of business impugned the basic integrity of plaintiff's business. Nor does plaintiff

attempt to argue that Safa's description of Levi as a greedy and ruthless attorney impugned the basis integrity of plaintiff's business (which is not a law firm).  Plaintiff argues that it has stated a claim based upon Safa **allegedly** stating that plaintiff: (a) had "stolen" its business model; (b) committed the crime of making a false report of bribery; and (c) steals personal injury clients from customer law firms.  The documentary evidence proves that these newly-minted allegations are nothing more than fabrications.  Plaintiff has engaged in strawman legal arguments based upon fabrications rather than the actual words used by Safa because no caselaw exists supporting its original theory of liability that defendants had committed defamation *per se* by accusing plaintiff of attempting to bully and sue Companions out of business with its superior finances and legal connections.

       The bottom line is that for a statement about a business to be defamatory *per se*, the statement must impugn the basic integrity and competence of the business with allegations of fraud or lack of creditworthiness or statements which suggest that the business will soon cease to exist. See Kforce, Inc. v. Alden Personnel, Inc., 288 F.Supp.2d 513 (S.D.N.Y. 2003); Executive Trim Constr., Inc. v. Gross, 525 F.Supp.3d 357 (N.D.N.Y. 2021).  Nothing which Safa actually said - or which plaintiff claims that Safa said – comes close to meeting this requirement.

       The case of Enigma Software Group USA, LLC v. Bleeping Computer LLC, 194 F.Supp.3d 263 (S.D.N.Y. 2016) is instructive as to the type of defamatory statements which have been found to impugn the basic integrity of a business.  In Enigma Software, the defendant stated that the plaintiff software developer engaged in fraudulent business practices, peddled an ineffective product which was the opposite of what it purported to be and had a history of deceptive advertising.  The Enigma Software Court upheld the plaintiff's defamation *per se* claim on the ground that the statements went directly to the nature, characteristics and qualities of plaintiff's developer's business

and its anti-malware product, and thus impugned the basic integrity of its business. Here, nothing which Safa stated (or allegedly stated) went directly to the nature, characteristics and qualities of plaintiff's "IME watchdog" business.

Plaintiff's last ditch effort to save its defamation claim with its unpleaded allegation that Safa had accused plaintiff of the crime of making a false report by denying in a Facebook comment that she had bribed anyone is nothing more than a far-fetched legal conclusion which is woefully inadequate to state a claim. See Thorsen v. Sons of Norway, 996 F.Supp.2d 143 (E.D.N.Y. 2014)(Chen,J.)(holding that defamation claims cannot be based upon legal conclusions).

## CONCLUSION

Plaintiff's defamation claim should be dismissed with prejudice where plaintiff has failed to plead special damages and has failed to identify any statement of fact made by Safa which impugns plaintiff's basic integrity, competence and creditworthiness as a business. Plaintiff should be denied leave to replead where plaintiff has failed to submit any evidence showing that it sustained any special damages as a result of the alleged defamation and has failed to adequately plead special damages in its proposed Second Amended Complaint.

Dated: New York, New York
February 20, 2023

**WARNER & SCHEUERMAN**
Attorneys for Defendants
Safa Abdulrahim Gelardi, Vito Gelardi and
IME Companions, LLC

By: */s/ Jonathon D. Warner*
Jonathon D. Warner (5195)
6 West 18th Street, 10th Floor
New York, New York 10011
(212) 924-7111