1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - - -   X

4    IME WATCHDOG INC.,              :
                                             22-CV-1032(PKC)
5             Plaintiff           :

6

              -against-           :
7
                                             United States Courthouse
                                  :          Brooklyn, New York
8    SAFA ABDULRAHIM GELARDI,
                                             December 6, 2022
9             Defendant.          :          3:00 p.m.

10   - - - - - - - - - - - - -   X

11

12                  TRANSCRIPT OF ORAL ARGUMENT
             BEFORE THE HONORABLE PAMELA K. CHEN
                 UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15

     For the Plaintiff:           MILMAN LABUDA LAW GROUP PLLC
16                                 3000 Marcus Avenue, Suite 3W8
                                   Lake Success, NY 11042
17
                          `        BY: EMANUEL KATAEV, ESQ.
18

19   For the Defendant:           WARNER & SCHEUERMAN
                                   6 West 18th Street, 10th Floor
20                                 New York, NY 10011

21                                 BY: KARL SCHEUERMAN, ESQ.

22
     Court Reporter:              Andronikh M. Barna
23                                225 Cadman Plaza East
                                  Brooklyn, New York
24                                (718) 613-2178

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

2

1          THE COURTROOM DEPUTY:  Civil cause for a premotion

2    conference.  Docket 22-CV-1032.  IME WatchDog, Inc. versus

3    Gelardi, et al.

4          Will the parties please state their appearances for

5    the record, starting with plaintiff.

6          MR. KATAEV:  Good afternoon, everyone.  My name is

7    Emanuel Kataev of Milman Labuda Law Group, PLLC for the

8    plaintiff.

9          THE COURT:  Good afternoon, Mr. Kataev.

10          MR. SCHEUERMAN:  Good afternoon, Your Honor.

11          Karl Scheuerman from Warner & Scheuerman for the

12    defense.

13          THE COURT:  Good afternoon, Mr. Scheuerman.

14          So we are here on the premotion conference request

15    of defendants to file a motion to dismiss as to the amended

16    complaint that was filed in October by the plaintiff in this

17    case, IME WatchDog.

18          And I guess I want to just at the outset,

19    Mr. Kataev, remind you, because your papers are somewhat

20    unclear at times, that there is only one plaintiff in this

21    case, in that Ms. Levi is not a plaintiff.  At various points

22    you refer to the plaintiff as a "she," for example, so

23    obviously that is an error.  It is IME WatchDog that is the

24    plaintiff and then there are a number of defendants on the

25    other side, seven individuals now in one corporation in the

1   amended complaint.

2          But the reason I wanted to meet with the parties is

3   because given my familiarity with this case, I have a serious

4   concern that it is getting mired down in unduly acrimonious

5   and wasteful litigation by both sides, quite frankly.  I was

6   concerned when the plaintiff filed the request for attorney's

7   fees after only securing a preliminary injunction, which, to

8   my mind, was premature and quite unusual.  But now I am

9   presented with this motion to dismiss request by the defense,

10  which I think -- and I will explain why in detail -- is

11  non-meritorious and I think would be extraordinarily wasteful

12  to file.

13         And so let me turn everyone's attention to this

14  proposed motion.  Again, to set the record straight, the

15  plaintiff here incorrectly says that Judge Cho allowed

16  plaintiff to amend in this matter based on the merits of the

17  motion to amend that the plaintiff had filed.  That is

18  incorrect.  Judge Cho simply allowed plaintiff to amend

19  because it was still within the period that plaintiff could do

20  so as of right.  So Judge Cho did not pass at all on or

21  consider the merits of the motion to amend that was filed

22  which are essentially being re-raised, effectively, in the

23  motion to dismiss that now the defense wants to bring.

24         I would urge you, Mr. Scheuerman, not to file that

25  motion to dismiss because I will summarily deny it, and I will

4

1  tell you why.  And I understand I cannot tell you not to file

2  something, especially a motion, but I do want you to

3  understand that there is no percentage in that motion.  The

4  arguments you want to make are either ones that I have already

5  rejected in the context of the motion for fees that was filed

6  before or otherwise.

7          So, first of all, you say that the plaintiff has

8  failed to allege that any defendant made a defamatory

9  statement which was of and concerning IME, which is the

10  plaintiff corporation.  You point out that Ms. Gelardi -- and

11  for the court reporter's sake, if I refer to Ms. Gelardi, the

12  spelling is G-e-l-a-r-d-i, first name Safa, S-a-f-a, and she

13  is one of the defendants -- that her GoFundMe page did not

14  actually name the lawsuit or the company, IME WatchDog.  But

15  what is clearly incorrect about that and unavailing about that

16  is, as is laid out in the amended complaint, the GoFundMe page

17  is linked to Ms. Gelardi's Facebook page in which there are

18  clear references to the precise lawsuit.  In fact, there is

19  someone who responds and pulls up the actual opinion that I

20  issued relating to the preliminary injunction where I made

21  findings that the defendants had actually stolen the

22  information that they are alleged to have stolen, or at least

23  that there was a strong likelihood of success on that based on

24  the evidence presented to me.  And then there is a specific

25  identification of exactly the case, the business,

1    IME WatchDog.  So there is no doubt here that that is the

2    business that is being defamed when you link the two together.

