```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
    IME WATCHDOG, INC.,

                              Plaintiff,

        -against-

    SAFA ABDULRAHIM GELARDI, VITO GELARDI,
    GREGORY ELEFTERAKIS, ROMAN POLLAK,
    ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
    NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                              Defendants.
-----------------------------------------------------------------X
    SAFA GELARDI and IME COMPANIONS, LLC,

                              Third-Party Plaintiffs,

        -against-

    CARLOS ROA,

                              Third-Party Defendant.
-----------------------------------------------------------------X
    CARLOS ROA,

                              Third-Party Counter-Claimant,

        -against-

    SAFA ABUDLRAHIM GELARDI, VITO GELARDI,
    and IME COMPANIONS, LLC,

                              Third-Party Counter-Defendants.
-----------------------------------------------------------------X
```

Case No.: 1:22-cv-1032 (PKC) (JRC)

**DECLARATION OF CARLOS ROA IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR CONTEMPT, FOR AN ORDER OF ATTACHMENT PURSUANT TO RULE 64 OF THE FEDERAL RULES OF CIVIL PROCEDURE & ARTICLE 62 OF THE NEW YORK CIVIL PRACTICE LAW & RULES, AND IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION DIRECTING DEFENDANTS TO CEASE OPERATING IME COMPANIONS LLC AND ANY OTHER ENTITIES THAT <u>COMPETE WITH PLAINTIFF</u>**

Carlos Roa declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1

1. I am the President of Operations at IME WatchDog, Inc. ("IME WatchDog"), the Plaintiff in this case. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at the IME WatchDog office.

2. I previously served as an employee of IME Companions LLC ("Companions"), which misclassified me as an independent contractor in order to deprive me of overtime wages, and unlawfully terminated me once they learned that I blew the whistle on the fact that Companions was a business built solely through inappropriate means; namely, by targeting IME WatchDog's largest clients, as well as by engaging in a years-long scheme to siphon away clients by bribing Plaintiff's key employee to destroy client relationships and destroy IME WatchDog for good.

3. The above-entitled case was brought for the purpose of obtaining a temporary restraining order and a preliminary injunction enjoining the Defendants Companions, Safa Abdulrahman Gelardi ("Safa"), and Vito Gelardi ("Vito") (Companions, Safa, and Vito collectively hereinafter the "Defendants") from continuing to operate their unlawfully established competing company, and from continuing to sabotage, ruin the reputation and goodwill of, and harass IME WatchDog, its principal and employees, as well as from unlawfully utilizing IME WatchDog's trade secrets and confidential and proprietary information.[1]

4. IME WatchDog now moves by Order to show cause for a finding of contempt, and renews its motion for a preliminary injunction enjoining Defendants from continuing to operate their business because of the overwhelming evidence establishing that Defendants liability.

---

[1] I respectfully incorporate by reference my declaration in support of Plaintiff's motion for a temporary restraining Order, preliminary injunction, and permanent injunction dated February 17, 2022. See ECF Docket Entry 9.

2

5. Specifically, the evidence establishes that Defendants built their business entirely by utilizing IME WatchDog's trade secrets and confidential information by targeting customers on IME WatchDog's list who had a connection to Gregory Elefterakis.

6. In addition, this relief is warranted because Defendants have brazenly violated the Amended Preliminary Injunction (the "Injunction") by, among other things, sending thousands of anonymous packages and emails purportedly from one Albert Dabrowski[1] with defamatory slanderous statements alleging I am a pedophile, and further, cavalierly contacting – directly and indirectly – employees, agents, and customers of IME WatchDog regularly to disparage Plaintiff. See copy of package and e-mail attaching same, respectively, annexed hereto as **Exhibits "A" and "B."**

7. Most egregiously, Defendants claim that I am a pedophile, yet I have never been arrested or in trouble with the law. Defendants have made it one of their main objectives to stalk and harass me, which has seriously impacted my mental health and physical wellbeing.

8. Arguably just as egregiously, Defendants hired an unlicensed private investigator to confront and intimidate me by placing a global-positioning-satellite ("GPS") device on my personal vehicle to unlawfully track my whereabouts at the height and heat of this litigation. These actions demonstrate the Defendants' complete and brazen disregard for this Court's order.

9. I learned about the GPS device on or about November 11, 2022 when it was brought to my attention by my Ring device, that someone lurked underneath my vehicle and placed something there. See https://youtu.be/PLzODxl7IG8 (last accessed March 8, 2023).

