UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IME WATCHDOG, INC.,

                          Plaintiff,

            -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                     Defendants.
-------------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

                Third-Party Plaintiffs,

            -against-

CARLOS ROA,

                Third-Part Defendant.
-------------------------------------------------------------------X
CARLOS ROA,

             Third-Party Counter-Claimant,

            -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

            Third-Party Counter-Defendants.
-------------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC)(JRC)

**MEMORANDUM OF LAW
OF DEFENDANTS SAFA
ABDULRAHIM GELARDI,
VITO GELARDI AND IME
COMPANIONS LLC IN
OPPOSITION TO PLAINTIFF'S
ORDER TO SHOW CAUSE**

**WARNER & SCHEUERMAN**
Attorneys for Defendants
Safa Abdulrahim Gelardi, Vito Gelardi
and IME Companions, LLC
6 West 18th Street, 10th Floor
New York, New York 10011
(212) 924-7111

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

STATEMENT OF FACTS................................................................................................2

ARGUMENT.....................................................................................................................5

POINT I:      PLAINTIFF IS NOT ENTITLED TO A MANDATORY
INJUNCTION SHUTTING DOWN DEFENDANTS' BUSINESS...........................5

     A.    Plaintiff Has Failed To Demonstrate A Clear Or
Substantial Likelihood Of Success On The Merits.......................................................6

     B.    Plaintiff Has Failed To Make A Strong Showing Of Irreparable Harm.......................10

POINT II:     PLAINTIFF IS NOT ENTITLED TO AN ORDER OF ATTACHMENT................14

     A.    Plaintiff Is Not Entitled To An Order Of Attachment In New York
As A Result Of Defendants' Proposed Sale Of Real Property In New York.............15

     B.    Plaintiff Has Failed To Submit Any Evidence Of Fraudulent Intent..........................17

POINT III:    PLAINTIFF HAS FAILED TO PROVE CONTEMPT............................................20

     A.    Plaintiff Has Failed To Submit Clear And Convincing Evidence
Of Any Violation Of The Injunction By Defendants.................................................21

     B.    Plaintiff Has Failed To Prove Any Contempt Damages.............................................23

CONCLUSION...............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Adler v. Solar Power, Inc., 2018 WL 11447340 (S.D.N.Y. April 9, 2018)..................................15-16

A.H. by and through Hester v. French, 985 F.3d 165 (2nd Cir. 2021)...............................................5;11

Al Hirschfeld Foundation v. Margo Feiden Galleries Ltd., 438 F.Supp.3d 203 (S.D.N.Y. 2020)......23

Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., 534 Fed. Appx. 633 (9th Cir. 2013).............................13

Arminius Schleifmittel GmbH v. Design Indus., Inc.,
2007 WL 534573 (M.D.N.C. Feb. 15, 2017).............................................................................13-14

Art and Cook, Inc. v. Haber, 416 F.Supp.3d 191 (E.D.N.Y. 2017)....................................................9

Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395 (1993).......................................................................7

Badgley v. Santacroce, 800 F.2d 33 (2nd Cir. 1986), cert. denied, 479 U.S. 1067 (1987).................20

Brastex Corp. v. Allen Int'l, Inc., 702 F.2d 326 (2nd Cir. 1983)....................................................15;16

Cardiocall, Inc. v. Sterling, 492 F.Supp.2d 139 (E.D.N.Y. 2007).......................................................9

Chase Bank USA, N.A. v. M. Harvey Rephen & Assocs., P.C.,
2019 WL 13046982 (S.D.N.Y. August 16, 2019)..............................................................................20

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,
598 F.3d 30 (2nd Cir. 2010)...............................................................................................................5

Computer Strategies, Inc. v. Commodore Bus. Machs., Inc., 105 A.D.2d 167 (2nd Dept. 1984).......17

Coley v. Vanguard Urban Improvement Ass'n., Inc.,
2016 WL 7217641 (E.D.N.Y. December 13, 2016)(Chen, J.).........................................................19

Dafeng Henwei Textile Co. v. Aceco Indus. & Commercial Corp.,
54 F.Supp.3d 287 (E.D.N.Y. 2014)..................................................................................................18

DeVivo Assocs., Inc. v. Nationwide Mut. Ins. Co.,
2020 WL 2797244 (E.D.N.Y. May 29, 2020)(Chen, J.).............................................................10;12

Dexter 345 Inc. v. Cuomo, 663 F.3d 59 (2nd Cir. 2011).................................................................12

DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308 (E.D.N.Y. 2009)....................14;17;19

Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110 (2nd Cir. 2009).......................10;12;13

Free Country Ltd. v. Drennen, 235 F.Supp.3d 559 (S.D.N.Y. 2016)................................................6;9

Geritrex Corp. v. Dermarite Industries, LLC, 910 F.Supp. 955 (S.D.N.Y. 1996)............................13

Grand River Enterprises Six Nations, Ltd. v. Pryor, 481 F.3d 60 (2nd Cir. 2007).............................11

Grayson v. Equifax Credit Information Services,
2020 WL 13200593 (E.D.N.Y. March 16, 2020)................................................................................6

Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F.Supp.2d 509 (E.D.N.Y. 2004)...................23

Iron Mountain Info. Mgmt., Inc. v. Taddeo, 455 F.Supp.2d 124 (E.D.N.Y. 2006)............................9

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70 (2nd Cir. 1979)....................................12

JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75 (2nd Cir. 1990)..................................................12

Kadant, Inc. v. Seeley Mach., Inc., 244 F.Supp.2d 19 (N.D.N.Y. 2003)..............................................9

Kamerling v. Massanari, 295 F.3d 206 (2nd Cir. 2002).........................................................................11

Kane v. De Blasio, 19 F.4th 152 (2nd Cir. 2021)...................................................................................5

Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co.,
2019 WL 10960397 (S.D.N.Y. June 20, 2019)................................................................................13

Levin v. Tiber Holding Corp., 277 F.3d 243 (2nd Cir. 2002)................................................................21

N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38 (2nd Cir. 1999)...........................................................8

New York State Nat. Org. for Women v. Terry, 886 F.2d 1339 (2nd Cir. 1989)..............................23

Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,
369 F.3d 645 (2nd Cir. 2004)..............................................................................................................20

Prabir v. Bukhara Indian Cuisine, Inc., 2018 WL 2709231 (S.D.N.Y. May 17, 2018).....................19

Serenity Alpha, LLC v. Northway Mining, LLC, 531 F.Supp.3d 512 (N.D.N.Y. 2021)...................18

Softel, Inc. v. Dragon Med. & Sci. Comm'cns, Inc., 118 F.3d 955 (2nd Cir. 1997), cert. denied, 523 U.S. 1020 (1998)......................................................................................7

Sussman v. Crawford, 488 F.3d 136 (2nd Cir. 2007)..............................................................5

Tilebar v. Glazzio Tiles, 2022 WL 2906179 (E.D.N.Y. July 22, 2022)(Chen, J.)........................12-13

Titra California, Inc. v. Titra Film, 2001 WL 1382587 (S.D.N.Y. 2001)......................................24

TomGal LLC v. Castano, 2022 WL 17822717 (S.D.N.Y. December 19, 2022)...............................13

2Die4Kourt v. Hillair Cap. Mgmt., LLC, 692 Fed. Appx. 366 (9th Cir. 2017)................................13

24 Seven, LLC v. Martinez, 2021 WL 276654 (S.D.N.Y. January 26, 2021)....................................9

Warner Vision Entertainment Inc. v. Empire of Carolina, Inc., 101 F.3d 259 (2nd Cir. 1996)........5-6;6

**Statutes**

C.P.L.R. § 6201...........................................................................................................14;15;16;17

NY Penal § 120.45............................................................................................................4,note1

18 U.S.C. § 1831..................................................................................................................6

18 U.S.C. § 1839..................................................................................................................7

Fed. R. Civ. P. Rule 65(c)......................................................................................................14

IRC §1031...........................................................................................................................20

**Other**

Local Rule 83.6..................................................................................................................23;25

## PRELIMINARY STATEMENT

Defendants Safa Abdulrahim Gelardi ("Safa"), Vito Gelardi ("Vito") and IME Companions LLC ("Companions") respectfully submit the instant Memorandum of Law in opposition to the motion of plaintiff IME Watchdog, Inc. (sometimes, "Watchdog") for an Order: (a) holding defendants in contempt of this Court's Amended Preliminary Injunction dated June 8, 2022 (the "Injunction"); (b) preliminarily enjoining defendants from continuing to operate their business; (c) imposing a daily fine in the amount of $10,000 payable to plaintiff for each day this Court finds defendants violated the Injunction; and (d) prohibiting the sale of the real property located at 1475 Moon Valley Drive, Champions Gate, FL 33896 (the "Florida Property") and any other real properties owned by defendants; (e) granting plaintiff an Order of Protection; (f) directing defendants to submit to another forensic examination at their expense; and (g) awarding counsel fees.

Plaintiff does not seek to maintain the status quo pending trial. Plaintiff seeks a mandatory injunction granting plaintiff the ultimate relief sought - the shuttering of defendants' competing business. Plaintiff has requested this drastic relief without attempting to demonstrate a likelihood of success on any cause of action in its complaint. Plaintiff has not tied its accusations of wrongdoing to any legal theory of liability and has not established that any alleged trade secret has been misappropriated. Plaintiff focuses exclusively on the alleged unlawful means utilized by defendants in procuring plaintiff's "confidential information," without establishing that the "information" which plaintiff refers to as "confidential" constituted protectable trade secrets. Plaintiff's failure to show that any trade secret has been misappropriated mandates the denial of its request for a mandatory injunction.

-1-

Nor has plaintiff made the necessary showing of irreparable harm.  To the contrary, plaintiff has admitted that money damages would suffice by alleging in its Memorandum of Law that "[t]here can be no dispute that Plaintiff states a claim for a money judgment" and by calculating its alleged money damages.  Plaintiff cannot have it both ways.  Plaintiff should not be allowed to argue from one side of its mouth that an Order of Attachment is required to secure a money judgment while arguing out the other side that it is entitled to injunctive relief.  Plaintiff's admission that money damages can be calculated mandates the denial of plaintiff's heavy-handed request for an overly broad and draconian injunction shutting down defendants' business.

## STATEMENT OF FACTS

The Court is well aware of the allegations in plaintiff's complaint.  Suffice it to say that plaintiff demands injunctive relief and money damages based upon defendants' alleged misappropriation of plaintiff's trade secrets in connection with defendants' competing business attending "independent medical examinations" ("IME's") on behalf of plaintiff's attorneys in personal injury cases.  The alleged trade secrets are comprised primarily of plaintiff's client list, client contact information and pricing information.  (Amended Complaint ¶42; Doc.114).  Plaintiff's clients are personal injury law firms.

Personal injury law firms in the New York City area are readily ascertainable through various public sources, including law firm advertisements and websites and public searches of lawyers and law firms on the internet and via NYSCEF, Westlaw, Martindale-Hubbel and the Jury Verdict Reporter.  In short, the identity of personal injury firms could readily be discovered through some simple internet sleuthing, and the contact information for each law firm can be found on the firm's website or by phone canvassing.  Personal injury firms purposefully make themselves easy to find for

potential new clients.  As for pricing, any competitor could undercut plaintiff by offering to charge

the law firms a lower rate than the rate which plaintiff advertises on its website (imewatchdog.com).

On June 8, 2022, this Court issued the Injunction prohibiting defendants from: (1)

using plaintiff's trade secrets and confidential and proprietary information; (2) contacting plaintiff's

current clients, employees, and agents; (3) franchising IME Companions LLC; and (4) destroying any

documents relevant to this proceeding in defendants' possession.  (Doc. 80).  The Injunction further

enjoins all parties "from making any statements to third parties, oral or written, regarding this case,

that can be construed as misleading and any statements about each other that can be construed as

defamatory and/or disparaging."

