UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IME WATCHDOG, INC.,

                            Plaintiff,

        -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                            Defendants.
----------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

                            Third-Party Plaintiffs,

        -against-

CARLOS ROA,

                            Third-Party Defendant.
----------------------------------------------------------------X
CARLOS ROA,

                            Third-Party Counter-Claimant,

        -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

                            Third-Party Counter-Defendants.
----------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC)(JRC)

**DECLARATION OF
SAFA A. GELARDI**

        SAFA A. GELARDI, hereby declares and verifies the truth of the following, under penalty of perjury under the laws of the United States of America, pursuant to Title 28, United States Code, Section 1746:

1. I am a defendant in the above-captioned matter and the Chief Executive Officer of defendant IME Companions LLC ("Companions"), and I am fully familiar with the facts set forth herein. I make this declaration in opposition to the motion of plaintiff IME Watchdog, Inc. (sometimes, "Watchdog") for an Order: (a) holding defendants in contempt of this Court's Amended Preliminary Injunction dated June 8, 2022 (the "Injunction"); (b) preliminarily enjoining defendants from continuing to operate their business; (c) imposing a daily fine in the amount of $10,000 payable to plaintiff for each day this Court finds defendants violated the Injunction; (d) prohibiting the sale of the real property located at 1475 Moon Valley Drive, Champions Gate, FL 33896 (the "Florida Property") and any other real properties owned by defendants; (e) granting plaintiff an Order of Protection; (f) directing defendants to submit to another forensic examination at their expense; and (g) awarding counsel fees.

2. I did not violate the Injunction by contacting any of plaintiff's employees and/or agents as alleged by defendants. Nor did I ever instruct any of Companions' employees and/or agents to contact any of Watchdog's employees and/or agents.

3. I did not instruct Mark Purificati ("Purificati") to contact Renee Roth ("Roth"), who is one of plaintiff's "Watchdogs." I did not instruct Purificati to recruit Roth for a Florida Companions office. I did not instruct Purificati to discuss Companions with any Watchdog agent and/or employee. I did not instruct Purificati to discuss Watchdog with any Watchdog agent and/or employee. I simply did not tell or instruct Purificati or any other "Companion" to contact Roth or any other "Watchdog."

4. Nor do I have any reason to believe that Purificati contacted Roth. Purificati states that it was Roth who initiated a conversation with him at a medical office where they were both

observing Independent Medical Examinations. Any small talk which might have occurred between Purificati and Roth was not at my request and was not within the scope of Purificati's duties as a "Companion." I did absolutely nothing wrong with respect to Roth. Nor did Purificati. I note that Roth's declaration was signed on November 4, 2022, which was more than four months before it was presented to this Court. Plaintiff's frantic allegations of contempt are inconsistent with plaintiff's failure to bring Roth's declaration to the Court at an earlier time.

5. Nor did I violate the Injunction by contacting Carlos Roa ("Roa"), who is an officer of Watchdog. I never contacted Roa in violation of the Injunction, and plaintiff does not even allege that I contacted Roa in violation of the Inunction. I simply retained an investigator who placed Roa under surveillance. Such conduct was not prohibited by the Injunction.

6. I retained an investigator because my business was being destroyed by this litigation and the resulting smear campaign which I presumed, but could not prove, was being conducted or orchestrated by plaintiff. I retained an investigator because Companions' clients had been receiving disparaging emails and text messages: (a) advising them not to retain Companions; (b) accusing me of "corruption/bribery"; and (c) attaching documents from the instant proceeding.

7. Rather than run to this Court and accuse plaintiff of contempt without any evidence showing that plaintiff was behind the smear campaign which has cost Companions clients and revenue, I retained an investigator. I did not believe that retaining an investigator violated the Injunction. Nor do I believe that the investigator did anything that violated the Injunction. The investigator did not "contact" Roa. He merely placed him under surveillance. As for plaintiff's suggestion that I committed a crime because the investigator placed a GPS tracking device on Roa's car, my attorneys advise me otherwise. My attorneys advise me that under New York's Penal Law,

the placement of a GPS tracking device on someone's vehicle is potentially criminal only if the person tracking the other person had been previously informed to cease such conduct. Roa does not state in his declaration that he had previously informed me not to track him with a GPS tracking device. Nor did he. In any event, I never "contacted" Roa. Nor did any employee and/or agent of mine contact Roa. Plaintiff does not even allege that I "contacted" Roa.

