UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IME WATCHDOG, INC.,

                                         Plaintiff,

-against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, NICHOLAS ELEFTERAKIS,
NICHOLAS LIAKIS, and IME COMPANIONS LLC,

                                         Defendants.
-------------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

                                         Third-Party Plaintiffs,

-against-

CARLOS ROA,

                                         Third-Party Defendant.
-------------------------------------------------------------------X
CARLOS ROA,

                                         Third-Party Counter-Claimant,

-against-

SAFA ABUDLRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

                                         Third-Party Counter-Defendants.
-------------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC) (JRC)

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS ORDER TO SHOW CAUSE FOR CONTEMPT, FOR AN ORDER OF ATTACHMENT PURSUANT TO RULE 64 OF THE FEDERAL RULES OF CIVIL PROCEDURE & ARTICLE 62 OF THE NEW YORK CIVIL PRACTICE LAW & RULES, AND IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION DIRECTING DEFENDANTS TO CEASE OPERATING IME COMPANIONS LLC AND ANY OTHER ENTITIES THAT <u>COMPETE WITH PLAINTIFF</u>**

**MILMAN LABUDA LAW GROUP PLLC**
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT** ................................................................................................................................3

    **I.**    **The Law of the Case Doctrine Precludes Relitigating Likelihood of Success & Irreparable Harm** ..................................................................................................3

    **II.**    **Defendants Have Failed to Oppose Plaintiff's Argument that Companions was Formed and Maintained Solely Through the Theft of Plaintiff's Trade Secrets** ...................5

    **III.**    **There is No Question Plaintiff Has Established Likelihood of Success on the Merits and Has Been Irreparably Harmed in Any Event** .................................................................5

            **A. Likelihood of Success.** ...............................................................................................6

            **B. Irreparable Harm.** .....................................................................................................7

    **IV.**    **An Order of Attachment is Proper** ................................................................10

    **V.**    **Plaintiff has Established Defendants' Contempt** ........................................................12

    **CONCLUSION** ......................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.,
    No. 4:06CF114, 2010 WL 3370286 (N.D. Ohio Aug. 26, 2010) ......................................7

Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.,
    534 Fed. Appx. 633 (9th Cir. 2013) ...............................................................................10

Arista Records, LLC v. Tkach,
    122 F. Supp. 3d 32 (S.D.N.Y. 2015) ................................................................................5

Ariz. Premium Fin. Co. v. Emp'rs Ins. of Wausau,
    586 Fed. Appx. 713 (2d Cir. 2014) ...................................................................................4

Arizona v. California,
    460 U.S. 605 (1983) ..........................................................................................................4

Arminius Schleifmittel GmbH v. Design Indus., Inc.,
    No. 1:06-cv-644, 2007 WL 534573 (M.D.N.C. Feb. 15, 2007) ......................................10

Brightview Group, LP v. Teeters,
    No. CV SAG-19-2774, 2021 WL 1238501 (D. Md. Mar. 29, 2021) .................................7

Chan Ah Wah v. HSBC N. Am. Holdings Inc.,
    No. 15-CIV.-8974, 2019 WL 859042 (S.D.N.Y. Feb. 22, 2019) .......................................4

Continental Indus. Grp., Inc. v. Altunkilic,
    788 Fed. Appx. 37 (2d Cir. 2019) .....................................................................................6

Coty Inc. v. Excell Brands, LLC,
    277 F. Supp. 3d 425 (S.D.N.Y. 2017) .........................................................................8, 10

Ecolab v. Paolo,
    753 F. Supp. 1100 (E.D.N.Y. 1991) ..................................................................................8

Faiveley Transp. Mahmo AB v. Wabtec Corp.,
    559 F.3d 110 (2d Cir. 2009) ..............................................................................................7

Hotel 71 Mezz Lender LLC v. Falor,
    14 N.Y.3d 303 (2010) ......................................................................................................11

Int'l Bus. Machs. Corp. v. Papermaster,
    No. 08-cv-9078, 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) ........................................7

Intl. Profit Assoc., Inc. v Paisola,
    461 F. Supp. 2d 672 (N.D. Ill. 2006) .................................................................................9

Jasco Tools, Inc. v. Dana Corp.,
 574 F.3d 129 (2d Cir. 2009) ............................................................................................... 6

