# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

April 18, 2023

**VIA ECF**
United States District Court
Eastern District of New York
Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

      *Re:*    **IME WatchDog, Inc. v. Gelardi**, *et al.*
             **Case No.: 1:22-cv-1032 (PKC) (JRC)**
             **MLLG File No.: 25-2022**

Dear Judge Chen:

      This office represents the Plaintiff IME WatchDog, Inc. ("Plaintiff") in the above-referenced case. Due to Defendants' repeated and contemptuous conduct, Plaintiff respectfully submits this letter motion[1] to request an Order (i) finding Defendants in civil and criminal contempt; (ii) precluding Defendants from selling their Staten Island property and any other real property owned within the State of New York; (iii) requiring Defendants to take down a Facebook post disparaging Plaintiff's principal in violation of the First Amended Injunction;[2] (iv) awarding Plaintiff attorneys' fees; and (v) issuing appropriate sanctions. When will the Defendants ever learn to respect the rule of law?

**Relevant Factual Background**

      On March 10, 2023, this Court entered an Order to show cause temporarily restraining Defendants from operating their business. See ECF Docket Entry 156. On March 27, 2023, following a hearing, this Court amended the Amended Preliminary Injunction dated June 8, 2022 to, *inter alia*, preclude Defendants from serving the customers on the Enjoined Customers List which consists of 98% of IME Companions LLC's ("Companions") revenue.[3]

---

[1] Plaintiff respectfully requests leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter "Rules"), which requires that the Rules be construed, administered, and <u>employed</u> <u>by</u> <u>the</u> <u>court</u> and the parties to secure the <u>just</u>, <u>speedy</u>, and <u>inexpensive</u> determination of every action and proceeding. See Fed. R. Civ. P. 1 (emphasis added). Because Plaintiff has previously extensively briefed the basis for contempt in its prior Order to show cause, Plaintiff respectfully submits that this Court should grant leave to file the instant request as a letter motion rather than a formal motion.

[2] See ECF Docket Entry 80.

At that hearing, this Court clearly informed Defendants that they may not provide IME services to *any* customers on the Enjoined Customers List, either directly or through any other third party, as an end-run around this Court's Order. On April 6, 2023, after Plaintiff learned from individuals working at law-firm-customers that Defendants *continue* to serve customers on the Enjoined Customers List, Plaintiff – in a good faith effort to avoid the instant application – sent a cease-and-desist letter to Defendants demanding compliance with this Court's Orders and an explanation for their conduct. Defendants' response was a demand that Plaintiff identify the customers.

On April 9, 2023, Plaintiff identified five (5) customers, all of which were on the Enjoined Customers List, with a request for a sworn statement from the Defendants to the extent they deny continuing to serve these customers. To date, no such sworn statement has been provided.

Instead, following Plaintiff's renewed request for an affidavit on April 13, 2023, Defendants represented that they "shut down the business and [are] dismantling her website" on April 14, 2023.[4] See copy of communications, in reverse chronological order, annexed hereto as **Exhibit "A."** However, Defendants did not stop serving customers on the Enjoined Customers List, and instead – in a clear attempt to circumvent this Court's order – Defendants migrated their IME Companion website to a new domain name, **https://imelegalreps.com**, with an address at 92-07 245th Street, Floral Park, NY 11001,[5] their e-mail address to info@imelegalreps.com, and phone number (833) 463-7767. See copy of Defendants' new website annexed hereto as **Exhibit "B" at 4, 5, 9, and 10.**

As can be seen in the attached exhibit, the website is identical to the IME Companions website and still bears the name IME Companions LLC throughout the website, lists as its customers law firms contained on the Enjoined Customer List, and includes Safa and Vito Gelardis' bios. Notably, "IME Management & Consulting LLC" was created on April 15, 2023 and contains the *same* address for service of process as Client Exam Services LLC: 228 Park Ave. S #814495, New York, NY, 10003, and the same registered agent located at 7014 13TH Avenue, Suite 202, Brooklyn, NY 10003. See copies of entity information pages from the Department of State for IME Management & Consulting LLC and Client Exam Services LLC annexed hereto as **Exhibit "C."** In addition, and to add insult to injury, on or about April 10, 2023, Defendants posted a quote by Martin Luther King, Jr.[6] on their Facebook page with a comment: "G-d bless NY, where criminals and predators have more rights than anyone else." See copy of Facebook post annexed hereto as **Exhibit "D."** Notably, the words used in the post, "criminals and predators" are the same words used in the malicious and libelous mass mailing sent to hundreds of personal injury attorneys in New York, referring to Ms. Daniella Levi as a criminal and to Mr. Carlos Roa as a predator.

---

[3] See Text Only Order dated April 7, 2023.

