**WARNER & SCHEUERMAN**
Attorneys at Law
6 West 18th Street, 10th Floor
New York, New York 10011
Tel: (212) 924-7111
Fax: (212) 924-6111

**Jonathon D. Warner, Esq.**
jdwarner@wslaw.nyc

**Karl E. Scheuerman, Esq.**
kescheuerman@wslaw.nyc                          April 28, 2023

<u>**VIA ECF**</u>

Pamela K. Chen, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 4F North
Brooklyn, New York 11201-1804

Re:   *IME Watchdog, Inc. v. Gelardi, et al.*
       Case No.: 1:22-cv-1032 (PKC)(JRC)

Dear Judge Chen:

     We represent defendants Safa Gelardi, Vito Gelardi and IME Companions LLC (collectively, "Defendants") and write in opposition to plaintiff's latest contempt application which is based upon nothing more than its attorney's hearsay allegations, conjecture and surmise. While plaintiff's counsel asks "when will the Defendants ever learn to respect to the rule of law," we respectfully submit that the better question is when will plaintiff learn that serious accusations of wrongdoing should only be made with evidentiary and legal support?

     This Court is not dealing with defendants who are continuing to violate a clear and unambiguous injunction as plaintiff's attorney boldly asserts in his <u>hearsay</u> letter brief. This Court is instead dealing with a plaintiff which refuses to accept victory and is continuing to use the judicial system to exact revenge against Defendants and to eliminate all forms of competition, even after the Defendants shut down their competing business due to the issuance of an injunction which precluded them from servicing nearly all of their clients, simply because they had once allegedly been plaintiff's clients. Enough is enough. Plaintiff's latest contempt application should be denied, with costs and attorneys' fees, and plaintiff should be enjoined from filing any additional motions without a pre-motion conference. Such an Order is required to deter plaintiff and its attorney from continuing to use the judicial system as a means to punish and harass the Defendants and all others who design to compete against plaintiff in what is supposed to be a free-market system.

**Plaintiff Has Failed To Submit Any Evidence Supporting Its Allegation That Defendants Have Committed Contempt By Serving Customers On The Enjoined Customers List.**

Civil Contempt is designed to coerce a reluctant party to obey a court's directive. See Badgley v. Santacroce, 800 F.2d 33,36 (2nd Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987). "Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases." Chase Bank USA, N.A. v. M. Harvey Rephen & Assocs., P.C., 2019 WL 13046982*2 (S.D.N.Y. August 16, 2019)(citations omitted). "Thus, a court may hold a party or a non-party in civil contempt for failing to comply with a court order where: "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Id., *quoting*, Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645,655 (2nd Cir. 2004). In the context of civil contempt, "the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243,250 (2nd Cir. 2002).

Plaintiff's attorney alleges in his hearsay letter that Defendants have violated the Amended Preliminary Injunction dated June 8, 2022, as purportedly amended by the "Text Only Order dated April 7, 2023," by servicing five customers on the Enjoined Customers List. But plaintiff has offered no evidence showing that Defendants has serviced any customers on the Enjoined Customers List in violation of any Order, let alone the Text Only Order dated April 7, 2023, which did <u>not</u> enjoin Defendants from doing anything.[1] No affidavits have been submitted identifying the customers in question and stating when and how Defendants serviced them in violation of any Order. No documentary proof has been submitted showing when and how Defendants serviced these five customers in violation of any Order. Plaintiff's counsel does not even identify the alleged customers in his hearsay letter. Nor does plaintiff's counsel attempt to provide any particulars concerning Defendants' alleged servicing of any of the five clients. Plaintiff has failed to submit any evidence supporting its accusations, let alone clear and convincing evidence. Plaintiff has yet again substituted hyperbole and hysteria for evidence and law, while plaintiff's counsel has coupled his baseless accusations of wrongdoing with unseemly personal attacks on Defendants which are beneath this forum.

