# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

May 2, 2023

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

   *Re*: **IME WatchDog, Inc. v. Gelardi**, *et al.*
     **Case No.: 1:22-cv-1032 (PKC) (JRC)**
     <u>**MLLG File No.: 25-2022**</u>

Dear Judge Chen:

  This office represents the Plaintiff IME WatchDog, Inc. ("Plaintiff") in the above-referenced case. Plaintiff writes to submit the instant reply letter in further support of its request for an Order finding Defendants in contempt, renewing their motion for prejudgment attachment of Defendants' Staten Island home, and for appropriate sanctions. Because Defendants fail to provide any basis to deny the relief Plaintiff seeks, the motion should be granted in all respects.

  Defendants have shown a complete disregard for the rule of law and this Court's Orders; they think they can outsmart Plaintiff and this Court. Their contumacious and egregious disregard for this Court's Orders must be stopped once and for all. Since they have shown no sign that they will ever comply with this Court's Orders, the most severe sanctions are warranted. Only removal from society will stop them from continuing to violate this Court's Orders. Therefore, incarceration of Defendants is the only remedy that will ensure compliance with this Court's Orders. Moreover, Defendants' cronies who have aided and abetted Defendants' violations of this Court's Orders must be barred from working in the IME observer industry.

  In its mercy, this Court stayed its hand from shutting down Defendants' competing business built on the trade secrets and misappropriated confidential information of Plaintiff. Instead, the Court properly enjoined Defendants from serving the customers which they misappropriated from the Plaintiff. This Order gave the Defendants an opportunity to prove to this Court, with actions, that they are capable of sustaining their business by hard work, dedication, and the stick-to-it-iveness Defendants claimed they possessed at the outset of this case. <u>See</u> ECF Docket Entry 26 at ¶¶ 4, 42, 57. Instead, Defendants squandered yet another chance to show this Court that their word actually means something after repeatedly being caught in lie after lie.

  After all, while this Court entered an Order enjoining Defendants from serving approximately 470 law-firm-customers, there exist thousands of personal injury law firms in the State of New York.

Rather than put the time and effort in to legitimately and lawfully attempt to build its business, Defendants have shut down IME Companions LLC ("Companions") and engaged in cloak-and-dagger efforts to disguise their involvement in new companies formed by known associates to end-run this Court's Orders.[1]  Defendants had their cronies form Client Exam Services LLC ("CES"), an alter ego of Companions, but when the connection between Defendants and CES became obvious to the Court, they did not stop.  Shockingly, Defendants had their cronies form IME Management & Consulting LLC d/b/a IME Legal Reps ("IME Legal Reps"), yet another alter ego of Companions.

Even if Defendants are permitted to sell their website, the real issue is whether this new company is a mere continuation of Companions and a subterfuge to serve law firms on the Enjoined Customers List in violation of the Second Amended Injunction.  If history is any guide vis-à-vis Defendants' first attempt to evade the temporary restraining Order with Client Exam Services LLC ("CES"), the formation of IME Legal Reps is undoubtedly no different.  The evidence gathered at this point without yet hearing any testimony establishes IME Legal Reps is a mere continuation of Companions.  This includes the fact that the IME Legal Reps has the *same* address for service of process as Client Exam Services LLC and the same registered agent and all of the data on IME Legal Reps' website was copied from Companions' website.  It is anticipated that at the hearing, the evidence will establish that all of IME Legal Reps' customers are on the Enjoined Customers List, all of its employees/independent contractors were employed by Companions, and its "founder", Eugene Liddie ("Liddie"), is a former employee of Companions who is a full-time police officer without the time to operate Companions.

On April 14, 2023, four (4) days *after* they entered into an agreement with Liddie to sell their website, Defendants represented to Plaintiff that they "shut down the business and [are] *dismantling* her website." See ECF Docket Entry 197-1 (emphasis added).  Defendants' omission in failing to inform Plaintiff that Liddie purportedly purchased the website thus constitutes an *indicia* of seeking to violate the Second Amended Injunction.

Defendants' argument that Plaintiff has presented no evidence supporting its claims of contempt is unavailing in that Plaintiff has presented sufficient evidence to warrant a hearing to adduce further evidence to so support these claims.  In any event, Defendants are sorely mistaken as to their presupposition.  Annexed hereto are the reply declarations of Mayra Gomez ("Gomez"), Adam Rosenblatt ("Rosenblatt"), and Carlos Roa.

In their declarations, Gomez and Rosenblatt detail how long-time known employees/independent contractors of Defendants were observed at various offices of doctors who perform independent medical examinations after the issuance of the Second Amended Injunction.  When confronted with the prospect of being so observed, Defendants' agents literally ran from the offices in order to avoid being seen, demonstrating their willful behavior.  Indeed, based on the reply declarations submitted herewith, there can be no dispute that Defendants, through their alter ego, IME Legal Reps, and Defendants' agents, continue to serve law firms on the Enjoined Customers List in violation of this Court's Orders.

