# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
———

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

May 26, 2023

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

      *Re:*    **IME WatchDog, Inc. v. Gelardi,** *et al.*
             **Case No.: 1:22-cv-1032 (PKC) (JRC)**
             <u>**MLLG File No.: 25-2022**</u>

Dear Judge Chen:

      This office represents the Plaintiff IME WatchDog, Inc. ("Plaintiff") in the above-referenced case. Plaintiff respectfully submits the instant supplemental letter[1] brief in further support of its Order to show cause for contempt and renewed motion for prejudgment attachment. Plaintiff respectfully submits that an Order should be entered: (i) finding Defendants in civil contempt; (ii) precluding Defendants from selling their Staten Island property and any other real property owned within the State of New York; (iii) issuing appropriate sanctions; and (iv) expanding the preliminary injunction to Eugene Liddie ("Liddie"), Jeff Beiben ("Beiben"), IME Legal Reps, and any other person or entity in active concert or participation with Defendants.

**<u>Preliminary Statement</u>**

      Contrary to Defendants' representations that they have shut down operations, their actions clearly show that they intend to remain in business and to operate in the shadows in violation of this Court's Orders. The only way to put an end to this contemptuous conduct is for this Court to impose appropriate coercive penalties and sanctions on Defendants to ensure compliance.

      As further set forth below, Defendants have violated this Court's Orders and perpetrated a fraud upon the Court because:

          (i)     IME Companions LLC ("Companions") has continued to serve Subin Associates LLP ("Subin"), a firm on the Enjoined Customer List, at least through April 21, 2023 in violation of this Court's March 27, 2023 Order;

---

[1] Plaintiff respectfully requests leave of this Court to submit the instant brief in letter form rather than a formal motion (as required by Local Civil Rule 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter "Rules"), which requires that the Rules be construed, administered, and <u>employed</u> <u>by</u> <u>the</u> <u>court</u> and the parties to secure the <u>just</u>, <u>speedy</u>, and <u>inexpensive</u> determination of every action and proceeding. <u>See</u> Fed. R. Civ. P. 1 (emphasis added).

      (ii)    Defendants transferred their website to Eugene Liddie ("Liddie"), whose role is that of a straw man on behest of Companions, which contained Plaintiff's proprietary information that was stolen by the Defendants. The website contained, at the bare minimum, the names of fourteen (14) law firms that were on the Enjoined Customer List which comprise seventy percent (70%) of Companions' overall sales. Further, the "back end" of the website, which Safa testified was what she intended to sell to Liddie, actually contained a complete customer list and contact information, as well as virtually every report ever prepared by Companions;

      (iii)    Defendants created alter ego and successor entities Client Exam Services LLC ("CES") through their relative Fari Gutierrez ("Gutierrez") and IME Legal Reps through their friend Liddie, and

      (iv)    Defendants proceeded with steps towards franchising by creating an email for Liddie to distribute on April 19, 2022 in violation of this Court's Order enjoining Defendants from franchising.

**Relevant Procedural History**

On March 10, 2023, this Court temporarily restrained Defendants from operating their business or any other business that unfairly competes with Plaintiff in violation of the law. See ECF Docket Entry 156. Following a hearing on March 27, 2023, this Court *expanded* its *previously ordered preliminary injunction* to preclude Defendants from providing services to any customers who were former customers of Plaintiff. See Text Only Order dated March 27, 2023 (emphasis added). The previously ordered preliminary injunction provided that, *inter alia*, "Defendants, *their agents, officers and employees, and all other persons and entities in active concert or participation with them*, are preliminarily enjoined from: (1) using in any manner whatsoever Plaintiff's trade secrets and confidential and proprietary information … ; (2) contacting Plaintiff's current clients, employees, and agents; (3) franchising IME Companions LLC; and (4) destroying any documents …" See ECF Docket Entry 80. Thus, the March 27, 2023 expanded preliminary injunction applies to any person in active concert or participation with Defendants.

On April 10, 2023, this Court authorized a notice to all of Plaintiff's customers – the identities of which Defendants misappropriated – stating: "PLEASE BE ADVISED, that IME Companions, LLC, its managers, agents, and/or employees, have been enjoined by Order of Judge Pamela K. Chen, in *IME Watchdog, Inc. v. Gelardi* (22-cv-1032), from providing any services to you pending a further order of the Court." See ECF Docket Entry 190 (emphasis added). This Court authorized Plaintiff to send copies of the foregoing notice to the customers identified on the Enjoined Customers List. See Text Only Order dated April 7, 2023 (citing ECF Docket Entry 180-7, filed under seal).

