**MILMAN LABUDA LAW GROUP PLLC**
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
———

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

December 19, 2023

**VIA ECF**
United States District Court
Eastern District of New York
Attn: Hon. Pamela K. Chan, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

      *Re:*    **IME WatchDog, Inc. v. Gelardi,** *et al.*
             **Case No.: 1:22-cv-1032 (PKC) (JRC)**
             **MLLG File No.: 25-2022**

Dear Judge Chen:

      This office represents the Plaintiff IME WatchDog, Inc. ("Plaintiff") in the above-referenced case. Plaintiff writes pursuant to this Court's October 20, 2023 Memorandum & Order to submit the instant letter motion[1] for attorneys' fees arising from Plaintiff's successful second Order to show cause for a preliminary injunction and motion for contempt.

**Preliminary Statement & Factual Background**

      From the beginning, this case has been fraught with complaints of Defendants' diabolical conduct. Notwithstanding this Court's Orders addressing this conduct, Defendants have seen fit to act as if they are "above the law" and nonetheless defy these Orders. The day has come for Defendants to answer for their willful disobedience.

      On April 4, 2022, following a show cause hearing, this Court found that Plaintiff has demonstrated a likelihood of success on the merits of its claims against Defendants Safa Abdulrahim Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions" or the "Corporate Defendant") (Safa, Vito, and Companions collectively hereinafter the "Defendants"), finding "what clearly and convincingly appears to be wrongfully obtained trade secrets" by Defendants. See Text Only Order dated April 5, 2022.

---

[1] Plaintiff respectfully requests leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which requires that the Rules be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. See Fed. R. Civ. P. 1 (emphasis added).

The Court also found the remaining elements of an injunction met and issued an injunction enjoining Defendants from franchising Companions as well as from any ongoing or future communications by Defendants with Plaintiff's employees and agents. Id.

On May 13, 2022, following supplemental briefing, this Court issued an Order granting in part and denying in part Plaintiff's motion together with a Preliminary Injunction. See ECF Docket Entry 66. On June 8, 2022, this Court entered an Amended Preliminary Injunction (collectively hereinafter with the original Preliminary Injunction the "Injunction") due to Defendants' slanderous campaign designed to solicit funds in aid of their indefensible conduct. See ECF Docket Entry 80.

On March 10, 2023, this Court entered a temporary restraining Order ("TRO") preliminarily enjoining "Defendants, *inter alia*," … "from: (1) contacting Carlos Roa, directly or indirectly, by any means; (2) contacting any employee, agent, or customer of Plaintiff, directly or indirectly, by any means; (3) operating their business or any other business that unfairly competes with Plaintiff in violation of the law." See Text Only Order dated March 10, 2023.

On March 27, 2023, following a hearing, this Court amended the Amended Preliminary Injunction dated June 8, 2022 to, *inter alia*, preclude Defendants from serving the customers on the Enjoined Customers List which consists of 98% of IME Companions LLC's ("Companions") revenue. See Text Only Order dated April 7, 2023.

At that March 27, 2023 hearing, and following briefing before and thereafter, and as this Court concluded in its October 20, 2023 Order, Plaintiff demonstrated that Defendants were in contempt of the Injunction because they: (i) hired a private investigator who contacted Third-Party Defendant Carlos Roa ("Roa"); and (ii) helped form Client Exam Services LLC ("CES") by having a family friend named Fari Gutierrez ("Gutierrez") create CES to circumvent the TRO, and Gutierrez did so in concert with others associated with Defendants to serve the same customers the Defendants had served before. See ECF Docket Entry 254 at 30-31. In the October 20, 2023 Order, the Court granted Plaintiff attorneys' fees and costs and directed Plaintiff to file a motion for its attorneys' fees and costs. Id. Plaintiff's success in obtaining a preliminary injunction against the Defendants for all of its requested relief warrants the relief sought, and as demonstrated below, Plaintiff's rates and time spent are reasonable.

**Plaintiff is Entitled to Attorneys' Fees as a Prevailing Party to its Contempt Motion**

"Civil sanctions have two purposes: to coerce compliance with a court order and to compensate a plaintiff." See CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 101 (2d Cir. 2016). A contempt order may "serve either goal—the coercive or the compensatory—by awarding attorneys' fees and costs to a contempt victim." See Al Hirschfeld Found. v. Margo Feiden Galleries Ltd., 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020) (citing Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996)); see also Software Freedom Conservancy, Inc. v. Westinghouse Dig. Elecs., LLC, 812 F. Supp. 2d 483, 491 (S.D.N.Y. 2011) ("It is well settled in this Circuit that costs, including reasonable attorneys' fees, may be awarded to the party who prosecutes a contempt motion as an appropriate compensatory sanction for contumacious behavior." (internal quotations omitted)).

