**WARNER & SCHEUERMAN**
Attorneys at Law
6 West 18th Street, 10th Floor
New York, New York 10011
Tel: (212) 924-7111
Fax: (212) 924-6111

**Jonathon D. Warner, Esq.**
jdwarner@wslaw.nyc

**Karl E. Scheuerman, Esq.**
kescheuerman@wslaw.nyc                          February 27, 2024

<u>**VIA ECF**</u>

Pamela K. Chen, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 4F North
Brooklyn, New York 11201-1804

Re:   *IME Watchdog, Inc. v. Gelardi, et al.*
      <u>Case No.: 1:22-cv-1032 (PKC)(JRC)</u>

Dear Judge Chen:

      We represent defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito") and IME Companions LLC (collectively, "defendants") and write in opposition to plaintiff's application for emergency relief related to the March 13, 2024, evidentiary hearing on plaintiff's motion for an order of attachment.

      Plaintiff seeks an emergency restraining order prohibiting the sale of a jointly-owned home based upon its belief that it will procure a judgment for contempt damages against <u>one</u> of the two joint tenants (Safa), without regard for the undisputed fact that a restraining order would interfere with the property rights of the joint owner against whom no judgment for contempt damages is anticipated (Vito) and the contractual rights of the non-party purchaser. Under no circumstances should Vito's property rights be interfered with by the Court in the absence of any grounds for an order of attachment against Vito. It is elemental that a judgment can only attach against jointly-owned property where the judgment is against both joint owners. This basic rule of law is no different in the context of orders of attachment.

      To make matters worse, plaintiff has failed to submit any evidence supporting its hysterical accusations of wrongdoing upon which its request for a temporary restraining order is based, and hopes to adduce evidence at the hearing after subpoenaing witnesses to testify. The Staten Island home has been publicly listed for sale since April 11, 2023 (as per Zillow), meaning that plaintiff has had ample opportunity to procure evidence supporting its motion by subpoenaing the listing agent and by having an expert real estate appraiser submit a report showing that the Staten Island home is being sold at below market value as plaintiff alleges

without evidence. Plaintiff was duty-bound to support its motion with evidence and should not be allowed to obstruct an impending sale, and to interfere with the non-party purchaser's contractual rights, with the hope that evidence might be adduced at the hearing by virtue of its attorney's subpoena power. Plaintiff could have subpoenaed witnesses earlier to marshal evidence supporting its claims, but chose to make its motion without evidence. Such tactics should not be countenanced.

Plaintiff's request for an emergency temporary restraining order stands like a house of cards on its attorney's **demonstrably false accusation** that Safa and Vito went into contract for the sale of their Staten Island home on February 22, 2024, one day after this Court had ordered Safa to identify all real property she owns and/or has sold since February 1, 2022. Plaintiff's attorney states: "The following day, on February 22, 2024, Safa went into contract on the sale of her Staten Island property." Plaintiff requests an emergency temporary restraining order "given the timing of this development."

The truth (which is never an obstacle for plaintiff) is that Vito and Safa have been in contract to sell their Staten Island home since long before February 22, 2024, and have been attempting to sell it since early Spring 2023. This simple truth is demonstrated by the documentary evidence.

- By Broker's Agreement dated May 1, 2023, Vito retained James Barry, a licensed associate broker with Nest Seekers LLC, to sell the Staten Island home. The Broker's Agreement was electronically signed by James Barry on June 3, 2023, and by Vito on June 5, 2023. The Broker's Agreement provided for a broker's fee of 4%. A copy of the Broker's Agreement is annexed as Exhibit "1." Vito states in his opposing Declaration that they had previously retained ReMax to sell the Staten Island home, but switched to Nest Seekers after James Barry left ReMax for Nest Seekers.

- By Offer To Purchase electronically signed by the purchaser on January 24, 2024 (the "Binder"), Anthony Masullo agreed to purchase the Staten Island Home for $975,000. The Binder was electronically signed by Vito on January 26, 2024. A copy of the Binder is annexed as Exhibit "2."

- By Residential Contract of Sale made as of February 2024, between Vito Gelardi and Safa Gelardi, as sellers, and Anthony Masullo, as purchaser (the "Contract of Sale"), Vito and Safa agreed to sell the Staten Island home to Mr. Masullo for $975,000.00. The Contract of Sale was electronically signed by the purchaser on February 2, 2024; electronically signed by Safa on February 3, 2024; and electronically signed by Vito on February 6, 2024. A copy of the Contract of Sale is annexed as Exhibit "3." The Contract of Sale was thus fully executed on February 6, 2024, and was entered pursuant to a Binder which had been executed on January 26, 2024.

Accordingly, the undisputed documentary evidence proves the falsity of plaintiff's allegation concerning the allegedly suspicious timing of the Contract of Sale, which is the sole basis for plaintiff's request for an emergency temporary restraining order. Plaintiff's motion for emergency relief should be denied where it is based upon a misrepresentation of fact.

