# EXHIBIT "3"

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

Contract of Sale made as of ~~January~~ February ___, 2024, Between

**VITO GELARDI** AND SAFA GELARDI
Address: 148 CLAY PIT ROAD, SI, NY 10309
Social Security Number/ Fed. I.D. No(s): 					hereinafter called "Seller" and

**ANTHONY MASULLO**
Address: 6506 10th Ave, Bklyn, NY
Social Security Number/ Fed. I.D. No(s): 					hereinafter called "Purchaser".

The parties hereby agree as follows:

**Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: **148 CLAY PIT ROAD, SI, NY 10309**
Tax Map Designation: Block 7267, Lot 307

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (*strike out inapplicable items*). **ALL AS EXISTING AND "AS IS"**.

Excluded from this sale are furniture and household furnishings as per MLS and to the extent that any of the above currently exist on premises.

3. **Purchase Price.** The purchase price is $975,000.00 payable as follows:
(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
$5,000.00
~~(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:~~ $N/A
~~(c) by a purchase money note and mortgage from Purchaser to Seller:~~ $N/A
~~(d) by a Seller's Price Concession~~ $N/A
(e) balance at Closing in accordance with paragraph 7:
$970,000.00

4. ~~**Existing Mortgage.** (*Delete if inapplicable*) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of ___ percent per annum, in monthly installments of $___ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on ___
(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.
(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.
(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the~~

~~isting mortgage is a bank or other institution as defined in Section 274-~~
~~of the Real Property Law it may, instead of the certificate, furnish a~~
~~ter signed by a duly authorized officer, employee or agent, dated not~~
~~ore than 30 days before Closing, containing the same information.~~
~~(e) Seller represents and warrants that (i) Seller has delivered to~~
~~rchaser true and complete copies of the existing mortgage, the note~~
~~ured thereby and any extensions and modifications thereof, (ii) the~~
~~isting mortgage is not now, and at the time of Closing will not be, in~~
~~fault, and (iii) the existing mortgage does not contain any provision~~
~~at permits the holder of the mortgage to require its immediate payment~~
~~full or to change any other term thereof by reason of the sale or~~
~~nveyance of the Premises.~~

~~Purchase Money Mortgage. (*Delete if inapplicable*) If there is to~~
~~a purchase money mortgage as indicated in paragraph 3(c) above:~~
~~(a) The purchase money note and mortgage shall be drawn by the~~
~~orney for Seller in the form attached or, if not, in the standard form~~
~~opted by the New York State Land Title Association. Purchaser shall~~
~~y at Closing the mortgage recording tax, recording fees and the~~
~~orney's fees in the amount of $~~
~~r its preparation.~~
~~(b) The purchase money note and mortgage shall also provide that~~
~~is subject and subordinate to the lien of the existing mortgage and any~~
~~tensions, modifications, replacements or consolidations of the existing~~
~~ortgage, provided that (i) the interest rate thereof shall not be greater~~
~~an     percent per annum and the total debt service thereunder shall~~
~~it be greater than $                    per annum, and (ii) if~~
~~e principal amount thereof shall exceed the amount of principal owing~~
~~d unpaid on the existing mortgage at the time of placing such new~~
~~ortgage or consolidated mortgage, the excess be paid to the holder of~~
~~ch purchase money mortgage in reduction of the principal thereof. The~~
~~rchase money mortgage shall also provide that such payment to the~~
~~lder thereof shall not alter or affect the regular installments, if any, of~~
~~incipal payable thereunder and that the holder thereof will, on demand~~
~~d without charge therefor, execute, acknowledge and deliver any~~
~~reement or agreements further to effectuate such subordination.~~

**Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall ld the Downpayment in escrow in a segregated bank account at JP organ Chase Bank, 200 New Dorp Lane, Staten Island, New York until losing or sooner termination of this contract and shall pay over or apply e Downpayment in accordance with the terms of this paragraph. scrowee shall hold the Downpayment in a non interest-bearing ~~account~~ ~~r the benefit of the parties. If interest is held for the benefit of the~~ ~~rties, it shall be paid to the party entitled to the Downpayment and the~~ ~~rty receiving the interest shall pay any income taxes thereon. If interest~~ ~~not held for the benefit of the parties, the Downpayment shall be~~ aced in an IOLA account or as otherwise permitted or required by law. he Social Security or Federal Identification numbers of the parties shall : furnished to Escrowee upon request. At Closing, the Downpayment all be paid by Escrowee to Seller. If for any reason Closing does not cur and either party gives Notice (as defined in paragraph 25) to scrowee demanding payment of the Downpayment, Escrowee shall give ompt Notice to the other party of such demand. If Escrowee does not ceive Notice of objection from such other party to the proposed ayment within 10 business days after the giving of such Notice, scrowee is hereby authorized and directed to make such payment. If scrowee does receive such Notice of objection within such 10 day eriod or if for any other reason Escrowee in good faith shall elect not to ake such payment, Escrowee shall continue to hold such amount until therwise directed by Notice from the parties to this contract or a final, on-appealable judgment, order or decree of a court. However, Escrowee all have the right at any time to deposit the Downpayment and the terest thereon with the clerk of a court in the county in which the remises are located and shall give Notice of such deposit to Seller and urchaser. Upon such deposit or other disbursement in accordance with e terms of this paragraph, Escrowee shall be relieved and discharged of l further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against of all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:
(a) Cash, but not over $ 1,000.00:
(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;
(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500.00; and
(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see* Notes on Mortgage Commitment Contingency Clause.) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before FORTY FIVE days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of **$630,000.00** for a term of at least 30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at

rchaser's election, more than one Institutional Lender for such [...] rtgage loan, (ii) furnish accurate and complete information regarding rchaser and members of Purchaser's family, as required, (iii) pay all [fee]s, points and charges required in connection with such application and [loa]n, (iv) pursue such application with diligence, and (v) cooperate in [go]od faith with such Institutional Lender(s) to obtain a Commitment. [Pu]rchaser shall accept a Commitment meeting the terms set forth in [su]bparagraph 8(a) and shall comply with all requirements of such [Co]mmitment (or any other commitment accepted by Purchaser). [Pu]rchaser shall furnish Seller with a copy of the Commitment promptly [aft]er receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission [by] Purchaser of an application to a mortgage broker registered pursuant [to] Article 12-D of the New York Banking Law ("Mortgage Broker") [sh]all constitute full compliance with the terms and conditions set forth in [su]bparagraph 8(b)(i), provided that such Mortgage Broker promptly [su]bmits such application to such Institutional Lender(s). Purchaser shall [co]operate in good faith with such Mortgage Broker to obtain a [co]mmitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made [de]ny such applications in writing prior to the Commitment Date, [Pu]rchaser may cancel this contract by giving Notice thereof to Seller, [wi]th a copy of such denials, provided that Purchaser has complied with [all] its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or [be]fore the Commitment Date, then, unless Purchaser has accepted a [wr]itten commitment from an Institutional Lender that does not conform [to] the terms set forth in subparagraph 8(a), Purchaser may cancel this [co]ntract by giving Notice to Seller within 5 business days after the [Co]mmitment Date, provided that such Notice includes the name and [ad]dress of the Institutional Lender(s) to whom application was made and [th]at Purchaser has complied with all its obligations under this paragraph [8].

(f) If this contract is canceled by Purchaser pursuant to [su]bparagraphs 8(d) or (e), neither party shall thereafter have any further [ri]ghts against, or obligations or liabilities to, the other by reason of this [co]ntract, except that the Downpayment shall be promptly refunded to [Pu]rchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if [Pu]rchaser accepts a written commitment from an Institutional Lender [th]at does not conform to the terms set forth in subparagraph 8(a), then [Pu]rchaser shall be deemed to have waived Purchaser's right to cancel this [co]ntract and to receive a refund of the Downpayment by reason of the [co]ntingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an [In]stitutional Lender accepted by Purchaser by the Commitment Date, [Se]ller may cancel this contract by giving Notice to Purchaser within 5 [bu]siness days after the Commitment Date, which cancellation shall [be]come effective unless Purchaser delivers a copy of such commitment [to] Seller within 10 business days after the Commitment Date. After such [ca]ncellation neither party shall have any further rights against, or [ob]ligations or liabilities to, the other by reason of this contract, except [th]at the Downpayment shall be promptly refunded to Purchaser [pr]ovided Purchaser has complied with all its obligations under this [pa]ragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" [sh]all mean any bank, savings bank, private banker, trust company, [sa]vings and loan association, credit union or similar banking institution [w]hether organized under the laws of this state, the United States or any [ot]her state; foreign banking corporation licensed by the Superintendent [o]f Banks of New York or regulated by the Comptroller of the Currency [to] transact business in New York State; insurance company duly [or]ganized or licensed to do business in New York State; mortgage banker [li]censed pursuant to Article 12-D of the Banking Law; and any [in]strumentality created by the United States or any state with the power [to] make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed [to] have been given a fully executed copy of this contract on the third [b]usiness day following the date of ordinary or regular mailing, postage prepaid.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) (*Delete if inapplicable*) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**11. Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

