UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IME WATCHDOG, INC.,

                          Plaintiff,

              - against -

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, GREGORY ELEFTERAKIS,
ROMAN POLLAK, ANTHONY BRIDDA,
IME COMPANIONS, LLC, CLIENT EXAM
SERVICES, LLC, and IME MANAGEMENT
& CONSULTING, LLC,

                        Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-1032 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

      Presently before this Court are Plaintiff IME Watchdog, Inc.'s motion for attachment pursuant to New York Civil Practice Law and Rules ("CPLR") § 6201 and motion for an temporary restraining order ("TRO") requesting the same relief. (*See* Dkts. 270, 278, 279.) Plaintiff requests an order preventing Defendants Safa Abdulrahim Gelardi and Vito Gelardi (collectively, the "Individual Defendants") from selling their former Staten Island residence (the "Staten Island Property" or "Property") or, in the alternative, requiring the Individual Defendants to place the proceeds of the sale in escrow until the Court resolves Plaintiff's pending application for attorneys' fees and costs related to the Court's October 2023 contempt order against Defendants. (*See* Dkt. 270 at 1; *see also* Dkt. 278 at 1.) For the reasons stated below, the Court grants in part and denies in part Plaintiff's motion for attachment under CPLR § 6201, and denies Plaintiff's motion for a TRO as moot.

**BACKGROUND**[1]

Plaintiff IME Watchdog, Inc. ("Watchdog" or "Plaintiff") initiated this action on February 25, 2022, against Safa Abdulrahim Gelardi ("Safa") and Vito Gelardi ("Vito"), and IME Companions, LLC ("Companions") (collectively, "Defendants"), alleging misappropriation of Watchdog's confidential information and trade secrets, and seeking monetary and injunctive relief.[2] (Compl., Dkt. 1.) On the same day, Plaintiff also filed a motion for a preliminary injunction, which the Court ultimately granted in part and denied in part on April 5, 2022 ("April 2022 Injunction"). (*See* Dkts. 6–14, 66; 3/29/2022 Docket Order; 4/5/2022 Docket Order.) On June 8, 2022, the Court issued an amended preliminary injunction, enjoining both parties from making misleading or defamatory statements about one another ("Amended Injunction"). (Dkt. 80; *see also* 6/8/2022 Docket Order.)

On March 10, 2023, Plaintiff filed (1) a second motion for a TRO, (2) a second motion for a preliminary injunction, (3) a second motion for a permanent injunction, (4) an emergency motion for contempt of the April 2022 Injunction and Amended Injunction, and (5) an accompanying motion for a hearing to address the filed motions. (Dkts. 151–55.) The Court ordered the TRO on the same day ("March 2023 TRO") and further ordered the parties to appear for a hearing regarding the motions for a preliminary injunction and contempt on March 27, 2023. (Dkt. 156; *see also*

---

[1] The facts and procedural background of this case have been set forth in detail in prior opinions in this litigation, most recently in the Court's October 20, 2023 Memorandum and Order on Plaintiff's motions for a second preliminary injunction and to hold Defendants in contempt for violating the Court's previous orders. (*See generally* Dkt. 254.) The Court thus assumes the parties' familiarity with the factual and procedural background in this matter and only recounts those facts necessary to resolve the instant motions.

[2] Plaintiff filed an Amended Complaint on October 13, 2022, adding Gregory Elefterakis, Roman Pollak, Anthony Bridda, and Nicholas Liakis as additional Defendants. (Dkt. 114.)

Dkt. 167.) At the March 27, 2023 preliminary injunction hearing, the parties presented and examined witnesses and presented documentary evidence. (*See* 3/27/2023 Min. Entry.)

