**WARNER & SCHEUERMAN**
**Attorneys at Law**
**6 West 18th Street, 10th Floor**
**New York, New York 10011**
**Tel: (212) 924-7111**
**Fax: (212) 924-6111**

**Jonathon D. Warner, Esq.**
**jdwarner@wslaw.nyc**

**Karl E. Scheuerman, Esq.**
**kescheuerman@wslaw.nyc**                                    March 8, 2024

**VIA ECF**

Pamela K. Chen, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 4F North
Brooklyn, New York 11201-1804

Re:   *IME Watchdog, Inc. v. Gelardi, et al.*
      Case No.: 1:22-cv-1032 (PKC)(JRC)

Dear Judge Chen:

We represent defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito") and IME
Companions LLC (collectively, "Defendants") in the above-referenced case.  Defendant Vito
respectfully submits this letter motion[1] in support of his request for an Order, pursuant to Federal
Rule 60(b) and Local Rule  6.3, granting reconsideration and/or reargument of this Court's Order
dated February 29, 2024 (the "Order of Attachment") to the extent it ordered the attachment of
Vito's 50% share of the net sale proceeds of the Staten Island home jointly-owned by Vito and
Safa as husband and wife.  (Dkt. 284).  A copy of this Court's Order of Attachment is annexed as
Exhibit "A."

We respectfully submit that this Court misconstrued its prior preliminary finding of
contempt and the evidence upon which it was based when it ordered that Vito's share of the net
sale proceeds of the Staten Island home should be attached.  Before addressing this Court's
preliminary findings of contempt, it must be noted that plaintiff's application for an order of
attachment was based <u>solely</u> upon its expectation of a contempt damage judgment.  (Dkt. 270).
Plaintiff's moving papers did <u>not</u> seek an order of attachment based upon any judgment that it
might procure on its complaint.  Plaintiff wrote: "Plaintiff respectfully submits this letter motion
to request an Order requiring Defendants to place all proceeds from the sale of their Staten Island

---

[1]     Defendants respectfully request leave of this Court to make the instant request as a letter motion
rather than a formal motion in accordance with Rule 1 of the Federal Rules of Civil Procedure, which requires that
the Federal Rules be construed, administered, and employed by the Court and the partes to secure the just, speedy,
and inexpensive determination of every action and proceeding.

home in escrow until the Court determines the amount of fees it will award to Plaintiff in connection with Plaintiff's pending fee application." (Dkt. 270). Plaintiff wrote: "The Court has already granted Plaintiff's motion for attorneys' fees and costs in connection with work performed to establish Defendants' contempt. The only remaining question is what will be the amount of fees and costs awarded to Plaintiff." (Dkt. 270). Plaintiff requested "an order requiring that all proceeds from the sale of the Staten Island home be held in escrow pending entry of a judgment for attorneys' fees and costs." (Dkt. 270).

Defendants argued in opposition, among other things, that the net sale proceeds of the jointly-owned Staten Island home are not subject to attachment where no judgment for contempt damages will be entered against Vito since only Safa was preliminarily found in contempt.[2] (Dkt. 274). Defendants argued that only Safa's one-half share of the net sale proceeds could be attached. Defendants did not address the merits of plaintiff's underlying trade secret claims in their opposition since such claims were not a basis for plaintiff's motion for an order of attachment. Nor did Defendants address plaintiff's alleged trade secret damages.

This Court rejected Defendants' argument that only Safa's share could be attached and ordered the attachment of the net proceeds from the sale of the jointly-owned Staten Island home on the ground that there is no basis for separating Safa's proceeds from Vito's proceeds with respect to either plaintiff's contempt damages or underlying trade secret damages. (Dkt. 284). This Court went on to hold that its "contempt finding – though not yet finalized for the reasons previously discussed – is as to all Defendants, i.e., Safa and Vito and their company, Companions." (Dkt. 284). We respectfully submit that this Court erred in ordering the attachment of Vito's share of the net proceeds from the sale of the Staten Island home for two separate and distinct reasons.

