# Sage Legal LLC

**18211 Jamaica Avenue ● Jamaica, NY 11423-2327 ● (718) 412-2421 ● emanuel@sagelegal.nyc**

May 1, 2024

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

> *Re:*   **IME WatchDog, Inc. v. Gelardi,** *et al.*
> <u>**Case No.: 1:22-cv-1032 (PKC) (JRC)**</u>

Dear Judge Chen:

This firm, together with Milman Labuda Law Group PLLC, represents Plaintiff IME WatchDog, Inc. (the "Plaintiff") in the above-referenced case.  Plaintiff writes to respectfully request an extension of time, until Monday, May 6, 2024, of the deadline to submit a second supplemental declaration in compliance with Local Civil Rule ("LCR") 83.6.

On April 25, 2024, this Court issued an Order requiring Plaintiff to file an affidavit that complies with LCR 83.8 by today, May 1, 2024.  <u>See</u> Text Only Order dated April 25, 2024. Earlier today at 4:00 PM, Plaintiff received responses to subpoenas from non-parties Giant Partners and Lumina Systems, two marketing companies, containing approximately 325 separate files which contain, in just a cursory review, tremendous evidence of the collusion between Defendant Safa Abdulrahman Gelardi ("Safa") and non-party Eugene Liddie ("Liddie") to end-run around the March 27, 2023 expanded Preliminary Injunction, and demonstrating both that: (i) IME Legal Reps is the alter ego of and successor to Defendants; and (ii) Liddie perjured himself. Some of the emails out of the approximately 325 attachments sent in response to the Giant Partners' subpoena are annexed hereto as **Exhibit "A."**  They are summarized and highlighted below:

> On Wed, Apr 12, 2023 at 1:53 PM Conor McDaniel <conor@giantpartners.com> wrote:
> ==Hey Safa==, I hope all has been well! It's great to have you back on board.  I want to introduce you to your Account Manager, Estefania Sedano! You're in excellent hands with Estefania.  ==I've been brought up to speed and notified that the immediate high-priority item is to develop a new logo and transfer the IME Companions website over to the imelegalreps.com domain and rebrand for IME Legal Reps.== A couple of questions for you:
> •       The GoDaddy Credentials you provided to Corey are incorrect. Can you check on those and send over the updated credentials?
> •       For IME Legal Reps, can we use the same colors as IME Companions? ==Thank you, Safa!==

From: Corey Weissman <corey@giantpartners.com>
Sent: Thursday, June 1, 2023 5:28 PM
To: Safa Gelardi <safagelardi@gmail.com>; IME Legal Reps <imelegalreps@gmail.com>; 4536250@bcc.hubspot.com
Subject: Re: GiantPartners Follow up- Update for IMELegalReps & Eugene
Hi Safa and Eugene,I hope all is well with you, I wanted to check in and see if you have any updates regarding the marketing for IME Legal Reps?  We were waiting for your response on 5/15 regarding the court date you mentioned and we hope to hear from you soon! Please let me know if there's a good day or time we can talk!

From: Corey Weissman <corey@giantpartners.com>
Sent: Wednesday, March 20, 2024 11:22 AM
To: eugene@imecompanions.com; IME Legal Reps <imelegalreps@gmail.com>; Safa Gelardi <safagelardi@gmail.com>; Safa Gelardi <sgelardi@imecompanions.com>
Subject: GiantPartners Follow up- New Agreement
Hi Eugene, It was a pleasure speaking with you yesterday and today regarding your website and us potentially working together again. I would like to schedule a call with you and Safa and Jeremy and myself so we can discuss what you guys need and that way we can customize the agreement and present a new price structure to you. Please let me know your availability for a call as we look forward to hearing from you and working with you again soon.

Plaintiff is still in the process of reviewing the remaining production and, in light of this Court's April 25, 2024 Order that "[t]he Court will not consider any additional allegations made beyond [May 1, 2024]," should be permitted a brief extension until Monday, May 6, 2024 to submit its second supplemental declaration.  Crucially, at the May 4, 2023 hearing in which the Court was not persuaded that Liddie engaged in any wrongdoing, the Defendants repeatedly represented that Safa had nothing to do with Liddie's allegedly independent company.  See ECF Docket Entry 219-1 at 32:1-9,[1] 33:19-25,[2] 36:16-20,[3] 95:1-11.[4]

---

[1] "MS. GELARDI: Your Honor, we sold the website only. We gave them access to the website, gave him the people who were hosting the website. He then was working with the website developers to migrate into his own -- into his own website. It was in migration mode. They were supposed to get that done, within 48 hours. *I had no control over the website. When I got served the order, as soon as we made the transfer, IME Companions, I had no control over it. They wouldn't even speak to me.*" (emphasis added).

[2] "I just know that it's a very well-built website and it was worth money and I sold it. I never even thought to say remove this quick. *I just said you have to change it all. He had his own vision. All I did was sell it because I needed to sell it and it was very expensive.* I didn't think of any other portion of that, to be honest. I had no idea to tell him remove this immediately. *We just sold it.*" (emphasis added).

[3] "MS. GELARDI: I was never even told to take them down, Your Honor. *I never touched the website, even after the -- no one told me to remove those clients from --* as previous customers of IME Companions. I was never even told to take them down. I would have taken them down." (emphasis added).

