# In the Matter of

Case No.: 1:22-cv-1032 (PKC) (JRC)

## IME WATCHDOG, INC.

v.

## GELARDI, et al.

---

# Deposition of Sheldon Katz

*Tuesday, June 11, 2024*

---

The Little Reporting Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK


-------------------------------

IME WATCHDOG, INC.,

                    Plaintiff,


          vs.                          Case No.:
                                       1:22-cv-1032
                                       (PKC)(JRC)

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, GREGORY ELEFTERAKIS,
ROMAN POLLAK, ANTHONY BRIDDA,
IME COMPANIONS LLC, CLIENT EXAM
SERVICES LLC and IME MANAGEMENT
& CONSULTING LLC,

                    Defendants.
-------------------------------


                         June 11, 2024
                         12:07 p.m. EST


     Remote videotaped video-teleconference

deposition of GIANT PARTNER, INC., a Nonparty

Witness, by SHELDON KATZ, taken by Plaintiff, held

at Thousand Oaks, California, pursuant to subpoena,

before Elizabeth F. Tobin, a Registered Professional

Reporter and Notary Public of the State of New

York.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

2

A P P E A R A N C E S:

        (Present via video-teleconference)


On behalf of the Plaintiff:

        SAGE LEGAL, LLC

        182-11 Jamaica Avenue

        Jamaica, New York 11423-2327

        718.412.2421

        BY:   EMANUEL KATAEV, ESQ.

              emanuel@sagelegal.nyc



On behalf of the Defendants/Third-Party

Plaintiffs/Third-Party Counterclaim Defendants Safa

Abdulrahim Gelardi, Vito Gelardi and IME Companions

LLC:

        WARNER & SCHEUERMAN

        6 West 18th Street, 10th Floor

        New York, New York 10011

        646.437.8083

        BY:   JONATHON D. WARNER, ESQ.

              jdwarner@wslaw.nyc

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

3

A P P E A R A N C E S:

        (Present via video-teleconference)


On behalf of the Nonparty Witness Giant Partners,

Inc.:

        ALLEN, MITCHELL & ALLEN, PLLC

        2091 Murray Holladay Road, Suite 21

        Salt Lake City, Utah 84117

        801.930.1117

        BY:   ERIC ALLEN, ESQ.

              eric@allenlawyer.com




ALSO PRESENT:

              LARRY MOSKOWITZ, VIDEOGRAPHER

              DANIELLA LEVI, ESQ.

              ELIYAHU LEVI, ESQ.

              CARLOS ROA

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

4

1

2              IT IS HEREBY STIPULATED AND AGREED

3       by and between the attorneys for the

4       respective parties herein, that filing and

5       sealing be and the same are hereby waived.

6              IT IS FURTHER STIPULATED AND AGREED

7       that all objections, except as to the form

8       of the question, shall be reserved to the

9       time of the trial.

10              IT IS FURTHER STIPULATED AND AGREED

11       that the within deposition may be sworn to

12       and signed before any officer authorized to

13       administer an oath, with the same force and

14       effect as if signed and sworn to before the

15       Court.

16

17

18                    - oOo -

19

20

21

22

23

24

25

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

5

1                    S. Katz

2              COURT REPORTER:  Mr. Warner, will you

3         being ordering a copy of the transcript.

4              MR. WARNER:  Yes, I will.

5              COURT REPORTER:  Do you want two-day

6         delivery for that also?

7              MR. WARNER:  Yes, I do.

8              COURT REPORTER:  Okay.  Thank you.

9              THE VIDEOGRAPHER:  Good afternoon.  We

10        are now on the record, and the time is

11        approximately 12:07 p.m.  Today's date is

12        June 11th, 2024.  This is the video deposition

13        of Sheldon Katz taken in the matter of IME

14        WatchDog, Inc., versus Safa Abdulrahim Gelardi,

15        et al.

16             My name is Larry Moskowitz, legal

17        videographer on behalf of Little Reporting.

18        This deposition is being conducted via Zoom.

19             Will counsel please identify yourselves

20        and state whom you represent.

21             MR. ALLEN:  This is Eric Allen for the

22        deponent, Sheldon Katz.

23             MR. KATAEV:  Good afternoon.  This is

24        Emanuel Kataev of Sage Legal, LLC, for the

25        plaintiff, IME WatchDog, Inc.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

6

1                    S. Katz

2              MR. WARNER:  Good afternoon.  This is

3         Jonathon Warner of Warner & Scheuerman for the

4                       defendant.

5              THE VIDEOGRAPHER:  The court reporter

6         today is Liz Tobin, also with Little Reporting.

7              Will you please swear in the witness.

8              COURT REPORTER:  Good afternoon.  My name

9         is Elizabeth Tobin.  I am a New York State

10        stenographic reporter and a registered

11        professional reporter.

12             At this time, I will ask counsel to agree

13        on the record that there is no objection to

14        this deposition officer administering a binding

15        oath to the witness remotely via

16        video-teleconference.

17             MR. KATAEV:  No objection from the

18        plaintiff.

19             MR. WARNER:  No objection from the

20        defendant.

21             MR. ALLEN:  And none from the deponent.

22   S H E L D O N   K A T Z,

23        of lawful age, called by the Plaintiff for

24        examination pursuant to the Federal Rules of Civil

25        Procedure, having been first duly sworn remotely

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz   ---   June 11, 2024

7

1                         S. Katz

2        upon agreement of all counsel, as hereinafter

3        certified, was examined and testified as follows:

4                         EXAMINATION OF SHELDON KATZ

5        BY MR. KATAEV:

6             Q.    Mr. Katz, are you currently employed?

7             A.    I am.

8             Q.    Where?

9             A.    Giant Partners, Inc.

10            Q.    What is your title there?

11            A.    Chief operating officer.

12            Q.    Are you the custodian of records for

13       Giant Partners?

14            A.    I am.

15            Q.    How long have you worked at Giant

16       Partners?

17            A.    Since 2007.

18            Q.    Do you know when Giant Partners was first

19       formed?

20            A.    Approximately 2002.

21            Q.    I'm going to place up on the screen what

22       we'll mark as Plaintiff's Hearing Exhibit 93.

23                  (Plaintiff's Hearing Exhibit 93,

24            declaration, marked for identification.)

25       BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

8

S. Katz

1

2      Q.    Do you recognize this document?

3      A.    Yes.  It looks like what I received.

4      Q.    I'll represent to you that this is a

5  declaration from you certifying certain records --

6      A.    Correct.

7      Q.    -- as being authentic in response to a

8  subpoena.

9            Does that refresh your recollection?

10     A.    It does.  Thank you.

11     Q.    Did you sign this document?

12     A.    I did.

13     Q.    Did you receive a subpoena from the

14  plaintiff, IME WatchDog, in this case?

15     A.    I did.

16     Q.    And you understand that Giant Partners is

17  not a party to this case; correct?

18     A.    Yes.

19     Q.    And were you involved in preparing

20  documents relative to the subpoena Giant Partners

21  received?

22     A.    No.

23     Q.    Did you review the documents before they

24  were submitted to the plaintiff in response to the

25  subpoena?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

9

1                        S. Katz

2          A.    I did.

3          Q.    Are those documents authentic?

4          A.    They are.

5          Q.    Were the documents produced made and kept

6    in the ordinary course of business?

7          A.    Can you repeat that, please?

8          Q.    Were the documents submitted in response

9    to the subpoena made and kept in the ordinary course

10   of Giant Partners' business?

11         A.    Yes, they were.

12         Q.    Giant Partners meets with its customers

13   virtually; is that right?

14         A.    Either telephonically or virtually.

15         Q.    Is there a practice of recording virtual

16   meetings that Giant Partners has with its customers?

17         A.    There is.

18         Q.    Is -- generally speaking, whenever a

19   virtual meeting is recorded, is the customer aware

20   that -- to your knowledge, is the customer aware as

21   to whether the virtual meeting is being recorded?

22         A.    Yes, they are.

23         Q.    How would you know that?

24         A.    Because we use Google Meets and we

25   announce that we're going to record the meeting.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz --- June 11, 2024

10

1                           S. Katz

2       And then when the meeting is taking place, there is

3       a record button that all parties see.

4             Q.    Why is it that the meetings are recorded?

5             A.    Standard operating procedure here.

6             Q.    Are the videos that you record of

7       meetings with customers made and kept in the

8       ordinary course of Giant Partners' business?

9             A.    They are.

10            Q.    I'm going to place up on the screen a

11      video that we received in a supplemental response to

12      the subpoena.  It's important that we play the

13      entire video and that everyone pays attention

14      because when the video is completed, I want to ask

15      certain questions about it.

16                  When I start playing it, if you can't

17      hear, please say the word "pause" and I will stop

18      and we will go off the record to figure out the

19      right way for you to hear it.

20                  Okay?

21            A.    Yes.

22                  (Plaintiff's Hearing Exhibit 100, video

23            recordings and transcription, deemed marked for

24            identification.)

25                  MR. KATAEV:  Let the record reflect that

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

11

1                     S. Katz

2          I'm sharing my screen, and I'm pressing "play"

3          now.

4                  (Video recording played.)

5                  MR. KATAEV:  Let the record reflect that

6          I paused the video at 15 seconds.

7     BY MR. KATAEV:

8          Q.    Mr. Katz, can you hear it well?

9          A.    I can.  I've seen it.  But it's a little

10    bit garbly.  But I can hear it.

11                 MR. KATAEV:  Playing now.

12                 (Video recording played.)

13                 MR. KATAEV:  Let the record reflect that

14    I paused at 2 minutes and 28 seconds.

15    BY MR. KATAEV:

16         Q.    Mr. Katz, were you able to hear the video

17    from zero seconds to 2:28?

18         A.    Yes.

19         Q.    I just have some questions for you.

20                First, are the events depicted in the

21    video so far a fair and accurate representation of

22    what it purports to show?

23         A.    Yes, it is.

24         Q.    In this video so far, there's discussion

25    by Safa Gelardi about Plaintiff Advocates.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

12

1                      S. Katz

2              Are you familiar with that company name?

3         A.    I am not.

4         Q.    Are you aware as to whether Safa

5    ultimately opened the company called Plaintiff

6    Advocates?

7         A.    I have no knowledge of that.

8         Q.    Do you have any knowledge as to what

9    company, if any, Safa owned -- opened with the help

10   of Giant Partners?

11        A.    My knowledge, the only company would be

12   referenced in this video.

13        Q.    Are you familiar with the company named

14   IME Legal Reps?

15        A.    Yes, based on this video.

16        Q.    Is it your understanding that the

17   discussions in this video center around IME Legal

18   Reps?

19        A.    Yes.

20        Q.    In this video so far, there's a

21   discussion of transferring items over to IME Legal

22   Reps; is that right?

23        A.    That's what I heard.

24        Q.    To your knowledge, what was it that was

25   transferred over?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

13

1                    S. Katz

2          A.    Based on this video, all of the original

3     verbiage from the IME Companion website they wanted

4     to then port over to this new URL that they had

5     purchased.

6          Q.    Do you have any knowledge as to what was

7     contained on the website in general?

8          A.    Which website?  IME Companions or the one

9     in reference to this video?

10         Q.    Companions.

11         A.    I'm sorry.

12         Q.    Companions.

13         A.    I reviewed it.

14         Q.    What was -- to your knowledge, what was

15     on the Companions website?  In other words, what

16     information did the Companions website contain?

17         A.    Based on what I saw, it was a website

18     that attorneys would hire IME Companions to help

19     them with specific cases.

20         Q.    To your knowledge, was there any back end

21     to the website?

22         A.    I'm sorry.  Can you say that one more

23     time?

24         Q.    To your knowledge, was there any,

25     quote-unquote, back end to the website?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                    14
1                          S. Katz

2          A.    Can you explain back end.

3          Q.    A section of the website that only people

4    that operate the company can access?

5          A.    I do not have firsthand knowledge.  But

6    normally in my experience, they have all the

7    passwords, they have all of the information to get

8    into that website.

9          Q.    Do you have any knowledge as to whether

10   customer information was maintained on the website

11   platform if you had a user name and password?

12         A.    I do not have any knowledge of that.

13         Q.    We're going to continue from 2:28.

14   Before I continue, you referenced when speaking

15   about the individuals operating the website, you

16   said "they."

17              To your knowledge, who is "they"?

18         A.    They would be -- I would -- I'm not going

19   to assume.  Whomever owns IME Companions.

20         Q.    Did you interact with the individuals

21   that owned or owns IME Companions?

22         A.    I did not.

23         Q.    To your knowledge -- withdrawn.

24              Do you have any knowledge as to who owns

25   or owned IME Companions?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

15

1                      S. Katz

2          A.    I do not.

3          Q.    Did you ever speak directly with an

4    individual named Safa Gelardi?

5          A.    I did not.

6          Q.    Did you ever speak directly with an

7    individual named Vito Gelardi?

8          A.    I did not.

9          Q.    Did you ever speak directly with an

10   individual named Eugene Liddie?

11         A.    I did not.

12         Q.    To your knowledge -- withdrawn.

13               Who does have knowledge as to who these

14   individuals are?

15         A.    I would assume the sales representative

16   that spoke to them originally and the gentleman

17   that's on this video right now, Jeremy Koenig.

18         Q.    With respect to the first individual, is

19   that an individual named Corey Weissman?

20         A.    Correct.

21         Q.    And Corey Weissman is a sales rep?

22         A.    Yes, he is.

23         Q.    You testified earlier that you're

24   familiar with a company called IME Legal Reps; is

25   that right?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

16

S. Katz

1

2          A.     Yes.

3          Q.     Do you know who the owners of IME Legal

4     Reps is or are?

5          A.     I do not.  I only base it on the video

6     that we're about to watch.  That's where my

7     knowledge was obtained.

8          Q.     Based on this video, what is your

9     knowledge as to who owned IME Legal Reps?

10         A.     There will be a part that we're all going

11    to listen to where a young lady references a Eugene.

12              MR. KATAEV:  I'm going to continue from

13              2:28.  Please listen and I will pause at an

14              appropriate time.

15              (Video recording played.)

16              MR. KATAEV:  Let the record reflect that

17              I paused at 3:04.

18    BY MR. KATAEV:

19         Q.     Were you able to hear that?

20         A.     I was.

21         Q.     Based on what you just heard, do you have

22    any knowledge as to who owns IME Legal Reps?

23         A.     Based on the knowledge that this young

24    lady just said, it's Eugene.

25         Q.     Did you come to understand that this

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz   ---   June 11, 2024

17

1                      S. Katz

2        individual in the video, Safa Gelardi, was also an

3        owner of IME Legal Reps?

4                      MR. WARNER:  Objection.

5        BY MR. KATAEV:

6             Q.    You can answer the question.

7             A.    Not to my knowledge.

8             Q.    Did you come to understand from a review

9        of this video and from your knowledge as the

10       custodian of records for Giant Partners that Safa

11       was the primary decision-maker with respect to this

12       website?

13                     MR. WARNER:  Objection to form.

14            A.    No.

15       BY MR. KATAEV:

16            Q.    Who, to your knowledge, was the primary

17       decision-maker -- or is the primary decision-maker

18       at IME Legal Reps?

19            A.    Once again, if we continue through this

20       video, the young lady will describe who is making

21       decisions there.  I was under the impression it was

22       a gentleman.  But, again, watching this again with

23       you, we'll find out the answers.

24            Q.    Okay.  In the clip that we just watched

25       and paused from 2:28 until 3:04, Ms. Gelardi stated

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

18

                          S. Katz

1

2      that Mr. Liddie is going to be the face of the

3      company.

4              Did you hear that?

5          A.    I did.

6          Q.    What was your understanding of what that

7      meant?

8          A.    My interpretation of the face of the

9      company means someone that represents the

10     organization.

11         Q.    To your knowledge, was Mr. Liddie

12     represented in any way, shape or form on the website

13     as being the owner?

14         A.    Not to my knowledge.

15         Q.    Do you have any knowledge as to why

16     that's the case?

17         A.    I do not.

18         Q.    In this clip that we watched from 2:28 to

19     3:04, Ms. Gelardi referenced Mr. Liddie as her

20     partner; correct?

21         A.    That's what I heard; correct.

22         Q.    Was it your understanding that Safa

23     Gelardi and Mr. Liddie were partners in IME Legal

24     Reps?

25         A.    It seems that way based on this video.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

19

                            S. Katz

1

2              MR. KATAEV:  We're going to continue

3         playing from 3:04.

4              (Video recording played.)

5              MR. KATAEV:  Let the record reflect we

6         stopped at 4 minutes.

7    BY MR. KATAEV:

8         Q.    There's a reference here to the back end

9    of the website; correct?

10        A.    Correct.

11        Q.    Does this refresh your recollection as to

12   what, if anything, was on the back end of this

13   website?

14        A.    No, not yet.  I think it might go deeper

15   into the video for explanation of the back end.

16        Q.    In this part of the clip from 3:04 to 4

17   minutes, Safa explained that the website is being

18   changed even though the website for Companions was

19   just recently done; correct?

20             MR. WARNER:  Objection to form.

21        A.    IME Companions was already developed, to

22   my knowledge, before they onboarded with Giant

23   Partners.  We made some minor verbiage tweaks and

24   pictures to that site.

25   BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

20

1                          S. Katz

2          Q.    Do you have any understanding as to why

3     IME Companions was being deactivated and IME Legal

4     Reps was being set up?

5          A.    I do purely based on the video we're

6     watching now.

7          Q.    What is your understanding?

8          A.    There seems to obviously have been some

9     type of problem, and they would like to switch names

10    to avoid any kind of conflict.

11         Q.    What was your understanding as to the

12    nature of the problem that led to this change?

13         A.    As you heard in the beginning of the

14    video, something about pedophiles and someone suing

15    them for $220 million.

16         Q.    Was it your understanding that the name

17    and website was being changed in an effort to avoid

18    liability?

19              MR. WARNER:  Objection.

20         A.    I do not know.

21    BY MR. KATAEV:

22         Q.    What information, if any, were you given

23    about why Safa was concerned about any link between

24    Companions and IME Legal Reps?

25         A.    The information that I know is, again,

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

21

S. Katz

1

2    based on this video that we're watching.  And

3    further in through the video, I think she goes into

4    more explanation of what's going on.

5         Q.    Is it your understanding that IME Legal

6    Reps was a mere continuation of IME Companions?

7              MR. WARNER:  Objection.

8         A.    Based on this video, it seems that way.

9              MR. KATAEV:  I'm going to continue the

10            video from four minutes.

11            (Video recording played.)

12            MR. KATAEV:  Let the record reflect that

13            I stopped at 6:01.

14    BY MR. KATAEV:

15         Q.    Were you able to hear this portion of the

16    clip?

17         A.    I was.

18         Q.    To your knowledge, why was it that Safa

19    did not want to link the company to her?

20            MR. WARNER:  Objection.

21         A.    Based on the video, I have the same

22    interpretation that anyone else would, and that --

23    that they would like to change the company name for

24    reasons.

25    BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

22

                              S. Katz

1
2        Q.    In reviewing the video, there is a screen
3   share open during the virtual meeting; correct?
4        A.    Correct.
5        Q.    That screen share shows the IME
6   Companions website; right?
7        A.    Yes.
8        Q.    And does this refresh your recollection
9   in any way as to how the back end of the website
10  worked?
11       A.    After listening to the young lady, her
12  interpretation of the back end -- and I've written
13  some notes -- would be forms that they receive,
14  emails that they receive.  Everything that once
15  someone fills out any type of information on their
16  site, who that goes to, how it's responded to.
17       Q.    Is it your understanding that the back
18  end of the website would contain customer
19  information based on what you just testified about?
20       A.    Define "customer information," please.
21       Q.    Name, phone number, email address.
22             MR. WARNER:  Objection.
23       A.    I wouldn't refer to it as customers; I
24  would refer to it as people inquiring.
25       Q.    Okay.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

23

1                      S. Katz

2              (Simultaneous speakers.)

3        A.    About their services.

4        Q.    Was it your -- is it fair to say that

5   Giant Partners was retained by IME Legal Reps to

6   transfer the information contained on the website

7   for IME Companions to itself?

8        A.    IME Companions had a contract with us,

9   and they were still under contract.  So, yes, they

10  asked us to move everything to a new URL.

11       Q.    And when they asked you to move

12  everything, was it your understanding that all the

13  information contained by people submitting

14  inquiries, as you testified to, would also be

15  transferred to the new website?

16       A.    Not to my knowledge.

17       Q.    In this portion of the video, Safa

18  references an operating agreement that she has with

19  Liddie; correct?

20       A.    That's what I heard, yes.

21       Q.    To your knowledge, did Mr. Liddie ever

22  work with anyone at Giant Partners to set up the new

23  website?

24       A.    No.  The only knowledge I have, again, is

25  this video, and towards the end, when he's

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

24

1                          S. Katz

2      introduced.  But that would be it.

3           Q.   Going back to the inquiries that are

4      submitted, is it your understanding that any such

5      inquiry that's submitted is stored as data on the

6      website?

7           A.   In this situation, no.  Normal situations

8      is that information is stored in the client's

9      repository that they set up.

10          Q.   Is that a repository that Giant Partners

11     typically sets up for its customers?

12          A.   In this situation, I'm not sure.  I

13     believe it was HubSpot, but for IME Legal Reps, I

14     don't know if that went into effect.

15          Q.   Is it fair to say that when Companions'

16     website was set up, HubSpot was an interface that

17     was used to retain customer information?

18          A.   I'm not aware of that.

19          Q.   Can you explain what HubSpot is?

20          A.   HubSpot is a CRM, customer retention.

21     And it stores clients' information for calling back.

22     It's like a Salesforce application.

23          Q.   And to your knowledge, was the

24     information contained in HubSpot of Companions

25     transferred to IME Legal Reps?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

25

1                        S. Katz

2          A.    I do not have --

3                MR. WARNER:  Objection --

4          A.    -- any knowledge to that.

5    BY MR. KATAEV:

6          Q.    Who would know?

7          A.    I would have to research.  But, again, I

8    got the impression, based on this video, that

9    everything was going to be completely separate.  So

10   nothing would be transferred, in my humble opinion,

11   and that this was a brand new entity.

12         Q.    Well, nothing would be transferred except

13   for the contents of the website?

14         A.    I apologize, yes.  The back end

15   information you were referring to.

16         Q.    Including the back end information;

17   correct?

18         A.    I was under the impression just the

19   verbiage on the website, and I don't know about the

20   back end setup.

21         Q.    Isn't it true that during the video,

22   Ms. Gelardi said everything would be moved over?

23               MR. WARNER:  Objection.

24         A.    I'd have to hear that again, please, and

25   then have her define "everything."

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

26

S. Katz

1

2          MR. KATAEV:  Let the record reflect I'm

3      playing back from 4:01.

4          (Video recording played.)

5          MR. KATAEV:  Let the record reflect we

6      stopped at 4:17.

7  BY MR. KATAEV:

8      Q.    In this part of the clip, Ms. Gelardi

9  states that she wants everything to be the same

10  including with respect for booking in the back end;

11  correct?

12      A.    Correct.

13      Q.    Based on your review of this portion of

14  the video, is it fair to say that the intention, at

15  least, was that the website transfer included back

16  end information?

17          MR. WARNER:  Objection.  Which website

18      transfer?  She's talking about Plaintiff

19      Advocates.  Which one are you talking about

20      here?

21          MR. KATAEV:  Companions to Legal Reps.

22      A.    Can you please ask the question again?

23  BY MR. KATAEV:

24      Q.    Based on this clip, is it your

25  understanding that the back end information was also

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

27

1                          S. Katz

2       transferred over from Companions to the new website?

3              A.    No.

4                    MR. WARNER:  Objection.

5                    MR. KATAEV:  Let's go back to 6.  I'm

6              going to play from 6.  I'll pause at an

7              appropriate time.

8                    (Video recording played.)

9                    MR. KATAEV:  Let the record reflect I

10             paused at 6:14.

11      BY MR. KATAEV:

12             Q.    In this part of the clip, Safa tells

13      Jeremy and Corey that Mr. Liddie is a small partner

14      in IME Legal Reps; correct?

15                   MR. WARNER:  Objection.

16             A.    I heard what you heard.

17      BY MR. KATAEV:

18             Q.    That's yes?

19                   MR. WARNER:  Objection.

20             A.    I heard, He's a small partner.

21      BY MR. KATAEV:

22             Q.    And is it your understanding that Safa

23      was the other partner?

24             A.    I have no knowledge of who the partner

25      is.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

28

1                          S. Katz

2          Q.    In this clip, Safa says that Liddie

3     doesn't really own IME Legal Reps; correct?

4                     MR. WARNER:  Objection.  She doesn't use

5              the term "IME Legal Reps."  That's totally

6              improper.

7                     MR. KATAEV:  Please, no speaking

8              objections.  A reminder of our Rule 30.

9          A.    Repeat the question, please.  I'm sorry.

10    BY MR. KATAEV:

11         Q.    Based on this video clip, is it your

12    understanding that Eugene Liddie had no ownership

13    interest in IME Legal Reps?

14                    MR. WARNER:  Objection.

15         A.    I do not know.

16                    MR. KATAEV:  We're going to continue

17             playing from 6:14.

18                    (Video recording played.)

19                    MR. KATAEV:  Let the record reflect we

20             stopped at 6:52.

21    BY MR. KATAEV:

22         Q.    In this part of the clip, Safa is asking

23    to transfer everything from the Companions website

24    to the new website; correct?

25         A.    That's what I heard, yes.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

29

1                         S. Katz

2          Q.    When the website was created for her, she

3     did not want that website linked to her; correct?

4          A.    That's what I heard; correct.

5          Q.    Safa asked Giant Partners to transfer the

6     Companions' marketing materials to the new website;

7     correct?

8          A.    That's what I heard; correct.

9          Q.    The marketing materials would include

10    things such as the CRM; correct?

11         A.    I do not know if a new CRM instance was

12    started for them or this new website.

13         Q.    An individual that would know the answer

14    to that is Mr. Corey Weissman; correct?

15         A.    No.

16         Q.    How do you know that Corey Weissman

17    doesn't know that?

18         A.    All due respect, Corey Weissman is an

19    out-of-state salesman and has no knowledge with the

20    exception of the first sale that was made.

21         Q.    Corey Weissman is present at this virtual

22    meeting that we're watching; correct?

23         A.    Yes.

24         Q.    Do you know the date that this video was

25    taken?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

30

1                          S. Katz

2          A.    I do.

3          Q.    Would it help you if I pointed to the

4    timestamp on the screen?

5          A.    Thank you.  Yes.  I was looking through

6    my notes, but that is when the video was taken.

7          Q.    For the record, that date is April 10th,

8    of 2023; correct?

9          A.    Correct.

10         Q.    And the title to the video is "Giant

11   Partners and IME Companions"; correct?

12         A.    Correct.

13         Q.    Do you have any knowledge as to when

14   Giant Partners sent a contract for the new company?

15         A.    I do have knowledge of that agreement.

16         Q.    Do you know when it was sent?

17         A.    Yes.  It was sent on 8/25/2003 [sic].

18         Q.    August 25th, 2023?

19         A.    Correct.

20         Q.    To which company was the contract sent?

21         A.    I would have to look that up.  I think I

22   supplied that information.

23               Would you like me to look that up?

24               MR. KATAEV:  I don't want you to look it

25         up during the deposition.  We'll leave a blank

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

31

1                          S. Katz

2          in the transcript and ask your attorney to work

3          with us to provide that information.

4    TO BE FURNISHED:

5              MR. KATAEV:  I'm going to continue

6          playing the video from 6:52, and I'll stop at

7          an appropriate time.

8              (Video recording played.)

9              MR. KATAEV:  Let the record reflect that

10         I stopped at 7 minutes, 38 seconds.

11   BY MR. KATAEV:

12         Q.    Mr. Katz, were you able to hear this

13   portion of the clip?

14         A.    I was.

15         Q.    What is your understanding as to how

16   Mr. Liddie's name is spelled?

17         A.    I did not write it down.  Why don't you

18   rewind it, and I can repeat it back to you.

19         Q.    Do you have any knowledge as to

20   whether -- withdrawn.

21              In this clip, Safa Gelardi spells

22   Liddie's last name; correct?

23         A.    That's what I heard; correct.

24         Q.    Are you aware that Safa misspelled his

25   name?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

32

S. Katz

1

2          A.     No, I am not.

3          Q.     You're not aware of any -- withdrawn.

4                 Was there any conversation amongst you

5    and any individual at Giant Partners concerning the

6    spelling of Mr. Liddie's last name?

7          A.     There was not.

8                 MR. KATAEV:  I'm going to continue from

9          7:38 -- you know what?  Before I do that, I

10         want to ask one question.

11   BY MR. KATAEV:

12         Q.     Based on your review of this video, Safa

13   was in the process of purchasing a domain called

14   "Plaintiff Advocates"; correct?

15         A.     Correct.

16         Q.     To your knowledge, did Safa ever complete

17   that purchase?

18         A.     I am not aware of that.

19         Q.     Giant Partners never actually created a

20   website called "Plaintiff Advocates"; correct?

21         A.     Not to my knowledge.

22         Q.     Giant Partners created a website called

23   "IME Legal Reps"; correct?

24         A.     Correct.

25         Q.     What knowledge, if any, do you have

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                              33

1                         S. Katz

2        concerning how or when a decision was made to change

3        the name from Plaintiff Advocates to IME Legal Reps?

4                    MR. WARNER:  Objection.

5             A.    I have no knowledge.  Just everything I

6        have heard in this video.

7        BY MR. KATAEV:

8             Q.    The contract that you referred to that

9        was sent on August 25th, 2023, is that the same

10       contract that was ultimately sent for the work

11       discussed in this virtual meeting?

12            A.    Yes, it was.

13            Q.    And does it refresh your recollection now

14       based on our discussion about IME Legal Reps whether

15       that contract was made out to IME Legal Reps?

16            A.    I would have to look at the contract.

17       But based on my knowledge, I am fairly certain it

18       was.

19                    MR. KATAEV:  We're continuing to play

20            from 7:38.

21                    (Video recording played.)

22                    MR. KATAEV:  Let the record reflect that

23            I stopped at 9:13.

24       BY MR. KATAEV:

25            Q.    Were you able to hear that portion of the

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

34

1                          S. Katz

2    clip, Mr. Katz?

3         A.    I was.  Jeremy was a little bit garbly,

4    but for the most part, yes.

5         Q.    Is it fair to say that Jeremy is acting

6    in a manner towards closing a sale with Ms. Gelardi?

7         A.    I wouldn't describe it as that; I'd

8    describe it as continuation of our previous

9    agreement.

10        Q.    Do you know why Safa talked about

11   purchasing everything under Eugene Liddie's name?

12        A.    Only based on this video and what we've

13   just heard.

14        Q.    To your knowledge, why was that?

15        A.    It seemed like she wanted everything in

16   this gentleman's name because of a previous incident

17   that's going on that we all just heard in the

18   beginning.

19        Q.    Is it fair to say that Safa is seeking to

20   hide her involvement in the new company?

21             MR. WARNER:  Objection.

22        A.    I don't know.  May I say that there are

23   clients that come to us, and we do work for them.

24   They have a bad company name and after we've worked

25   with them, we've suggested other names, and we do a

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

35

                        S. Katz

1

2    complete rebranding.

3            So it's not unusual for Giant Partners to

4    do a complete rebranding.  In this situation, the

5    young lady asked us to.  But that is our normal

6    course that we do as an agency.

7    BY MR. KATAEV:

8        Q.    Is it fair to say that Giant Partners

9    generally does not inquire as to the reasons for a

10   rebranding?

11       A.    Correct.

12           MR. KATAEV:  Let the record reflect that

13       I'll continue the clip from 5 minutes and 13

14       seconds.

15           (Video recording played.)

16           MR. KATAEV:  Let the record reflect that

17       I stopped at 9 minutes, 51 seconds.

18   BY MR. KATAEV:

19       Q.    Were you able to hear that portion of the

20   clip; Mr. Katz?

21       A.    I was.

22       Q.    You testified about the general scope of

23   work that Giant Partners does sometimes in

24   rebranding; correct?

25       A.    Yes.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

36

                              S. Katz

1

2          Q.    This virtual meeting was a discussion

3    about a rebranding of Companions; correct?

4          A.    Correct.

5          Q.    And Giant Partners helped Safa rebrand

6    IME Companion; correct?

7                (Court reporter requested clarification.)

8    BY MR. KATAEV:

9          Q.    Giant Partners helped Safa in rebranding

10   Companions; correct?

11         A.    Based on this video, yes, we helped this

12   client rebrand their website.

13         Q.    There was discussion in the prior clip

14   that I shared before 9 minutes, 12 seconds that IME

15   Legal Reps was registered in Texas.

16               Did you hear that or do you recall that?

17         A.    I did hear something to that effect, yes.

18         Q.    Do you have any knowledge as to why IME

19   Legal Reps was registered in Texas?

20         A.    Unless the young lady had mentioned why,

21   I do not have any other knowledge.

22         Q.    What knowledge, if any, do you have about

23   this case since receiving the subpoena?

24         A.    The video we're watching right now was

25   the only enlightenment I had to anything that

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

37

1                      S. Katz

2    potentially might be going on.  Prior to that, there

3    was nothing.

4           Q.    After that, did you become aware of

5    anything concerning the -- this case?

6           A.    Nothing more.

7           Q.    Are you aware of the existence of other

8    companies that performed IME and server services?

9           A.    I am not.

10              MR. KATAEV:  We're going to continue from

11          9:51.

12              (Video recording played.)

13              MR. KATAEV:  Let the record reflect we

14          stopped at 12:56.

15   BY MR. KATAEV:

16          Q.    Were you able to hear this portion of the

17   clip?

18          A.    Most of it, yes.

19          Q.    Is it your understanding that there is a

20   contract between Giant Partners and Plaintiff

21   Advocates?

22          A.    That is what they discussed.

23              (Simultaneous speakers.)

24          A.    But there is not.

25          Q.    Were you ever made aware about the

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

38

1                     S. Katz

2      existence of an enjoined customers' list?

3           A.    Can you elaborate on that, please?

4           Q.    As the custodian of records for Giant

5      Partners, is Giant Partners in possession of any

6      documents containing a list of customers that IME

7      Companions is not allowed to contact or serve?

8           A.    We are not in possession of that type of

9      list.

10          Q.    To your knowledge, was Giant Partners

11     ever made aware about the existence of such a list?

12          A.    Not to my knowledge.

13          Q.    To your knowledge, did IME Companions,

14     Plaintiff Advocates or IME Legal Reps ever ask Giant

15     Partners not to reach out to a specified set or list

16     of customers?

17          A.    Not to my knowledge.

18          MR. WARNER:  Objection to form.

19     BY MR. KATAEV:

20          Q.    To your knowledge, there does exist a

21     contract between Giant Partners and IME Legal Reps;

22     correct?

23          A.    Correct.

24          MR. KATAEV:  I'm going to continue from

25          12:56.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                               39

1                          S. Katz

2                   (Video recording played.)

3                   MR. KATAEV:  Let the record reflect that

4            I stopped at 13:59.

5       BY MR. KATAEV:

6            Q.    Were you able to hear that portion of the

7       clip?

