UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IME WATCHDOG, INC.,

                             **Case No.: 1:22-cv-2032 (PKC) (JRC)**

               Plaintiff,

       -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

               Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE
FOR A TEMPORARY RESTRAINING ORDER PENDING THE CONTINUED HEARING
<u>AND A PRELIMINARY INJUNCTION</u>**

**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
emanuel@sagelegal.nyc

**MILMAN LABUDA LAW GROUP PLLC**
Jamie Falsen Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiff
IME WatchDog, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT & RELEVANT FACTS.................................................... 1

LEGAL STANDARD ................................................................................... 6

ARGUMENT ........................................................................................... 7

    **A.**    **Plaintiff Has Suffered Irreparable Harm & Injunctive Relief Is Warranted** ........................................................................................... 8

    **B.**    **IME WatchDog Has Repeatedly Proven Likelihood of Success on The Merits** ................................................................................. 10

    **C.**    **The Balance Of Hardships Tip Tremendously In IME WatchDog's Favor** ........................................................................................ 13

    **D.**    **Granting An Injunction Would Not Harm The Public Interest** ............... 14

    **E.**    **A Bevy of Coercive Sanctions are Necessary to Enforce Compliance with Orders** ................................................................................ 14

**CONCLUSION** ....................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**

Benihana, Inc. v. Benihana of Tokyo, LLC,
    784 F.3d 887 (2d Cir. 2015) ............................................................................. 14

Capstone Logistics Holdings, Inc. v. Navarrete,
    2018 U.S. Dist. LEXIS 216940, 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018)................ 8

Capstone Logistics Holdings, Inc. v. Navarrete,
    796 Fed. Appx. 55 (2d Cir. Mar. 5, 2020) .......................................................... 8

Capstone Logistics Holdings, Inc. v. Navarrete,
    2020 U.S. Dist. LEXIS 110304 (S.D.N.Y. June 23, 2020) ................................. 8

CBS Broad. Inc. v. FilmOn.com, Inc.,
    814 F.3d 91 (2d Cir. 2016)............................................................................. 10

Chevron Corp. v. Donziger,
    384 F. Supp. 3d 465 (S.D.N.Y. 2019)............................................................... 14

Chevron Corp. v. Donziger,
    990 F.3d 191 (2d Cir. 2021)............................................................................ 14

Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC,
    No. 1:24-CV-55 (MAD) (CFH), 2024 WL 1171772 (N.D.N.Y. Mar. 19, 2024)............ 13

Consol. Gold Fields PLC v. Minorca, S.A.,
    871 F.2d 252 (2d Cir. 1989)............................................................................. 6

Consol. Gold Fields PLC v. Minorca, S.A.,
    890 F.2d 569 (2d Cir. 1989)............................................................................. 6

DeWitt Stern Grp., Inc. v. Eisenberg,
    2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013).................................... 8

Drywall Tapers & Pointers v. Local 530,
    889 F.2d 389 (2d Cir. 1989)....................................................................... 10, 11

Drywall Tapers & Pointers of Greater New York, Local 1974 of I.B.P.A.T., AFL-CIO v. Local
530 of Operative Plasters & Cement Masons Int'l Ass'n,
    954 F.2d 69 (2d Cir. 1992)............................................................................... 7

Estee Lauder Cos. v. Batra,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006)................................................................ 9

*Faiveley Transp. Mahmo AB v. Wabtec Corp.*,
    559 F .3d 110 (2d Cir. 2009)..................................................................................... 9

*Fengler v. Numismatic Americana, Inc.*,
    832 F.2d 745 (2d Cir. 1987)..................................................................................... 6

*FMC Corp. v. Taiwain Tainan Giant Indus. Co., Ltd.*,
    730 F.2d 61 (2d Cir. 1984)....................................................................................... 9

*IME Watchdog, Inc. v. Gelardi*,
    2022 WL 1525486 (E.D.N.Y. May 13, 2022) ........................................................ 8, 16

*IME Watchdog, Inc. v. Gelardi*,
    2022 WL 2316137 (E.D.N.Y. June 28, 2022) ....................................................... 16

*IME Watchdog, Inc. v. Gelardi*,
    No. 22-CIV.-1032 (PKC) (JRC), 2023 WL 6958855 (E.D.N.Y. Oct. 20, 2023) ....... 10, 13

