UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
IME WATCHDOG, INC.,                                    Case No.: 1:22-cv-1032 (PKC)(JRC)

      -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and
IME MANAGEMENT & CONSULTING LLC,
Defendants.
--------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING  ORDER AGAINST NON-PARTY IME LEGALREPS, LLC AND EUGENE LIDDIE**

This memorandum of law is submitted in opposition to Plaintiff's application for a Temporary Restraining Order (TRO)  and other requested relief by the Plaintiffs.  Here,  Plaintiff seeks to: (a)    preliminarily enjoin Defendants, Liddie, IME Legal Reps (hereinafter "IMELR"), and any persons or entities acting in concert with or on behalf of Defendants, Liddie, and IMELR from serving customers on the Enjoined Customers List; (b) preliminarily enjoin Defendants, Liddie, IMELR, and any persons or entities acting in concert with or on behalf of Defendants, Liddie, and IMELR from using in any manner whatsoever IME WatchDog, Inc.'s ("IME WatchDog") trade secret and confidential and proprietary information (including, without limitation, IME WatchDog's customer database, including the identity and contact information of IME WatchDog's customers, or any other information regarding IME WatchDog's customers, clients, transactions, financial information, or other matters involving IME WatchDog); (c) direct Defendants, Liddie, and IMELR to return to IME WatchDog all originals and copies of documents, records, and information, whether in hard copy and/or computerized and/or other

electronic media form, that contain IME WatchDog's trade secrets and confidential and proprietary information (including, without limitation, IME WatchDog's customer database, including the identity and contact information of IME WatchDog's customers, and for each customer of IME WatchDog the services offered and payments received from IME WatchDog's customers, and/or other matters involving IME WatchDog and which Defendants obtained or accessed, including without limitation information regarding IME WatchDog's customers, clients, transactions, financial information, or other information involving IME WatchDog) with the use of an independent third-party monitor to be paid for by Defendants, Liddie, and IMELR; (d) directing Defendants, Liddie, and IMELR to make all electronic accounts that are in their custody or control and on which they stored information regarding IME WatchDog's tradesecrets and confidential or proprietary information available and accessible to IME WatchDog (including providing relevant passwords) to inspect to ensure IME WatchDog's trade secrets and confidential and proprietary information is secure and has not been improperly copied or distributed and to determine all violations of this Court's Orders; (e) direct Defendants, Liddie, and IMELR to pay for a forensic analysis of their digital devices issuing a Court-Authorized Notice to customers on the Enjoined Customers List; (g) preliminarily enjoin Defendants, Liddie, and IMELR from contacting any IME WatchDog clients and/or individuals currently performing services for IME Watchdog;  (h) direct Defendants, Liddie, and IMELR to place a public notice on the home page of the websites www.imelegalreps.com, www.theimecompany.com, and any other website operated by Defendants, Liddle, and IMELR with the Court-Authorized Notice; and  (i) preliminarily enjoin Defendants, Liddie, and IMELR from operating Companions and/or IME Legal Reps due to their prior and continued contempt of this Court's Orders; and (j) direct

the U.S. Marshal to arrest Safa, Vito, and/or Liddie due to alleged   perjury and willful and contumacious conduct in disobeying this Court's multiple Orders.

As to the above requested orders, Mr. Liddie states that he is not acting in concert with the Defendants, nor has he acted with the Defendants regarding IME Legal Reps in any way other than the development of the IME LegalReps website.  Mr. Liddie further states that he is not in possession of any trade secrets and /or "confidential and proprietary information (including, without limitation, IME WatchDog's customer database, including the identity and contact information of IME WatchDog's customers, or any other information regarding IME WatchDog's customers, clients, transactions, financial information, or other matters involving IME WatchDog" nor does Mr. Liddie have or ever had any originals and/or "copies of documents, records, and information, whether in hard copy and/or computerized and/or other electronic media form, that contain IME WatchDog's trade secrets and confidential and proprietary information to turn over,  including, but not limited to "IME WatchDog's customer database, including the identity and contact information of IME WatchDog's customers, and for each customer of IME WatchDog the services offered and payments received from IME WatchDog's customers, and/or other matters involving IME WatchDog and which Defendants obtained or accessed, including without limitation information regarding IME WatchDog's customers, clients, transactions, financial information, or other information involving IME WatchDog) with the use of an independent third-party monitor to be paid for by Defendants, Liddie, and IMELR"

