UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X   Case No. :1-22-cv-1032(PKC)(JRC)
IME WATCHDOG, INC.,-

      -against-  **DECLARATION OF**
                                                                                                      **EUGENE LIDDIE**

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

               Defendants.
------------------------------------------------------------------ X

      EUGENE LIDDIE, hereby declares and verifies the truth of the following, under penalty of perjury under the laws of the United States of America, pursuant to Title 28, United States Code, Section 1746:

      1. I am a non-party in the above-captioned matter. I submit this Declaration in opposition to the Plaintiff's application seeking a Temporary Restraining Order enjoining my ability to operate my business, IME Legal Reps, LLC. to the fullest and an Order finding that I committed perjury, and other requested relief by the Plaintiff.

      2. In analyzing the evidence presented by the Plaintiffs I would first like to address the April 10, 2023, video where Safa Gelardi ("Safa") is seen and heard stating that she is creating a company where I would be the "front man" for her business. When I watched the video, I was in shock because I never agreed with Safa to do any of this.

      3. On the day I purchased her website, Safa did mention that she wanted to create some type of partnership with me, not to the extent of which she speaks of in the video, I rejected any such idea and informed Safa that I would only move forward with my plan to run my own company. On that day, I purchased my domain name for IME Legal Rep using my

credit card. Contrary to what Safa said on the video, she did not have any of my credit cards in her possession and never has.

4. I purchased the domain for my company so that Giant Partners could work on developing the website for my company, IME Legal Reps. I recalled that it seemed to be an urgent situation that needed to be done that day. It was my understanding that we needed to immediately start the web transfer process due to Safa's legal troubles. I signed the contract for the website and paid for it. I then went on to direct Giant partners as to the vision I had for the website.

5. When they transferred the site, it was supposed to be an empty slate so that I could plug in my ideas. I was speaking with Estefania at Giant Partners about my ideas for the site, as you can see from Estefania's response from the June 6, 2023, 4:33 and 4:38 pm email. (within *ECF No. 321*) After they migrated to the site, I did not use Giant Partners again.

6. Plaintiff's memorandum argues that because I purchased my domain name on the same day as the Safa video and then emailed about my company, that indicates that Safa was referring to my company and her plan on the video. That is not true. Safa may have wanted that to be the case, but I was not the person for that type of partnership.

7. In fact, I don't see what I would get out of an arrangement like that when I am doing all of the grunt work for the business. I am putting in the sweat equity to build my business so I would have no incentive to be a 10% owner of Safa's company. There is nothing that the Gelardis can do for me to build my company. There is no need for me to have any association with the Gelardis. I drive my own car to law firms to meet new prospective clients and I sacrifice my time and days off to build this business. I came up with the name IME Legal Reps and pursued my goal of opening this type of business as the 100% owner.

2

8. It has also been implied by the Plaintiff that because I am a NYC police officer, I have no true desire or wherewithal to run my business. As I testified previously, I had an interest in starting a business such as this for some time prior to opening my business.

9. I am also deeply involved with a company called AMWAY since 2008. AMWAY is an entrepreneurial association where I am a Sapphire level member. A Sapphire member generates over $900,000.00 in one year for the company. I have accomplished significant strides in this organization by generating a high volume of sales for AMWAY. I take pride in every business I am involved in. I was even on the cover of the AMWAY magazine in 2018 after receiving a leadership award in sales. (*See attached as Ex. "A"*) I am not desperate for passive income from the Gelardis. I have no need whatsoever to the "face" for a company truly owned by the Defendants. There is nothing that the Gelardis could do for me that would be worth my reputation.

10. On the video, Safa repeatedly talks about her scheme using a company called "Plaintiff's Advocates" which was and still is her company. After I purchased her website for the use of my own business, Safa may have changed course to open her business in Texas. "Plaintiff Advocates" still relates to the Gelardi's current company "The IME Company" in Texas because the domain, www.plaintiffadvocates.com redirects to their site for 'The IME Company' – their new company. I have nothing to do with that company.

*Giant Partners' deposition*:

11. I also read the deposition transcript of Giant Partners. The witness who testified only testified as to what he listened to on the video and emails shown to him. He had no personal knowledge of the website transfer between the Gelardis and me. The witness is merely drawing conclusions to what he was presented with at the deposition, but he has no other

background information to support what he is saying.