3    And they are linked together by Ms. Gelardi herself.  As I

4    said in my prior decision, and I address specifically the

5    request to file defamation claims at that time, I gave very

6    specific warnings to Ms. Gelardi about what I would find would

7    be per se defamation.  I do not necessarily want to read the

8    entire docket order into the record, but it is dated June 10,

9    2022.  At that time, I specifically said what you are saying

10   now, which is not correct, Mr. Scheuerman, that at that time,

11   the statements that were being recited to me did not contain

12   any identifying details about Levi or WatchDog, that

13   Ms. Gelardi did not identify the kind of business she was in,

14   the clients that she served, or other identifying information

15   that would lead someone who knows Levi or WatchDog to conclude

16   that the statements concern them.  That is entirely different

17   now because of the facts that have been brought out in the

18   amended complaint, that Ms. Gelardi specifically linked her

19   own Facebook page which expressly now identifies exactly the

20   business, exactly the case, exactly the players involved:

21   Ms. Levi and WatchDog.  So the circumstances that I had

22   previously found did not exist before and thus did not support

23   the plaintiff's effort then to get contempt, actually, that

24   was the context, for defamation, now exists.  Or they always

25   existed, but now those facts are being amended in this amended

6

 1   complaint.  So my finding that that would constitute

 2   defamation per se governs here.  It has basically been revived

 3   or brought to life by the new facts that have been discovered

 4   and now are alleged in the amended complaint.

 5          So this addresses the second argument that you

 6   propose to make in your motion to dismiss, that there are no

 7   defamatory statements by Ms. Gelardi but rather they are

 8   subjective opinions posted on social media rather than

 9   assertions of facts capable of being proved false.  I already

10   rejected that argument before.  These are the same statements

11   about the business was doing so well, we caught up with our

12   number-one competitor, the attorney is greedy and ruthless,

13   et cetera, et cetera.  Again, at the time, the only reason I

14   did not find per se defamation against Levi and WatchDog was

15   because they were not specifically identified.  But again,

16   that is all in the past because the facts now are clear that

17   Ms. Gelardi did link Levi and WatchDog specifically to the

18   defamatory statements.  The ones that I said before were

19   per se defamatory.  And again, that is in the opinion that I

20   wrote.  I specifically said neither does the Court agree that

21   Safa Gelardi's statements are mere opinions.  Had they

22   identified WatchDog or Levi in any manner, they would have

23   been defamatory per se.  So I have already rejected that

24   second argument that you proposed to me because I reviewed

25   those same exact statements and found them defamatory, but

1    they had not yet, or at least I was unaware that they had been

2    connected to Levi and WatchDog.

3          And then the third argument that you propose to make

4    is that the plaintiff has failed to plead special damages and

5    therefore the amended complaint is defective.  That is just

6    wrong as a matter of law based on my prior finding that the

7    statements, that are not opinions but are actually defamatory

8    statements, are per se defamatory, and in that situation you

9    do not have to plead special damages.  So the case of

10   *Thi versus Cayre Group Limited*, 726 F. Supp 323, Southern

11   District of New York, 2010 stands exactly for that

12   proposition.  Under New York law, a defamation claim must

13   either constitute defamation per se or cause special damages.

14   And so because I ruled that these statements, if connected to

15   WatchDog or Levi, would be defamatory per se, then special

16   damages do not need to be pled.  So that would not be a valid

17   basis for dismissing the amended complaint.

18         And then finally, the fourth basis upon which you

19   want to move is your argument that there is no basis for

20   liability against IME Companions, defendant company, because

21   the plaintiff concedes that the statements in question had

22   been made by Safa Gelardi rather than Companions.  And so you

23   argue that there is not enough of a connection between the

24   statements made by Ms. Gelardi on her Facebook page and the

25   Companions company, or I should say on the GoFundMe page.  So

1    I guess Ms. Gelardi made those on the GoFundMe page.  But

2    again, if you connect as Ms. Gelardi did, basically by linking

3    her Facebook page to her GoFundMe page, if you connect those

4    two, it is clear that the claims, or these defamatory

5    statements rather, are being made against Levi and WatchDog

6    because the case it specifically referenced talks about

7    WatchDog and the statements say the business was doing so

8    well.  So she is clearly speaking on behalf of her company,

9    IME Companions.

10          And actually, my focus in my prior sentence was

11   wrong.  The argument you want to make is that there is not

12   enough of a connection between Gelardi and Companions in her

13   making those statements.  The plaintiff has responded that the

14   icon or the logo for IME Companions appears on the Facebook

15   page of Ms. Gelardi.  That is certainly some evidence by which

16   someone would link these statements, these defamatory

17   statements to Companions, but probably in and of itself not

18   enough because people can put all sorts of logos on their

19   Facebook page.  For example, if someone likes to drink Coke a

20   lot, they can put Coke in their little bubble there or a

21   picture of them drinking Coke, but that would not necessarily

22   attribute all of their statements to The Coca-Cola Company.