---

[1] The Hon. Albert Dabrowski, U.S.B.J. served the United Bankruptcy Court for the District of Connecticut from 1993 until his retirement in April 2015. Pretending to be a federal agent is a federal crime, punishable under 18 U.S.C. § 912.

3

10. I reported this matter to the police on November 12, 2022. See copy of police report annexed hereto as **Exhibit "C."**

11. The New York Police Department assigned a detective to my case, who subpoenaed the manufacturer of the GPS device – Land Air Sea Systems, Inc. ("LandAirSea") – and learned that the device was purchased by one Stephan "Steve" Stanulis ("Stanulis"), a private investigator on Staten Island who maintains offices minutes away from Safa's home.

12. I reported this matter to Daniella Levi, Esq. ("Mrs. Levi") who retained the services of Pallorium, Inc. to conduct an investigation.

13. Steven Rambam ("Rambam"), who owns Pallorium and testified at the show cause hearing in this case on April 4, 2022, confronted Stanulis, who told him a woman named "Gladys" hired Stanulis to place the GPS device on my vehicle to catch her allegedly cheating husband.

14. This did not make much sense, as I am not married, and – setting aside the required coincidence that Gladys' husband would need to have the same vehicle as I do – I find it hard to believe that this "Gladys" gave my address for her husband.

15. As a result, I retained the services of Zieher & Associates, P.C. ("Zieher Law") to commence a special proceeding in the Supreme Court of the State of New York for an Order permitting pre-action disclosure.

16. On December 8, 2022, Zieher Law filed a petition for pre-action disclosure pursuant to New York Civil Practice Law & Rules ("CPLR") § 3102(c). See In re Application of Carlos Roa for an Order Compelling Pre-Action Disclosure Pursuant to CPLR § 3102(c) against John Does 1-10, unknown individuals, et al., Index No.: 725915/2022, NYSCEF Docket Entry 1.

4

17. On December 12, 2022, the Hon. Karina E. Alomar, J.S.C. ("Justice Alomar") issued an Order to show cause permitting pre-action disclosure. See Id., NYSCEF Docket Entry 6 ("ORDERED, that … Petitioner is permitted to seek pre-action disclosure … from non-parties").

18. On or about December 13, 2022, Zieher Law prepared and filed a subpoena *ad testificandum* and *duces tecum* upon Stanulis and his company Silver Shield Security LLC ("Silver Shield"). See Id., NYSCEF Docket Entry 7.

19. Other subpoenas, such as one to LandAirSea and to the New York State Department of State's Division of Licensing Services, have been filed and served, and Zieher Law is awaiting responses from those third parties. See Id., NYSCEF Docket Entries 9 and 10.

20. In response to his subpoena, Stanulis appeared by counsel and produced a contract dated November 4, 2022 between Safa Abdulrahman Gelardi ("Safa") and Silver Shield. See copy of contract annexed hereto as **Exhibit "D."**

21. Stanulis' attorney also advised my attorney that Safa was informed in advance that a copy of the contract was going to be produced to my attorney.

22. The contract was produced to Zieher Law on January 24, 2023.

23. As such, during her deposition on February 2, 2023, and having been made aware that I obtained a copy of the contract from Stanulis, Safa did not deny hiring Silver Shield; however, she claimed that she hired them to confront me concerning an alleged "smear campaign."

24. However, I was never confronted by anybody.

25. Unsurprisingly, at her deposition, Safa denied instructing Silver Shield to place a GPS device on my vehicle. But my attorneys at Zieher Law also obtained an affidavit from Stanulis confirming that Safa lied about this, as well. See copy of Affidavit of Steve Stanulis with accompanying exhibits annexed hereto as **Exhibit "E."**

5

26. Due to Stanulis' attempts to mislead Rambam about the identity of the individual who hired him, i.e., "Gladys," and the purpose for which a GPS device was placed on my vehicle, as well as Safa's denials as to any knowledge of the GPS device, it is respectfully submitted that a hearing is necessary to determine the truth.

27. I am advised that placing the GPS device on my vehicle was unlawful and not permitted under New York State law.

28. I am also advised the neither Stanulis or Silver Shield are licensed to perform services as a private investigator, security services provider, and/or protective services provider.

29. Since I learned that a GPS device was placed on my vehicle, I have been placed in a state of fear, anxiety, and shock.