Plaintiff has now moved for a mandatory injunction shutting down defendants'

business based upon evidence of alleged unlawful means unearthed by the Court-Ordered forensic

analysis from prior to the date of the Injunction and for a contempt order based upon plaintiff's claim

that defendants have violated the Injunction.  Plaintiff alleges in its Memorandum of Law that

defendants violated the Injunction by contacting one of its agents, Renee Roth ("Roth"); having a

licensed investigator conduct surveillance of one of its officers, third-party defendant Carlos Roa

("Roa"); and sending disparaging/defamatory mailings and emails to plaintiff's clients, among others.

Plaintiff has offered no proof showing that the mailings and emailing were sent by defendants.  Nor

has Roa stated in his affidavit that he was "contacted" by defendants' investigator.

Safa and Vito deny violating the Injunction.  Safa denies contacting or having anyone

contact any of plaintiff's agents.  Safa's denial is corroborated by the declaration of Mark Purificati

("Purificati"), whom plaintiff identifies as the Companions' agent who had contacted Roth.  Purificati

states that it was Roth who approached and spoke to him.  Purificati also denies Roth's allegation that

-3-

another agent of Companions, Tiffany Uribe ("Uribe"), was with him at the time.  Purificati's version

of events is corroborated by his personal notes and Uribe's time records.  As for Roa, plaintiff's

accusations fail to show any violation of the Injunction where plaintiff has not alleged that defendants

"contacted" Roa.  Plaintiff alleges only that a private investigator retained by defendants had placed

Roa under surveillance.  Surveillance was **not** prohibited by the Injunction.[1]

       Safa explains that she retained an investigator because Companions' clients had

received disparaging emails and text messages: (a) advising them not to retain Companions; (b)

accusing defendants of "corruption/bribery"; and (c) attaching documents from the instant

proceeding.  Safa's explanation is corroborated by the emails and text messages attached to the

declaration of Karl E. Scheuerman, Esq. ("Scheuerman").  Safa states that rather than accuse plaintiff

of violating the Injunction without evidence linking plaintiff to the disparaging emails and text

messages, she retained an investigator.  Plaintiff now cites defendants' retention of the investigator

as a violation of the Injunction, although the Injunction did not prohibit defendants from hiring an

investigator to determine who was behind the smear campaign against defendants' business.

       Safa further states that Companions has lost clients and revenue as a result of the

smear campaign which she believes was orchestrated by plaintiff.  It is significant to note that plaintiff

has not identified any clients which plaintiff will imminently lose or any harm which plaintiff will

imminently sustain in the absence of additional injunctive relief.  Nor has plaintiff shown any decrease

in revenue resulting from defendants' alleged misconduct.  Plaintiff has not submitted any proof of

---

[1]    Although the issue of the GPS tracking device is not relevant where it was not prohibited by the Injunction, the placement of a GPS tracking device on someone's vehicle is only potentially illegal under New York law if the "actor was previously clearly informed to cease that conduct."  See NY Penal § 120.45.  Plaintiff's attorney's allegation that this tracking was "illegal" is unsupported by the law.

a decrease in revenue and/or profits corresponding with Safa's opening of Companions.  Plaintiff has supported its allegations of money damages with nothing but conjecture and surmise.

## ARGUMENT

**POINT I:**     **PLAINTIFF IS NOT ENTITLED TO A MANDATORY INJUNCTION SHUTTING DOWN DEFENDANTS' BUSINESS.**

A preliminary injunction has been described as an "extraordinary and drastic remedy" that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Sussman v. Crawford, 488 F.3d 136,139 (2nd Cir. 2007).  In the Second Circuit, a party seeking a preliminary injunction must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30,35 (2nd Cir. 2010).

The standard for obtaining preliminary injunctive relief is higher where, as here, the movant seeks a mandatory injunction.  A party seeking a mandatory injunction must make a **strong showing** of irreparable harm and demonstrate a **clear or substantial** likelihood of success on the merits.  See, e.g., A.H. by and through Hester v. French, 985 F.3d 165 (2nd Cir. 2021).  This rule exists because the purpose of a preliminary injunction is not to award the movant the ultimate relief sought, but only to preserve the status quo.  Id.; see also Kane v. De Blasio, 19 F.4th 152 (2nd Cir. 2021)(purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but only to preserve the status quo); Warner Vision Entertainment Inc. v. Empire of Carolina, Inc., 101 F.3d 259,261 (2nd Cir. 1996)(purpose of preliminary injunction is not to grant a plaintiff the

ultimate relief it seeks but only to prevent irreparable injury and to preserve the court's ability to render a meaningful decision on merits); Grayson v. Equifax Credit Information Services, 2020 WL 13200593 (E.D.N.Y. March 16, 2020)(preliminary injunctive relief is improper where it would give the plaintiff substantially all the ultimate relief it seeks).

A motion for a preliminary injunction seeking the equivalent of the ultimate relief requested is improper because it ignores a basic principle of preliminary injunction law. See, e.g., Warner Vision Entertainment Inc., 101 F.3d at 261 ("The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks. It is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits, to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began. As a general rule, therefore, a temporary injunction ought not to be used to give final relief before trial").

Plaintiff's motion for a mandatory injunction shutting down defendants' business should be denied where plaintiff has failed to demonstrate a clear or substantial likelihood of success on the merits and has fallen far short of making a strong showing of irreparable harm. In fact, plaintiff has made no showing of irreparable harm at all.

**A.      Plaintiff Has Failed To Demonstrate A Clear Or Substantial Likelihood Of Success.**

Plaintiff's chief claim (and only predicate for this Court's jurisdiction) is based upon defendants' alleged violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et. seq.* ("DTSA"). To state a claim for trade secret misappropriation under DTSA and New York common law, a plaintiff must demonstrate: (1) that it possessed a trade secret; and (2) that the defendant used that trade secret in violation of an agreement, confidential relationship or duty, or as a result of improper means. See Free Country Ltd. v. Drennen, 235 F.Supp.3d 559 (S.D.N.Y. 2016).

A trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955,968 (2ⁿᵈ Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998)(citations omitted).  DTSA provides that information is only a trade secret if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).

In determining whether information constitutes a trade secret, New York Courts generally consider the following factors: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395,407 (1993).