8. Roa's allegation that I contacted an alleged Watchdog client (this allegation of contempt cannot be found in plaintiff's Memorandum of Law) in violation of the Injunction is refuted by the documentary evidence attached to Roa's affidavit. The email exchange annexed as Exhibit "G" to Roa's affidavit shows that Tania Martinez from Oresky & Associates, PLLC, had emailed both Companions and Watchdog stating: "We need your services for the following Defendant Independent Medical Examination...." I replied to all (including Watchdog) and wrote: "Tania please advise if we should cover." I was never provided with a list of law firms for which I could not provide services for, and I had no reason to believe that my conduct in replying to a law firm's email requesting Companions' services could be construed as contemptuous. I did not even attempt to hide this from Watchdog, as evidenced by the fact that I included Watchdog on my reply to Ms. Martinez. In any event, the documents attached to Roa's declaration show that Oresky & Associates, PLLC contacted me. I did not contact them. I received the email from Ms. Martinez on January 18, 2023. The email shows that the IME was scheduled for February 23, 2023. If plaintiff thought my acceptance of this request for Companions' services violated the Injunction, plaintiff had five weeks to bring it to my lawyer's attention, if not to the Court's attention. Plaintiff did not.

9. Roa's allegations regarding my alleged contemptuous behavior with respect to Zemsky & Solomon, P.C. (these allegations are similarly absent from plaintiff's Memorandum of

Law) can only be characterized as incoherent. I have no idea what Roa is alleging it is that I did wrong. I do not see how Maura Diaz's calling Watchdog on behalf of her boss, Jason Zemsky, Esq., has anything to do with plaintiff's baseless contempt application against me. Zemsky & Solomon, P.C., has been my client since 2019. Ms. Diaz has told me that she was instructed to call Watchdog by Mr. Zemsky because Roa had been calling Zemsky & Solomon, P.C.. Ms. Diaz has also told me that Roa thereafter called the firm back and pitched Watchdog's business while smearing mine.

10. With respect to plaintiff's accusation that I recently mailed and emailed their clients and others information pertaining to the alleged 1993 arrest and conviction of Daniella Levi for money laundering and to Roa being named in a "To Catch a Predator" type website in 2015, I did not make these mailings or send these emails. I had nothing to do with them. I did not send them. I did not ask anyone else to send them. I do not know who sent them. I deny plaintiff's allegation that I was behind these alleged mailings and emailings.

11. Nor are my husband and I attempting to engage in any fraud by selling our real property located at 1475 Moon Valley Drive, Champions Gate, FL 33896 (the "Florida Property"). We are selling the Florida Property because we need money to defend this litigation and to make up for the loss of revenue sustained by Companions as a result of this lawsuit and the resulting smear campaign which has cost Companions numerous clients.

12. Plaintiff's attorney's allegation at pg. 21 of plaintiff's Memorandum of Law that the Florida Property "was purchased using the money they stole from Plaintiff which is another basis for an order of attachment" is false. The Florida Property was purchased with funds from the sale of a family home in Brooklyn pursuant to an IRC Section 1031 Exchange. We sold a family home located at 332 88th Street, Brooklyn, New York on December 22, 2021 (the "Brooklyn

Property", and rolled the proceeds over into the purchase of the Florida Property on December 22, 2021, pursuant to a Section 1031 Like-Kind Exchange. A copy of the deed for our sale of the Brooklyn Property is annexed as Exhibit "A." A copy of the Deed for our purchase of the Florida Property is annexed as Exhibit "B." A copy of our IRS Form 8824 for this "Like-Kind Exchange" is annexed as Exhibit "C."

13. The complete absence of any fraudulent intent is highlighted by the fact that my husband and I will now owe the IRS for the capital gains taxes we had attempted to avoid with the Section 1031 Like-Kind Exchange.

14. My husband and I have not assigned, disposed, encumbered or secreted any property in an effort to defraud any creditors or to frustrate the enforcement of any judgment plaintiff might obtain. We have simply attempted to sell the Florida Property so we can pay our litigation expenses and have the money we need to cover our living expenses. Additional money is needed to compensate for the loss of income resulting from the damage to Companions' business from this lawsuit and the resulting smear campaign which has cost Companions clients.

15. Finally, I respectfully submit that nothing that I allegedly did warrants the extreme measure of shutting down my business. I worked hard to build Companions (which has now been practically torn down) and worked day and night attempting to market Companions by attending various meetings and seminars attended by lawyers while trying my best to service Companions' clients. The notion that Companions' client base was stolen is simply not true.

16. I respectfully request an Order denying plaintiff's motion in its entirety, dissolving the temporary restraining order, requiring plaintiff to post security in the event it is

awarded a preliminary injunction, granting defendants costs, disbursements and reasonable counsel fees pursuant to Local Rule 83.6(d), and granting such further relief as may be just.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 16, 2023.

Safa A. Gelardi

New York,
Richmond

Sworn to before me this
16th day of March, 2023

NOTARY PUBLIC

SHEILA C GURRIERI
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01GU4885711
QUALIFIED IN RICHMOND COUNTY
MY COMMISSION EXPIRES 02-17-27