Juniper Entm't, Inc. v. Calderhead,
 No. CV 07-2413, 2007 WL 9723385 (E.D.N.Y. Aug. 17, 2007) ....................................... 6

Koehler v. Bank of Bermuda Ltd.,
 12 N.Y.3d 533 (2009) ...................................................................................................... 11

La Mirada Prod. Co. v. Wassall PLC,
 823 F. Supp. 138 (S.D.N.Y. 1993) .................................................................................... 8

Laro Maint. Corp. v. Culkin,
 267 A.D.2d 431 (2d Dept. 1999) ....................................................................................... 6

Loew v. Kolb,
 No. 03-CIV.-5064 (RCC), 2003 WL 22077454 (S.D.N.Y. 2003) ..................................... 5

Mercer Health & Benefits LLC v. DiGregorio,
 307 F. Supp. 3d 326 (S.D.N.Y. 2018) ............................................................................... 7

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn,
 73 F. Supp. 2d 425 (S.D.N.Y. 1999) ................................................................................. 7

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran,
 67 F. Supp. 2d 764 (E.D. Mich. 1999) .............................................................................. 8

QBE Americas, Inc. v. Allen,
 No. 22-CIV.-756 (JSR), 2022 WL 889838 (S.D.N.Y. Mar. 25, 2022) .............................. 9

Ragbir v. Lynch,
 640 Fed. Appx. 105 (2d Cir. 2016) ................................................................................... 4

Rezzonico v. H & R Block, Inc.,
 182 F.3d 144 (2d Cir. 1999) .............................................................................................. 4

TCPIP Holding Co. v. Haar Commc'ns Inc.,
 No. 99-CIV.-1825 (RCC), 2004 WL 1620950 (S.D.N.Y. 2004) ...................................... 5

Ticor Title Ins. Co. v. Cohen,
 173 F.3d 63, 69 (2d Cir. 1999) .......................................................................................... 7

Velo-Bind, Inc. v. Scheck,
 485 F. Supp. 102 (S.D.N.Y. 1979) .................................................................................... 8

<u>Vendavo, Inc. v. Long</u>,
    397 F. Supp. 3d 1115 (N.D. Ill. 2019)...........................................................................7

<u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>,
    956 F.2d 1245 (2d Cir. 1992)..........................................................................................4

<u>Weitzman v. Stein</u>,
    908 F. Supp. 187 (S.D.N.Y. 1995)..................................................................................4

**Rules**

New York Civil Practice Law & Rules ("CPLR") § 6201......................................................10, 11

**Treatises**

Siegel, N.Y. Prac § 313, at 499 (4th ed.)....................................................................................11

**PRELIMINARY STATEMENT**

In a dizzying display of pivoting, side-stepping, and spinning, Defendants are desperate in their attempts to try to hide the elephant in the room: that Defendants' business was started and has been maintained through their theft of Plaintiff's trade secrets. In its prior Orders wherein this Court granted Plaintiff's motion for a preliminary injunction, this Court left open for another day whether there is sufficient evidence establishing Defendants' business was built *entirely* on misappropriated information and customers poached through commercial bribery and sabotage warranting a shutdown of Defendants' business. That day has come.

Shockingly, Defendants fail to address this central issue and fail to submit any evidence belying the mountain of evidence establishing that Defendants' *entire operation* was built on the wrongful appropriation of Plaintiff's trade secrets, thus warranting that the Court issue a preliminary injunction to shut Defendants' business down.

Instead, Defendants attempt to reargue this Court's prior conclusion that Plaintiff has established all elements for the issuance of an injunction, including likelihood of success on the merits and irreparable harm. This Court's prior orders concluding Plaintiff has met its burden are law of the case. Moreover, Defendants' deadline to move for reconsideration has long passed. Even assuming *arguendo* that Plaintiff is required to establish these elements once more (it is not), Plaintiff has done so. There is no question that Plaintiff possessed trade secrets within the meaning of the law which Defendants misappropriated.