[4] Defendants' counsel also represented that he was out of the country until April 19, 2023 and would not be able to provide a sworn statement until after that time. However, Defendants were not impeded from submitting a letter yesterday objecting to Plaintiff's proposed cover letter. See ECF Docket Entry 195.

[5] An address from which Defendants previously operated and apparently continue to do so.

[6] The quote says "Injustice anywhere is a threat to justice everywhere."

At the last hearing, Defendants denied responsibility for those mailings; however, given this latest Facebook post, the conclusion one must arrive at is that just like everything else that comes out of the Defendants' mouths, that those denials are also lies.

**The Court Should Find Defendants in Contempt & Issue Appropriate Sanctions**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt," Spallone v. United States, 493 U.S. 265, 276 (1990) (quotation marks omitted), which may be imposed for failure to comply with an order of the court if that order is clear and unambiguous, the proof of noncompliance is clear and convincing, and the contemnor has not been reasonably diligent in attempting to comply with the order. See E.E.O.C. v. Local 638, 81 F.3d 1162, 1171 (2d Cir. 1996).

For a court order to be clear and unambiguous, it must leave no uncertainty in the minds of those to whom it is addressed. See Eros Entertainment, Inc. v. Melody Spot, L.L.C., No. 99-CIV.-1157 (SJ), 2005 WL 4655385 at 5 (E.D.N.Y. Oct. 11, 2005) (quoting Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114 (2d. Cir. 1988)). A "clear and unambiguous" order is one that is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." See Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F.Supp.2d 509 (E.D.N.Y. 2004) (citations omitted).

Similarly, "[t]o find a person in criminal contempt, the evidence must show beyond a reasonable doubt that: '(1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful.'" Dvorkin v. N.Y.-Presbyterian Hosp., No. 10-CV-03680 (GBD), 2011 WL 280801, at *2 (S.D.N.Y. Jan. 19, 2011) (quoting United States v. Cutler, 58 F.3d 825, 834 (2d Cir.1995)). A civil contempt sanction serves "dual purposes: securing future compliance with court orders and compensating the party that has been wronged." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 146 (2d Cir. 2010) (internal quotation marks and alterations omitted); see also Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir. 1986) ("The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of him."). Criminal contempt, however, "is punitive in nature, and seeks to vindicate the authority of the court." A.V. By Versace, Inc. v. Gianni Versace S.p.A., 446 F.Supp.2d 252, 258 (S.D.N.Y. 2006); see also Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994).

Here, there is no question that this Court entered a clear and unambiguous Order requiring Defendants to stop serving customers that they stole from IME WatchDog by improper and illegal means. This Court explained its Order directly to the Defendants at the March 27, 2023 hearing:

> I think at this point then I'm just going to issue the order and go from there, but *it should be very clear that no more information -- the information from IME Companions cannot be used by this new company* because my intent was not to -- the whole purpose of my finding of irreparable harm, and this is part of the case law, is that it constitutes irreparable harm if that information that allegedly stolen, and I find it was, *is then transmitted to other individuals to further undermine the reputation and business of the original owner of the trade secrets*.

3

> So this new company, Client Exam Services, cannot use that information … I'm not allowing them to use it since it came from a tainted source and I intended to not allow IME Companions to use it to give to other individuals to take advantage of it and that should have been clear. If it wasn't explicitly stated, it should have been clear from the entire proceeding that gave rise to the preliminary injunction. Warner you're obviously a good lawyer and you can argue the law but, quite honestly, I don't believe for a moment that somehow Ms. Gelardi or her family are not going to benefit from this down the road and I just don't accept these representations that somehow this was some innocent effort to protect the client base, the client's interest. I reject that based on everything that's happened so far in these proceedings and your client's credibility, which is quite minimal at this point. That concludes this proceeding. I'll issue a written decision, but so it's clear on the record, at this point all of the information that IME Companions has that is -- and I think the plaintiff has to make clear who you say is a former client of Watchdog's. So send them a list to make clear who you think are the former clients. It seems to me maybe through this process you all know who you're talking about, but as to those clients, *the defendants may not use that information in any way; either give it to any other company to use or to use it themselves, to conduct any business in the IME space or industry*. **Full stop.** I don't want there to be any ambiguity that that *information which I find that was taken improperly from Watchdog cannot be used by the defendants which includes not providing it to any individuals to use to support any kind of business in this area. It can't be posted anywhere.* I feel this need, unfortunately, to make clear *you can't post it, you can't make it public or give it away to anyone else or somehow disseminate it so that IME Watchdog is thereby further harmed.*