That Defendants refused to succumb to plaintiff's heavy-handed demand for an affidavit "by 5:00 PM tomorrow" swearing that Defendants are not servicing any customers on the Enjoined Customers List does not constitute "proof" of any violation of any alleged injunction as plaintiff seemingly believes. Indeed, Defendants should not have been required to prove to

---

[1] The Order allegedly violated by Defendants in allegedly continuing to service clients on the Enjoined Customer List is unclear from plaintiff's letter brief. Indeed, the transcript cited and quoted by plaintiff was never so-ordered, and the Text Only Order dated April 7, 2023 does not enjoin Defendants from engaging in any conduct.

plaintiff that they had not engaged in any alleged contemptuous conduct before plaintiff had made any effort to prove that they did, and plaintiff had no legal right to demand affidavits from Defendants before filing a contempt motion unsupported by any evidence of wrongdoing. If plaintiff's counsel truly sought to engage "in a good faith effort to avoid the instant application" as he asserts in his letter brief, he would have shared his alleged proof of wrongdoing with me rather than demand affidavits denying wrongdoing (while I was on vacation).[2]

But plaintiff's counsel had no evidence of wrongdoing to share with me as evidenced by the fact that he has failed to provide any to this Court. Indeed, while plaintiff's attorney states in his hearsay (and often double-hearsay) letter that "Plaintiff learned from individuals working at law-firm-customers that Defendants continue to serve customers on the Enjoined Customer List," plaintiff has failed to identify the "individuals working at law-firm-customers" who had allegedly informed plaintiff that Defendants continue to service customers on the Enjoined Customer List. Nor have any particulars been provided with respect to Defendants' alleged servicing of these law firm customers. The names of the law firm customers have not been set forth in any affidavit. The dates when Defendants allegedly serviced the law firm customers have not been set forth in any affidavit. The identity of the agents and/or employees of Defendants who allegedly serviced the law firm customers have not been set forth in any affidavit. The Declaration in Support submitted by plaintiff's principal, Daniella Levi ("Levi"), states only that "I hereby incorporate by reference herein all of the facts contained in my attorney's April 18, 2023 letter motion in support of the instant motion." But plaintiff's attorney's hearsay letter contains no facts concerning the servicing of the customers to incorporate. Levi's affidavit is woefully insufficient to support a contempt motion.

Lacking any proof that Defendant have continued to service customers on the Enjoined Customer List, plaintiff's attorney engages in conjecture and surmise and accuses Defendants of continuing to conduct business as "IME Legal Reps" after "migrating" their IME Companions website to a new domain name, https://imelegalreps.com. Plaintiff's counsel asserts that the website for IME Legal Reps "still bears the name IME Companions throughout the website, lists as its customers law firms contained on the Enjoined Customer List, and includes Safa and Vito Gelardis' bios." However, and as the Court can plainly see by observing the website itself, plaintiff's allegations are untrue. Print-outs from the website refuting plaintiff's allegations are attached as Exhibit "A."

The truth – as set forth in the Declarations of Safa Gelardi ("Safa") and Vito Gelardi ("Vito") – is that Defendants sold the website domain to a third-party by sale agreement dated April 10, 2023. A copy of the sale agreement is annexed as Exhibit "B." But the truth has not prevented plaintiff's counsel from calling IME Legal Reps' website the "Defendants' new website" without any proof whatsoever supporting his contention. Defendants can only presume

---

[2] Plaintiff's counsel has the gall to question the truth of my representation that I was out of the country. As an officer of the Court, I affirmatively declare that I left the United States on April 12 and did not return until the evening of April 19.

that the snapshots of the website submitted by plaintiff were taken before the purchaser had completed all changes to the website.

      Safa and Vito deny in their Declarations in Opposition that they have continued to service clients on the Enjoined Customer List and deny that they have any connection to IME Legal Reps. Safa and Vito state that they sold IME Companions' website to a third-party and that they are not in any way involved with IME Legal Reps. It is without dispute that no Court Order exists which prohibited Defendants from selling IME Companions' website while winding down the business affairs of IME Companions as a result of this Court's expansion of the preliminary injunction which effectively shut IME Companions down. It is also without dispute that plaintiff has failed to submit a scintilla of proof showing that Safa and Vito are in any way connected or involved with the newly-formed IME Legal Reps. Plaintiff had a duty to marshal evidence supporting its accusations before making a contempt application accusing Safa and Vito of operating as IME Legal Reps, but plaintiff failed to do so. Plaintiff could have subpoenaed IME Legal Reps for a deposition and/or obtained its certificate of incorporation and/or shareholders agreement from the New York Department of State to determine whether Safa and Vito are conducting business through this new entity. But plaintiff instead chose to run to the Court without any proof with the apparent hope that it could adduce proof at a hearing. Such tactics should not be countenanced.