---

[1] For this reason, a complete shutdown of Defendants' business, which was built entirely on trade secrets and confidential information misappropriated from Plaintiff, is sought and – to the extent not granted on this motion for contempt, Plaintiff will seek a permanent injunction to that effect.

It bears emphasis, in that regard, that the Amended Preliminary Injunction enjoins Defendants, "their agents, officers and employees, and all other persons and entities in active concert or participation with them," and this Court expanded its previously ordered preliminary injunction to preclude Defendants from providing services to any customers who were former customers of Plaintiff IME Watchdog. See ECF Docket Entry 80; see also March 27, 2023 Text Only Minute Entry and Order. As such, the expanded preliminary injunction applies to Liddie at IME Legal Reps and Fari Gutierrez at CES.

Moreover, as detailed in Rosenblatt's declaration, Defendant Vito Gelardi ("Vito") just today disparaged Rosenblatt in violation of the Amended Preliminary Injunction by telling both the secretary and the doctor at an IME office that Adam has a mental disability, purportedly attacked Vito, and demanding that Rosenblatt be forcibly removed from the medical office. Defendants' conduct is beyond the pale, and the only way to end this is to shut them down completely given their failure and willful refusal to play fair in the sandbox despite graciously being provided the opportunity to do so.

Finally, Defendants' bemoaning this Court's Orders as a means to eliminate all forms of competition is completely belied by Defendant Safa Gelardi's first affidavit in this case outlining the many competitors that exist in this realm. See ECF Docket Entry 26 at ¶¶ 58-69 (identifying Satellite Investigations Corporation, IME Observers of WNY, LLC, IME Guards LLC, Smartdog IME Solutions, LLC, IME Sharks Inc., and ZR Per Diem). Plaintiff has not sued *any* of these competitors because they have not engaged in the conduct complained of here. As such, Defendants' argument that Plaintiff seeks to "eliminate all competition of any type" is simply untrue.

As to Defendants' violations of this Court's Orders precluding the parties from making any defamatory or disparaging remarks about each other, Defendants fare no better.

Defendants' belief that their voluntary removal of a post which should have never been made should absolve them of any consequences is confounding. It ignores the basic tenet that reputation is everything in the legal community and that Defendants' repeated barrage of defamatory comments concerning Plaintiff and its principal has caused severe harm. Defendants have poisoned the minds of many attorneys into falsely believing that Plaintiff exists to poach personal injury plaintiffs away from law firms and is operated by a criminal and a pedophile. Their repeated violations of this Court's clear Order not to defame or disparage Plaintiff warrants an appropriate sanction to deter future violations. The damage has repeatedly been done and Defendants cannot get away with causing damage by removing the defamatory posts after the damage is done.

Further, Defendants' argument concerning the First Amendment and impermissible prior restraint is both moot and should be considered waived. Their argument is moot because they have voluntarily removed the offending post. And they waived this argument when they failed to timely move for reconsideration of or appeal this Court's June 8, 2022 Order requiring the parties not to defame or disparage each other.

Defendants' argument that the Facebook post is not of and concerning Plaintiff is belied by the fact that Defendants have repeatedly linked their defamatory comments to the Plaintiff in the past such that the reasonable reader would understand the post to relate to Plaintiff. See ECF Docket Entry 143 at 6, 8-9, 14-17. As such, this argument is meritless.

As to Defendants' argument that Plaintiff must establish the falsity of the statements complained of, Plaintiff respectfully submits that this Court has already presumed that the statements are false on their face, which they are, and both Daniella Levi and Carlos Roa deny the truth of the statements made by Defendants. See March 27, 2023 hearing transcript at 5:18-24 and 122:14-19.

Defendants' argument concerning the requirement of damages is also unavailing. "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004). "Such sanctions may not be imposed as a purely punitive measure." Id. Meanwhile, "[c]ompensatory sanctions should reimburse the injured party for its actual damages." See New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989). "When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." Id. "The ultimate consideration is whether the coercive sanction … is reasonable in relation to the facts. That determination is left to the informed discretion of the district court." Id. "A coercive fine must be substantial enough to make it more economical for a contemnor to comply than not to comply." See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 2021 WL 3418475, at *16 (S.D.N.Y. Aug. 5, 2021). However, "the discretion of the district court is more narrowly bounded when seeking to compensate the victim of contempt, and correspondingly broader when it seeks to force prospective compliance with its own order." See Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). Where a fine is both coercive and compensatory, "some proof of loss must be present to justify its compensatory aspects." See Paramedics, 369 F.3d at 658.