**Facts**

Defendants continued to serve Subin, a customer that is on the Enjoined Customers List, at least through April 21, 2023. Following the May 4, 2023 hearing, Plaintiff has uncovered additional critical evidence relevant to this motion. Specifically, on May 25, 2023, Plaintiff came into possession of an invoice issued by Companions to Subin for IMEs observed between March 1, 2023 through April 21, 2023 – **after this Court enjoined Companions from observing IMEs for Subin**. See Declaration of Carlos Roa ("Roa Decl.") ¶¶ 15-16, Exhibit ("Ex.") C.

**Notably, the Companions' invoice issued to Subin references IMEs that: (i) Defendants testified were performed by CES with no involvement by Companions; and (ii) IMEs Jeff Beiben testified he performed directly for Subin. This invoice was submitted by Companions to Subin despite Defendants' repeated representations that Companions has been shut down, including through the testimony of Liddie, who testified that Defendants are selling their home and moving.** See Declaration of Emanuel Kataev, Esq. ("Kataev Decl.") ¶ 3, Ex. A at 104:13-105:1.

This exhibit indicates the contrary: Defendants are here to stay, to operate in the shadows, in violation of this Court's Orders, with impunity, unless this Court enjoins Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them from operating in the IME observer industry completely. There is simply no other alternative given the Defendants' brazen and contemptuous conduct.

Further, Defendants admitted that they transferred their website which contained the identities of customers on the Enjoined Customers List. During the May 4, 2023 hearing, the Court was under the impression that the sale of the website included the transfer of the names of only a handful of clients on the Enjoined Customer List. However, in reality, the website sold to Liddie identifies, at a minimum, **fourteen (14)** customers of Companions each of which are on Plaintiff's Enjoined Customers List. See Roa Decl. ¶¶ 4-13, Exs. A and B. Notably, these fourteen (14) customers represent **seventy percent (70%) of Companions'** sales. Id. at ¶ 7. Further, Safa and Liddie conceded that part of the website "transfer" included the "back end" of the website and further, that the "back end" of the website was what constituted the real value; in fact, the back end of the website is where even more information is contained, such as a complete Companions' client list with point of contact information and a database of **all** Companions' IME reports ever created, etc. See Kataev Decl. ¶ 3, Ex. A at 33:19-34:7, 89:3-8; see also Roa Decl. ¶¶ 8-14. As this Court astutely recognized, even if this transfer of customer information was done unintentionally, it would still be violative of this Court's Order if it – as it did – contained information about customers on the Enjoined Customer List.

Defendants purportedly sold their website and the entire contents thereon to Liddie for $4,300.00; however, there is no documentary evidence establishing the actual exchange of any money. See ECF Docket Entry 202-2; see also Kataev Decl. ¶ 3, Ex. A at 88:4-90:21, 92:20-93:4, 94:18-95:11, 117:7-120:1. It also noteworthy that Liddie is in possession of Plaintiff's IME reports which he testified he obtained from his wife Shakiya Hall, a former employee or independent contractor of Companions who drafted IME reports. See Kataev Decl. ¶ 3, Ex. A at 139:5-18. It is clear that each time this Court issues relief to the Plaintiff, such as by entering an injunction limiting Defendants' ability to profit from Plaintiff's misappropriated information, Defendants end run this Court's Orders by forming alter egos so that they can continue to operate. Defendants have no intention to shut down nor walk away from the IME observer business as they claim to. Indeed, every single person involved in the two IME businesses created since this Court issued injunctions have close ties to Defendants. Defendants and all those in active concert or participation with them must be enjoined from serving customers on the Enjoined Customers List and Defendants must be held in contempt for violating this Court's prior Orders. The timing and circumstances of the creation and the manner in which CES, and then, IME Legal Reps have operated lead to only one conclusion: like Companions, they were created and are being operated through the use of Plaintiff's confidential information and trade secrets that were provided to them by Defendants – in violation of this Court's Orders.