The Supreme Court has explained that the "determination of fees should not result in a second major litigation. The fee applicant ... must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants." See Fox v. Vice, 563 U.S. 826, 838 (2011) (internal quotations omitted); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. …"); Fikes Wholesale, Inc. v. HSBC Bank USA, N.A., 62 F.4th 704, 726 (2d Cir. 2023) (holding that Hensley remains "instructive" with respect to attorneys' fees).

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." See Fox, 563 U.S. at 838.

Under federal law, courts calculate attorneys' fees "by determining the appropriate billable hours expended and 'setting a reasonable hourly rate, taking account of all case-specific variables.'" See Lilly v. City of New York, 934 F.3d 222, 229–30 (2d Cir. 2019) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 189 (2d Cir. 2008)). This is known as the "lodestar" method. See, e.g., id. at 229 (explaining that "reasonable hours expended multiplied by the reasonable hourly rate" is the "lodestar"). The Supreme Court has "affirmed its long-standing position that 'the lodestar method yields a fee that is presumptively sufficient.'" Id. at 231 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 553-54 (2010)); see also Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." (internal quotations omitted)). Accordingly, courts use the lodestar method to determine attorneys' fee awards resulting from contempt. See Treyger v. First Class Furniture & Rugs Inc., No. 21-CIV.-2902, 2022 WL 18356256, at *5-6 (E.D.N.Y. July 14, 2022) (using the lodestar method to determine attorneys' fees owed due to contempt), report and recommendation adopted, 2023 WL 199698 (E.D.N.Y. Jan. 17, 2023); see also Hunter v. City of New York, 12-CV-6139, 2021 WL 4942769, at *4 (E.D.N.Y. Oct. 22, 2021) (using the lodestar method to determine attorneys' fees owed for sanctioned conduct).

A court exercises "its considerable discretion" when it "bear[s] in mind all of the case-specific variables that ... courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." See Lilly, 934 F.3d at 230 (quoting Arbor Hill, 522 F.3d at 190) (alterations omitted); see also M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A., 853 Fed. Appx. 690, 693 (2d Cir. 2021) (recognizing that "[d]istrict courts have 'considerable discretion' in determining the appropriate amount of attorneys' fees" to award on a finding of contempt (quoting Weitzman, 98 F.3d at 720)). "'The most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)).

The courts may consider additional factors, including:

3

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

See Arbor Hill, 522 F.3d at 184. The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." See Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020).

Here, as set forth above, this Court found that Defendants were in contempt of violating the Injunction and the TRO by having a private investigator contact Roa and forming CES so that Defendants' family and friends can operate their business and concluded that Plaintiff is entitled to costs and attorneys' fees. See ECF Docket Entry 254.

Further, and of particular import because of the display of complete disregard for the rule of law by the Defendants, it bears emphasis that this Court has twice found that Defendants willfully and maliciously misappropriated Plaintiff's trade secrets. See IME Watchdog, Inc. v. Gelardi, No. 22-CIV.-1032 (PKC) (JRC), 2022 WL 1525486, at *3 (E.D.N.Y. May 13, 2022); see also IME Watchdog, Inc. v. Gelardi, No. 22-CIV.-1032 (PKC) (JRC), 2023 WL 6958855, at *10 (E.D.N.Y. Oct. 20, 2023) ("Here, the Court issues a narrowly tailored injunction, only enjoining Defendants from providing services to those customers who Plaintiff has shown were misappropriated from Plaintiff. … The Court notes again that this strengthened injunction is necessitated by Defendants' violation of the previous injunction"). For these reasons, Plaintiff's attorneys' fees and compensatory damages must be granted in their entirety.

**Plaintiff's Counsel's Rates and Time Spent on the Motion are Reasonable**

Here, the hours and rates used to calculate Plaintiff's request for attorneys' are reasonable in light of the novelty of the issues given the fact that the DTSA is a relatively new law, the needs of the litigation (as a result of the show cause hearing and extensive briefing involved), and the success achieved. The instant application relates only to work that led to the October 20, 2023 Order, and is made without prejudice to Plaintiff's anticipated fee application for all its work upon prevailing in this case.

    **A.    The Hours Expended Were Reasonable**

The reasonableness of the hours an attorney expends depends on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

Given that Plaintiff's counsel submitted extensive briefing and prepared for a hearing at which it expected many witnesses to testify, the number of hours spent on the contempt application, as further set forth below, are inherently and inarguably reasonable.