Nor is there any truth to plaintiff's suggestion that Vito and Safa are attempting to hastily sell their Staten Island home to hinder plaintiff from enforcing any judgment for contempt damages which might be entered against Safa. As established by the annexed documentary evidence and Vito's opposing Declaration, the Staten Island home has been on the market since early last Spring. Vito states that they have only received two offers for the home, with the first offer being withdrawn before any written agreement was finalized, and with the second one being accepted in January. Where Zillow (plaintiff's sole source of "evidence") shows that the Staten Island home has been on the market since April 11, 2023, it defies credulity for plaintiff to maintain that Vito and Safa are hastily attempting to dispose of their Staten Island home to avoid judgment-enforcement against Safa.

Moreover, plaintiff has yet again ignored that the Staten Island home is jointly-owned by Vito and Safa as husband and wife, meaning that it cannot be attached where only Safa faces the entry of a judgment for contempt damages. Indeed, plaintiff seeks to attach real property in which Vito has an ownership interest as a joint tenant, although no grounds for attachment exist or have been alleged to exist against Vito. It is well-settled that where there is more than one defendant, a plaintiff must establish a basis for attachment as to each defendant against whom attachment is sought. See Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 62 N.Y.2d 291 (1984); AMF Inc. v. Algo Distribs., Ltd., 48 A.D.2d 352 (2nd Dept. 1975). It is equally well-settled that a judgment against one joint tenant of real property is only enforceable against that joint tenant's interest in the property, meaning that plaintiff could only have a right to attach Safa's interest in the Staten Island home which is subject to Vito's right of survivorship as joint tenant. See BNY Financial Corp. v. Moran, 154 Misc.2d 435 (Sup.Ct., N.Y.Cty. April 10, 1992); Ptaszynski v Flack, 263 A.D. 831 (2nd Dept. 1941); Finnegan v. Humes, 163 Misc. 840, 298 N.Y.Supp. 50, *mod.*, 252 A.D. 385, *aff'd.*, 277 N.Y. 682 (1938). Plaintiff's failure to allege any basis for an order of attachment against Vito mandates the denial of plaintiff's motion, especially where the Staten Island home is jointly-owned by Vito and Safa as husband and wife.

Plaintiff's emergency application also ignores the outstanding mortgage encumbering the Staten Island home as well the various closing costs which Vito and Safa will be required to pay to close on the sale, which will leave no money left over to attach as against Safa. As established by the annexed documentary evidence, the sale price for the Staten Island home is $975,000. Plaintiff has not submitted any evidence demonstrating that this sale price is below market value, let alone any expert appraisal showing that the sale price is below market value. In that regard, we note that New York City homes which are worth in the range of $1,000,000 routinely sell for less than $1,000,000 due to the New York City and New York State Mansion taxes. The New York City Mansion Tax is 1.5% (paid by the purchaser) of the entire purchase price, meaning that the difference between buying a home for $999,999 and $1,000,000 is not $1.00, but

$10,001. For this reason, very few properties in New York City sell for just over $1 million. The New York State Mansion Tax (paid by the seller) is 1.4%, or a full percentage point over the regular New York State Transfer Tax of .4%, meaning that an additional $10,000 would be owed by Vito and Safa if the Staten Island home had sold for $1,000,000.

The Staten Island home is encumbered by a $765,000 mortgage. Vito states in his opposing Declaration that approximately $730,000 remains outstanding on the mortgage, leaving gross sale proceeds in the approximate amount of $245,000. From this $245,000, additional closing costs must be paid. Based upon a sale price of $975,000, defendants anticipate the following closing costs in the following approximate amounts:

| | |
|---|---|
| Brokers Fee (4%): | $39,000 |
| NYC Transfer Tax (1.425%): | $13,894 |
| NY State Transfer Tax (.4%) | $3,900 |
| Attorneys Fees: | $2,500 |
| Outstanding Mortgage: | $730,000 |
| Bank Loan Satisfaction Fee: | $500 |
| Mortgage Satisfaction Recording Fee: | $100 |
| Residential Deed Transfer Fee: | $125 |
| ACRIS Filing Fee: | $50 |
| Property Condition Disclosure Waiver Fee: | $500 |
| Outstanding Taxes, Water and Sewer Charges: | Unknown |
| Title Charges: | Unknown |
| TOTAL APPROXIMATE COSTS: | $790,569. |

With closing costs in the approximate amount of $791,000, Vito and Safa are expected to net approximately $184,000 from the sale of their Staten Island home, and half of that sum is the property of Vito, against whom no order of attachment can be issued. New York's homestead exemption of C.P.L.R. § 5206 for Richmond County is $150,000, which is more than Safa's potential $92,000 share of the net sale proceeds. See In re Brooks, 31 B.R. 302 (Bnkr. S.D.N.Y. 1983)(holding that where the property is held by the entirety, either spouse may claim the full exemption).