NONE

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract

:chaser and its authorized representatives shall have the right, at [rea]sonable times and upon reasonable notice (by telephone or otherwise) [to] Seller, to inspect the Premises before Closing.

Insurable Title. Seller shall give and Purchaser shall accept such [titl]e as: any reputable title company licensed to do business in the City [and] State of New York shall be willing to approve and insure in [acc]ordance with its standard form of title policy approved by the New [Yo]rk State Insurance Department, subject only to the matters provided [for] in this contract.

Closing, Deed and Title. (a) "Closing" means the settlement of the [ob]ligations of Seller and Purchaser to each other under this contract, [inc]luding the payment of the purchase price to Seller, and the delivery to [Pu]rchaser of a Bargain and Sale deed with covenants against Grantor's [Act]s in proper statutory short form for record, duly executed and [ac]knowledged, so as to convey to Purchaser fee simple title to the [Pr]emises, free of all encumbrances, except as otherwise herein stated. [Th]e deed shall contain a covenant by Seller as required by subd. 5 of [Se]ction 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the [tim]e of Closing (i) a resolution of its Board of Directors authorizing the [sal]e and delivery of the deed, and (ii) a certificate by the Secretary or [As]sistant Secretary of the corporation certifying such resolution and [set]ting forth facts showing that the transfer is in conformity with the [req]uirements of Section 909 of the Business Corporation Law. The deed [in] such case shall contain a recital sufficient to establish compliance with [tha]t Section.

Closing Date and Place. Closing shall take place at the office of: [I]NZA LAW FIRM, PLLC., 1110 SOUTH AVENUE, SUITE 303, [ST]ATEN ISLAND, NEW YORK at 10:00 o'clock on or about [M]arch 1, 2024 or, upon reasonable notice (by telephone or otherwise) [to] Purchaser, at the office of Purchaser's lending institution in [S]TATEN ISLAND, NY. Subject to closing of Buyers [resi]dence.

Conditions to Closing. This contract and Purchaser's obligation to [pu]rchase the Premises are also subject to and conditioned upon the [fu]lfillment of the following conditions precedent:
 (a) The accuracy, as of the date of Closing, of the representations [an]d warranties of Seller made in this contract.
 (b) The delivery by Seller to Purchaser of a valid and subsisting [ce]rtificate of Occupancy or other required certificate of compliance, or [ev]idence that none was required, covering the building(s) and all of the [ot]her improvements located on the property authorizing their use as a [on]e (1) family dwelling at the date of Closing.
 (c) The delivery by Seller to Purchaser of a certificate stating that [Se]ller is not a foreign person, which certificate shall be in the form then [re]quired by FIRPTA or a withholding certificate from the I.R.S. If Seller [fa]ils to deliver the aforesaid certificate or if Purchaser is not entitled [un]der FIRPTA to rely on such certificate, Purchaser shall deduct and [w]ithhold from the purchase price a sum equal to 10% thereof (or any [le]sser amount permitted by law) and shall at Closing remit the withheld [am]ount with the required forms to the Internal Revenue Service.
 (d) The delivery of the Premises and all building(s) and [im]provements comprising a part thereof in broom clean condition, vacant [an]d free of leases or tenancies, together with keys to the Premises.
 (e) All plumbing (including water supply and septic systems, if [an]y), heating and air conditioning, if any, electrical and mechanical [sy]stems, equipment and machinery in the building(s) located on the [pr]operty and all appliances which are included in this sale being in [w]orking order as of the date of Closing.
 (f) If the Premises are a one or two family house, delivery by the [pa]rties at Closing of affidavits in compliance with state and local law [re]quirements to the effect that there is installed in the Premises a smoke [de]tecting alarm device or devices.
 (g) The delivery by the parties of any other affidavits required as a [co]ndition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
 (i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (IF OIL) (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
 (b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
 (c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
 (d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
 (e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. **The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
 (b)(i) If at the date of Closing Seller is unable to transfer title to