On October 20, 2023, "the Court expand[ed] the scope of the Amended Injunction against Defendants and . . . [found] Defendants to be in civil contempt for violating both the Amended Injunction and the March 2023 TRO." [3] (Dkt. 254 at 3.) In connection with its contempt finding, the Court ordered Plaintiff to "file a brief detailing the amount of compensatory damages it seeks and submit evidence supporting such damages." (*Id.* at 32 (citing Local Rule 83.6(a)).) On December 19, 2023, Plaintiff submitted the requested briefing and documentation in support of its request for $186,038.67 in attorneys' fees and costs. (*See* Dkts. 261–65.) Safa responded on January 18, 2024, asking the Court to reconsider its contempt finding and disputing the amount requested by Plaintiff. (*See* Dkt. 267.)[4]

On January 25, 2024, Plaintiff filed a letter motion (the "Attachment Motion") informing the Court that the Individual Defendants are planning to sell their property located at 148 Clay Pit Road, Staten Island, NY 10309 (i.e., the Staten Island Property), where the Individual Defendants resided before moving to Texas. (Dkt. 270 at 3; *see also* Dkt. 257 (explaining that the Individual Defendants "have relocated to Texas, where their children are enrolled in school").) Plaintiff requests an attachment on the Staten Island Property and/or an order requiring the Individual

---

[3] To be clear, the Court's finding of contempt was as to all Defendants, i.e., the Individual Defendants and Companions. (*See, e.g.*, Dkt. 254 at 3 (finding "Defendants to be in civil contempt for violating both the Amended Injunction and the March 2023 TRO"); *id.* at 12–13, 29–32 (discussing Defendants' circumvention of the March 2023 TRO).) For procedural reasons, the Court reserved on issuing the formal contempt order pending the resolution of the amount of the contempt fine. (*Id.* at 32–34.)

[4] The Court notes that Safa did not file an actual motion for reconsideration under Local Rule 6.3, which must be filed within 14 days of the decision that the movant is seeking to have reconsidered, but asked for reconsideration in her response to Plaintiff's request for attorneys' fees and costs.

Defendants to place the proceeds from the sale of the Property in escrow until the Court renders a final decision on contempt and damages. (*See* Dkt. 270.) Defendants filed a letter in opposition on February 7, 2024, which also informed the Court that the Attachment Motion was missing the statutorily required affidavit setting forth the evidence that supports the Attachment Motion. (*See* Dkt. 274 at 2 (citing N.Y. C.P.L.R. § 6212(a)).)

On February 21, 2024, the Court scheduled an evidentiary hearing on the Attachment Motion for March 13, 2024. (*See* 2/21/2024 Docket Order.) The Court directed Plaintiff to file the statutorily required affidavit prior to the hearing. (*Id.*) In light of Safa's request to reconsider the Court's contempt finding against Defendants and her objection to Plaintiff's request for fees and costs, the Court directed Safa to file a list identifying: "(1) all real property in which she currently has an ownership interest; (2) all real property in which she previously had an ownership interest that was sold or otherwise disposed of from February 1, 2022 to Present." (*Id.*)

Two days later, on February 23, 2024, Plaintiff filed a motion for a TRO in advance of the hearing (the "TRO Motion") in light of the fact that the Staten Island Property was listed as being under contract as of February 22, 2024. (*See* Dkt. 278 at 1.) Plaintiff also filed the statutorily required affidavit in support of its Attachment Motion. (*See* Dkt. 279.) The Court directed Safa to respond to the TRO Motion by February 27, 2024. (2/23/2024 Docket Order.) The Court further directed Safa to include the name of the prospective buyer of the Staten Island Property in her response, and informed the parties that it would consider moving up the hearing date. (*Id.*) Safa filed her opposition to the TRO Motion on February 27, 2024. (*See* Dkts. 280–82.) On February 28, 2024, Plaintiff filed a reply, indicating that the Individual Defendants were scheduled to close on the sale of the Staten Island Property on March 1, 2024. (Dkt. 283 at 1.)

4

## DISCUSSION

### I. Attachment Under CPLR § 6201

"Federal Rule of Civil Procedure 64 permits federal litigants to seek an order of attachment in the manner provided by the law of the state in which the district court sits." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009). New York law authorizes prejudgment attachment pursuant to CPLR §§ 6201(3) and 6212(a). *See Prabir v. Bukhara Indian Cuisine, Inc.*, No. 17-CV-3704 (AJN) (HBP), 2018 WL 2709231, at *2 (S.D.N.Y. May 17, 2018) (quoting N.Y. C.P.L.R. §§ 6212(a), 6201(3)) (collecting cases), *report & recommendation adopted*, 2018 WL 2694435 (S.D.N.Y. June 5, 2018). Attachment is "a drastic remedy," and is "strictly construed in favor of those against whom it may be employed." *Ne. United Corp. v. Lewis*, 26 N.Y.S.3d 810, 812 (N.Y. App. Div. 2016); *see also Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1073 (S.D.N.Y. 1994) ("Attachment is a harsh remedy, and should not be lightly granted by the court."). "A plaintiff seeking an order of attachment must show 'that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in [CPLR §] 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.'" *Cap. Ventures Int'l v. Republic of Arg.*, 443 F.3d 214 (2d Cir. 2006) (quoting N.Y. C.P.L.R. § 6212(a)).