*First*, and as evidenced by the plain language of plaintiff's letter motion (Dkt. 270), plaintiff's motion for an order of attachment was not based upon any damages it might obtain on its trade secret claims. It was based solely and exclusively upon its contempt damage claim (Dkt. 270), and it was thus opposed by Defendants as if it was based solely and exclusively upon plaintiff's contempt damage claim (Dkt. 274). Plaintiff's trade secret damage claim was introduced later and only in the most conclusory fashion possible (Dkt. 279), after this Court graciously permitted plaintiff to cure a fatal defect in its moving papers following Defendants' submission of their opposing letter brief. Defendants never had a full and fair opportunity to defend plaintiff's application to the extent it was entertained based upon its trade secret claims rather than its contempt damage claim, and Defendants were sandbagged by plaintiff yet again (as they were when Safa was found in contempt for violating a Temporary Restraining Order

---

[2]    Defendants' opposition to plaintiff's fee application was submitted on behalf of all three Defendants and not only Safa as this Court indicated at pg. 12, footnote 9, of its Order. (Dkt. 284) Our opposition stated: "We represent defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito") and IME Companions LLC (collectively, "defendants") and write in opposition to plaintiff's application for contempt damages...." (Dkt. 267). We wrote: "In conclusion, defendants respectfully request that this Court deny plaintiff's request for contempt damages against <u>all</u> <u>defendants</u>...." (Emphasis added).

based upon allegations submitted by plaintiff in reply, without notice, and in violation of their due process rights as evinced by Local Rule 83.6).

We respectfully submit that this Court should have denied plaintiff's defective motion for an order of attachment with leave to renew upon proper papers. This Court instead permitted plaintiff to cure the defect in its papers by belatedly submitting the affidavit required by C.P.L.R. § 6212(a), which affidavit raised a new ground for attachment after Defendants' opposition had already been submitted, and then countenanced plaintiff's sandbagging of Defendants by granting the Order of Attachment based in part on the new argument improperly raised by plaintiff in its belated submission. Defendants had no expectation that an order of attachment could be granted based upon the claims in plaintiff's complaint where plaintiff's motion made no such request.

Moreover, plaintiff's belatedly-submitted C.P.L.R. § 6212(a) affidavit – just like its contempt application – focused solely on Safa. (Dkt. 279). Plaintiff's principal stated in her affidavit that: "Safa has no counterclaims against Plaintiff." (Dkt. 279, ¶22). Plaintiff did not state that Vito had no counterclaims against plaintiff as required by the C.P.L.R. Plaintiff's principal stated: "As a result, Safa should be enjoined from selling her Staten Island home." (Dkt. 279, ¶23). Nor did plaintiff's affidavit accuse Vito of committing any fraud. For example, plaintiff's principal stated: "I respectfully request that the Court infer that Safa has engaged in fraud..." (Dkt. 279, ¶19). The basis for this Court's Order of Attachment against Vito cannot be found in plaintiff's C.P.L.R. § 6212(a) affidavit.

To make matters worse, plaintiff's belated submission contained no proof whatsoever with the respect to the merits of any of its trade secret claims against Vito, let alone the damages resulting from any tortious act allegedly committed by Vito. With respect to plaintiff's underlying claims, plaintiff's principal stated: "Plaintiff states claims for a money judgment for which this Court has already concluded that Plaintiff will probably succeed." (Dkt. 279, ¶3). Plaintiff did not provide any details concerning its claims against any defendant, let alone Vito. We will not belabor this point as this Court is fully familiar with plaintiff's allegations and proof and thus knows full well that plaintiff's evidence in this action has consistently been directed against Safa, only. No proof of any tortious conduct or other wrongdoing by Vito has ever been submitted. Had Defendants known that this Court intended to entertain plaintiff's application for an order of attachment based upon the viability of its underlying claims, we would have pointed out the complete and utter lack of evidence against Vito.

It is beyond cavil that Vito is not vicariously liable for his wife's or company's alleged tortious acts. The Order of Attachment should be vacated as against Vito where plaintiff has never submitted any evidence showing that it has a viable cause of action against Vito.

*Second*, this Court's holding in its Order of Attachment that its finding of contempt was against both Safa and Vito is contradicted by the plain language of the underlying Order in question. A copy of this Court's Order dated October 20, 2023 (the "Contempt Order") is annexed as Exhibit "B." We have scoured the Contempt Order for language supporting this

Court's holding that Vito had been found in contempt and have been unable to find any.  The simple truth, as demonstrated below, is that Vito was not found to have committed any act of contempt, and more importantly, no evidence was submitted in either plaintiff's contempt application or at the contempt hearing supporting any alleged finding of contempt against Vito.  Again, all of plaintiff's evidence and allegations pertained to Safa, and did not in any way implicate Vito.  No evidence was submitted indicating that Vito was involved in hiring the investigator who <u>attempted</u> to contact Carlos Roa (Roa was never actually "contacted" by anyone as that word plainly means).  No evidence was submitted indicating that Vito instructed the investigator to contact Roa.  No evidence was submitted indicating that Vito was in any way involved in Fari Guiterriez's operation of Client Exam Services.