[4] "THE COURT: Okay. So then tell me exactly then what happened after you agreed to buy the website. Tell me all of the steps you took to form IME Reps, Legal Reps. THE WITNESS: So, I got the domain. When you say the steps,

Critically, Liddie testified that, other than selling the IME Companions LLC website, the Defendants had no involvement in IME Legal Reps. Id. at 104:13-105:1.[5]  This was a lie based on the documents received from the Giant Partners' subpoena.     In addition, Liddie testified that only he was involved in making changes to the website for IME Legal Reps. Id. at 115:15-25.[6]  This was a false statement of fact based on the documents received just today from the Giant Partners' subpoena.  Astonishingly, Liddie went so far as to lie about the existence of the very e-mail communications we received in the Giant Partners' subpoena.  Id. at 117:7-16.[7]  This is similarly untrue based on the documents received just today from the Giant Partners' subpoena.

Defendants' counsel joined in making these material misrepresentations.  Id. at 146:13-20.[8]  Based on this demonstrably false testimony, where Liddie perjured himself, this Court made a preliminary determination that if Liddie opened the business on his own *with no help from Safa*, that does not constitute a violation of the Order.  Id. at 57:6-18 ("Your reference to Mr. Liddie wanting to start his own business a year ago, I don't think helps you; I think it works against you. Because *it suggests that maybe Mr. Liddie on his own did in fact want to start a business. And that Ms. Gelardi is in fact not involved in that business. And unlike the last time we were here, didn't get Mr. Liddie to take it over so she could continue in someway to profit from it.*  I think that fact -- and I want to hear what he says about it -- is relevant to whether or not *he's acting truly as an independent third-party who started a business*, *seemingly and potentially unknowingly using the trade secrets information he wasn't supposed to have or use*"),142:1-3 ("I don't find that the defendants acted in contempt with respect to *Mr. Liddie starting this new company*, which seems to me, *a venture of his own, fledging at best*"), and 145:20-23 ("It's to prevent the Gelardis from using the information that was taken. *They aren't behind this*, is what I'm focused on") (emphasis added).

---

what do you mean? THE COURT: Well, you're running this business. How did you get it up and running? THE WITNESS: So I got the website. *The company redesigned the whole website to my vision, to what I liked,* some things that I seen, what I researched, and then I created the template form for the interviews for the IME exams." (emphasis added).

[5] "THE COURT: You may have answered this question either directly or indirectly. Just tell me all of the connections that the Gelardis have to your business now, IME Legal Reps. Aside from selling you the website that you use, what, if anything, else have they given you, told you, provided you or anything else related to your current business? THE WITNESS: *Nothing, literally nothing. They are like exhausted with this whole process. I'm just being transparent. That last conversation I had with them before they actually sold me the website, they're exhausted to the point they're literally selling their house and moving.*" (emphasis added).

[6] "Q The domain name imelegalreps.com, was that something that you purchased directly from GoDaddy or was that from Safa? A No, it was from GoDaddy. *Q Does -- in terms of making changes to the website, isn't it true that Safa and Vito have access to make those changes? A No. Q Who has access to make the changes on the website? A IME Legal Reps? I do and the marketing company. Q Other than you and the marketing company, is there anyone else? A No.*" (emphasis added).

[7] "Now, your testimony was that after you bought the website from the Gelardis, you were involved in having it changed; correct? A Yeah. *Q Did you personally make the changes to the website? A No, the marketing company. Q You interacted with the marketing company; correct? A Yeah. Q You did that by e-mail? A No, by phone.*" (emphasis added).

[8] "MR. WARNER: I think it's absurd, you Honor to talk about inferring from this. There is no inference at all. *Mr. Liddie started his own business at a time when there was no injunction.* He learned about a law firm with whom he shares an underlying involvement in law enforcement. They chose to give him work. There is no contempt. I think your Honor focused exactly right, there is no issue of contempt here." (emphasis added).

Consistent with ¶ 1(G) of this Court's Individual Practices and Rules, Plaintiff respectfully submits that: (i) the current deadline to submit the second supplemental declaration is today, May 1, 2024; (ii-iii) there have been no previous requests for an extension of time concerning this deadline; (iv) Plaintiff did not have an opportunity to seek Defendants' consent to this request; and (v) the requested extension should not affect any other scheduled Court appearance or deadline, including the May 29, 2024 hearing.  It is respectfully submitted that Defendants are in no way prejudiced by this subpoenaed evidence because they are in possession, custody, and control of their own email exchanges with Giant Partners.

As a result, Plaintiff respectfully submits that good cause exists for an extension of time to submit the second supplemental declaration.  See Fed. R. Civ. P. 6(b)(1)(A).  Plaintiff thanks this Court for its continued time and attention to this case.

Dated: Lake Success, New York
      May 1, 2024                       Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_/s/ Jamie S. Felsen, Esq._
Jamie S. Felsen, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1391 (direct dial)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com

Dated: Jamaica, New York
      May 1, 2024                 **SAGE LEGAL LLC**

_/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Additional Attorneys for Plaintiff*
*IME WatchDog, Inc.*

**VIA ECF**
All counsel of record

4