8            A.    For the most part, yes.

9            Q.    In this clip, Safa said that she

10      purchased PlaintiffAdvocates@gmail.com; correct?

11           A.    That's what I heard, correct.

12           Q.    To your knowledge, as custodian of

13      records for Giant Partners and based upon a review

14      of records maintained by Giant Partners, Safa also

15      created an email address -- an email address,

16      IMELegalReps@gmail.com; correct?

17           A.    Correct.

18                  MR. WARNER:  Objection.

19                  Could you repeat that question?

20                  (Record read.)

21      BY MR. KATAEV:

22           Q.    Earlier in this video, Safa Gelardi says

23      that she's a 90 percent owner of IME Legal Reps;

24      correct?

25                  MR. WARNER:  Objection.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

40

1                        S. Katz

2          A.    That is what I heard.

3     BY MR. KATAEV:

4          Q.    In this video, Jeremy refers to Safa as a

5     silent partner of IME Legal Reps; correct?

6               MR. WARNER:  Objection.

7          A.    In my opinion, I believe he's repeating

8     the words that she said to him.

9               MR. KATAEV:  We're going to continue from

10          13:59.

11               (Video recording played.)

12               MR. KATAEV:  Let the record reflect that

13          I stopped at 15 minutes, 39 seconds.

14     BY MR. KATAEV:

15          Q.    Were you able to hear this portion of the

16     clip?

17          A.    I was.  A little garbly still, but I was.

18          Q.    In this portion of the clip, Safa refers

19     to being destroyed and being held in contempt;

20     correct?

21          A.    That's what I heard.

22          Q.    Based on your review of this video, is it

23     fair to say that Safa was aware of the existence of

24     orders preventing her from serving certain

25     customers?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                      41

1                      S. Katz

2              MR. WARNER:  Objection to form.

3              (Court reporter requested clarification.)

4        A.    I'm sorry.  Can you just repeat the

5    question for me?

6    BY MR. KATAEV:

7        Q.    Based on your review of this portion of

8    the clip, is it your understanding that Safa was

9    aware of orders forbidding her from serving certain

10   customers?

11             MR. WARNER:  Objection to form.

12       A.    I didn't perceive it that way.

13             MR. KATAEV:  We're going to continue from

14       15:39.

15             (Video recording played.)

16             MR. KATAEV:  Let the record reflect we

17       stopped at 16 minutes, 12 seconds.

18   BY MR. KATAEV:

19       Q.    In this portion of the clip, Safa refers

20   to creating a bio page of Mr. Liddie on the website;

21   correct?

22       A.    That's what I heard.

23       Q.    That never happened, did it?

24       A.    I do not know.  I'd have to review the

25   website.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

42

S. Katz

1
2      Q.    Based on your review of this video, is it

3      fair to say that Safa is the primary decision-maker

4      about what happens to the website?

5             MR. WARNER:  Objection.

6      A.    Only based on what she had said

7      previously.

8      BY MR. KATAEV:

9      Q.    Safa is, in fact, making decisions about

10     the content of the new website; correct?

11            MR. WARNER:  Objection.

12     A.    Again, based on the video, it sounds like

13     that.

14     BY MR. KATAEV:

15     Q.    The new website that was made by Giant

16     Partners was ultimately IMELegalReps.com; correct?

17            MR. WARNER:  Objection.

18     A.    Yes.

19            MR. KATAEV:  I'm going to continue

20            playing from 16:12.

21            (Video recording played.)

22            MR. KATAEV:  Let the record reflect we

23            stopped at 17:50.

24     BY MR. KATAEV:

25     Q.    In this portion of the clip, Safa starts

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

43

```
 1                    S. Katz
 2    saying the word "client" and then stops herself and
 3    gives the correct company name.
 4              Did you hear that?
 5         A.    I did not catch that.
 6              MR. WARNER:  Objection to form.
 7    BY MR. KATAEV:
 8         Q.    Are you familiar with a business that
 9    Safa is involved in called Client Exam Services?
10         A.    Never heard of that.
11         Q.    Did Giant Partners perform any work for a
12    website for Client Exam Services?
13         A.    Not to my knowledge.
14         Q.    Have you ever heard of a company called
15    Accompanied Exams?
16         A.    I have not.
17         Q.    To your knowledge, did Giant Partners
18    ever perform any work for a website for Accompanied
19    Exams?
20         A.    We have not.
21              MR. KATAEV:  Let the record reflect I'm
22         playing from 17:50.
23              (Video recording played.)
24              MR. KATAEV:  Let the record reflect that
25         I stopped at 18 minutes, 21 seconds.
```

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

44

1                          S. Katz

2       BY MR. KATAEV:

3            Q.     Are you able to hear that portion of the

4       clip?

5            A.     Again, little garbled, but, yes.  Yes.

6            Q.     Based on your review of this video, Vito

7       Gelardi was present for the meeting; correct?

8            A.     I have not seen a Vito, and you'd have to

9       replay that back just for me to hear that.

10           Q.     During this portion of the clip, Safa

11      asks Vito to help her get the address in Texas;

12      right?

13           A.     I heard something to that effect.  I

14      apologize, it got a little garbled.

15                  MR. KATAEV:  Playing from 18:21.

16                  (Video recording played.)

17                  MR. KATAEV:  Let the record reflect we

18           stopped at 21 minutes and 1 second.

19      BY MR. KATAEV:

20           Q.     Were you able to hear that portion of the

21      clip?

22           A.     Yes, I was.  Once again, a little

23      garbled.

24           Q.     During this portion of the clip, there's

25      a colloquy between Jeremy and Corey; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

45

S. Katz

1

2    A.    Can you say that again?  I'm sorry.

3    Q.    During this portion of the clip, there's

4    a small colloquy between Jeremy and Corey; correct?

5    A.    Correct.

6    Q.    And in that colloquy, Corey asks Jeremy

7    whether he's going to create a new HubSpot account

8    and link it to IME Companions; correct?

9    A.    That's what I heard; correct.

10   Q.    Based on that portion of the video, is it

11   your understanding that whatever information was

12   contained and IME Companions' HubSpot was accessible

13   for IME Legal Reps?

14   A.    It sounds --

15        MR. WARNER:  Objection.  Objection.  Wait

16        a second.  You're deliberately attempting to

17        confuse the witness, Mr. Kataev.

18        MR. KATAEV:  Your objection is noted for

19        the record.  May he please answer the question

20        without speaking objections.

21   A.    I would have to see if those accounts

22   were, in fact, linked.  I do not have knowledge of

23   that at this moment.

24   BY MR. KATAEV:

25   Q.    My question is based on the colloquy

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

46

1                    S. Katz

2       during this virtual meeting, is it your

3       understanding that that was the intention?

4               MR. WARNER:  Objection.

5          A.    It seems that that was the intention.

6       BY MR. KATAEV:

7          Q.    Just to clarify, based on your review of

8       this video and the colloquy between Jeremy and

9       Corey, the information contained in Companions'

10      HubSpot was intended to be made available at the new

11      website; correct?

12              MR. WARNER:  Objection.

13         A.    According to the video, that was the

14      plan.

15              MR. KATAEV:  Let the record reflect we're

16          continuing from 21 minutes and 1 second.

17              (Video recording played.)

18              MR. KATAEV:  Let the record reflect that

19          I stopped at 24:12.

20      BY MR. KATAEV:

21         Q.    Were you able to hear that portion of the

22      clip?

23         A.    I was with the exception of Corey.

24         Q.    In this portion of the clip, is it fair

25      to say that Safa is exclusively making decisions

47

1                     S. Katz

2      about what will be on the website?

3                MR. WARNER:  Objection.

4         A.    Based on this video and what she said, I

5      assume so.

6      BY MR. KATAEV:

7         Q.    You heard Safa saying during this virtual

8      meeting, I want this, in words to that effect;

9      right?

10               MR. WARNER:  Objection.

11        A.    I heard what you heard, sir.

12     BY MR. KATAEV:

13        Q.    When she refers to "I," is that -- is it

14     your understanding that she is saying that she is

15     the sole decision-maker?

16               MR. WARNER:  Objection.

17        A.    That would be my interpretation, based on

18     the video.

19     BY MR. KATAEV:

20        Q.    Based on your review of the entire video,

21     Safa does not say any words to the effect of, I have

22     to check with Mr. Liddie or someone else in order to

23     make decisions about the makeup of the website?

24               MR. WARNER:  Objection.

25        A.    I'd have to listen to the balance of it,

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

48

1                      S. Katz

2      but I do not know the answer to that question.

3      BY MR. KATAEV:

4           Q.    Prior to today's deposition, you reviewed

5      this video; correct?

6           A.    I did.

7           Q.    In its entirety; right?

8           A.    I did.

9           Q.    Based on your recollection from reviewing

10     it, there was no discussion about checking with

11     Mr. Liddie concerning the makeup of the website;

12     correct?

13               MR. WARNER:  Objection.

14           A.    I would have to listen to it again.  As I

15     mentioned in the beginning, I have a muscular

16     disorder, disease, and it brings me brain fog once

17     in a while, in all due respect.  So I can answer

18     that question after we watch the balance of this.

19               MR. KATAEV:  Okay.  We're playing from 24

20          minutes and 12 seconds.

21               (Video recording played).

22               THE WITNESS:  Excuse me.  Can we pause?

23               (Video recording stopped).

24               MR. KATAEV:  I'm sorry.  Did you ask to

25          pause?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

49

1                      S. Katz

2              THE WITNESS:  Yes, please.  I scheduled

3         this for an hour.  Is it possible that we can

4         take a five-minute break so I can use the

5         restroom?

6              MR. KATAEV:  Absolutely.  It's 1:25 p.m.

7         Eastern time.  We'll be back at 1:30 p.m.

8              THE WITNESS:  Don't go away.  I'll be

9         right back.

10             MR. KATAEV:  We wouldn't dream of it.

11             THE WITNESS:  Thank you.

12             THE VIDEOGRAPHER:  We are going off the

13        record.  The time is 1:25 p.m.

14             (A recess was taken from 1:25 p.m. to

15        1:35 p.m.)

16             THE VIDEOGRAPHER:  We are back on the

17        record.  The time is 1:35 p.m.

18             MR. KATAEV:  Mr. Katz, I'm going to

19        continue playing the video that we've been

20        watching from 24 minutes and 17 seconds.

21             THE WITNESS:  Thank you.

22             (Video recording played.)

23             MR. KATAEV:  Let the record reflect that

24        I stopped at 24 minutes and 32 seconds.

25        BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz --- June 11, 2024

50

1                       S. Katz

2          Q.    In the video on the right side of the

3    screen where Safa was, there was another individual

4    present there with her; correct?

5          A.    That's what I saw; correct.

6          Q.    To your knowledge, was that individual --

7    is that individual Vito Gelardi?

8          A.    I have no idea who that individual is.

9    If we play it back, I think the young lady

10   introduces him.  But I don't know.  We'd have to

11   continue.

12               MR. KATAEV:  Playing back at 24 minutes,

13          32 seconds.

14               (Video recording played.)

15               MR. KATAEV:  Let the record reflect we

16          stopped at 28:26.

17   BY MR. KATAEV:

18         Q.    Were you able to hear that portion of the

19   clip?

20         A.    Again, a little garbly from the young

21   lady's side, but for the most part, yes.

22         Q.    There was a reference to the changes to

23   the front end, but the back end would remain the

24   same; correct?

25         A.    I'd have to hear that again.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

51

1                        S. Katz

2              MR. KATAEV:  Playing back from 28:07.

3              (Video recording played.)

4              MR. KATAEV:  Stopping at 28:26.

5    BY MR. KATAEV:

6         Q.    Based on your review of that clip, is it

7    your understanding that only the front end was

8    changed and the back end would remain the same?

9         A.    Again, I didn't hear the back end.  But

10   yes, the website, or the front end, would be

11   changed.

12        Q.    To the exclusion of the back end;

13   correct?

14             MR. WARNER:  Objection.

15        A.    Again, I apologize.  I didn't hear the

16   reference to the back end.

17   BY MR. KATAEV:

18        Q.    Right.  Only the front end was referenced

19   in referring to changes; correct?

20        A.    Yes.

21             MR. WARNER:  Objection.

22             MR. KATAEV:  Playing from 28:26.

23             (Video recording played.)

24             MR. KATAEV:  Stopping at 28:33.

25   BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

52

S. Katz

1

2      Q.    At this portion of the clip, Safa

3   confirms with Jeremy that the back end will remain

4   the same; correct?

5      A.    That's what I heard.

6           MR. WARNER:  Objection.

7           MR. KATAEV:  Playing from 28:33.

8           (Video recording played.)

9           MR. KATAEV:  Stopping at 28:41.

10  BY MR. KATAEV:

11     Q.    Ms. Gelardi just introduced her husband

12  in the virtual meeting; correct?

13     A.    I don't know who that gentleman is, and I

14  didn't hear the introduction clearly.

15           MR. KATAEV:  Playing back from 28:30.

16           (Video recording played.)

17           MR. KATAEV:  Let the record reflect we

18      stopped at 29 minutes and 9 seconds.

19  BY MR. KATAEV:

20     Q.    During this portion of the video, Safa

21  introduces her husband during the virtual meeting;

22  correct?

23     A.    Again, I apologize.  I didn't hear the

24  introduction.  It was garbly and I didn't catch his

25  name.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

53

S. Katz

1

2          Q.     Do you know Vito Gelardi to be Safa

3     Gelardi's husband?

4          A.     I have no knowledge that she's married.

5          MR. KATAEV:  Playing from 29 minutes and

6          9 seconds.

7               (Video recording played.)

8          MR. KATAEV:  Let the record reflect that

9          we stopped at 30 minutes.  That's because the

10         clip has to stop at 30 minutes at this website.

11         We're going to go on to the next link, which is

12         a continuation of the same recording.  Playing

13         from 30 minutes.

14              (Video recording played.)

15         MR. KATAEV:  Let the record reflect that

16         I stopped at 30 minutes, 45 seconds.

17    BY MR. KATAEV:

18         Q.     During this portion -- withdrawn.

19              Mr. Katz, were you able to hear this

20    portion of the clip?

21         A.     Yes.  The young lady was very garbly, but

22    yes.

23         Q.     During this portion of the clip, Safa

24    specifically references that the changes are

25    imperative to be completed as soon as possible due

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

54

1                        S. Katz

2      to court deadlines; correct?

3            A.    That's what I heard.

4            Q.    Was it your understanding based on a

5      review of the video that Safa recognized that her

6      conduct with the website could have implications

7      with respect to the lawsuit?

8                  MR. WARNER:  Objection.

9                  (Court reporter requested clarification.)

10                 MR. KATAEV:  Could have implications with

11           the lawsuit.

12                 MR. WARNER:  Objection.

13           A.    I did not interpret it necessarily that

14     way.

15                 MR. KATAEV:  I'm going to continue with

16           30 minutes 45 seconds.

17                 (Video recording played.)

18                 MR. KATAEV:  Let the record reflect that

19           we stopped at 31 minutes and 10 seconds.

20     BY MR. KATAEV:

21           Q.    During this portion, were you --

22     withdrawn.

23                 Were you able to hear this portion of the

24     clip?

25           A.    I wasn't able to hear the young lady very

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

55

1                    S. Katz

2       well.  I know she said some instructions, but not

3       crystal clear.

4            Q.    During your review of the clip now or in

5       prior instances when you reviewed the clip, did you

6       understand Safa was asking her husband to provide

7       her Apple phone?

8            A.    I --

9                  MR. WARNER:  Objection.

10           A.    -- do not recall that.

11      BY MR. KATAEV:

12           Q.    There was a reference to someone named

13      Jenna.

14                 Do you know who that is?

15           A.    I do not.

16           Q.    Do you have any knowledge as to the

17      number of phones that Safa Gelardi has?

18           A.    I do not know.

19           Q.    Do you know whether Giant Partners

20      maintains more than one phone number for Safa

21      Gelardi in its records?

22           A.    To my knowledge, we have one phone

23      number.

24           Q.    How many email addresses were used to

25      communicate with Safa?  That is, how many email

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

56

S. Katz

1

2      addresses does Safa have that Giant Partners used to

3      communicate with Safa?

4           A.    To my knowledge, it was the original IME

5      Companions, and then the most recent one, IME Legal

6      Reps.  Besides that, I don't know of any other email

7      addresses that she has.  I'd have to do research.

8           Q.    With respect to the phone numbers that

9      are used to communicate with Safa, the one that

10     Giant Partners maintains in its records, do you know

11     what that number is?

12          A.    I do not.

13               MR. KATAEV:  We'll leave a blank in the

14          transcript for that to be provided, and I'll

15          work with your attorney to ask for that.

16               THE WITNESS:  Sure.

17               MR. ALLEN:  Agreed.

18     TO BE FURNISHED:

19               MR. KATAEV:  We're going to play from 31

20          minutes and 10 seconds.

21               (Video recording played.)

22               MR. KATAEV:  Let the record reflect that

23          we stopped at 31 minutes and 41 seconds.

24     BY MR. KATAEV:

25          Q.    Were you able to hear this portion of the

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

57

S. Katz

1

2          clip?

3              A.    Again, she was quite garbly, and I know

4          she asked for requests.  I'd have to hear it again

5          regarding invoicing or something.

6              Q.    In this portion of the clip, Safa sought

7          to assure herself -- withdrawn.

8                   In this portion of the clip, Safa sought

9          assurances that the agreement between Giant Partners

10         and her would be kept confidential; correct?

11                  MR. WARNER:  Objection.

12             A.    That's what I heard.  Correct.

13         BY MR. KATAEV:

14             Q.    What reason, if any, do you know of that

15         gave rise to Safa's request?

16                  MR. WARNER:  Objection.

17             A.    I don't know.  We have DNA -- excuse me.

18         We have -- I apologize.

19                  We have agreements with our clients when

20         we start not to share information and to keep it

21         confidential.  So I only assumed it was just a

22         continuation of that.  Non-disclosure.  I apologize.

23         Non-disclosure agreements.

24                  MR. KATAEV:  We're just going to finish

25             up the clip and then I'll ask you some final

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

58

S. Katz

1

2      questions about the video.  Starting from 31

3      minutes and 41 seconds.

4              (Video recording played.)

5              MR. KATAEV:  Let the record reflect that

6      the video is completed at approximately 31

7      minutes and 35 seconds -- I believe 33 minutes.

8  BY MR. KATAEV:

9      Q.   Everything that was discussed in this

10  virtual meeting was for a new website that was

11  ultimately IMELegalReps.com; correct?

12              MR. WARNER:  Objection.

13              (Simultaneous speakers.)

14              (Court reporter requested clarification.)

15      A.   Yes.

16  BY MR. KATAEV:

17      Q.   And everything discussed in this video is

18  about IME Legal Reps; correct?

19              MR. WARNER:  Objection.

20      A.   Yes, it is, to my knowledge.

21  BY MR. KATAEV:

22      Q.   Giant Partners never made a website for

23  Plaintiff Advocates; correct?

24      A.   Correct.

25      Q.   Based on your knowledge, the contract

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

59

1                         S. Katz

2      that was sent from Giant Partners was made out to

3      IME Legal Reps; correct?

4           A.    Correct.

5           Q.    And this work was performed for a website

6      and a company that Safa stated during this video was

7      owned 90 percent by her as a silent partner;

8      correct?

9                 MR. WARNER:  Objection.

10          A.    Based on what I heard in the video, yes.

11     BY MR. KATAEV:

12          Q.    The two clips that we watched today

13     represent a video that was produced by Giant

14     Partners in response to a subpoena issued by IME

15     WatchDog; correct?

16          A.    Can you repeat that again?

17          Q.    The two links that I showed you comprise

18     one video that Giant Partners sent to IME WatchDog

19     in response to a subpoena issued by IME WatchDog;

20     correct?

21          A.    The video was in reference to, obviously,

22     building this.  But how does the subpoena tie in to

23     this video?  I apologize.  I don't understand that

24     aspect of it.

25          Q.    I'll rephrase.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz   ---   June 11, 2024

                                                        60

1                       S. Katz

2              The only reason this video was sent to us

3       was because we issued a subpoena to Giant Partners;

4       correct?

5              A.    Yes.

6              Q.    The events depicted in this video are a

7       fair and accurate depiction of what it purports to

8       show; correct?

9                   MR. WARNER:  Objection.

10             A.    I concur.

11                  MR. ALLEN:  Sheldon, with what, the

12             objection or that it's accurate?

13                  THE WITNESS:  That it's accurate.  Can I

14             agree to the objection?  I didn't know that.

15                  MR. KATAEV:  The objection is reserved

16             for the judge.

17                  THE WITNESS:  Gotcha.

18                  MR. KATAEV:  Unless Mr. Allen instructs

19             you not to answer a question, please answer the

20             question.

21                  THE WITNESS:  Fair enough.

22                  MR. KATAEV:  We're going to place up on

23             the screen what will be marked as Hearing

24             Exhibit 45.

25                  (Plaintiff's Hearing Exhibit 45, email,

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

61

1                          S. Katz

2            marked for identification.)

3       BY MR. KATAEV:

4            Q.    Mr. Katz, are you familiar with this

5       document?

6            A.    I believe I read it before I -- before

7       everything was sent to you.  I would have to refresh

8       and read the whole thing again.

9            Q.    Based on a review of what's on the screen

10      now, this is an email dated January 18th, 2023, from

11      Tiffany Laszlo to Safa Gelardi; correct?

12           A.    I see February 6th, 2023, because I'm

13      looking for where you're referencing.  Give me a

14      second.

15           Q.    I apologize.  I'm going to move down to

16      the beginning of the email chain.

17           A.    I'm sure that's a thread.

18                 MR. KATAEV:  Let the record reflect that

19           we're on the portion of the email chain

20           containing the date January 18th, 2023, at

21           12:46 p.m.

22      BY MR. KATAEV:

23           Q.    Do you see that?

24           A.    I do.

25           Q.    In reviewing this chain, as we scroll

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

62

1                         S. Katz

2       down through it, was this email made and kept in the

3       ordinary course of business with Giant Partners?

4              A.    To my knowledge, yes.

5              Q.    To your knowledge, who is Tiffany Laszlo?

6              A.    She is an account manager for Giant

7       Partners.

8              Q.    She is an individual that works with

9       customers to achieve the goals set forth in Giant

10      Partners' agreements with the customers?

11             A.    More of a liaison between and giving

12      information.

13             Q.    In this particular email, Tiffany writes

14      to Safa thanks for meeting with her on that date;

15      correct?

16             A.    That's what I see, yes.

17             Q.    And you testified earlier that HubSpot is

18      just a CRM; correct?

19             A.    It is an amazing CRM that does a lot of

20      features.

21             Q.    There's a reference to the Contacts page

22      on HubSpot.

23                   Do you see that?

24             A.    I do.

25             Q.    What is contained on the contacts page?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

63

1                          S. Katz

2          A.    I do not know.

3          Q.    Going up in this email chain to another

4    email on the same date of 2:22 p.m., Tiffany sent

5    another email to Safa; correct?

6          A.    I'm reading it as you're showing it to

7    me.  Yes; correct.

8          Q.    Just going back for a second about what

9    would be listed on the contacts page, who would know

10   what is on that page?

11         A.    I would have to ask -- my guess would be

12   Jeremy Koenig.

13         Q.    Would Corey Weissman know what's on that

14   page?

15               (Court reporter requested clarification.)

16         A.    No.

17   BY MR. KATAEV:

18         Q.    I'll represent to you, Mr. Katz, that in

19   the original emails there are no highlights.  We've

20   simply highlighted portions of the emails to assist

21   in asking questions.

22         A.    I understand.

23         Q.    In this email, focusing on what's

24   highlighted, Tiffany asked Safa for contacts of

25   clients that she currently has; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

64

                              S. Katz

1

2          A.    Correct.

3          Q.    To your knowledge, did Safa ever provide

4     contacts of customers in response to Tiffany's

5     request?

6          A.    I do not know.

7          Q.    Focusing on this February 1st, 2023,

8     email at 2:26 p.m., Tiffany asks Safa again to share

9     the existing contact list of customers; correct?

10         A.    Correct.

11         Q.    On February 6th, 2023, Safa responds to

12    Tiffany in an email containing various attachments;

13    correct?

14         A.    I do see a little paper clip there.  So I

15    have to assume there's attachments.

16         Q.    Don't get dizzy now, but I'm going to

17    scroll back down to just show you those attachments.

18              Referring to the end of the email chain

19    in this exhibit, there are five attachments listed;

20    correct?

21         A.    I do.

22         Q.    And one of those attachments are

23    highlighted.  It has the file name beginning with

24    IME Clients Master; correct?

25         A.    Correct.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

65

1                    S. Katz

2          Q.    Do you notice the little parenthesis with

3    the 1 inside of it right before the file extension?

4          A.    I do.

5          Q.    To your knowledge, what does that 1

6    usually mean, if you know?

7          A.    I don't know.

8          Q.    After this page of the exhibit, there's a

9    copy of the actual attachment.

10         A.    Right.

11         Q.    Do you see that?

12         A.    I do.

13         Q.    And just zooming out, this exhibit is a

14   spreadsheet; correct?

15         A.    Correct.

16         Q.    And it's titled -- forgive me -- "IME

17   WatchDog, Inc."; correct?

18         A.    That is what I'm seeing; correct.

19         Q.    And dated April 28th of 2017?

20         A.    Correct.

21         Q.    Now, Safa provided this list in response

22   to the email; correct?

23         A.    Correct.

24         Q.    And the attachments in this email were

25   ultimately used to contact customers on behalf of

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

66

1                       S. Katz

2        IME Legal Reps; correct?

3              A.    I am not --

4              MR. WARNER:  Objection.

5              A.    I am not aware of that.  A lot of times,

6        we'll take a preexisting customer list just to model

7        audiences.  So I do not know if this list was used

8        in any way to solicit.  But, of course, you can put

9        that in our -- and we can look into that.

10       BY MR. KATAEV:

11             Q.    Who would know or would be aware as to

12       whether this list was used to solicit customers?

13             MR. WARNER:  Objection to form.

14             A.    I would have to go back and do some

15       research.

16       BY MR. KATAEV:

17             Q.    Would Jeremy know?

18             A.    Because this happened a few years ago, I

19       don't know if he would know off the top of his head.

20       We have different team members.  So I would do the

21       research to find out what exactly was done with this

22       list.

23             Q.    Same answer with respect to Corey?

24             A.    No, same thing -- oh, actually, he has no

25       idea.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

67

1                          S. Katz

2          Q.     And how do you know that?

3          A.     Because in our organization, once a

4     salesman does his job, he, for the most part, is

5     at -- they, for the most part, are out of the loop

6     of communication.

7          Q.     This email was sent in February of 2023;

8     correct?

9          A.     I would have to -- based on what you're

10    showing me, yes.

11         Q.     You testified that you would have to do

12    research to ascertain who would have knowledge.

13                What research is it that you would do?

14         A.     I would start from the ground up.  I

15    would see who received that list, what was done with

16    it, just basic research on our end.

17         Q.     Does Tiffany remain employed by Giant

18    Partners?

19         A.     Yes.

20                MR. KATAEV:  We're just going to ask you,

21         Mr. Katz, to perform that research and preserve

22         all records related to any solicitations made

23         by Giant Partners on behalf of IME Legal Reps.

24                THE WITNESS:  Absolutely.

25                (Court reporter requested clarification.)

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

68

1                      S. Katz

2              MR. ALLEN:  Same question, just to repeat

3         that, please.

4              MR. KATAEV:  With respect to the

5         solicitations, we would want you to preserve

6         records related to IME Companions and IME Legal

7         Reps and any other company that's ever worked

8         with Giant Partners.

9              MR. ALLEN:  We can talk about that

10         afterward.  But there is no question pending.

11             MR. KATAEV:  Understood.

12             (Court reporter requested clarification.)

13    BY MR. KATAEV:

14        Q.    In this February 6th email, Safa sent

15    Giant Partners several attachments; correct?

16        A.    That is what I see, yes.

17        Q.    Giant Partners used this list in order to

18    create a marketing campaign for IME Legal Reps;

19    correct?

20        A.    I do not know how this list was used so

21    I'd like to get back with a more refined answer.

22        Q.    To your knowledge, were the customers in

23    the list that we just looked at used -- withdrawn.

24             To your knowledge, were the customers on

25    this list that we just looked at targeted in

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

69

1                          S. Katz

2       marketing campaigns?

3                MR. WARNER:  Objection.

4            A.    I would have to research that again to

5       find out exactly what Giant Partners did with that

6       list.

7       BY MR. KATAEV:

8            Q.    To your knowledge, how was this list

9       utilized?

10           A.    I would have to do research to find out

11      how the list was utilized.

12           Q.    Do you have any knowledge as to whether

13      any individual at Giant Partners contacted anyone on

14      that list?

15           A.    I do not have that knowledge, but we do

16      not contact, as best practices, anyone on a client's

17      list from Giant Partners directly.

18           Q.    Did anyone at IME Legal Reps or IME

19      Companions request that Giant Partners engage in any

20      way with any customer at all?

21                MR. WARNER:  Objection.

22           A.    In regards to that list?

23      BY MR. KATAEV:

24           Q.    In general.  Any customer.

25           A.    Describe "customer."

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

70

1                        S. Katz

2         Q.    Any prospective lead.

3         A.    So can you just -- I apologize.  Can you

4    repeat the entire question?

5         Q.    Sure.  I'll rephrase the question.

6         A.    Thank you.

7         Q.    At any point in time, did anyone at IME

8    Companions or IME Legal Reps request that anyone at

9    Giant Partners engage with any prospective lead for

10   the business of the customer, i.e., any personal

11   injury law firm?

12        A.    As practice, we do not engage with any

13   leads from our clients.

14        Q.    Did Giant Partners maintain any client

15   list, contact list, or lead list for IME Companions?

16        A.    To my knowledge, we did.  And it was all

17   in their HubSpot instance.

18        Q.    In my earlier question, I asked you

19   whether Giant Partners engaged.  I'm going to

20   rephrase my question.

21              Did Giant Partners market to any personal

22   injury law firms at the request of anyone at IME

23   Companions or IME Legal Reps?

24        A.    Yes.  That was the premise of the

25   marketing campaign.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

71

1                          S. Katz

2          Q.    In what ways was Giant Partners marketing

3     to a law firm -- personal injury law firms?

4          A.    We were -- we were displaying IME social

5     ads and potentially, I have to look into it, sending

6     emails to these firms for IME.

7          Q.    What about LinkedIn, did Giant Partners

8     utilize LinkedIn in order to market to personal

9     injury law firms?

10         A.    I have to look in to see if we actually

11    went through to that process.  As you know, the

12    second contract was canceled within a month, so

13    nothing was done there.

14         Q.    Did Giant Partners maintain any client

15    list, contact list or lead list for IME Legal Reps?

16         A.    Not to my knowledge.

17         Q.    Is it fair to say that any list that IME

18    Companions used was the same list that IME Legal

19    Reps ultimately used?

20         A.    Gosh.

21              MR. WARNER:  Objection.

22         A.    I -- I'm not sure.  No, I do not know.

23    BY MR. KATAEV:

24         Q.    How would you be able to ascertain that

25    information?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

72

1                     S. Katz

2        A.    I have to do research to find out.  In

3    retrospect, IME Legal Reps, again, that was an

4    agreement that was only with Giant Partners for a

5    month, and they broke their contract.  So I really

6    don't believe any marketing was done for IME Legal

7    Reps.  I'd have to research that.  But it was just a

8    very short amount of time.

9        Q.    Giant Partners did perform some work for

10   IME Legal Reps; correct?

11       A.    Correct.

12       Q.    And Giant Partners did transfer items

13   from the Companions' website to the IME Legal Reps'

14   website; correct?

15       A.    Per their request, correct.

16       Q.    To your knowledge, was the plan for IME

17   Legal Reps to market to the same personal injury law

18   firms that Giant Partners previously marketed to?

19       A.    Yes.

20       Q.    IME Legal Reps had a HubSpot account as

21   well; correct?

22       A.    To my knowledge, yes.

23       Q.    When the IME Legal Reps' HubSpot was

24   created, it was linked to the Companions' HubSpot;

25   correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

73

                            S. Katz

1

2          A.    I have to confer, but to my knowledge, I

3     think so.

4          Q.    And that was based on the colloquy that

5     was had between Corey and Jeremy; correct?

6          A.    Correct.  And the call with the young

7     lady.

8          Q.    The attachment that we reviewed in the

9     February 6th email was a list from IME WatchDog;

10    correct?

11         A.    That's what you showed me.

12         Q.    Are you aware of any differences between

13    any lists maintained by IME WatchDog, IME Companions

14    and/or IME Legal Reps?

15         A.    I am not.

16         Q.    To your knowledge, were the lists

17    identical?

18         A.    I do not know.

19              MR. KATAEV:  I'm going to go on to the

20         next exhibit.  Marking it Hearing Exhibit 39.

21              (Plaintiff's Hearing Exhibit 39, email

22         chain, marked for identification.)

23    BY MR. KATAEV:

24         Q.    This is another email chain between Giant

25    Partners and Safa Gelardi; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

74

1                       S. Katz

2        A.    Correct.

3        Q.    Focusing your attention to the first

4    email on the chain dated April 10, 2023, at 12:59

5    p.m., do you see that?

6        A.    I do not.  I just see -- yes, I do.  I

7    see Corey's picture and that date; correct.

8        Q.    In this email, IMELegalReps@gmail.com

9    sends an email address, a phone number and an

10   address; correct?

11       A.    Correct.

12       Q.    And this is the same date as the virtual

13   meeting that we went over in the beginning; correct?

14       A.    Correct.

15             MR. WARNER:  Objection.

16   BY MR. KATAEV:

17       Q.    This email was sent after the virtual

18   meeting; correct?

19       A.    Yes.

20       Q.    The 205 Charleston Lane address is the

21   same address that Safa provided during the virtual

22   meeting; correct?

23       A.    I have to go back and listen to that

24   again.  But I know they were referring to a Texas

25   address.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

75

1                    S. Katz

2        Q.    When Giant Partners communicated with

3    email address IMELegalReps@gmail.com, to your

4    knowledge, who was the individual sending the

5    emails?

6        A.    I would have to research that.  The only

7    thing I do know is our system sent the invoice to

8    that email address.

9        Q.    To your knowledge, was Safa the

10   individual that was sending these emails?

11       A.    I don't know who was sending the emails.

12       Q.    Had you -- withdrawn.

13             What is your understanding of why this

14   email was sent to Corey Weissman?

15       A.    My understanding is follow-up to the

16   video that we just watched.

17       Q.    Is it fair to say that the information

18   provided in the 12:59 email was necessary to create

19   the Giant Partners' agreement?

20       A.    It was, yes.

21       Q.    In the email at 2:16 p.m., Corey Weissman

22   refers to the individual from IMELegalReps@gmail.com

23   as Safa; correct?

24       A.    Hi Safa; correct.

25       Q.    And this email is consistent with the

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

76

                              S. Katz

1

2       discussions held during the virtual meeting that

3       Safa was the 90 percent owner and Liddie was a 10

4       percent owner; correct?

5                    MR. WARNER:  Objection.

6            A.    That's what I heard on the video.

7       BY MR. KATAEV:

8            Q.    In this email, Corey confirms that the

9       agreement consists of the same details, just a new

10      company; correct?