*In re 1990's Caterers Ltd.*,
    531 B.R. 309 (Bankr. E.D.N.Y. 2015)..................................................................... 15

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949)................................................................................................. 11

*Mister Softee, Inc. v. Diaz*,
    2020 U.S. Dist. LEXIS 118979 (E.D.N.Y. July 2, 2020) ..................................... 8

*MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.*,
    368 F.3d 138 (2d Cir. 2004)..................................................................................... 7

*North Atlantic Instruments, Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999)....................................................................................... 9

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004)..................................................................................... 15

*Perfect Fit Indus. v. Acme Quilting Co.*,
    673 F.2d 53 (2d Cir.1982)........................................................................................ 15

*S. Nassau Control Corp. v. Innovative Control Mgmt. Corp.*,
    1996 U.S. Dist. LEXIS 22603, 1996 WL 496610 (E.D.N.Y. June 20, 1996) ....... 8

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)....................................................................................... 8

*SAM Party of New York v. Kosinski*,
    576 F. Supp. 3d 151 (S.D.N.Y. 2021)..................................................................... 10

SAM Party of New York v. Kosinski,
    No. 22-44-CV, 2022 WL 10763416 (2d Cir. Oct. 19, 2022)............................................ 10

SEC v. Citigroup Global Markets, Inc.,
    673 F.3d 158 (2d Cir. 2012)......................................................................................... 14

Shillitani v. United States,
    384 U.S. 364 (1966)..................................................................................................... 15

Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC,
    468 Fed. Appx. 43 (2d Cir. 2012)................................................................................. 8

Vuitton et Fils S.A. v. Carousel Handbags,
    592 F.2d 126 (2d Cir. 1979)......................................................................................... 15

**Rules**

Fed. R. Civ. P. 65 ........................................................................................................... 2, 7, 16

## PRELIMINARY STATEMENT & RELEVANT FACTS[1]

Over the life of this case, this Court issued various Orders granting injunctive relief prohibiting the Defendants and their agents from using or retaining Plaintiff IME WatchDog, Inc.'s (hereinafter "Plaintiff" or "IME WatchDog") trade secrets and serving its customers. These Orders have been disregarded by the Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants") with impunity from the get-go.

Most recently, the Defendants have orchestrated yet another thinly-veiled sham to create a successor entity, IME Legal Reps ("IMELR"), which is purportedly owned and operated by non-party Eugene Liddie ("Liddie"). This was after Defendants were already enjoined from operating Client Exam Services LLC, which was similarly set up with a front-man Fari Gutierrez, who is related to the Defendants. As set forth below, the Plaintiff has pierced through this mirage and has demonstrated with clear and convincing evidence that IMELR is merely a continuation of and successor to the Defendants' original business and is continuing to use Plaintiff's trade secrets and serve customers on the Enjoined Customer List. This evidence consists of emails and Defendants' own statements in video-recordings; glaringly, the evidence contradicts the sworn statements made by Defendants and Liddie at two (2) prior hearings, and court filed declarations which only further cements Plaintiff's entitlement to relief.

---

[1] The facts below are summarized based on: (i) this Court's prior findings of fact in its May 13, 2022, October 20, 2023, and February 29, 2024 Orders; (ii) the transcripts from the hearings held on April 4, 2022, March 27, 2023, May 4, 2023, and March 29, 2024; (iii) the Rule 32 deposition transcript of Giant Partners held on June 11, 2024; (iv) Safa's deposition transcripts dated February 2, 2023 and February 3, 2023; (v) publicly available documents; and (v) the records produced by GP in response to Plaintiff's subpoena, including the April 10, 2023 recorded virtual meeting between Defendants and GP, the May 7, 2024 declaration of Sheldon Katz, and the June 18, 2024 declaration of Jeremy Koenig all of which are cited to, attached, and/or contained in the Declaration of Emanuel Kataev, Esq. in support of the instant Order to show cause.

1

As a result, the Defendants, Liddie, and IMELR should be held in contempt, and this Court's Orders should now apply with equal force to Liddie and IMELR.

This Memorandum of Law is thus respectfully submitted by IME WatchDog in support of its urgent need for a TRO and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure (hereinafter referred to as the "Rules" or "Rule") and this Court's May 13, 2022 injunction (the "Injunction"), March 10, 2023 TRO (the "TRO"), and the March 27, 2023 expanded preliminary injunction ("Expanded Injunction") (the Injunction, the TRO, and the Expanded Injunction collectively hereinafter the "Injunctions") against Defendants and their successor business and "front man" to, among other things, include Liddie and IME Legal Reps within the ambit of the Orders because Liddie is an agent of the Defendants and because IMELR is a successor to Companions.