Nor does Mr. Liddie possess or control any "electronic accounts" which stored any information regarding IME WatchDog's trade secrets and confidential or proprietary information available and accessible to IME WatchDog", including but not limited to  any relevant

passwords. Mr. Liddie further objects to a forensic analysis of his digital devices; an injunction enjoining Mr. Liddie from contacting any IME Watchdog clients; placing a public notice on his company website; and/or enjoining Mr. Liddie from operating his business, IME LEGAL Reps. Mr. Liddie further objects to any arrest in connection with his testimony in this case because he did not commit perjury in any way.

Within Plaintiff's submission they assert that the June 13, 2024 letter (ECF No. 350), written by the undersigned on behalf of Mr. Liddie was so "eerily similar" to the voice of the Defendant's counsel that they suggest that the Defendants' attorney "ghost wrote" Liddie's letter" (*Plaintiff's Memorandum of Law pg. 3 and 4*)

Plaintiff's claim, that the undersigned would allow and/or even need someone to ghost write a two-page letter on behalf of Mr. Liddie and file it with the court is absurd and borders on insulting. Here, Plaintiff repeats this claim and states it with such assurance one would believe it to be true.  But in this instance, I can attest that their claim is wholly false in that Mr. Liddie and I conferred back and forth until the letter was in line with his sentiments of this case before it was submitted.

I raised this claim to make a point, that such an allegation is yet another instance where the Plaintiff has made an improper assumption based upon what they want the Court to believe as the only true and logical conclusion - here that Defendant's counsel is truly representing Mr. Liddie behind the scenes- not the undersigned. The goal is to infer that something sinister is afoot at every turn. But here, the Plaintiff is just plain wrong.  In light of this simple incorrect assumption by Plaintiff, it should raise the question as to whether the Plaintiff's are just plain wrong about the other assumptions and conclusions they have made in this case.

Another example of a concocted conclusion by the Plaintiff is where the Plaintiff states that "[Giant Partners] ("GP") repeatedly confirmed at the Rule 32 deposition on June 11, 2024 that the plan discussed on April 10, 2023 was ultimately implemented for IME Legal Reps, and one participant in the video has provided a sworn declaration that everything discussed a the April 10, 2023 virtual meeting was for IME Legal Reps" (*Plaintiff's Memorandum of Law pg. 3*)

Here, Sheldon Katz of GP, testified primarily as to what Plaintiff's counsel made the witness listen to from the April 10, 2024 Safa video (Hereinafter "Safa Video") and emails shown to him.  He had no personal knowledge or beforehand knowledge of the "plan" discussed on the Safa video and its actual relation to IME LegalReps. In other words, other than drawing the same conclusion that anyone may draw upon listening to the video, this witness provided no merit to the Plaintiff's claims.

For example, during the deposition, Plaintiff's counsel would play an excerpt from the Safa video then ask the witness about the very excerpt played.   At one point during the deposition Counsel asks the witness:

> *Q. Do you have any understanding as to why IME Companions was being deactivated and IME Legal  Reps was being set up? The witness responds by stating,*
> *A. **I do purely based on the video we're  watching now**. (GP Tr. pg. 20  lns. 2-6 )*

At another time Counsel asks :

> *Q. Is it your understanding that IME Legal Reps was a mere continuation of IME Companions?*
>
> *The witness testifies"*
> *A. **Based on this video, it seems that way.***
> *(GP Tr. pg. 21  lns. 5-8)*

Most of the witness' responses are preceded with a statement such as "based on the video….".  the witness is only providing his interpretation of what he heard played or what he is read on an email presented to him. This deposition in  no way "confirmed" that the "plan" discussed on April 10, 2023 was ultimately implemented for IME Legal Reps.