*The Bergman firm:*

12. My memory regarding the Bergman firm was incorrect when I testified on May 29, 2024. My May 4, 2023, testimony regarding the Bergman firm was correct as it was closer in time to the acquisition of that firm. I misspoke when I testified that this firm came to me. I was the one who reached out to the Bergman firm and Mr. Bergman. I do recall calling the main number to pitch my business when I was told that Mr. Bergman wanted to speak with me personally. After speaking with him, he hired my company to observe their IMEs.

13. This is precisely how I have gotten all of my clients. I will cold call their office and set up a meeting or call with the person who has the authority to hire and contract with businesses.

*Plaintiff's trade secrets:*

14. I have never had access to any of the Plaintiff's trade secrets or customer database in any form. In fact, to this day, I don't exactly know what the Plaintiff's "trade secrets" are. The concept of sending representatives with clients to an IME is a growing trend and does not require many "secrets".

15. If the customer list was provided to Giant Partners during the website transition, I was not aware of that. Giant Partners was the developer of the website and would have dealt with such information and/or deleted it. I did not need to access that information because I was not developing the site.

*Giant Partner emails:*

16. I have reviewed the emails presented by the Plaintiffs. The emails do not indicate that Safa and I were working together with respect to my business operations. Safa was added

4

on to the emails because it is likely that Giant Partners still believed that Safa's involvement was related to her recorded communications with them on April 10, 20243. They possibly were not aware that I was not a participant in her scheme.

17. After reviewing the emails, I do not see a "mountain of emails" where I communicated with Giant Partners. I do see a mountain of emails where Giant Partners was trying to reach out to me for marketing purposes and there was no response to their emails. I could not afford to pay Giant partners to market my site and I did not use them for marketing purposes. Once they got my company's website up and running, our relationship ended. In fact, my site was mysteriously hacked and had to be taken down and I needed to rebuild my entire site.

18. As seen in the email supplied by Plaintiff, on June 26, 2023, I formally advised them that I was not moving forward with marketing. (*ECF No. 321*.) These emails do not amount to any dealings with Safa other than the website transfer and sale.

19. I only tried to reach out to Giant Partners in 2024 to help me with my site when it was hacked but they were only interested in billing an egregious rate, so I went in a different direction with my current site.

*The firms serviced by IME Legal Reps:*

20. Currently my company services, or have serviced, the following firms:

Rosenbaum & Rosenbaum; Ginarte, Gonzalez, Winograd LLP; The Rizzuto Law Firm; Bergman, Bergman; Fields & Lamonoffs LLP; Zemsky and Salomon, P.C.; Chernyy and Associates; Martin Ginsberg Firm; Kohan Law; The Law Office of Marshall Inwood; The Law Office Glenys M Rosario Esq.; G Wesley Simpson, P.C. and Jacobson Law.

21. Prior to acquiring these firms, I had no idea if they were on an enjoined list. My business should not be enjoined from seeking out firms in New York to service that I find on my

5

own. I am sure that every New York law firm on the Plaintiff's list can be found via a google search. I literally google 'personal injury law firms in New York' and make a list of firms I'd like to contact. I have no intention of interfering with anyone's business relationships, but New York law firms should have options to choose their IME representative company. I should not be prohibited from contacting any law firm in New York. It has been about a year in business, and I have developed my own style in pitching my business to law firms.

22. I have no objection to a prohibition from "acting with" the Defendants in this action because I do not work with them in any capacity. I don't share any profits, money or business interests with them. I am not in possession of any of the Plaintiff's trade secrets or confidential propriety information, customer databases, records, materials, whether digital or in any other form.

23. For the reasons above, I object to placing any court or public notices on my business' website and/or any forensic analysis regarding my business and records and intrusive and a breach of confidentiality of my business records.

*Perjury claim:*

24. I in no way perjured myself in this case. I was transparent and answered every question truthfully. Safa's initial intention may have been one thing but what truly occurred is another. The Gelardis did not and do not play an active and primary role in my company.

25. As to Plaintiff's implication that Defendant's counsel wrote my June 13, 2024 letter is false. I worked directly with my attorney the night she filed that letter. We went back and forth until the letter was acceptable for her to file.

26. I respectfully request that the Court deny the Plaintiff's application for a TRO, a contempt and or perjury finding, and also deny any other requested relief by the Plaintiff.

6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2024.

                                                                               Eugene Liddie