23   But here, the statements themselves combined with the IME logo

24   indicates that that is exactly what she is talking about, her

25   business.  She says:  The business was doing so well, we

1    caught up with our number-one competitor.  So clearly everyone

2    in this area of business, and it is not a big world, would

3    know exactly who Gelardi is talking for and who she is talking

4    about, that she is talking about her company, IME Companions,

5    and her number-one competitor, which is made clear by the

6    linkage to the Facebook page, plaintiff's company,

7    IME WatchDog.

8            So to me, this amended complaint sets forth a claim

9    for per se defamation, at least based on the standard that

10   applies here at a complaint stage, which is plausible

11   inference.  So I would find that your motion to dismiss, as

12   you have proposed it, would not be successful, so I urge you

13   not to file it.  I, of course, cannot order you not to file

14   it, but I do not want you wasting your time or your client's

15   resources, nor the resources of the plaintiff and their

16   attorney, or its attorney, to respond.  And as you can tell,

17   attorney's fees is a very -- it is a source of litigation in

18   this case; it should not be at this time.  But you might only

19   just incur more potential claims for attorney's fees if you

20   file this.  So it is up to you, but I am giving you the

21   benefit of my analysis.  Because there is really not much more

22   for me to look at other than the complaint and your arguments

23   which you have set forth pretty clearly in your letters, in

24   both of your letters.

25           So that is what I wanted to explain to you.  I will

1   give you some time to think about what you want to do.

2          And I am happy to hear from either side if you would

3   like to be heard at this time.

4          MR. SCHEUERMAN:  Yes, I do, Your Honor.

5          THE COURT:  Go ahead, Mr. Scheuerman.

6          MR. SCHEUERMAN:  My problem here is, as you pointed

7   out in your first statements to plaintiff's counsel is,

8   there's a conflating here of the plaintiff and the plaintiff's

9   principal and they're not one and the same for the purposes of

10  defamation law.  And there's also -- and because of this

11  conflation, there's also an inherent contradiction in the

12  nature of the claim.  The claim is that it's defamation per se

13  because it goes to the profession; i.e., lawyer, greedy

14  ruthless lawyer.  That's the crux of the defamation claim,

15  greedy ruthless lawyer.  That's what makes it defamation

16  per se, correct?

17         THE COURT:  Hang on.

18         That is abusing the law.  That would suggest that

19  the business, along with the greedy, ruthless lawyer, are

20  abusing the law, right?  To sue me out of business because she

21  has the means to do so.

22         MR. SCHEUERMAN:  But in order to be defamation

23  per se, it has to go to the profession of the plaintiff.  The

24  plaintiff is an IME watchdog that works for lawyers.  The

25  plaintiff's principal is a lawyer.  The alleged defamatory

1   statements allude to a lawyer and they allude to a female

2   lawyer with the pronoun "she" and "her" scattered throughout

3   the statements.  They don't refer in any -- they don't in any

4   way impugn upon the plaintiff itself ability to conduct its

5   business, its performance and ability of the business, how it

6   performs its business.  It doesn't call IME WatchDog a corrupt

7   company that can't be trusted to work for plaintiff's lawyers

8   in personal jury cases, doesn't accuse them of any fraudulent

9   conduct in their business or any dishonesty in the performance

10  of its business.  The only allegation that has a connection to

11  a profession is to the individual, Ms. Levi, who is not the

12  plaintiff in this case.  So they're getting around what is

13  happening here because plaintiff is getting around the special

14  damages requirement by saying it's per se because you said

15  greedy, ruthless lawyer.  But the plaintiff isn't a lawyer.

16  Now, if the plaintiff here was the Law Offices of Daniella

17  Levi or, you know, Daniella Levi & Associates, then I wouldn't

18  want to make the motion, but the plaintiff is IME WatchDog;

19  IME WatchDog does not practice law.  So I don't understand how

20  a statement regarding to a -- referring to an attorney can be

21  deemed defamation per se to a company that doesn't practice

22  law.  Because in order to be per se, it has to impugn that

23  business's ability to perform its job, integrity in the

24  performance of its job, and competence, fitness, et cetera.

25  Nothing was said about IME WatchDog that they could not be

1   trusted by plaintiff's lawyers to be hired to serve as

2   watchdogs on their behalf in personal jury cases.  Nothing was

3   said.  The only allegations pertain directly to Ms. Levi, who

4   is not a plaintiff in this case.

5          THE COURT:  But how is it not disparaging the

6   business to say that Levi and WatchDog, because WatchDog is

7   the plaintiff, are simply suing them to run them out of

8   business?  I mean, an aggressive litigation strategy that she

9   claims is based on false claims, how does that not disparage

10   the company and falsely?

11          MR. SCHEUERMAN:  But again, so that could serve as

12   the basis for a defamation claim, but not defamation per se;

13   because per se has to impugn the business of the plaintiff in

14   the performance of its business, its integrity, its

15   competence, its fitness, its qualifications.  You can't say

16   IME WatchDog are a bunch of criminals and crooks who don't

17   show up for IMEs.  You can't say that.  But there's nothing

18   wrong with referring to its principal, who is not a plaintiff,

19   as a ruthless and greedy attorney.