30. I am constantly looking over my shoulder and wondering whether anyone is following me; I no longer live in peace.

31. I know Safa to be a ruthless person who will stop at nothing to achieve what she wants, and I am literally scared for my life, as I expressed in my first declaration in this case because it is apparent to me that she will do whatever it takes to keep what she stole from IME WatchDog.

32. Safa will stop at nothing and has no regard for the rule of law, as is evidenced by the libelous packages she sent to thousands of attorneys along with disparaging emails.

33. Further, placing a GPS device on my vehicle was also a tactic to scare and intimidate me from participating in this lawsuit and was deliberately designed to prevent me from providing any further testimony or information to Mrs. Levi concerning Safa's heinous acts of theft and bribery; this is exactly why Safa asked Stanulis to confront Roa.

34. I have considered quitting IME WatchDog and moving elsewhere to prevent Safa from being able to try to hurt me again, but am doing everything in my power to stay strong, remain vigilant, and protect myself in the event that Safa stoops to the level of trying to cause me physical harm, which I do not put past her. However, even if I do move, I am sure Safa will find a way to find me and continue to hurt me.

35. Separate and apart from slandering me, calling me a pedophile, stalking and intimidating me from participating further in this case, Safa has engaged in multiple and routine violations of the Injunction by contacting other employees, agents, and customers of IME WatchDog.

36. For instance, on October 27, 2022, an independent contractor who observes independent medical examinations ("IMEs") for IME WatchDog named Rebecca Roth ("Roth") was accosted by two (2) agents of Companions.

37. On that date, Roth was assigned to observe an IME in Brooklyn, New York, and was approached there by a man named "John" who asked Roth who she worked for.

38. When Roth answered "IME WatchDog," the gentleman who identified himself as John became curious and asked a series of questions related to her assignments, how many IMEs she observes daily, what she gets paid, and the like.

39. "John" then explained that he is a "high-level" employee of Companions, and that his "boss" – that is, Safa – was helping him move to Florida to open a Companions' location in Florida.[1] "John" asked Roth whether she "bounces around" in an apparent attempt to lure her away from IME WatchDog, to which Roth explained that she only wanted to work for IME WatchDog and ended the conversation.

---

[1] I am advised that this is a separate violation of the Injunction.

40. Roth was accosted by "John" again the following day at another location in Brooklyn, who again asked a series of questions about her work assignments, which Roth answered, but felt uncomfortable doing so.

41. Roth later learned from me that "John" was actually Mark Purificati ("Purificati"), and was distressed to learn that she had been lied to. See copy of November 1, 2022 affidavit of Rebecca Roth annexed hereto as **Exhibit "F."**

42. Purificati is an employee and agent of Companions, and Defendants violated the Injunction by accosting and interrogating Roth.

43. Similarly, on January 18, 2023, Safa contacted Tania Martinez of Oresky & Associates, PLLC, which is a customer of IME WatchDog since 2017, and shamelessly inquired as to whether she should cover an IME for this customer in violation of the Injunction. See copy of e-mail correspondence annexed hereto as **Exhibit "G."**

44. It is worth noting, that at the time I was fired from IME Companions, coincidentally March 1, 2022, the date the defendants were served with this lawsuit, Oresky & Associates PLLC was not a client of IME Companions.

45. During Safa's deposition, she testified that I drafted the plagiarized reports and sent them to her. This is not true. See copies of e-mail correspondence demonstrating that Safa plagiarized reports annexed hereto as **Exhibit "H,"** where she states in her email, "See Attached."

46. In addition, an individual named Maura Diaz ("Ms. Diaz") has contacted our office representing that she is a paralegal at Zemsky & Salomon, P.C. and asked for information about the lawsuit at the behest of Jason Zemsky, Esq.

47. Ms. Diaz does work at Zemsky & Salomon, P.C., but she is a close friend of Safa and has observed IMEs for her; Jason Zemsky, Esq. never directly requested this information.

8

48. As can be seen in all of the foregoing examples, Defendants have brazenly disregarded the Injunction and have violated it with abandon ever since it was issued.

49. To this day, the Defendants are still using all of IME WatchDog's trade secrets and confidential information to operate the business they stole.

50. The only way to prevent further violations and Defendants' criminal conduct is to shut Companions down once and for all.

51. I respectfully request that this Court grant the relief requested herein, and grant Civil and Criminal contempt charges against the Defendants.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2023.

Carlos Roa

Sworn to before me on March 10, 2023

JHON PINEDA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01PI6376201
Qualified in Kings County
Commission Expires June 4, 2026

9