Plaintiff has failed to demonstrate a clear or substantial likelihood of success on the merits where plaintiff has made no showing (and cited no supporting case law) that a customer list comprised of the names of personal injury lawyers that are easily ascertainable through a simple internet search constitutes a trade secret.  The information at issue here – names of law firm customers, the contact persons at such law firms and the prices they paid for plaintiff's services – is

publicly available and can be readily replicated without any special or extraordinary effort.  Plaintiff has not set forth in its moving papers the extent to which the information is known outside of plaintiff's business.  Plaintiff has not described the alleged measures taken by plaintiff to guard the information.  Plaintiff has not described the value of the information to plaintiff and its competitors. Plaintiff has not described the effort or money expended by plaintiff in developing the information. Nor has plaintiff denied that the information could easily be acquired or duplicated by others, including defendants.  Plaintiff has focused exclusively on the alleged unlawful means employed by defendants in obtaining plaintiff's "information," while eliding the threshold issue of whether such information is entitled to trade secret protection.

Nor has plaintiff shown that Watchdog clients became Companions clients as a result of the alleged unlawful means, rather than the clients' independent decision to switch to Companions after meeting with Safa or hearing favorable reviews concerning Companions.  Seemingly buried under plaintiff's avalanche of hyperbole and hysteria is the undisputed fact that plaintiff had at-will relationships with its client law firms, just like investigators, process servers and per diem lawyer services used by law firms, meaning that the clients were free to employ a different IME observer at any time, just as law firms frequently employ different investigators, process servers and per diem lawyers.  That a law firm chose to use Companions rather than Watchdog does not mean that Companions "stole" Watchdog's client.

The Second Circuit has held that a customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret provided that the information it contains in not otherwise readily ascertainable.  See, e.g., N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38 (2nd Cir. 1999).  However, where the customer list contains little more than publicly available

-8-

information, it is not accorded trade secret protection, even if it takes considerable effort to compile. See 24 Seven, LLC v. Martinez, 2021 WL 276654 (S.D.N.Y. January 26, 2021)(account list containing names of clients, company contacts and preferred rights not a trade secret because information is widely available online); Art and Cook, Inc. v. Haber, 416 F.Supp.3d 191 (E.D.N.Y. 2017)(customer lists not trade secrets where lists did not include information difficult to duplicate on actual customers, lists were compilation of publicly available information, and that compilation of lists may have been arduous task was not alone sufficient to confer protection); Free Country Ltd. v. Drennen, 235 F.Supp.3d 559 (S.D.N.Y. 2016)(contact list not a trade secret because customers were well-known retailers whose identities were not protected, contact information for companies was readily ascertainable by calling companies' general lines, through external sources, such as search engines, and through directories of buyers in apparel industry); Cardiocall, Inc. v. Sterling, 492 F.Supp.2d 139 (E.D.N.Y. 2007)(customer list of area cardiologists compiled by company supplying heartbeat measuring software not a trade secret where identity of local cardiologists was easily ascertainable through telephone directory or other public sources); Kadant, Inc. v. Seeley Mach., Inc., 244 F.Supp.2d 19,36 (N.D.N.Y. 2003)(specific names of individuals key to the purchasing chain of command not a trade secret where customer companies' general contact information was readily available and "follow-up questions to the company in general would reveal the specific names, e-mail addresses, or phone numbers of individuals involved in the purchasing process"); Iron Mountain Info. Mgmt., Inc. v. Taddeo, 455 F.Supp.2d 124, 139 (E.D.N.Y. 2006)(where customer information was readily accessible through industry publications and cold calls, information was not a trade secret).

Plaintiff is not entitled to a mandatory injunction shutting down defendants' business where plaintiff has failed to submit clear and convincing evidence showing that the allegedly

misappropriated information is entitled to trade secret protection.  Personal injury firms in the New York City area in need of IME observers are readily ascertainable through various public sources, including law firm advertisements, law firm websites and public searches of lawyers and law firms via the internet, NYSCEF, Westlaw, Martindale-Hubbel and the Jury Verdict Reporter.  The contact information for each law firm can be found on the firm's website or by cold calling or searching on NYSCEF.  As for pricing, any competitor could undercut plaintiff by offering to charge the law firms a lower rate than the rate which plaintiff advertises on its website.  Plaintiff's website and marketing content can also be duplicated by anyone who has viewed plaintiff's website, which plaintiff publicizes rather than keeps private and confidential.  No amount of hysteria concerning the alleged unlawful means employed by defendants to obtain the information in question can change the fact that the information itself is readily ascertainable to the public and not entitled to trade secret protection.

That plaintiff's customer list is not entitled to trade secret protection is underscored by the declaration of Daniella Levi, Esq. ("Levi"), where she accuses defendants (without evidence) of sending a disparaging email after "they took the time, effort, and energy to compile a list of every personal injury law firm and every personal injury defense firm that Plaintiff and I, as an attorney, have with...."  Levi's admission that defendants could compile such a list of attorneys proves that plaintiff's client list is no trade secret.

**B.**     **Plaintiff Has Failed To Make A Strong Showing Of Irreparable Harm.**

A showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction."  Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2nd Cir. 2009); see also DeVivo Assocs., Inc. v. Nationwide Mut. Ins. Co., 2020 WL 2797244 (E.D.N.Y. May 29, 2020)(Chen, J.).  A party can establish irreparable harm if it shows that there is

-10-

a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. See Kamerling v. Massanari, 295 F.3d 206,214 (2nd Cir. 2002); see also Grand River Enterprises Six Nations, Ltd. v. Pryor, 481 F.3d 60,66 (2nd Cir. 2007). Where plaintiff is seeking a mandatory injunction shutting down defendants' business, plaintiff's motion is subject to the heightened standing of a "strong" showing of irreparable harm. See, e.g., A.H. by and through Hester v. French, 985 F.3d 165 (2nd Cir. 2021).

Plaintiff has not offered any evidence showing that it will suffer irreparable injury if defendants are permitted to continue to operate their business. Levi has not identified any irreparable harm in her declaration. Levi has instead calculated plaintiff's money damages based upon "lost profits" and "loss of good will" and has alleged that plaintiff has suffered damages in the amount of $5,000,000. Plaintiff argues at pg. 21 of its Memorandum of Law that "Plaintiff will be irreparably harmed if Defendants sell their real property because it would impede Plaintiff's ability to collect the forthcoming large judgment against Defendants." No evidence of irreparable harm can be found in plaintiff's moving papers. Nor is there any evidence of any imminent harm of any type.