Those trade secrets include, but are not limited to:

    **(i)** a comprehensive list of law firms that use the IME observer service, including the identity and contact information of the individual at each law-firm-customer responsible for booking the service;

      **(ii)** the price each particular customer actually paid Plaintiff for its services such that Defendants could undercut those prices;

      **(iii)** specific preferences each law-firm-customer has such that Defendants can cater to those preferences;

      **(iv)** the concededly confidential nature of Plaintiff's IME reports which the Defendants plagiarized and copied; and

      **(v)** training materials utilized by Defendants to train "companions."

These are unquestionably trade secrets within the meaning of the law and none of these secrets are ones that could be compiled through any "google" or NYCEF search or any other internet searches as Defendants attempt to argue without providing any evidence.

Therefore, Plaintiff has established likelihood of success on the merits.

Plaintiff can also, once again, establish irreparable harm. Defendants comically argue that Plaintiff has not established irreparable harm as it has failed to identify any clients which it has lost.

That is precisely what this case is about, and it is clear and beyond a shadow of a doubt, based on the forensic evidence and Safa Abdulrahim Gelardi's ("Safa") own admissions that Defendants' business was built and grown based on the misappropriation of Plaintiff's secrets as well as the sabotage of client relationships and the targeting of specific customers of Plaintiff based on inside information provided to Safa by Plaintiff's key employee.

Indeed, the analysis of Defendants sales by customer list submitted to the Court and not disputed by Defendants proves that a staggering 98.3% of their revenue was generated from Plaintiff's clients. See Reply Declaration of Daniella Levi, Esq. ("Levi Reply Decl.") ¶¶ 4-6. This fact alone proves the extent of Defendants' harmful conduct.

With regard to Plaintiff's contempt motion, Defendants attempt to make a mockery out of the judicial system by simply denying that Safa sent mass-mail and mass e-mails defaming and disparaging Plaintiff's principal, Daniella Levi, Esq. ("Mrs. Levi") and Carlos Roa ("Roa") while altogether ignoring the fact that no one else would undertake such conduct. Circumstantial evidence and logic must prevail. There can be no conclusion other than that Defendants played a role in the distribution of the defamatory letters and e-mails.

Moreover, Defendants merely argue that placing a GPS tracker on Roa is perfectly permissible and fail to acknowledge that doing so was a violation of the Court's order and that it has terrorized and intimidated Roa, a key witness in this case.

## ARGUMENT

**I.     The Law of the Case Doctrine Precludes Relitigating Likelihood of Success & Irreparable Harm**

Defendants argue that Plaintiff has failed to establish likelihood of success on the merits and the existence of irreparable harm to support entitlement to a preliminary injunction shutting Defendants' business down.

However, this Court has already held multiple times that Plaintiff has established both. See Text Only Order dated April 4, 2022 ("For the reasons stated on the record, *the Court found that Plaintiff demonstrated a likelihood of success on the merits of its claims*. The Court will issue a separate order granting in part Plaintiff's motion for injunctive relief"); see also Text Only Order dated April 5, 2022 ("the Court finds that *Plaintiff has demonstrated likelihood of success on the merits of its claims against Defendants*;" "[t]he Court also finds that *Plaintiff has met the remaining prongs of the preliminary injunction test with respect to Defendants' planned franchising of Defendant IME Companions LLC ["Companions"] and any ongoing or future communications by Defendants with Plaintiff's employees and agents*;" and "Similarly, *Plaintiff*

3

*has demonstrated irreparable harm with respect to any continued or imminent future risk of loss of its trade secrets to Defendants through its employees and agents*"); ECF Docket Entry 66. In its May 13, 2022 Order, this Court reiterated its finding as to the likelihood of success on the merits and also found that Plaintiff has established irreparable harm. Id. at 11.

This Court's findings as to likelihood of success on the merits and the existence of irreparable harm is law of the case and cannot be relitigated.

Like other preclusion doctrines, the purpose of the law of the case doctrine is to prevent courts from having to make the same decision twice. See Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999); see also Chan Ah Wah v. HSBC N. Am. Holdings Inc., No. 15-CIV.-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) (the law of the case doctrine is "driven by considerations" that include "judicial economy"); Weitzman v. Stein, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (the "law-of-the-case doctrine promotes judicial economy by permitting a court to refuse to revisit an issue that the court already has decided").

Since this Court has already determined these issues, it should not reexamine it and Defendants cannot be permitted to relitigate it. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

"The law of the case doctrine commands that when a court has explicitly or implicitly ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." See Ragbir v. Lynch, 640 Fed. Appx. 105, 108 (2d Cir. 2016) (quotation and citation omitted); see also Ariz. Premium Fin. Co. v. Emp'rs Ins. of Wausau, 586 Fed. Appx. 713, 716 (2d Cir. 2014) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case" (quoting Arizona v. California, 460 U.S. 605, 618 (1983))).