See **Exhibit "E"** March 27, 2023 Hearing Transcript at Page 129:16-131:1-13 (emphasis added). Defendants chose to again boldly ignore this Court's order and – *for the second time* since the March 10, 2023 Order – Defendants have created yet another company to operate and serve customers on the Enjoined Customers List in contravention of this Court's Orders. Notably, despite being given a good faith opportunity to do so, Defendants have not provided a sworn affidavit denying that they continue to serve customers on the Enjoined Customers List. Their conduct is therefore contemptuous. It is similarly abundantly evident that the Defendants have not been reasonably diligent in attempting to comply with the Order; on the contrary, they are actively and purposefully repeatedly violating the Order. After this Court previously enjoined Defendants' use of a new company to flout the Court's Orders, Defendants now have the gall to form yet another company in order to continue to serve customers on the Enjoined Customers List. Based on the foregoing, this Court should make a finding of contempt and issue appropriate sanctions as discussed below. Setting aside Defendants' direct violation of this Court's Order, under traditional principles of equity practice, courts have long imposed civil contempt sanctions to coerce the defendant into compliance with an injunction or compensate the complainant for losses stemming from the defendant's noncompliance with an injunction." See Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019) (internal quotation marks and citation omitted); see also Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996); Eros Entertainment, Inc., 2005 WL 4655385 at 6; SD Protection, Inc. v. Del Rio, 587 F. Supp. 2d 429, 434 (E.D.N.Y. 2008) (holding that the purpose of civil contempt is not to punish the contemnor but to compel its compliance and/or compensate the complaining party for its losses).

In cases where, as here, the civil contempt order is for coercive compliance, the court has broad discretion to fashion an appropriate damage award, which is typically computed in relation to the amount of time that passes during which the party fails to comply. See Eros Entertainment, Inc., 2005 WL 4655385 at 6. The amount of the fine for noncompliance with a court order "is left to the informed discretion of the district court[.]" See N.Y. State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989). When setting the fine, courts consider "the character and magnitude of the harm threatened by continued contumacy," "the probable effectiveness of any suggested sanction" in achieving compliance, and the contemnor's financial resources. See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 658 (2d Cir. 2004) (quotation marks omitted).

Further, Defendants continue to defame Plaintiff's principal and its officer. At the April 4, 2022 show-cause hearing just over a year ago, this Court directed the parties – directly in front of Safa – not to make statements about the other parties that can be misconstrued as defaming. See Docket Entry 46-1 at 164-65. This Court clarified this Order by amending the May 13, 2022 preliminary injunction[7] – following Defendants' shenanigans concerning a Facebook post linking a GoFundMe page in which she previously defamed the Plaintiff and its principal – on June 8, 2022 to enjoin both parties from making any misleading or defamatory statements.[8]

There is thus no question that a clear and unambiguous Order exists, and the plain terms of this Court's orders do not reflect any "uncertainty in the minds of those to whom it is addressed." See King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). Therefore, defendants' latest Facebook post is yet another willful and contumacious violation of this Court's order because it uses the words "criminals and predators," identical to the words used in the hundreds of malicious and slanderous mailings and e-mails that were sent to the entire personal injury attorney community about Plaintiff's principal and its officer. There is thus no doubt that Defendants transmitted the mailings and e-mails, such that it warrants reconsideration of this Court's denial of that branch of Plaintiff's prior contempt motion.

Therefore, further injunctive relief is necessary and warranted requiring Defendants to take down their new Website **https://imelegalreps.com,** shut down and dissolve the newly formed entity IME Management & Consulting LLC (as well as Client Exam Services LLC) and to take down the Facebook post. Moreover, an appropriate fine should be issued as a sanction. Alternatively, sanctions would be appropriate under the Court's inherent power because Defendants' actions violating the Order were intentionally improper. See Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D. 363, 367 (E.D.N.Y. 2013) (The exercise of such inherent power, "requires the [movant] to present 'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes'"). Regardless of the type or amount (if any) of sanctions imposed, the district court also "may award appropriate attorney fees and costs to a victim of contempt." See Weitzman, 98 F.3d at 719. "When deciding whether to award fees, courts have focused on the 'willfulness of the contemnor's misconduct.'" Id.; see also Vuitton et Fils, 592 F.2d at 130 ("[I]t is appropriate for the court ... to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful").

---

[7] See ECF Docket Entry 66.

[8] See ECF Docket Entry 80.

While it remains an open question whether a finding of willfulness is required to award fees, see Jacobs v. Citibank, N.A., 318 Fed. Appx. 3, 5 n.3 (2d Cir. 2008), courts have held that, notwithstanding, although willfulness "may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." See Weitzman, 98 F.3d at 719. To survive review after finding willfulness, a district court "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." Id.