      The complete absence of proof linking Safa and Vito to the newly-formed company competing with plaintiff has not prevented plaintiff from asking this Court to take down a website which is not owned by Defendants and to dissolve a company which is neither owned by Defendants nor a defendant in this action. It is readily apparent from the foregoing that plaintiff seeks to use this Court as a vehicle to punish the Defendants and to eliminate all competition of any type, rather than just unfair competition prohibited by law. Having already put IME Companions out of business, plaintiff is now asking this Court to put a new competitor out of business, without any proof supporting its hysterical accusations, and notwithstanding the fact that this Court lacks jurisdiction over the new competitor. That this Court believes that Defendants employed "improper means" in obtaining some law firm clients does not mean that nobody else is free to compete against plaintiff in the IME observation business.

      The lack of evidence supporting plaintiff's latest contempt motion has not prevented plaintiff from demanding that Safa and Vito be held in criminal contempt and arrested by the United States Marshals Service, although criminal contempt must be proven beyond a reasonable doubt. See U.S. v. Twentieth Century Fox Film Corp., 882 F.2d 656 (2nd Circ. 1989)(holding that criminal contempt sanctions may be imposed only if it is proven beyond a reasonable doubt that the contemnor willfully violated specific and definite terms of a court order). It defies credulity for plaintiff to suggest that it has proven contempt beyond a reasonable doubt where plaintiff has failed to submit any evidence proving that Defendants are continuing to service customers on the Enjoined Customers List. Plaintiff's request that Safa and Vito be arrested only highlights the need for an Order precluding plaintiff from filing any further motions of any type without a pre-motion conference. Plaintiff simply cannot be trusted to bring motions for proper

purposes and to base them upon evidence rather than baseless accusations and flawed legal conclusions.

**Defendants Cannot Be Held In Contempt For Violating The**
**Non-Disparagement Portion Of The Amended Preliminary Injunction.**

Plaintiff's allegations of contempt with respect to IME Companions' Facebook post are flawed for several separate and distinct reasons. *First*, the Facebook post does not in any way, shape or form refer to either Levi or Carlos Roa ("Roa"), much less allude to them. The Facebook post stated only: "God bless NY, where the criminals and predators have more rights than anyone else." Neither Levi nor Roa are mentioned. Nor is this lawsuit mentioned. There is simply no reason why any third party would believe that the Facebook post was of and concerning Levi and Roa. *Second*, while plaintiff's attorney alleges that "Defendants continue to defame Plaintiff's principal and its officer," plaintiff has failed to submit any evidence refuting the truth of these allegedly defamatory statements. Levi has never submitted an affidavit denying that she was convicted of money laundering. Roa has never submitted an affidavit denying that he had been ensnared by a "To Catch A Predator" type website. Plaintiff should have submitted proof of the falsity of these statements with their contempt motion. *Third*, the Amended Preliminary Injunction which enjoined the parties from making "any statements about each other that can be construed as defamatory and/or disparaging" cannot serve as the basis for a finding of contempt where it is impermissibly vague and an unconstitutional prior restraint on free speech in violation of the First Amendment.

The preliminary injunction against defamatory or otherwise disparaging speech runs afoul of the long-standing axiom that courts of equity cannot enjoin libels or slanders. See, e.g., Hammer v. Trendl, 2002 WL 32059751 (E.D.N.Y. Oct. 10, 2002)(holding that plaintiff's allegations that he was subjected "to public humiliation, world wide ridicule, character assassination and a ruined reputation" were insufficient to "establish any circumstances that might justify a court of equity enjoining even a libelous publication"); Konigsberg v. Time, Inc., 288 F.Supp. 989 (S.D.N.Y. 1980)("A court of equity will not, except in special circumstances, issue an injunctive order restraining libel or slander or otherwise restricting free speech. To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution, and to historic principles of equity"); Sang v. Hai, 951 F.Supp. 2d 504, 531 (S.D.N.Y. 2013)("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages").