Here, because this Court should issue coercive sanctions to secure future compliance, no evidence of damages is necessary. However, compensatory sanctions are also appropriate here because of the deleterious effect Defendants' conduct on Plaintiff's reputation and good will. To the extent this Court seeks evidence on this point, upon a finding of contempt, Plaintiff is prepared to engage an expert to quantify its damages and submit evidence supporting same.

Finally, with respect to its request for prejudgment attachment, Plaintiff incorporates by reference its initial arguments in support thereof. See ECF Docket Entry 152 at 18-21. It should be noted that Defendants' arguments that none of the badges of fraud have been satisfied fails upon a review of the totality of the circumstances, i.e., Defendants shut down Companions, have formed new entities to continue serving law firms on the Enjoined Customers List, and are selling every single real property owned by them.

In such circumstances, courts have frozen assets in contemplation of a judgment. See Tiffany (NJ) LLC v. Forbse, No. 11-CIV.-4976 (NRB), 2015 WL 5638060, at *4 (S.D.N.Y. Sept. 22, 2015) ("The asset restraint should remain in place in order to prevent the very harm initially contemplated by the preliminary injunction, just as, analogously, a prejudgment attachment, issued pursuant to New York law and Rule 64 against a defendant seeking to evade enforcement of a possible judgment by secreting property, continues (absent vacatur, modification, or discharge) after the entry of judgment") (citing 12 Weinstein, Korn & Miller, New York Civil Practice ¶ 6224.03 (2015)); see also Aurelius Capital Master Ltd. v. Republic of Argentina, 09 CIV. 10620 (TPG), 2010 WL 103868, at *2 (S.D.N.Y. Jan. 13, 2010) ("There are sufficient grounds for an order of attachment … in that … [defendant] … has repeatedly demonstrated its willingness to remove its assets … to evade its judgment creditors …").

Moreover, while an attempt to dispose of assets, standing alone, will not justify attachment, the intent to avoid or frustrate judgment can be inferred from the timing of the attempts to dispose of assets and its systematic nature. See Bank Leumi Trust Co. of New York v. Istim, Inc., 892 F.Supp. 478, 483, 486 (S.D.N.Y. 1995); see also City of New York v. Citisource, Inc., 679 F. Supp. 393, 397 (S.D.N.Y. 1988). Indeed, "[i]t is not always practicable to establish by proof the existence of a fraudulent intent ... even when in reality it exists. Direct proof of the fact can rarely be obtained, and when it is established it must ordinarily be inferred from the circumstances." See Bank Leumi, 892 F. Supp. at 483. In this case, Plaintiff has submitted evidence sufficient to establish a *prima facie* showing of the intent to frustrate a judgment. For approximately seven (7) years, Defendants operated a lucrative and fraudulent competing business but began to sell the spoils of their conduct in close proximity to the issuance of the expanded preliminary injunction. Moreover, Defendants admit to placing all of their real estate assets on the market. The burden ha shifted to the Defendants to explain their actions and rebut the Plaintiff's allegations, but they have entirely failed to do so. See Id. at 483.

Accordingly, an Order of prejudgment attachment should be issued to prevent the dissipation of assets. At a minimum, the proceeds of all such sales should be placed in escrow with an appropriate amount set aside for appropriate living expenses that Defendants seek with a proper accounting of all funds distributed. Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
      May 2, 2023                      Respectfully submitted,

                                          **MILMAN LABUDA LAW GROUP PLLC**
                                          __/s/ Emanuel Kataev, Esq.__
                                          Jamie S. Felsen, Esq.
                                          Emanuel Kataev, Esq.
                                          3000 Marcus Avenue, Suite 3W8
                                          Lake Success, NY 11042-1073
                                          (516) 328-8899 (office)
                                          (516) 328-0082 (facsimile)
                                          jamiefelsen@mllaborlaw.com
                                          emanuel@mllaborlaw.com

                                          *Attorneys for Plaintiff*
                                          *IME WatchDog, Inc.*

**VIA ECF**
Warner & Scheuerman
Attn: Jonathan D. Warner, Esq.
6 West 18th Street, 10th Floor
New York, NY 10011-4602
(212) 924-7111 (telephone)
(646) 692-0166 (direct dial)
(212) 924-6111 (facsimile)
jdwarner@wslaw.nyc

*Attorneys for Defendants*
*Third-Party Plaintiffs*
*Third-Party Counterclaim-Defendants*
*Safa Abdulrahim Gelardi*
*Vito Gelardi, and*
*IME Companions LLC*

**VIA ECF**
Leo Shalit, P.C.
Attn: Leo Shalit, Esq.
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481 (facsimile)
leo@shalit-law.com

*Attorneys for*
*Third-Party Defendant*
*Carlos Roa*

**VIA ECF**
United States District Court
Eastern District of New York
Attn: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804

**VIA ECF**
All remaining counsel of record