3

Indeed, initially, in an attempt by Defendants to circumvent this Court's Orders, Gutierrez – the close friend of Defendant Vito Gelardi and the g-dfather of Vito and Safa's son – created CES utilizing the same address for service of process and as the registered agent as Plaintiff and utilizing Beiben to serve all of its customers, all of whom are on Plaintiff's Enjoined Customers List. See ECF Docket Entry 197-5; see also Kataev Decl. ¶ 3, Ex. A at 51:9-14.[2]

After Defendants and Gutierrez were caught, when Plaintiff learned about CES and informed this Court about same, Defendants did not stop there. They then transferred or sold their website to Liddie who purportedly created IME Legal Reps. See ECF Docket Entry 202-2; see also Kataev Decl. ¶ 3, Ex. A at 30:12-43:10, 48:8-58:25, 88:4-90:21, 92:20-93:4, 94:18-95:11, 117:7-120:1. It defies logic that Defendants, who have mounted such a vigorous legal defense to stay in a business from which they grossed over $1 million dollars last year alone, would walk away for a paltry $4,300.00. It makes much more logical sense that defendants are using Liddie as their straw man by giving him what he was looking for: "passive income." See Kataev Decl. ¶ 3, Ex. A at 137:9-25.

Liddie was formerly an independent contractor who performed marketing services for Companions and is also Vito's friend. Id. at 67:11-69:11, 69:17-72:14. Liddie is also a police officer with the New York City Police Department ("NYPD") who has no knowledge about the IME process and could not answer even the most basic questions about IMEs. Id. at 67:1-10, 99:11-15, 69:12-16, 110:16-115:6.

Crucially, Liddie has no intentions of resigning from the NYPD.[3] Id. at 67:1-10, 99:11-15. He has been acquainted with the Defendants for at least a couple of years. Id. at 67:11-69:11. Liddie has no background in medicine or personal injury, nor does he know basic background information concerning the IME observer industry. Id. at 69:12-16, 110:16-115:6. Although he testified that he never worked for it, Liddie admits to performing marketing services for Companions, thus making him an agent of Companions and taking an interest in franchising Companions' business. Id. at 69:17-72:14.[4] It is therefore clear that Liddie opened IME Legal Reps at the behest of the Defendants. Id. at 88:4-89:2. Through IME Legal Reps defendants continue to operate Companions by performing the same exact services, for the same customers, using solely Companions' former employee or independent contractor, and the Gelardis' "brother-in-law," Beiben. Id. at 106:9-107:2. Notably, Beiben was also the face of CES before it was effectively shut down by this Court as it was an alter ego if Companions. Liddie testified that he is running IME Legal Reps part time, which is probably true, as he is likely not involved in the operation and probably collects a "cut" from Defendants. Id. at 86:15-21.

---

[2] Gutierrez failed to appear for the Show Cause hearing despite being served with a subpoena. See ECF Docket Entry 209 at 3.

[3] Liddie has only twelve (12) years on the force with almost a decade left to retirement. See Kataev Decl. ¶ 3, Ex. A at 123:23-124:14. It is unlikely he will give up his ability to earn a pension from the NYPD for the sake of running this business.

[4] Notably, although Defendants were enjoined from franchising on April 4, 2022, Liddie and Defendants acted in concert to franchise the business on or about April 19, 2022, just weeks after the preliminary injunction went into effect following the first hearing in this case. See Kataev Decl. ¶ 3, Ex. A at 69:17-72:14.

He purportedly retained the services of Beiben, who worked for Companions and CES before they were both effectively shut down, to assist him, who he admits is indispensable to him running a successful IME observer business. Id. at 86:22-87:9, 93:8-20, 96:21-97:3. He also testified that the website he purchased contained all of Companions' information on it when he bought it. Id. at 89:3-90:2, 100:3-5. Liddie obtained a sample IME report from Companions. Id. at 139:5-18. Accordingly, Liddie's business is either the alter ego of Companions or a business that was derived and is based on serving customers on Plaintiff's Enjoined Customers List, the use of Plaintiff's IME reports, and by having Beiben, the Gelardi's brother-in-law and former employee or independent contractor, spearhead the business.