### B. The Hourly Rates Are Reasonable

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay." See Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr., 652 F.3d 277, 289-90 (2d Cir. 2011) (citation omitted). It "should be based on market rates 'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" See Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (alteration omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

The "prevailing community a district court should consider ... is normally the district in which the court sits." Id. (internal quotation marks omitted). Courts should consider factors such as "the novelty and difficulty of the questions," the "results obtained," and the "experience, reputation, and ability of the attorneys." See Arbor Hill, 522 F.3d at 186 n.3, 190.

The complexities of this case, and what has proven to be an aggressive defense by the Defendants, called for the expertise and resources of a sophisticated firm such as Milman Labuda Law Group PLLC ("MLLG") and the need for a private investigator. See, e.g., LV v. N.Y. City Dep't of Educ., 700 F. Supp. 2d 510, 517 (S.D.N.Y. 2010) ("Complex cases may require more resources and different skills than . . . lawyers working in solo practice, small firms, or non-profit organizations can feasibly supply").

In light of MLLG's experience in this field of law, MLLG's rates of $300.00 for associates and $450.00 per hour for partners are consistent with the market rate of firms of "reasonably comparable skill, experience, and reputation" in New York, including as recognized in recent fee awards. See Reiter, 457 F.3d at 232 (citation omitted); see also Mahan v. Roc National, LLC, 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016) (approving partner rates of $747–$858 and associate rate of $553); see also Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving partner and associate rates of $735 and $445, respectively, in 2009).

Plaintiff submits that partners have billed ~65.1 hours at the rate of $450.00 per hour and associates[2] have billed ~155 hours at the rate of $300.00 per hour for the period of November 1, 2022 – immediately preceding the discovery of the GPS device on Roa's vehicle – through March 27, 2023, the day of the hearing, for a total attorneys' fees award of $72,802.50.[3]

---

[2] Emanuel Kataev was named a partner effective January 1, 2023, and as such, his hourly rate should be increased to $450.00.

[3] Plaintiff submits appropriately redacted invoices as an exhibit to the instant motion with details and descriptions of its counsel's work performed in support of its application.

Further, Daniella Levi & Associates, P.C. served as in-house counsel to Plaintiff, and are also entitled to fees. See Video–Cinema Films, Inc. v. Cable News Network, Inc., Nos. 98-CIV.-7128, 98-CIV.-7129, 98-CIV.-7130, 2004 WL 213032, at *6 (S.D.N.Y. Feb. 3, 2004) ("It is well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work performed by outside counsel"). Indeed, courts in this Circuit have routinely allowed attorneys' fees for in-house counsel at a reasonable rate. See id. (rejecting a plaintiff's argument that it should pay attorneys' fees for work performed by the defendant's in-house counsel after the court awarded such fees); see also Baiul v. NBCUniversal Media, LLC, No. 13-CIV.-2205, 2014 U.S. Dist. LEXIS 97527, at *9 n.5 (S.D.N.Y. July 14, 2014) ("That the ... Defendants request attorneys' fees for work performed by their inhouse counsel is of no moment ...."), aff'd, 607 F. App'x 99 (2d Cir. 2015) (summary order); United States ex rel. ATC Distrib. Grp., Inc. v. Ready-Built Transmissions, Inc., No. 03-CIV.-2150, 2007 WL 2522638, at *2 (S.D.N.Y. Sept. 7, 2007) (rejecting the argument that attorneys' fees should not be awarded for work performed by in-house counsel). Plaintiff submits that its in-house counsel has billed ~88.8 hours at the rate of $450.00 per hour and associate in-house counsel has billed ~75.9 hours at the rate of $300.00 per hour for the period of November 1, 2022 through March 27, 2023 for a total attorneys' fees award of $66,640.00.[4]

In addition, because Roa was impacted by Defendants' contempt, he is entitled to fees, as well. Roa's counsel spent 4.16 hours at the rate of $350.00 per hour for a total attorneys' fees award of $1,456.00.[5] Moreover, Roa retained separate counsel to file a pre-action discovery application, which resulted in obtaining crucial evidence from the private investigator Defendants hired to place the GPS device on his vehicle, which was necessary because Safa perjured herself at her deposition in denying that she directed the private investigator to track Roa with a GPS device. Roa's separate counsel spent 36.6 hours at the rate of $500.00 per hour for a total attorneys' fees award of $18,300.00 plus costs of $1,209.11.[6]

Accordingly, this Court should find that the hours and rates are reasonable.

**Plaintiff is Entitled to its Reasonable Costs related to the Contempt Motion**

The Court also provided that Plaintiff is entitled to compensatory damages based on its success on the contempt motion. See ECF Docket Entry 254 at 32-33. "[O]ut-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." See Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC., 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008) (internal quotations and alteration omitted); see also Larsen v. JBC Legal Group, P.C., 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008) (similar).