There is simply no basis for a TRO prohibiting the sale of real property jointly owned by Vito and Safa in the absence of any grounds for an order of attachment against Vito, and no basis for an Order attaching Safa's expected $92,000 share in the net proceeds from the sale of their Staten Island home where such sum is less than her $150,000 homestead exemption under C.P.L.R. § 5206. Nor is there any ground for a temporary restraining order where plaintiff will not suffer any irreparable harm if the closing proceeds, and where plaintiff has failed to demonstrate a likelihood of success on its motion for an order of attachment. In the event this Court grants plaintiff the drastic relief of a temporary restraining order prohibiting the sale of the

Staten Island home, plaintiff should be required to post a bond in the amount of the $975,000 sale price pursuant to Federal Rule 65. Vito and Safa should not be forced to continue to carry the cost of ownership of the Staten Island home where it is being sold pursuant to an arm's-length transaction which will result in net proceeds to Safa in an amount less than New York's homestead exemption. Plaintiff should be required to post a bond to compensate Vito and Safa for the financial losses which they will sustain if they are restrained from closing on the sale, including the additional costs they will incur from owning the home and any loss they incur in the event the purchaser backs out of the deal due to the restraining order. Plaintiff is also required to post an undertaking pursuant to C.P.L.R. § 6212(b).

The affidavit of Daniella Levi belatedly submitted pursuant to C.P.L.R. § 6212 fails to make any effort to establish plaintiff's alleged contempt damages against Safa (which are hotly disputed); fails to show that Safa will be unable to satisfy any judgment for contempt damages; and raises a new statutory ground for attachment, which was not set forth in plaintiff's initial moving papers. Plaintiff should not be permitted to sandbag defendants by relying upon a different provision of the C.P.L.R. in a belatedly submitted affidavit which plaintiff was statutorily required to submit with its moving papers. Plaintiff's motion was based solely upon C.P.L.R. § 6201(3), and plaintiff should not now be permitted to rely upon C.P.L.R. § 6201(1) instead of C.P.L.R. § 6201(3).

Nor is plaintiff entitled to this harsh and drastic remedy merely because Safa is relocating to Texas. "[A] plaintiff is never entitled to an attachment as a matter of right. Rather, the remedy is discretionary with the Court and should be used sparingly." Katz Agency, Inc. v. Evening News Ass'n, 514 F. Supp. 423, 429, *aff'd*, 705 F.2d 20 (2nd Cir. 1983); see also Thornock v. Kinderhill Corp., 712 F.Supp. 1123 (S.D.N.Y. 1989)("Finally, even if plaintiffs had made the required showings, it would still be possible to deny the harsh remedy of attachment, for attachment is a discretionary remedy"); General Textile Printing & Processing Corp. v. Expromtorg Intern. Corp., 862 F. Supp. 1070, 1073 (S.D.N.Y. 1994)("[T]he court cannot issue an order of attachment solely because the requirements of CPLR § 6201 have been met. Attachment is a harsh remedy, and should not be lightly granted by the court."). Jurisdiction has already been obtained over Safa, and plaintiff has failed to show that this harsh and drastic remedy is required for security purposes. Plaintiff's motion should be denied, *in toto*.

With respect to plaintiff's request for a forensic examination of certain phone numbers and email addresses, such request has been made without any evidence of wrongdoing, and is based upon an allegation concerning Eugene Liddie's business which was previously rejected by this Court. At the conclusion of the contempt hearing on May 4, 2023, this Court held that Mr. Liddie's business, IME Legal Reps, was not being operated in violation of any Court Order, and found that Mr. Liddie was a "credible" witness. (Dkt. 229). In its Order dated July 13, 2023, this Court found that plaintiff's post-hearing accusations of wrongdoing against Mr. Liddie and defendants were "frivolous" and stated that "it was Plaintiff's inability to present any evidence showing that Mr. Liddie started IME Legal Reps at the behest of Defendants that persuaded the

Court to find that neither Mr. Liddie nor Defendants had violated the preliminary injunction." (Dkt. 231, at 3).

      Plaintiff has now dusted off and repeated these very same allegations of wrongdoing, without a scintilla of new proof suggesting that either Mr. Liddie or defendants have violated any Court Order, simply to harass Mr. Liddie and defendants, while seeking to burden Vito and Safa with unnecessary litigation expenses.  The bottom line is that this Court did not prohibit defendants from starting a new business in Texas, and plaintiff has not alleged that defendants are servicing any law firms on the "enjoined client list" in Texas.  Moreover, Mr. Liddie vehemently disputes plaintiff's allegations and has alleged under oath in his opposing Declaration that plaintiff's accusations are unfounded and based upon plaintiff's misrepresentations concerning the contents of his company's website.  We beseech the Court to review Mr. Liddie's website https://imelegalreps.com/ for the truth.  The truth cannot be found in plaintiff's moving papers.

                                            Respectfully yours,

                                            */s/ Jonathon D. Warner*

JDW/ks
Encs.

cc:      All counsel (via ECF)