rchaser in accordance with this contract, or Purchaser has other valid unds for refusing to close, whether by reason of liens, encumbrances other objections to title or otherwise (herein collectively called efects"), other than those subject to which Purchaser is obligated to ept title hereunder or which Purchaser may have waived and other n those which Seller has herein expressly agreed to remove, remedy discharge and if Purchaser shall be unwilling to waive the same and to se title without abatement of the purchase price, then, except as reinafter set forth, Seller shall have the right, at Seller's sole election, her to take such action as Seller may deem advisable to remove, nedy, discharge or comply with such Defects or to cancel this contract; ) if Seller elects to take action to remove, remedy or comply with such fects. Seller shall be entitled from time to time, upon Notice to rchaser, to adjourn the date for Closing hereunder for a period or riods not exceeding 60 days in the aggregate (but not extending yond the date upon which Purchaser's mortgage commitment, if any, all expire), and the date for Closing shall be adjourned to a date ecified by Seller not beyond such period. If for any reason whatsoever, ller shall not have succeeded in removing, remedying or complying th such Defects at the expiration of such adjournment(s), and if rchaser shall still be unwilling to waive the same and to close title thout abatement of the purchase price, then either party may cancel is contract by Notice to the other given within 10 days after such journed date; (iii) notwithstanding the foregoing, the existing mortgage nless this sale is subject to the same) and any matter created by Seller er the date hereof shall be released, discharged or otherwise cured by ller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a sult of Purchaser's default, this contract shall terminate and come to an d, and neither party shall have any further rights, obligations or bilities against or to the other hereunder or otherwise, except that: (i) ller shall promptly refund or cause the Escrowee to refund the ownpayment to Purchaser and, unless cancelled as a result of rchaser's default or pursuant to paragraph 8, to reimburse Purchaser r the net cost of examination of title, including any appropriate ditional charges related thereto, and the net cost, if actually paid or curred by Purchaser, for updating the existing survey of the Premises of a new survey, and (ii) the obligations under paragraph 27 shall rvive the termination of this contract.

!. **Affidavit as to Judgments, Bankruptcies, etc.** If a title amination discloses judgments, bankruptcies or other returns against rsons having names the same as or similar to that of Seller, Seller shall liver an affidavit at Closing showing that they are not against Seller.

). **Defaults and Remedies.** (a) If Purchaser defaults hereunder, ller's sole remedy shall be to receive and retain the Downpayment as quidated damages, it being agreed that Seller's damages in case of rchaser's default might be impossible to ascertain and that the ownpayment constitutes a fair and reasonable amount of damages der the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such medies as Purchaser shall be entitled to at law or in equity, including, it not limited to, specific performance.

l. **Purchaser's Lien.** All money paid on account of this contract, and e reasonable expenses of examination of title to the Premises and of iy survey and survey inspection charges, are hereby made liens on the remises, but such liens shall not continue after default by Purchaser der this contract.

5. **Notices.** Any notice or other communication ("Notice") shall be in riting and either (a) sent by either of the parties hereto or by their spective attorneys who are hereby authorized to do so on their behalf or y the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt cknowledged, to the respective addresses given in this contract for the arty and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than:

NEST SEEKERS INTERNATIONAL

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

**29. Rider.** Continued on Rider annexed hereto.

n Witness Whereof, this contract has been duly executed by the parties hereto.