Plaintiff easily satisfies the first and fourth requirements. With regard to the first requirement, which requires Plaintiff to state a cause of action for money judgment, Plaintiff's underlying suit against Defendants seeks a combination of legal and equitable relief (*see generally* Dkt. 203), and its contempt motion against Defendants seeks compensatory damages (*see generally* Dkt. 261). With regard to the fourth requirement, Defendants have not asserted any counterclaims against Plaintiff, and as such, it is undisputed that the amount demanded from

5

Defendants exceeds all counterclaims asserted against Plaintiff. (*See* Dkt. 279 ¶ 22 (citing Dkt. 87).) The Court therefore turns to whether the other two requirements for attachment are met.

As to the second requirement, the Court finds that Plaintiff has demonstrated a probability of success on the merits of its contempt motion and its underlying trade secret claims. "Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) (citations omitted); *see also DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319 (same). "In assessing whether a plaintiff can show a probability of success on the merits, the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 293 (E.D.N.Y. 2010) (citation and internal quotation marks omitted); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (same). Here, the Court has already found that Plaintiff is likely to succeed on the merits of its underlying trade secret claims. (*E.g.*, Dkt. 254 at 15–17.) Defendants provide no basis for reevaluating this finding, nor does the Court see any reason to do so. And although Safa is seeking reconsideration of the Court's finding of civil contempt against Defendants, the Court does not anticipate vacating or altering that finding,[5] and thus does not find that Safa's pending

---

[5] In their response to Plaintiff's supplemental briefing on compensatory damages, Safa asks the Court to reconsider its preliminary finding of contempt for two reasons. (*See* Dkt. 267.) First, Defendants argue that Safa did not violate the Preliminary Injunction because her attempt to contact Carlos Roa failed. (*Id.* at 2–3.) This argument is borderline frivolous, which is underscored by Safa's failure to provide any legal support for drawing such a distinction. (*See generally* Dkt. 267.) Second, Safa argues that the Court's preliminary finding that she disobeyed the TRO violated her due process rights because Plaintiff's order to show cause for contempt accused her of only violating the Amended Preliminary Injunction. (*Id.* at 3 (citing Dkt. 156).) Even assuming, *arguendo*, that this were true, this argument only applies to the Court's contempt

reconsideration request diminishes the likelihood of success with respect to Plaintiff's contempt motion. The Court therefore finds that Plaintiff has demonstrated a likelihood of success on the merits of its contempt motion for the same reasons that it preliminarily found Defendants to be in civil contempt for violating both the Amended Injunction and the March 2023 TRO. (Dkt. 254 at 24–32.)

Finally, the Court finds that Plaintiff has demonstrated that grounds for attachment exist. Plaintiff argues that Defendants, "with intent to defraud [their] creditors or frustrate the enforcement of a judgment that might be rendered in [P]laintiff's favor, [have] assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." N.Y. C.P.L.R. § 6201(3). Under CPLR § 6201(3), "it is incumbent upon [the plaintiff] to demonstrate that the defendant is acting with intent to defraud." *Colon v. Cole Bros. Circus, Inc.*, No. 04-CV-3606, 2007 WL 3014706, at *2 (E.D.N.Y. Oct. 12, 2007) (quoting *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331–32 (2d Cir. 1983)). It is "well established in New York" that "the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment." *Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 287, 293–94 (E.D.N.Y. 2014) (quoting *Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995)). Courts in the Second Circuit have identified the following non-exhaustive list of "badges of fraud" that may be considered:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a

---

finding as to the TRO and has no bearing on the success of Plaintiff's contempt motion as to the Preliminary Injunction, which, as discussed, the Court has already credited. (Dkt. 254 at 24–32.) Although the Court will address both arguments further when it resolves Safa's reconsideration request and finalizes the Court's contempt order, neither argument persuades the Court to reevaluate its finding that Plaintiff is likely to succeed on the merits of its contempt motion.