That this Court found that only Safa had engaged in any allegedly contemptuous conduct is underscored by the plain language of both the Contempt Order and this Court's docket entry which accompanied it.  The Contempt Order contains the heading: "III. Defendant Safa Gelardi's Contacts with Carlos Roa." (Dkt. 254, pg.11).  Under such heading, this Court found:

- "On November 4, 2022, Defendant Safa Gelardi hired a private investigator, Steve Stanulis, to track and contact Third-Party Defendant and Plaintiff's employee, Carlos Roa ("Roa")." (Dkt. 254, pg.11).

- "Specifically, Safa directed Stanulis to 'befriend' Roa...." (Dkt. 254, pg.11).

- "Safa provided Stanulis with scripted things to say to Roa...." (Dkt. 254, pg.11).

- "Moreover, Safa paid Stanulis to place a GPS tracker on Roa's car." (Dkt. 254, pg.12).

- "[S]he knowingly paid for the use of a tracker by her private investigator..." (Dkt. 254, pg.12).

The Contempt Order contains the heading: "IV. Defendants' Circumvention of the Court's March 2023 Temporary Restraining Order." (Dkt. 254, pg.12).  Under such heading, this Court found:

- "Based on evidence presented at the March 27, 2023 hearing, the Court finds that Fari Guiterriez ("Guiterriez") – a friend of the Gelardi family... and part-time IME observer for Companions... – created Client Exam Services at Safa's direction specifically to continue operating Defendants' business in contravention of the Court's TRO." (Dkt. 254, pg.12).

-4-

●      "Documentary evidence and witness testimony from the hearing established that after the TRO was issued, Safa Gelardi told Fari Gutierrez that 'I have been shut down.  I cannot operate [Companions].  It's yours, if you want it."  (Dkt. 254, pg.12).

●      "On March 11, 2023, Safa told Bieben that Companions was shutting down until further notice and that Gutierrez had started a company and would contact Beiben."  (Dkt. 254, pgs.12-13).

●      Bieben attended "approximately 12 IME's on behalf of Client Exam Services."  (Dkt. 254, pg.13).

Under its conclusions of law pertaining to contempt, this Court clearly and unambiguously held that only Safa had committed any act contempt.  This Court held:

●      "Applying this standard, the Court is prepared to find Safa Gelardi in contempt of the Amended Injunction, upon a showing of compensatory damages incurred by Plaintiff, with respect to the provisions in the Amended Injunctions: (1) barring Defendants from making contact with Carlos Roa; and (2) operating Defendants' business or any other business that unfairly and unlawfully competes with Plaintiff."  (Dkt. 254, pg.26).

●      "Safa's hired investigator, Stanulis, undoubtedly qualifies as her agent and/or a person acting in concert with her."  (Dkt. 254, pg.26).

●      "Thus, the Court finds that the Amended Injunction clearly and unambiguously prohibited Safa from hiring Stanulis to contact Roa."  (Dkt. 254, pg.26).

This Court's conclusions of law with respect to contempt contained the heading: "b. Evidence of Safa's Violation is Clear and Convincing."  (Dkt. 254, pg.27).  Under such heading, this Court held:

●      "Despite the plain language of the Amended injunction, Safa hired a private investigator to contact Plaintiff's current employee, Roa."  (Dkt. 254, pg.27).

●      "Safa directed the private investigator to 'befriend' Roa, even providing the hired agent with scripted questions and conversation topics."  (Dkt. 254, pg.27).

●      "Moreover, whether Safa willfully violated the no-contact provision is irrelevant to the Court's finding of contempt."  (Dkt. 254, pg.27).

●      "Thus, the Court finds that there is clear and convincing evidence that Safa attempted to contact Roa through a hired investigator in violation of the Amended Injunction."  (Dkt. 254, pg.28).

This Court's conclusions of law with respect to contempt contained the heading: "c. Safa Did Not Exercise Reasonable Diligence." (Dkt. 254, pg.28). Under such heading, this Court held:

- "Thus, the Court is prepared to hold Safa in civil contempt for violating the Amended Injunction. However, the Court cannot enter an order finding Safa in civil contempt at this time because Plaintiff has not submitted the required affidavit...." (Dkt. 254, pg.29).

- "For this reason, the parties are directed to further brief the issue of damages and attorneys' fees before the Court can hold Safa in contempt." (Dkt. 254, pg.29).

This Court's conclusions of law with respect to contempt also contained the heading: "2. Defendants Violated the March 2023 TRO By Helping To Start Client Exam Services." Under such heading, this Court held:

- "The evidence presented during the March 27, 2023 hearing clearly and convincingly established that Safa directed Fari Gutierrez – a friend of the Gelardi family... and part-time IME observer for Companions... – to create Client Exam Services and circumvent the Court's TRO." (Dkt. 254, pgs.29-30).