11                   MR. WARNER:  Objection.

12           A.    That's how I interpret it.  Yes.

13      BY MR. KATAEV:

14           Q.    Based on your review of just these two

15      emails, is it fair to say that Safa was

16      communicating with Giant Partners through

17      IMELegalReps@gmail.com?

18                   MR. WARNER:  Objection.

19           A.    Based on this email purely it looks like

20      it is directed to her.  So I don't want to make any

21      assumptions whose email address it is.  But it was

22      addressed to her.

23                   MR. KATAEV:  I'm placing up on the screen

24           Hearing Exhibit 39.  This is another email

25           addressed between Giant Partners and IME Legal

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

77

1                    S. Katz

2        Reps.

3             I'm going to go back.  It's the same

4        exhibit.

5    BY MR. KATAEV:

6        Q.    When Corey Weissman refers to the new

7    agreements, he's referring to the agreement for IME

8    Legal Reps; correct?

9             MR. WARNER:  Objection.

10       A.    Yes, to my knowledge.

11   BY MR. KATAEV:

12       Q.    And this agreement for IME Legal Reps was

13   identical to the agreement that Giant Partners had

14   with IME Companions; correct?

15            MR. WARNER:  Objection.

16       A.    I would have to look at both accounts in

17   detail, but topically, they look fairly similar.

18   BY MR. KATAEV:

19       Q.    I'm highlighting the end of this email at

20   2:16 p.m. where Corey says we are greatly looking

21   forward to working with you again.  That reference

22   is to working with Safa again; right?

23            MR. WARNER:  Objection.

24       A.    Being that the email was directed to

25   Safa, I would assume so.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

78

1                      S. Katz

2     BY MR. KATAEV:

3          Q.    Corey used the term again because he

4     previously worked with Safa when working on IME

5     Companions; correct?

6          A.    Correct.

7                MR. WARNER:  Objection.

8     BY MR. KATAEV:

9          Q.    Corey is also discussing payment details

10    for IME Legal Reps with Safa; correct?

11               MR. WARNER:  Objection.

12         A.    Correct.

13    BY MR. KATAEV:

14         Q.    To your knowledge, how was payment

15    made --

16               (Court reporter requested clarification.)

17         Q.    -- at the payment link?

18               MR. WARNER:  I couldn't hear that either.

19               MR. KATAEV:  I'll rephrase.

20    BY MR. KATAEV:

21         Q.    To your knowledge, how was payment made

22    at the payment link?

23         A.    It was made via credit card.

24         Q.    Do you know who paid?

25         A.    I am looking.  I would have to get that

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

79

S. Katz

1
2    information for you.

3         Q.    Giant Partners maintains a record of its

4    payments; correct?

5         A.    Yes.  We could find out whose credit

6    card.  We don't have the number, but we could find

7    out who the name was on that credit card.

8              MR. KATAEV:  We'll follow up with

9         Mr. Allen about that.

10   BY MR. KATAEV:

11        Q.    When was it that you first heard of the

12   name Eugene Liddie?

13        A.    When I received your subpoena.

14        Q.    Did you have any conversations with Safa

15   Gelardi upon receipt of the subpoena?

16        A.    I did not.

17        Q.    Did you have any conversations with

18   Eugene Liddie since the receipt of the subpoena?

19        A.    We did not.

20        Q.    I'm referring to the same email chain

21   that we've been looking at, Hearing Exhibit 39.  And

22   I'm focusing your attention on the email dated

23   April 11, 2023, at 10:14 a.m. from IME Legal Reps to

24   Corey Weissman.

25              Do you see that?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                              80

1                        S. Katz

2          A.    I do.

3          Q.    In this email, Safa provides the GoDaddy

4    account information for IME Legal Reps; correct?

5          A.    Someone provides that information.  I

6    can't confirm who it was.  But someone did, yes.  I

7    just don't see Safa's name.  That's the only reason

8    why I say that.

9          Q.    In the email that precedes this email

10   at -- it says April 11, 2023, at 10:59 a.m.  Corey

11   Weissman says, Good morning, Safa.

12              Correct?

13         A.    Yes.

14         Q.    And he follows up with her about the

15   agreement; correct?

16         A.    Yes.

17         Q.    And in response to this email, Safa sends

18   the GoDaddy account information, correct?

19              MR. WARNER:  Objection.

20         A.    Someone sends -- someone.  Again, I don't

21   want to assume but someone forwarded that

22   information to Corey from IME Legal Reps.  I'm

23   sorry, I don't mean to be difficult.  I just don't

24   have confirmation that it's her.

25   BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

81

S. Katz

1

2    Q.    Whoever sent the email did not identify

3    themselves in the email; correct?

4    A.    That's what it seems like to me.

5    Q.    These credentials for GoDaddy were for

6    IME Legal Reps; correct?

7         MR. WARNER:  Objection.  That's how I

8         interpret it.

9    BY MR. KATAEV:

10   Q.    It is not for IME Companions; correct?

11        MR. WARNER:  Objection.

12   A.    Not to my knowledge.

13   BY MR. KATAEV:

14   Q.    Does the password provided to the GoDaddy

15   account have any -- withdrawn.

16        To your knowledge, does this password

17   have any significance?

18   A.    No.

19   Q.    The password is -- forgive me --

20   A.    That's okay.  I'm reading it for the

21   first time, myself.

22   Q.    The password says "Levicunt62"; correct?

23   A.    That's what I'm reading.

24   Q.    Do you have any knowledge as to who this

25   is referring to?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

82

                              S. Katz

1

2          A.    I do not.

3          Q.    Are you aware that the owner of IME

4    WatchDog is Daniella Levi?

5          A.    I do not know who IME WatchDog is,

6    actually.

7          Q.    Are you aware that Ms. Levi's year of

8    birth, I think, is '62?

9          A.    No, sir.

10         Q.    Did you personally have any discussions

11   with Safa about this password?

12         A.    As I mentioned, I've had no discussions

13   with Safa.

14         Q.    Do you have any knowledge as to any

15   discussions had with anyone at Giant Partners with

16   Safa about this password?

17         A.    Not to my knowledge.  Wow.

18               (Indiscernible speaking.)

19               THE VIDEOGRAPHER:  I'm sorry.  Did you

20         say you want to go off the record?

21               MR. KATAEV:  Yes, please.  Let's go off

22         the record.

23               THE VIDEOGRAPHER:  We are going off the

24         record.  The time is 2:30 p.m.

25               (A recess was taken from 2:30 p.m. to

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

83

1                    S. Katz

2          2:33 p.m.)

3               (Safa and Vito Gelardi entered the

4          video-teleconference and exited.)

5               THE VIDEOGRAPHER:  We are back on the

6          record.  The time is 2:33 p.m.

7     BY MR. KATAEV:

8          Q.    Referring back to this exhibit,

9     April 11th, 2023, at 10:59 a.m.

10              In this email, Corey is discussing the

11    agreement for IME Legal Reps; correct?

12         A.    Correct.

13              MR. KATAEV:  We're going to move on to

14         Hearing Exhibit 57.

15              (Plaintiff's Hearing Exhibit 57, email,

16         marked for identification.)

17    BY MR. KATAEV:

18         Q.    This is an email dated April 12th, 2023,

19    at 12:53 p.m. from Conor to Safa; correct?

20         A.    Yes.

21         Q.    In this email, Conor says, "It's great to

22    have you back on board"; right?

23              MR. WARNER:  Objection to form.

24         A.    That's what I read.

25    BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

84

1                     S. Katz

2          Q.    When Conor says, "It's great to have you

3     back on board," it's because Safa previously worked

4     for Giant Partners; correct?

5          A.    Correct.

6          Q.    In this email, Conor is also introducing

7     Safa to account manager Estefania Sedano; correct?

8          A.    Correct.

9          Q.    To your knowledge, why did Conor

10    introduce Safa to Estefania?

11         A.    We have a host of account reps, and based

12    on workloads, Conor has the ability to insert

13    people.  So I am assuming he decided to bring this

14    account rep in versus Tiffany, who was working the

15    previous account.

16         Q.    So to your knowledge, it was Giant

17    Partners that made this decision?

18         A.    Yes.

19         Q.    A customer, in general, would not have

20    the ability to direct Giant Partners who they want

21    to work with; correct?

22         A.    On very, very rare occasions, if there's

23    a conflict, personalities, and I get involved.  But

24    that's very rare.

25         Q.    There were two time periods, generally

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

85

1                    S. Katz

2      speaking, of Giant Partners' involvement with Safa;

3      correct?

4            A.    Correct.

5            Q.    The first was with IME Companions and its

6      website; right?

7            A.    Correct.

8            Q.    And the second was with IME Legal Reps

9      and the transfer of IME Companions to IME Legal

10     Reps; right?

11               MR. WARNER:   Objection.

12           A.    To my knowledge, correct.

13     BY MR. KATAEV:

14           Q.    To your knowledge, was there any lull or

15     lack of activity in general between the two periods?

16           A.    Not to my knowledge.

17           Q.    To your knowledge, for both periods, was

18     Corey Weissman the same individual who worked with

19     Safa both times?

20           A.    He was.

21           Q.    Was Jeremy also an individual that worked

22     with Safa both times?

23           A.    He was.

24           Q.    Do you know of any other individuals at

25     Giant Partners that worked with Safa both times?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

86

1                          S. Katz

2          A.     Potentially, Conor McDaniel, who might

3     have had communication via email, but that's just

4     potentially.  He's a coordinator for us.

5          Q.     All the emails that we have looked at so

6     far concern solely IME Legal Reps; correct?

7                  MR. WARNER:  Objection.

8          A.     Most recently, in 2023, yes.

9     BY MR. KATAEV:

10         Q.     All the emails that we've reviewed so far

11    were communications with Safa; correct?

12         A.     As I stated before, I don't know if Safa

13    was the person that had the IME Legal Reps' email

14    address.  But based on these emails, the assumption

15    is that, yes.

16         Q.     We discussed previously the concept of

17    rebranding and the transferring of the website.

18                To your knowledge, what was the purpose

19    of the transfer and/or rebranding?

20         A.     To my knowledge, it was everything that

21    we all just watched on the video.  They wanted to

22    rebrand themselves.

23         Q.     You personally didn't have any

24    discussions about the transfer, but Corey Weissman

25    did; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

87

1                        S. Katz

2         A.     I did not.  And Corey was involved, as

3    you saw in the last video call we all watched.

4         Q.     In the marketing -- withdrawn.

5                In the virtual -- withdrawn.

6                In the recorded virtual meeting that we

7    reviewed at the beginning of this deposition, Safa

8    specifically stated that she was going to use a

9    general email address without linking it to her or

10   Liddie; correct?

11               MR. WARNER:  Objection.

12        A.     That's what I heard.

13   BY MR. KATAEV:

14        Q.     In the emails that you've seen thus far,

15   no one at IMELegalReps@gmail.com responded to say,

16   "I'm not Safa"; correct?

17               MR. WARNER:  Objection.

18        A.     I have not read that.

19   BY MR. KATAEV:

20        Q.     Other than the website, what else, if

21   anything, was transferred from Companions to IME

22   Legal Reps?

23        A.     Whatever information was in IME

24   Companions' HubSpot based on the communication I

25   have seen was ported over to their new HubSpot

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

88

1                         S. Katz

2       account.

3              Q.    Are you familiar with something called

4       marketing collaterals?

5              A.    That sounds very generic to me.  If you

6       could go more in-depth, I could probably answer the

7       question.

8              Q.    If I were to represent to you that Giant

9       Partners maintain folders called "Marketing

10      Collaterals," does that refresh your recollection?

11             A.    It does.

12             Q.    What is the type of information that is

13      contained in a Marketing Collaterals folder?

14             A.    Well, the best of my knowledge, all the

15      work that we've done for the client.

16             Q.    What does the term "collaterals"

17      specifically mean, to your knowledge?

18             A.    Artworks, content, anything that has to

19      do with their campaign, any verbiage, things like

20      that.

21             Q.    When customers provide information to

22      Giant Partners, is that something that is included

23      in the term "Marketing Collaterals"?

24             A.    Potentially, depending on what they

25      supply to Giant Partners.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

89

1                      S. Katz

2          Q.    And when you refer to the work that Giant

3     Partners does, you're referring to marketing;

4     correct?

5          A.    Correct.

6          Q.    Was it your understanding that IME

7     Companions was now going to operate as IME Legal

8     Reps?

9               MR. WARNER:  Objection.

10         A.    Based on the video we all watched, yes.

11    BY MR. KATAEV:

12         Q.    Did you have any discussion with anyone

13    at Giant Partners, IME Companions or IME Legal Reps

14    about the fact that Companions was now going to

15    operate as IME Legal Reps?

16         A.    Not until we received a subpoena.

17         Q.    What was your understanding of the

18    rebranding process?

19         A.    Based on the video we all just watched,

20    my understanding was that they wanted brand change

21    because of circumstances.

22         Q.    Is it fair to say that the sole reason

23    for the rebranding was to disassociate Companions

24    from the work performed?

25               MR. WARNER:  Objection.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

90

1                         S. Katz

2          A.    Based on the video we all watched, yes.

3     BY MR. KATAEV:

4          Q.    Would it be fair to say that the

5     rebranding was more of a cosmetic operation?

6                MR. WARNER:  Objection to form.

7          A.    For the most part, yes.

8     BY MR. KATAEV:

9          Q.    In what way, if in any way, was the work

10    performed by Giant Partners for IME Legal Reps not

11    cosmetic?

12         A.    I would have to look more into what we

13    did after we had produced the website.  I don't know

14    if there was anything else done after any kind of

15    marketing.

16         Q.    Based on these initial emails from

17    April 10th through April 12th, the only contact from

18    IME Legal Reps that Giant Partners dealt with was

19    Safa; correct?

20                MR. WARNER:  Objection.  Form.

21         A.    Yes.  To my knowledge, and these emails.

22    BY MR. KATAEV:

23         Q.    To your knowledge -- withdrawn.

24                Based on your review of the records, Safa

25    was in charge of the creation of the logo, colors,

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

91

1                        S. Katz

2      and other mock-ups for IME Legal Reps; correct?

3                  MR. WARNER:  Objection.

4           A.    Can you state that one more time, please.

5      BY MR. KATAEV:

6           Q.    Based on your review of the records

7      produced in response to the subpoena, Safa was in

8      charge of the creation of the logo, colors, and

9      other mock-ups for IME Legal Reps; correct?

10                 MR. WARNER:  Objection to form.

11          A.    To my knowledge, she assisted.

12     BY MR. KATAEV:

13          Q.    What was your understanding as to Safa's

14     role at IME Legal Reps?

15          A.    Based on the video that we just watched,

16     that was my understanding, everything that we all

17     saw.

18          Q.    That she was an owner?

19                 MR. WARNER:  Objection to form.

20          A.    The video said that she was, I think,

21     silent, but she was involved.

22     BY MR. KATAEV:

23          Q.    Okay.

24          A.    Again, I have no other knowledge other

25     than the video that we all watched regarding her

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                              92

1                            S. Katz

2       involvement and IME Legal.

3            Q.    When Giant Partners and IME Legal Reps

4       entered into an agreement with each other, what

5       services were contemplated to be provided?

6            A.    I don't want to assume.

7                  MR. WARNER:  Objection.

8            A.    I don't want to assume "contemplated,"

9       but I do know that we completed the website, and

10      then the contract was canceled.

11      BY MR. KATAEV:

12           Q.    Had the contract not been canceled, would

13      Giant Partners proceed to do the same work that it

14      did for IME Companions for IME Legal Reps?

15                 MR. WARNER:  Objection.

16           A.    Theoretically, yes.

17      BY MR. KATAEV:

18           Q.    If the contract wasn't canceled, Giant

19      Partners would have automatically proceeded to do

20      that work and not seek authorization; correct?

21                 MR. WARNER:  Objection.

22           A.    Can you explain "authorization"?

23      BY MR. KATAEV:

24           Q.    You wouldn't seek permission in order to

25      proceed; you would just proceed?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

93

S. Katz

1              MR. WARNER:  Objection.

2       A.    Everything that Giant Partners does is

3  approved by the client.  So we would have proceeded

4  based upon their direction.

5  BY MR. KATAEV:

6       Q.    And in seeking approval, you would seek

7  approval from Safa; correct?

8              MR. WARNER:  Objection.

9       A.    Based on the video that we all just saw,

10  I would assume so.

11  BY MR. KATAEV:

12      Q.    The pricing structure between Giant

13  Partners and IME Legal Reps is the same as the

14  pricing structure between Giant Partners and IME

15  Companions; correct?

16      A.    Correct.

17      Q.    The contracts between Giant Partners and

18  the two entities we're discussing are identical to

19  each other other than the name of the company;

20  correct?

21              MR. WARNER:  Objection.

22      A.    I would have to look over both contracts

23  in detail.  But the dollar amount is the same.  So I

24  can't confirm that they're identical.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

94

1                        S. Katz

2     BY MR. KATAEV:

3          Q.    It's fair to say that Corey dealt

4     primarily with Safa instead of Liddie; correct?

5               MR. WARNER:  Objection.

6          A.    Based on what I've seen and what we

7     heard, yes.

8     BY MR. KATAEV:

9          Q.    We're going back to the two contracts

10    again.  We went over the price.  The scope of work

11    was identical as well, correct, other than the

12    transfer?

13         A.    I would have to review both contracts

14    side by side to see if they were identical, so I

15    don't have the answer to that question.

16         Q.    Based on the fact that the price is the

17    same, is it fair to say that the scope of work would

18    generally be the same?

19              MR. WARNER:  Objection.

20         A.    That price point is our standard price

21    point for our digital packages.  So that federates

22    among any clients that are onboarding with us, if

23    that helps.

24    BY MR. KATAEV:

25         Q.    To your knowledge, did Eugene Liddie have

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

95

S. Katz

1

2       access to the marketing collaterals for IME Legal

3       Reps?

4              A.    I don't have any knowledge of his access.

5              Q.    In your review of the documents produced

6       in response to the subpoena, did you see any

7       involvement by Eugene Liddie?

8              A.    With the exception of the notice of

9       cancellation we received on the IME Legal Reps'

10      agreement, I have to go back.  But I think -- and

11      you have a copy of that -- that's who responded to

12      cancel the agreement.

13             Q.    Other than that, you don't recall any

14      involvement by Eugene Liddie; correct?

15             A.    Not to my knowledge, no, sir.

16             Q.    Is it fair to say that Giant Partners

17      fulfilled its end of the contract with IME Legal

18      Reps?

19             A.    No.  We had a longer contract that was

20      canceled after a month.

21             Q.    Is it fair to say that IME Legal Reps

22      failed to fulfill its obligations under the contract

23      with Giant Partners?

24             A.    Yes, it is.

25             Q.    To your knowledge, were the payment

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

96

1                          S. Katz

2       sources for IME Legal Reps the same as that for

3       Companions?

4              A.    As I mentioned for IME Legal Reps, I'd

5       have to research who made that payment.

6              Q.    Scrolling up to Hearing Exhibit 57, it's

7       the topmost email dated April 14th, 2023, at 12:03

8       p.m.

9                    This is an email from Safa to a whole

10      host of individuals at Giant Partners; correct?

11             A.    Yes.

12             Q.    In this email, Safa directs Giant

13      Partners to deactivate its website; right?

14             A.    That's how I interpret it, yes.

15             Q.    Towards the end of the email, she writes,

16      When a client books, we should get an email to

17      info@IMELegalReps.com.

18                   Correct?

19                   (Court reporter requested clarification.)

20      BY MR. KATAEV:

21             Q.    "We should get an email to

22      info@IMELegalReps.com"; right?

23                   MR. WARNER:  Objection.

24             A.    I don't see that on my screen.  Hang on.

25      "Deactivate as soon as possible.  Client" -- yes;

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

97

1                         S. Katz

2      correct.  That's what's in the email.

3      BY MR. KATAEV:

4          Q.    Do you know who Safa is referring to when

5      she says "we"?

6          A.    I do not.

7          Q.    In this email, Safa is requesting that

8      all traffic going to Companions be directed to IME

9      Legal Reps; correct?

10                   MR. WARNER:  Objection.

11         A.    That's how I read it.

12     BY MR. KATAEV:

13         Q.    This means that if someone is trying to

14     book with Companions, they would now instead be

15     booking with IME Legal Reps; correct?

16                   MR. WARNER:  Objection.

17         A.    In theory, yes.

18     BY MR. KATAEV:

19         Q.    Scrolling down a little bit to the

20     April 13th, 2023, exchanges at 5:43 p.m. and 8:12

21     p.m. between Safa and Estefania.

22                   In this chain, Estefania asks Safa, "Can

23     we use the same colors as IME Companions"; right?

24         A.    That's what I read; yes.

25         Q.    And Safa responds, "Let's change it up a

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

98

1                        S. Katz

2        little bit"; correct?

3             A.    I'm sure it's under that.  I don't see it

4        here.

5                  (Simultaneous speakers.)

6             A.    I see, "Let's change it up a little bit."

7             Q.    And that email is from Safa; correct?

8             A.    Correct.  Yes, it is.

9             Q.    Safa Gelardi had the credentials to

10       access and change items on the IME Legal Reps'

11       website; correct?

12            A.    To my knowledge, yes.

13            Q.    This email is from Safa's personal email

14       address; correct?

15            A.    I don't know what Safa's personal email

16       is.

17            Q.    This email is from SafaGelardi@gmail.com;

18       correct?

19            A.    That's how I read it, yes, sir.

20                 MR. KATAEV:  I'm going to place up on the

21            screen what's marked as Hearing Exhibit 60.

22                 (Plaintiff's Hearing Exhibit 60, email,

23            marked for identification.)

24       BY MR. KATAEV:

25            Q.    As of April 18th, Giant Partners

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

99

S. Katz

1

2      continued speaking to Safa about decisions related

3      to the IME Legal Reps' website; correct?

4            A.    Correct.

5            Q.    Eugene Liddie is not copied on this

6      email; correct?

7            A.    I do not see his name.

8            Q.    Are you aware as to any direction by Safa

9      to remove all IME Companions' information from the

10     IME Legal Reps' website?

11           A.    Based on this, yes.  And our video that

12     we all watched.

13           Q.    To your knowledge, why was there a

14     direction to remove all Companions' information from

15     the new website?

16           A.    Based on the video that we all watched,

17     they wanted a change.

18           Q.    Does Giant Partners typically build a

19     website from scratch?

20           A.    Yes.

21           Q.    In this case, IME Legal Reps' website was

22     not built from scratch; correct?

23           A.    Going back to the video we watched,

24     Jeremy spoke about different templates.  If I'm

25     correct, for IME Legal Reps that they could pick

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

100

1                     S. Katz

2     out, and the young lady confirmed there was one that

3     she liked.  So it seems like we built it from

4     scratch.

5         Q.    In this case, most of the IME Legal Reps'

6     website was made by copying Companions' website;

7     correct?

8         A.    Based on the video and our instructions

9     from the young lady, yes.

10        Q.    And the young lady you're referring to is

11    Safa.  She's the one who made those directions;

12    correct?

13        A.    If that is who she is, yes.

14        Q.    I'll make a representation to you that

15    that individual is, in fact, Safa.

16        A.    Then I'll stop using "young lady."

17        Q.    Let's go to Hearing Exhibit 54.

18            (Plaintiff's Hearing Exhibit 54, email

19        exchange, marked for identification.)

20    BY MR. KATAEV:

21        Q.    On April 14, 2023, there is an email

22    exchange between Estefania and Safa; correct?

23        A.    Yes.

24        Q.    This is a continuation of the prior

25    exhibit; right?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

101

                              S. Katz

1

2        A.    That's what it looks like, yes.

3        Q.    At 12:44 p.m. that day, Estefania asked

4   for log-in approval and said, "We sent the GoDaddy

5   code to your email.  Could you please provide it";

6   correct?

7        A.    Yes.

8        Q.    That email was IMELegalReps@gmail.com

9   based on the prior correspondence; correct?

10       A.    I have to assume so just -- I'm just

11  looking to see confirmation that that's where she

12  sent it to.  It should be below that, but I assume

13  so.

14       Q.    I'm going to highlight the top,

15  IMELegalReps@gmail.com.

16             Will that refresh your recollection?

17       A.    Well, that's who this email that you're

18  showing me is coming from.  If we go down, I think,

19  from Estefania, where she sent it to, if you don't

20  mind.

21       Q.    I see SafaGelardi@gmail.com.

22       A.    That's where she sent it to, I guess.

23       Q.    At the top, there's an April 19th, 2023,

24  email at 10:23.

25             Do you see that?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

102

S. Katz

1

2          A.     I do.

3          Q.     In this email, Eugene Liddie says, "I am

4     the owner of IME Legal Reps"; correct?

5          A.     That's what I'm reading.  Yes, sir.

6          Q.     And he says that Safa is no longer

7     involved; right?

8          A.     That's what I'm reading, yes.

9          Q.     When you received this -- withdrawn.

10          When you first reviewed this email, did

11     it come to your attention that Mr. Liddie's last

12     name is spelled incorrectly?

13          A.     Absolutely -- no, sir.

14          Q.     When you received this April 19th email,

15     Giant Partners had already been working with Safa

16     for some time on the IME Legal Reps' website;

17     correct?

18               MR. WARNER:  Objection.

19          A.     Yes.  Based on the video that we saw.

20     BY MR. KATAEV:

21          Q.     And the emails; correct?

22          A.     Correct.

23               MR. WARNER:  Objection.

24     BY MR. KATAEV:

25          Q.     When you first reviewed this email, did

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

103

1                      S. Katz

2      you find it strange that a purported owner of IME

3      Legal Reps was suddenly announced?

4              MR. WARNER:  Objection.

5         A.    In all due respect, in this business

6      world and these companies, there's a lot of changes,

7      there's a lot of termination.  So when we're under

8      contract, we don't question who the boss is.

9      BY MR. KATAEV:

10        Q.    After this April 19th email, Giant

11     Partners, nonetheless, continued to communicate with

12     Safa regarding IME Legal Reps; correct?

13        A.    I would have to confirm that.

14        Q.    Are you aware of any time period where

15     Giant Partners communicated exclusively with Liddie

16     to the exclusion of Safa?

17        A.    I would have to review the emails that we

18     sent to the subpoena.

19        Q.    Did you ever get an impression that Safa

20     was still running IME Legal Reps behind the scenes

21     after --

22              MR. WARNER:  Objection to form.

23        A.    I didn't -- I don't guess.  So I don't

24     know.

25     BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

104

1                          S. Katz

2          Q.    You never got such an impression;

3     correct?

4                 MR. WARNER:  Objection.

5          A.    I watched the video that you watched.

6     BY MR. KATAEV:

7          Q.    To your knowledge, was Giant Partners

8     requested to remove Safa Gelardi's name from the IME

9     Legal Reps' website?

10                MR. WARNER:  Objection to form.

11         A.    I would have to go back and review

12    everything that we sent you.  So to my knowledge,

13    I'm not sure at this time.

14                MR. KATAEV:  I'm placing up on the screen

15          what's marked as a Deposition Exhibit 72.

16                MR. WARNER:  A deposition exhibit?

17                MR. KATAEV:  I apologize.  Hearing

18          Exhibit.

19                (Plaintiff's Hearing Exhibit 72,

20          screenshot of IME website, marked for

21          identification.)

22    BY MR. KATAEV:

23         Q.    This is a screenshot of the IME Legal

24    Reps' website; correct?

25         A.    That's what it appears to me, yes.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

105

S. Katz

1

2     Q.    In this screenshot, there are highlighted

3     portions.  And the first highlighted portion spells

4     Eugene's last name as L-I-D-D-Y; correct?

5     A.    That's how I read it, yes.

6     Q.    Did Mr. Liddie ever contact Giant

7     Partners and request that the spelling of his last

8     name be corrected?

9     A.    I do not know the answer to that

10    question.

11    Q.    To your knowledge, why was it that Eugene

12    wrote an email announcing that he is the owner of

13    IME Legal Reps?

14    A.    I do not have knowledge of why.

15    Q.    Who provided the spelling of Liddie's

16    last name?

17    A.    I don't want to assume.  I'd have to

18    research and reach out.

19    Q.    Do you recall that Safa Gelardi provided

20    the spelling during the reported virtual meeting we

21    reviewed at the beginning of this deposition?

22    MR. WARNER:  Objection.

23    A.    Yes.  You pointed that out.

24    BY MR. KATAEV:

25    Q.    I'll represent to you that Mr. Liddie

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

106

1                          S. Katz

2       spells his name L-I-D-D-I-E and testified on

3       May 4th, 2023, that he is going to ask the marketing

4       company to fix the spelling of his last name.

5              Does this refresh your recollection as to

6       that ever happening?

7                    MR. WARNER:  Objection.

8       A.     Again, I can't give you a conclusive

9       answer because I'd have to research and see if we

10      received an email requesting that.

11                   MR. KATAEV:  I would just ask you -- and

12              I'll follow up in writing with your attorney --

13              to search for any emails with Mr. Liddie asking

14              for any corrections.

15                   THE WITNESS:  Absolutely.

16                   MR. ALLEN:  Agreed.

17                   THE WITNESS:  Can we take a five-minute

18              break again?  I'm sorry.

19                   MR. KATAEV:  Absolutely.  Let's go off

20              the record.

21                   THE VIDEOGRAPHER:  We are going off the

22              record.  The time is 3:04 p.m.

23              (A recess was taken from 3:04 p.m. to

24              3:09 p.m.)

25                   THE VIDEOGRAPHER:  We are back on the

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

107

1                    S. Katz

2          record.  The time is 3:09 p.m.

3     BY MR. KATAEV:

4          Q.    Mr. Katz, I'm going to show you the next

5     exhibit, Hearing Exhibit 94.

6               (Plaintiff's Hearing Exhibit 94, email

7               chain, marked for identification.)

8     BY MR. KATAEV:

9          Q.    This is an email chain between IME Legal

10    Reps and Giant Partners dated April 19th, 2023;

11    correct?

12         A.    That's what I see, yes.

13         Q.    These emails, like prior emails, are all

14    made and kept in the ordinary course of business of

15    Giant Partners; correct?

16         A.    Yes.

17         Q.    In the 12:02 email, Estefania says, I'm

18    sorry to hear about Safa.

19               Do you see that?

20         A.    I do.

21         Q.    Do you know what Estefania is referring

22    to, or why she's sorry to hear about Safa?

23         A.    I would only assume it's to the previous

24    email that you showed me, that she's no longer with

25    the organization, or she's no longer -- that's all.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

108

1                          S. Katz

2      Only assumption.

3           Q.    Were there any discussions outside of

4      these emails between or among Giant Partners and

5      anyone else concerning Safa?

6           A.    Not to my knowledge.  Normal transfer

7      over of power.

8           Q.    In the response to this email,

9      IMELegalReps@gmail.com provides a new phone number;

10     correct?

11          A.    Correct.

12          Q.    Giant Partners maintains records of

13     updates it makes to phone numbers; correct?

14          A.    If you're asking if we maintain records

15     when we change a phone number on a website?

16          Q.    In general.

17          A.    I just want to answer your question

18     clearly.  I apologize.

19          Q.    In this email, IME Legal Reps is asking

20     Giant Partners to change the phone number listed on

21     the website; correct?

22          A.    Correct.

23          Q.    In this email, Giant Partners is being

24     asked to change that phone number; correct?

25          A.    Yes.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz --- June 11, 2024

109

S. Katz

1

2      Q.    My question is, does Giant Partners have

3   records showing old phone numbers?

4      A.    I would have to look into that.

5   Theoretically, because we keep track of these

6   emails, we should.  But, of course, we have no

7   access to the phone numbers or the recordings or

8   anything that relates to that.

9      Q.    Do you have any knowledge as to whether

10  Mr. Liddie ever shared what his vision is for IME

11  Legal Reps?

12     A.    Not to my knowledge.

13     Q.    I'll present to you what is Hearing

14  Exhibit 61.

15          (Plaintiff's Hearing Exhibit 61, email

16      chain, marked for identification.)

17          MR. WARNER:  What was the previous

18      hearing exhibit number?

19          COURT REPORTER:  94.

20          MR. KATAEV:  94.  Thank you.

21          MR. WARNER:  And this one is 61?

22          MR. KATAEV:  Correct.

23  BY MR. KATAEV:

24     Q.    This is a -- largely an email chain

25  between Giant Partners and Safa dated April 25th,

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

110

1                    S. Katz

2       2023; correct?

3            A.    Correct.

4            Q.    In the first email from April 25th,

5       there's a direction from IMELegalReps@gmail.com to

6       fix the fact that people are associating IME

7       Companions to IME Legal Reps; correct?

8            A.    That's how I interpret it, yes.

9            Q.    There's a reference here to the concern

10      that clients will be lost because of this

11      association; correct?

12           A.    That's how I read it.

13           Q.    Do you have any knowledge as to how

14      clients would be lost due to the association of the

15      two companies?

16           A.    I do not.

17           Q.    Did you become aware of this threat to

18      sue Giant Partners around April 25th of last year?

19           A.    No.  I knew about this when I -- before I

20      sent the documents to the subpoena, and I read that.

21           Q.    In response to this, Conor asks for the

22      log-in credentials for IMECompanions.com; correct?

23           A.    Correct.

24           Q.    Those credentials are provided; correct?

25           A.    It looks like they are provided above;

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

111

1                          S. Katz

2      correct.

3           Q.    Do you recall the earlier memorable

4      password provided for GoDaddy Productions; right?

5           A.    Regretfully, yes.

6           Q.    Those credentials were for IME Legal Reps

7      while these credentials are for IME Companions;

8      right?

9                 MR. WARNER:  Objection.

10          A.    I assume so.

11     BY MR. KATAEV:

12          Q.    The credentials provided refer to Safa;

13     correct?

14          A.    It has her name in it, yes.

15          Q.    Is it fair to say that Safa was the

16     individual that sent this email?

17          A.    I don't want --

18                MR. WARNER:  Objection.

19          A.    I don't want to make that assumption.

20     BY MR. KATAEV:

21          Q.    In response to the email of the

22     credentials, Conor says, Thank you, Safa.  I will

23     reach out in a couple of minutes to confirm we are

24     in.

25                Correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

112

1                           S. Katz

2          A.    Yes.

3                MR. WARNER:  Objection.

4     BY MR. KATAEV:

5          Q.    Based on this email exchange, Conor was

6     communicating with Safa; correct?

7                MR. WARNER:  Objection.

8          A.    I can't confirm because of the buffoonery

9     that's going on.  I don't know who's reading those

10    emails and who's replying back.  There's a lot of

11    assumption going on on our team's part that it is

12    Safa.

13    BY MR. KATAEV:

14         Q.    You refer to the email exchanges as

15    buffoonery.

16               Why do you say that?

17         A.    I apologize.  I retract that.

18         Q.    No, no.  We're not offended.  I just want

19    to understand what you mean by that.

20         A.    It seems like there's confusion going on,

21    on what's happening and who we're communicating

22    with.  That's all.  Being in business over 40 years,

23    unless Safa signed an email to me, I would never

24    assume it's that person.