The need for this relief stems from the overwhelming evidence submitted at the May 29, 2024 hearing together with the April 10, 2023 recorded virtual meeting between Defendants and Giant Partners ("GP"), which establishes beyond any shadow of a doubt that IMELR is a continuation of and a successor to Companions, during which Defendants lay out the scheme of how they will again violate this Court's Orders.

In the virtual meeting, which took place a mere two (2) weeks after the second hearing in this case, it is revealed that Defendants and Liddie created a partnership in a new company which was intended to be, for all intents and purposes, the successor to Companions, and which would be used to continue to serve all of the clients on the Enjoined Customer List.

The scheme was, and has been, to have Liddie as the front man for just one year until Defendants got Plaintiff "off [Defendants'] back." See Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl.") ¶ 18, Exhibit ("Ex.") E, 00:02:55.23 – 00.03:24.17.

However, in reality, Defendants own ninety percent (90%) of the new venture and ten percent (10%) is owned by Liddie.  Id. at 00:11:02.04 - 00:11:05.14.  During the virtual meeting, the name of that venture was contemplated to be Plaintiff Advocates Id. at 00:17:19.13 - 00:17:50.12, but mere hours after the April 10, 2023 virtual meeting, the domain name IMELR domain name was purchased, and the log in credentials were sent to GP via email that very day.  See Kataev Decl. ¶ 11, Ex. A. at 93:24-94:6; see also Hearing Exhibit 53.  When faced with bombshell evidence further establishing the undeniable partnership between Liddie (or "Liddy," according to Safa) and the Defendants, Liddie doubles down on his lies.  In his June 13, 2024 letter submission to the Court, Liddie attempts to insult this Court's intelligence by arguing, without any evidence whatsoever – in a writer's voice eerily similar to that of Defendants' counsel – that the entire meeting between Defendants and GP was based on Defendants' "delusional plan" of which he purportedly had no knowledge.  See ECF Docket Entry 350.  Respectfully, the only delusion is that Liddie expects this Court to believe anything he or Defendants say following both of their repeated lies to this Court.

Liddie first argues in his June 13, 2024 letter to the Court, through his counsel (or more likely, through Defendants' counsel), that the April 10, 2023 recorded virtual meeting discusses Plaintiff Advocates, not IME Legal Reps.  Id.  But, critically, this ignores the April 10, 2023 email sent the same day wherein Liddie provided GP with the GoDaddy credentials for IME Legal Reps mere hours after the virtual meeting.  See Kataev Decl. ¶ 11, Ex. A. at 93:24-94:6, 214:17-215:3; Hearing Exhibits 53 and 55.

Moreover, GP repeatedly confirmed at the Rule 32 deposition on June 11, 2024 that the plan discussed on April 10, 2023 was ultimately implemented for IME Legal Reps, and one participant in the video has provided a sworn declaration that everything discussed a the April 10, 2023 virtual meeting was for IME Legal Reps.  See Kataev Decl. ¶¶ 12 and 20, Ex. H.

At the May 4, 2023 hearing, Liddie testified that his interactions with GP were solely by phone (see ECF Docket Entry 219-1 at 117:11-16); but then, at the May 29, 2024 hearing, when he was presented with a mountain of emails produced by GP establishing that he communicated via email with GP, he conceded that he previously lied.  See Kataev Decl. ¶ 11, Ex. A at 215:23-216:21.

Liddie (and the Defendants) also lied about their involvement with each other when they testified that Defendants' involvement was solely to sell the website to Liddie so Defendants could make a mortgage payment and that Defendants thereafter were no longer involved in the IME business.  See ECF Docket Entry 219-1 at 33:5-7; 88:13-89:2.  However, the evidence from GP establishes that Defendants maintained an active and primary role with respect to the IME Legal Reps website.  See Kataev Decl. ¶ 18, Exs. E and F Ibid.  The virtual meeting between Defendants and GP is merely the icing on the cake.