Moreover, it is clear that Plaintiff's counsel inappropriately uses the name "IME LegalReps" when questioning the witness, when the Safa video not once refers to the name 'IME Legal Reps' as the company in question.  Mr. Warner, counsel for the Defendants', picked up on Plaintiff's counsel trickery and objected to Plaintiff counsels conduct by stating ,

> MR. WARNER: "Objection. She doesn't use
> the term "IME Legal Reps." That's totally
> improper." (*GP Tr. pg. 28 lns.4-6*)

From the beginning of the deposition Plaintiff's counsel used the name IME LegalReps in his line of questioning whereupon the witness merely answered the question even though he had no firsthand knowledge of any correlation between IME Legal Reps, IME companions and the Gelardis. Plaintiff's counsel asks the witness,

> *Q. Based on this video clip, is it your*
> *understanding that Eugene Liddie had no ownership*
> *interest in IME Legal Reps?*
> *The witness answers,*
> *A.   I do not know. (GP Tr. pg. 28 lns. 11-15)*

Plaintiff's claim that the plan discussed on April 10, 2023 was ultimately implemented for IME Legal Reps" is extremely misleading.  This witness could not confirm anything other than what anyone could have interpreted from watching the same video.

What Safa says on the video is clear, but what is not clear is whether Mr. Liddie was a part of this scheme.  Mr. Liddie states that what Safa said on that video was her plan – not his. Mr. Liddie states that he never agreed to any arrangement Safa or the Gelardi's, whether written

or oral; she never had his credit card; and they share no business interests together. Liddie further states that he believed the Gelardi's were desperate to sell their website because they were in deep financial troubles.

As to the Plaintiff's claim that "one participant in the video has provided a sworn declaration that everything discussed at the April 10, 2023 virtual meeting was for IME Legal Reps" is also misleading.  The Declaration of Jeremy Koenig states that "after the meeting Safa decided to use the name IME LegalReps instead of Plaintiff Advocates and that all work performed for Safa that was discussed at the April 10 2023 virtual meeting was for IME Legal Reps"

Here, we know that Giant Partners did in fact make the transition of the IME Companions website to the IME Legal Reps website.  Mr. Koenig's statement does not state that he knew firsthand that Eugene Liddie was going to be the front man of the company while Safa was the true owner. For all intents and purposes, Mr. Koenig may have thought that they were proceeding with Safa's plan, merely based upon the meeting with Safa.

No representative from Giant Partners testified or stated that they ever spoke with Eugene Liddie about this scheme. The statement that "all work performed for Safa discussed at the meeting" could mean that they did in fact create a new website for IME LegalReps.  The conditions surrounding the creation of the website for IME LegalReps can only be assumed based upon Safa's statements, not based upon any known contractual agreement between Safa and Liddie, or other evidence confirming this scheme.

In addition, the email submitted by Plaintiffs may show that Safa made comments to Giant Partners regarding the site transition, but it is only an assumption that because Safa communicated with Giant Partners in the emails that it was in furtherance of her scheme or that

she was the true owner of IME LegalReps. This is yet another assumption. The emails do not support a finding that Safa owns IME Legal Reps and is an active participant in IME lEgalReps. In fact, most, if not all, of the correspondence between Giant Partners and Liddie ceased after the site was up and running.  Giant Partners did not provide any marketing for the site under the Safa contract with Giant Partners.

As Eugene Liddie testified, he communicated via telephone with one of the representatives as to his vision for the site and once it was up and running he moved on to run his business.  There has not been one iota of proof to establish that Safa has anything to do with the operations, law firm acquisitions, profits or losses of IME LegalReps.  Whether Safa violated any of the court's orders by communicating with Giant Partners is unknown to Liddie, but there is no evidence to support a finding that Safa created IME Legal Reps and is the silent owner of it.

### THE COURT MUST DENY PLAINTIFF'S APPLICATION FOR  AN TRO AGAINST IME LEGAL REPS, LLC OR EUGENE LIDDIE BECAUSE IT WOULD BE IMPROPER AND UNWARRANTED

"A nonparty acts in active concert or participation if the nonparty aids and abets an enjoined party's violation of the injunction, which requires showing that the challenged action was taken for the benefit of, or to assist, a party subject to the decree in violating it." *Hanes v. James,* 76 F4th 103 (2d 2023)

For the above stated reasons, Plaintiffs have failed to show any active participation on the part of Eugene Liddie, IME Legal Reps for the benefit of the Defendants. Moreover, the Plaintiff must show that Liddie assisted the Defendants and/or Liddie acted with the Defendants for their benefit.  No facts here tend to support the same.  It is not reasonable to believe that Mr. Liddie is sacrificing his time and resources to benefit the Defendants, as if he has no other aspirations in his life. There has been no showing that Liddie was aware of the enjoined list and that IME

LegalReps is servicing any law firms on the enjoined list. In addition, there is no implication that Liddie, IME LegalReps and the Defendants share any profits or duties. There is flatly no legal support for Plaintiff's claims. Thus, the court should deny Plaintiff application for a TRO in this case.