20          THE COURT:  But let me ask you a question.  You are

21   saying that accusing, which is how I read these statements

22   when you put the two together, the two different pages

23   together, but accusing IME WatchDog, the plaintiff, of

24   bringing a purely frivolous lawsuit to bully her company into

25   bankruptcy is not defamation of the company?

13

1              MR. SCHEUERMAN:  No.

2              THE COURT:  Because it is about the lawsuit being

3     brought against them based on false charges and being used to

4     simply run them out of business improperly.  You are sort of

5     drawing this distinction between saying aggressive tactics

6     such as that because they used the legal system versus the

7     delivery of the services they provide means that it cannot be

8     defamation per se.

9              MR. SCHEUERMAN:  Yes.

10             THE COURT:  What case stands for that proposition?

11             MR. SCHEUERMAN:  Every case.

12             It has to impugn upon the quality of the work, the

13    integrity of the work, not the integrity of the individual who

14    heads the company.

15             THE COURT:  No, no.  But again --

16             MR. SCHEUERMAN:  What they're doing here is they're

17    bootstrapping --

18             THE COURT:  No, no, no, no.  Stop, stop, stop.

19    Please.

20             You keep focusing on Levi.  I am saying to you, I

21    construe these statements, when read together, as accusing

22    WatchDog, the company, of pursuing an aggressive litigation

23    strategy.  Because they are the only ones who are suing,

24    right?  It is WatchDog, plaintiff, is suing her company, and

25    her, she would say based on false accusations simply to bully

1  them out of business.  And that is what your client,

2  Ms. Gelardi, is effectively saying.  You keep recasting it as

3  her only accusing Levi of this because of the one statement

4  about a ruthless attorney.  But the reality is, when you put

5  all of this together, it is a law firm.  I mean, sorry, it is

6  the company, WatchDog, that is the plaintiff.  And so clearly

7  the company's reputation as an overly aggressive, unfairly

8  competing business is being disparaged.  You cannot avoid that

9  conclusion.

10           MR. SCHEUERMAN:  That has nothing to do with how it

11  conducts its business.  That's how it deals with its

12  competitors.

13           THE COURT:  Right.  You are saying that that cannot

14  form the basis of defamation per se?

15           MR. SCHEUERMAN:  Correct.  They're bootstrapping the

16  per se because the allegations at the lawyer.

17           THE COURT:  So what case says that?  That is what I

18  am asking you.

19           MR. SCHEUERMAN:  Well, I haven't looked for an exact

20  case saying that, but the general law is, for it to be

21  defamation per se, it has to impugn to the plaintiff

22  dishonesty, misconduct, incapacity, unfitness, or lack of any

23  necessary qualification in the exercise of its business.

24           THE COURT:  Wait.  Wait.

25           MR. SCHEUERMAN:  Suing competitors is not the

15

1   exercise of its business.  Attending IMEs for plaintiff's

2   lawyers is the exercise of its business.

3          THE COURT:  I am not sure I agree with you on that.

4   Pursuing a litigation strategy where you sue somebody for

5   stealing your trade secrets is certainly a function of the

6   business.  Going after competitors who you claim have stolen

7   your secrets and doing it dishonestly is what she is alleging;

8   we did not steal anything, yet they are suing us.  How is that

9   not still part of conducting their business?

10          MR. SCHEUERMAN:  Because they aren't retained by

11   plaintiff's lawyers to deal with their own competitors.

12   They're retained by plaintiff's lawyers to attend physical

13   examinations on behalf of personal injury plaintiffs.  What

14   they do with their competitors, how they deal competitors, how

15   they deal with former employees, et cetera, has nothing to do

16   with how they conduct their business.  The defamation, to be

17   per se, has to be with respect to the actual conduct of its

18   business.

19          THE COURT:  Well, let me just say this.  You can

20   keep repeating that.

21          MR. SCHEUERMAN:  Okay.

22          THE COURT:  But again, and this is -- I am looking

23   at the letter written by Mr. Warner, your partner, the cases

24   he cites focus on the individual versus the company, so

25   Ms. Levi, attacking Ms. Levi versus her company.  You do not

16

1   cite me cases, and you are going to have to, to support this

2   claim that somehow pursuing litigation, a company pursuing

3   litigation against a competitor alleging theft of trade

4   secrets is not part of its business, is not part of it running

5   its business.  You are focused solely on and, I do not know,

6   if you are right, you are right, but nothing in your letter

7   says to me you are right.  You say you do not know any cases

8   off the top of your head.  Clearly the letter you wrote or

9   your partner wrote or submitted does not suggest that that is

10  the case.  But you can bring your motion and make that

11  argument.  But I hope you understand that the other arguments

12  you have made, although obviously if it is not defamation

13  per se, then the failure to plead special damages could be an

14  argument about the deficiency.  But the other statements about

15  linkage, I think there is enough to allege a linkage between

16  your client speaking on behalf of IME Companions and also

17  about what are defamatory statements, I believe, about the

18  company.  But you need to make your argument about that then

19  when you make your motion and find case law that supports

20  that.

21          It does not make sense to me that somehow the

22  definition of conducting one's business is limited simply to

23  the services that one provides or the products that one

24  produces, but could include how they go about fending off

25  competitors, like, you know, predatory pricing.