Moreover, plaintiff has submitted no evidence showing a decrease in revenue or profits as a result of defendants' alleged misappropriation of plaintiff's alleged trade secrets and clients. Plaintiff has simply alleged in the most conclusory fashion possible that it has suffered damages in the amount of $5,000,000, without showing a decrease in revenue and profits, let alone a decrease in revenue and profits directly linked to defendants' alleged misconduct. Nor has plaintiff submitted any information regarding any anticipated or projected losses of revenue in the absence of a mandatory injunction shutting down defendants' business. Plaintiff has failed to show that the destruction of its

-11-

business is likely and imminent if a mandatory injunction is not granted.  Nor has plaintiff shown that any unquantifiable damages will occur.

Plaintiff's request for a mandatory injunction should be denied where plaintiff has admitted that any business losses it might suffer as a result of defendants' continuing operation of their competing business can be compensated with money damages when this case is finally resolved. See Dexter 345 Inc. v. Cuomo, 663 F.3d 59,63 (2nd Cir. 2011)(no irreparable injury where lost profits could be easily calculated from the previous years' financial records); JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75,80 (2nd Cir. 1990)(where money damages are adequate compensation, preliminary injunction should not issue); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70 (2nd Cir. 1979)(it has always been true that where money damages is adequate compensation, a preliminary injunction will not issue); DeVivo Assocs., Inc., 2020 WL 2797244*6 (denying preliminary injunction because "Plaintiffs also have failed to demonstrate that any business losses they might suffer cannot be compensated with money damages when this case is finally resolved).

Nor is plaintiff entitled to a presumption of irreparable harm where plaintiff alleges that defendants have damaged plaintiff by using its alleged trade secrets to lure clients away from plaintiff to defendants.  See Faiveley Transp. Malmo AB, 559 F.3d at 119 (there is no presumption of irreparable injury where alleged misappropriator will not disseminate confidential information to wider audience or irreparably impair the value of the information).  The only possible injury to plaintiff is a loss of customers and revenue to a competitor, and any harm sustained by plaintiff should be ascertainable at trial by comparing customer lists (with evidence concerning how they were obtained) and revenue sources of the two companies, and such harm will be fully compensable by money damages.  See Tilebar v. Glazzio Tiles, 2022 WL 2906179 (E.D.N.Y. July 22, 2022)(Chen, J.)(no

irreparable harm for theft of trade secrets because to the extent plaintiff loses customers to defendant, plaintiff will be able to calculate the damages for those losses); TomGal LLC v. Castano, 2022 WL 17822717 (S.D.N.Y. December 19, 2022)(when a misappropriator seeks only to use trade secrets in pursuit of profit, no presumption of irreparable harm is warranted because an award of money damages will provide a complete remedy); Geritrex Corp. v. Dermarite Industries, LLC, 910 F.Supp. 955 (S.D.N.Y. 1996)(no irreparable harm as a result of trade secret misappropriation and use by a competitor because any harm can be calculated).

Not only has plaintiff failed to demonstrate irreparable harm, but the mandatory injunction it seeks is overly broad and draconian. It is bedrock law that preliminary injunctions should be narrowly tailored to fit specific legal violations and to avoid unnecessary burdens on lawful commercial activity. See Faiveley Transport Malmo AB v. Wabtec Corp., supra. Here, plaintiff seeks a practically unprecedented preliminary injunction shutting down defendants' competing business, without any allegation of imminent or irreparable harm, and without making any showing that the allegedly misappropriated information is entitled to trade secret protection. Plaintiff's requested injunction is so wildly over broad that plaintiff was unable to cite a single case in this Circuit granting such relief. Plaintiff has cited only 2Die4Kourt v. Hillair Cap. Mgmt., LLC, 692 Fed. Appx. 366 (9th Cir. 2017), Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., 534 Fed. Appx. 633 (9th Cir. 2013), and Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co., 2019 WL 10960397 (S.D.N.Y. June 20, 2019)(granted on default), which were trademark infringement cases where the Courts enjoined defendants from continuing to sell the infringing products or to continue to use a trademark license, and Arminius Schleifmittel GmbH v. Design Indus., Inc., 2007 WL

-13-

534573 (M.D.N.C. Feb. 15, 2017), which was decided under North Carolina law and involved the losses of profitable business relationships "that cannot be easily quantified by this Court."

Plaintiff's losses, if any, will be readily quantifiable at trial. There is simply no legal justification for plaintiff's request for an injunction shutting down defendants' business in its entirety, rendering defendants unable to earn a living. Plaintiff's demand for such draconian relief is entirely punitive and has not in any way been fashioned to fit the alleged harm sustained, if any. If any such injunction is issued, plaintiff must be required to provide security in an amount appropriate to compensate defendants for the shutting down of their business. See Fed. R. Civ. P. Rule 65(c).

**POINT II:    PLAINTIFF IS NOT ENTITLED TO AN ORDER OF ATTACHMENT.**

It is well-settled that prejudgment attachment is harsh remedy, and that statutory requirements for obtaining such a remedy must be strictly construed in favor of those against whom attachment is sought. See, e.g., DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308 (E.D.N.Y. 2009). Plaintiff's request for the harsh remedy of an Order of Attachment pursuant to C.P.L.R. § 6201 is baseless on its face.[2]

Plaintiff's demand for an Order of Attachment is based upon C.P.L.R. § 6201(3). In order to obtain relief pursuant to for C.P.L.R. § 6201(3), plaintiff must prove that defendants: (1) "has assigned, disposed of, encumbered or secreted property, or removed it **from the state** or is about to do any of these acts"; and (2) did so "with intent to defraud... [plaintiff] or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor." (Emphasis added). Plaintiff has fallen far short of fulfilling these statutory prerequisites for two independent reasons.

----

[2]    Defendants refer the Court to their discussion above concerning plaintiff's failure to demonstrate a likelihood of success on the merits required to obtain an Order of Attachment.