Moreover, the time to move for reconsideration of the Court's prior determinations on these issues has expired, and Defendants have not established entitlement to reconsideration given its high standard of review.

Accordingly, Defendants' arguments that Plaintiff has not established likelihood of success on the merits and irreparable injury must be rejected.

## II. Defendants Have Failed to Oppose Plaintiff's Argument that Companions was Formed and Maintained Solely Through the Theft of Plaintiff's Trade Secrets

In their opposition, Defendants singularly focus on relitigating prior issues and ignoring the mountain of evidence against them.

In doing so, Defendants completely failed to oppose Plaintiff's arguments that Companions was formed solely by the theft of Plaintiff's trade secrets.

Thus, as an initial matter, Defendants have waived any substantive defense to Plaintiff's requested relief to shut Companions down. See, e.g., Arista Records, LLC v. Tkach, 122 F. Supp. 3d 32, 38–39 (S.D.N.Y. 2015) (finding that when a party fails to oppose specific arguments, then the party waives those issues); see also TCPIP Holding Co. v. Haar Commc'ns Inc., No. 99-CIV.-1825 (RCC), 2004 WL 1620950, *4 (S.D.N.Y. 2004) (defendant's failure to respond to motion was sufficient basis to grant motion by default); Loew v. Kolb, No. 03-CIV.-5064 (RCC), 2003 WL 22077454, *1 (S.D.N.Y. 2003) (same).

## III. There is No Question Plaintiff Has Established Likelihood of Success on the Merits and Has Been Irreparably Harmed in Any Event

Even assuming *arguendo* that Defendants are permitted to relitigate the issue of likelihood of success and irreparable harm notwithstanding this Court's prior Orders concluding Plaintiff satisfied its burden in establishing these elements, there is no question that Plaintiff has established likelihood of success and irreparable harm with the forensic evidence submitted.

### A. Likelihood of Success.

Defendants challenge the premise that what they stole constitute trade secrets under the law. "Confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law." See Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009); see also, e.g., Continental Indus. Grp., Inc. v. Altunkilic, 788 Fed. Appx. 37, 40-41 (2d Cir. 2019) (finding that information such as, *inter alia*, customer and supplier lists and pricing and payment terms are "routinely afforded trade secret protection"). In fact, "[c]ourts have repeatedly held that knowledge of a customer's pricing information in the context of bidding is extremely potent in the hands of a competitor and such knowledge has been held to constitute a trade secret protectable by an injunction." See Juniper Entm't, Inc. v. Calderhead, No. CV 07-2413, 2007 WL 9723385, at *23 (E.D.N.Y. Aug. 17, 2007) (citing cases); see also, e.g., Laro Maint. Corp. v. Culkin, 267 A.D.2d 431, 432 (2d Dept. 1999) (finding that the defendants exploited confidential pricing information for the plaintiff's customer contracts, and that access to such information would permit a competitor to undercut the plaintiff's bids).

Here, the text messages submitted in support of this motion alone, see ECF Docket Entry 154-2, easily establish the existence of trade secrets in that Safa discusses with Adam Rosenblatt ("Rosenblatt") the identity and contact information of individuals at each law-firm-customer who is the main point of contact for each personal injury law firm, which is not readily accessible or publicly available, and with which Defendants were able to more quickly siphon away clients from Plaintiff. Similarly, the text messages are littered with information concerning the price point each law-firm-customer in particular pays for Plaintiff's services, permitting Defendants inside knowledge of exactly how much to charge to entice customers away.

These trade secrets are in no way "publicly available," neither on Google or NYSCEF!

### B. Irreparable Harm

Similarly, there is no question that Plaintiff has suffered immense irreparable harm based on the evidence presented. "One man may not reap where another has sown, nor gather where another has strewn." See Brightview Group, LP v. Teeters, No. CV SAG-19-2774, 2021 WL 1238501, at *11 (D. Md. Mar. 29, 2021) (citation omitted).