Here, there exists support for all forms of sanctions, including further injunctive relief precluding Defendants from operating any business that competes with IME WatchDog, Inc., incarceration, coercive sanctions, and attorneys' fees and costs. Injunctive relief should also be granted for leave to amend Plaintiff's cover letter to reference Defendants' outlandish conduct, as well as requiring Defendants to take down their defamatory Facebook post. Notably, despite Defendants' denial of mass mailing defamatory information and stating in mass e-mails that Plaintiff's principal is a money launderer for a drug cartel and that its officer is a pedophile, Safa *repeats* these *exact* phrases she previously denied making in her Facebook post by referring to "criminals and predators." To that end, a finding should be made that Defendants engaged in the mass mailing and e-mail campaign to defame and disparage Plaintiff in violation of the Amended Preliminary Injunction. Further, a coercive sanction of $5,000.00 per day should be issued until IME Management & Consulting LLC a/k/a IME Legal Reps (as well as Client Exam Services LLC) ceases operating, is dissolved, and the Facebook page is taken down. Defendants should also be required to pay a monetary fine of $10,000.00 to Plaintiff. Moreover, Plaintiff's attorneys' fees should be awarded for the instant and prior applications.

Moreover, based on Defendants' blatant disregard for this Court's Orders through their repeated violations of this Court's Orders, punitive measures are warranted. Accordingly, the Court should direct the United States Marshals Service to arrest Safa and Vito Gelardi until further order of this Court. See CE Intl. Resources Holdings LLC v S.A. Mins., Ltd., 2013 U.S. Dist LEXIS 21798 (S.D.N.Y. Jan. 24, 2013); see also Labarbera v. Gulgar Trucking, 2020 U.S. Dist. LEXIS 21810 (E.D.N.Y. Feb. 4, 2020); Plaza Motors of Brooklyn, Inc. v. Rivera, E.D.N.Y. Case No. 19-cv-06336 (LDH) (RLM), July 14, 2022 Text Order. Accordingly, Plaintiff's letter motion for civil and criminal contempt, further injunctive relief, fines, as well as attorneys' fees and costs should be granted.

**Plaintiff's Renewed Motion for Prejudgment Attachment Should be Granted**

Lastly, it has come to Plaintiff's attention that *all* of the Defendants' properties have been placed on the market.[9]

---

[9] These properties, to Plaintiff's knowledge, consist of:

(i) 148 Clay Pit Road, Staten Island, NY 10309 (https://www.zillow.com/homedetails/148-Clay-Pit-Rd-Staten-Island-NY-10309/32373563_zpid/);

(ii) 1523 N Hollywood St, Philadelphia, PA 19121 (https://www.zillow.com/homedetails/1523-N-Hollywood-St-Philadelphia-PA-19121/10317908_zpid/);

6

Plaintiff thus respectfully seeks to renew its motion for prejudgment attachment on the grounds that Defendants seek to make themselves judgment-proof by liquidating their assets using the ill-gotten gains they received from the complained-of conduct herein.

For the reasons set forth in Plaintiff's prior order to show cause for prejudgment attachment, Defendants should be enjoined from selling any real property they own located within the State of New York. Indeed, selling assets shortly after an injunction is issued and to seek to avoid an impending judgment constitutes badges of fraud sufficient to grant this relief. See Citibank, N.A. v. Bombshell Taxi LLC (In re Hypnotic Taxi LLC), 543 B.R. 365 (Bankr. E.D.N.Y. 2016) (listing badges of fraud to include, *inter alia*, the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and the general chronology of the events and transactions under inquiry).

Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
April 18, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

  /s/ Emanuel Kataev, Esq.
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

---

(iii) 9 Woods End, Lake Harmony, PA 18624 (https://www.zillow.com/homedetails/9-Woods-End-Lake-Harmony-PA-18624/93560323_zpid/);

(iv) 5265 Milford Road, East Stroudberg, PA 18302 (https://www.remax.com/pa/east-stroudsburg/home-details/5265-milford-rd-east-stroudsburg-pa-18302/3230763248277199825/M00000552/PM-105233); and

(v) 1475 Moon Valley Dr, Champions Gate, FL 33896 (https://www.zillow.com/homedetails/1475-Moon-Valley-Dr-Champions-Gate-FL-33896/122987470_zpid/).

7

**VIA ECF**
Warner & Scheuerman
<u>Attn</u>: Jonathan D. Warner, Esq.
6 West 18th Street, 10th Floor
New York, NY 10011-4602
(212) 924-7111 (telephone)
(646) 692-0166 (direct dial)
(212) 924-6111 (facsimile)
jdwarner@wslaw.nyc

*Attorneys for Defendants*
*Third-Party Plaintiffs*
*Third-Party Counterclaim-Defendants*
*Safa Abdulrahim Gelardi*
*Vito Gelardi, and*
*IME Companions LLC*


**VIA ECF**
Leo Shalit, P.C.
<u>Attn</u>: Leo Shalit, Esq.
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481 (facsimile)
leo@shalit-law.com

*Attorneys for*
*Third-Party Defendant*
*Carlos Roa*


**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804

8