This rule exists because any prior restraint on expression carries with it a "heavy presumption against its constitutional validity." Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971)(quotation omitted). Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. See, e.g., Nebraska Press Assn. v. Stuart, 427 U.S. 539, 559 (1976). "When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the First Amendment

increases." Metropolitan Opera Ass'n, Inc. v. Local 100, 239 F.3d 172,176 (2nd Cir. 2001)(citations omitted).

Here, there were no exceptional circumstances authorizing the prior restraint on speech, and Defendants did not in any way waive their First Amendment rights by entering into an agreement with plaintiff which contained any type of a non-disparagement clause. That portion of the Amended Preliminary Injunction which prohibited the parties from making any defamatory or disparaging statements should be dissolved rather than enforced by way of contempt. See Metropolitan Opera Ass'n, Inc. v. Local 100 , *supra* (vacating injunction which prohibited the defendant union from engaging in fraudulent or defamatory representations and from threatening or harassing association or its donors as impermissibly vague in that it failed to provide union with adequate notice what future speech would be prohibited).

Notwithstanding their First Amendment rights and crystal-clear fact neither Levi nor Roa were mentioned or referenced in the Facebook post in question, Defendants have taken down the Facebook post as a show of respect to this Court.

**Plaintiff Has Failed To Submit Proof Of Contempt Damages.**

It is well-settled that civil contempt sanctions should not be punitive in nature and should only be awarded to coerce compliance and/or to compensate the complainant for actual losses sustained. See New York State Nat. Org. for Women v. Terry, 886 F.2d 1339 (2nd Cir. 1989); Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F.Supp.2d 509 (E.D.N.Y. 2004); Al Hirschfeld Foundation v. Margo Feiden Galleries Ltd., 438 F.Supp.3d 203 (S.D.N.Y. 2020). Consistent with the Rule that contempt sanctions must be based upon actual damages, Local Rule 83.6 requires the moving party to submit an affidavit setting forth "with particularity the misconduct complained of, the claim, if any, for damages occasioned thereby and such evidence as to the amount of damages as may be available to the moving party."

Plaintiff has failed to submit an affidavit setting forth its alleged contempt damages, let alone with the particularity required by Local Rule 83.6. Levi's moving affidavit does not identify any damages resulting from the alleged contemptuous conduct. Plaintiff's request for large daily fines payable to plaintiff (rather than the Court) should be denied where such request is entirely punitive in nature and not in any way based upon the actual damages sustained by plaintiff as a result of defendants' alleged contempt. See Titra California, Inc. v. Titra Film, 2001 WL 1382587*5 (S.D.N.Y. 2001)("In the absence of any loss to the complainant, any fine that may be imposed is necessarily coercive, rather than compensatory, and therefore should be made payable to the court").

Plaintiff has neither calculated any damages resulting from the alleged contempt nor provided the Court with the identity of a single customer lost as a result of the alleged contempt, let alone proved any contempt where no evidence has been submitted supporting counsel's supposition that Defendants are operating as IME Legal Reps. If any party is awarded attorneys'

fees here, it should be Defendants for having to defend yet another baseless contempt application brought by plaintiff without any evidence supporting its attorney's false accusations and faulty legal conclusions.  In any event, any coercive fine should be paid to the Court rather than plaintiff.  Plaintiff can only be compensated for its actual damages arising out of the alleged contempt, and plaintiff has failed to establish any actual damages.