Just like CES, IME Legal Reps is a sham continuation of Companions, as is evidenced by its website, which misspelled Liddie's own name, references Subin (which Liddie denies is a customer), as well as fourteen (14) other customers on Plaintiff's Enjoined Customers List, and now disguises Liddie's involvement in IME Legal Reps on its website entirely. Id. at 117:7-120:22. This is also evidenced by the fact that Liddie admittedly never took the proper steps to seek approval from the NYPD to run this business in contravention to the NYPD's Administrative Guide, nor did he even form a corporate entity or open a bank account. Id. at 120:2-122:16, 100:13-101:6.

Liddie originally testified that he had only two (2) customers, then stated that he had three. Id. at 86:15-19, 93:21-25 (identifying Bergman, Martin Ginsberg, and the Kohan Law Group). Incredibly, Liddie testified that he told Mr. Bergman of Bergman, Bergman, Fields & Lamonsoff ("Bergman") that he did not know whether he was using an IME observer company at the moment when he allegedly cold-called to solicit its business. Id. at 108:6-13. It strains credulity that it is just a coincidence that all of Liddie's customers were formerly Companions' customers.

Beiben testified at the May 4, 2023 hearing as he did at the March 27, 2023 hearing. Id. at 5:14-19. Beiben has continued to observe independent medical examinations ("IMEs") since the March 27, 2023 hearing, observing approximately 15-20 IMEs since then. Id. at 5:21-6:6. Beiben observed a few IMEs on behalf of CES, three on behalf of IME Legal Reps, and one – purportedly directly – for Subin Associates ("Subin"), a customer included on Plaintiff's Enjoined Customers List. Id. at 6:5-13. Notably, Beiben observed every single IME that IME Legal Reps was hired to observe. Id. at 86:22-87:4.

Beiben served as an "editor" at Companions until April 2023. Id. at 6:14-17. Beiben testified that he worked for Gutierrez when he worked at CES, and that Gutierrez paid him, in cash, by dropping money off for him at the home of Francesca Gelardi, Vito's mother. Id. at 8:14-9:13. Beiben is also married to Vito's sister. See ECF Docket Entry 197-5 at 98:4-18. This is significant because it supports the conclusion that Defendants used family members, close friends, and associates to circumvent this Court's Orders.

On March 10, 2023, Beiben observed an IME while performing services for Companions for Subin on behalf of its personal injury client Rohan Manragh ("Manragh"). Id. at 9:14-17, 10:2-11:9. On March 16, 2023, after the Court enjoined Defendants and their agents, Beiben observed an IME while performing services for CES for Subin again on behalf of Manragh, which Beiben claims was assigned to him by Hesham "Sammy" Salameh, a relative of Safa who purportedly operated CES. See Kataev Decl. ¶ 3, Ex. A at 11:10-12:14.

5

This Court found at the March 27, 2023 hearing that CES was a related company to Companions and enjoined it from performing services for any of Plaintiff's customers whose identities were misappropriated by Defendants. See Text Only Order dated March 27, 2023 ("the Court expands its previously ordered preliminary injunction to preclude Defendants from providing services to any customers who were former customers of Plaintiff IME Watchdog"); see also Kataev Decl. ¶ 3, Ex. A at 51:9-14 ("We went through this then another time when Ms. Gelardi effectively created another company that was essentially the same as her company through relatives or friends; then tried to pretend this was an honest, third-party deal with another company just using the information that Ms. Gelardi had stolen, or the Gelardi's had stolen"), and 55:2-22. **This is evidenced by the existence of the Companions' invoice to Subin for the IME performed on March 16, 2023**. See Roa Decl. ¶¶ 15-16, Ex. C.

Beiben then continued to accept assignments to observe IMEs after March 27, 2023 for Subin. See Kataev Decl. ¶ 3, Ex. A at 14:17-15:1. At that time, however, Beiben averred that he was hired "directly" by Subin, rather than by and through Companions or CES, both of which have been enjoined from performing services for Subin. Id. Beiben testified that, instead, Jonathan Frobart ("Frobart"), an agent of Companions, hired him. Id. at 15:2-14. However, although Beiben denied that Frobart is an agent of Companions, he conceded that Frobart was Companions' agent before it purportedly ceased operating. Id. at 23:17-24:22.

Further, on April 20, 2023, Beiben performed additional work for Subin. Id. at 16:19-18:17. Beiben testified that he plans to invoice Subin directly but has no employment agreement or independent contractor agreement with Subin. Id.