---

[4] Plaintiff submits appropriately redacted invoices as an exhibit to the instant motion with details and descriptions of its in-house counsel's work performed in support of its application.

[5] Roa submits appropriately redacted invoices as an exhibit to the instant motion with details and descriptions of his counsel's work performed in support of its application.

[6] Roa submits an additional invoice as an exhibit to the instant motion with details and descriptions of his counsel's work performed in support of its application.

For example, court filing fees, process servers, printing, photocopying, messenger services, postage, telephone costs, transcripts, transportation, meals, subpoenas, witness fees, deposition services, and transcripts are recoverable. See Spence v. Ellis, No. 07-CIV.-5249, 2012 WL 7660124, at *9 (E.D.N.Y. Dec. 19, 2012) (collecting cases awarding costs for these expenditures), report and recommendation adopted, 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013); LeBlanc, 143 F.3d at 763 (recognizing that photocopying, travel, and telephone expenditures are recoverable as costs).

The party seeking to recover costs bears the "burden in adequately documenting and itemizing the costs requested." See, e.g., Cangemi v. Town of E. Hampton, No. 12-CV-3989, 2023 WL 2674377, at *3 (E.D.N.Y. Mar. 29, 2023). "Court fees reflected on the Court's docket and costs for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated, as is a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items." See Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020).

The expenditures Plaintiff seeks to recover here are all proper recoverable costs rather than unrecoverable overhead. See, e.g., Westport Ins. Corp. v. Hamilton Wharton Grp. Inc., 483 F. App'x 599, 605 (2d Cir. 2012) (affirming award of costs for, among other things, "in-house duplication costs," "postage," and "messenger service"); see also Mendoza v. CGY & J Corp., No. 15-CV-9181, 2017 WL 4685100, at *3 (S.D.N.Y. Oct. 17, 2017) (awarding certain costs because counsel "attested under penalty of perjury" to them); Chesney v. Prestige Motor Sales, Inc., No. 15-CV-6369, 2017 WL 11806232, at *7 (E.D.N.Y. Feb. 8, 2017) (similar), report and recommendation adopted, 2017 WL 11806233 (E.D.N.Y. May 8, 2017); Abel v. Town Sports Int'l, LLC, No. 09-CV-10388, 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 18, 2012) (finding costs were "adequately supported" because they were described in a declaration under penalty of perjury).

Further, "[a]n award of costs . . . 'normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" See Finch v. New York State Office of Children & Family Servs., 861 F. Supp. 2d 145, 157 (S.D.N.Y. 2012) (alteration omitted) (quoting Reichman v. Bonsignore, Brignati & Mazzota P.C., 818 F.2d 278, 283 (2d Cir. 1987)).

Here, Plaintiff requests expenses incurred for transcripts, process servers, private investigator, travel, parking, and Roa's working time spent which total $26,840.17. A declaration supporting these costs is annexed hereto as **Exhibit "A."**

Accordingly, Plaintiff's motion for attorneys' fees and costs should be granted in its entirety for the amount of $186,038.67.

Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
      December 19, 2023                 Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**
  */s/ Emanuel Kataev, Esq.*
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

Dated: Lake Success, New York
      December 19, 2023                 Respectfully submitted,

**LEO SHALIT, P.C.**
  */s/ Leo Shalit, Esq.*
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481
(facsimile) leo@shalit-law.com
*Attorneys for Third-Party Defendant*
*Carlos Roa*

| | |
|---|---|
| **VIA ECF** | **VIA ECF** |
| Warner & Scheuermann | Abrams Fensterman, LLP |
| <u>Attn</u>: Jonathan D. Warner, Esq. | <u>Attn</u>: Anthony J. Genovesi & Melanie I. Weiner, Esqs. |
| 6 West 18th Street, 10th Floor | 1 MetroTech Center, Suite 1701 |
| New York, NY 10011-4602 | Brooklyn, NY 11201-3831 |
| (212) 924-7111 (telephone) | (718) 215-5300 (office) |
| (646) 692-0166 (direct dial) | (718) 215-5304 (facsimile) |
| (212) 924-6111 (facsimile) | agenovesi@abramslaw.com |
| jdwarner@wslaw.nyc | mweiner@abramslaw.com |
| | |
| *Attorneys for Defendants* | *Attorneys for Defendants* |
| *Third-Party Plaintiffs* | *Gregory Elefterakis,* |
| *Safa Abdulrahim Gelardi* | *Roman Pollak, and* |
| *Vito Gelardi, and* | *Anthony Bridda* |
| *IME Companions LLC* | |

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804