*Vito Gelardi*  
dotloop verified  
02/06/24 11:57 AM EST  
DUME-GXZV-TYOB-UFV2

VITO GELARDI  
**SELLER**

*Safa Gelardi*  
dotloop verified  
02/03/24 10:01 AM CST  
HBA8-N08S-XIOA-FAAQ

SAFA GELARDI  
SELLER

**Attorney for Seller:**  
Matthew Lenza, Esq.  
Lenza Law Firm, PLLC  
Address: 1110 South Avenue, Suite 303  
Staten Island, New York 10314  
Tel.:(347)273-1280  Fax:(646) 736-0460  
matthew@lenzalawfirm.com  
office@lenzalawfirm.com

ANTHONY MASULLO  
**PURCHASER**


**Attorney for Purchaser:**  
Kerry ~~Katshorhis~~ KATSORHIS, Esq.  
Address: 77-53 Main Street  
Kew Gardens Hills, NY 11367  
Tel.: (718) 591-6900  
gklawny@gmail.com

# NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
## for
## RESIDENTIAL CONTRACT OF SALE

WARNING: the mortgage commitment contingency clause for the Residential Contract or Sale is a bar association form that attempts to provide a ;chanism that makes the rights and obligations of the parties clear in sales or residences in ordinary circumstances. It should be reviewed carefully by ller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated )difications should be made whenever necessary.

Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment ter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state ;/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should )mptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of closing in the contract and request it the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with deadlines and pursue the application in od faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the mmitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or :ondition requiring sale of the current home, those terms and conditions should be specified in a rider.

This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm th the lender that this is the case before applying for the commitment.

If, as has been common, the commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material verse change in Purchaser's financial condition, such a commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of lfilling those commitment conditions, including forfeiture or the downpayment if Purchaser defaults on its obligation to close. Under New York case law, lefaulting purchaser may not recover any part of the downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that. :k, the clause must be modified accordingly.

Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

This clause allows Seller to cancel if a commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of e commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may efer to cancel rather than to wait and settle for forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not iive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain e Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

Purchaser may want to add to paragraph 22 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of irchaser, which should be refunded by Seller if Seller willfully defaults under the contract or sale [alternative: if Seller is unable to transfer title under the ntract of sale].

## Rider to Contract of Sale

Seller(s):      VITO GELARDI and Safa Gelardi

Purchaser(s):   ANTHONY MASULLO

Premises:       148 CLAY PIT ROAD, STATEN ISLAND, NY 10309

Date:           ~~JANUARY~~ February 1, 2024

---

Introduction: If and to the extent that any of the provisions of this rider conflict or are otherwise inconsistent with any of the printed provisions of the Contract, whether or not such inconsistency is expressly noted in this rider, the provisions of this rider shall prevail. In all other respects, this rider supplements the Contract. Any headings are for informational purposes only.

R.1.: Supplementing ¶ 2 of the main Contract, any televisions affixed to the Premises are excluded from this sale. Seller makes no representations as to the condition of the personal property included in this transaction, except that it will be delivered at closing in "as is" condition, subject to reasonable wear and tear between the date hereof and Closing. No consideration is being paid for the personal property. However, if any federal, state or local government body deems any part of the purchase price to have been paid for any personal property transferred hereunder, Purchaser agrees to pay to Seller at Closing, or at any subsequent time such tax is imposed, upon demand, the amount of any sales tax payable in connection therewith. This provision shall survive Closing. The personal property shall not be sold to Purchaser if Closing does not occur.

R.2.: Supplementing ¶ 8 of the main Contract, Purchaser agrees, at their own cost and expense, to maintain their Commitment to the date of Closing.

R.3.: Supplementing ¶ 9 of the main Contract, the Premises are sold and shall be conveyed subject to:
f) Laws and governmental regulations that affect the use and/or maintenance of the Premises, provided that they are not violated by the buildings and improvements erected on the Premises.
g) Any state of facts which an accurate survey would show provided such facts do not render the title unmarketable.
h) Covenants, restrictions and easements, if any, contained in former instruments of record affecting the Premises so far as the same may now be in force and effect, provided same are not violated by existing structures or their present use.
i) Encroachments of retaining walls, fences, and fire escapes, if any, upon any street or highway, and/or record property line or lines; and any variation between record property line or lines, and fences and/or walls and the record tax map.
j) Any proposed, adopted or actual widening of any street, abutting or adjacent to the above-described Premises provided, however, that the building or buildings thereon are not affected thereby.
k) Party walls and sewer agreements, if any.
l) Rights, if any, acquired by any utility company and/or municipality to maintain and operate lines, cables, poles, boxes and/or transformers in, over, under and/or upon the Premises.
m) Standard exceptions of the Title Insurance Company.