7

pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *7 (E.D.N.Y. Dec. 13, 2016) (quoting *CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-CV-5345, 2016 WL 5945912, at *10 (S.D.N.Y. June 24, 2016)).

Here, the Court infers the Individual Defendants' fraudulent intent from "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors" and "the general chronology of the events and transactions under inquiry." *Id.* Since the start of this action, the Individual Defendants have sold at least three other properties, including: (1) a home in East Stroudberg, PA for $569,400 on April 29, 2022; (2) a home in Philadelphia, PA for $229,000 on December 5, 2023; and (3) a home in Champions Gate, FL for $760,000 on December 15, 2023. (Dkt. 279 ¶¶ 10–16.) In addition to the Staten Island Property, the Individual Defendants also appear to be in the process of selling a house in Lake Harmony, PA. (*Id.* ¶ 17.) Notably, the Individual Defendants sold the Florida property for well below the initial listing price (*id.* ¶¶ 12–15), and appear poised to do the same with the Staten Island Property (Dkt. 283). Courts frequently find fraudulent intent where, as here, a defendant sells numerous pieces of property shortly after the commencement of litigation or while a plaintiff's motion for a preliminary injunction is pending. *E.g.*, *Prabir*, 2018 WL 2709231, at *2–6; *Coley*, 2016 WL 7217641, at *8–10; *JSC Foreign Econ. Ass'n Technostroyexport*, 306 F. Supp. 2d at 487–88.

The Individual Defendants' argument that Plaintiff has failed to "demonstrate some identifiable necessity for the attachment, such as the 'identifiable risk' that [D]efendants 'will not be able to satisfy the judgment' which [P]laintiff might obtain against Safa on its contempt

application" is without merit. (*See* Dkt. 274 at 4 (quoting *VisionChina Media Inc. v. Shareholder Representative Servs., LLC*, 967 N.Y.S.2d 338, 345–46 (N.Y. App. Div. 2013)).) To the contrary, the Individual Defendants' conduct throughout the course of this litigation has demonstrated that the risk of non-payment is real. Notably, Defendants have yet to pay *any* of their outstanding bill of $32,716.46 to Berkeley Research Group, LLC ("BRG"), the neutral forensic examiner appointed by the Court, despite being ordered by the Court to do so *multiple times*.[6] (*See* Dkt. 271; 1/29/2024 Docket Order). And, as we know from the contempt proceedings, this is just the latest example of the Individual Defendants' failure to comply with the Court's orders.

Likewise, despite the Individual Defendants' assertions, this Court's prior finding that Plaintiff failed to demonstrate intent to defraud in the context of a previous attachment request does not bar Plaintiff's latest request. (*See* Dkt. 274 at 1.) Specifically, the Individual Defendants argue that the law of the case applies, and that Plaintiff has failed to submit any new evidence supporting its fraud allegations. (*Id.* at 2.) However, Plaintiff *has* submitted new evidence supporting its fraud allegations, including but not limited to the evidence showing that the Individual Defendants: (1) sold two properties in December 2023, at least one of which was sold for well below the initial listing price; (2) are in contract to sell the Staten Island Property for well below the initial listing price; (3) are in the process of selling *another* piece of property (the Lake

---

[6] The Court first ordered the parties to resolve their share of the outstanding bill on September 11, 2023 (*see* 9/11/2023 Docket Order), which Defendants failed to do (*see* Dkt. 271). On January 29, 2024, the Court ordered Defendants to resolve their share of the outstanding bill by February 9, 2024, and confirm such resolution by that date or risk sanctions. (1/29/2024 Docket Order.) To date, Defendants have yet to file confirmation that they have paid BRG any of the past due amount.