- "Safa's employee, Beiben, also testified that on March 11, 2023, the day after the Court issued the TRO, Safa told him that Companions was shutting down until further notice and that Gutierrez had stated a company and would contact him." (Dkt. 254, pg.30).

This Court held: "Thus, the Court is prepared to hold Safa in civil contempt for violating the Court's March 2023 TRO." (Dkt. 254, pg.32). This Court further held: "As discussed, in order to hold Safa in civil contempt, Plaintiff must file a brief detailing the amount of compensatory damages it seeks and submit evidence supporting such damages." (Dkt. 254, pg.32). This Court concluded: "Moreover, although the Court is prepared to find Safa in civil contempt of the Amended Injunction and the March 2023 TRO, the Court reserves on making a final ruling...." (Dkt. 254, pg.33).

Not only does this Court's Contempt Order contradict its finding in the Order of Attachment that this Court had found Vito in contempt as well as Safa, but this Court's Docket Entries and Minute Orders also make it crystal clear that only Safa had been preliminarily found in contempt.

This Court's October 20, 2023 Docket order states: "Moreover, although the Court is prepared to find Defendant Safa Gelardi in civil contempt of the 80 Amended Injunction and the 156 March 2023 Temporary Restraining Order, the Court reserves on making a final ruling...."

On February 21, 2024, this Court issued a Minute Order which directed only plaintiff and Safa to appear for the contempt damage hearing.  This Court's Minute Order states:

> SCHEDULING ORDER: The Court directs Plaintiff IME Watchdog, Inc. and Defendant Safa Abdulrahim Gelardi to appear for an evidentiary hearing regarding the parties' 261, 267, 270, and 274 submissions.  The hearing will be held on March 13, 2024, at 2:00 p.m. in Courtroom 4F North.  If a party intends to call witnesses at the hearing, they shall file a witness list, which must both identify the witnesses and estimate the length of each witness's testimony by March 6, 2024.  If applicable, the parties are also directed to file an exhibit list for the hearing by March 8, 2024.

> Additionally, Plaintiff is directed to file the affidavit required by C.P.L.R. § 6212 by February 29, 2024.  Finally, by March 1, 2024, Defendant Safa Gelardi is directed to file a list identifying: (1) all real property in which she currently has an ownership interest; (2) all real property in which she previously had an ownership interest that was sold or otherwise disposed of from February 1, 2022 to Present.  The list should include, at minimum, the address and estimated fair market value of each property.

After plaintiff filed an emergency application for a temporary restraining order with respect to its then pending motion for an order of attachment, this Court issued a Minute Order which directed only Safa to oppose the application.  This Court wrote: "ORDER: The Court is in receipt of Plaintiff's 278 motion for a temporary restraining order.  Defendant Safa Gelardi is directed to respond by 2/27/2024 at 5:30 p.m. EST."

Accordingly, pursuant to the plain language of this Court's Orders, only Safa was found in contempt, and only Safa was directed by this Court to appear for the hearing regarding plaintiff's contempt damages (261) and plaintiff's application to deposit funds from the sale of the Staten Island home (270), and only Safa was directed by this Court to file a list of properties in which she had an ownership interest.  Vito was not directed to appear in Court for either the contempt damage application or the attachment application.  Nor was Vito directed to list any properties he owns or has sold since the commencement of this litigation or to oppose plaintiff's emergency application for a temporary restraining order.

Notwithstanding the foregoing, this Court apparently reversed itself without notice to Vito, and issued the Order of Attachment against Vito based upon its mistaken belief that both Vito and Safa had been found to have committed acts of contempt.  We respectfully submit that this Court misconstrued its own Contempt Order and the proof upon which it was based and mistakenly issued the Order of Attachment against Vito without any grounds therefor, and

without due notice to Vito.  Vito was not found in contempt.  No evidence was ever submitted suggesting that Vito had ever done anything contemptuous.  Nor has any evidence ever been submitted showing that he committed any of the acts upon which plaintiff's trade secret claims are based.  Vito has been improperly and wrongfully lumped together with Safa, and the Order of Attachment is based upon nothing more than guilt by association to the extent it attaches Vito's share of the net sale proceeds from the Staten Island home.

      For the foregoing reasons, we respectfully request that this Court reconsider its Order of Attachment and direct that only Safa's one-half share of the net proceeds from the sale of the Staten Island home be held in escrow pending the entry of a contempt damage judgment, if any, against Safa.

Respectfully,


*/s/ Jonathon D. Warner*

JDW/ks
Encs.

cc:    All Counsel (via ECF)