25         Q.    Why do you believe that Safa was

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

113

1                        S. Katz

2      concerned about the association with IME Companions?

3                  MR. WARNER:  Objection.

4            A.    Purely based upon the video that we both

5      watched -- that we all watched.

6                  MR. KATAEV:  Another exhibit.  This is

7            Exhibit 95.

8                  (Plaintiff's Hearing Exhibit 95A, email

9            exchange, marked for identification.)

10     BY MR. KATAEV:

11           Q.    Another exchange of emails dated

12     April 25, 2023.

13                 Do you see that?

14           A.    I do.

15           Q.    Are you familiar with the term "branding

16     handoff"?

17           A.    Not necessarily.  It can be used in

18     multiple ways.  Can I see the context, please?

19           Q.    The subject line of the email.

20           A.    I would only assume it's based on IME

21     Companions to the new IME Legal Rep.

22           Q.    The completion of the transfer; correct?

23           A.    Again, I'm just assuming.

24           Q.    Do you have any knowledge as to how many

25     customers IME Legal Reps had as of April 25, 2023?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

114

1                           S. Katz

2        A.    I do not.  I do not.

3        Q.    Did Giant Partners maintain any records

4   concerning IME Legal Reps' customers?

5        A.    No.  That information goes directly to

6   IME Legal Reps' HubSpot account.

7        Q.    When the contract with IME Legal Reps was

8   canceled, did IME Legal Reps lose access to the

9   HubSpot account?

10       A.    To my knowledge, I was told that before

11  they canceled all the passwords were changed and

12  Giant Partners was locked out.

13       Q.    Does Giant Partners maintain any

14  ownership rights to the content in a customer's

15  HubSpot account?

16       A.    We do not.

17       Q.    What was the reason, to your knowledge --

18  withdrawn.

19             What reason, if any, would there be for

20  IME Legal Reps to change the passwords and lock you

21  out of access?

22             MR. WARNER:  Objection.

23       A.    In my opinion, we did not receive the

24  next month's payment, and we had the option of not

25  receiving the payment to go in and change everything

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                        115

1                          S. Katz

2       so that they would be locked out.  So I just have to

3       assume that they locked us out and then canceled the

4       contract.

5                    MR. WARNER:  Objection.

6                    MR. KATAEV:  To the answer or the

7            question?

8                    THE WITNESS:  I'm sorry?

9                    MR. WARNER:  To the --

10      BY MR. KATAEV:

11           Q.    In this email exchange, there's a

12      reference to a legal matter, the 10:09 email.

13           A.    Okay.

14           Q.    What understanding, if any, do you have

15      about the nature of the legal matter?

16           A.    It's very vague.  No understanding at all

17      with the exception --

18                    (Simultaneous speakers.)

19           A.    With the exception of the previous email

20      we read where they threatened to sue us.  So I can

21      only assume it's directed towards Giant Partners.

22           Q.    Do you have any knowledge as to whether a

23      screen video was shared to see that issue as

24      requested?

25           A.    I do not have any knowledge.  I don't

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

116

1                          S. Katz

2       have any knowledge, no.

3            Q.    The 9:11 email on April 25th, the person

4       from IMELegalReps@gmail.com wrote, "They should not

5       be affiliated.  It should be like a brand new site";

6       correct?

7            A.    That's what I read, yes.

8            Q.    The word "should" was used because the

9       IME Legal Reps' website was not actually a brand new

10      website; correct?

11                 MR. WARNER:  Objection.

12           A.    If you're -- the IME Legal Reps was a

13      website, if I'm correct, that we built for them.

14                 MR. KATAEV:  Moving on to Hearing

15           Exhibit 62.

16                 (Plaintiff's Hearing Exhibit 62, email

17           exchange, marked for identification.)

18      BY MR. KATAEV:

19           Q.    This is an email exchange between Corey

20      Weissman and IMELegalReps@gmail.com; correct?

21           A.    Yes.

22           Q.    Based on this email exchange, Safa had

23      discussions with Corey about a court date; correct?

24           A.    That's what I --

25                 MR. WARNER:  Objection.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                        117

1                          S. Katz

2              (Court reporter requested clarification.)

3         A.    That's what I read.

4    BY MR. KATAEV:

5         Q.    Were you involved in any discussions

6    about the court date Safa is referring to?

7         A.    I was not.

8         Q.    Is it fair to say that Giant Partners

9    would not have created a brand new website for IME

10   Legal Reps for only $7,200?

11             MR. WARNER:  Objection.

12        A.    Can you repeat that, please?  Sorry.

13   BY MR. KATAEV:

14        Q.    Is it fair to say that Giant Partners

15   would not create a brand new website for IME Legal

16   Reps for just $7,200?

17             MR. WARNER:  Objection.

18        A.    If you're asking if we would build a

19   website for $7200; is that the question?

20   BY MR. KATAEV:

21        Q.    Yes.

22        A.    We have done that.  We build websites for

23   $3,000.  We build websites for $50,000.

24        Q.    The website made for IME Legal Reps was a

25   copy/paste of IME Companions' website; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

118

S. Katz

1

2      A.     If you're referring to the verbiage of

3      the video where they asked us to move the verbiage

4      over, to my knowledge, it was a new look, a new

5      feel, with similar verbiage.

6      Q.     Did you have any discussions about this

7      case with other individuals at Giant Partners to the

8      exclusion of counsel?

9      A.     After I received the subpoena, I spoke to

10     a few team members to gather all the information

11     requested in the subpoena.

12     Q.     What was discussed between you and those

13     team members?

14     A.     That I need to collect information --

15            MR. ALLEN:  Sheldon, don't repeat

16            anything that was said between you and I, of

17            course.  Go ahead.

18            THE WITNESS:  Of course.  Can you ask the

19            question, please, sir?

20     BY MR. KATAEV:

21     Q.     What did those team members say to you

22     when you spoke to them about this issue?

23     A.     Nothing was mentioned with the exception

24     of the disappointment that the contract was

25     cancelled early for IME Legal Reps.  I was just

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

119

1                      S. Katz

2      requesting access and information for the subpoena.

3                 MR. KATAEV:  Going to Hearing Exhibit 63.

4                 (Plaintiff's Hearing Exhibit 63, email

5           exchange, marked for identification.)

6      BY MR. KATAEV:

7           Q.    This is a May 19th, 2023, email exchange

8      between Corey, Safa and IMELegalReps@gmail.com;

9      correct?

10          A.    Yes.

11          Q.    And in this email, Corey says that he has

12     not been able to get a hold of Eugene; correct?

13          A.    Correct.

14          Q.    Corey regularly communicated with Safa

15     regarding IME Legal Reps' matters, correct?

16                MR. WARNER:  Objection.

17          A.    Again, I don't know.  As I mentioned

18     previously, if Safa is IMG Legal Reps, it seems that

19     it.  But he is communicating with someone.  Again,

20     he's a salesman trying to get someone to respond to

21     him because they were at a contract at this point.

22     BY MR. KATAEV:

23          Q.    In this email, Safa Gelardi is copied

24     together with IMELegalReps@gmail.com; correct?

25          A.    Correct.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

120

1                         S. Katz

2          Q.    There's a reference here that Safa or

3    Eugene mentioned one of them would have an update

4    for Giant Partners after May 15th sometime.

5               Do you see that?

6               MR. WARNER:  Objection.

7          A.    I do see that.

8    BY MR. KATAEV:

9          Q.    In your discussions with your team

10   following the receipt of the subpoena, do you recall

11   any discussions about this May 15th date or a court

12   date or anything like that?

13         A.    There was no discussions about court

14   dates or anything related to that at all.  Or court.

15         Q.    Do you have a recollection -- withdrawn.

16              Do you have any knowledge as to whether

17   at this point of May 19th, Giant Partners was locked

18   out of the IME Legal Reps HubSpot?

19         A.    I do not know if we were locked out at

20   that time.  But I am aware that they were behind on

21   a payment, and that was around the time we stopped

22   working for them.

23         Q.    In this email, Corey Weissman blind

24   carbon copies 4536250@bcc.HubSpot.com.

25              Do you see that?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

121

1                          S. Katz

2          A.    I do.

3          Q.    What does that mean to you?

4          A.    All of our emails that I supplied to your

5      firm are stored in HubSpot.  So he was just

6      forwarding that to a HubSpot account.

7          Q.    Which HubSpot account did he forward that

8      email to?

9          A.    I would have to look into it, but I would

10     have to assume something related to both

11     organizations.

12         Q.    Both organizations, meaning IME

13     Companions and IME Legal Reps?

14              MR. WARNER:  Objection.

15         A.    I assume so.  I would have to look and

16     find out what that HubSpot is to.

17              MR. KATAEV:  Going to Hearing Exhibit 64.

18              (Plaintiff's Hearing Exhibit 64, email

19         exchange, marked for identification.)

20     BY MR. KATAEV:

21         Q.    I'm referring to the earlier email

22     exchange within this set of two emails.

23              In this email, Corey directs the first

24     email to Safa; correct?

25         A.    That's how I read it, yes.

122

1                       S. Katz

2         Q.    Based on your review of the video and the

3    records produced in response to the subpoena, Corey

4    reached out to Safa because she made all the

5    decisions; correct?

6                 MR. WARNER:  Objection.

7         A.    Based on the video, that's what she

8    requested.

9    BY MR. KATAEV:

10        Q.    This email was also sent to Safa because

11   Corey has been unsuccessful in reaching Eugene;

12   correct?

13        A.    Correct.

14        Q.    Based on your review of the video and the

15   documents produced in response to the subpoena by

16   IME WatchDog, is it your understanding that

17   IMELegalReps@gmail.com was a shared email account

18   between Safa and Liddie?

19                 MR. WARNER:  Objection.

20                 (Court reporter requested clarification.)

21                 MR. KATAEV:  Liddie.

22        A.    I don't want to guess.  I don't know.

23   BY MR. KATAEV:

24        Q.    At the, I want to say, 5:28 email on

25   June 1st, 2023, in this exhibit, at the top, Corey

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

123

S. Katz

1

2          says, We're waiting on the response on May 15th

3          regarding the court date you mentioned.

4                    Do you see that?

5          A.    I do.

6          Q.    To your knowledge, did Safa ever discuss

7          the court date with anyone at Giant Partners?

8          A.    Not to my knowledge.

9          Q.    To your knowledge, did Liddie discuss the

10         court date with anyone at Giant Partners?

11         A.    Not to my knowledge.

12         Q.    After you received the subpoena and you

13         went to speak to your team members about what was

14         going on, did any of your team members relay to you

15         information about this court date and any

16         discussions they had with Safa and/or Liddie?

17         A.    No.

18         Q.    Do you have any knowledge as to how Corey

19         knew about the court date?

20         A.    I don't want to guess.

21         Q.    Did you have any discussions with Corey

22         about this issue?

23         A.    I did not.

24         Q.    Based on your review of the video, you

25         are aware that Mr. Liddie is an officer; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

124

S. Katz

1

2      A.    I am not -- that is what I heard.

3      Q.    In this email, Corey sends this

4   correspondence to both Safa and Liddie; correct?

5      A.    Correct.

6            MR. KATAEV:  This is Hearing Exhibit 95.

7            (Plaintiff's Hearing Exhibit 95B, email

8       exchange, marked for identification.)

9   BY MR. KATAEV:

10     Q.    This is another exchange between Corey

11  Weissman, Safa and Eugene, dated June 9th, 2023.

12           Do you see that?

13     A.    I do.

14     Q.    Scrolling down to the initial email dated

15  June 8, 2023 -- do you see it?

16     A.    I do.

17     Q.    Corey expresses disappointment that he

18  can't reach either Eugene or Safa; correct?

19     A.    Correct.

20     Q.    Follows up about the court date that was

21  mentioned; right?

22     A.    Yes.

23     Q.    Do you have any knowledge as to whether

24  this discussion actually occurred?

25           MR. WARNER:  Objection to form.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

125

1                        S. Katz

2          A.    I have no knowledge.

3     BY MR. KATAEV:

4          Q.    Did Corey tell you about any discussions

5     he had with Safa following this email?

6          A.    No.  He has not had any discussions --

7     yes.  And he said he's not had any discussions.  I

8     just -- just to put things in perspective, once

9     again, Corey is a salesman, and he just would like

10    to get payment so he could make his commission.  So

11    hence the continuous nudging.

12          MR. KATAEV:  Going on to Hearing

13       Exhibit 67.  I'm sorry.  Not --

14          MR. WARNER:  This is 67?

15          MR. KATAEV:  No.  This is -- let's call

16       it Hearing Exhibit 96.

17          (Plaintiff's Hearing Exhibit 96, email

18       exchange, marked for identification.)

19    BY MR. KATAEV:

20          Q.    I'm going to scroll to the bottom of this

21    one to help you.

22          A.    Thank you.

23          Q.    So going to the bottom of this, this is

24    an exchange between Estefania and Eugene dated

25    June 6th, 2023; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

126

S. Katz

1

2      A.    Yes.

3      Q.    And Estefania thanks Eugene for a phone

4    call; correct?

5      A.    Correct.

6      Q.    And there's a reference to a PageProof

7    link; correct?

8      A.    Yes.

9      Q.    What is "PageProof"?

10     A.    I don't know exactly, so I'd have to look

11   at that link.  I have to assume he made some changes

12   or the customer demanded we make changes.  I'd have

13   to look into it more.  Don't want to guess.

14     Q.    So we're not industry people in

15   marketing.  And I want to get an understanding,

16   broad strokes, what is PageProof -- what's

17   PageProof.com, and what is the purpose of it?

18     A.    Sure.  Frankly, I don't know what

19   PageProof.com is.  I'm not going to guess.  But when

20   we make changes to client's websites or we make

21   changes to content, we share it with the client.

22     Q.    Is it --

23           (Simultaneous speakers.)

24     A.    I'm sorry.

25     Q.    Go ahead.  I'm sorry.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

127

1                           S. Katz

2          A.    Again, I have to assume this was

3    something they shared with him.

4          Q.    Is it accurate to state, based on this

5    exchange, that Giant Partners performed some

6    additional work in June of 2023 for IME Legal Reps?

7          A.    There was something done or shown.  I

8    don't know what it is until I can look into it.  But

9    there was some type of communication.

10         Q.    Do you have any knowledge about the

11   things that we need to fix as soon as possible?

12         A.    I do not.

13         Q.    Do you have any knowledge as to whether,

14   at this point in time, in June of '23, that anyone

15   at IME Legal Reps paid Giant Partners any

16   outstanding balance owed?

17         A.    Based on our records at this point in

18   time, I think we are 60 days past due on payment.

19         Q.    Going up to further up the June 6th

20   emails.  Do you notice that there's a discrepancy

21   with the timing, the timestamps for the emails?

22         A.    I do not.  Can you point them out,

23   please?

24         Q.    In the earlier email we just reviewed, it

25   said it was sent at 4:38 p.m.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

128

1                         S. Katz

2          A.    Yes.

3          Q.    In a later email, it says it was sent at

4     4:33 p.m., five minutes earlier?

5                Do you have any knowledge as to why that

6     might be?

7          A.    I don't.  I have to look into that.

8          Q.    Would it be fair to say that the time

9     zone differences between Giant Partners, in

10    California, and IME Legal Reps, in New York, has to

11    do with it?

12               MR. WARNER:  Objection.

13         A.    Estefania is offshore.  I'm not sure what

14    country she's in.  So I can't comment on the

15    timestamps.

16    BY MR. KATAEV:

17         Q.    Going further up in this exhibit, on

18    June 7th, Corey Weissman reaches out to Eugene

19    again; correct?

20         A.    Yes.

21         Q.    Based on this email exchange, Corey has

22    been unable to reach Eugene still; correct?

23         A.    Correct.

24         Q.    Later on at the end of the month, June 26

25    of '23, Eugene writes that, We have decided not to

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

129

1                          S. Katz

2       move forward with marketing at this time; correct?

3              A.    Correct.

4              Q.    By "we," based on your knowledge in

5       reviewing the video and your review of the records

6       produced in response to the subpoena, Eugene is

7       referring to himself and Safa; correct?

8              A.    I don't want to --

9                    MR. WARNER:  Objection.

10             A.    -- make that assumption.

11                   I don't want to make the assumption, but

12      "we" is "we."

13      BY MR. KATAEV:

14             Q.    In response to that email, Corey follows

15      up with Eugene with a copy to Safa to ask for a

16      phone call; correct?

17             A.    Yes.

18             Q.    And then there's an internal email with

19      you concerning how to deal with the fact that the

20      contract has been terminated; correct?

21             A.    Correct.

22             Q.    At this point in time, as of June 27th

23      when this email is sent, did Giant Partners become

24      aware that IME Legal Reps removed Giant Partners'

25      access to HubSpot?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                          130
                                S. Katz

1

2          A.    I don't know the answer to that question.

3          Q.    In relation to this email, do you recall

4    when Giant Partners learned that it no longer has

5    access to IME Legal Reps' HubSpot?

6          A.    I don't have that date.  Again, we can

7    get it for you.

8          Q.    Going to Hearing Exhibit 67.

9                MR. WARNER:  This is Exhibit 67?

10               MR. KATAEV:  Hearing Exhibit 67.

11               (Plaintiff's Hearing Exhibit 67, email,

12         marked for identification.)

13   BY MR. KATAEV:

14         Q.    In this February 9th, 2024, email, Corey

15   corresponds directly with Safa; correct?

16         A.    Correct.

17         Q.    Even though there was an email from you

18   to Liddie on or about April 19th of '23, stating

19   that Safa was no longer involved, Safa remained

20   involved based on the emails; correct?

21               MR. WARNER:  Objection.

22         A.    I don't know why Corey continued to reach

23   out to Safa based on the previous communication we

24   received.  But, once again, a salesman is always

25   going to try to reach out to every contact they can

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

131

1                         S. Katz

2        to get the account back.

3        BY MR. KATAEV:

4             Q.    Regardless of why, the answer is that

5        Safa was still being contacted by Giant Partners;

6        correct?

7                    MR. WARNER:  Objection.

8             A.    Correct.  Yes, at that email address;

9        correct.

10       BY MR. KATAEV:

11            Q.    Do you have any understanding of how Safa

12       and Eugene worked together at IME Legal Reps?

13            A.    I do not.

14            Q.    Are you familiar with the term "targeted

15       data list"?

16            A.    I am.

17            Q.    What is a targeted data list?

18            A.    Depending on if you'd like to reach out

19       to consumers or businesses, if it's a consumer and

20       we're doing a Medicare account, we would target

21       people that are my age or older that are looking for

22       Medicare.  So it's basically demographics,

23       geographics, cybergraphics.  That's targeted.

24            Q.    Did Giant Partners have the ability to

25       pull up a targeted data list of personal injury law

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

132

1                        S. Katz

2     firms?

3          A.    We have the ability to pull up law firms,

4     but we can't break them down by their specialty.

5          Q.    In forming or working with targeted data

6     lists, what is the purpose of using them, generally

7     speaking?

8          A.    So that whoever our client is, we are

9     reaching out to the best targeted audience for their

10    product.  Hypothetically, if it's BMWs, we are

11    reaching out to people who are a little more

12    affluent.

13          If it's senior offers, we're reaching out

14    to people like me.  So it all depends on who our

15    client is.

16          Q.    Generally speaking, can any customer

17    reach out to Giant Partners and say, I want targeted

18    marketing to a specific individual?

19          A.    Individuals or individual?

20          Q.    Individual.  One person.

21          A.    No.  No.  No.  We don't do that.

22          Q.    Generally speaking, can a customer reach

23    out to Giant Partners and ask to have marketing

24    directed solely to all individuals of one particular

25    business?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

133

1                          S. Katz

2          A.    Yes.  In other words, just so I

3     understand the question, if our client said, can you

4     please reach out to all the heating and air

5     conditioning companies in California, we can do

6     that.

7          Q.    What if a customer reached out and said,

8     I want to reach this particular heating and air

9     conditioning company and all the employees in it?

10         A.    We have the ability to do that if it's a

11    large organization.

12         Q.    In aid of the targeted data list

13    discussed here, at any point in time did Safa

14    provide any lists to Giant Partners?

15         A.    To my knowledge, the only thing that was

16    supplied to us was what you showed me during this

17    deposition.  I would have to research to see if

18    there was anything else supplied.

19              MR. KATAEV:  This is Hearing Exhibit 97.

20              (Plaintiff's Hearing Exhibit 97, email

21         exchange, marked for identification.)

22    BY MR. KATAEV:

23         Q.    This is an email exchange between

24    Estefania and IMELegalReps@gmail.com; correct?

25         A.    Yes.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

                                                            134

1                         S. Katz

2          Q.    Starting at the bottom, Giant Partners

3     utilized a company called PageProof to send a proof

4     of its website to IME Legal Reps; correct?

5          A.    That's what I'm looking at now, yes.

6          Q.    And on April 19th, someone at

7     IMELegalReps@gmail.com approved sample 3; correct?

8          A.    Yes.

9          Q.    On April 19, 2023, at 7:11 p.m.,

10    Estefania confirmed with Eugene that Safa was

11    removed but Vito was left; correct?

12         A.    I'm just reading that now.  Brand

13    guidelines.  Eugene.  Sounds good...

14               Meet our team, we removed Safa and left

15    Vito.  That is correct.

16         Q.    The only reason Giant Partners would do

17    that is if it was a request; correct?

18               MR. WARNER:  Objection.

19         A.    Correct.

20    BY MR. KATAEV:

21         Q.    In response to that email,

22    IMELegalReps@gmail.com responds in part, "Everything

23    that has any connection to Companions has to be

24    removed"; correct?

25         A.    That's what I'm reading; correct.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

135

1                        S. Katz

2          Q.    Estefania then confirms that as a result

3     of that direction, the "our client page" has to be

4     removed as well, right?

5          A.    That is what she is suggesting, yes.

6          Q.    And the individual at

7     IMELegalReps@gmail.com confirms that direction;

8     correct?

9          A.    Correct.

10         Q.    At 8:33 p.m., someone at

11    IMELegalReps@gmail.com provides what appears to be a

12    screenshot; correct?

13         A.    I would have to look for more context.  I

14    don't know if that's a screenshot or if that's

15    verbiage they want us to change.

16         Q.    There's a reference to the term

17    Companions within this, the body of this email;

18    correct?

19         A.    I see that, yes.

20         Q.    Based on the context of the email, this

21    is a request by IME Legal Reps to remove the

22    reference to Companions; correct?

23               (Court reporter requested clarification.)

24         A.    That's how I interpret it, yes.

25               MR. KATAEV:  I'm going to Hearing

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

136

                              S. Katz

1

2          Exhibit 68.

3                   (Plaintiff's Hearing Exhibit 68, email

4          exchange, marked for identification.)

5    BY MR. KATAEV:

6          Q.     This is an exchange between Corey and

7    Safa on March 12, 2024; correct?

8          A.     Yes.

9          Q.     And in this exchange, Corey references

10   settling things with that lady.

11                Do you see that?

12         A.     I do.

13         Q.     When Corey refers to that lady, do you

14   know who that is?

15         A.     I can only assume it's based on the video

16   that we all just watched.

17         Q.     To your knowledge, what did Corey mean by

18   being a resource for Safa and Eugene?

19         A.     I don't want to take anything out of

20   context.  I don't know.  Once again, a salesman

21   doing anything he can to get the account back.

22         Q.     Did Corey share with you any

23   conversations he had with Safa or Eugene about

24   settling things with that lady?

25         A.     No.  We have not spoke about any of this.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

137

S. Katz

1

2          MR. KATAEV:  This is Hearing Exhibit 99.

3          (Plaintiff's Hearing Exhibit 99, email

4       exchange, marked for identification.)

5    BY MR. KATAEV:

6          Q.    Another exchange between Corey, Eugene,

7       Safa and IMELegalReps@gmail.com.

8                Do you see that?

9                Do you see that, Mr. Katz?

10         A.    I do.

11         Q.    In this email exchange, Corey sends

12      emails to Eugene at IMECompanions.com

13      and SGelardi@IMECompanions.com; correct?

14                (Court reporter requested clarification.)

15    BY MR. KATAEV:

16         Q.    Eugene@IMECompanions.com and

17      SGelardi@IMECompanions.com; correct?

18         A.    Correct.

19         Q.    The only way that Corey would know those

20      email addresses is if someone provided it to him,

21      correct?

22                MR. WARNER:  Objection.

23         A.    I would assume so, yes.

24    BY MR. KATAEV:

25         Q.    Do you have any knowledge about what

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

138

1                          S. Katz

2    Corey means when he refers to potentially working

3    together again?

4               MR. WARNER:  Objection.

5        A.    If I'm correct, this was preceding the

6    call that we all listened to.  I have to look at the

7    dates.

8    BY MR. KATAEV:

9        Q.    The date of this email --

10       A.    No.  No.  Actually.  No.  No.  This is

11   after.  We, again, just trying to continue this

12   account moving on.

13       Q.    This email is dated approximately three

14   months ago; correct?

15       A.    Yeah.  No.  He's -- Corey is doing his

16   best as a salesman to get them to respond so he can

17   collect the next payment.

18       Q.    Do you have any knowledge as to whether

19   Corey had any discussion with Safa or Eugene

20   following this email?

21       A.    When I spoke to Corey, he said, I have

22   not had any discussions with them.  I keep reaching

23   out to them, but nothing yet.

24               MR. KATAEV:  Going to Hearing Exhibit 98.

25               (Plaintiff's Hearing Exhibit 98, Excel

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

139

1                         S. Katz

2          spreadsheet, marked for identification.)

3     BY MR. KATAEV:

4          Q.    I'll represent to you, Mr. Katz, that

5     this is an Excel spreadsheet titled "IME LI

6     Accelerator Stats" produced by Giant Partners in

7     response to the subpoena.

8                Are you familiar with this document?

9          A.    I am not familiar with this document.

10         Q.    Who would be familiar with it?

11         A.    Probably Conor.  But I've seen a document

12    similar to this.  I just didn't see this one for

13    IME.

14         Q.    At the top right, there's a section

15    called "Statistics"; correct?

16         A.    Correct.

17         Q.    And the first item in dark green is

18    titled "Connected"; right?

19         A.    Correct.

20         Q.    Do you know what "Connected" means?

21         A.    I do not.

22         Q.    Is it fair to say based on a view of the

23    emails produced in response to the subpoena and the

24    video that we went over at the beginning of the

25    deposition that this list was generated by Giant

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

140

                    S. Katz

1

2    Partners with information provided by Safa?

3              MR. WARNER:  Objection.

4         A.    I don't know.

5    BY MR. KATAEV:

6         Q.    Giant Partners would not have the ability

7    to obtain a list of law firms and individuals at the

8    law firms with their titles and contact information;

9    correct?

10             MR. WARNER:  Objection.

11        A.    I think I mentioned previously that we do

12   have the ability to get a list of law firms.

13        Q.    When you mentioned that you have the

14   ability to obtain a list of law firms, does that

15   include the ability to obtain the first and last

16   name of an individual there with their title and

17   contact info?

18        A.    Certainly.  I can google it just like

19   you.

20        Q.    Do you have any knowledge as to whether

21   someone at Giant Partners compiled this list?

22        A.    I would have to look in to see if we

23   compiled this list for their marketing efforts.

24        Q.    Who --

25             (Simultaneous speakers.)

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

141

                              S. Katz

1

2        A.    We're a data company also.

3        Q.    Who at Giant Partners was responsible for

4   working on this list?

5        A.    We have a handful -- I would have to find

6   out the person and get the details.

7        Q.    Would it be accurate to state that the

8   list Safa provided of February 6th, 2023, and the

9   information within it is contained in this

10  spreadsheet?

11             MR. WARNER:  Objection.

12       A.    I don't want to guess.  I'd have to

13  contrast and compare.

14  BY MR. KATAEV:

15       Q.    In reviewing this list --

16       A.    Me?  Hang on.  Sorry.

17       Q.    In reviewing this list, this was created

18  to track who Giant Partners contacted for marketing

19  purposes; correct?

20       A.    I would --

21             MR. WARNER:  Objection.

22       A.    -- assume so.

23             MR. WARNER:  Objection.

24  BY MR. KATAEV:

25       Q.    The term "LI" in the title of this file

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

142

1                      S. Katz

2      refers to LinkedIn; correct?

3                 MR. WARNER:  Objection.

4           A.    I assume so.

5      BY MR. KATAEV:

6           Q.    And on the far right of the spreadsheet,

7      there are three columns that say "LinkedIn, First

8      Message Follow-Up; Second Message, Three Days After;

9      and Third Message, Three Days After."

10                Do you see that?

11          A.    I do.

12          Q.    And the dates listed for certain firms

13     are the dates that Giant Partners contacted these

14     particular firms; correct?

15                MR. WARNER:  Objection.

16          A.    Again, I would have to get more

17     information about the document and how these firms

18     were contacted.

19     BY MR. KATAEV:

20          Q.    To your knowledge, was Giant Partners

21     instructed to target specific customers from this

22     list?

23                MR. WARNER:  Objection.

24                (Simultaneous speakers.)

25          A.    Sorry.  Could you repeat that?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

143

1                          S. Katz

2       BY MR. KATAEV:

3            Q.    To your knowledge, was Giant Partners

4       instructed to target specific customers from this

5       list?

6                 MR. WARNER:  Objection.

7            A.    I do not have knowledge of that.

8       BY MR. KATAEV:

9            Q.    Who would have knowledge of that?

10           A.    Again, I'd have to research it and find

11      out who is running this program in our organization.

12           Q.    Is it fair to say that this spreadsheet

13      is contained in the Marketing Collaterals folder of

14      Giant Partners for IME Legal Reps?

15           A.    I believe that's how you received it,

16      yes.

17           Q.    Based on your review of this spreadsheet,

18      pending means that a connection request was

19      initiated on LinkedIn; correct?

20           A.    I don't want to -- I don't want to guess

21      on this one.  I'd like to find out more information

22      about this sheet and how it was derived.

23           Q.    Do you have any knowledge about the

24      content of any messages sent to the individuals

25      listed, where there are dates and "LinkedIn, First

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

144

1                          S. Katz

2        Message, Second Message, and Third Message"?

3               A.    Yeah.  I do not.

4               MR. KATAEV:  I'm going to ask Giant

5        Partners to preserve any of that information.

6               THE WITNESS:  Absolutely.

7        BY MR. KATAEV:

8               Q.    During the course of performing work for

9        IME Companions and/or IME Legal Reps, did Giant

10       Partners have credentials to access LinkedIn

11       accounts for those companies?

12              MR. WARNER:  Objection.

13              A.    I do not know.

14       BY MR. KATAEV:

15              Q.    Generally speaking, when Giant Partners

16       does work such as what's listed here, it is Giant

17       Partners that performs the actual act of reaching

18       out to leads; correct?

19              A.    There's --

20              MR. WARNER:  Objection.

21              A.    There's a multitude of ways.  In this

22       particular circumstance, I don't know who reached

23       out to these people.  I would have to investigate

24       more.

25       BY MR. KATAEV:

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

145

1                          S. Katz

2          Q.    There are five sheets in this

3     spreadsheet; correct?

4          A.    Correct.

5          Q.    Based on my hovering over the last cell

6     on the bottom of the main spreadsheet, main

7     worksheet, there are 1,358 contacts when excluding

8     the first column; correct?

9          A.    Correct.

10         Q.    Are each of these 1,358 contacts LinkedIn

11    pages listed for virtually every contact; correct?

12         A.    Correct.

13         Q.    In the New Jersey worksheet, there are

14    not as many contacts; correct?

15         A.    Correct.

16         Q.    There are only about 158 based on what

17    I'm showing you; correct?

18         A.    Correct.

19         Q.    And unlike the main worksheet, the

20    New Jersey worksheet contains no data on anybody

21    that was contacted; correct?

22         A.    Can you repeat that?  I'm sorry.

23         Q.    Unlike the main worksheet for New York,

24    the New Jersey worksheet does not have any data

25    about anyone that was contacted; correct?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

146

1                       S. Katz

2          A.    Correct.

3          Q.    The third worksheet, which is the

4    Philadelphia worksheet, or Philly, has only two

5    contacts; correct?

6          A.    Yes.

7          Q.    And similarly, there is no data about

8    anyone that was contacted; right?

9          A.    Correct.

10         Q.    And the fourth worksheet -- sheet

11   three -- is blank; right?

12         A.    Correct.

13         Q.    And the final worksheet contains basic

14   information without any real data; correct?

15         A.    Correct.

16         Q.    Based on a review of this worksheet, is

17   it fair to say that the focus of IME Legal Reps'

18   marketing was on New York law firms?

19              MR. WARNER:  Objection.

20         A.    I can't answer that conclusively.  I

21   don't know enough about this worksheet and the

22   program.

23              (Simultaneous speakers.)

24   BY MR. KATAEV:

25         Q.    Who would know?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

147

1                        S. Katz

2          A.    I can guess.  One of the team members

3     that's running some of these processes.  But again,

4     we've been really, really great with you guys.  So

5     any questions you have, we'd be more than happy to

6     respond back.

7          Q.    Do you know the identity, as you sit here

8     today, of who worked on this spreadsheet?

9          A.    I do not.

10         MR. KATAEV:  Going to our final

11    exhibit -- our second to final.  This is

12    Hearing Exhibit 66.

13         (Plaintiff's Hearing Exhibit 66, email

14    exchange, marked for identification.)

15    BY MR. KATAEV:

16         Q.    In this email exchange, Safa Gelardi

17    makes a request to access the marketing collaterals

18    on June 21st, 2023; correct?

19         A.    Correct.

20         Q.    And that's SafaGelardi@gmail.com;

21    correct?

22         A.    That's what I read, yes.

23         Q.    To your knowledge, was Safa provided

24    access to the marketing collaterals?

25         A.    I do not know.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz --- June 11, 2024

148

1                         S. Katz

2          Q.    By this point, was Giant Partners paid

3     any of its outstanding balances owed?

4          A.    No.

5          Q.    Do you know in relation to this date when

6     Giant Partners was locked out of the IME Legal Reps'

7     HubSpot?

8          A.    I do not know.

9          Q.    Is it fair to say that the LinkedIn

10    accelerator spreadsheet that we looked at is an

11    example of a targeted data list?

12         A.    I'd like to do more research before I

13    answer that question.  It seems like it, but, again,

14    because I'm unfamiliar with that, I can't give you

15    conclusive information right now.

16              MR. KATAEV:  This is Hearing Exhibit 71.

17              (Plaintiff's Hearing Exhibit 71,

18         screenshot of HubSpot page, marked for

19         identification.)

20    BY MR. KATAEV:

21         Q.    This is a screenshot of the HubSpot page

22    for --

23         A.    Corey.

24         Q.    -- Corey; correct?

25         A.    Mm-hmm.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

149

S. Katz

1

2      Q.    How do you know that this is Corey's

3   page?

4      A.    Simply because it's got -- it has his

5   information in HubSpot here.  On the far left-hand

6   side as "contact owner."  So this would be Corey's

7   HubSpot.

8      Q.    Top left, Safa Gelardi is listed as a

9   partner in IME Companions; correct?

10      A.    Correct.

11      Q.    This HubSpot contains emails dated

12   March 2024; correct?

13      A.    And does it go farther back -- can you

14   see?  Yes, you're correct.