Critically, Defendants *admitted* at the May 29, 2024 hearing that they disseminated Plaintiff's customer list in an email to GP on February 6, 2023 which they ultimately used to form and run IME Legal Reps in violation of the May 13, 2022 Order.  See Kataev Decl. ¶ 11, Ex. A at 86:21-89:17.  This crucial admission is all that is necessary to give rise to a temporary restraining Order pending a continued hearing which is being delayed for Liddie's benefit.

Liddie also perjured himself when he testified that it was him, and not Safa, who misspelled his name on several occasions.  Contrary to his incredulous testimony that the spell check function misspelled his name, the virtual meeting between Defendants and GP confirms that Safa was ghost-writing the emails to GP and that Safa spells Liddie's name "Liddy" (just like it appears that Safa's attorney ghost wrote Liddie's letter).  See ECF Docket Entry 219-1; see also Kataev Decl. ¶ 18, Exs. E and F at 00:05:25.24- 00:05:50.25; 00:07:31.02- 00:07:38.18.

Moreover, it is respectfully submitted that the spell check functions in Microsoft Word, Outlook, and Gmail do not auto-correct the spelling of "Liddie" to "Liddy."  Furthermore, the court, itself, in questioning Liddie on May 29, 2024 about how he obtained his first client, Bergman Bergman, Fields & Lamonsoff LLP ("Bergman"), and covered an IME for Bergman a mere four (4) days after "buying" the Companions' website, indicated that his testimony was incredible that some "guardian angel" gave his number to Bergman who then called Liddie to ask if he had an IME company to then book his services.  See Kataev Decl. ¶ 11, Ex. A at 208:6-209:21.  The Court also noted that this testimony was inconsistent with Liddie's testimony on May 4, 2023 when he testified that he cold called Bergman.  Id. at 228:6-231:2.The evidence adduced at the hearing establishes that Liddie and IME Legal Reps are serving the same customers (virtually all of which are on the Enjoined Customers List), using the same observers, and the same stolen trade secrets. Id. at 196:1-198:8; 200:6-201:6.  Liddie and IME Legal Reps cannot enjoy the fruit of the poisonous tree and should be prohibited from doing so.  Notably, Liddie failed to produce any documents in response to the subpoena served upon him other than the sham website sales agreement.

Shockingly, despite the existence of many emails between Liddie and Safa that were entered into evidence at the May 29, 2024 hearing, Liddie states, in response to the subpoena, that he has no communications, including but not limited to, text messages and/or emails between himself on the one hand, and Jeff Beiben, Safa Gelardi, and/or Vito Gelardi on the other hand related to IMEs and the operation of his IME business.  See Kataev Decl. ¶ 20, Ex. H.

Similarly, in response to the request in the subpoena for "[a]ll documents related to any website that was purchased by Eugene Liddie from IME Companions and/or Safa or Vito Gelardi, including, but not limited to: (i) the contents of the back end (server end) of the website, including

5

customer list and contact information for customers; and (ii) the contents of the pages on the front end (client side) of the website, including home, service, bookings, about us, our clients, contact us, appointments page, booking page, and users," <u>Id.</u>

Liddie unbelievably claims to have no documents.  He conveniently states, through his counsel, and not in the form of a sworn declaration or with any evidence, that the website of IME Legal Reps was hacked in May of 2024 wherein no such documents or data related to the website in question are retrievable.  <u>Id.</u>  Nothing Defendants, Liddie, or their counsel say can be believed at this point in light of these repeated lies and demonstrable perjury.  It is also worthy to note that Liddie lied at the May 29, 2024 about purportedly not being served with the subpoena, which is further evidence of his gamesmanship and lies.  These tried-and-true tactics reek of the same dilly-dally and delay Defendants engaged in, which only burdened this Court and the Plaintiff with being forced to prove, over and over, what is evident on its face.  Based on the foregoing, Plaintiff is entitled to injunctive relief.

## **<u>LEGAL STANDARD</u>**

As an initial matter, "on a motion for a preliminary injunction, where essential facts are in dispute, there must be a hearing ... and appropriate findings of fact must be made." <u>See</u> <u>Consol. Gold Fields PLC v. Minorca, S.A.</u>, 871 F.2d 252, 256 (2d Cir.), <u>amended</u>, 890 F.2d 569 (2d Cir. 1989) (<u>citing</u> <u>Fengler v. Numismatic Americana, Inc.</u>, 832 F.2d 745, 747 (2d Cir. 1987)). However, "<u>Fengler</u> does not stand for the proposition that a hearing must be held in all preliminary injunction cases." <u>Id.</u>

No hearing is necessary where "the prior hearings and affidavits, and the court's findings supporting the earlier injunction, provide[ ] an adequate basis for the court's decision ... [and] the most significant factors on which the injunction [is] based would have remained essentially

6

unchanged by any additional evidence." See Drywall Tapers & Pointers of Greater New York, Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasters & Cement Masons Int'l Ass'n, 954 F.2d 69, 76-77 (2d Cir. 1992) (quotations, citation and original alterations omitted).