## EUGENE LIDDIE AND/OR IME LEGAL REPS SHOULD NOT BE ENJOINED FROM CONDUCTING BUSINESS OR CONTACTING IME WATCHDOG'S CLIENTS

"A party seeking a TRO, like one seeking a preliminary injunction, must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted." *Free Country Ltd v. Drennen*, 235 F.supp 3d 559 (S.D.N.Y. 2016) citing to *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Colting* at 607 F.3d at 79

Here, the evidence presented is insufficient to support the finding that Mr. Liddie and Giant Partners are operating for the benefit of Safa Gelardi to the extent that Mr. Liddie's business should be enjoined or restricted from operating in any form. The merits of the case as it relates to Eugne Liddie and IME LegalReps, should be whether Safa Gelardi has any interest in IME Legal Reps and if Mr. Liddie is currently the front man for a company owned by Safa

Gelardi. It is ironic that the Plaintiffs contend the Defendants are so untruthful as to everything else, but now wants the court to believe everything Safa said on the video is 100% true.

Here, the evidence bears out that Safa Gelardi had a plan in her mind as to how she could still retain ownership over a company despite the court's order. Her intent and desires should not be the sole factor as to a determination as to Mr. Liddie and his business.

It can be argued that Safa had the passionate intention to make her plan happen but the evidence at this time fully supports the fact that Safa's plan did not materialize. There is just no likelihood of success at this time as to any active participation in IME LegalReps by the Gelardi's.

An extraordinary measure of enjoining a non-party's business based upon theoretical suppositions and past actions is unwarranted here.

The likelihood of success on the merits of the instant case between the actual parties has no bearing on whether Safa has any ownership in IME LegalReps. In addition, as to the likelihood of success as to proving that Safa is operating IME LegalReps in defiance of the court's injunction has also not been shown.

In fact, it has not been made clear as to whether the law firms that IME LegalReps is servicing are on even part of the Plaintiff's enjoin list. Mr. Liddie never received a copy of this list from Safa, Giant partners or even the Court. There is no evidence that any of those firms were serviced even by IME Legal Reps. The Plaintiff's case is insufficient.

### THE PLAINTIFFS WILL SUFFER NO HARM IF A TRO IS NOT GRANTED

Here, the Plaintiffs have not established that IME LegalReps has utilized any trade secret of the Plaintiff. Plaintiff cannot allege any injury to it for the past year IME LegalReps has been in existence. IME LegalReps has been operating by way of Liddie's sweat equity and drive, not

the use of any trade secrets of the Plaintiff. Moreover, it is unclear as to what trade secrets the Plaintiffs are alleging is being utilized by IME LegalReps.

Plaintiff claims that, "Defendants, Liddie and IMELR have unquestionably stolen IME WatchDog's trade secrets containing its business plan, customers' contact information and the details concerning IME WatchDog's customers' details, pricing, and preferences which Defendants, Liddie and IMELR have been and continue to utilize to solicit IME WatchDog's customers and have repeatedly violated Court Orders related to same. This is evident from a review of the February 6, 2023 email in which Defendants sent GP Plaintiff's customer list despite the Orders requiring Defendants to turn those trade secrets over to Plaintiff and to cease using them" (*Plaintiff's Memorandum of law pg. 9*)

But no proof has been offered that any such "secrets' are being utilized by IME LegalReps.

In fact, the witness for Giant Partners who was deposed herein debunked the theory that the customer list of IME companions was ever transferred over to IME LegalReps.