1              Let's suppose they were accused of predatory pricing

2    falsely.  Would you say that that cannot be defamation?

3              MR. SCHEUERMAN:  No, that, to me, is a type of

4    defamation per se.

5              Improper billing, improper --

6              THE COURT:  But somehow suing --

7              MR. SCHEUERMAN:  -- a poor product, incompetence,

8    unfitness, unqualified, that's what the general rule is.  I

9    have not located or looked for a case with this specific fact

10   pattern, and one may not be around.

11             But I just don't understand how something that's

12   done outside of the practice of the business is per se,

13   defamation per se to the -- pertaining to the conduct of the

14   business itself.  She did not say anything which impugned upon

15   how they conduct their business on behalf of plaintiff's

16   lawyers.

17             THE COURT:  Listen.  Again, I would like to see the

18   case law.  Because as a matter of common sense and factual

19   reality, I think the litigation strategy a company pursues

20   could be how they conduct their business.  Because the

21   allegation -- I mean, I do not think an individual, for

22   purposes of defamation law, should be able to say, without a

23   basis in reality, that a company is suing them solely to put

24   them out of business because they are competing so well and

25   based completely on false allegations.  I do not know how that

1    cannot be a form of defamation per se, because it certainly

2    relates to how the company conducts itself and it relates to

3    the honesty of the company.  You just read that statement a

4    moment ago about honesty and how it conducts its business.  I

5    view litigation strategy or litigation it undertakes or

6    anything related to the law -- let's say, for example, they

7    have to file forms with the State Department of New York,

8    which I assume is true, I do not think you can say that they

9    did that illegally and get -- and if it is false, get away

10   with not engaging in defamation.  It certainly has to do with

11   how they conduct their business, but it does not have to do

12   with providing the actual services.  You would have that

13   definition so thinly and narrowly defined that it would

14   exclude a lot of things that businesses do undertake in order

15   to run their business.  I do not know if you are right.  If

16   you find the case, I could be persuaded.  But on the face of

17   it, that strikes me as contrary to common sense in the way and

18   the purpose of the law.

19           MR. SCHEUERMAN:  Well, I will do some researching

20   before we make a decision.  I take Your Honor's words under

21   advice.

22           THE COURT:  Yes.

23           Let me also point out to you that the case law also

24   says that a false statement constitutes defamation per se when

25   it charges another with a serious crime or tends to injure

1    another in his or her trade, business or profession.  And that

2    comes from the case of *Geraci versus Probst*, 61 A.D.3d at 718.

3    That is a New York Supreme Court case.  And that, at least

4    that statement, does not at all seem to cabin in or even make

5    contingent on the business that is being conducted IN whether

6    or not the alleged bad act related directly to the conduct of

7    a company's business, but rather focused on the nature of the

8    statement, the allegedly defamatory statement made by the

9    maker and its impact on the allegedly defamed party.  So

10   regardless of whether or not it has to do with how their

11   business was conducted, the question is:  Did it injure his or

12   her trade or business?  I guess that in some ways could apply

13   to Levi.  But she is not the plaintiff here, so I guess that

14   is --

15             MR. SCHEUERMAN:  That's my problem here.

16             THE COURT:  Well, no, that could be a limitation on

17   that concept.

18             But again -- but again -- I do find there is enough

19   of a connection to the statements your client made, which is

20   basically about the business, WatchDog, because WatchDog is

21   the plaintiff.  And so if, in fact, bringing a lawsuit could

22   be deemed as part of running one's business or if there really

23   is not such a narrow construction of what the defamation has

24   to relate to, I do not see a problem with WatchDog bringing

25   the defamation claim based on the statements that were made.

1   It is clear, to me at least, that the statements themselves

2   are impugning what WatchDog is doing in terms of bringing the

3   lawsuit, even though obviously it also is against Levi

4   herself.  And I will say this.  Based on the links to the case

5   itself, the fact that Ms. Levi is really, for all practical

6   purposes, WatchDog, the company, I think draws a nexus between

7   her and WatchDog, the plaintiff, much closer.

8           But you should brief your motion then, because I can

9   hear that you are not dissuaded from doing so.  You think you

10  have a good argument.  Like I said, I am giving you the

11  benefit of my thoughts already.  But I think as a matter of

12  factual allegations, there is enough here to connect your

13  client as making a statement on behalf of IME Companions and

14  her statements going against or being about both Levi and

15  WatchDog, because of the direct reference to the lawsuit and

16  the players in the lawsuit and the plaintiff in the lawsuit,

17  which is WatchDog.  I also preliminarily disagree with you

18  that that cannot be defamation per se as to WatchDog, but that

19  is, I guess, going to be the point you are going to try to

20  make in your motion.

21          How much time do you want to file your motion?

22          MR. SCHEUERMAN:  Whatever the Court thinks is best.

23          THE COURT:  I do not have any view.  Do you want

24  30 days?

25          MR. SCHEUERMAN:  30 days would be great, Your Honor.

1           THE COURT:  Okay.

2           Also, you need to enter your appearance, I think, in

3    this matter.

4           MR. SCHEUERMAN:  Yes.  I was unaware.  I operated on

5    my partner's PACER account.