**A.      Plaintiff Is Not Entitled To An Order Of Attachment In New York As A Result Of Defendants' Proposed Sale Of Real Property In Florida.**

First, plaintiff seeks an Order of Attachment on defendants' Florida Property and any other real properties owned by defendants on the ground that defendants have a "pending sale" of the Florida Property.  Plaintiff has not identified any property or asset which defendants have sold or are about to sell other than the Florida Property, meaning that plaintiff has failed to meet the threshold statutory requirement of showing that defendants have or are about to remove property "from the state."  Plaintiff has only alleged that defendants are about to sell property which was never in the state, over which this Court has no jurisdiction.  Plaintiff concedes that the listing price for the Florida Property is greater than defendants' 2021 purchase price.  Plaintiff has offered no details concerning this "pending sale" of out-of-state property, let alone any facts suggesting that any of the so-called "badges of fraud" apply.  Most importantly, plaintiff has ignored that C.P.L.R. § 6201(3) only applies to property located within New York.  See Adler v. Solar Power, Inc., 2018 WL 11447340 (S.D.N.Y. April 9, 2018); Brastex Corp. v. Allen Int'l, Inc., 702 F.2d 326 (2nd Cir. 1983).

In Adler v. Solar Power, Inc., the plaintiff moved for an Order of Attachment of real property located in Hawaii, and the Court denied such application on the ground that C.P.L.R. § 6201(3) only authorizes the issuance of an Order of Attachment upon real property located in the State of New York.  The Adler Court held:

> Although a court sitting in New York may order a defendant or garnishee over whom it exercises personal jurisdiction to deliver personal property located in another state to New York for attachment or turnover, New York courts have recognized that concerns of comity and sovereignty render attachment of real property located outside of the state inappropriate at the very least. See Gryphon Dom. VI, LLC v. APP Int'l Fin. Co., B.V., 836 N.Y.S.2d 4, 9 (App. Div. 1st Dep't 2007) (observing that a court would "violate

-15-

the sovereignty of another state if a New York sheriff tried to attach [real] property in [that] state"); JSC VTB Bank v. Mavlyanov, 63 N.Y.S.3d 40, 43 (App. Div. 1st Dep't 2017) (vacating attachment of real estate in California, noting that such attachment would require action by a New York sheriff outside of the state.

The Court concludes that to direct New York's sheriffs to levy on real property located in Hawaii would impinge improperly on that state's sovereignty. See Gryphon Dom. VI, LLC, 836 N.Y.S.2d at 9. Indeed, N.Y. C.P.L.R. section 6216 also requires the clerk of the county in which the property is located to record and index the notice in the same manner as a notice of pendency. These instructions to county clerks indicate that this section should only be applied to real property situated in New York because a New York statute cannot regulate the real property records of another state.

2018 WL 11447340*2.

In Brastex Corp. v. Allen Int'l, Inc., the Second Circuit affirmed the District Court's denial of a motion to confirm an ex parte Order of Attachment. The Second Circuit agreed with the District Court's finding that: "that the provisions of Subdivision 3 are designed to deal with the removal or fraudulent attempted removal of assets within the State of New York, and the statute does not apply in a situation where the assets were never within the State of New York." 702 F.2d 326, 331-332.

It appears that plaintiff, which is always quick to accuse defendants and their attorneys of wrongdoing in the most hyperbolic and hysterical fashion possible, has based its request for an Order of Attachment on a misrepresentation of C.P.L.R. § 6201. Such tactics should not be countenanced. The Temporary Restraining Order barring the sale of the Florida Property should be dissolved.

-16-

**B.**      **Plaintiff Has Failed To Submit Any Evidence Of Fraudulent Intent.**

Second, and assuming *arguendo* that C.P.L.R. § 6201(3) applied to real property outside of New York, plaintiff cannot show that defendants are selling the Florida Property with the specific intent to "defraud" plaintiff or to frustrate its enforcement of a potential judgment in this case.

A party seeking a prejudgment attachment under C.P.L.R. § 6201(3) must establish fraudulent intent in the defendant's mind. Computer Strategies, Inc. v. Commodore Bus. Machs., Inc., 105 A.D.2d 167, 173 (2nd Dept. 1984). "Removal, assignment, or other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." DLJ Mortg. Capital, Inc., 594 F.Supp.2d 308,319 (citations omitted). "Because fraud is not lightly inferred, plaintiff's moving papers must contain evidentiary facts as opposed to conclusions proving the fraud." Id. (quotations omitted). "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient." Id. (quotations omitted). "Rather, it must appear that such fraudulent intent really exists in the defendant's mind." Id. (quotations omitted).

Recognizing that fraudulent intent is rarely susceptible to direct proof, the Courts in this Circuit (and New York) examine whether allegedly suspicious transactions exhibit "badges of fraud" that give rise to an inference of intent. Id. The badges of fraud are: (1) gross inadequacy of consideration; (2) a close relationship between transferor and transferee; (3) the transferor's insolvency as a result of the conveyance; (4) a questionable transfer not in the ordinary course of business; (5) secrecy in the transfer; and (6) retention of control of the property by the transferor after the conveyance. Id.

Here, plaintiff has failed to offer a scintilla of proof supporting its conclusory allegation of fraudulent intent.  Nor has plaintiff addressed the "badges of fraud."  Plaintiff has demanded the drastic remedy of an Order of Attachment on all real property owned by defendants, simply because defendants are attempting to sell the Florida Property at an asking price which plaintiff concedes is greater than defendants' original purchase price.  No proof whatsoever has been submitted suggesting anything untoward in connection with defendants' proposed sale of the Florida Property.  Plaintiff has not shown the inadequacy of the consideration.  Plaintiff has not shown a close relationship between defendants and purchaser.  Plaintiff has not shown that defendants will be rendered insolvent by the sale.  Plaintiff has not shown that the proposed sale is being conducted in secret.  To the contrary, plaintiff discovered the pending sale on the internet, just like anyone with a computer can discover the identity of personal injury lawyers in the New York City area.