The Second Circuit's holding in Faiveley Transp. Mahmo AB v. Wabtec Corp., 559 F.3d 110 (2d Cir. 2009), aligns it with other courts that employ a rebuttable presumption of irreparable harm in trade secret misappropriation cases. See, e.g., Vendavo, Inc. v. Long, 397 F. Supp. 3d 1115, 1143-44 (N.D. Ill. 2019) (applying rebuttable presumption in action under DTSA and state law); see also Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc., No. 4:06CF114, 2010 WL 3370286, at *2 (N.D. Ohio Aug. 26, 2010) ("Courts in the 6th Circuit have stated only that harm caused by the misappropriation of trade secrets is generally irreparable and may be presumed in some cases"). Indeed, "it would be very difficult to calculate damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999); see also Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) ("It is well established in this Circuit that the loss of client relationships and customer goodwill generally constitutes irreparable harm"); Int'l Bus. Machs. Corp. v. Papermaster, No. 08-cv-9078, 2008 WL 4974508, at * 7 (S.D.N.Y. Nov. 21, 2008) ("Courts routinely have noted that it is very difficult to calculate the monetary damages that would successfully redress the loss associated with trade secret misappropriation" (citing cases)); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn, 73 F. Supp. 2d 425, 428 (S.D.N.Y. 1999) ("By attempting to solicit and 'siphon off [plaintiff's] clients, Defendants threaten the lifeblood of [plaintiff's] business").

Likewise, the harm to goodwill is also not "monetarily ascertainable." See Velo-Bind, Inc. v. Scheck, 485 F. Supp. 102, 109 (S.D.N.Y. 1979); see also Ecolab v. Paolo, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991) ("Loss of good will constitutes irreparable harm which cannot be compensated by money damages"); La Mirada Prod. Co. v. Wassall PLC, 823 F. Supp. 138, 141 (S.D.N.Y. 1993) ("The damage incurred by Gear Up – loss of goodwill, reputation, and competitive advantage – are exactly the type of difficult-to-value damages 'that warrant specific performance'"); Coty Inc. v. Excell Brands, LLC, 277 F. Supp. 3d 425, 464 (S.D.N.Y. 2017) (noting loss of reputation and goodwill are "unquantifiable" losses noncompensable by "money alone").

Indeed, "the loss of customer goodwill can amount to irreparable injury because the damages flowing from such an immeasurable loss are extremely difficult to compute. There is simply no way of predicting (1) how clients' portfolios might have grown if not transferred away from Merrill Lynch, (2) what assets existing clients may earn, inherit, or even win over time, nor (3) what potential referrals transferring clients might have made." See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran, 67 F. Supp. 2d 764, 779 (E.D. Mich. 1999).

Here, a plethora of evidence exists to establish that Plaintiff's damages are not compensable merely through an award of money damages.

The text messages unequivocally show that Safa directed Rosenblatt to purposely sabotage Plaintiff's accounts so that Safa can call Plaintiff's customers and steal them for the Defendants' benefit. Once enough acts of sabotage were committed – including missing appointments, submitting reports late, refusing appointments, sending the wrong observer when a specific observer was requested – Rosenblatt would inform Safa which client was sabotaged and Safa then sought to secure each such customer.

8

Because sufficient evidence exists that Plaintiff's relationships with its customers were sabotaged, it is "very difficult to precisely quantify the harm caused by having its trade secrets misappropriated and used to jump-start a new competitor." See QBE Americas, Inc. v. Allen, No. 22-CIV.-756 (JSR), 2022 WL 889838, at *15 (S.D.N.Y. Mar. 25, 2022). Moreover, the forensic evidence establishes that Safa routinely bribed Rosenblatt for pricing information so that she could steal them by offering lower prices. At times, and even more outrageously, she directed Rosenblatt to raise prices to upset the clients so that she can call in with a better price and steal them. See ECF Docket Entry 154-2 at 70 ("Raise their prices and I will give them 100 per ime").