**Plaintiff Is Not Entitled To An Order Of Attachment.**

Plaintiff's renewed request for an Order of Attachment enjoining Defendants from selling any real property they own within the State of New York is defective on its face.  That Safa and Vito are attempting to sell real estate for full market value, in arm's-length transactions, in an attempt to make up for their loss of income resulting from this Court's preliminary injunction and to fund their defense of this litigation, does not constitute grounds for the issuance of a pre-judgment Order of Attachment, particularly where plaintiff has failed to support its frivolous motion with the required affidavit setting forth in detail its alleged money damages and establishing that Defendants will not be able to satisfy any money judgment.

It is well-settled that prejudgment attachment is a harsh remedy, and that statutory requirements for obtaining such a remedy must be strictly construed in favor of those against whom attachment is sought.  See, e.g., DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308 (E.D.N.Y. 2009); VisionChina Media Inc. v. Shareholder Representative Svcs., LLC, 109 A.D.3d 49 (1st Dept. 2013).

While plaintiff has at least conceded on its renewed motion for an Order of Attachment that this Court lacks the authority to enjoin the sale of out-of-state real property, plaintiff has nevertheless fallen far short of establishing its right to the harsh remedy of an Order of Attachment.  In order to obtain this drastic relief, plaintiff was required by statute to show, "by affidavit and such other written evidence as may be submitted" that: (a) plaintiff has a viable cause of action for money damages; (b) plaintiff is likely to succeed in obtaining a judgment for the amount it seeks to attach; (c) that one or more of the grounds for attachment listed in C.P.L.R. § 6201 exists; and (d) that the amount plaintiff seeks exceeds all "counterclaims known to [them]."  See C.P.L.R. § 6212.

Plaintiff has made no effort to meet these express statutory requirements.  Plaintiff has not submitted an affidavit or written evidence supporting its request.  Nor has plaintiff shown that one or more grounds for attachment listed in C.P.L.R. § 6201 exists.  Plaintiff seemingly believes that it is entitled to an Order of Attachment simply because Safa and Vito have listed real property for sale.  But that is not the law.  Plaintiff was required to prove that Defendants: (1) "ha[ve] assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts"; and (2) did so "with intent to defraud... [plaintiff] or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor."  See C.P.L.R. § 6201(3).  Plaintiff has failed to make any showing of any fraudulent intent.

It is well-settled that a party seeking a prejudgment attachment under C.P.L.R. § 6201(3) must establish fraudulent intent in the defendant's mind. Computer Strategies, Inc. v. Commodore Bus. Machs., Inc., 105 A.D.2d 167, 173 (2nd Dept. 1984). "Removal, assignment, or other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." DLJ Mortg. Capital, Inc., 594 F.Supp.2d 308,319 (citations omitted). "Because fraud is not lightly inferred, plaintiff's moving papers must contain evidentiary facts as opposed to conclusions proving the fraud." Id. (quotations omitted). "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient." Id. (quotations omitted). "Rather, it must appear that such fraudulent intent really exists in the defendant's mind." Id. (quotations omitted).

Recognizing that fraudulent intent is rarely susceptible to direct proof, the Courts in this Circuit (and New York) examine whether allegedly suspicious transactions exhibit "badges of fraud" that give rise to an inference of intent. Id. The badges of fraud are: (1) gross inadequacy of consideration; (2) a close relationship between transferor and transferee; (3) the transferor's insolvency as a result of the conveyance; (4) a questionable transfer not in the ordinary course of business; (5) secrecy in the transfer; and (6) retention of control of the property by the transferor after the conveyance. Id.

Here, plaintiff has failed to offer a scintilla of proof supporting its conclusory allegation of fraudulent intent. Nor has plaintiff addressed the "badges of fraud." Plaintiff has demanded the drastic remedy of an Order of Attachment on all real property owned by Defendants in New York, simply because defendants are attempting to sell real property at market value in arm's-length transactions to raise funds for the defense of this litigation and to compensate for their loss of income. No proof whatsoever has been submitted suggesting anything untoward in connection with Defendants' proposed sale of any property. Plaintiff has not shown the inadequacy of the consideration. Plaintiff has not shown a close relationship between Defendants and any prospective purchaser. Plaintiff has not shown that Defendants will be rendered insolvent by the sale. Plaintiff has not shown that any proposed sale is being conducted in secret. To the contrary, plaintiff discovered the listings on the internet.