Beiben's testimony should be completely discredited as it is directly contradicted by the invoice Companions sent to Subin for Beiben's work that he allegedly covered "directly" for Subin. See Roa Decl. ¶¶ 15-16, Ex. C. Beiben also observed three (3) IMEs for IME Legal Reps, which he knows to be owned by Liddie, in late April 2023. Id. at 18:18-19:7. Two of the IMEs Beiben observed on behalf of IME Legal Reps were for the law firm customer Bergman. Id. at 26:10-19. Bergman is on the Enjoined Customers List. See ECF Docket Entry 180-7 at 1 (filed under seal). Beiben also observed an IME for the law firm customers Kohan (or Cohan). See Kataev Decl. ¶ 3, Ex. A at 26:20-23.[5] Both firms were prior customers of Companions after previously being customers of Plaintiff. Id. at 28:23-29:1.

Finally, in another act of defiance, Defendants took steps in furtherance of franchising after being prohibited by this Court, as evidenced by the email address Defendants created for Liddie on April 19, 2022, because Liddie was interested in franchising Companions and wanted to "learn" the business. At the hearing, Liddie waffled on the issue of franchising. Initially, he testified that he wanted to franchise, but that it was put on hold because of the April 4, 2022 injunction. Then, in explaining away the email address that was created for him on April 19, 2022, he first stated that it was created for the purpose of franchising, then to learn how to market, but that he nonetheless undertook this effort to open up the same type of business as Companions. Id. at 73:20-74:21. Liddie also incredibly testified that he would inquire with the Defendants every time he sought to cold-call a prospective law firm customer rather than work off of a list. Id. at 116:10-24.

---

[5] Plaintiff respectfully submits that this customer was supposed to be on the Enjoined Customers List but was inadvertently left off due to a clerical error in preparing the list.

6

What is uncontroverted, however, is that on May 18, 2022, **after the commencement of this case**, as part of an effort to groom Liddie, Defendants drafted an email on Liddie's behalf for him to send to a prospective customer. Id. at 75:4-77:18, 81:1-82:2.

**This Court has Broad Power to Enjoin the Dissemination of Plaintiff's Trade Secrets**

At the May 4, 2023 hearing, this Court questioned its authority to enjoin non-parties from using and/or further disseminating Plaintiff's confidential information and trade secrets which such non-parties obtained from Defendants. As set forth further below, pursuant to Rule 65 and the cases cited below, this Court has ample authority to provide Plaintiff with injunctive relief over any non-party who receives notice and an opportunity to be heard.

An injunction is aimed at preventing harm from any future misappropriation. See Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc., 15 CIV. 211 (LGS), 2021 WL 1553926, at *13 (S.D.N.Y. Apr. 20, 2021) ("Even if Syntel would not necessarily avoid further development costs in any future misappropriation, *TriZetto could still suffer additional harm, including, as discussed above, irreparable injury by dissemination to third parties*. Indeed, the DTSA -- in permitting recovery of both compensatory damages based on loss and unjust enrichment -- acknowledges that TriZetto's actual harm and Syntel's unjust enrichment are not necessarily mutually exclusive") (emphasis added).

The remedial purpose of the DTSA is to *deter misappropriation* and provide recovery for trade secret owners. See Trade Secrets—s.d.n.y.: Damages of Nearly $570m Awarded Over Healthcare Software, 2021 WL 1572658 (emphasis added). The Second Circuit has made clear that a "rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." See KCG Holdings, Inc. v. Khandekar, No. 17-CIV.-3533 (AJN), 2020 WL 1189302, at *16 (S.D.N.Y. Mar. 12, 2020) (citing Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118–19 (2d Cir. 2009)).

To that end, courts enjoy broad powers to enjoin third parties from further disseminating inappropriately obtained trade secrets upon providing such third parties notice and opportunity to be heard. Indeed, Rule 65, which governs the Court's power to permanently enjoin parties *and non-parties* to a dispute, authorizes the Court to enjoin "only" the following who receive actual notice of the injunction: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) *other persons who are in active concert or participation* with anyone described in Rule 65(d)(2)(A) or (B)." See Hartford-Jackson, LLC v. Hound's Tree Wines, LLC, No. 20-CIV.-5322 (JMA) (ARL), 2022 WL 3586571, at *3 (E.D.N.Y. Aug. 22, 2022) (citing Fed. R. Civ. P. 65(d)(2) (emphasis added)).