R.4.: Supplementing ¶ 10.a. of the main Contract, if the cost of such compliance exceeds $1,000.00, Seller may cancel this Contract and upon returning to the Purchaser herein the Downpayment, all further liability on the part of

he Seller shall cease and this Contract shall be canceled and be of no further force and effect and the Seller shall not e liable for any other costs or damages. *a Buyer may accept same proceed with closing* 

R.5.: Supplementing ¶ 10.b. of the main Contract, if such money obligation exceeds $1,000.00, Seller may cancel his Contract and upon returning to the Purchaser herein the Downpayment, all further liability on the part of the Seller shall cease and this Contract shall be canceled and be of no further force and effect and the Seller shall not be liable for any other costs or damages.

R.6. ¶ 11(a)(iv) of the main Contract is hereby stricken. ~~Seller has made no representations whatsoever regarding the real estate taxes for the Premises.~~

R.7.: Seller shall not be required to bring any action or proceeding or otherwise incur any expense in excess of $1,000.00 to clear violations against or affecting the Premises. In the event any such cost exceeds $1,000.00, Seller may cancel this Contract and upon returning to the Purchaser herein the Downpayment, all further liability on the part of the Seller shall cease and this Contract shall be canceled and be of no further force and effect and the Seller shall not be liable for any other costs or damages.

R.8.: Seller shall not be liable or bound, in any way, by any verbal or written statements, representations, or information pertaining to the above Premises furnished by any real estate broker, agent, employee, servant or other person unless the same are specifically set forth herein.

R.9.: The acceptance of a deed by Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this agreement, except those, if any, which are herein specifically stated to survive delivery of the deed.

R.10.: ¶16(b) of the main Contract is hereby stricken in its entirety, and replaced with the following: Seller represents that the Premises is improved by a **ONE family dwelling**. Seller agrees to deliver a Certificate of Occupancy for same, or in the alternative, an Affidavit to the effect that to the best of his knowledge and belief, the dwelling at the Premises was constructed prior to 1938. Purchaser acknowledges and accepts all information set forth on the Certificate(s) of Occupancy attached to this Contract, if any. Seller makes no representation as to the legality of any structural changes, additions, decks, screen rooms, sun rooms or alterations made to the Premises, except as set forth in this Paragraph R.10., and shall have no responsibility to have any of these items corrected or legalized, unless required by Purchaser's lender. In the event Purchaser's lending institution does raise such an issue, Seller's liability shall not exceed $1,000.00. If the cost of correcting any such condition, remedying any such issue, or restoring the Premises to the condition required by this Contract shall exceed $1,000.00, Seller may elect to cancel the Contract. If this Contract is cancelled pursuant to this Paragraph, Seller's sole liability shall be to return the down payment paid hereunder, and all liability between the parties hereunder shall cease, except as set forth in ¶ 27 of the main Contract.

R.11.: Seller and Purchaser hereby authorize their respective attorneys to execute on their behalf any and all written modifications and amendments to this Contract. *a fully executed copy*

R.12.: Purchaser is hereby given the right to have the Premises inspected for termite or other wood boring insect infestation at his sole cost and expense until 9:00 P.M. on the tenth calendar day after the date of this contract. In the event that any such condition is found to exist, then the Seller shall have the option of either eliminating such condition or declaring this Contract null and void and returning all monies paid hereunder. In the further event that the Seller's attorney is not notified in writing within fifteen (15) days from the date hereof as to the existence of any such condition, then it shall be deemed that no such condition exists.