9

Harmony house); and (4) have defied several of this Court's orders, including the Court's orders to pay their outstanding bill of $32,716.46 to BRG. *See supra* at 8–9.[7]

Based on Plaintiff's submissions and the evidence in the record, the Court finds that Plaintiff has demonstrated a probability of success on the merits of its claims. Moreover, the Court finds that attachment is warranted in light of the evidence demonstrating Individual Defendants' fraudulent intent in selling their property and the uncertainty of Plaintiff's ability to enforce a potential judgment in its favor.[8]

## II. Scope of Relief

As noted, Plaintiff requests an order preventing the Individual Defendants from selling the Staten Island Property or, alternatively, requiring the Individual Defendants to place the proceeds of the sale in escrow until the Court resolves Plaintiff's pending fee application. (*See* Dkt. 270 at

---

[7] Furthermore, as the Court has noted on the record several times, the Court does not find the Individual Defendants' factual representations to be credible. (*See, e.g.*, Dkt. 254 at 5 n.4 ("The Court also finds that Safa Gelardi has repeatedly perjured herself throughout this case and is thus wholly uncredible as a witness.").) Indeed, at the outset of this case, the Individual Defendants claimed that they did not steal confidential information from Plaintiff, which was demonstrably false. (*See, e.g., id.* at 8, 8 n.8.) Thereafter, they claimed that they did not initiate contact with Carlos Roa, which was again demonstrably false. (*See, e.g., id.* at 11–12, 11 n.10.) Similarly, they claimed that they were not involved in the creation and management of the IME business that took over Companions' business, which the Court found to be false. (*See, e.g., id.* at 12–13, 13 n.11.) In short, the credibility of the Individual Defendants' factual claims in this matter, as a result of their own conduct during this litigation, is virtually nil.

[8] Plaintiff also argues, and the Court agrees, that CPLR § 6201(1), which provides that grounds for attachment exist when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state," applies. (Dkt. 279 ¶ 7 (citing N.Y. C.P.L.R. § 6201(1)). For their part, the Individual Defendants argue that Plaintiff should not be able to rely on CPLR § 6201(1) because that provision is only mentioned in Plaintiff's subsequently filed affidavit, and not in Plaintiff's initial motion. (*See* Dkt. 280 at 5.) Because the Court finds that grounds for attachment exist under CPLR § 6201(3), it declines to address the parties' arguments concerning CPLR § 6201(1) any further at this time.

10

1; *see also* Dkt. 278 at 1.) The Court declines to issue an order that would even temporarily prevent the Individual Defendants from selling the Property. However, for the reasons discussed above, the Court finds that attachment of the proceeds from the Individual Defendants' sale of the Staten Island Property is warranted.

As a starting point, the Court notes that Plaintiff requests $186,038.67 in compensatory damages in connection with the contempt proceedings. The Individual Defendants represent that although they are selling the Staten Island Property for $975,000, they only expect to net approximately $184,000 from the sale. (Dkt. 280 at 4; *see also* Dkt. 280-2.) Defendants further contend that there are no grounds for an order of attachment against Vito, and as such, Plaintiff would only be entitled to Safa's expected share of the proceeds, which amounts to $92,000 and "is less than her $150,000 homestead exemption under [CPLR] § 5206." (Dkt. 280 at 4.) As an initial matter, the Court agrees with Plaintiff that the Individual Defendants' attempt to invoke CPLR § 5206 is unavailing because the evidence in the record indicates that Vito and Safa have relocated to Texas. (*See* Dkt. 283 at 1 (citing Dkt. 257).) By its terms, CPLR § 5206 only applies to property "owned and occupied as a principal residence." N.Y. C.P.L.R. § 5206(a); *accord. In re Issa*, 501 B.R. 223, 226 (Bankr. S.D.N.Y. 2013) ("When occupancy of the exempt property ceases the purpose of the homestead ceases too." (citation and internal quotation marks omitted)). Subject to certain exceptions, "a debtor must show 'actual physical occupancy on a *regular basis*' and an intent to reside permanently [on the property]." *In re Issa*, 501 B.R. at 226 (emphasis added) (quoting *In re Bellafiore*, 492 B.R. 109, 113 (Bankr. E.D.N.Y. 2013)). Here, the Individual Defendants have failed to demonstrate actual occupancy of the Staten Island Property or that any homestead or other exemption applies.