15      Q.    IME Companions was no longer in operation

16   as of March 2024; correct?

17      A.    Correct.

18      Q.    And looking at this first email, this is

19   an email to Eugene; correct?

20      A.    Yes.

21      Q.    And this email to Eugene, which includes

22   Safa, is about IME Legal Reps; correct?

23      A.    Yes.

24      Q.    Is it fair to say, based on what you view

25   on this page, that when Giant Partners started

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

150

S. Katz

1
2      working with IME Legal Reps, Safa maintained the
3      same user information as she did when she had IME
4      Companions?
5          MR. WARNER:  Objection.
6          A.   I can't answer that conclusively because
7      Corey kept the same HubSpot account for IME
8      Companions as he did for IME Legal Representatives.
9      So all the information just passed through.  I can
10     find all that information out for you, but I can't
11     give you a conclusive answer.
12     BY MR. KATAEV:
13         Q.   How do you know that there were two
14     HubSpots?
15         A.   I don't know.  I said, there could be.
16     My guess is he kept one HubSpot for the entire
17     relationship.
18         Q.   Only Corey would know the answer to that,
19     definitively; correct?
20         A.   No.  We have some managers that can dig
21     in and look.
22         Q.   Corey remains an employee of Giant
23     Partners; correct?
24         A.   He does.
25         Q.   In reviewing these emails, these are some

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

151

                              S. Katz

1

2      of the same emails that we've previously looked at;

3      correct?

4            A.    Yes.

5            Q.    Whenever Corey or someone at Giant

6      Partners copied that bcc@HubSpot email address,

7      that's how they would end up in HubSpot; correct?

8            A.    I'm pretty sure of that.  I don't use

9      HubSpot myself.  As I mentioned in the beginning,

10     I'm very analog.  But I'm pretty sure that's how it

11     works.

12           Q.    There's a reference to each of these

13     threads about the number of associations.

14                 Do you see that?

15           A.    I do.

16           Q.    To your knowledge, what do those

17     associations refer to?

18           A.    Different communications that were

19     associated with that.  I'd have to look.  It could

20     be actions.  I don't want to guess again.

21           Q.    In each of these email threads, it only

22     shows the most recent email and you would have to

23     click on the ellipses at the end of each one to see

24     the full chain; correct?

25           A.    I assume so.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

152

                              S. Katz

1

2      Q.     Scrolling down a little more than half

3  way through, we started seeing October 17, 2022,

4  exchanges concerning IME Companions; correct?

5      A.     Correct.

6      Q.     Based on your review of this document as

7  we sit here today, the same HubSpot was used for

8  both IME Companions and IME Legal Reps; correct?

9      A.     I need to look into that.  I don't want

10  to make that assumption.

11      Q.     Every single document that we looked at

12  today consisting of the emails and attachments were

13  all made and kept in the ordinary course of Giant

14  Partners' business; correct?

15      A.     Correct.

16      Q.     Generally speaking, what business is

17  Giant Partners in?

18      A.     We're a marketing agency.

19      Q.     And you are the chief operating officer

20  of Giant Partners; correct?

21      A.     Correct.

22      Q.     How many employees does Giant Partners

23  have?

24      A.     Approximately 40.

25      Q.     How many employees, approximately, worked

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

153

S. Katz

1

2      with IME Companions and/or IME Legal Reps?

3           A.    Four, five, possibly.  I don't know.  We

4      have graphic designers.  We have content writers.

5      Four.

6           Q.    When Giant Partners worked with IME

7      Companions, who was the primary contact for IME

8      Companions?

9           A.    Well, Corey was the sales rep.  Tiffany

10     was the account representative.  And there were two

11     or three people as we do with every account just

12     keep a 10,000 foot eye on things.

13          Q.    Same question for IME Legal Reps.

14          A.    Same thing.  I apologize.  No.  Because

15     we identified that Tiffany was taken off that

16     account and Estefania was put on.  So that would be

17     the only change.

18          Q.    And Corey remained; correct?

19          A.    Correct.  He was the original

20     salesperson.

21          Q.    Have you communicated with someone at IME

22     Companions -- withdrawn.

23                When anyone at Giant Partners

24     communicated with someone at IME Companions, how

25     would that person know who they were communicating

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

154

1                          S. Katz

2      with?

3           A.    Can you repeat that?

4           Q.    When anyone at Giant Partners would

5      communicate with anyone at Companions, how would

6      they know who they were communicating with?

7           A.    If I'm correct, in 2022 that

8      communication was through Safa, and there was no

9      mystery.

10          Q.    When you communicated -- withdrawn.

11                When anyone at Giant Partners

12     communicated with anyone at IME Legal Reps, how

13     would that person know who they were communicating

14     with?

15          A.    As I mentioned, we weren't sure -- I'm

16     not sure who that response was.

17          Q.    Based on the emails that we reviewed

18     today, at least in the beginning, who was that

19     individual?

20          A.    It was either -- based on what we've

21     discussed, Eugene or Safa, in my opinion.  Not

22     conclusive.

23          Q.    Did Giant Partners learn at any point

24     that IME Companions was shut down?

25          A.    No.  We still don't.  No.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz   ---   June 11, 2024

155

1                    S. Katz

2        Q.    Are you aware of any conversations that

3   Safa had with anyone at Giant Partners concerning

4   the lawsuit?

5        A.    Can you repeat that again?

6        Q.    Are you aware of any conversations that

7   anyone at Giant Partners had with Safa concerning

8   the lawsuit?  Obviously other than the video.

9        A.    That was my point.  Other than the

10   videotape, that's all that I know of.

11        Q.    When you received the subpoena and spoke

12   to your team members, did any of them tell you

13   anything about the lawsuit?

14        A.    They had no idea.

15             MR. KATAEV:  I believe I may be done, but

16        I want to take a five-minute break just to

17        confirm.

18             THE VIDEOGRAPHER:  We are going off the

19        record.  The time is 4:20 p.m.

20             (A recess was taken from 4:20 p.m. to

21        4:27 p.m.)

22             THE VIDEOGRAPHER:  The time is 4:27 p.m.

23        We are back on the record.

24             MR. KATAEV:  Mr. Katz, I'll speak for the

25        plaintiff.  I want to thank you again for your

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

156

1              S. Katz

2         time and cooperation today.  Plaintiff has no

3         further questions subject to any redirect based

4         on questions that Mr. Warner for defendants

5         asks.

6    EXAMINATION BY

7    MR. WARNER:

8         Q.   Good afternoon, Mr. Katz.  It's 1:30 your

9    time, 4:30 our time.  In the meantime, I have some

10   questions for you regarding what you've gone over

11   for the past four plus hours.

12        A.   Sure.

13        Q.   In connection with the video that we

14   watched, you heard the use of the term "Plaintiff

15   Advocates"; correct?

16        A.   I did.

17        Q.   You never heard Safa Gelardi talk about

18   IME Legal Reps, did you?

19             MR. KATAEV:  Objection.

20        A.   Not that I recall.

21   BY MR. WARNER:

22        Q.   Isn't it true, Mr. Katz, that the entity

23   that was being discussed by Mr. Koenig and

24   Ms. Gelardi was called "Plaintiff Advocates" or

25   "Plaintiffs Advocates"?

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

157

1              S. Katz

2              MR. KATAEV:  Objection.

3         A.    That's what I heard on the video.

4    BY MR. WARNER:

5         Q.    To your knowledge, was that entity ever

6    formed?

7              MR. KATAEV:  Objection.

8         A.    To my knowledge, no.

9    BY MR. WARNER:

10        Q.    Was any work done by Giant Partners

11   for -- done for Plaintiff Advocates?

12        A.    Not to my knowledge.

13        Q.    Was any transfer of any information from

14   any website that had been owned by IME Companions

15   performed vis-à-vis Plaintiff Advocates?

16        A.    Not to my knowledge.

17        Q.    Isn't it true that as of April 19th, you

18   had been advised by Mr. Liddie that Safa Gelardi

19   was -- had no further involvement whatsoever with

20   IME Legal Reps, and that you were to stop including

21   her on emails?

22        A.    That's what I recall reading in those

23   emails.

24        Q.    Other than Mr. Weissman's desire to

25   rekindle a relationship with Ms. Gelardi, are you

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

158

1                          S. Katz

2     aware of any reason why she was included on the

3     emails going forward?

4              MR. KATAEV:  Objection.  Argumentative.

5          It calls for speculation.

6              You can answer.

7          A.    Not to my knowledge.

8     BY MR. WARNER:

9          Q.    In fact, didn't Ms. Gelardi specifically

10    write to Giant Partners and request that she no

11    longer be included on any emails to IME Legal Reps?

12             MR. KATAEV:  Objection.

13             You can answer.

14         A.    I would have to go back and review.  But

15    based on what we've spoken about today, I do not

16    think so.

17    BY MR. WARNER:

18         Q.    So you don't think that she ever wrote to

19    you at Giant Partners and said, Hey, stop including

20    me in these emails?

21             MR. KATAEV:  Objection.

22         A.    Not to my knowledge.

23    BY MR. WARNER:

24         Q.    If there were to be an email that I could

25    show you that specifically was from Safa Gelardi and

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

159

1                          S. Katz

2       specifically asked that you no longer include her on

3       emails to IME Legal Reps, would that change your

4       testimony?

5                    MR. KATAEV:  Objection.

6                    You can answer.

7              A.    Potentially.

8       BY MR. WARNER:

9              Q.    You never had any communications with

10      Ms. Gelardi; isn't that true?

11             A.    That's correct.

12             Q.    And you never wrote to her, you never

13      spoke with her; correct?

14             A.    Correct.

15                   MR. KATAEV:  Objection.

16      BY MR. WARNER:

17             Q.    Other than the video in which she talks

18      about her involvement with Plaintiff Advocates,

19      isn't it true that you don't -- are not aware of any

20      information that links her to IME Legal Reps other

21      than the transferring of the website?

22                   MR. KATAEV:  Objection.

23             A.    Again, only what she said on that video.

24      BY MR. WARNER:

25             Q.    All right.  But that video never

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

160

1                       S. Katz

2      mentioned the word IME Legal Reps; isn't that true?

3                  MR. KATAEV:  Objection.  Argumentative.

4                  You can answer.

5          A.    I think at that time, going back and

6      remembering that video, that name was not brought

7      up.

8      BY MR. WARNER:

9          Q.    Did Mr. Liddie ever have any

10     communications with Giant Partners regarding

11     Plaintiff Advocates?

12                 MR. KATAEV:  Objection.

13         A.    Not to my knowledge.

14     BY MR. WARNER:

15         Q.    And isn't it true that you never did any

16     marketing whatsoever for IME Legal Reps?

17                 MR. KATAEV:  Objection.

18         A.    I would have to look into that.  I know

19     we built the website.  I'm not sure what happened

20     after that, what we did.

21     BY MR. WARNER:

22         Q.    You didn't build a website for Plaintiff

23     Advocates, did you?

24                 MR. KATAEV:  Objection.

25         A.    Not to my knowledge, no.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

161

1                        S. Katz

2      BY MR. WARNER:

3           Q.    You would agree with me that Corey

4      Weissman's email solicitations to Safa Gelardi

5      didn't constitute an exchange between them when she

6      didn't respond back to him; agreed?

7           A.    Can you restate that again, just so I'm

8      clear.

9           Q.    We know that Corey Weissman reached out

10     to Safa Gelardi numerous occasions; correct?

11          A.    Correct.

12          Q.    She never responded to him; correct?

13          A.    Not to my knowledge, no.

14               MR. KATAEV:  Objection.  Asked and

15          answered.

16     BY MR. WARNER:

17          Q.    When was the last communication that you

18     had from Safa Gelardi?

19          A.    I do not know.

20          Q.    Isn't it true that it was -- the last

21     communication was shortly after you were advised to

22     port the website over to Eugene Liddie and IME Legal

23     Reps?

24               MR. KATAEV:  Objection.

25          A.    Again, I'd have to look back if there was

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

162

1                       S. Katz

2      any email communication.  But to my knowledge at

3      this point, I do not think so.

4      BY MR. WARNER:

5          Q.    Did you ever enter into any kind of

6      agreement for Plaintiff Advocates?  That is, you,

7      being GPI -- I'll refer to you as GPI for the

8      purposes of the next questioning.

9          A.    No.

10         Q.    Do you know whether Jeremy Koenig ever

11     did any work for GPI -- excuse me, for Plaintiff

12     Advocates?

13         A.    We did not.

14         Q.    Did you ever bill Plaintiff Advocates?

15         A.    We did not.

16               MR. KATAEV:  Objection.

17               You can answer.

18     BY MR. WARNER:

19         Q.    Did you ever send a bill for the work

20     that was done for IME Legal Reps to IME Companions?

21         A.    No.

22         Q.    Did you ever send it to Safa Gelardi?

23         A.    Not to my knowledge.

24         Q.    Isn't it fair to say, Mr. Katz, that

25     after the completion of the website, no further work

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

163

S. Katz

1

2  was done by GPI for or on behalf of IME Legal Reps?

3          A.    Not to my knowledge.

4          MR. KATAEV:  Objection.  Calls for

5          speculation --

6  BY MR. WARNER:

7          Q.    When you're saying "not to my knowledge,"

8  you're agreeing with me that no further work was

9  done; correct?

10         MR. KATAEV:  Objection.

11         A.    We built a website, and I don't know if

12 we did anything after that because of payment, lack

13 of payment.

14 BY MR. WARNER:

15         Q.    Wouldn't additional work require a

16 marketing contract?

17         A.    Well, we do have an agreement.  We

18 entered into a contract with IME Legal

19 Representatives --

20         (Simultaneous speakers.)

21         Q.    Who signed the contract on behalf of IME

22 Legal Rep?

23         A.    I have to look into that.  I don't have

24 access on my computer.  But as mentioned, I can look

25 and see who signed it and who the credit card was

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

164

1                         S. Katz

2      under.

3                  MR. WARNER:  Could we leave a space in

4            the record for you to provide us with the

5            information as to who signed the agreement on

6            behalf of IME Legal Reps?

7            Q.    Mr. Katz, can we?

8            A.    Send over a subpoena.  Whatever you guys

9      want.

10     BY MR. WARNER:

11           Q.    You produced the contract -- you produced

12     the contract itself to Mr. Kataev; correct?

13           A.    Yes, I did.  Yes, we did.

14           Q.    He has to have the courtesy of providing

15     it to me, so I'm asking you --

16                 MR. ALLEN:  We can provide that.

17                 MR. WARNER:  Thank you, Mr. Allen.  I

18           appreciate that.

19                 MR. KATAEV:  For the record, we produced

20           everything that was produced by Giant Partners.

21           It's in our court file.

22     BY MR. WARNER:

23           Q.    In April of 2023, specifically

24     April 19th, you were shown in Hearing Exhibit 94,

25     where Estefania indicated, "I'm sorry to hear about

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

165

1                    S. Katz

2     Safa."

3              Do you remember?

4         A.   I do.

5         Q.   As far as you're aware, was Safa involved

6     in IME Legal Reps at any time after April 19th?

7              MR. KATAEV:  Objection.  Argumentative.

8         A.   Not to my knowledge.  Let me retract

9     that.  There were emails going back and forth, but

10    as I stated earlier, I wasn't sure who was -- we

11    weren't sure who was responding back to those

12    emails.

13    BY MR. WARNER:

14        Q.   They may well have been just from

15    Mr. Liddie; correct?

16        A.   They could have been from Donald Trump.

17    I don't know yet.

18        Q.   Okay.  That's fair.  He might have been

19    busy at the time, but --

20        A.   He's got his own problems.

21        Q.   After April 19th, were you ever advised

22    by Safa or Vito that they were involved with IME

23    Legal Reps?

24        A.   Can you repeat that?

25        Q.   After April 19th, 2023, did you ever get

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

166

1                        S. Katz

2       any indication from Safa Gelardi or Vito Gelardi

3       that they were involved with IME Legal Reps?

4                    MR. KATAEV:  Objection.  Compound.

5           Vague.

6           A.    Only what we saw in the videotape.

7       Nothing after that.

8       BY MR. WARNER:

9           Q.    When you say "only what we saw in the

10      videotape," the videotape didn't refer to IME Legal

11      Reps; did it?

12          A.    I reckon not.  You're absolutely right.

13                   MR. KATAEV:  Objection.

14      BY MR. WARNER:

15          Q.    So is it fair to say that you never got

16      any communication from either of the Gelardis that

17      they were involved in IME Legal Reps?

18                   MR. KATAEV:  Objection.  Calls for

19          speculation.

20      BY MR. WARNER:

21          Q.    You can answer it.

22          A.    No.  I'm thinking.  I don't know the

23      answer to that question.  I would have to look to

24      see if we received any other emails which we weren't

25      asked to provide.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

167

1                      S. Katz

2        Q.    Did you ever have any conversation with

3    Tiffany regarding her understanding of any

4    involvement by the Gelardis in IME Legal Reps?

5        A.    I've had no conversations with Tiffany.

6        Q.    Do you know whether Tiffany had any

7    conversations with either of the Gelardis after

8    April 19, 2023?

9        A.    I do not know.

10        Q.    Had she had those communications, would

11    you have expected an email from her or some other

12    communication from her?

13        A.    It would have been supplied with the

14    subpoena information requested.

15        Q.    When Safa did communicate with you and

16    requested the marketing collaterals, isn't it true

17    that she was asking for the marketing collaterals of

18    IME Companions?

19        A.    Based on the email that I saw, yes.

20        MR. WARNER:  I have no further questions.

21    Thank you, Mr. Katz.

22        MR. KATAEV:  Brief redirect.

23    Approximately 10 questions.  Bear with me.

24    BY MR. KATAEV:

25        Q.    Referring to the email that we looked at

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

168

1                      S. Katz

2       at the beginning of the deposition, the date of that

3       virtual meeting was April 10th, 2023; correct?

4            A.    Correct.

5            Q.    At 11:09 GMT minus 7; right?

6            A.    Correct.

7            Q.    I'm referring to Exhibit 15, this

8       April 10, 2023, email at 12:59 p.m.  The information

9       from IME Legal Reps was provided to Giant Partners

10      on the very same day.

11                 Correct?

12           A.    Correct.

13           Q.    Is it fair to say that this email

14      followed the virtual meeting?

15           A.    Yes.

16           Q.    Corey Weissman repeatedly referred to the

17      court date in his communications with Safa and

18      IMELegalReps@gmail.com; correct?

19           A.    Correct.

20           Q.    To your knowledge, is Eugene Liddie a

21      party to the lawsuit related to the court date?

22           A.    I --

23                 MR. WARNER:  Objection.

24           A.    I don't know about the court date, and I

25      don't know -- I don't know.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

169

1                        S. Katz

2     BY MR. KATAEV:

3          Q.    Is it fair to infer that because Safa

4     Gelardi discussed the court case during the virtual

5     meeting that Corey only knew about the court date by

6     speaking with Safa?

7                    MR. WARNER:  Objection.

8          A.    It's my opinion that everything that --

9     regarding the court case was obtained on that call.

10    BY MR. KATAEV:

11         Q.    The website that was built following this

12    April 10, 2023, virtual meeting was IME Legal Reps;

13    correct?

14         A.    Correct.

15         Q.    The direction to make a website for IME

16    Legal Reps came from Safa; correct?

17                   MR. WARNER:  Objection.

18         A.    In the video she spoke about another

19    company, not IME Legal Reps, and the new video --

20    I'm sorry -- and the new website.  It wasn't until,

21    as we saw, the email came over after that that IME

22    Legal Reps was first brought into the -- that name

23    was first brought up.

24    BY MR. KATAEV:

25         Q.    Is it fair to infer a decision was made

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

170

                            S. Katz

1

2      that changed the name from Plaintiff Advocates to

3      IME Legal Reps after the meeting?

4                  MR. WARNER:  Objection.

5           A.    The email that we received confirmed

6      that.

7      BY MR. KATAEV:

8           Q.    Based on your review of the video and the

9      emails exchanged that Safa Gelardi -- Safa formed a

10     new business and a new website with Eugene Liddie;

11     correct?

12                 MR. WARNER:  Objection.

13          A.    Based on that video that we all saw,

14     someone formed something.

15     BY MR. KATAEV:

16          Q.    And that new website ended up being IME

17     Legal Reps; correct?

18                 MR. WARNER:  Objection.

19          A.    The video that we all watched never

20     talked about that.  I don't know when it went from

21     the Advocates to IME until we get that email.  But

22     we did take that direction and build that site.

23                 MR. KATAEV:  Just give me one second.

24          Mr. Katz, I thank you again for your time.  I

25          have no further questions.

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

171

1                          S. Katz

2              MR. WARNER:  I have no further questions

3         as well.

4              Mr. Katz, again, thank you for your time.

5              THE WITNESS:  My pleasure.

6              Daniella, nothing?  Come on.

7              THE VIDEOGRAPHER:  We are going off the

8         record.  The time is 4:47 p.m.

9              (Whereupon, the proceedings were

10        adjourned at 4:47 p.m.)

11

12                        J U R A T

13

14

15             I do hereby certify that I have read

16        the foregoing transcript of my deposition.

17

18        _____

19                   SHELDON KATZ

20

21   Sworn and subscribed

22   before me

23   this _____ day of

24   _____, 2024.

25   A Notary Public of the State of _____

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

172

1

2                        I N D E X

3

4    WITNESS                 EXAMINATION BY         PAGE

5    SHELDON KATZ       MR. KATAEV                    7

6                       MR. WARNER                  156

7                       MR. KATAEV                  167

8

9                      E X H I B I T S

10

11   PLAINTIFF'S  DESCRIPTION                     PAGE

12   HEARING

13   Exhibit 93   declaration                        7

14   Exhibit 100  video recordings and             10

15                transcription

16   Exhibit 45   email                             60

17   Exhibit 39   email chain                       73

18   Exhibit 57   email                             83

19   Exhibit 60   email                             98

20   Exhibit 54   email exchange                   100

21   Exhibit 72   screenshot of IME                104

22                website

23   Exhibit 94   email chain                      107

24   Exhibit 61   email chain                      109

25   Exhibit 95A  email exchange                   113

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

173

1

2                    I N D E X (continued)

3

4              E X H I B I T S (continued)

5

6      PLAINTIFF'S  DESCRIPTION                    PAGE

7      HEARING

8      Exhibit 62    email exchange            116

9      Exhibit 63    email exchange            119

10     Exhibit 64    email exchange            121

11     Exhibit 95B email exchange             124

12     Exhibit 96    email exchange            125

13     Exhibit 67    email                     130

14     Exhibit 97    email exchange            133

15     Exhibit 68    email exchange            136

16     Exhibit 99    email exchange            137

17     Exhibit 98    Excel spreadsheet         138

18     Exhibit 66    email exchange            147

19     Exhibit 71    screenshot of HubSpot     148

20                   page

21

22

23

24

25

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

174

1

2                  I N D E X (continued)

3

4          REQUEST:                                      PAGE

5          Company to whom contract was sent              31

6          Phone numbers Giant Partners maintains         56

7          that are used to communicate with Safa

8          Research and preserve all records related      67

9          to any solicitations made by Giant

10         Partners on behalf of IME Legal Reps

11         Preserve records related to solicitations      68

12         re IME Companions and IME Legal Reps and

13         any other company that's ever worked with

14         Giant Partners

15         Name on IME Legal Reps credit card             79

16         Search for any emails with Mr. Liddie         106

17         asking for any corrections

18         Content of any messages sent to the           143

19         individuals listed, where there are dates

20         and "LinkedIn, First Message, Second

21         Message, and Third Message" and preserve

22         that information

23         Who signed the agreement on behalf of IME     164

24         Legal Reps

25

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

175

1

2                        CERTIFICATE

3

4       STATE OF NEW YORK )

5                        ) ss.

6       COUNTY OF SUFFOLK)

7

8              I, Elizabeth F. Tobin, a Registered

9       Professional Reporter and Notary Public within and

10      for the State of New York, do hereby certify:

11             That Sheldon Katz, the witness whose

12      deposition is hereinbefore set forth, was duly sworn

13      by me remotely and that such deposition is a true

14      record of the testimony given by such witness.

15             I further certify that I am not related

16      to any of the parties to this action by blood or

17      marriage and that I am in no way interested in the

18      outcome of this matter.

19

20

21                           *Elizabeth F. Tobin*

22             ELIZABETH F. TOBIN, RPR

23

24

25

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

176

June 11, 2024


                        ERRATA


PAGE/LINE   CHANGE/REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**A**

**a.m** 79:23 80:10 83:9
**Abdulrahim** 1:9 2:16 5:14
**ability** 84:12,20 131:24 132:3 133:10 140:6,12,14 140:15
**able** 11:16 16:19 21:15 31:12 33:25 35:19 37:16 39:6 40:15 44:3,20 46:21 50:18 53:19 54:23 54:25 56:25 71:24 119:12
**absolutely** 49:6 67:24 102:13 106:15,19 144:6 166:12
**accelerator** 139:6 148:10
**access** 14:4 95:2,4 98:10 109:7 114:8 114:21 119:2 129:25 130:5 144:10 147:17,24 163:24
**accessible** 45:12
**Accompanied** 43:15 43:18
**account** 45:7 62:6 72:20 80:4,18 81:15 84:7,11,14,15 88:2 114:6,9,15 121:6,7 122:17 131:2,20 136:21 138:12 150:7 153:10,11,16
**accounts** 45:21 77:16 144:11
**accurate** 11:21 60:7 60:12,13 127:4 141:7
**achieve** 62:9
**act** 144:17
**acting** 34:5
**action** 175:16

**actions** 151:20
**activity** 85:15
**actual** 65:9 144:17
**additional** 127:6 163:15
**address** 22:21 39:15 39:15 44:11 74:9,10 74:20,21,25 75:3,8 76:21 86:14 87:9 98:14 131:8 151:6
**addressed** 76:22,25
**addresses** 55:24 56:2 56:7 137:20
**adjourned** 171:10
**administer** 4:13
**administering** 6:14
**ads** 71:5
**advised** 157:18 161:21 165:21
**Advocates** 11:25 12:6 26:19 32:14,20 33:3 37:21 38:14 58:23 156:15,24,25 157:11,15 159:18 160:11,23 162:6,12 162:14 170:2,21
**affiliated** 116:5
**affluent** 132:12
**afternoon** 5:9,23 6:2 6:8 156:8
**afterward** 68:10
**age** 6:23 131:21
**agency** 35:6 152:18
**ago** 66:18 138:14
**agree** 6:12 60:14 161:3
**agreed** 4:2,6,10 56:17 106:16 161:6
**agreeing** 163:8
**agreement** 7:2 23:18 30:15 34:9 57:9 72:4 75:19 76:9 77:7,12,13 80:15 83:11 92:4 95:10,12 162:6 163:17 164:5

174:23
**agreements** 57:19,23 62:10 77:7
**ahead** 118:17 126:25
**aid** 133:12
**air** 133:4,8
**al** 5:15
**Allen** 3:7,7,11 5:21 5:21 6:21 56:17 60:11,18 68:2,9 79:9 106:16 118:15 164:16,17
**allowed** 38:7
**amazing** 62:19
**amount** 72:8 93:24
**analog** 151:10
**and/or** 73:14 86:19 123:16 144:9 153:2
**announce** 9:25
**announced** 103:3
**announcing** 105:12
**answer** 17:6 29:13 45:19 48:2,17 60:19 60:19 66:23 68:21 88:6 94:15 105:9 106:9 108:17 115:6 130:2 131:4 146:20 148:13 150:6,11,18 158:6,13 159:6 160:4 162:17 166:21,23
**answered** 161:15
**answers** 17:23
**ANTHONY** 1:10
**anybody** 145:20
**apologize** 25:14 44:14 51:15 52:23 57:18,22 59:23 61:15 70:3 104:17 108:18 112:17 153:14
**appears** 104:25 135:11
**Apple** 55:7
**application** 24:22

**appreciate** 164:18
**appropriate** 16:14 27:7 31:7
**approval** 93:7,8 101:4
**approved** 93:4 134:7
**approximately** 5:11 7:20 58:6 138:13 152:24,25 167:23
**April** 30:7 65:19 74:4 79:23 80:10 83:9,18 90:17,17 96:7 97:20 98:25 100:21 101:23 102:14 103:10 107:10 109:25 110:4,18 113:12,25 116:3 130:18 134:6,9 157:17 164:23,24 165:6,21,25 167:8 168:3,8 169:12
**Argumentative** 158:4 160:3 165:7
**Artworks** 88:18
**ascertain** 67:12 71:24
**asked** 23:10,11 29:5 35:5 57:4 63:24 70:18 101:3 108:24 118:3 159:2 161:14 166:25
**asking** 28:22 55:6 63:21 106:13 108:14,19 117:18 164:15 167:17 174:17
**asks** 44:11 45:6 64:8 97:22 110:21 156:5
**aspect** 59:24
**assist** 63:20
**assisted** 91:11
**associated** 151:19
**associating** 110:6
**association** 110:11,14 113:2
**associations** 151:13

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

178

151:17
**assume** 14:19 15:15
  47:5 64:15 77:25
  80:21 92:6,8 93:11
  101:10,12 105:17
  107:23 111:10
  112:24 113:20
  115:3,21 121:10,15
  126:11 127:2
  136:15 137:23
  141:22 142:4
  151:25
**assumed** 57:21
**assuming** 84:13
  113:23
**assumption** 86:14
  108:2 111:19
  112:11 129:10,11
  152:10
**assumptions** 76:21
**assurances** 57:9
**assure** 57:7
**attachment** 65:9 73:8
**attachments** 64:12
  64:15,17,19,22
  65:24 68:15 152:12
**attempting** 45:16
**attention** 10:13 74:3
  79:22 102:11
**attorney** 31:2 56:15
  106:12
**attorneys** 4:3 13:18
**audience** 132:9
**audiences** 66:7
**August** 30:18 33:9
**authentic** 8:7 9:3
**authorization** 92:20
  92:22
**authorized** 4:12
**automatically** 92:19
**available** 46:10
**Avenue** 2:7
**avoid** 20:10,17
**aware** 9:19,20 12:4
  24:18 31:24 32:3,18

37:4,7,25 38:11
40:23 41:9 66:5,11
73:12 82:3,7 99:8
103:14 110:17
120:20 123:25
129:24 155:2,6
158:2 159:19 165:5

**B**

**B** 172:9 173:4
**back** 13:20,25 14:2
  19:8,12,15 22:9,12
  22:17 24:3,21 25:14
  25:16,20 26:3,10,15
  26:25 27:5 31:18
  44:9 49:7,9,16 50:9
  50:12,23 51:2,8,9
  51:12,16 52:3,15
  63:8 64:17 66:14
  68:21 74:23 77:3
  83:5,8,22 84:3 94:9
  95:10 99:23 104:11
  106:25 112:10
  131:2 136:21 147:6
  149:13 155:23
  158:14 160:5 161:6
  161:25 165:9,11
**bad** 34:24
**balance** 47:25 48:18
  127:16
**balances** 148:3
**base** 16:5
**based** 12:15 13:2,17
  16:8,21,23 18:25
  20:5 21:2,8,21
  22:19 25:8 26:13,24
  28:11 32:12 33:14
  33:17 34:12 36:11
  39:13 40:22 41:7
  42:2,6,12 44:6
  45:10,25 46:7 47:4
  47:17,20 48:9 51:6
  54:4 58:25 59:10
  61:9 67:9 73:4
  76:14,19 84:11

86:14 87:24 89:10
89:19 90:2,16,24
91:6,15 93:5,10
94:6,16 99:11,16
100:8 101:9 102:19
112:5 113:4,20
116:22 122:2,7,14
123:24 127:4,17
128:21 129:4
130:20,23 135:20
136:15 139:22
143:17 145:5,16
146:16 149:24
152:6 154:17,20
156:3 158:15
167:19 170:8,13
**basic** 67:16 146:13
**basically** 131:22
**bcc@HubSpot** 151:6
**Bear** 167:23
**beginning** 20:13
  34:18 48:15 61:16
  64:23 74:13 87:7
  105:21 139:24
  151:9 154:18 168:2
**behalf** 2:5,14 3:5
  5:17 65:25 67:23
  163:2,21 164:6
  174:10,23
**believe** 24:13 40:7
  58:7 61:6 72:6
  112:25 143:15
  155:15
**best** 69:16 88:14
  132:9 138:16
**bill** 162:14,19
**binding** 6:14
**bio** 41:20
**birth** 82:8
**bit** 11:10 34:3 97:19
  98:2,6
**blank** 30:25 56:13
  146:11
**blind** 120:23
**blood** 175:16

**BMWs** 132:10
**board** 83:22 84:3
**body** 135:17
**book** 97:14
**booking** 26:10 97:15
**books** 96:16
**boss** 103:8
**bottom** 125:20,23
  134:2 145:6
**brain** 48:16
**brand** 25:11 89:20
  116:5,9 117:9,15
  134:12
**branding** 113:15
**break** 49:4 106:18
  132:4 155:16
**BRIDDA** 1:10
**Brief** 167:22
**bring** 84:13
**brings** 48:16
**broad** 126:16
**broke** 72:5
**brought** 160:6
  169:22,23
**buffoonery** 112:8,15
**build** 99:18 117:18
  117:22,23 160:22
  170:22
**building** 59:22
**built** 99:22 100:3
  116:13 160:19
  163:11 169:11
**business** 9:6,10 10:8
  43:8 62:3 70:10
  103:5 107:14
  112:22 132:25
  152:14,16 170:10
**businesses** 131:19
**busy** 165:19
**button** 10:3

**C**

**C** 2:2 3:2
**California** 1:20
  128:10 133:5

**call** 73:6 87:3 125:15 126:4 129:16 138:6 169:9
**called** 6:23 12:5 15:24 32:13,20,22 43:9,14 88:3,9 134:13 139:15 156:24
**calling** 24:21
**calls** 158:5 163:4 166:18
**campaign** 68:18 70:25 88:19
**campaigns** 69:2
**cancel** 95:12
**canceled** 71:12 92:10 92:12,18 95:20 114:8,11 115:3
**cancellation** 95:9
**cancelled** 118:25
**carbon** 120:24
**card** 78:23 79:6,7 163:25 174:15
**CARLOS** 3:21
**case** 1:8 8:14,17 18:16 36:23 37:5 99:21 100:5 118:7 169:4,9
**cases** 13:19
**catch** 43:5 52:24
**cell** 145:5
**center** 12:17
**certain** 8:5 10:15 33:17 40:24 41:9 142:12
**Certainly** 140:18
**CERTIFICATE** 175:2
**certified** 7:3
**certify** 171:15 175:10 175:15
**certifying** 8:5
**chain** 61:16,19,25 63:3 64:18 73:22,24 74:4 79:20 97:22