A party moving for a preliminary injunction under Rule 65 must demonstrate "(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." See MONY Grp., Inc. v. Highfields Capital Mgmt., L.P., 368 F.3d 138, 143 (2d Cir. 2004) (citation and quotation marks omitted).

For the reasons set forth below, IME WatchDog has satisfied these requirements, and the Court should grant a TRO and Preliminary Injunction to prevent Defendants, Liddie, and IMELR from continuing to possess IME WatchDog's trade secrets, return those trade secrets through the means of a forensic examiner at their cost, and to enjoin the Defendants, Liddie, and IMELR from serving customers on the Enjoined Customers List.

A broad array of contempt sanctions are also appropriate because prior Orders have not caused Defendants to comply, and the same contempt sanctions are necessary against Liddie because he has perjured himself, is operating a business his current employer has not permitted him to run, and has ignored this Court's warnings at the May 4, 2023 hearing.

IME WatchDog seeks to secure the immediate and complete return of its proprietary confidential, trade secret information misappropriated by, and in the possession and control of Defendants, Liddie, and IMELR and to prevent their dissemination or use of such information to unfairly compete against and continue to harm IME WatchDog.

**ARGUMENT**

7

## A. **Plaintiff Has Suffered Irreparable Harm & Injunctive Relief is Warranted**

To satisfy the irreparable injury requirement, a party must demonstrate that absent preliminary relief, it will suffer "an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." See Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC, 468 Fed. Appx. 43, 45 (2d Cir. 2012).  Moreover, a loss that is difficult to replace or to measure is generally irreparable.  See Mister Softee, Inc. v. Diaz, 2020 U.S. Dist. LEXIS 118979 (E.D.N.Y. July 2, 2020) (irreparable injury established where the plaintiffs alleged that, as a result of defendant's infringement, business will be diverted, and the goodwill associated with the plaintiff's trademarks will be taken from their control) (citing Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010)).

"[T]he use and disclosure of [one's] confidential customer information and the possibility of loss of customers through such usage, constitutes irreparable harm."  See Capstone Logistics Holdings, Inc. v. Navarrete, 2018 U.S. Dist. LEXIS 216940, 2018 WL 6786338, at *33 (S.D.N.Y. Oct. 25, 2018), aff'd in part and remanded in part, 796 Fed. Appx. 55, 2020 U.S. App. LEXIS 6878, 2020 WL 1062636 (2d Cir. Mar. 5, 2020); see also S. Nassau Control Corp. v. Innovative Control Mgmt. Corp., 1996 U.S. Dist. LEXIS 22603, 1996 WL 496610, at * 4 (E.D.N.Y. June 20, 1996) ("The actual or likely use of … a former employer's confidential customer information,  and the resulting possible loss of customers, constitutes irreparable harm."); DeWitt Stern Grp., Inc. v. Eisenberg, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013) ("Irreparable harm to an employer results through both the loss of client relationships and customer goodwill … [where] misappropriated trade secrets or confidential customer information, including pricing methods, customer lists and customer preferences [occurs]"); IME Watchdog, Inc. v. Gelardi, 2022 WL 1525486, at *6 (E.D.N.Y. May 13, 2022).

Indeed, appropriately tailored injunctions can be useful to protect plaintiffs from the effects of misappropriated trade secrets by defendants. See, e.g., Faiveley Transp. Mahmo AB v. Wabtec Corp., 559 F .3d 110, 119 (2d Cir. 2009).  In general, the imminent use of a trade-secret constitutes irreparable harm. Id. at 118-19 ("A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets"); see also North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38. 49 (2d Cir. 1999); FMC Corp. v. Taiwain Tainan Giant Indus. Co., Ltd., 730 F.2d 61, 63 (2d Cir. 1984) ("[a] trade secret once lost is, of course, lost forever" and as a result, such a loss "cannot be measured in monetary damages"); Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006).