The witness testified that based upon his knowledge of the transfer in this case, the "Hubspot", which " is the CRM, customer retention"….which… "stores clients information …. was not transferred to IME LegalReps because IME LegalReps was going to be completely separate and, in the witness', humble opinion, "nothing would be transferred and IME LegalReps was to be a "brand new entity". (*GP Tr. 26- pg. 22 ln. 2*)

Then counsel attempts to have the witness change his answer by having him listen to what Safa says on the video, then asking the witness,

> *Q. Based on this clip, is it your understanding that the back end information was also transferred over from Companions to the new website*

And the witness firmly replies

### A. "NO" (GP Tr. pg. 27 ln. 3)

No evidence has been presented that the Liddie had ever seen Plaintiff's customer list or IME Companions Customer list or that he had any idea of the Plaintiff's "business plan".  In fact, any lay person could visit the IME Watchdog website and learn all it needs to know about how to operate the very same Watchdog business.  It should be questioned as to whether any trade secrets even exist as it relates to this type of company.  As Mr. Liddie testified in one of his appearances, this is not rocket science.

"[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." *See North Atlantic Instruments, Inc. v. Haber*, 188 F3d 38 (2d Cir. 1999)

In this case, IME Watchdog's plan, theory and how it operates can be gleamed from its website.  This industry is a growing industry. The Plaintiff's have not shown that Mr. Liddie or IME LegalReps benefited from any formula, pattern, device or compilation of information that gave Plaintiff an opportunity to obtain an advantage over competitors who do not know or use it.

Plaintiff's request is a stretch that does not warrant enjoining Mr. Liddie's company in any way.

Moreover, "In determining whether information constitutes a trade secret, New York courts have considered the following factors: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount

of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Id.*

Anyone could have duplicated the business of IME Watchdog as their business module can be easily gleamed from its website.  The Plaintiff has not argued any measures that may have taken to guard the same or their former employees. In fact, it was raised by the Defendants' counsel that the part of the Plaintiff's customer list and sample reports were readily available and at some point broadcasted on their website.  (*See ECF No. 224 and attachments*) IME Legal Reps should not be shut down because of the Plaintiff's lack of securing their information from public websites and its employees

## THE HARM TO MR. LIDDIE AND HIS BUSINESS WILL BE IMMENSE AND UNJUST UNDER THE CIRCUMSTANCES.

Here the balance of equities tips in the favor of Mr. Lidie because an injunction against his business or court notice or restriction on his business and/or website would cripple his ability to grow his business of which he has an indelible right to do. In addition, Mr. Liddie will suffer undue harm if an injunction is placed limiting his business because he will be unable to freely pitch his idea and business module to new law firms which will in turn bring him the profits that his hard work should net.

## THE PUBLIC INTEREST WOULD BE DISSERVED BY THE ISSUANCE OF A TRO IN THIS MATTER

If the court were to issue a TRO against the non-party IME LegalReps, the public interest would be disserved because it would deprive New York law firms of the option of free choice in business.  The injunction will send the message to the public that your mere association with an accused party can make you subject to the destruction of your business no matter the level of proof. Here, it is imperative to allow the chain of free commerce and healthy competition

between businesses.  The Plaintiff is attempting to use this court as a sword to shut down any competition it can, and the court should not allow this strategy to succeed.

## MR. LIDDIE DID NOT COMMIT PERJURY AND THUS CAN NOT BE CHARGED WITH SAID CRIME

"Perjury requires that a witness believe that the testimony he gives is false" *See U.S. v. Cicalese*, (868 F.Supp.2d (E.D.N.Y. 2012); *Citing to, United States v. Lighte*, 782 F.2d 367, 372 (2d Cir.1986). Here, Mr. Liddie did not give any false testimony to the court, nor has it been properly alleged that he has, thus Mr. Liddie cannot be charged with perjury.

## CONCLUSION

Based on the foregoing, non-party IME LegalReps and Eugene Liddie Respectfully requests that Plaintiff's application be denied in its entirety, together with such other and further relief as to this Court may seem just and proper.

Dated: Rosedale, New York
      June 25, 2024

                              Respectfully Submitted,

                              _____/s/_____

                              KAREN CHARRINGTON, ESQ.
                              THE CHARRINGTON FIRM, P.C.
                              Attorneys for non-party Eugene Liddie and IME LegalReps
                              One Cross Island Plaza, Suite 229
                              Rosedale, New York 11422
                              718-528-4422 (office)
                              718-528-4420 (facsimile)