6           THE COURT:  Okay.  All right.

7           MR. KATAEV:  Your Honor, may I address some of these

8    issues before we go to the schedule?

9           THE COURT:  Yes.  Go right ahead.

10          MR. KATAEV:  Thank you.

11          So I imagine that because IME WatchDog Inc. is a

12   corporation duly formed under the laws of the State of

13   New York, that its certificate of incorporation probably says

14   -- I haven't seen it -- that it is authorized to perform any

15   lawful act in furtherance of its business.  That's a statement

16   that's designed to explain the scope of its business.  And if

17   it says something like that, which most certificates of

18   incorporation do, I would submit that any act that it takes,

19   including bringing litigation, is within the scope of its

20   business.  It's not limited to solely scheduling IMEs and

21   having observers attend them and so on and so forth.  It's,

22   broadly speaking, anything and everything that it does

23   lawfully.  And it is lawful to bring a lawsuit, and it did so.

24   So I would argue that and I share that with opposing counsel,

25   for him to consider that argument before deciding whether or

1   not defendants wish to pursue that motion.

2          And I'm also confused about this

3   it's-plaintiff-not-Levi and you're focusing on Levi and not

4   plaintiff.  I cited extensive case law on this subject, that

5   courts have allowed claims where the statement did not

6   identify the plaintiff but named an individual who was

7   understood to represent the plaintiff.  Mrs. Levi is the

8   principal of the plaintiff.  She formed the entity.  She is

9   the face of that company.  In the complaint she talks about

10  how extensively she worked to have all these law firms come to

11  her to have these services performed.  Because she's a

12  personal injury attorney, when she was in court she would

13  speak to her colleagues and talk about the business.  That's

14  how she built it up, from the ground up.  So she is, in

15  essence, the plaintiff.  Any derogatory remark against her,

16  setting aside the fact that she's an attorney, is against the

17  plaintiff.

18         There is another case that I cite.  The first case

19  is *Daytree.*  It's an Eastern District of New York decision

20  from 2018.  I didn't cite which judge.  It says that a

21  statement about a company -- it's the reverse here, I

22  acknowledge that -- *Daytree* was of and concerning two

23  individuals.

24         THE COURT:  Can I stop you.

25         I do not think that is a discussion anymore.  I

1  agree with you that the letter filed by Mr. -- what is your

2  partner's name?

3          MR. SCHEUERMAN:  Warner.

4          THE COURT:  -- Mr. Warner focused on the individual

5  versus the company.

6          But the argument Mr. Scheuerman is making is

7  different.

8          MR. KATAEV:  Okay.

9          THE COURT:  He is saying you can only defame a

10  company by attacking how it provides its services, not by how

11  it carries out other aspects of its business, by filing

12  litigation.  Because they are not in the business -- they are

13  not lawyers, for example, I guess is the argument -- you

14  cannot defame them for bringing a false lawsuit.  That is what

15  he is arguing.  And that is essentially what this -- that is

16  the thrust of the defaming statement, which is that they are

17  bringing a false lawsuit simply to drive us out of business.

18  So Mr. Scheuerman's more nuanced argument, but different than

19  what his partner argued, as one of the bases is that that

20  cannot be defamation as to a company that is not in the

21  business of suing people.

22          MR. KATAEV:  Yes, but in fairness, he's making both

23  arguments, this argument that you just discussed and the other

24  one.

25          THE COURT:  Well, I reject the argument that there

1    is any daylight between Ms. Levi and the company because of

2    some of the reasons that you said, but more because ultimately

3    everything is linked back to the actual case and WatchDog is

4    clearly the business and the business is referred to

5    throughout this allegedly defaming statement.  At the end it

6    says:  This is another example of big companies putting anyone

7    who wants to compete with them out of business.  So, clearly

8    defaming WatchDog directly, regardless of Ms. Levy being the

9    focus of the beginning part to some extent.  But she is sort

10   of the actor or the person who is, I would say, pushing the

11   company, and it is clear, to do that.  But there can be no

12   mistake or doubt, I do not think, and it is certainly a

13   reasonable inference, that the statement is actually defaming

14   both WatchDog and Ms. Levi because it says this is what big

15   companies do to put their competitors out of business.

16          Mr. Scheuerman, your only, and the only argument I

17   really am interesting in looking at, because I have resolved

18   everything else based on what I have seen, is, is there any

19   case law to support the notion that you cannot defame a

20   company for engaging in overly aggressive litigation, or

21   something else, whatever it is, that is not at the core of the

22   services they provide or the actual business, if you want to

23   call it that, that they are in.

24          MR. SCHEUERMAN:  If I may, Your Honor?

25          The question isn't whether it's defamatory, whether

1    it's defamatory per se.  Because if not per se, they have to

2    plead special damages, and they only pled general damages

3    here.

4              That, to me, is the --

5              THE COURT:  Okay.

6              MR. SCHEUERMAN:  Is the issue as Your Honor sees it

7    at this point in time, correct?

8              THE COURT:  Right.  Well --

9              MR. SCHEUERMAN:  Well, potential issue.

10             THE COURT:  I mean, yes, I think that --

11             MR. SCHEUERMAN:  I don't want to be presumptive.

12             THE COURT:  Well, are you conceding that it is

13   defamatory to the company, but is not necessarily defamatory

14   per se?