The "evidence" relied upon by plaintiff does not suggest – let alone prove – any fraudulent intent by defendants to thwart plaintiff's ability to collect on any judgment.  There is nothing fraudulent about selling real property in order to raise funds for litigation, and the mere disposition of property is insufficient to establish fraud for attachment purposes.  See, e.g., Dafeng Henwei Textile Co. v. Aceco Indus. & Commercial Corp., 54 F.Supp.3d 287 (E.D.N.Y. 2014)(the mere removal or other disposition of property by a debtor is not a sufficient grounds for an attachment); Serenity Alpha, LLC v. Northway Mining, LLC, 531 F.Supp.3d 512 (N.D.N.Y. 2021)(the mere disposition of property is not sufficient ground for prejudgment attachment because fraudulent intent must be proven, not simply alleged or inferred, and facts relied upon to prove the fraud must be fully set forth in moving affidavits).

-18-

Nor do any of the cases cited by plaintiff support its argument, assuming that the defendants' proposed disposition of the Florida Property could constitute grounds for an Order of Attachment. In Prabir v. Bukhara Indian Cuisine, Inc., 2018 WL 2709231 (S.D.N.Y. May 17, 2018), cited at pg. 20 of plaintiff's Memorandum of Law, the defendants clandestinely sold their New York restaurant immediately after the lawsuit was commenced, could not account for the sale proceeds, and took out a substantial second mortgage on their home. Here, defendants' proposed sale of the Florida Property was public as evidenced by plaintiff's Zillow citation. In Coley v. Vanguard Urban Improvement Ass'n., Inc., 2016 WL 7217641 (E.D.N.Y. December 13, 2016)(Chen, J.), the defendant sold a $1.9MM New York property three weeks after being served and could not account for the sale proceeds, and plaintiff submitted "compelling evidence that at least some of the proceeds of the property sale were transferred to close associates of Niles for little or no consideration in order to conceal the proceeds after the filing of this lawsuit." Here, plaintiff has submitted no evidence concerning any badge of fraud, and seeks an Order of Attachment based upon the proposed sale of out-of-state real property. In DLJ Mortg. Capital, Inc. v. Kontogiannis, *supra*, cited by plaintiff at pg. 20 of its Memorandum of Law, the Court denied the majority of the plaintiff's request for an Order of Attachment while noting that "the Supreme Court has held that district courts lack the authority to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication of a plaintiff's claim for money damages." Id. at 329 (quotations omitted).

Plaintiff's request for the drastic relief of an Order of Attachment based upon defendants' proposed sale of the Florida Property must be denied where: (a) New York's C.P.L.R. clearly and unambiguously states that an Order of Attachment may only be issued where a defendant has or is threatening to dispose of property in New York State; (b) plaintiff has failed to submit a

shred of evidence showing any fraudulent intent with respect to the proposed sale of the Florida Property; and (c) the documentary evidence shows that the Florida Property was not purchased with any ill-gotten gains as alleged by plaintiff (without any evidence), but with funds from the sale of a family home in Brooklyn pursuant to an IRC Section 1031 Exchange.  Safa and Vito explain in their opposing declarations that the sale has been occasioned by the need to raise cash to defend this litigation and to live as a result of the decrease in revenue Companions experienced due to this litigation and a concomitant smear campaign.  The documentary evidence submitted by defendants pertaining to the 1031 Exchange should put to rest plaintiff's **false** allegation at pg. 21 of its Memorandum of Law that the Florida Property "was purchased using the money they stole from Plaintiff which is another basis for an order of attachment."

**POINT III:     PLAINTIFF HAS FAILED TO PROVE CONTEMPT.**

Civil Contempt is designed to coerce a reluctant party to obey a court's directive. See Badgley v. Santacroce, 800 F.2d 33,36 (2nd Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987). "Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases." Chase Bank USA, N.A. v. M. Harvey Rephen & Assocs., P.C., 2019 WL 13046982*2 (S.D.N.Y. August 16, 2019)(citations omitted).  "Thus, a court may hold a party or a non-party in civil contempt for failing to comply with a court order where: "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  Id., *quoting*, Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645,655 (2nd Cir. 2004).

-20-

Plaintiff alleges at pg. 14 of its Memorandum of Law that defendants have violated the Injunction by: (a) "accost[ing] Roth," who is an independent contractor for Watchdog; (b) "harrass[ing] and terrify[ing] Roa, who is an officer of Watchdog; and (c) anonymously contacting plaintiff's customers and providing the customers (and others) with disparaging materials concerning Levi and Roa.  While plaintiff maintains that "no question exists that they have violated the orders," the truth is that no evidence has been submitted showing that defendants violated any Order.

## A.   Plaintiff Has Failed To Submit Clear And Convincing Evidence Of Any Violation Of The Injunction By Defendants.

In the context of civil contempt, "the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." Levi v. Tiber Holding Corp., 277 F.3d 243,250 (2nd Cir. 2002).  With respect to Roth and Roa, plaintiff alleges that defendants violated that portion of the Injunction which prohibited defendants from "contacting Plaintiff's current clients, employees, and agents."  (Doc. No. 80).  But plaintiff's allegations fall far short of rising to the level of "clear and convincing" proof of contempt.

Plaintiff's allegation that defendants violated the Injunction by having Purificati "accost" Roth on two occasions in the presence of defendants' agent Uribe is disputed by Purificati and Uribe and refuted by the documentary evidence.  Purificati states that it was Roth who approached and questioned him.  Purificati has supported his affidavit with a contemporaneously-made note stating: "Weird creepy old lady keeps talking to me from watchdog."  Not only has Purificati denied contacting Roth, but both Purificati and Uribe have denied that Uribe was present at the time as alleged by Roth.  Their denial is corroborated by Uribe's time records showing that she was working as a speech pathologist at the time.  Moreover, plaintiff's counsel's hyperbolic assertion

that Purificati "accosted" Roth is not supported by Roth's declaration. Roth stated that she was "approached" by Purificati. Nothing in Roth's affidavit supports plaintiff's counsel's accusation that she had been "accosted." Nor has plaintiff reconciled its hysterical allegations of contempt with its decision to sit on Roth's <u>November</u> declaration for over four months before moving for contempt.