The evidence also establishes Defendants routinely defamed Plaintiff. At the April 4, 2022 show-cause hearing, Safa admitted that she told customers that Daniella Levi, Esq. ("Mrs. Levi") steals personal injury clients by and through IME WatchDog. See ECF Docket Entry 46-1 at 43:20-45:17, 66:10-68:3, Ex. 8 ("IME Watchdog does have the reputation of stealing clients because the owner who is an attorney provides kickbacks to her watchdogs. Those clients can easily be traced back to Daniella Levy." [sic]). These disparaging statements caused disproportionate detriment to Plaintiff, none of which is readily ascertainable because it is unknown how many customers were deceived and duped by Defendants into leaving Plaintiff. Courts have found false statements less damaging than these to warrant a finding of irreparable harm. See Intl. Profit Assoc., Inc. v Paisola, 461 F. Supp. 2d 672, 679-80 (N.D. Ill. 2006) ("I find that … defendants may be enjoined [from making their] false representation that IPA offered to settle with Paisola, and that as part of this settlement IPA agreed to pay Paisola and to allow Paisola to participate in the management of the company. I do find that IPA has no adequate legal remedy as to this demonstrated defamation, and that the damages of this defamation, including reputational losses and potential confusion by its customers and employees, are incalculable …").

9

Certainly, Defendants' scurrilous statements and false fabrications of Mrs. Levi engaging in kickbacks to steal personal injury clients from Plaintiff's customers merits a similar finding of the existence of irreparable harm.

Finally, Defendants' argument that Plaintiff cannot have it both ways – i.e., argue irreparable harm and entitlement to monetary damages – is belied by countless decisions awarding both. See Coty Inc, 277 F. Supp. 3d at 435 ("the Court finds that Coty is entitled to both injunctive relief and monetary relief").

Based on the foregoing, and due to the irreparable harm suffered by Plaintiff at the hands of Defendants in their wholesale theft of IME WatchDog's business, an Order shutting the Defendants' business down is necessary and proper. See Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., 534 Fed. Appx. 633, 636 (9th Cir. 2013) ("That the present injunction will allegedly drive Sis-Joyce out of business does not weigh in Sis-Joyce's favor where it appears that Sis-Joyce's entire business model is premised on its infringing use of the Arëna mark"); see also Arminius Schleifmittel GmbH v. Design Indus., Inc., No. 1:06-cv-644, 2007 WL 534573 (M.D.N.C. Feb. 15, 2007) (holding that certain defendants are to be "officially closed until the final resolution of this case, without any operations continuing at their facilities" where plaintiff established that defendants succeeded in their business by misappropriating plaintiff's library of individualized customer specifications). Here, where 98.3% of Defendants' revenue came from Plaintiff's customers, the appropriate remedy is to shut Defendants down. See Levi Reply Decl. at ¶¶ 4-6.

**IV.  An Order of Attachment is Proper**

This Court's Order of attachment was proper in all respects. The provisional remedy of attachment operates only against the property of the defendant, not on his or her person. See New York Civil Practice Law & Rules ("CPLR") § 6201, *et seq.*

One purpose of attachment is to provide security for a potential judgment against a nonresident debtor. Id. The Court of Appeals has held that:

> By means of attachment, a creditor effects the prejudgment seizure of a debtor's property, to be held by the sheriff[, actually or constructively], so as to apply the property to the creditor's judgment if the creditor should prevail in court. Attachment simply keeps the debtor away from his property or, at least, the free use thereof; it does not transfer the property to the creditor. …

See Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 538 (2009); see also Siegel, N.Y. Prac § 313, at 499 (4th ed.)).

Where a court acquires jurisdiction over the person of one who owns or controls property, it is well settled that "the court[ ] can compel observance of its decrees by proceedings *in personam* against the owner within the jurisdiction" Id. at 539.

Based on the foregoing, a court with personal jurisdiction over one present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York. See Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 310-12 (2010) ("Because personal jurisdiction was properly asserted over defendants, including defendant Mitchell, Supreme Court had the authority to order prejudgment attachment of the property defendant Mitchell owned and/or controlled [outside of the state], and service of the order upon him while he was in New York was appropriate"). As such, this Court's prejudgment attachment Order must remain in effect for all of Defendants' property, in and outside the State of New York.

As to the badges of fraud, Plaintiff respectfully submits that Defendants' sale of its Florida property for $175,100.00 less than their original asking price, alone, establishes a gross inadequacy of consideration. Further, Defendants fail to identify the prospective purchaser, nor do Defendants address the fact that the sale of the property runs counter to their intent in purchasing the property to rent it out to others to make up twenty percent (20%) of their income.