The "evidence" relied upon by plaintiff does not suggest – let alone prove – any fraudulent intent by Defendants to thwart plaintiff's ability to collect on any judgment. There is nothing fraudulent about selling real property in order to raise funds for litigation, and the mere disposition of property is insufficient to establish fraud for attachment purposes. See, e.g., Dafeng Henwei Textile Co. v. Aceco Indus. & Commercial Corp., 54 F.Supp.3d 287 (E.D.N.Y. 2014)(the mere removal or other disposition of property by a debtor is not a sufficient grounds for an attachment); Serenity Alpha, LLC v. Northway Mining, LLC, 531 F.Supp.3d 512 (N.D.N.Y. 2021)(the mere disposition of property is not sufficient ground for prejudgment attachment because fraudulent intent must be proven, not simply alleged or inferred, and facts relied upon to prove the fraud must be fully set forth in moving affidavits).

Nor does the one case cited by plaintiff support its argument that it is entitled to an Order of Attachment simply because Defendants have listed real property for sale after the issuance of an injunction. In Hypnotic Taxi LLC v. Bombshell Taxi LLC, 543 B.R. 365 (Bankr. E.D.N.Y. 2016), cited by plaintiff's counsel at pg. 7 of his letter brief, the Court granted an Order of Attachment not because properties had been listed for sale after the issuance of an injunction as plaintiff's counsel disingenuously suggests, but because the defendant had transferred property to four offshore trusts for the benefit of himself and his family without consideration. No such transfers have occurred here.

Not only has plaintiff failed to meet the statutory requirements of Article 62 of New York's C.P.L.R., but plaintiff has also failed to establish "an identifiable risk" that Defendants "will not be able to satisfy the judgment" that plaintiff is likely to succeed in obtaining. See VisionChina Media, 109 A.D.3d at 60. The risk should be real, whether it is Defendants' financial position or past and present conduct, and the Court may consider Defendants' history of paying creditors or Defendants' stated or indicated intent to dispose of assets. In its typically dishonest fashion, plaintiff has not even acknowledged the requirement that it demonstrate an identifiable risk that a judgment in its favor will not be satisfied, let alone attempt to fulfill it.

Nor has plaintiff submitted an affidavit setting forth its alleged money damages as required to demonstrate a likelihood of recovering a specific amount of money damages sufficient to warrant an Order of Attachment. See Chevron Corp. v. Donziger, 840 F.Supp.2d 773,775 (S.D.N.Y. 2012)("Implicit in the requirement that the applicant for an order of attachment demonstrate a probability of success on the merits is that the applicant demonstrate also a likelihood of recovery of the amount sought to be attached, even assuming a likelihood of victory as to the fundamental merits of the claim"); Usdan v. Dunn Paper Co., 392 F.Supp. 953 (E.D.N.Y. 1975)(holding that plaintiff must present evidence of damages of sufficient certainty and definiteness to warrant issuance of an attachment under New York law); Valentine Dolls, Inc. v. McMillan, 25 Misc.2d 551,552 (Sup. Ct. Kings Cty. 1960)("A warrant of attachment is not a common law right but is a statutory provisional remedy and authorizes the taking of property before judgment, and where, as here, it is sought upon an unliquidated claim, it must clearly appear by prima facie evidence at least that plaintiff is entitled to recover the amount of damages which he demands").

Plaintiff has failed to submit any proof of its alleged money damages in support of its motion for an Order of Attachment. Nor has plaintiff ever provided a detailed analysis of its alleged money damages. Plaintiff's failure to submit proof of its alleged money damages is fatal to its motion, as is plaintiff's failure to prove both Defendants' fraudulent intent and inability to satisfy any judgment. Plaintiff's motion for an Order of Attachment should be denied, *in toto*.

**Conclusion**

   For all of the foregoing reasons, Defendants respectfully request an Order denying plaintiff's motion in its entirety, with costs and attorneys' fees.

                 Respectfully yours,

                 */s/ Jonathon D. Warner*

JDW/ks

cc:  All counsel (via ECF)