Here, the evidence adduced at the hearing sufficiently establishes that after CES was shut down because it was a mere continuation of Companions, Liddie has done just what CES sought to do: continue to operate Companions' business using Plaintiff's confidential information and trade secrets, which it obtained from Defendants who stole it from Plaintiff. This is a never-ending cycle spearheaded by Defendants that needs to be stopped once and for all. Liddie sought to franchise the business misappropriated by Defendants after the commencement of this case. Liddie is conspiring with Defendants to violate this Court's Orders and must be stopped. Liddie obtained access to the information misappropriated by Defendants, both by and through the website he purchased as well as through Beiben.

He must not be able to enjoy fruits of the poisonous tree. Liddie and IME Legal Reps, and any agents such as Beiben, must be enjoined from serving customers on the Enjoined Customers List given the fact that there are thousands of personal injury law firms whose business he can appropriately solicit. Now that Liddie and Beiben have received notice and an opportunity to be heard, this Court should enjoin them and IME Legal Reps from serving the customers on the Enjoined Customers List.

**The Court Should Find Defendants in Contempt & Issue Appropriate Sanctions**

At the May 4, 2023 hearing, this Court made a preliminary finding that Defendants' sale of its website containing the names of law firm customers Defendants have indisputably misappropriated from Plaintiff was contemptuous. Id. at 30:12-42:2, 48:14-52:15.

Upon hearing from Liddie, a police officer, and thinking that only a handful of clients from the Enjoined Customer List were on the website Liddie purchased, this Court indicated that it is inclined to make a finding of no contempt as the Court found Liddie credible. Id. at 141:24-152:4.

Plaintiff respectfully requests that this Court reconsider that preliminary finding based on the following reasons and facts:

(i) police officers are trained witnesses on the stand at trial, and carry an unfair presumption of credibility. See https://www.nacdl.org/Content/Breaking-Blue-Challenging-Police-Officer-Credibili (referring to "the presumption of trustworthiness that comes with a badge and a gun");[6]

(ii) Liddie has purportedly set out to engage in a full-time business while not being willing to give up his full-time employment as a police officer;

(iii) Liddie did not seek permission from the NYPD to operate this business as he is required to according to the Administrative Guide;

(iv) Liddie commenced operations before forming any corporate entity or opening a bank account, nor did he invoice the customers he served, which is obviously dispensed away with because Companions is invoicing and billing for the work purportedly performed by Liddie;

(v) Liddie misrepresented to the Court that he did not have Companions' customer list despite being fully aware of the Fourteen names that were on the site that represented 70% of Companions sales as well as being aware of what was to contained in the "back end " of the website;

---

[6] Finders of fact view police officers as credible even when they lie. See Chamberlain v. Mantello, 95-CV-1050, 1996 WL 521062, at *12 (N.D.N.Y. Sept. 11, 1996), report and recommendation adopted in part, 954 F. Supp. 499 (N.D.N.Y. 1997) ("There is a reasonable likelihood that the *false* testimony of Harding and Lishansky affected the judgment of the jury. The Third Circuit noted that "[t]he testimony of police officers usually is given credence by members of the jury." Curran 259 F.2d at 712. Harding and Lishansky were both police officers, so it is likely that the jury considered them very credible witnesses") (emphasis added).

8

    (vi)  Liddie was inconsistent about franchising as he initially stated he could not proceed with franchising but then testified that the April 19, 2022 email was created so that he could, in fact, franchise;

    (vii)  Liddie has no knowledge or experience in the IME industry and lacks fundamental information to operate such a business without the aid of Companions' agents; and

    (viii) he was inconsistent as to the number of customers he had.

  As such, Liddie was not a credible witness.

  Turning to whether a finding of contempt is proper, there is no dispute that this Court's Orders are clear and unambiguous. Nor can there be any contention that Defendants have failed to comply with each and every one of this Court's Orders. The only question left to determine is whether the Defendants have been reasonably diligent in attempting to comply with this Court's Orders. They have not.