R.13.: Seller represents and agrees that he will deliver possession of the subject Premises to Purchaser vacant and broom clean within five (5) days after the Closing of title hereunder. However, the attorney for Seller shall hold, in escrow, the sum of $1,500.00 as security for the faithful performance of the above agreement. In the event that Seller does not deliver vacant possession as herein set forth, then and in that event, the attorney for Seller is authorized to

ay out of the said escrow deposit the sum of $150.00 a day to Purchaser, as liquidated damages, for each and every additional day that Seller remains in possession beyond the agreed period. The liability of Seller's attorney shall be limited to the amount of escrow set forth herein. Absent notice from the Purchaser's Attorney to the contrary, all escrow funds shall be released to Seller three (3) days after possession of the subject Premises is tendered to Purchaser. All adjustments, including Purchaser's per diem mortgage interest from the date of closing, shall be made through the date of possession.

14.: This Contract may not be recorded by Purchaser without the prior written consent of Seller. Any such recording shall constitute a willful default hereunder. Should Purchaser record the Contract, Purchaser shall take all steps necessary to void the recording of the Contract at his sole cost and expense.

15.: If applicable, Purchaser is aware that he is entitled to a Property Condition Disclosure Statement pursuant to Article 14 of the Real Property Law (the "Act") and hereby consents to waive this requirement. In lieu of Seller delivering a Property Condition Disclosure Statement, the parties agree that Purchaser shall receive a $500.00 credit at Closing and the parties shall have no further rights as against each other under the Act. This provision shall survive Closing.

16.: Neither Seller nor any of its agents has made any representation concerning the presence or absence of toxic or hazardous substances. Purchaser has been given an opportunity to inspect and/or have the Premises inspected by others to determine the presence of lead paint, mold, radon gas, asbestos, and other toxic and/or hazardous substances in, on, over, under and/or about the Premises, as are appropriate to determine the existence of any environmental condition at the Premises. After the closing of title hereunder, Purchaser assumes all risk of loss, damage or injury which may arise as a result of, or may be in any way connected with, the presence of underground storage tanks, radon gas, mold, asbestos, or any other toxic or hazardous substance in, on, over, under and/or about the Premises. Purchaser fully and forever releases and discharges Seller, its officers, employees, agents, successors and assigns from any and all claims, liabilities, expenses and damages, whether now or hereafter known, which Purchaser has or may hereafter have against Seller, its officers, employees, and agents, with respect to toxic and/or hazardous substances, or any other environmental issues affecting the Premises. This provision shall survive Closing.

17.: ~~Purchaser hereby acknowledges and agrees that by purchasing the Premises he is obligated to become a dues paying member of the _____ Home Owners Association (the "HOA") for so long as he is the owner of the Premises and will be subject to the HOA's governing documents, including, but not limited to, the By-laws and Rules and Regulations. Adjustment for HOA dues will be made at closing, in accordance with Contract Article 18. Current monthly dues for the HOA are in the amount of $_____. Seller makes no representations that the dues will remain the same through the date of closing, and Purchaser shall have no right to cancel this Contract in the event that such dues are increased prior to closing.~~

18.: a. Purchaser and Seller hereby represent and warrant to each other that this contract is not a "Covered Contract" as defined in the Home Equity Theft Prevention Act and, in particular, Section 265 of the Real Property Law of the State of New York. In such connection, Seller warrants and represents to Purchaser as follows:
  i. Seller is not in default of any mortgage affecting the Premises by reason of there being payments due and unpaid on any mortgage for two (2) months or more.
  ii. There are no actions pending against the Premises to foreclose a mortgage.
  iii. The Premises is not shown on an active property tax lien sale list and all real estate taxes are paid through the next lien date.

  b. Purchaser warrants and represents to Seller as follows:
  i. Purchaser is a bona fide purchaser and is acquiring the Premises for Purchaser's personal use and occupancy and not for investment purposes.
  ii. Purchaser has not provided a mortgage or other financing or offered other services to Seller in connection with any delinquent mortgage obligation or in connection with a mortgage which is in foreclosure.

iii. Purchaser will not be reselling the Premises to Seller or to a third party or entity where Purchaser will be assisting in providing financing to any such third party or entity.

c. Seller and Purchaser each warrant to the other that to the best of their knowledge and belief, the PREMISES has not been the subject of a mortgage default or foreclosure proceeding which gave to any present or former seller of the Premises, any rights under the Home Equity Theft Prevention Act including, but not limited to, a right of rescission as permitted under said Act.

R.19.: Purchaser agrees that at least thirty days prior to the date of Closing of title herein, he will furnish to Seller's attorney, notice in writing of any and all objections that he claims to title.