11

Nor is there a basis for separating Safa's proceeds from Vito's proceeds for purposes of the attachment to satisfy either the contempt order or Plaintiff's underlying trade secrets claims. First, the Court's contempt finding—though not yet finalized for the reasons previously discussed—is as to all Defendants, i.e., Safa and Vito and their company, Companions.[9] Although the Court's previous contempt findings focused on Safa, its findings concerning the March 2023 TRO was explicitly based on *Defendants'* use of Client Exam Services to circumvent the Court's order enjoining them from "operating their business or any other business that unfairly competes with Plaintiff in violation of the law." (Dkt. 254 at 12 (citing Dkt. 156 at 3).) Vito is named as a Defendant in this action and, with Safa, established Companions, the business at issue in the March 2023 TRO that Defendants had continued to operate in violation of the Court's orders. (Dkt. 254 at 5, 29–32.) Second, the Court findings concerning Plaintiff's likelihood of success on the underlying trade secret claims apply with full force to Vito (*see* Dkt. 254 at 15–18), as do the Court's findings that Plaintiff has grounds for attachment under CPLR § 6201, *see supra* at 7–10.

Accordingly, pursuant to CPLR § 6201(3), the Court orders attachment of the net proceeds from the Individual Defendants' sale of the Staten Island Property, which the Individual Defendants estimate will amount to approximately $184,000. The Individual Defendants will be required to file proof of the deposit of those proceeds in their attorney's escrow account and an accounting of all funds disbursed.

## III.   Undertaking

CPLR § 6212(b) requires a plaintiff seeking an order of attachment "to provide an 'undertaking' as security for (1) costs and damages incurred by the defendant in the event that the

---

[9] Indeed, if anything, the fact that Safa alone has filed a request to reconsider the Court's contempt finding, as a technical matter, means that Vito and Companions are not seeking reconsideration of that ruling and are not contesting the amount of damages sought by Plaintiff.

court subsequently determines that the plaintiff was not entitled to an attachment or if defendant ultimately recovers judgment; and (2) certain fees incurred by the sheriff." *Herzi v. Ateliers De La Haute-Garonne*, No. 15-CV-7702 (RJS), 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 13, 2015) (citing N.Y. C.P.L.R. §§ 6212(b), 8011). "The amount of the undertaking must be at least $500 but otherwise is within the discretion of the court." *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 672 n.2 (S.D.N.Y. 2017) (citing N.Y. C.P.L.R. § 6212(b)).

Courts frequently set the undertaking as a fraction of a percent of the value of the attachment. *See, e.g.*, *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) (setting undertaking at 0.04% of the value of the attachment); *Disney Enters., Inc. v. Finanz St. Honore, B.V.*, No. 13-CV-6338 (NG) (SMG), 2017 WL 1862211, at *4 (E.D.N.Y. May 8, 2017) (setting undertaking at 0.5% of the value of the attachment); *Herzi*, 2015 WL 8479676, at *3 (setting undertaking at 0.67% of the value of the attachment); *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 313 (S.D.N.Y. 2010) (setting undertaking at 0.35% of the value of the attachment); *but see N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, No. 07-CV-8008 (RJS), 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008) (setting undertaking at 4.5% of the value of the attachment). Here, the Court finds that an undertaking of $920, which amounts to approximately .5% of the value of the attachment, is appropriate, particularly considering the high likelihood that Plaintiff will succeed on the merits. *See Disney Enters., Inc.*, 2017 WL 1862211, at *4 (undertaking of .5% of the value of the attachment appropriate where plaintiff had already prevailed on the merits).

Finally, because the Court grants attachment of the net proceeds of the Staten Island Property sale, it denies Plaintiff's request for a TRO preventing the sale as moot.

13

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Plaintiff's Attachment Motion. Pursuant to CPLR § 6201(3), the Court orders attachment of the net proceeds from the Individual Defendants' sale of the Staten Island Property. The Individual Defendants are further directed to provide an accounting of all funds disbursed as part of the sale, including all closing costs, and proof that the net proceeds from the sale were deposited in the escrow account of their attorneys in this matter, within **fourteen (14) days of the closing**, and in any event, no later than **March 15, 2024**. Plaintiff is directed to post an undertaking in accordance with CPLR § 6212(b) in the sum of $920 within **fourteen (14) days of this order**. Finally, the Court denies Plaintiff's TRO Motion as moot in light of this order.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 29, 2024
        Brooklyn, New York

14