107:7,9 109:16,24 151:24 172:17,23 172:24
**change** 20:12 21:23 33:2 89:20 97:25 98:6,10 99:17 108:15,20,24 114:20,25 135:15 153:17 159:3
**CHANGE/REASON** 176:6
**changed** 19:18 20:17 51:8,11 114:11 170:2
**changes** 50:22 51:19 53:24 103:6 126:11 126:12,20,21
**charge** 90:25 91:8
**Charleston** 74:20
**check** 47:22
**checking** 48:10
**chief** 7:11 152:19
**circumstance** 144:22
**circumstances** 89:21
**City** 3:9
**Civil** 6:24
**clarification** 36:7 41:3 54:9 58:14 63:15 67:25 68:12 78:16 96:19 117:2 122:20 135:23 137:14
**clarify** 46:7
**clear** 55:3 161:8
**clearly** 52:14 108:18
**click** 151:23
**client** 1:11 36:12 43:2 43:9,12 70:14 71:14 88:15 93:4 96:16,25 126:21 132:8,15 133:3 135:3
**client's** 24:8 69:16 126:20
**clients** 34:23 57:19 63:25 64:24 70:13

94:22 110:10,14
**clients'** 24:21
**clip** 17:24 18:18 19:16 21:16 26:8,24 27:12 28:2,11,22 31:13,21 34:2 35:13 35:20 36:13 37:17 39:7,9 40:16,18 41:8,19 42:25 44:4 44:10,21,24 45:3 46:22,24 50:19 51:6 52:2 53:10,20,23 54:24 55:4,5 57:2,6 57:8,25 64:14
**clips** 59:12
**closing** 34:6
**code** 101:5
**collaterals** 88:4,10,13 88:16,23 95:2 143:13 147:17,24 167:16,17
**collect** 118:14 138:17
**colloquy** 44:25 45:4,6 45:25 46:8 73:4
**colors** 90:25 91:8 97:23
**column** 145:8
**columns** 142:7
**come** 16:25 17:8 34:23 102:11 171:6
**coming** 101:18
**comment** 128:14
**commission** 125:10
**communicate** 55:25 56:3,9 103:11 154:5 167:15 174:7
**communicated** 75:2 103:15 119:14 153:21,24 154:10 154:12
**communicating** 76:16 112:6,21 119:19 153:25 154:6,13
**communication** 67:6

86:3 87:24 127:9 130:23 154:8 161:17,21 162:2 166:16 167:12
**communications** 86:11 151:18 159:9 160:10 167:10 168:17
**companies** 37:8 103:6 110:15 133:5 144:11
**Companion** 13:3 36:6
**Companions** 1:11 2:16 13:8,10,12,15 13:16,18 14:19,21 14:25 19:18,21 20:3 20:24 21:6 22:6 23:7,8 24:24 26:21 27:2 28:23 30:11 36:3,10 38:7,13 45:8 56:5 68:6 69:19 70:8,15,23 71:18 73:13 77:14 78:5 81:10 85:5,9 87:21 89:7,13,14,23 92:14 93:16 96:3 97:8,14,23 110:7 111:7 113:2,21 121:13 134:23 135:17,22 144:9 149:9,15 150:4,8 152:4,8 153:2,7,8 153:22,24 154:5,24 157:14 162:20 167:18 174:12
**Companions'** 24:15 29:6 45:12 46:9 72:13,24 87:24 99:9 99:14 100:6 117:25
**company** 12:2,5,9,11 12:13 14:4 15:24 18:3,9 21:19,23 30:14,20 34:20,24 43:3,14 59:6 68:7

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz --- June 11, 2024

180

76:10 93:20 106:4
133:9 134:3 141:2
169:19 174:5,13
compare 141:13
compiled 140:21,23
complete 32:16 35:2
35:4
completed 10:14
53:25 58:6 92:9
completely 25:9
completion 113:22
162:25
Compound 166:4
comprise 59:17
computer 163:24
concept 86:16
concern 86:6 110:9
concerned 20:23
113:2
concerning 32:5 33:2
37:5 48:11 108:5
114:4 129:19 152:4
155:3,7
conclusive 106:8
148:15 150:11
154:22
conclusively 146:20
150:6
concur 60:10
conditioning 133:5,9
conduct 54:6
conducted 5:18
confer 73:2
confidential 57:10,21
confirm 80:6 93:25
103:13 111:23
112:8 155:17
confirmation 80:24
101:11
confirmed 100:2
134:10 170:5
confirms 52:3 76:8
135:2,7
conflict 20:10 84:23
confuse 45:17

confusion 112:20
Connected 139:18,20
connection 134:23
143:18 156:13
Conor 83:19,21 84:2
84:6,9,12 86:2
110:21 111:22
112:5 139:11
consistent 75:25
consisting 152:12
consists 76:9
constitute 161:5
CONSULTING 1:12
consumer 131:19
consumers 131:19
contact 38:7 64:9
65:25 69:16 70:15
71:15 90:17 105:6
130:25 140:8,17
145:11 149:6 153:7
contacted 69:13
131:5 141:18
142:13,18 145:21
145:25 146:8
contacts 62:21,25
63:9,24 64:4 145:7
145:10,14 146:5
contain 13:16 22:18
contained 13:7 23:6
23:13 24:24 45:12
46:9 62:25 88:13
141:9 143:13
containing 38:6
61:20 64:12
contains 145:20
146:13 149:11
contemplated 92:5,8
contempt 40:19
content 42:10 88:18
114:14 126:21
143:24 153:4
174:18
contents 25:13
context 113:18
135:13,20 136:20

continuation 21:6
34:8 53:12 57:22
100:24
continue 14:13,14
16:12 17:19 19:2
21:9 28:16 31:5
32:8 35:13 37:10
38:24 40:9 41:13
42:19 49:19 50:11
54:15 138:11
continued 99:2
103:11 130:22
173:2,4 174:2
continuing 33:19
46:16
continuous 125:11
contract 23:8,9 30:14
30:20 33:8,10,15,16
37:20 38:21 58:25
71:12 72:5 92:10,12
92:18 95:17,19,22
103:8 114:7 115:4
118:24 119:21
129:20 163:16,18
163:21 164:11,12
174:5
contracts 93:18,23
94:9,13
contrast 141:13
conversation 32:4
167:2
conversations 79:14
79:17 136:23 155:2
155:6 167:5,7
cooperation 156:2
coordinator 86:4
copied 99:5 119:23
151:6
copies 120:24
copy 5:3 65:9 95:11
129:15
copy/paste 117:25
copying 100:6
Corey 15:19,21 27:13
29:14,16,18,21

44:25 45:4,6 46:9
46:23 63:13 66:23
73:5 75:14,21 76:8
77:6,20 78:3,9
79:24 80:10,22
83:10 85:18 86:24
87:2 94:3 116:19,23
119:8,11,14 120:23
121:23 122:3,11,25
123:18,21 124:3,10
124:17 125:4,9
128:18,21 129:14
130:14,22 136:6,9
136:13,17,22 137:6
137:11,19 138:2,15
138:19,21 148:23
148:24 150:7,18,22
151:5 153:9,18
161:3,9 168:16
169:5
Corey's 74:7 149:2,6
correct 8:6,17 15:20
18:20,21 19:9,10,19
22:3,4 23:19 25:17
26:11,12 27:14 28:3
28:24 29:3,4,7,8,10
29:14,22 30:8,9,11
30:12,19 31:22,23
32:14,15,20,23,24
35:11,24 36:3,4,6
36:10 38:22,23
39:10,11,16,17,24
40:5,20 41:21 42:10
42:16 43:3 44:7,25
45:4,5,8,9 46:11
48:5,12 50:4,5,24
51:13,19 52:4,12,22
54:2 57:10,12 58:11
58:18,23,24 59:3,4
59:8,15,20 60:4,8
61:11 62:15,18 63:5
63:7,25 64:2,9,10
64:13,20,24,25
65:14,15,17,18,20
65:22,23 66:2 67:8

68:15,19 72:10,11
72:14,15,21,25 73:5
73:6,10,25 74:2,7
74:10,11,13,14,18
74:22 75:23,24 76:4
76:10 77:8,14 78:5
78:6,10,12 79:4
80:4,12,15,18 81:3
81:6,10,22 83:11,12
83:19 84:4,5,7,8,21
85:3,4,7,12 86:6,11
86:25 87:10,16 89:4
89:5 90:19 91:2,9
92:20 93:8,16,17,21
94:4,11 95:14 96:10
96:18 97:2,9,15
98:2,7,8,11,14,18
99:3,4,6,22,25
100:7,12,22 101:6,9
102:4,17,21,22
103:12 104:3,24
105:4 107:11,15
108:10,11,13,21,22
108:24 109:22
110:2,3,7,11,22,23
110:24 111:2,13,25
112:6 113:22 116:6
116:10,13,20,23
117:25 119:9,12,13
119:15,24,25
121:24 122:5,12,13
123:25 124:4,5,18
124:19 125:25
126:4,5,7 128:19,22
128:23 129:2,3,7,16
129:20,21 130:15
130:16,20 131:6,8,9
133:24 134:4,7,11
134:15,17,19,24,25
135:8,9,12,18,22
136:7 137:13,17,18
137:21 138:5,14
139:15,16,19 140:9
141:19 142:2,14
143:19 144:18

145:3,4,8,9,11,12
145:14,15,17,18,21
145:25 146:2,5,9,12
146:14,15 147:18
147:19,21 148:24
149:9,10,12,14,16
149:17,19,22
150:19,23 151:3,7
151:24 152:4,5,8,14
152:15,20,21
153:18,19 154:7
156:15 159:11,13
159:14 161:10,11
161:12 163:9
164:12 165:15
168:3,4,6,11,12,18
168:19 169:13,14
169:16 170:11,17
**corrected** 105:8
**corrections** 106:14
  174:17
**correspondence**
  101:9 124:4
**corresponds** 130:15
**cosmetic** 90:5,11
**counsel** 5:19 6:12 7:2
  118:8
**Counterclaim** 2:15
**country** 128:14
**COUNTY** 175:6
**couple** 111:23
**course** 9:6,9 10:8
  35:6 62:3 66:8
  107:14 109:6
  118:17,18 144:8
  152:13
**court** 1:2 4:15 5:2,5,8
  6:5,8 36:7 41:3 54:2
  54:9 58:14 63:15
  67:25 68:12 78:16
  96:19 109:19
  116:23 117:2,6
  120:11,13,14
  122:20 123:3,7,10
  123:15,19 124:20

135:23 137:14
  164:21 168:17,21
  168:24 169:4,5,9
**courtesy** 164:14
**create** 45:7 68:18
  75:18 117:15
**created** 29:2 32:19
  32:22 39:15 72:24
  117:9 141:17
**creating** 41:20
**creation** 90:25 91:8
**credentials** 81:5 98:9
  110:22,24 111:6,7
  111:12,22 144:10
**credit** 78:23 79:5,7
  163:25 174:15
**CRM** 24:20 29:10,11
  62:18,19
**crystal** 55:3
**currently** 7:6 63:25
**custodian** 7:12 17:10
  38:4 39:12
**customer** 9:19,20
  14:10 22:18,20
  24:17,20 66:6 69:20
  69:24,25 70:10
  84:19 126:12
  132:16,22 133:7
**customer's** 114:14
**customers** 9:12,16
  10:7 22:23 24:11
  38:6,16 40:25 41:10
  62:9,10 64:4,9
  65:25 66:12 68:22
  68:24 88:21 113:25
  114:4 142:21 143:4
**customers'** 38:2
**cybergraphics**
  131:23

---

**D**

**D** 2:22 6:22 172:2
  173:2 174:2
**Daniella** 3:19 82:4
  171:6

**dark** 139:17
**data** 24:5 131:15,17
  131:25 132:5
  133:12 141:2
  145:20,24 146:7,14
  148:11
**date** 5:11 29:24 30:7
  61:20 62:14 63:4
  74:7,12 116:23
  117:6 120:11,12
  123:3,7,10,15,19
  124:20 130:6 138:9
  148:5 168:2,17,21
  168:24 169:5
**dated** 61:10 65:19
  74:4 79:22 83:18
  96:7 107:10 109:25
  113:11 124:11,14
  125:24 138:13
  149:11
**dates** 120:14 138:7
  142:12,13 143:25
  174:19
**day** 101:3 168:10
  171:23
**days** 127:18 142:8,9
**deactivate** 96:13,25
**deactivated** 20:3
**deadlines** 54:2
**deal** 129:19
**dealt** 90:18 94:3
**decided** 84:13 128:25
**decision** 33:2 84:17
  169:25
**decision-maker**
  17:11,17,17 42:3
  47:15
**decisions** 17:21 42:9
  46:25 47:23 99:2
  122:5
**declaration** 7:24 8:5
  172:13
**deemed** 10:23
**deeper** 19:14
**defendant** 6:4,20

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

182

defendants 1:13 2:15 156:4
Defendants/Third-... 2:14
define 22:20 25:25
definitively 150:19
deliberately 45:16
delivery 5:6
demanded 126:12
demographics 131:22
depending 88:24 131:18
depends 132:14
depicted 11:20 60:6
depiction 60:7
deponent 5:22 6:21
deposition 1:18 4:11 5:12,18 6:14 30:25 48:4 87:7 104:15,16 105:21 133:17 139:25 168:2 171:16 175:12,13
derived 143:22
describe 17:20 34:7,8 69:25
DESCRIPTION 172:11 173:6
designers 153:4
desire 157:24
destroyed 40:19
detail 77:17 93:24
details 76:9 78:9 141:6
developed 19:21
differences 73:12 128:9
different 66:20 99:24 151:18
difficult 80:23
dig 150:20
digital 94:21
direct 84:20
directed 76:20 77:24 97:8 115:21 132:24

direction 93:5 99:8 99:14 110:5 135:3,7 169:15 170:22
directions 100:11
directly 15:3,6,9 69:17 114:5 130:15
directs 96:12 121:23
disappointment 118:24 124:17
disassociate 89:23
discrepancy 127:20
discuss 123:6,9
discussed 33:11 37:22 58:9,17 86:16 118:12 133:13 154:21 156:23 169:4
discussing 78:9 83:10 93:19
discussion 11:24 12:21 33:14 36:2,13 48:10 89:12 124:24 138:19
discussions 12:17 76:2 82:10,12,15 86:24 108:3 116:23 117:5 118:6 120:9 120:11,13 123:16 123:21 125:4,6,7 138:22
disease 48:16
disorder 48:16
displaying 71:4
DISTRICT 1:2,3
dizzy 64:16
DNA 57:17
document 8:2,11 61:5 139:8,9,11 142:17 152:6,11
documents 8:20,23 9:3,5,8 38:6 95:5 110:20 122:15
doing 131:20 136:21 138:15
dollar 93:24

domain 32:13
Donald 165:16
dream 49:10
due 29:18 48:17 53:25 103:5 110:14 127:18
duly 6:25 175:12

E

E 2:2,2 3:2,2 6:22 172:2,9 173:2,4 174:2
earlier 15:23 39:22 62:17 70:18 111:3 121:21 127:24 128:4 165:10
early 118:25
Eastern 1:3 49:7
effect 4:14 24:14 36:17 44:13 47:8,21
effort 20:17
efforts 140:23
either 9:14 78:18 124:18 154:20 166:16 167:7
elaborate 38:3
ELEFTERAKIS 1:10
ELIYAHU 3:20
Elizabeth 1:21 6:9 175:8,22
ellipses 151:23
email 22:21 39:15,15 55:24,25 56:6 60:25 61:10,16,19 62:2,13 63:3,4,5,23 64:8,12 64:18 65:22,24 67:7 68:14 73:9,21,24 74:4,8,9,17 75:3,8 75:14,18,21,25 76:8 76:19,21,24 77:19 77:24 79:20,22 80:3 80:9,9,17 81:2,3 83:10,15,18,21 84:6 86:3,13 87:9 96:7,9

96:12,15,16,21 97:2 97:7 98:7,13,13,15 98:17,22 99:6 100:18,21 101:5,8 101:17,24 102:3,10 102:14,25 103:10 105:12 106:10 107:6,9,17,24 108:8 108:19,23 109:15 109:24 110:4 111:16,21 112:5,14 112:23 113:8,19 115:11,12,19 116:3 116:16,19,22 119:4 119:7,11,23 120:23 121:8,18,21,23,24 122:10,17,24 124:3 124:7,14 125:5,17 127:24 128:3,21 129:14,18,23 130:3 130:11,14,17 131:8 133:20,23 134:21 135:17,20 136:3 137:3,11,20 138:9 138:13,20 147:13 147:16 149:18,19 149:21 151:6,21,22 158:24 161:4 162:2 167:11,19,25 168:8 168:13 169:21 170:5,21 172:16,17 172:18,19,20,23,24 172:25 173:8,9,10 173:11,12,13,14,15 173:16,18
emails 22:14 63:19 63:20 71:6 75:5,10 75:11 76:15 86:5,10 86:14 87:14 90:16 90:21 102:21 103:17 106:13 107:13,13 108:4 109:6 112:10 113:11 121:4,22 127:20,21 130:20

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

183

137:12 139:23 149:11 150:25 151:2 152:12 154:17 157:21,23 158:3,11,20 159:3 165:9,12 166:24 170:9 174:16
**Emanuel** 2:10 5:24
**emanuel@sagelega...** 2:11
**employed** 7:6 67:17
**employee** 150:22
**employees** 133:9 152:22,25
**ended** 170:16
**engage** 69:19 70:9,12
**engaged** 70:19
**enjoined** 38:2
**enlightenment** 36:25
**enter** 162:5
**entered** 83:3 92:4 163:18
**entire** 10:13 47:20 70:4 150:16
**entirety** 48:7
**entities** 93:19
**entity** 25:11 156:22 157:5
**Eric** 3:11 5:21
**eric@allenlawyer....** 3:12
**ERRATA** 176:4
**ESQ** 2:10,22 3:11,19 3:20
**EST** 1:15
**Estefania** 84:7,10 97:21,22 100:22 101:3,19 107:17,21 125:24 126:3 128:13 133:24 134:10 135:2 153:16 164:25
**et** 5:15
**Eugene** 15:10 16:11 16:24 28:12 34:11

79:12,18 94:25 95:7 95:14 99:5 102:3 105:11 119:12 120:3 122:11 124:11,18 125:24 126:3 128:18,22,25 129:6,15 131:12 134:10,13 136:18 136:23 137:6,12 138:19 149:19,21 154:21 161:22 168:20 170:10
**Eugene's** 105:4
**Eugene@IMECom...** 137:16
**events** 11:20 60:6
**exactly** 66:21 69:5 126:10
**Exam** 1:11 43:9,12
**examination** 6:24 7:4 156:6 172:4
**examined** 7:3
**example** 148:11
**Exams** 43:15,19
**Excel** 138:25 139:5 173:17
**exception** 29:20 46:23 95:8 115:17 115:19 118:23
**exchange** 100:19,22 112:5 113:9,11 115:11 116:17,19 116:22 119:5,7 121:19,22 124:8,10 125:18,24 127:5 128:21 133:21,23 136:4,6,9 137:4,6 137:11 147:14,16 161:5 172:20,25 173:8,9,10,11,12,14 173:15,16,18
**exchanged** 170:9
**exchanges** 97:20 112:14 152:4
**excluding** 145:7

**exclusion** 51:12 103:16 118:8
**exclusively** 46:25 103:15
**excuse** 48:22 57:17 162:11
**exhibit** 7:22,23 10:22 60:24,25 64:19 65:8 65:13 73:20,20,21 76:24 77:4 79:21 83:8,14,15 96:6 98:21,22 100:17,18 100:25 104:15,16 104:18,19 107:5,5,6 109:14,15,18 113:6 113:7,8 116:15,16 119:3,4 121:17,18 122:25 124:6,7 125:13,16,17 128:17 130:8,9,10 130:11 133:19,20 136:2,3 137:2,3 138:24,25 147:11 147:12,13 148:16 148:17 164:24 168:7 172:13,14,16 172:17,18,19,20,21 172:23,24,25 173:8 173:9,10,11,12,13 173:14,15,16,17,18 173:19
**exist** 38:20
**existence** 37:7 38:2 38:11 40:23
**existing** 64:9
**exited** 83:4
**expected** 167:11
**experience** 14:6
**explain** 14:2 24:19 92:22
**explained** 19:17
**explanation** 19:15 21:4
**expresses** 124:17
**extension** 65:3

**eye** 153:12

---

**F**

**F** 1:21 175:8,22
**face** 18:2,8
**fact** 42:9 45:22 89:14 94:16 100:15 110:6 129:19 158:9
**failed** 95:22
**fair** 11:21 23:4 24:15 26:14 34:5,19 35:8 40:23 42:3 46:24 60:7,21 71:17 75:17 76:15 89:22 90:4 94:3,17 95:16,21 111:15 117:8,14 128:8 139:22 143:12 146:17 148:9 149:24 162:24 165:18 166:15 168:13 169:3,25
**fairly** 33:17 77:17
**familiar** 12:2,13 15:24 43:8 61:4 88:3 113:15 131:14 139:8,9,10
**far** 11:21,24 12:20 86:6,10 87:14 142:6 149:5 165:5
**farther** 149:13
**features** 62:20
**February** 61:12 64:7 64:11 67:7 68:14 73:9 130:14 141:8
**Federal** 6:24
**federates** 94:21
**feel** 118:5
**figure** 10:18
**file** 64:23 65:3 141:25 164:21
**filing** 4:4
**fills** 22:15
**final** 57:25 146:13 147:10,11

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz  ---  June 11, 2024

184

**find** 17:23 66:21 69:5
    69:10 72:2 79:5,6
    103:2 121:16 141:5
    143:10,21 150:10
**finish** 57:24
**firm** 70:11 71:3
    121:5
**firms** 70:22 71:3,6,9
    72:18 132:2,3 140:7
    140:8,12,14 142:12
    142:14,17 146:18
**first** 6:25 7:18 11:20
    15:18 29:20 74:3
    79:11 81:21 85:5
    102:10,25 105:3
    110:4 121:23
    139:17 140:15
    142:7 143:25 145:8
    149:18 169:22,23
    174:20
**firsthand** 14:5
**five** 64:19 128:4
    145:2 153:3
**five-minute** 49:4
    106:17 155:16
**fix** 106:4 110:6
    127:11
**Floor** 2:19
**focus** 146:17
**focusing** 63:23 64:7
    74:3 79:22
**fog** 48:16
**folder** 88:13 143:13
**folders** 88:9
**follow** 79:8 106:12
**follow-up** 75:15
    142:8
**followed** 168:14
**following** 120:10
    125:5 138:20
    169:11
**follows** 7:3 80:14
    124:20 129:14
**foot** 153:12
**forbidding** 41:9

**force** 4:13
**foregoing** 171:16
**forgive** 65:16 81:19
**form** 4:7 17:13 18:12
    19:20 38:18 41:2,11
    43:6 66:13 83:23
    90:6,20 91:10,19
    103:22 104:10
    124:25
**formed** 7:19 157:6
    170:9,14
**forming** 132:5
**forms** 22:13
**forth** 62:9 165:9
    175:12
**forward** 77:21 121:7
    129:2 158:3
**forwarded** 80:21
**forwarding** 121:6
**four** 21:10 153:3,5
    156:11
**fourth** 146:10
**Frankly** 126:18
**front** 50:23 51:7,10
    51:18
**fulfill** 95:22
**fulfilled** 95:17
**full** 151:24
**FURNISHED** 31:4
    56:18
**further** 4:6,10 21:3
    127:19 128:17
    156:3 157:19
    162:25 163:8
    167:20 170:25
    171:2 175:15

---

**G**

**garbled** 44:5,14,23
**garbly** 11:10 34:3
    40:17 50:20 52:24
    53:21 57:3
**gather** 118:10
**Gelardi** 1:9,10 2:16
    2:16 5:14 11:25

15:4,7 17:2,25
    18:19,23 25:22 26:8
    31:21 34:6 39:22
    44:7 50:7 52:11
    53:2 55:17,21 61:11
    73:25 79:15 83:3
    98:9 105:19 119:23
    147:16 149:8
    156:17,24 157:18
    157:25 158:9,25
    159:10 161:4,10,18
    162:22 166:2,2
    169:4 170:9
**Gelardi's** 53:3 104:8
**Gelardis** 166:16
    167:4,7
**general** 13:7 35:22
    69:24 84:19 85:15
    87:9 108:16
**generally** 9:18 35:9
    84:25 94:18 132:6
    132:16,22 144:15
    152:16
**generated** 139:25
**generic** 88:5
**gentleman** 15:16
    17:22 52:13
**gentleman's** 34:16
**geographics** 131:23
**Giant** 1:18 3:5 7:9,13
    7:15,18 8:16,20
    9:10,12,16 10:8
    12:10 17:10 19:22
    23:5,22 24:10 29:5
    30:10,14 32:5,19,22
    35:3,8,23 36:5,9
    37:20 38:4,5,10,14
    38:21 39:13,14
    42:15 43:11,17
    55:19 56:2,10 57:9
    58:22 59:2,13,18
    60:3 62:3,6,9 67:17
    67:23 68:8,15,17
    69:5,13,17,19 70:9
    70:14,19,21 71:2,7

71:14 72:4,9,12,18
    73:24 75:2,19 76:16
    76:25 77:13 79:3
    82:15 84:4,16,20
    85:2,25 88:8,22,25
    89:2,13 90:10,18
    92:3,13,18 93:3,13
    93:15,18 95:16,23
    96:10,12 98:25
    99:18 102:15
    103:10,15 104:7
    105:6 107:10,15
    108:4,12,20,23
    109:2,25 110:18
    114:3,12,13 115:21
    117:8,14 118:7
    120:4,17 123:7,10
    127:5,15 128:9
    129:23,24 130:4
    131:5,24 132:17,23
    133:14 134:2,16
    139:6,25 140:6,21
    141:3,18 142:13,20
    143:3,14 144:4,9,15
    144:16 148:2,6
    149:25 150:22
    151:5 152:13,17,20
    152:22 153:6,23
    154:4,11,23 155:3,7
    157:10 158:10,19
    160:10 164:20
    168:9 174:6,9,14
**give** 61:13 106:8
    148:14 150:11
    170:23
**given** 20:22 175:14
**gives** 43:3
**giving** 62:11
**GMT** 168:5
**go** 10:18 19:14 27:5
    49:8 53:11 66:14
    73:19 74:23 77:3
    82:20,21 88:6 95:10
    100:17 101:18
    104:11 106:19

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz --- June 11, 2024

185

114:25 118:17
126:25 149:13
158:14
**goals** 62:9
**GoDaddy** 80:3,18
81:5,14 101:4 111:4
**goes** 21:3 22:16 114:5
**going** 7:21 9:25 10:10
14:13,18 16:10,12
18:2 19:2 21:4,9
24:3 25:9 27:6
28:16 31:5 32:8
34:17 37:2,10 38:24
40:9 41:13 42:19
45:7 49:12,18 53:11
54:15 56:19 57:24
60:22 61:15 63:3,8
64:16 67:20 70:19
73:19 77:3 82:23
83:13 87:8 89:7,14
94:9 97:8 98:20
99:23 101:14 106:3
106:21 107:4 112:9
112:11,20 119:3
121:17 123:14
125:12,20,23
126:19 127:19
128:17 130:8,25
135:25 138:24
144:4 147:10
155:18 158:3 160:5
165:9 171:7
**good** 5:9,23 6:2,8
80:11 134:13 156:8
**google** 9:24 140:18
**Gosh** 71:20
**Gotcha** 60:17
**GPI** 162:7,7,11 163:2
**graphic** 153:4
**great** 83:21 84:2
147:4
**greatly** 77:20
**green** 139:17
**GREGORY** 1:10
**ground** 67:14

**guess** 63:11 101:22
103:23 122:22
123:20 126:13,19
141:12 143:20
147:2 150:16
151:20
**guidelines** 134:13
**guys** 147:4 164:8

---

**H**

**H** 6:22 172:9 173:4
**half** 152:2
**handful** 141:5
**handoff** 113:16
**Hang** 96:24 141:16
**happened** 41:23
66:18 160:19
**happening** 106:6
112:21
**happens** 42:4
**happy** 147:5
**head** 66:19
**hear** 10:17,19 11:8
11:10,16 16:19 18:4
21:15 25:24 31:12
33:25 35:19 36:16
36:17 37:16 39:6
40:15 43:4 44:3,9
44:20 46:21 50:18
50:25 51:9,15 52:14
52:23 53:19 54:23
54:25 56:25 57:4
78:18 107:18,22
164:25
**heard** 12:23 16:21
18:21 20:13 23:20
27:16,16,20 28:25
29:4,8 31:23 33:6
34:13,17 39:11 40:2
40:21 41:22 43:10
43:14 44:13 45:9
47:7,11,11 52:5
54:3 57:12 59:10
76:6 79:11 87:12
94:7 124:2 156:14

156:17 157:3
**hearing** 7:22,23
10:22 60:23,25
73:20,21 76:24
79:21 83:14,15 96:6
98:21,22 100:17,18
104:17,19 107:5,6
109:13,15,18 113:8
116:14,16 119:3,4
121:17,18 124:6,7
125:12,16,17 130:8
130:10,11 133:19
133:20 135:25
136:3 137:2,3
138:24,25 147:12
147:13 148:16,17
164:24 172:12
173:7
**heating** 133:4,8
**held** 1:19 40:19 76:2
**help** 12:9 13:18 30:3
44:11 125:21
**helped** 36:5,9,11
**helps** 94:23
**hereinafter** 7:2
**hereinbefore** 175:12
**Hey** 158:19
**Hi** 75:24
**hide** 34:20
**highlight** 101:14
**highlighted** 63:20,24
64:23 105:2,3
**highlighting** 77:19
**highlights** 63:19
**hire** 13:18
**hold** 119:12
**Holladay** 3:8
**host** 84:11 96:10
**hour** 49:3
**hours** 156:11
**hovering** 145:5
**HubSpot** 24:13,16,19
24:20,24 45:7,12
46:10 62:17,22
70:17 72:20,23,24

87:24,25 114:6,9,15
120:18 121:5,6,7,16
129:25 130:5 148:7
148:18,21 149:5,7
149:11 150:7,16
151:7,9 152:7
173:19
**HubSpots** 150:14
**humble** 25:10
**husband** 52:11,21
53:3 55:6
**Hypothetically**
132:10

---

**I**

**i.e** 70:10
**idea** 50:8 66:25
155:14
**identical** 73:17 77:13
93:19,25 94:11,14
**identification** 7:24
10:24 61:2 73:22
83:16 98:23 100:19
104:21 107:7
109:16 113:9
116:17 119:5
121:19 124:8
125:18 130:12
133:21 136:4 137:4
139:2 147:14
148:19
**identified** 153:15
**identify** 5:19 81:2
**identity** 147:7
**IME** 1:5,11,11 2:16
5:13,25 8:14 12:14
12:17,21 13:3,8,18
14:19,21,25 15:24
16:3,9,22 17:3,18
18:23 19:21 20:3,3
20:24 21:5,6 22:5
23:5,7,8 24:13,25
27:14 28:3,5,13
30:11 32:23 33:3,14
33:15 36:6,14,18

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

186

| | | | |
|---|---|---|---|
| 37:8 38:6,13,14,21 | 160:2,16 161:22 | 69:13 75:4,10,22 | **instances** 55:5 |
| 39:23 40:5 45:8,12 | 162:20,20 163:2,18 | 85:18,21 100:15 | **instructed** 142:21 |
| 45:13 56:4,5 58:18 | 163:21 164:6 165:6 | 111:16 132:18,19 | 143:4 |
| 59:3,14,18,19 64:24 | 165:22 166:3,10,17 | 132:20 135:6 | **instructions** 55:2 |
| 65:16 66:2 67:23 | 167:4,18 168:9 | 140:16 154:19 | 100:8 |
| 68:6,6,18 69:18,18 | 169:12,15,19,21 | **individuals** 14:15,20 | **instructs** 60:18 |
| 70:7,8,15,22,23 | 170:3,16,21 172:21 | 15:14 85:24 96:10 | **intended** 46:10 |
| 71:4,6,15,17,18 | 174:10,12,12,15,23 | 118:7 132:19,24 | **intention** 26:14 46:3 |
| 72:3,6,10,13,16,20 | **IMECompanions.c...** | 140:7 143:24 | 46:5 |
| 72:23 73:9,13,13,14 | 110:22 137:12 | 174:19 | **interact** 14:20 |
| 76:25 77:7,12,14 | **IMELegalReps.com** | **industry** 126:14 | **interest** 28:13 |
| 78:4,10 79:23 80:4 | 42:16 58:11 | **infer** 169:3,25 | **interested** 175:17 |
| 80:22 81:6,10 82:3 | **IMELegalReps@g...** | **info** 140:17 | **interface** 24:16 |
| 82:5 83:11 85:5,8,9 | 39:16 74:8 75:3,22 | **info@IMELegalR...** | **internal** 129:18 |
| 85:9 86:6,13 87:21 | 76:17 87:15 101:8 | 96:17,22 | **interpret** 54:13 76:12 |
| 87:23 89:6,7,13,13 | 101:15 108:9 110:5 | **information** 13:16 | 81:8 96:14 110:8 |
| 89:15 90:10,18 91:2 | 116:4,20 119:8,24 | 14:7,10 20:22,25 | 135:24 |
| 91:9,14 92:2,3,14 | 122:17 133:24 | 22:15,19,20 23:6,13 | **interpretation** 18:8 |
| 92:14 93:14,15 95:2 | 134:7,22 135:7,11 | 24:8,17,21,24 25:15 | 21:22 22:12 47:17 |
| 95:9,17,21 96:2,4 | 137:7 168:18 | 25:16 26:16,25 | **introduce** 84:10 |
| 97:8,15,23 98:10 | **IMG** 119:18 | 30:22 31:3 45:11 | **introduced** 24:2 |
| 99:3,9,10,21,25 | **imperative** 53:25 | 46:9 57:20 62:12 | 52:11 |
| 100:5 102:4,16 | **implications** 54:6,10 | 71:25 75:17 79:2 | **introduces** 50:10 |
| 103:2,12,20 104:8 | **important** 10:12 | 80:4,5,18,22 87:23 | 52:21 |
| 104:20,23 105:13 | **impression** 17:21 | 88:12,21 99:9,14 | **introducing** 84:6 |
| 107:9 108:19 | 25:8,18 103:19 | 114:5 118:10,14 | **introduction** 52:14 |
| 109:10 110:6,7 | 104:2 | 119:2 123:15 140:2 | 52:24 |
| 111:6,7 113:2,20,21 | **improper** 28:6 | 140:8 141:9 142:17 | **investigate** 144:23 |
| 113:25 114:4,6,7,8 | **in-depth** 88:6 | 143:21 144:5 | **invoice** 75:7 |
| 114:20 116:9,12 | **incident** 34:16 | 146:14 148:15 | **invoicing** 57:5 |
| 117:9,15,24,25 | **include** 29:9 140:15 | 149:5 150:3,9,10 | **involved** 8:19 43:9 |
| 118:25 119:15 | 159:2 | 157:13 159:20 | 84:23 87:2 91:21 |
| 120:18 121:12,13 | **included** 26:15 88:22 | 164:5 167:14 168:8 | 102:7 117:5 130:19 |
| 122:16 127:6,15 | 158:2,11 | 174:22 | 130:20 165:5,22 |
| 128:10 129:24 | **includes** 149:21 | **initial** 90:16 124:14 | 166:3,17 |
| 130:5 131:12 134:4 | **including** 25:16 | **initiated** 143:19 | **involvement** 34:20 |
| 135:21 139:5,13 | 26:10 157:20 | **injury** 70:11,22 71:3 | 85:2 92:2 95:7,14 |
| 143:14 144:9,9 | 158:19 | 71:9 72:17 131:25 | 157:19 159:18 |
| 146:17 148:6 149:9 | **incorrectly** 102:12 | **inquire** 35:9 | 167:4 |
| 149:15,22 150:2,3,7 | **indicated** 164:25 | **inquiries** 23:14 24:3 | **issue** 115:23 118:22 |
| 150:8 152:4,8,8 | **indication** 166:2 | **inquiring** 22:24 | 123:22 |
| 153:2,2,6,7,13,21 | **Indiscernible** 82:18 | **inquiry** 24:5 | **issued** 59:14,19 60:3 |
| 153:24 154:12,24 | **individual** 15:4,7,10 | **insert** 84:12 | **item** 139:17 |
| 156:18 157:14,20 | 15:18,19 17:2 29:13 | **inside** 65:3 | **items** 12:21 72:12 |
| 158:11 159:3,20 | 32:5 50:3,6,7,8 62:8 | **instance** 29:11 70:17 | 98:10 |