Here, Defendants, Liddie and IMELR have unquestionably stolen IME WatchDog's trade secrets containing its business plan, customers' contact information and the details concerning IME WatchDog's customers' details, pricing, and preferences which Defendants, Liddie and IMELR have been and continue to utilize to solicit IME WatchDog's customers and have repeatedly violated Court Orders related to same.  This is evident from a review of the February 6, 2023 email in which Defendants sent GP Plaintiff's customer list despite the Orders requiring Defendants to turn those trade secrets over to Plaintiff and to cease using them.  Critically, Defendants admitted to violating the Orders at the May 29, 2024 hearing, albeit inadvertently, which is irrelevant in analyzing whether Defendants engaged in contempt.

This continued course of conduct has caused and will continue to cause IME WatchDog irreparable injury as Plaintiff stands to lose its business and customer base.  Injunctive relief is thus necessary to obtain the return of and prevent the unlawful use of IME WatchDog's trade secrets once and for all.

Based on the foregoing, IME WatchDog has established that it will suffer irreparable injury in the absence of immediate injunctive relief.

**B. <u>IME WatchDog Has Repeatedly Proven Likelihood of Success On The Merits</u>**

IME WatchDog has previously proven a likelihood of success on the merits.  <u>See</u> <u>IME Watchdog, Inc. v. Gelardi</u>, No. 22-CIV.-1032 (PKC) (JRC), 2023 WL 6958855, at *8 (E.D.N.Y. Oct. 20, 2023) ("the Court finds that Plaintiff's customer lists constitute trade secrets and that Plaintiff is likely to succeed on the merits of their trade secret claims against Defendants").  This determination is therefore law of the case.  <u>See</u> <u>SAM Party of New York v. Kosinski</u>, 576 F. Supp. 3d 151 (S.D.N.Y. 2021), <u>aff'd</u> No. 22-44-CV, 2022 WL 10763416 (2d Cir. Oct. 19, 2022) (determining, in deciding whether the law-of-the-case doctrine applies to preclude relitigation of an issue, a preliminary determination of the likelihood of success on the merits on a preliminary injunction motion should apply given that factual record remains substantially unchanged).

IME WatchDog similarly easily clears the hurdle to establish a likelihood of success on the merits of its contempt application which it has also previously established.  <u>See</u> <u>IME Watchdog, Inc. v. Gelardi</u>, 2023 WL 6958855, at *8.   "A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." <u>See</u> <u>CBS Broad. Inc. v. FilmOn.com, Inc.</u>, 814 F.3d 91, 98 (2d Cir. 2016). Regarding the first factor, "[a]n injunction is sufficiently clear and unambiguous if it leaves 'no doubt in the minds of those to whom it was addressed ... precisely what acts are forbidden.' " <u>Id.</u> (quoting <u>Drywall Tapers & Pointers v. Local 530</u>, 889 F.2d 389, 395 (2d Cir. 1989)).

As to the second factor, "[n]oncompliance [has] to be supported by clear and convincing evidence." <u>Id.</u> at 99.

For the third factor, a party who diligently complies in a reasonable manner, "to ensure it remain[s] in compliance with the Injunction" "c[an] petition[ ] the District Court for a modification, clarification or construction of the order." Id. (quoting McComb v. Jacksonville Paper Co., 336 U.S. 187, 192 (1949)).

Importantly, a party's intent or state of mind does not matter for finding contempt. See McComb, 336 U.S. at 191 ("The absence of wil[l]fulness does not relieve [a party] from civil contempt[;] ... it matters not with what intent the defendant did the prohibited act."). Moreover, broader injunctions, with more general language, "are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown." Id. at 192.

Here, there is no question that Defendants, Liddie, and IMELR knew about the injunction, which is clear and unambiguous. This is established by a review of April 10, 2023 virtual meeting alone.  There, Safa repeatedly referenced this case and this Court, and many times sought assurances from GP that what she was doing was confidential.

A critical admission during the virtual meeting was Safa's statement that she was going to "play the criminal's game" and do what she needed to, and that she was merely transferring her business and customers over to Liddie but she would remain the operator of the business behind the scenes to evade this Court's Orders.