15             MR. SCHEUERMAN:  I don't believe it's defamatory,

16   Your Honor.

17             THE COURT:  Well, right.  That is --

18             MR. SCHEUERMAN:  I really don't.  I really don't.

19             But I appreciate your position, your opinion.  And I

20   understand that you want me to focus on whether or not it's

21   defamatory per se to the company.

22             THE COURT:  No, actually, I want you to focus on

23   your argument, which is you say it is not defamatory unless it

24   attacks what a company does as its primary business.  That is

25   your argument.

26

1          MR. SCHEUERMAN:  No, not -- defamatory per se.  The

2     question is, is it defamatory per se.

3          THE COURT:  Okay.  So you are acknowledging that it

4     could be defamatory in terms of attacking the honesty of the

5     company.  You are saying that it is not defamatory per se and

6     that only implicates the issue of special damages.

7          MR. SCHEUERMAN:  Well, it's clear you don't want to

8     hear a debate this afternoon on whether or not it's

9     defamatory.

10          But my -- so my position in light of that is there's

11     an issue whether that could be defamatory per se.  Because if

12     not defamatory per se, then the plaintiff has to plead special

13     damages and she has not.  It has not.  Excuse me.

14          THE COURT:  Okay.  Remember, we have a court

15     reporter.

16          MR. SCHEUERMAN:  I apologize.

17          THE COURT:  Yes, I do not want to debate at length

18     anything with you, only because I have not seen any case law.

19          MR. SCHEUERMAN:  Yes.

20          THE COURT:  But I want you to understand that you

21     should, in your written motion, make whatever argument you

22     think is appropriate and legally supportable.  If your

23     argument is that there can be no defamation, period, as to a

24     company if the attack is not about the provision of its

25     services, then you should make that argument, obviously.  If

1   that is correct as a matter of law, then you would be able to

2   move, you would be successful in dismissing those claims in

3   the amended complaint.  But you are a bit of a moving target

4   on this.  I am not sure I understand what your argument is,

5   and maybe because you have not looked at the case law.  If you

6   are limiting your argument to you cannot find or it is not

7   enough for defamation per se if you are not attacking the

8   services or if the statements do not relate to the services

9   provided, then make that argument.  So I am not telling you

10  not to make an argument if you think you have one.  I just

11  have not seen any case law that supports that.

12          And in the letter written by your partner, the focus

13  was on whether or not the statements that talk about Ms. Levi

14  are really about WatchDog, are really defaming WatchDog, which

15  is a separate issue.  And I am telling you on that, I find

16  that the statements on their face are defaming both of them

17  because it references her and it references her business and

18  it references the business trying to put Ms. Gelardi's

19  business out of business, to use that word three times in one

20  sentence, and so I do not think there is any real argument to

21  be made that the allegedly defaming statement is only about

22  Ms. Levi, even though it says she is greedy and ruthless.

23          MR. SCHEUERMAN:  It's difficult to fully brief each

24  issue on a three-page limit, Your Honor.

25          THE COURT:  Understood.  Understood.

28

1          But, I mean, I think what you are arguing, it
2   strikes me as counterintuitive.  But if there is case law
3   supporting it, then you should brief that.
4          Mr. Kataev, I only cut you off because I do not
5   think, based on my opinion, there is any real argument to be
6   made that somehow the statements are only about Ms. Levi.
7   That argument, I would reject.  It is clear to me on the face
8   of it, especially when you link it to the actual case itself
9   and her Facebook page and the extended discussion that she
10  gets into with one of the repliers or responders or
11  commenters, it is pretty clear that she is defaming both the
12  company and Ms. -- I would say, defaming both the company and
13  Ms. Levi.
14         MR. KATAEV:  For the benefit of my understanding as
15  to the Court's initial comment about my referencing "her"
16  instead of "it," the company, that's mutually exclusive from
17  this; is that right?
18         THE COURT:  Well, I am just noting it as a matter of
19  --
20         MR. KATAEV:  Grammar?
21         THE COURT:  Yes.  Grammar and carefulness, right?
22  Because you should not be referencing plaintiff as "she"
23  because she is not a plaintiff.
24         MR. KATAEV:  I will be more mindful.
25         THE COURT:  Right.  That is all.

1          But, you know, I understand your position that they

2   are interchangeable as a legal matter, but I think that you

3   have to argue based on some facts.  Just rhetorically, you

4   will have to be careful about referencing the plaintiff as the

5   company.

6          MR. KATAEV:  Understood.

7          THE COURT:  All right.  So 30 days to file your

8   motion.

9          THE COURTROOM DEPUTY:  January 5th, 2023.

10         THE COURT:  And then 30 days to respond.

11         MR. KATAEV:  Generous.

12         MR. SCHEUERMAN:  And no reply, Your Honor?

13         THE COURTROOM DEPUTY:  Response due February 6th.

14         THE COURT:  And then two weeks for the reply.

15         THE COURTROOM DEPUTY:  Reply is due February 20th.

16         MR. KATAEV:  And to assist opposing counsel in

17  making his motion, the opposition papers will include a

18  request for leave to replead if there is a dismissal.  I have

19  case law supporting that position.