Plaintiff's allegations with respect to Roa fail to show any violation of the Injunction. Plaintiff does not allege that defendants "contacted" Roa. Plaintiff alleges that defendants hired an investigator to place Roa under surveillance. Plaintiff has failed to cite to any language in the Injunction which prohibited defendants from having an investigator place Roa under surveillance. Nor does any such language exist. Safa states that she retained an investigator because she and Companions had been the target of a smear campaign which was destroying her business. Safa's allegations are corroborated by the emails annexed to Scheuerman's declaration.

Plaintiff's only serious allegation of contempt involves the **alleged** mailing and emailing of information concerning Levi's alleged 1993 arrest and conviction for money laundering and Roa's alleged 2015 identification in a "To Catch a Predator" type website. Plaintiff maintains that such conduct violated those portions of the Injunction which prohibited defendants from contacting plaintiff's current clients and from making any statements to third-parties that can be construed as defamatory and/or disparaging. But plaintiff has submitted **no** evidence whatsoever showing that the alleged mailings and emailings were conducted by defendants. Plaintiff's unsupported speculation that defendants mailed and emailed the foregoing disparaging articles and statements falls far short of constituting clear and convincing evidence of a violation of the Injunction. Nor has plaintiff submitted any evidence pertaining to the recipients of the alleged mailings and emails. We do not know who allegedly received these alleged mailings and emails, other than one

-22-

Syracuse law firm (Ex.A Roa Dec.) and a "Jonathan" with an email address of info@kdrpilawyers.com (Ex.B Roa Dec.).  While Levi states that she has "received dozens, if not hundreds, of calls, emails and text messages from my colleagues informing me that they are in receipt of" the emails, Levi has not named any of the alleged recipients in her declaration.  Nor is there any Exhibit "A" attached to Levi's declaration (Doc. 155), although Levi swears that the Exhibit "A" allegedly attached to her declaration confirms "that Plaintiff's clients and members of the personal injury bar have construed Defendants' publications about me as defamatory and disparaging..."  In short, no proof has been submitting showing that defendants sent these emails and no proof has been submitted showing who had received these emails.

**B.**      **Plaintiff Has Failed To Prove Any Contempt Damages.**

Civil contempt sanctions should not be punitive in nature and should only be awarded to coerce compliance and/or to compensate the complainant for actual losses sustained.  See New York State Nat. Org. for Women v. Terry, 886 F.2d 1339 (2nd Cir. 1989); Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F.Supp.2d 509 (E.D.N.Y. 2004); Al Hirschfeld Foundation v. Margo Feiden Galleries Ltd., 438 F.Supp.3d 203 (S.D.N.Y. 2020).  Consistent with the Rule that contempt sanctions must be based upon actual damages, Local Rule 83.6 requires the moving party to submit an affidavit setting forth "with particularity the misconduct complained of, the claim, if any, for damages occasioned thereby and such evidence as to the amount of damages as may be available to the moving party."

Plaintiff has failed to submit an affidavit setting forth its alleged contempt damages, let alone with the particularity required by Local Rule 83.6.  Not a single moving affidavit identifies any damages resulting from the alleged contemptuous conduct.  Plaintiff's request for large daily fines

payable to plaintiff (rather than the Court) should be denied where such request is entirely punitive in nature and not in any way based upon the actual damages sustained by plaintiff as a result of defendants' alleged contempt.  See Titra California, Inc. v. Titra Film, 2001 WL 1382587*5 (S.D.N.Y. 2001)("In the absence of any loss to the complainant, any fine that may be imposed is necessarily coercive, rather than compensatory, and therefore should be made payable to the court").

Plaintiff has neither calculated any damages resulting from the alleged contempt nor provided the Court with the identity of a single customer lost as a result of the emails allegedly sent by defendants, let alone a list of the alleged recipients.  Moreover, plaintiff's feverish allegations concerning defendants' alleged publication to others of the prior bad acts allegedly committed by Levi and Roa are contradicted by the fact that plaintiff has filed with this Court the articles and information documenting the alleged bad acts without asking that they be sealed, and has thus published them for all the world to see.  In any event, any coercive fine should be paid to the Court rather than plaintiff. Plaintiff can only be compensated for its actual damages arising out of the alleged contempt, and plaintiff has failed to establish any actual damages.

Nor is plaintiff entitled to either its attorney's fees or a forensic examination at defendants' cost.  The bottom line is that plaintiff has failed to submit one iota of evidence indicating that the emails documenting Levi's and Roa's alleged prior bad acts were sent by defendants. Plaintiff has not even submitted any circumstantial evidence, let alone established that they have attempted to ascertain the identity of sender through an investigation but have been unable to do so. Nor has plaintiff submitted any proof as to the people who allegedly received the anonymous mailings and emails.  There is simply no way to determine whether a forensic examination is warranted until plaintiff submits: (a) proof suggesting that defendants conducted the mailing and emailing, or proof

-24-

that plaintiff's own investigation is insufficient to determine the source without a forensic examination; and (b) the identify of the recipients of the mailings and emails. Plaintiff's supposition is inadequate to compel defendants to pay for another forensic examination, particularly where defendants did not run to the Courthouse demanding that plaintiff pay for a forensic emanation of plaintiff's electronic devices when defendants' clients received emails and text messages disparaging Safa and Companions. That plaintiff has requested the forensic examination only proves that plaintiff lacks any proof supporting its premature contempt motion.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants respectfully request an Order denying plaintiff's motion, dissolving the temporary restraining order, requiring plaintiff to post security in the event it is awarded a preliminary injunction, granting defendants costs, disbursements and reasonable counsel fee pursuant to Local Rule 83.6(d), and granting such further relief as may be just.

Dated: New York, New York
      March 17, 2023

                    **WARNER & SCHEUERMAN**
                    Attorneys for Defendants
                    Safa Abdulrahim Gelardi, Vito Gelardi and
                    IME Companions, LLC

           By:    */s/ Jonathon D. Warner*
                    Jonathon D. Warner (5195)
                    6 West 18th Street, 10th Floor
                    New York, New York 10011
                    (212) 924-7111