11

Moreover, Plaintiff submits that even if the sale were permitted by this Court, the proceeds should be placed in escrow pending the outcome of this case. Notably, there is now evidence that Defendants are attempting to sell their Pennsylvania property, as well. See https://www.trulia.com/p/pa/philadelphia/1523-n-hollywood-st-philadelphia-pa-19121--2089919772 (last accessed March 22, 2023).

Based on the totality of the circumstances and the circumstantial evidence provided herein, Plaintiff respectfully submits that it has carried its burden concerning the badges of fraud.

**V.**	**Plaintiff has Established Defendants' Contempt**

Defendants deny accosting Rebecca Roth ("Roth"), to whom they refer to as "Renee" and openly mock and disparage due to her disability, by providing self-serving denials with no support whatsoever for their contentions. It is respectfully submitted that this Court may determine the truth as to what really transpired at the hearing on March 27, 2023.

With respect to Defendants tracking the whereabouts of Roa, Defendants argue that there is no evidence he was actually contacted despite the fact Safa openly testified and admitted that the unlicensed private investigator she retained was hired for the very purpose of confronting Roa! See ECF Docket Entry 154-4 at 24:7-21, 30:21-35:11 ("Q What was your understanding of what the private investigator would do in order to achieve this goal? A The private investigator was to befriend Mr. Roa and get him to admit that he was behind the smear campaign").

As set forth above, there is no question based on the circumstantial evidence and logic that Defendants were involved in in the mass mailings and anonymous e-mails complained of herein. To the extent the Court is unprepared to make this finding, Plaintiff's private investigator is in the process of uncovering evidence related to Defendants' involvement and will appropriately supplement its papers with any such evidence.

In an effort to justify their egregious conduct, Defendants point to July 2022 e-mails from one Kashif Alkadhib which merely[1] provides links to decisions from this case in two such e-mails and describes this Court's decision in another e-mail. However, these e-mails raise questions more than they provide any explanation for Defendants' conduct. For instance, if Defendants suspected Roa, they could have issued a subpoena to google and alerted the Court. They did not. In addition, tracking Roa's whereabouts in November would provide no evidence that he was the individual who sent these e-mails in July. Further, Defendants redacted the originating phone number from where the complained-of text messages came hampering Plaintiff's and the Court's ability to investigate same.

Finally, Defendants are in violation of the March 10, 2023 injunction by continuing to operate their business. See Reply Declaration of Mayra Gomez.

The foregoing evidence readily establishes that Defendants have no respect for the rule of law and will continue to violate this Court's Orders. As a result, an Order finding Defendants in contempt with appropriate sanctions must issue.

## CONCLUSION

For these reasons and the reasons set forth herein, IME WatchDog respectfully requests that this Court grant its renewed motion for a preliminary injunction, Order to Show Cause for contempt and sanctions, for prejudgment attachment, and issue such other and further relief as is just, equitable, and proper.

---

[1] Plaintiff does not condone the behavior in these e-mails. Its principal has confronted every employee and agent of IME WatchDog concerning this issue and no one has accepted responsibility for it. Plaintiff has tasked its private investigator with uncovering the individual(s) behind these e-mails (including the e-mails and mass-mail Plaintiff submits Defendants sent) and will provide this Court with the findings. To the extent that any employee or agent of IME WatchDog is found to have engaged in this conduct, Plaintiff is prepared to appropriately discipline any such individual. See Levi Reply Decl. at ¶¶ 7-12.

13

Dated: Lake Success, New York
      March 22, 2023      Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

**VIA ECF**
Warner & Scheuerman
<u>Attn</u>: Jonathan D. Warner, Esq.
6 West 18th Street, 10th Floor
New York, NY 10011-4602
(212) 924-7111 (telephone)
(646) 692-0166 (direct dial)
(212) 924-6111 (facsimile)
jdwarner@wslaw.nyc

*Attorneys for Defendants*
*Third-Party Plaintiffs*
*Third-Party Counterclaim Defendants*
*Safa Abdulrahim Gelardi*
*Vito Gelardi, and*
*IME Companions LLC*

**VIA ECF**
Leo Shalit, P.C.
<u>Attn</u>: Leo Shalit, Esq.
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481 (facsimile)
leo@shalit-law.com

*Attorneys for*
*Third-Party Defendant*
*Third-Party Counterclaimant*
*Carlos Roa*

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804