  As set forth above, Defendants have engaged in a fraud upon the Court by parading their relatives and friends as innocent individuals who seek to engage in the business they stole and misappropriated from Plaintiff. Defendants asserted that the principals of CES operated independently but the Companions' invoices to Subin establish that this was a farce. This should, of course, come as no surprise to the Court as Defendants have repeatedly engaged in perjury and bad faith tactics both inside and outside the courtroom. See ECF Docket Entry 197-5 at 21:20-22:7 ("I find that she lied to me during the hearing, as now just one of the facts that she clearly lied about based on the forensic evidence, which does not lie, is that she did open the information …"), 121:17-21 ("Now, I had offered, Mr. Warner, to allow you to have Ms. Gelardi testify if you want her to, but quite honestly I almost warn you against it because if history is any guide, I am concerned that she will say something that will prove to be untrue down the road") and 130:4-12 ("I reject that based on everything that's happened so far in these proceedings and your client's credibility, which is quite minimal at this point").

  Once a party's contempt has been established, as it has been here, a court must decide how to remedy that contempt. "Civil sanctions have two purposes: to coerce compliance with a court order and to compensate a plaintiff." See CBS Broadcasting Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016). Rather than imposing a coercive sanction, a court may award attorneys' fees to compensate the party that filed a contempt motion. See In re DiBattista, 33 F.4th 698, 702–03 (2d Cir. 2022). Although the Second Circuit has not yet decided whether a party moving for contempt must prove that its opponent's conduct was willful to collect attorneys' fees, the evidence presented here establishes willfulness. See 1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park, 809 Fed. Appx. 44, 46-47 (2d Cir. 2020).

  Where a court finds that the contempt was willful, however, it must "articulate persuasive grounds" for not awarding reasonable attorneys' fees to "the victim of [the] contempt." See M. Harvey Rephen & Assocs, P.C. v. Chase Bank USA, N.A., 853 Fed. Appx. 690, 693 (2d Cir. 2021) (quoting Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996)). Based on the foregoing, there can be no room for doubt that Defendants have willfully engaged in contempt such that the coercive sanctions of attorneys' fees must be imposed on them for the costs of the instant motion and hearing.

In addition, all of Defendants' agents, officers and employees, and all other persons and entities in active concert or participation with them – including Liddie – must be enjoined from serving the law firm customers on the Enjoined Customers List.  At a minimum, Liddie must be enjoined from serving the fourteen (14) law firm customers listed on his website after purchasing it from Defendants.

Last but not least, Defendants and all those in active concert or participation with them should be completely enjoined from operating or being involved in any manner in an IME observer business and must be banned from doing so.

**Plaintiff's Renewed Motion for Prejudgment Attachment Should be Granted**

In light of Defendants' repeated representations that they are no longer operating Companions, which is proven to be false by the submission of a recent Companions invoice for services rendered after the period Defendants claim to have shut down, Plaintiff respectfully submits that the badges of fraud have been met.

This Court found it plausible that Defendants need to sell their real property in order to provide for themselves given their representations that they are no longer operating Companions. But that representation was simply not true.

Because Defendants have engaged in a fraud upon this Court, the badges of fraud element has been met and Defendants must be enjoined from selling their property in the State of New York.

Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
       May 26, 2023                         Respectfully submitted,

                                            **MILMAN LABUDA LAW GROUP PLLC**

                                            __/s/ Emanuel Kataev, Esq._____
                                            Jamie S. Felsen, Esq.
                                            Emanuel Kataev, Esq.
                                            3000 Marcus Avenue, Suite 3W8
                                            Lake Success, NY 11042-1073
                                            (516) 328-8899 (office)
                                            (516) 328-0082 (facsimile)
                                            jamiefelsen@mllaborlaw.com
                                            emanuel@mllaborlaw.com

                                            *Attorneys for Plaintiff*
                                            *IME WatchDog, Inc.*

**VIA ECF**
Warner & Scheuerman
<u>Attn</u>: Jonathan D. Warner, Esq.
6 West 18th Street, 10th Floor
New York, NY 10011-4602
(212) 924-7111 (telephone)
(646) 692-0166 (direct dial)
(212) 924-6111 (facsimile)
jdwarner@wslaw.nyc

*Attorneys for Defendants*
*Third-Party Plaintiffs*
*Third-Party Counterclaim-Defendants*
*Safa Abdulrahim Gelardi*
*Vito Gelardi, and*
*IME Companions LLC*

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804

**VIA ECF**
Leo Shalit, P.C.
<u>Attn</u>: Leo Shalit, Esq.
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481 (facsimile)
leo@shalit-law.com

*Attorneys for*
*Third-Party Defendant*
*Carlos Roa*

**VIA ECF**
All remaining counsel of record