R.20.: Purchaser shall have the right to inspect the Premises within twenty-four (24) hours prior to Closing.

R.21.: In the event that this transaction does not close in Richmond County, City and State of New York, or the county in which the property is located if not located in Richmond County, then Purchaser shall reimburse to Sellers their attorney's travel fee as follows:
  i. $400.00 if closing takes place in Kings County; or
  ii. $500.00 if closing takes place anywhere other than Richmond County or Kings County.

R.22.: It is the intention of the parties that this Contract shall be considered to have been drafted mutually by Seller and Purchaser, as each of the parties has cooperated in the drafting and preparation of this Contract. Accordingly, this Contract shall not be construed against any of the parties on the basis that such one of the parties was the draftsperson.

R.23.: Pursuant to New York State Executive Law § 378 (5-a) and (5-b), there must be installed in the Premises an operable smoke detecting alarm and an operable carbon monoxide detector. Seller shall execute an Affidavit to this effect at Closing.

R.24.: Except as otherwise expressly set forth in this Contract, none of Seller's covenants, representations, warranties or other obligations contained in this Contract shall survive Closing.

R.25.: Purchaser hereby waives the right to file a lis pendens with respect to any action that arises in connection with this transaction.

R.26.: In the event that, through no fault, action or inaction of the Seller(s), a scheduled closing is adjourned with less than one full business day's prior written or emailed notice to the Seller(s)' attorney, Purchaser(s) shall credit Seller(s) at closing the amount of $400.00 per such adjournment in coverage of Seller(s) additional attorney's fees related to adjournment of closing.

R.27.: In as much as NYSBA Opinion 817 prohibits the modification of an existing contract to include a "seller's concession" or "closing cost credit," any such modification must be done by a cancellation of an existing contract and execution of a new contract. Accordingly, any request for a revision of the financial terms of this contract shall only be accommodated on the condition that:
  a. The Purchaser requests same in writing;
  b. The Purchaser shall pay to the Seller's attorney the sum of
     $500 for the additional legal fees incurred by the Seller
     For termination of a contract and draft and execution of a new contract;
  c. All requests for a contract modification shall be considered by the
     Seller without Seller being under any obligation to agree to same.

R. 28.: The Purchaser(s) herein acknowledge(s) that he/she/they has/have the right to a summary of the heating and/or commonly known as the Truth in Heating Law. The Purchaser(s) herein waive(s) his/her/their rights to copies of said bills and acknowledges that he/she/they have not requested them in connection with this transaction.

¶. 29.: This Contract, and any Riders or Amendments thereto, may be signed in counterparts by the parties hereto. Signatures sent by facsimile and/or pdf shall have the same force and effect as "original" signatures of the parties hereto. In the event that any party requires a copy of the Contract and any Riders or Amendments thereto containing original signatures, the other party shall cooperate in so executing and delivering any such document(s).

IN WITNESS WHEREOF, this Rider has been duly executed by the parties hereto the day and year first above written.

*Ito Gelardi*
dotloop verified
02/06/24 11:57 AM EST
QYKR-T0PQ-HTTQ-KYD4

ITO GELARDI
SELLER

ANTHONY MASULLO
PURCHASER

*Safa Gelardi*
dotloop verified
02/03/24 10:01 AM CST
J8TL-ROHT-JKQ0-LOBQ

SAFA GELARDI
SELLER

## Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii)
☐ below): Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. (b) Records and reports available to the seller (check (i) or (ii) below):
☐ Seller has provided the purchaser with all available records and reports pertaining to leadbased paint and/or lead-based paint hazards in the housing (list documents below).

_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)
(c) _____ Purchaser has received copies of all information listed above.
(d) _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.
(e) Purchaser has (check (i) or (ii) below):

☐ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

☒ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

X *Vito Gelardi*    dotloop verified
                    02/06/24 11:57 AM EST
                    BSIC-OZWL-DIDR-4WMA

_____   _____
Date                               Date

X *Safa Gelardi*    dotloop verified
                    02/03/24 10:01 AM CST
                    AG1S-9MJK-G1DL-RPER

_____   _____
Date                               Date

_____   _____
Date                               Date