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

187

---

**J**

**J** 171:12
**Jamaica** 2:7,8
**January** 61:10,20
**jdwarner@wslaw....**
  2:23
**Jenna** 55:13
**Jeremy** 15:17 27:13
  34:3,5 40:4 44:25
  45:4,6 46:8 52:3
  63:12 66:17 73:5
  85:21 99:24 162:10
**Jersey** 145:13,20,24
**job** 67:4
**JRC** 1:9
**judge** 60:16
**June** 1:15 5:12

  122:25 124:11,15
  125:25 127:6,14,19
  128:18,24 129:22
  147:18 176:2

---

**K**

**K** 6:22
**Kataev** 2:10 5:23,24
  6:17 7:5,25 10:25
  11:5,7,11,13,15
  16:12,16,18 17:5,15
  19:2,5,7,25 20:21
  21:9,12,14,25 25:5
  26:2,5,7,21,23 27:5
  27:9,11,17,21 28:7
  28:10,16,19,21
  30:24 31:5,9,11
  32:8,11 33:7,19,22
  33:24 35:7,12,16,18
  36:8 37:10,13,15
  38:19,24 39:3,5,21
  40:3,9,12,14 41:6
  41:13,16,18 42:8,14
  42:19,22,24 43:7,21
  43:24 44:2,15,17,19
  45:17,18,24 46:6,15
  46:18,20 47:6,12,19

48:3,19,24 49:6,10
49:18,23,25 50:12
50:15,17 51:2,4,5
51:17,22,24,25 52:7
52:9,10,15,17,19
53:5,8,15,17 54:10
54:15,18,20 55:11
56:13,19,22,24
57:13,24 58:5,8,16
58:21 59:11 60:15
60:18,22 61:3,18,22
63:17 66:10,16
67:20 68:4,11,13
69:7,23 71:23 73:19
73:23 74:16 76:7,13
76:23 77:5,11,18
78:2,8,13,19,20
79:8,10 80:25 81:9
81:13 82:21 83:7,13
83:17,25 85:13 86:9
87:13,19 89:11 90:3
90:8,22 91:5,12,22
92:11,17,23 93:6,12
94:2,8,24 96:20
97:3,12,18 98:20,24
100:20 102:20,24
103:9,25 104:6,14
104:17,22 105:24
106:11,19 107:3,8
109:20,22,23
111:11,20 112:4,13
113:6,10 115:6,10
116:14,18 117:4,13
117:20 118:20
119:3,6,22 120:8
121:17,20 122:9,21
122:23 124:6,9
125:3,12,15,19
128:16 129:13
130:10,13 131:3,10
133:19,22 134:20
135:25 136:5 137:2
137:5,15,24 138:8
138:24 139:3 140:5
141:14,24 142:5,19

143:2,8 144:4,7,14
144:25 146:24
147:10,15 148:16
148:20 150:12
155:15,24 156:19
157:2,7 158:4,12,21
159:5,15,22 160:3
160:12,17,24
161:14,24 162:16
163:4,10 164:12,19
165:7 166:4,13,18
167:22,24 169:2,10
169:24 170:7,15,23
172:5,7
**Katz** 1:19 5:1,13,22
  6:1 7:1,4,6 8:1 9:1
  10:1 11:1,8,16 12:1
  13:1 14:1 15:1 16:1
  17:1 18:1 19:1 20:1
  21:1 22:1 23:1 24:1
  25:1 26:1 27:1 28:1
  29:1 30:1 31:1,12
  32:1 33:1 34:1,2
  35:1,20 36:1 37:1
  38:1 39:1 40:1 41:1
  42:1 43:1 44:1 45:1
  46:1 47:1 48:1 49:1
  49:18 50:1 51:1
  52:1 53:1,19 54:1
  55:1 56:1 57:1 58:1
  59:1 60:1 61:1,4
  62:1 63:1,18 64:1
  65:1 66:1 67:1,21
  68:1 69:1 70:1 71:1
  72:1 73:1 74:1 75:1
  76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1
  84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1
  92:1 93:1 94:1 95:1
  96:1 97:1 98:1 99:1
  100:1 101:1 102:1
  103:1 104:1 105:1
  106:1 107:1,4 108:1
  109:1 110:1 111:1

112:1 113:1 114:1
115:1 116:1 117:1
118:1 119:1 120:1
121:1 122:1 123:1
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1 135:1
136:1 137:1,9 138:1
139:1,4 140:1 141:1
142:1 143:1 144:1
145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1 153:1
154:1 155:1,24
156:1,8,22 157:1
158:1 159:1 160:1
161:1 162:1,24
163:1 164:1,7 165:1
166:1 167:1,21
168:1 169:1 170:1
170:24 171:1,4,19
172:5 175:11
**keep** 57:20 109:5
  138:22 153:12
**kept** 9:5,9 10:7 57:10
  62:2 107:14 150:7
  150:16 152:13
**kind** 20:10 90:14
  162:5
**knew** 110:19 123:19
  169:5
**know** 7:18 9:23 16:3
  20:20,25 24:14 25:6
  25:19 28:15 29:11
  29:13,16,17,24
  30:16 32:9 34:10,22
  41:24 48:2 50:10
  52:13 53:2 55:2,14
  55:18,19 56:6,10
  57:3,14,17 60:14
  63:2,9,13 64:6 65:6
  65:7 66:7,11,17,19
  66:19 67:2 68:20
  71:11,22 73:18

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

74:24 75:7,11 78:24
82:5 85:24 86:12
90:13 92:9 97:4
98:15 103:24 105:9
107:21 112:9
119:17 120:19
122:22 126:10,18
127:8 130:2,22
135:14 136:14,20
137:19 139:20
140:4 144:13,22
146:21,25 147:7,25
148:5,8 149:2
150:13,15,18 153:3
153:25 154:6,13
155:10 160:18
161:9,19 162:10
163:11 165:17
166:22 167:6,9
168:24,25,25
170:20
**knowledge** 9:20 12:7
12:8,11,24 13:6,14
13:20,24 14:5,9,12
14:17,23,24 15:12
15:13 16:7,9,22,23
17:7,9,16 18:11,14
18:15 19:22 21:18
23:16,21,24 24:23
25:4 27:24 29:19
30:13,15 31:19
32:16,21,25 33:5,17
34:14 36:18,21,22
38:10,12,13,17,20
39:12 43:13,17
45:22 50:6 53:4
55:16,22 56:4 58:20
58:25 62:4,5 64:3
65:5 67:12 68:22,24
69:8,12,15 70:16
71:16 72:16,22 73:2
73:16 75:4,9 77:10
78:14,21 81:12,16
81:24 82:14,17 84:9
84:16 85:12,14,16

85:17 86:18,20
88:14,17 90:21,23
91:11,24 94:25 95:4
95:15,25 98:12
99:13 104:7,12
105:11,14 108:6
109:9,12 110:13
113:24 114:10,17
115:22,25 116:2
118:4 120:16 123:6
123:8,9,11,18
124:23 125:2
127:10,13 128:5
129:4 133:15
136:17 137:25
138:18 140:20
142:20 143:3,7,9,23
147:23 151:16
157:5,8,12,16 158:7
158:22 160:13,25
161:13 162:2,23
163:3,7 165:8
168:20
**Koenig** 15:17 63:12
156:23 162:10

---

# L

**L** 6:22
**L-I-D-D-I-E** 106:2
**L-I-D-D-Y** 105:4
**lack** 85:15 163:12
**lady** 16:11,24 17:20
22:11 35:5 36:20
50:9 53:21 54:25
73:7 100:2,9,10,16
136:10,13,24
**lady's** 50:21
**Lake** 3:9
**Lane** 74:20
**large** 133:11
**largely** 109:24
**Larry** 3:18 5:16
**Laszlo** 61:11 62:5
**law** 70:11,22 71:3,3,9
72:17 131:25 132:3

140:7,8,12,14
146:18
**lawful** 6:23
**lawsuit** 54:7,11 155:4
155:8,13 168:21
**lead** 70:2,9,15 71:15
**leads** 70:13 144:18
**learn** 154:23
**learned** 130:4
**leave** 30:25 56:13
164:3
**led** 20:12
**left** 134:11,14 149:8
**left-hand** 149:5
**legal** 2:6 5:16,24
12:14,17,21 15:24
16:3,9,22 17:3,18
18:23 20:3,24 21:5
23:5 24:13,25 26:21
27:14 28:3,5,13
32:23 33:3,14,15
36:15,19 38:14,21
39:23 40:5 45:13
56:5 58:18 59:3
66:2 67:23 68:6,18
69:18 70:8,23 71:15
71:18 72:3,6,10,13
72:17,20,23 73:14
76:25 77:8,12 78:10
79:23 80:4,22 81:6
83:11 85:8,9 86:6
86:13 87:22 89:7,13
89:15 90:10,18 91:2
91:9,14 92:2,3,14
93:14 95:2,9,17,21
96:2,4 97:9,15
98:10 99:3,10,21,25
100:5 102:4,16
103:3,12,20 104:9
104:23 105:13
107:9 108:19
109:11 110:7 111:6
113:21,25 114:4,6,7
114:8,20 115:12,15
116:9,12 117:10,15

117:24 118:25
119:15,18 120:18
121:13 127:6,15
128:10 129:24
130:5 131:12 134:4
135:21 143:14
144:9 146:17 148:6
149:22 150:2,8
152:8 153:2,13
154:12 156:18
157:20 158:11
159:3,20 160:2,16
161:22 162:20
163:2,18,22 164:6
165:6,23 166:3,10
166:17 167:4 168:9
169:12,16,19,22
170:3,17 174:10,12
174:15,24
**let's** 27:5 82:21 97:25
98:6 100:17 106:19
125:15
**Levi** 3:19,20 82:4
**Levi's** 82:7
**Levicunt62** 81:22
**LI** 139:5 141:25
**liability** 20:18
**liaison** 62:11
**Liddie** 15:10 18:2,11
18:19,23 23:19,21
27:13 28:2,12 41:20
47:22 48:11 76:3
79:12,18 87:10 94:4
94:25 95:7,14 99:5
102:3 103:15 105:6
105:25 106:13
109:10 122:18,21
123:9,16,25 124:4
130:18 157:18
160:9 161:22
165:15 168:20
170:10 174:16
**Liddie's** 31:16,22
32:6 34:11 102:11
105:15

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

189

liked 100:3
line 113:19
link 20:23 21:19 45:8
  53:11 78:17,22
  126:7,11
linked 29:3 45:22
  72:24
LinkedIn 71:7,8
  142:2,7 143:19,25
  144:10 145:10
  148:9 174:20
linking 87:9
links 59:17 159:20
list 38:2,6,9,11,15
  64:9 65:21 66:6,7
  66:12,22 67:15
  68:17,20,23,25 69:6
  69:8,11,14,17,22
  70:15,15,15 71:15
  71:15,15,17,18 73:9
  131:15,17,25
  133:12 139:25
  140:7,12,14,21,23
  141:4,8,15,17
  142:22 143:5
  148:11
listed 63:9 64:19
  108:20 142:12
  143:25 144:16
  145:11 149:8
  174:19
listen 16:11,13 47:25
  48:14 74:23
listened 138:6
listening 22:11
lists 73:13,16 132:6
  133:14
little 5:17 6:6 11:9
  34:3 40:17 44:5,14
  44:22 50:20 64:14
  65:2 97:19 98:2,6
  132:11 152:2
Liz 6:6
LLC 1:11,11,12 2:6
  2:17 5:24

lock 114:20
locked 114:12 115:2
  115:3 120:17,19
  148:6
log-in 101:4 110:22
logo 90:25 91:8
long 7:15
longer 95:19 102:6
  107:24,25 130:4,19
  149:15 158:11
  159:2
look 30:21,23,24
  33:16 66:9 71:5,10
  77:16,17 90:12
  93:23 109:4 118:4
  121:9,15 126:10,13
  127:8 128:7 135:13
  138:6 140:22
  150:21 151:19
  152:9 160:18
  161:25 163:23,24
  166:23
looked 68:23,25 86:5
  148:10 151:2
  152:11 167:25
looking 30:5 61:13
  77:20 78:25 79:21
  101:11 131:21
  134:5 149:18
looks 8:3 76:19 101:2
  110:25
loop 67:5
lose 114:8
lost 110:10,14
lot 62:19 66:5 103:6,7
  112:10
lull 85:14

—————

M
main 145:6,6,19,23
maintain 70:14 71:14
  88:9 108:14 114:3
  114:13
maintained 14:10
  39:14 73:13 150:2

maintains 55:20
  56:10 79:3 108:12
  174:6
makeup 47:23 48:11
making 17:20 42:9
  46:25
MANAGEMENT
  1:11
manager 62:6 84:7
managers 150:20
manner 34:6
March 136:7 149:12
  149:16
mark 7:22
marked 7:24 10:23
  60:23 61:2 73:22
  83:16 98:21,23
  100:19 104:15,20
  107:7 109:16 113:9
  116:17 119:5
  121:19 124:8
  125:18 130:12
  133:21 136:4 137:4
  139:2 147:14
  148:18
market 70:21 71:8
  72:17
marketed 72:18
marketing 29:6,9
  68:18 69:2 70:25
  71:2 72:6 87:4 88:4
  88:9,13,23 89:3
  90:15 95:2 106:3
  126:15 129:2
  132:18,23 140:23
  141:18 143:13
  146:18 147:17,24
  152:18 160:16
  163:16 167:16,17
Marking 73:20
marriage 175:17
married 53:4
Master 64:24
materials 29:6,9
matter 5:13 115:12

115:15 175:18
matters 119:15
McDaniel 86:2
mean 65:6 80:23
  88:17 112:19 121:3
  136:17
meaning 121:12
means 18:9 97:13
  138:2 139:20
  143:18
meant 18:7
Medicare 131:20,22
Meet 134:14
meeting 9:19,21,25
  10:2 22:3 29:22
  33:11 36:2 44:7
  46:2 47:8 52:12,21
  58:10 62:14 74:13
  74:18,22 76:2 87:6
  105:20 168:3,14
  169:5,12 170:3
meetings 9:16 10:4,7
meets 9:12,24
members 66:20
  118:10,13,21
  123:13,14 147:2
  155:12
memorable 111:3
mentioned 36:20
  48:15 82:12 96:4
  118:23 119:17
  120:3 123:3 124:21
  140:11,13 151:9
  154:15 160:2
  163:24
mere 21:6
Message 142:8,8,9
  144:2,2,2 174:20,21
  174:21
messages 143:24
  174:18
million 20:15
mind 101:20
minor 19:23
minus 168:5

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

190

**minutes** 11:14 19:6
  19:17 21:10 31:10
  35:13,17 36:14
  40:13 41:17 43:25
  44:18 46:16 48:20
  49:20,24 50:12
  52:18 53:5,9,10,13
  53:16 54:16,19
  56:20,23 58:3,7,7
  111:23 128:4
**misspelled** 31:24
**MITCHELL** 3:7
**Mm-hmm** 148:25
**mock-ups** 91:2,9
**model** 66:6
**moment** 45:23
**month** 71:12 72:5
  95:20 128:24
**month's** 114:24
**months** 138:14
**morning** 80:11
**Moskowitz** 3:18 5:16
**move** 23:10,11 61:15
  83:13 118:3 129:2
**moved** 25:22
**moving** 116:14
  138:12
**multiple** 113:18
**multitude** 144:21
**Murray** 3:8
**muscular** 48:15
**mystery** 154:9

**N**

**N** 2:2 3:2 6:22 172:2
  173:2 174:2
**name** 5:16 6:8 12:2
  14:11 20:16 21:23
  22:21 31:16,22,25
  32:6 33:3 34:11,16
  34:24 43:3 52:25
  64:23 79:7,12 80:7
  93:20 99:7 102:12
  104:8 105:4,8,16
  106:2,4 111:14

140:16 160:6
  169:22 170:2
  174:15
**named** 12:13 15:4,7
  15:10,19 55:12
**names** 20:9 34:25
**nature** 20:12 115:15
**necessarily** 54:13
  113:17
**necessary** 75:18
**need** 118:14 127:11
  152:9
**never** 32:19 41:23
  43:10 58:22 104:2
  112:23 156:17
  159:9,12,12,25
  160:15 161:12
  166:15 170:19
**new** 1:3,22 2:8,20,20
  6:9 13:4 23:10,15
  23:22 25:11 27:2
  28:24 29:6,11,12
  30:14 34:20 42:10
  42:15 45:7 46:10
  58:10 76:9 77:6
  87:25 99:15 108:9
  113:21 116:5,9
  117:9,15 118:4,4
  128:10 145:13,20
  145:23,24 146:18
  169:19,20 170:10
  170:10,16 175:4,10
**Non-disclosure** 57:22
  57:23
**Nonparty** 1:18 3:5
**normal** 24:7 35:5
  108:6
**normally** 14:6
**Notary** 1:22 171:25
  175:9
**noted** 45:18
**notes** 22:13 30:6
**notice** 65:2 95:8
  127:20
**nudging** 125:11

**number** 22:21 55:17
  55:20,23 56:11 74:9
  79:6 108:9,15,20,24
  109:18 151:13
**numbers** 56:8 108:13
  109:3,7 174:6
**numerous** 161:10

**O**

**O** 6:22
**Oaks** 1:20
**oath** 4:13 6:15
**objection** 6:13,17,19
  17:4,13 19:20 20:19
  21:7,20 22:22 25:3
  25:23 26:17 27:4,15
  27:19 28:4,14 33:4
  34:21 38:18 39:18
  39:25 40:6 41:2,11
  42:5,11,17 43:6
  45:15,15,18 46:4,12
  47:3,10,16,24 48:13
  51:14,21 52:6 54:8
  54:12 55:9 57:11,16
  58:12,19 59:9 60:9
  60:12,14,15 66:4,13
  69:3,21 71:21 74:15
  76:5,11,18 77:9,15
  77:23 78:7,11 80:19
  81:7,11 83:23 85:11
  86:7 87:11,17 89:9
  89:25 90:6,20 91:3
  91:10,19 92:7,15,21
  93:2,9,22 94:5,19
  96:23 97:10,16
  102:18,23 103:4,22
  104:4,10 105:22
  106:7 111:9,18
  112:3,7 113:3
  114:22 115:5
  116:11,25 117:11
  117:17 119:16
  120:6 121:14 122:6
  122:19 124:25
  128:12 129:9

130:21 131:7
  134:18 137:22
  138:4 140:3,10
  141:11,21,23 142:3
  142:15,23 143:6
  144:12,20 146:19
  150:5 156:19 157:2
  157:7 158:4,12,21
  159:5,15,22 160:3
  160:12,17,24
  161:14,24 162:16
  163:4,10 165:7
  166:4,13,18 168:23
  169:7,17 170:4,12
  170:18
**objections** 4:7 28:8
  45:20
**obligations** 95:22
**obtain** 140:7,14,15
**obtained** 16:7 169:9
**obviously** 20:8 59:21
  155:8
**occasions** 84:22
  161:10
**occurred** 124:24
**October** 152:3
**offended** 112:18
**offers** 132:13
**officer** 4:12 6:14 7:11
  123:25 152:19
**offshore** 128:13
**oh** 66:24
**okay** 5:8 10:20 17:24
  22:25 48:19 81:20
  91:23 115:13
  165:18
**old** 109:3
**older** 131:21
**onboarded** 19:22
**onboarding** 94:22
**once** 17:19 22:14
  44:22 48:16 67:3
  125:8 130:24
  136:20
**oOo** 4:18

open 22:3
opened 12:5,9
operate 14:4 89:7,15
operating 7:11 10:5
  14:15 23:18 152:19
operation 90:5
  149:15
opinion 25:10 40:7
  114:23 154:21
  169:8
option 114:24
order 47:22 68:17
  71:8 92:24
ordering 5:3
orders 40:24 41:9
ordinary 9:6,9 10:8
  62:3 107:14 152:13
organization 18:10
  67:3 107:25 133:11
  143:11
organizations 121:11
  121:12
original 13:2 56:4
  63:19 153:19
originally 15:16
out-of-state 29:19
outcome 175:18
outside 108:3
outstanding 127:16
  148:3
owed 127:16 148:3
owned 12:9 14:21,25
  16:9 59:7 157:14
owner 17:3 18:13
  39:23 76:3,4 82:3
  91:18 102:4 103:2
  105:12 149:6
owners 16:3
ownership 28:12
  114:14
owns 14:19,21,24
  16:22

_____
        P
_____
P 2:2,2 3:2,2

p.m 1:15 5:11 49:6,7
  49:13,14,15,17
  61:21 63:4 64:8
  74:5 75:21 77:20
  82:24,25 83:2,6,19
  96:8 97:20,21 101:3
  106:22,23,24 107:2
  127:25 128:4 134:9
  135:10 155:19,20
  155:21,22 168:8
  171:8,10
packages 94:21
page 41:20 62:21,25
  63:9,10,14 65:8
  135:3 148:18,21
  149:3,25 172:4,11
  173:6,20 174:4
PAGE/LINE 176:6
PageProof 126:6,9
  126:16 134:3
PageProof.com
  126:17,19
pages 145:11
paid 78:24 127:15
  148:2
paper 64:14
parenthesis 65:2
part 16:10 19:16 26:8
  27:12 28:22 34:4
  39:8 50:21 67:4,5
  90:7 112:11 134:22
particular 62:13
  132:24 133:8
  142:14 144:22
parties 4:4 10:3
  175:16
partner 1:18 18:20
  27:13,20,23,24 40:5
  59:7 149:9
partners 3:5 7:9,13
  7:16,18 8:16,20
  9:12,16 12:10 17:10
  18:23 19:23 23:5,22
  24:10 29:5 30:11,14
  32:5,19,22 35:3,8

35:23 36:5,9 37:20
  38:5,5,10,15,21
  39:13,14 42:16
  43:11,17 55:19 56:2
  56:10 57:9 58:22
  59:2,14,18 60:3
  62:3,7 67:18,23
  68:8,15,17 69:5,13
  69:17,19 70:9,14,19
  70:21 71:2,7,14
  72:4,9,12,18 73:25
  75:2 76:16,25 77:13
  79:3 82:15 84:4,17
  84:20 85:25 88:9,22
  88:25 89:3,13 90:10
  90:18 92:3,13,19
  93:3,14,15,18 95:16
  95:23 96:10,13
  98:25 99:18 102:15
  103:11,15 104:7
  105:7 107:10,15
  108:4,12,20,23
  109:2,25 110:18
  114:3,12,13 115:21
  117:8,14 118:7
  120:4,17 123:7,10
  127:5,15 128:9
  129:23 130:4 131:5
  131:24 132:17,23
  133:14 134:2,16
  139:6 140:2,6,21
  141:3,18 142:13,20
  143:3,14 144:5,10
  144:15,17 148:2,6
  149:25 150:23
  151:6 152:17,20,22
  153:6,23 154:4,11
  154:23 155:3,7
  157:10 158:10,19
  160:10 164:20
  168:9 174:6,10,14
Partners' 9:10 10:8
  62:10 75:19 85:2
  129:24 152:14
party 8:17 168:21

passed 150:9
password 14:11
  81:14,16,19,22
  82:11,16 111:4
passwords 14:7
  114:11,20
pause 10:17 16:13
  27:6 48:22,25
paused 11:6,14 16:17
  17:25 27:10
payment 78:9,14,17
  78:21,22 95:25 96:5
  114:24,25 120:21
  125:10 127:18
  138:17 163:12,13
payments 79:4
pays 10:13
pedophiles 20:14
pending 68:10
  143:18
people 14:3 22:24
  23:13 84:13 110:6
  126:14 131:21
  132:11,14 144:23
  153:11
perceive 41:12
percent 39:23 59:7
  76:3,4
perform 43:11,18
  67:21 72:9
performed 37:8 59:5
  89:24 90:10 127:5
  157:15
performing 144:8
performs 144:17
period 103:14
periods 84:25 85:15
  85:17
permission 92:24
person 86:13 112:24
  116:3 132:20 141:6
  153:25 154:13
personal 70:10,21
  71:3,8 72:17 98:13
  98:15 131:25

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

192

personalities 84:23
personally 82:10
  86:23
perspective 125:8
Philadelphia 146:4
Philly 146:4
phone 22:21 55:7,20
  55:22 56:8 74:9
  108:9,13,15,20,24
  109:3,7 126:3
  129:16 174:6
phones 55:17
pick 99:25
picture 74:7
pictures 19:24
PKC 1:9
place 7:21 10:2,10
  60:22 98:20
placing 76:23 104:14
plaintiff 1:6,19 2:5
  5:25 6:18,23 8:14
  8:24 11:25 12:5
  26:18 32:14,20 33:3
  37:20 38:14 58:23
  155:25 156:2,14,24
  157:11,15 159:18
  160:11,22 162:6,11
  162:14 170:2
Plaintiff's 7:22,23
  10:22 60:25 73:21
  83:15 98:22 100:18
  104:19 107:6
  109:15 113:8
  116:16 119:4
  121:18 124:7
  125:17 130:11
  133:20 136:3 137:3
  138:25 147:13
  148:17 172:11
  173:6
PlaintiffAdvocates...
  39:10
Plaintiffs 156:25
Plaintiffs/Third-Pa...
  2:15

plan 46:14 72:16
platform 14:11
play 10:12 11:2 27:6
  33:19 50:9 56:19
played 11:4,12 16:15
  19:4 21:11 26:4
  27:8 28:18 31:8
  33:21 35:15 37:12
  39:2 40:11 41:15
  42:21 43:23 44:16
  46:17 48:21 49:22
  50:14 51:3,23 52:8
  52:16 53:7,14 54:17
  56:21 58:4
playing 10:16 11:11
  19:3 26:3 28:17
  31:6 42:20 43:22
  44:15 48:19 49:19
  50:12 51:2,22 52:7
  52:15 53:5,12
please 5:19 6:7 9:7
  10:17 16:13 22:20
  25:24 26:22 28:7,9
  38:3 45:19 49:2
  60:19 68:3 82:21
  91:4 101:5 113:18
  117:12 118:19
  127:23 133:4
pleasure 171:5
PLLC 3:7
plus 156:11
point 70:7 94:20,21
  119:21 120:17
  127:14,17,22
  129:22 133:13
  148:2 154:23 155:9
  162:3
pointed 30:3 105:23
POLLAK 1:10
port 13:4 161:22
ported 87:25
portion 21:15 23:17
  26:13 31:13 33:25
  35:19 37:16 39:6
  40:15,18 41:7,19

42:25 44:3,10,20,24
  45:3,10 46:21,24
  50:18 52:2,20 53:18
  53:20,23 54:21,23
  56:25 57:6,8 61:19
  105:3
portions 63:20 105:3
possession 38:5,8
possible 49:3 53:25
  96:25 127:11
possibly 153:3
potentially 37:2 71:5
  86:2,4 88:24 138:2
  159:7
power 108:7
practice 9:15 70:12
practices 69:16
precedes 80:9
preceding 138:5
preexisting 66:6
premise 70:24
preparing 8:19
present 2:3 3:3,16
  29:21 44:7 50:4
  109:13
preserve 67:21 68:5
  144:5 174:8,11,21
pressing 11:2
pretty 151:8,10
preventing 40:24
previous 34:8,16
  84:15 107:23
  109:17 115:19
  130:23
previously 42:7
  72:18 78:4 84:3
  86:16 119:18
  140:11 151:2
price 94:10,16,20,20
pricing 93:13,15
primarily 94:4
primary 17:11,16,17
  42:3 153:7
prior 36:13 37:2 48:4
  55:5 100:24 101:9

107:13
probably 88:6 139:11
problem 20:9,12
problems 165:20
procedure 6:25 10:5
proceed 92:13,25,25
proceeded 92:19 93:4
proceedings 171:9
process 32:13 71:11
  89:18
processes 147:3
produced 9:5 59:13
  90:13 91:7 95:5
  122:3,15 129:6
  139:6,23 164:11,11
  164:19,20
product 132:10
Productions 111:4
professional 1:21
  6:11 175:9
program 143:11
  146:22
proof 134:3
prospective 70:2,9
provide 31:3 55:6
  64:3 88:21 101:5
  133:14 164:4,16
  166:25
provided 56:14 65:21
  74:21 75:18 81:14
  92:5 105:15,19
  110:24,25 111:4,12
  137:20 140:2 141:8
  147:23 168:9
provides 80:3,5
  108:9 135:11
providing 164:14
Public 1:22 171:25
  175:9
pull 131:25 132:3
purchase 32:17
purchased 13:5
  39:10
purchasing 32:13
  34:11

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

193

purely 20:5 76:19
  113:4
purported 103:2
purports 11:22 60:7
purpose 86:18
  126:17 132:6
purposes 141:19
  162:8
pursuant 1:20 6:24
put 66:8 125:8
  153:16

**Q**

question 4:8 17:6
  26:22 28:9 32:10
  39:19 41:5 45:19,25
  48:2,18 60:19,20
  68:2,10 70:4,5,18
  70:20 88:7 94:15
  103:8 105:10
  108:17 109:2 115:7
  117:19 118:19
  130:2 133:3 148:13
  153:13 166:23
questioning 162:8
questions 10:15
  11:19 58:2 63:21
  147:5 156:3,4,10
  167:20,23 170:25
  171:2
quite 57:3
quote-unquote 13:25

**R**

R 2:2 3:2 171:12
rare 84:22,24
reach 38:15 105:18
  111:23 124:18
  128:22 130:22,25
  131:18 132:17,22
  133:4,8
reached 122:4 133:7
  144:22 161:9
reaches 128:18
reaching 122:11

132:9,11,13 138:22
  144:17
read 39:20 61:6,8
  83:24 87:18 97:11
  97:24 98:19 105:5
  110:12,20 115:20
  116:7 117:3 121:25
  147:22 171:15
reading 63:6 81:20
  81:23 102:5,8 112:9
  134:12,25 157:22
real 146:14
really 28:3 72:5
  147:4,4
reason 57:14 60:2
  80:7 89:22 114:17
  114:19 134:16
  158:2
reasons 21:24 35:9
rebrand 36:5,12
  86:22
rebranding 35:2,4,10
  35:24 36:3,9 86:17
  86:19 89:18,23 90:5
recall 36:16 55:10
  95:13 105:19 111:3
  120:10 130:3
  156:20 157:22
receipt 79:15,18
  120:10
receive 8:13 22:13,14
  114:23
received 8:3,21 10:11
  67:15 79:13 89:16
  95:9 102:9,14
  106:10 118:9
  123:12 130:24
  143:15 155:11
  166:24 170:5
receiving 36:23
  114:25
recess 49:14 82:25
  106:23 155:20
reckon 166:12
recognize 8:2

recognized 54:5
recollection 8:9
  19:11 22:8 33:13
  48:9 88:10 101:16
  106:5 120:15
record 5:10 6:13 9:25
  10:3,6,18,25 11:5
  11:13 16:16 19:5
  21:12 26:2,5 27:9
  28:19 30:7 31:9
  33:22 35:12,16
  37:13 39:3,20 40:12
  41:16 42:22 43:21
  43:24 44:17 45:19
  46:15,18 49:13,17
  49:23 50:15 52:17
  53:8,15 54:18 56:22
  58:5 61:18 79:3
  82:20,22,24 83:6
  106:20,22 107:2
  155:19,23 164:4,19
  171:8 175:14
recorded 9:19,21
  10:4 87:6
recording 9:15 11:4
  11:12 16:15 19:4
  21:11 26:4 27:8
  28:18 31:8 33:21
  35:15 37:12 39:2
  40:11 41:15 42:21
  43:23 44:16 46:17
  48:21,23 49:22
  50:14 51:3,23 52:8
  52:16 53:7,12,14
  54:17 56:21 58:4
recordings 10:23
  109:7 172:14
records 7:12 8:5
  17:10 38:4 39:13,14
  55:21 56:10 67:22
  68:6 90:24 91:6
  108:12,14 109:3
  114:3 122:3 127:17
  129:5 174:8,11
redirect 156:3 167:22

refer 22:23,24 89:2
  111:12 112:14
  151:17 162:7
  166:10
reference 13:9 19:8
  50:22 51:16 55:12
  59:21 62:21 77:21
  110:9 115:12 120:2
  126:6 135:16,22
  151:12
referenced 12:12
  14:14 18:19 51:18
references 16:11
  23:18 53:24 136:9
referencing 61:13
referred 33:8 168:16
referring 25:15 51:19
  64:18 74:24 77:7
  79:20 81:25 83:8
  89:3 97:4 100:10
  107:21 117:6 118:2
  121:21 129:7
  167:25 168:7
refers 40:4,18 41:19
  47:13 75:22 77:6
  136:13 138:2 142:2
refined 68:21
reflect 10:25 11:5,13
  16:16 19:5 21:12
  26:2,5 27:9 28:19
  31:9 33:22 35:12,16
  37:13 39:3 40:12
  41:16 42:22 43:21
  43:24 44:17 46:15
  46:18 49:23 50:15
  52:17 53:8,15 54:18
  56:22 58:5 61:18
refresh 8:9 19:11
  22:8 33:13 61:7
  88:10 101:16 106:5
regarding 57:5 91:25
  103:12 119:15
  123:3 156:10
  160:10 167:3 169:9
Regardless 131:4

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz --- June 11, 2024

194

**regards** 69:22
**registered** 1:21 6:10
36:15,19 175:8
**Regretfully** 111:5
**regularly** 119:14
**rekindle** 157:25
**related** 67:22 68:6
99:2 120:14 121:10
168:21 174:8,11
175:15
**relates** 109:8
**relation** 130:3 148:5
**relationship** 150:17
157:25
**relative** 8:20
**relay** 123:14
**remain** 50:23 51:8
52:3 67:17
**remained** 130:19
153:18
**remains** 150:22
**remember** 165:3
**remembering** 160:6
**reminder** 28:8
**Remote** 1:17
**remotely** 6:15,25
175:13
**remove** 99:9,14
104:8 135:21
**removed** 129:24
134:11,14,24 135:4
**rep** 15:21 84:14
113:21 153:9
163:22
**repeat** 9:7 28:9 31:18
39:19 41:4 59:16
68:2 70:4 117:12
118:15 142:25
145:22 154:3 155:5
165:24
**repeatedly** 168:16
**repeating** 40:7
**rephrase** 59:25 70:5
70:20 78:19
**replay** 44:9