Another basis for this Court to find that the injunction is sufficiently clear and unambiguous is the March 30, 2023 email from Safa to Subin recommending Accompanied Exams. See Kataev Decl. ¶ 11, Ex. A at 64:6-67:25.  There, Safa expressly states: "as you know, IME Watch dog and IME Companions have been in a heated litigation. We are not allowed to service your law firm anymore."  Id.  Liddie also knew of the Orders; he was personally handed a copy of same by this Court on May 4, 2023.   Id. at 127:16-129:6.

11

As to the second factor, again, this is supported by the video and documentary evidence establishing that the Defendants continued to contact and serve customers on the enjoined customers list.  This is shown through the April 10, 2023 virtual meeting, emails with GP, Subin invoices, the responses Plaintiff received from subpoenas to defense firms (as well as publicly available documents), and the LinkedIn accelerator stats discussed during the GP deposition.  Indeed, the LinkedIn accelerator spreadsheet lists 228 customers who have been contacted by GP at the best of IMELR, all of which are on the Enjoined Customers List.  See Kataev Decl. ¶¶ 15-17, Exs. B, C, and D.

For the third factor, it should be noted that Defendants did not petition the court in any manner, nor appeal this Court's prior decisions.  Moreover, no such petition or appeal would be warranted or available where, as here, Defendants have engaged in protracted and unnecessary litigation forcing Plaintiff to go through hearings in order to try to achieve compliance with this Court's Orders.  If the court recalls, Plaintiff sought to avoid motion practice and a hearing by demanding sworn statements from Defendants that they are no longer serving customers on the Enjoined Customer List.

Defendants refused to do so, because they knew that was a lie.  When backed into a corner and forced to defend themselves, instead of coming clean, they chose to repeatedly lie and hope for the best.  This strategy has not worked for them.

More importantly, this strategy has forced Plaintiff to suffer through the expense of legal fees and related costs to enforce compliance with the injunction.  Contrary to Safa's statements in the video, it is not the idea that she stole, it is the trade secrets.  As Safa conceded during the virtual meeting with GP, cold-calling is hard and often not fruitful.

As a result, it is evident they continued to do what they've been doing all along: enjoying access to Plaintiff's stolen trade secrets to serve customers that they have been enjoined from serving.  Based on the foregoing, IME WatchDog is likely to succeed on the merits of its DTSA claim and contempt application against Defendants, Liddie, and IMELR.

### C. The Balance Of Hardships Tips Tremendously In IME WatchDog's Favor.

Courts in the Second Circuit have made "clear that a defendant's hardship should be discounted when that hardship is self-inflicted by the defendant's own illegal activity." See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, No. 1:24-CV-55 (MAD) (CFH), 2024 WL 1171772, at *14 (N.D.N.Y. Mar. 19, 2024) (citing IME Watchdog, Inc. v. Gelardi, 2023 WL 6958855 at *10 (collecting cases)).

IME WatchDog's legitimate interest in protecting against Defendants' exploitation of its trade secrets and its long-standing relationships and goodwill with its customers certainly outweighs Defendants' minimal interest in stealing that information through bribery so that it can do business with those customers in direct competition with IME WatchDog, or do business at all given that Defendants have stolen everything they use to run their competing  business, and do so by continuously violating this Court's Orders with impunity.  It would therefore be patently unfair to allow Defendants, Liddie, and IMELR to violate the law in order to exploit and misappropriate IME WatchDog's customers and goodwill with its customer base by using IME WatchDog's trade secrets to solicit its customers. On the other hand, granting the relief sought and precluding Defendants from using IME WatchDog's trade secrets would merely foreclose Defendants, Liddie and IMELR from continuing to unlawfully and unfairly compete against IME WatchDog.  Thus, any harm suffered by Defendants is "self-inflicted" by virtue of their decision to engage in illegal bribery, theft of trade secrets, and contempt of court.

**D.** **Granting An Injunction Would Not Harm The Public Interest.**

Before ordering injunctive relief, the Court should also "ensure that the injunction does not cause harm to the public interest." See SEC v. Citigroup Global Markets, Inc., 673 F.3d 158, 163 n.1 (2d Cir. 2012)). There is no reason to believe that the relief sought would cause injury to the public. The protection of IME WatchDog's trade secrets does not, and will not, stifle market competition, cause any signification dislocation in the market, or seriously impinge on the availability of IME observers.