20         THE COURT:  Well, I mean, let me ask you a question.

21  Is there something you would do to fend off this motion?

22         MR. KATAEV:  The only thing I could think of,

23  Your Honor, that might persuade the other side not to move

24  forward with the motion practice, which anecdotally in

25  convincing the other side not to do it takes away the argument

1    that we're aggressively suing in order to raise attorney's

2    fees to put them out of business, is to plead special damages

3    in the event it's found not to be defamation per se as an

4    alternative argument.

5            THE COURT:  Well, can you plead special damages?

6            MR. KATAEV:  I have to investigate that.

7            THE COURT:  Well, if you can, I suggest you do so

8    because it may end up short-circuiting this process.

9    Especially if it turns out Mr. Scheuerman's argument is that

10   unless the defamatory statements relate to the company's

11   functioning, its basic functioning, you have to plead special

12   damages, then maybe you could, you know, interrupt that

13   process.  If you think you can, just let Mr. Scheuerman know

14   so that neither side wastes time briefing it.  I am not sure

15   it will necessarily convince Mr. Scheuerman that he does not

16   want to file something, and obviously that is their right, but

17   you might save yourselves money.  Your client's money, that

18   is.  Okay?

19           MR. KATAEV:  May I propose a deadline of the 19th

20   for me to make that motion to amend or application?

21           THE COURT:  Well, I mean, I guess you can let us

22   know by the 19th of this month.

23           MR. KATAEV:  Yes.

24           THE COURT:  Yes, that is fine.  If you want to file

25   something and advise myself and Mr. Scheuerman, that would be

1    good.  Probably more effective, though, is for you to explain

2    to Mr. Scheuerman how you plan to amend.

3                 MR. KATAEV:  In advance of that.  Yes, of course.

4                 THE COURT:  Right.  Well, whether they will be

5    satisfied or not.  So it is less important to let me know as

6    it is to let the other side know to see if that dissuades them

7    from filing the motion.

8                 MR. KATAEV:  Understood.

9                 THE COURT:  Whatever happens though, if no motion is

10   filed, then, Mr. Scheuerman, you certainly should let us know

11   on the due date that you are not filing a motion.  Okay?

12                MR. SCHEUERMAN:  Yes, Your Honor.

13                THE COURT:  Now, the other thing is, I do prefer

14   that the parties do what is called bundling, which means that

15   you, Mr. Scheuerman, would not actually file your motion on

16   the due date, but you would simply serve it on plaintiff, but

17   you would file a letter indicating you had served it, so your

18   cover letter indicating service.  And then Mr. Kataev would do

19   the same in terms of the plaintiff's opposition, serve it but

20   not file it, but file the letter indicating service.  And then

21   on the last day, final day, which is the reply date, both

22   sides would file their respective pleadings.

23                The reason I ask you to do this, but I cannot force

24   you to do it, is because it allows me to be more liberal with

25   extensions because the date that you file your motion starts

1    an internal clock ticking in terms of getting the decision

2    just done.  And so obviously once you start that clock

3    ticking, it makes it harder for me to expand the time,

4    especially depending on, you know, how much time you want.

5    Okay?

6            So like I said, if you think though, however, you

7    are going to run against some other deadline that is important

8    or filing later would affect something else, you could file it

9    whenever you want to.  Again, I cannot force you not to do

10   that.  Okay?

11           MR. SCHEUERMAN:  Thank you, Your Honor.

12           THE COURT:  All right.  So, Mr. Scheuerman, you will

13   enter your appearance through whatever PACER portal you want

14   to.

15           All right.  I look forward to hearing from you,

16   folks.  If you can work it out, I think it would be best and

17   maybe just move on with this case, but obviously you have to

18   pursue whatever strategy is most appropriate for your client.

19   Okay?

20           MR. KATAEV:  Judge, I do have one other concern I

21   would like to raise.

22           THE COURT:  Yes.

23           MR. KATAEV:  With respect to discovery, currently

24   the deadline for the close of discovery is January 20th.  We

25   have not received any documents from the forensic analyst.

33

1    There is --

2              THE COURT:  Yes.  I said you should take this up

3    with Judge Cho.

4              MR. KATAEV:  Understood.

5              THE COURT:  Okay.  Because I think we ended up

6    extending, maybe, the deadline.  But otherwise, if there is

7    some dispute about discovery, take it up with Judge Cho.

8              MR. KATAEV:  Including an extension?

9              THE COURT:  Yes.  Because I think the last order we

10   said was from now on Judge Cho would deal with any extensions.

11             MR. KATAEV:  Understood, Your Honor.

12             THE COURT:  Yes.

13             MR. SCHEUERMAN:  Thank you, Your Honor.

14             THE COURT:  Thank you, everyone.  Have a good

15   holiday.

16             MR. KATAEV:  Great to see you, Judge.

17             (Matter concluded.)

18

19                      *     *     *     *     *

20

21   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
22

23       /s/ Andronikh M. Barna            December 18, 2022
     _____   _____
24        ANDRONIKH M. BARNA                    DATE

25