**replying** 112:10
**reported** 105:20
**reporter** 1:22 5:2,5,8
6:5,8,10,11 36:7
41:3 54:9 58:14
63:15 67:25 68:12
78:16 96:19 109:19
117:2 122:20
135:23 137:14
175:9
**Reporting** 5:17 6:6
**repository** 24:9,10
**represent** 5:20 8:4
59:13 63:18 88:8
105:25 139:4
**representation** 11:21
100:14
**representative** 15:15
153:10
**Representatives**
150:8 163:19
**represented** 18:12
**represents** 18:9
**reps** 12:14,18,22
15:24 16:4,9,22
17:3,18 18:24 20:4
20:24 21:6 23:5
24:13,25 26:21
27:14 28:3,5,13
36:15,19 38:14,21
39:23 40:5 45:13
56:6 58:18 59:3
66:2 67:23 68:7,18
69:18 70:8,23 71:15
71:19 72:3,7,10,17
72:20 73:14 77:2,8
77:12 78:10 79:23
80:4,22 81:6 83:11
84:11 85:8,10 86:6
87:22 89:8,13,15
90:10,18 91:2,9,14
92:3,14 93:14 95:3
95:18,21 96:2,4
97:9,15 99:25 102:4

103:3,12,20 105:13
107:10 108:19
109:11 110:7 111:6
113:25 114:7,8,20
116:12 117:10,16
117:24 118:25
119:18 120:18
121:13 127:6,15
128:10 129:24
131:12 134:4
135:21 143:14
144:9 149:22 150:2
152:8 153:2,13
154:12 156:18
157:20 158:11
159:3,20 160:2,16
161:23 162:20
163:2 164:6 165:6
165:23 166:3,11,17
167:4 168:9 169:12
169:16,19,22 170:3
170:17 174:10,12
174:15,24
**Reps'** 72:13,23 86:13
95:9 98:10 99:3,10
99:21 100:5 102:16
104:9,24 114:4,6
116:9 119:15 130:5
146:17 148:6
**request** 57:15 64:5
69:19 70:8,22 72:15
105:7 134:17
135:21 143:18
147:17 158:10
174:4
**requested** 36:7 41:3
54:9 58:14 63:15
67:25 68:12 78:16
96:19 104:8 115:24
117:2 118:11 122:8
122:20 135:23
137:14 167:14,16
**requesting** 97:7
106:10 119:2
**requests** 57:4

**require** 163:15
**research** 25:7 56:7
66:15,21 67:12,13
67:16,21 69:4,10
72:2,7 75:6 96:5
105:18 106:9
133:17 143:10
148:12 174:8
**reserved** 4:8 60:15
**resource** 136:18
**respect** 15:18 17:11
26:10 29:18 48:17
54:7 56:8 66:23
68:4 103:5
**respective** 4:4
**respond** 119:20
138:16 147:6 161:6
**responded** 22:16
87:15 95:11 161:12
**responding** 165:11
**responds** 64:11 97:25
134:22
**response** 8:7,24 9:8
10:11 59:14,19 64:4
65:21 80:17 91:7
95:6 108:8 110:21
111:21 122:3,15
123:2 129:6,14
134:21 139:7,23
154:16
**responsible** 141:3
**restate** 161:7
**restroom** 49:5
**result** 135:2
**retain** 24:17
**retained** 23:5
**retention** 24:20
**retract** 112:17 165:8
**retrospect** 72:3
**review** 8:23 17:8
26:13 32:12 39:13
40:22 41:7,24 42:2
44:6 46:7 47:20
51:6 54:5 55:4 61:9
76:14 90:24 91:6

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz   ---   June 11, 2024

195

94:13 95:5 103:17
104:11 122:2,14
123:24 129:5
143:17 146:16
152:6 158:14 170:8
**reviewed** 13:13 48:4
55:5 73:8 86:10
87:7 102:10,25
105:21 127:24
154:17
**reviewing** 22:2 48:9
61:25 129:5 141:15
141:17 150:25
**rewind** 31:18
**right** 9:13 10:19
12:22 15:17,25 22:6
36:24 44:12 47:9
48:7 49:9 50:2
51:18 65:3,10 77:22
83:22 85:6,10 96:13
96:22 97:23 100:25
102:7 111:4,8
124:21 135:4
139:14,18 142:6
146:8,11 148:15
159:25 166:12
168:5
**rights** 114:14
**rise** 57:15
**ROA** 3:21
**Road** 3:8
**role** 91:14
**ROMAN** 1:10
**RPR** 175:22
**Rule** 28:8
**Rules** 6:24
**running** 103:20
143:11 147:3

_____
**S**

**S** 2:2 3:2 5:1 6:1,22
7:1 8:1 9:1 10:1
11:1 12:1 13:1 14:1
15:1 16:1 17:1 18:1
19:1 20:1 21:1 22:1

23:1 24:1 25:1 26:1
27:1 28:1 29:1 30:1
31:1 32:1 33:1 34:1
35:1 36:1 37:1 38:1
39:1 40:1 41:1 42:1
43:1 44:1 45:1 46:1
47:1 48:1 49:1 50:1
51:1 52:1 53:1 54:1
55:1 56:1 57:1 58:1
59:1 60:1 61:1 62:1
63:1 64:1 65:1 66:1
67:1 68:1 69:1 70:1
71:1 72:1 73:1 74:1
75:1 76:1 77:1 78:1
79:1 80:1 81:1 82:1
83:1 84:1 85:1 86:1
87:1 88:1 89:1 90:1
91:1 92:1 93:1 94:1
95:1 96:1 97:1 98:1
99:1 100:1 101:1
102:1 103:1 104:1
105:1 106:1 107:1
108:1 109:1 110:1
111:1 112:1 113:1
114:1 115:1 116:1
117:1 118:1 119:1
120:1 121:1 122:1
123:1 124:1 125:1
126:1 127:1 128:1
129:1 130:1 131:1
132:1 133:1 134:1
135:1 136:1 137:1
138:1 139:1 140:1
141:1 142:1 143:1
144:1 145:1 146:1
147:1 148:1 149:1
150:1 151:1 152:1
153:1 154:1 155:1
156:1 157:1 158:1
159:1 160:1 161:1
162:1 163:1 164:1
165:1 166:1 167:1
168:1 169:1 170:1
171:1 172:9 173:4
**Safa** 1:9 2:15 5:14

11:25 12:4,9 15:4
17:2,10 18:22 19:17
20:23 21:18 23:17
27:12,22 28:2,22
29:5 31:21,24 32:12
32:16 34:10,19 36:5
36:9 39:9,14,22
40:4,18,23 41:8,19
42:3,9,25 43:9
44:10 46:25 47:7,21
50:3 52:2,20 53:2
53:23 54:5 55:6,17
55:20,25 56:2,3,9
57:6,8 59:6 61:11
62:14 63:5,24 64:3
64:8,11 65:21 68:14
73:25 74:21 75:9,23
75:24 76:3,15 77:22
77:25 78:4,10 79:14
80:3,11,17 82:11,13
82:16 83:3,19 84:3
84:7,10 85:2,19,22
85:25 86:11,12 87:7
87:16 90:19,24 91:7
93:8 94:4 96:9,12
97:4,7,21,22,25
98:7,9 99:2,8
100:11,15,22 102:6
102:15 103:12,16
103:19 104:8
105:19 107:18,22
108:5 109:25
111:12,15,22 112:6
112:12,23,25
116:22 117:6 119:8
119:14,18,23 120:2
121:24 122:4,10,18
123:6,16 124:4,11
124:18 125:5 129:7
129:15 130:15,19
130:19,23 131:5,11
133:13 134:10,14
136:7,18,23 137:7
138:19 140:2 141:8
147:16,23 149:8,22

150:2 154:8,21
155:3,7 156:17
157:18 158:25
161:4,10,18 162:22
165:2,5,22 166:2
167:15 168:17
169:3,6,16 170:9,9
174:7
**Safa's** 57:15 80:7
91:13 98:13,15
**SafaGelardi@gma...**
98:17 101:21
147:20
**Sage** 2:6 5:24
**sale** 29:20 34:6
**sales** 15:15,21 153:9
**Salesforce** 24:22
**salesman** 29:19 67:4
119:20 125:9
130:24 136:20
138:16
**salesperson** 153:20
**Salt** 3:9
**sample** 134:7
**saw** 13:17 50:5 87:3
91:17 93:10 102:19
166:6,9 167:19
169:21 170:13
**saying** 43:2 47:7,14
163:7
**says** 28:2 39:22 77:20
80:10,11 81:22
83:21 84:2 97:5
102:3,6 107:17
111:22 119:11
123:2 128:3
**scenes** 103:20
**scheduled** 49:2
**Scheuerman** 2:18 6:3
**scope** 35:22 94:10,17
**scratch** 99:19,22
100:4
**screen** 7:21 10:10
11:2 22:2,5 30:4
50:3 60:23 61:9

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz --- June 11, 2024

196

76:23 96:24 98:21
104:14 115:23
**screenshot** 104:20,23
105:2 135:12,14
148:18,21 172:21
173:19
**scroll** 61:25 64:17
125:20
**Scrolling** 96:6 97:19
124:14 152:2
**sealing** 4:5
**search** 106:13 174:16
**second** 44:18 45:16
46:16 61:14 63:8
71:12 85:8 142:8
144:2 147:11
170:23 174:20
**seconds** 11:6,14,17
31:10 35:14,17
36:14 40:13 41:17
43:25 48:20 49:20
49:24 50:13 52:18
53:6,16 54:16,19
56:20,23 58:3,7
**section** 14:3 139:14
**Sedano** 84:7
**see** 10:3 45:21 61:12
61:23 62:16,23
64:14 65:11 67:15
68:16 71:10 74:5,6
74:7 79:25 80:7
94:14 95:6 96:24
98:3,6 99:7 101:11
101:21,25 106:9
107:12,19 113:13
113:18 115:23
120:5,7,25 123:4
124:12,15 133:17
135:19 136:11
137:8,9 139:12
140:22 142:10
149:14 151:14,23
163:25 166:24
**seeing** 65:18 152:3
**seek** 92:20,24 93:7

**seeking** 34:19 93:7
**seen** 11:9 44:8 87:14
87:25 94:6 139:11
**send** 134:3 162:19,22
164:8
**sending** 71:5 75:4,10
75:11
**sends** 74:9 80:17,20
124:3 137:11
**senior** 132:13
**sent** 30:14,16,17,20
33:9,10 59:2,18
60:2 61:7 63:4 67:7
68:14 74:17 75:7,14
81:2 101:4,12,19,22
103:18 104:12
110:20 111:16
122:10 127:25
128:3 129:23
143:24 174:5,18
**separate** 25:9
**serve** 38:7
**server** 37:8
**services** 1:11 23:3
37:8 43:9,12 92:5
**serving** 40:24 41:9
**set** 20:4 23:22 24:9
24:16 38:15 62:9
121:22 175:12
**sets** 24:11
**settling** 136:10,24
**setup** 25:20
**SGelardi@IMECo...**
137:13,17
**shape** 18:12
**share** 22:3,5 57:20
64:8 126:21 136:22
**shared** 36:14 109:10
115:23 122:17
127:3
**sharing** 11:2
**sheet** 143:22 146:10
**sheets** 145:2
**Sheldon** 1:19 5:13,22
7:4 60:11 118:15

171:19 172:5
175:11
**short** 72:8
**shortly** 161:21
**show** 11:22 60:8
64:17 107:4 158:25
**showed** 59:17 73:11
107:24 133:16
**showing** 63:6 67:10
101:18 109:3
145:17
**shown** 127:7 164:24
**shows** 22:5 151:22
**shut** 154:24
**sic** 30:17
**side** 50:2,21 94:14,14
149:6
**sign** 8:11
**signed** 4:12,14
112:23 163:21,25
164:5 174:23
**significance** 81:17
**silent** 40:5 59:7 91:21
**similar** 77:17 118:5
139:12
**similarly** 146:7
**simply** 63:20 149:4
**Simultaneous** 23:2
37:23 58:13 98:5
115:18 126:23
140:25 142:24
146:23 163:20
**single** 152:11
**sir** 47:11 82:9 95:15
98:19 102:5,13
118:19
**sit** 147:7 152:7
**site** 19:24 22:16
116:5 170:22
**situation** 24:7,12
35:4
**situations** 24:7
**small** 27:13,20 45:4
**social** 71:4
**sole** 47:15 89:22

**solely** 86:6 132:24
**solicit** 66:8,12
**solicitations** 67:22
68:5 161:4 174:9,11
**soon** 53:25 96:25
127:11
**sorry** 13:11,22 28:9
41:4 45:2 48:24
80:23 82:19 106:18
107:18,22 115:8
117:12 125:13
126:24,25 141:16
142:25 145:22
164:25 169:20
**sought** 57:6,8
**sounds** 42:12 45:14
88:5 134:13
**sources** 96:2
**space** 164:3
**speak** 15:3,6,9
123:13 155:24
**speakers** 23:2 37:23
58:13 98:5 115:18
126:23 140:25
142:24 146:23
163:20
**speaking** 9:18 14:14
28:7 45:20 82:18
85:2 99:2 132:7,16
132:22 144:15
152:16 169:6
**specialty** 132:4
**specific** 13:19 132:18
142:21 143:4
**specifically** 53:24
87:8 88:17 158:9,25
159:2 164:23
**specified** 38:15
**speculation** 158:5
163:5 166:19
**spelled** 31:16 102:12
**spelling** 32:6 105:7
105:15,20 106:4
**spells** 31:21 105:3
106:2

spoke 15:16 99:24
    118:9,22 136:25
    138:21 155:11
    159:13 169:18
spoken 158:15
spreadsheet 65:14
    139:2,5 141:10
    142:6 143:12,17
    145:3,6 147:8
    148:10 173:17
ss 175:5
standard 10:5 94:20
start 10:16 57:20
    67:14
started 29:12 149:25
    152:3
Starting 58:2 134:2
starts 42:25
state 1:22 5:20 6:9
    91:4 127:4 141:7
    171:25 175:4,10
stated 17:25 59:6
    86:12 87:8 165:10
states 1:2 26:9
stating 130:18
Statistics 139:15
Stats 139:6
stenographic 6:10
STIPULATED 4:2,6
    4:10
stop 10:17 31:6 53:10
    100:16 157:20
    158:19
stopped 19:6 21:13
    26:6 28:20 31:10
    33:23 35:17 37:14
    39:4 40:13 41:17
    42:23 43:25 44:18
    46:19 48:23 49:24
    50:16 52:18 53:9,16
    54:19 56:23 120:21
Stopping 51:4,24
    52:9
stops 43:2
stored 24:5,8 121:5

stores 24:21
strange 103:2
Street 2:19
strokes 126:16
structure 93:13,15
subject 113:19 156:3
submitted 8:24 9:8
    24:4,5
submitting 23:13
subpoena 1:20 8:8,13
    8:20,25 9:9 10:12
    36:23 59:14,19,22
    60:3 79:13,15,18
    89:16 91:7 95:6
    103:18 110:20
    118:9,11 119:2
    120:10 122:3,15
    123:12 129:6 139:7
    139:23 155:11
    164:8 167:14
subscribed 171:21
suddenly 103:3
sue 110:18 115:20
SUFFOLK 175:6
suggested 34:25
suggesting 135:5
suing 20:14
Suite 3:8
supplemental 10:11
supplied 30:22 121:4
    133:16,18 167:13
supply 88:25
sure 24:12 56:16
    61:17 70:5 71:22
    98:3 104:13 126:18
    128:13 151:8,10
    154:15,16 156:12
    160:19 165:10,11
swear 6:7
switch 20:9
sworn 4:11,14 6:25
    171:21 175:12
system 75:7

_____

**T**

T 6:22 171:12 172:9
    173:4
take 49:4 66:6 106:17
    136:19 155:16
    170:22
taken 1:19 5:13
    29:25 30:6 49:14
    82:25 106:23
    153:15 155:20
talk 68:9 156:17
talked 34:10 170:20
talking 26:18,19
talks 159:17
target 131:20 142:21
    143:4
targeted 68:25
    131:14,17,23,25
    132:5,9,17 133:12
    148:11
team 66:20 118:10,13
    118:21 120:9
    123:13,14 134:14
    147:2 155:12
team's 112:11
telephonically 9:14
tell 125:4 155:12
tells 27:12
templates 99:24
term 28:5 78:3 88:16
    88:23 113:15
    131:14 135:16
    141:25 156:14
terminated 129:20
termination 103:7
testified 7:3 15:23
    22:19 23:14 35:22
    62:17 67:11 106:2
testimony 159:4
    175:14
Texas 36:15,19 44:11
    74:24
thank 5:8 8:10 30:5
    49:11,21 70:6
    109:20 111:22
    125:22 155:25

164:17 167:21
    170:24 171:4
thanks 62:14 126:3
Theoretically 92:16
    109:5
theory 97:17
thing 61:8 66:24 75:7
    133:15 153:14
things 29:10 88:19
    125:8 127:11
    136:10,24 153:12
think 19:14 21:3
    30:21 50:9 73:3
    82:8 91:20 95:10
    101:18 127:18
    140:11 158:16,18
    160:5 162:3
thinking 166:22
third 142:9 144:2
    146:3 174:21
Thousand 1:20
thread 61:17
threads 151:13,21
threat 110:17
threatened 115:20
three 138:13 142:7,8
    142:9 146:11
    153:11
tie 59:22
Tiffany 61:11 62:5
    62:13 63:4,24 64:8
    64:12 67:17 84:14
    153:9,15 167:3,5,6
Tiffany's 64:4
time 4:9 5:10 6:12
    13:23 16:14 27:7
    31:7 49:7,13,17
    70:7 72:8 81:21
    82:24 83:4 84:25
    91:4 102:16 103:14
    104:13 106:22
    107:2 120:20,21
    127:14,18 128:8
    129:2,22 133:13
    155:19,22 156:2,9,9

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz  ---  June 11, 2024

198

160:5 165:6,19
170:24 171:4,8
**times** 66:5 85:19,22
85:25
**timestamp** 30:4
**timestamps** 127:21
128:15
**timing** 127:21
**title** 7:10 30:10
140:16 141:25
**titled** 65:16 139:5,18
**titles** 140:8
**Tobin** 1:21 6:6,9
175:8,22
**today** 6:6 59:12
147:8 152:7,12
154:18 156:2
158:15
**today's** 5:11 48:4
**told** 114:10
**top** 66:19 101:14,23
122:25 139:14
149:8
**topically** 77:17
**topmost** 96:7
**totally** 28:5
**track** 109:5 141:18
**traffic** 97:8
**transcript** 5:3 31:2
56:14 171:16
**transcription** 10:23
172:15
**transfer** 23:6 26:15
26:18 28:23 29:5
72:12 85:9 86:19,24
94:12 108:6 113:22
157:13
**transferred** 12:25
23:15 24:25 25:10
25:12 27:2 87:21
**transferring** 12:21
86:17 159:21
**trial** 4:9
**true** 25:21 156:22
157:17 159:10,19

160:2,15 161:20
167:16 175:13
**Trump** 165:16
**try** 130:25
**trying** 97:13 119:20
138:11
**tweaks** 19:23
**two** 59:12,17 76:14
84:25 85:15 93:19
94:9 110:15 121:22
146:4 150:13
153:10
**two-day** 5:5
**type** 20:9 22:15 38:8
88:12 127:9
**typically** 24:11 99:18

**U**

**U** 171:12
**ultimately** 12:5 33:10
42:16 58:11 65:25
71:19
**unable** 128:22
**understand** 8:16
16:25 17:8 55:6
59:23 63:22 112:19
133:3
**understanding** 12:16
18:6,22 20:2,7,11
20:16 21:5 22:17
23:12 24:4 26:25
27:22 28:12 31:15
37:19 41:8 45:11
46:3 47:14 51:7
54:4 75:13,15 89:6
89:17,20 91:13,16
115:14,16 122:16
126:15 131:11
167:3
**Understood** 68:11
**unfamiliar** 148:14
**UNITED** 1:2
**unsuccessful** 122:11
**unusual** 35:3
**update** 120:3

**updates** 108:13
**URL** 13:4 23:10
**use** 9:24 28:4 49:4
87:8 97:23 151:8
156:14
**user** 14:11 150:3
**usually** 65:6
**Utah** 3:9
**utilize** 71:8
**utilized** 69:9,11
134:3

**V**

**vague** 115:16 166:5
**various** 64:12
**verbiage** 13:3 19:23
25:19 88:19 118:2,3
118:5 135:15
**versus** 5:14 84:14
**video** 5:12 10:11,13
10:14,22 11:4,6,12
11:16,21,24 12:12
12:15,17,20 13:2,9
15:17 16:5,8,15
17:2,9,20 18:25
19:4,15 20:5,14
21:2,3,8,10,11,21
22:2 23:17,25 25:8
25:21 26:4,14 27:8
28:11,18 29:24 30:6
30:10 31:6,8 32:12
33:6,21 34:12 35:15
36:11,24 37:12 39:2
39:22 40:4,11,22
41:15 42:2,12,21
43:23 44:6,16 45:10
46:8,13,17 47:4,18
47:20 48:5,21,23
49:19,22 50:2,14
51:3,23 52:8,16,20
53:7,14 54:5,17
56:21 58:2,4,6,17
59:6,10,13,18,21,23
60:2,6 75:16 76:6
86:21 87:3 89:10,19

90:2 91:15,20,25
93:10 99:11,16,23
100:8 102:19 104:5
113:4 115:23 118:3
122:2,7,14 123:24
129:5 136:15
139:24 155:8
156:13 157:3
159:17,23,25 160:6
169:18,19 170:8,13
170:19 172:14
**video-teleconference**
1:17 2:3 3:3 6:16
83:4
**videographer** 3:18
5:9,17 6:5 49:12,16
82:19,23 83:5
106:21,25 155:18
155:22 171:7
**videos** 10:6
**videotape** 155:10
166:6,10,10
**videotaped** 1:17
**view** 139:22 149:24
**virtual** 9:15,19,21
22:3 29:21 33:11
36:2 46:2 47:7
52:12,21 58:10
74:12,17,21 76:2
87:5,6 105:20 168:3
168:14 169:4,12
**virtually** 9:13,14
145:11
**vis-à-vis** 157:15
**vision** 109:10
**Vito** 1:9 2:16 15:7
44:6,8,11 50:7 53:2
83:3 134:11,15
165:22 166:2
**vs** 1:8

**W**

**Wait** 45:15
**waiting** 123:2
**waived** 4:5

**want** 5:5 10:14 21:19
29:3 30:24 32:10
47:8 68:5 76:20
80:21 82:20 84:20
92:6,8 105:17
108:17 111:17,19
112:18 122:22,24
123:20 126:13,15
129:8,11 132:17
133:8 135:15
136:19 141:12
143:20,20 151:20
152:9 155:16,25
164:9
**wanted** 13:3 34:15
86:21 89:20 99:17
**wants** 26:9
**Warner** 2:18,22 5:2,4
5:7 6:2,3,3,19 17:4
17:13 19:20 20:19
21:7,20 22:22 25:3
25:23 26:17 27:4,15
27:19 28:4,14 33:4
34:21 38:18 39:18
39:25 40:6 41:2,11
42:5,11,17 43:6
45:15 46:4,12 47:3
47:10,16,24 48:13
51:14,21 52:6 54:8
54:12 55:9 57:11,16
58:12,19 59:9 60:9
66:4,13 69:3,21
71:21 74:15 76:5,11
76:18 77:9,15,23
78:7,11,18 80:19
81:7,11 83:23 85:11
86:7 87:11,17 89:9
89:25 90:6,20 91:3
91:10,19 92:7,15,21
93:2,9,22 94:5,19
96:23 97:10,16
102:18,23 103:4,22
104:4,10,16 105:22
106:7 109:17,21
111:9,18 112:3,7

113:3 114:22 115:5
115:9 116:11,25
117:11,17 119:16
120:6 121:14 122:6
122:19 124:25
125:14 128:12
129:9 130:9,21
131:7 134:18
137:22 138:4 140:3
140:10 141:11,21
141:23 142:3,15,23
143:6 144:12,20
146:19 150:5 156:4
156:7,21 157:4,9
158:8,17,23 159:8
159:16,24 160:8,14
160:21 161:2,16
162:4,18 163:6,14
164:3,10,17,22
165:13 166:8,14,20
167:20 168:23
169:7,17 170:4,12
170:18 171:2 172:6
**wasn't** 54:25 92:18
165:10 169:20
**watch** 16:6 48:18
**WatchDog** 1:5 5:14
5:25 8:14 59:15,18
59:19 65:17 73:9,13
82:4,5 122:16
**watched** 17:24 18:18
59:12 75:16 86:21
87:3 89:10,19 90:2
91:15,25 99:12,16
99:23 104:5,5 113:5
113:5 136:16
156:14 170:19
**watching** 17:22 20:6
21:2 29:22 36:24
49:20
**way** 10:19 18:12,25
21:8 22:9 41:12
54:14 66:8 69:20
90:9,9 137:19 152:3
175:17

**ways** 71:2 113:18
144:21
**we'll** 7:22 17:23
30:25 49:7 56:13
66:6 79:8
**we're** 9:25 14:13 16:6
16:10 19:2 20:5
21:2 28:16 29:22
33:19 36:24 37:10
40:9 41:13 46:15
48:19 53:11 56:19
57:24 60:22 61:19
67:20 83:13 93:19
94:9 103:7 112:18
112:21 123:2
126:14 131:20
132:13 141:2
152:18
**we've** 34:12,24,25
49:19 63:19 79:21
86:10 88:15 147:4
151:2 154:20
158:15
**website** 13:3,7,8,15
13:16,17,21,25 14:3
14:8,10,15 17:12
18:12 19:9,13,17,18
20:17 22:6,9,18
23:6,15,23 24:6,16
25:13,19 26:15,17
27:2 28:23,24 29:2
29:3,6,12 32:20,22
36:12 41:20,25 42:4
42:10,15 43:12,18
46:11 47:2,23 48:11
51:10 53:10 54:6
58:10,22 59:5 72:13
72:14 85:6 86:17
87:20 90:13 92:9
96:13 98:11 99:3,10
99:15,19,21 100:6,6
102:16 104:9,20,24
108:15,21 116:9,10
116:13 117:9,15,19
117:24,25 134:4

157:14 159:21
160:19,22 161:22
162:25 163:11
169:11,15,20
170:10,16 172:22
**websites** 117:22,23
126:20
**Weissman** 15:19,21
29:14,16,18,21
63:13 75:14,21 77:6
79:24 80:11 85:18
86:24 116:20
120:23 124:11
128:18 161:9
168:16
**Weissman's** 157:24
161:4
**went** 24:14 71:11
74:13 94:10 123:13
139:24 170:20
**weren't** 154:15
165:11 166:24
**West** 2:19
**whatsoever** 157:19
160:16
**withdrawn** 14:23
15:12 31:20 32:3
53:18 54:22 57:7
68:23 75:12 81:15
87:4,5 90:23 102:9
114:18 120:15
153:22 154:10
**witness** 1:19 3:5 6:7
6:15 45:17 48:22
49:2,8,11,21 56:16
60:13,17,21 67:24
106:15,17 115:8
118:18 144:6 171:5
172:4 175:11,14
**word** 10:17 43:2
116:8 160:2
**words** 13:15 40:8
47:8,21 133:2
**work** 23:22 31:2
33:10 34:23 35:23

IME WATCHDOG, INC. v. GELARDI, et al.

Sheldon Katz  ---  June 11, 2024

200

43:11,18 56:15 59:5
72:9 84:21 88:15
89:2,24 90:9 92:13
92:20 94:10,17
127:6 144:8,16
157:10 162:11,19
162:25 163:8,15
**worked** 7:15 22:10
34:24 68:7 78:4
84:3 85:18,21,25
131:12 147:8
152:25 153:6
174:13
**working** 77:21,22
78:4 84:14 102:15
120:22 132:5 138:2
141:4 150:2
**workloads** 84:12
**works** 62:8 151:11
**worksheet** 145:7,13
145:19,20,23,24
146:3,4,10,13,16,21
**world** 103:6
**wouldn't** 22:23 34:7
49:10 92:24 163:15
**Wow** 82:17
**write** 31:17 158:10
**writers** 153:4
**writes** 62:13 96:15
128:25
**writing** 106:12
**written** 22:12
**wrote** 105:12 116:4
158:18 159:12

**X**

**X** 172:2,9 173:2,4
174:2

**Y**

**Yeah** 138:15 144:3
**year** 82:7 110:18
**years** 66:18 112:22
**York** 1:3,23 2:8,20
2:20 6:9 128:10

145:23 146:18
175:4,10
**young** 16:11,23 17:20
22:11 35:5 36:20
50:9,20 53:21 54:25
73:6 100:2,9,10,16

**Z**

**Z** 6:22
**zero** 11:17
**zone** 128:9
**Zoom** 5:18
**zooming** 65:13

**0**

**1**

**1** 44:18 46:16 65:3,5
**1,358** 145:7,10
**1:22-cv-1032** 1:8
**1:25** 49:6,13,14
**1:30** 49:7 156:8
**1:35** 49:15,17
**10** 54:19 56:20 74:4
76:3 167:23 168:8
169:12 172:14
**10,000** 153:12
**10:09** 115:12
**10:14** 79:23
**10:23** 101:24
**10:59** 80:10 83:9
**100** 10:22 172:14,20
**10011** 2:20
**104** 172:21
**106** 174:16
**107** 172:23
**109** 172:24
**10th** 2:19 30:7 90:17
168:3
**11** 1:15 79:23 80:10
176:2
**11:09** 168:5
**113** 172:25
**11423-2327** 2:8
**116** 173:8

**119** 173:9
**11th** 5:12 83:9
**12** 36:14 41:17 48:20
136:7
**12:02** 107:17
**12:03** 96:7
**12:07** 1:15 5:11
**12:44** 101:3
**12:46** 61:21
**12:53** 83:19
**12:56** 37:14 38:25
**12:59** 74:4 75:18
168:8
**121** 173:10
**124** 173:11
**125** 173:12
**12th** 83:18 90:17
**13** 35:13
**13:59** 39:4 40:10
**130** 173:13
**133** 173:14
**136** 173:15
**137** 173:16
**138** 173:17
**13th** 97:20
**14** 100:21
**143** 174:18
**147** 173:18
**148** 173:19
**14th** 96:7
**15** 11:6 40:13 168:7
**15:39** 41:14
**156** 172:6
**158** 145:16
**15th** 120:4,11 123:2
**16** 41:17
**16:12** 42:20
**164** 174:23
**167** 172:7
**17** 49:20 152:3
**17:50** 42:23 43:22
**18** 43:25
**18:21** 44:15
**182-11** 2:7
**18th** 2:19 61:10,20

98:25
**19** 134:9 167:8
**19th** 101:23 102:14
103:10 107:10
119:7 120:17
130:18 134:6
157:17 164:24
165:6,21,25
**1st** 64:7 122:25

**2**

**2** 11:14
**2:16** 75:21 77:20
**2:22** 63:4
**2:26** 64:8
**2:28** 11:17 14:13
16:13 17:25 18:18
**2:30** 82:24,25
**2:33** 83:2,6
**2002** 7:20
**2007** 7:17
**2017** 65:19
**2022** 152:3 154:7
**2023** 30:8,18 33:9
61:10,12,20 64:7,11
67:7 74:4 79:23
80:10 83:9,18 86:8
96:7 97:20 100:21
101:23 106:3
107:10 110:2
113:12,25 119:7
122:25 124:11,15
125:25 127:6 134:9
141:8 147:18
164:23 165:25
167:8 168:3,8
169:12
**2024** 1:15 5:12
130:14 136:7
149:12,16 171:24
176:2
**205** 74:20
**2091** 3:8
**21** 3:8 43:25 44:18
46:16

IME WATCHDOG, INC. v. GELARDI, et al.
Sheldon Katz  ---  June 11, 2024

201

**21st** 147:18
**220** 20:15
**23** 127:14 128:25 130:18
**24** 48:19 49:20,24 50:12
**24:12** 46:19
**25** 113:12,25
**25th** 30:18 33:9 109:25 110:4,18 116:3
**26** 128:24
**27th** 129:22
**28** 11:14
**28:07** 51:2
**28:26** 50:16 51:4,22
**28:30** 52:15
**28:33** 51:24 52:7
**28:41** 52:9
**28th** 65:19
**29** 52:18 53:5

— **3** —
**3** 134:7
**3,000** 117:23
**3:04** 16:17 17:25 18:19 19:3,16 106:22,23
**3:09** 106:24 107:2
**30** 28:8 53:9,10,13,16 54:16
**31** 54:19 56:19,23 58:2,6 174:5
**32** 49:24 50:13
**33** 58:7
**35** 58:7
**38** 31:10
**39** 40:13 73:20,21 76:24 79:21 172:17

— **4** —
**4** 19:6,16
**4:01** 26:3
**4:17** 26:6
**4:20** 155:19,20

**4:27** 155:21,22
**4:30** 156:9
**4:33** 128:4
**4:38** 127:25
**4:47** 171:8,10
**40** 112:22 152:24
**41** 56:23 58:3
**45** 53:16 54:16 60:24 60:25 172:16
**4536250@bcc.Hub...** 120:24
**4th** 106:3

— **5** —
**5** 35:13
**5:28** 122:24
**5:43** 97:20
**50,000** 117:23
**51** 35:17
**54** 100:17,18 172:20
**56** 174:6
**57** 83:14,15 96:6 172:18

— **6** —
**6** 2:19 27:5,6
**6:01** 21:13
**6:14** 27:10 28:17
**6:52** 28:20 31:6
**60** 98:21,22 127:18 172:16,19
**61** 109:14,15,21 172:24
**62** 82:8 116:15,16 173:8
**63** 119:3,4 173:9
**64** 121:17,18 173:10
**646.437.8083** 2:21
**66** 147:12,13 173:18
**67** 125:13,14 130:8,9 130:10,11 173:13 174:8
**68** 136:2,3 173:15 174:11
**6th** 61:12 64:11

68:14 73:9 125:25 127:19 141:8

— **7** —
**7** 31:10 168:5 172:5 172:13
**7,200** 117:10,16
**7:11** 134:9
**7:38** 32:9 33:20
**71** 148:16,17 173:19
**718.412.2421** 2:9
**72** 104:15,19 172:21
**7200** 117:19
**73** 172:17
**79** 174:15
**7th** 128:18

— **8** —
**8** 124:15
**8/25/2003** 30:17
**8:12** 97:20
**8:33** 135:10
**801.930.1117** 3:10
**83** 172:18
**84117** 3:9

— **9** —
**9** 35:17 36:14 52:18 53:6
**9:11** 116:3
**9:13** 33:23
**9:51** 37:11
**90** 39:23 59:7 76:3
**93** 7:22,23 172:13
**94** 107:5,6 109:19,20 164:24 172:23
**95** 113:7 124:6
**95A** 113:8 172:25
**95B** 124:7 173:11
**96** 125:16,17 173:12
**97** 133:19,20 173:14
**98** 138:24,25 172:19 173:17
**99** 137:2,3 173:16
**9th** 124:11 130:14