The general public remains free to utilize the services of IME observers from IME WatchDog and at least two other known competitors, who are named IME Guards and IME Sharks. The public interest is best served in this instance by the enforcement of the law and the cessation of Defendants from perpetrating a fraud on the consumer public and potentially inflicting physical and/or financial harm; after all, if they are capable of stealing from IME WatchDog, what would stop them from inflicting damage upon anyone else, including their own customers. See Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 897 (2d Cir. 2015). Thus, like the remaining factors, this factor favors injunctive relief in favor of IME WatchDog.

**E.** **A Bevy of Coercive Sanctions are Necessary to Enforce Compliance with Orders**

Defendants have demonstrated a propensity for non-compliance with this Court's Orders. In such circumstances, additional coercive sanctions are necessary. See Chevron Corp. v. Donziger, 384 F. Supp. 3d 465, 504 (S.D.N.Y. 2019), aff'd in part, vacated in part, rev'd in part, 990 F.3d 191 (2d Cir. 2021) ("Donziger's failure to perform required acts that have not been performed warrant sanctions for the purpose of coercing compliance. Accordingly, the Court will afford a brief period before the commencement of coercive monetary sanctions during which Donziger may comply fully with the relevant orders. It imposes escalating fines for each day of

14

continued non-compliance after the expiration of that brief period while reserving the possibility of increasing those fines and/or resorting to other remedies in the event Donziger does not swiftly comply. As with all such remedies, Donziger will have the option of purging himself of these contempts").

The district judge, sitting in equity, is vested with wide discretion in fashioning a remedy. See Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979).  "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." See Shillitani v. United States, 384 U.S. 364, 370 (1966).  The Court has "'broad discretion to design a remedy that will bring about compliance.'" See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004) (quoting Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir.1982)).

Based on Defendants' willful non-compliance with the Orders, this Court should consider and impose the coercive sanctions requested in Plaintiff's Order to show cause.  See, e.g., In re 1990's Caterers Ltd., 531 B.R. 309, 320-21 (Bankr. E.D.N.Y. 2015) ("Having considered this serious matter in great detail, this Court concludes that there is no available lesser sanction than the coercive sanction of incarceration; given Mr. Bivona's conduct and his ignorance of prior monetary sanctions, it is extremely unlikely that any increased monetary sanctions would improve the likelihood of his compliance. He has exhibited a clear pattern of noncompliance and utter disregard for this Court's Orders, and the dignity of the judicial process.  As such, if Mr. Bivona does not purge his contempt … by June 22, 2015, this Court will issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt …").

In addition, another forensic examination is necessary of Defendants, Liddie's, and IMELR's digital devices.  This Court previously ordered a forensic examination be completed because evidence was presented that Defendants would spoliate evidence.  See April 4, 2022 hearing exhibit 18C at  https://www.dropbox.com/scl/fi/t346be37mz8p5mhocm7xn/PS-EX-18C.mp3?rlkey=7wk1qqa9lfqibsdc2lbuugpfa&dl=0  (recorded conversation between Adam Rosenblatt and Defendants wherein Rosenblatt was requested to delete everything and destroy everything); see also IME Watchdog, Inc. v. Gelardi, 2022 WL 1525486, at *9, reconsideration denied, 2022 WL 2316137 (E.D.N.Y. June 28, 2022).

Given Liddie's refusal to comply with the subpoena by providing his communications with Defendants and his counsel's representation that the website of IME Legal Reps was hacked in May of 2024 wherein no such documents or data related to the website in question are retrievable, this relief is now again necessary.

## CONCLUSION

IME WatchDog has demonstrated a likelihood of success on the merits of its claims against Defendants and the merits of its contempt motion and that without an award of injunctive relief under Rule 65 and the Orders, it would suffer immediate and irreparable harm.

IME WatchDog has no adequate remedy at law and is therefore entitled to a preliminary injunction prohibiting Defendants, Liddie, and IMELR from using IME WatchDog's trade secrets during the pendency of this case.

For these reasons and the reasons set forth herein, IME WatchDog respectfully requests that this Court grant its Order to Show Cause for Preliminary Injunction and Temporary Restraining Order based on contempt and issue further relief as is just, equitable, and proper.

Dated:  Lake Success, New York
       June 19, 2024

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

By:  */s/Jamie S. Felsen, Esq.*
Jamie S. Felsen, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1391 (direct dial)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

Dated:  Jamaica, New York
       June 19, 2024

**SAGE LEGAL LLC**

By:  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Additional Attorneys for Plaintiff*
*IME WatchDog, Inc.*

17