UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IME WATCHDOG, INC.,

                          **Case No.: 1:22-cv-2032 (PKC) (JRC)**

                    Plaintiff,

         -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                    Defendants.
-----------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S ORDER
TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER PENDING THE
<u>CONTINUED HEARING AND A PRELIMINARY INJUNCTION</u>**


**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
emanuel@sagelegal.nyc

**MILMAN LABUDA LAW GROUP PLLC**
Jamie Falsen Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

**PRELIMINARY STATEMENT**

As the latest accomplice of Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants"), Eugene Liddie ("Liddie"), says "this is not rocket science."  Indeed, one need not be a rocket scientist to conclude that Liddie and IME Legal Reps ("IMELR") are a mere continuation of and have assisted Defendants in violating this Court's Orders.

 After this Court previously enjoined Defendants, they were caught red handed trying to use their relative, Fari Gutierrez ("Gutierrez"), as their frontman to continue to operate Companions through a new entity, Client Exam Services LLC ("CES") in violation of this Court's prior Order.  Plaintiff just received confirmation today that the domain name for another entity, Accompanied Exam Services, an entity about which Safa testified on May 29, 2024 she knew nothing about despite her referring Subin & Associates to Accompanied Exam Services, was, in fact, created by Safa under her brother's name.

Disturbingly (although all of Defendants' conduct and the conduct of their accomplices is disturbing), Defendants refuse to quit violating this Court's Orders and have conspired with a new accomplice, Liddie.  Defendants are using Liddie and IMELR to step into the shoes of Gutierrez and CES as the frontman for Companions while Defendants maintain a majority financial stake and call the shots in the background, with total disregard for this Court's Orders. Defendants continue to think they can outsmart Plaintiff and this Honorable Court, but they keep getting caught.

The overwhelming evidence, which Liddie and IMLER have failed to and cannot overcome, establishes the need for immediate injunctive relief and the issuance of the most severe sanctions possible against Defendants, Liddie and IMLER.

**ARGUMENT**

This Court previously found that Gutierrez and CES are a continuation of Companions. IME Watchdog, Inc. v. Gelardi, 2023 U.S. Dist. LEXIS 189054 (E.D.N.Y. Oct. 20, 2023). After the issuance of an Order enjoining Defendants, Gutierrez and CES, Defendants engaged in the same scheme as they did with Gutierrez and CES: Defendants utilized Liddie as the front-man to continue to operate Defendants' business. The overwhelming direct and circumstantial evidence establishes same. It does not take a rocket scientist to figure out that Liddie replaced Gutierrez in this scheme to violate this Court's Orders.

At the March 27, 2023 hearing Defendants knew that their scheme to use Gutierrez was uncovered. They quickly devised a new way to operate their scheme. On April 10, 2023, merely two (2) weeks after that hearing, Defendants attended a virtual meeting with Giant Partners ("GP") during which meeting it was made clear by Defendants that Defendants would create a new corporate entity by using Liddie as the face of the company – as Defendants did with Gutierrez until they got caught – to continue to violate this Court's Orders.

Liddie conveniently submits a self-serving declaration simply denying any involvement in Defendants' scheme. On one side of his mouth, Liddie argues that, because Safa has repeatedly lied, it is conceivable that she was lying to GP about this scheme to use Liddie. This argument is absurd especially given that Defendants previously utilized Gutierrez for the same purpose. Liddie has not submitted a sworn declaration from Safa stating she was lying to GP because she was not lying to GP and she actually did exactly what she told GP she wanted to do.

Notably, this is at least the third time Defendants devised such a scheme, with the Court already concluding that the scheme involving Gutierrez and CES actually happened. With regard to the other entity created at Defendants' behest to attempt to end run the Court's Orders, today,

Plaintiff received documents from GoDaddy.com, LLC ("Go Daddy") in response to a subpoena which confirms Defendants' involvement in the creation of Accompanied Exam Services on March 13, 2023, merely three days after the Court issued a TRO in this case. Indeed, the domain "accompaniedexams.com" was created on March 13, 2023 in Texas (where Safa and Vito now reside) under the name Yousef Abdulrahman, Safa's brother. See Felsen Decl. Ex A. This was another attempt, as with Gutierrez, by Defendants to use family members to evade this Court's Orders.

At the May 29, 2024 hearing, Safa further perjured herself when she testified that she is not familiar with Accompanied Exam Services and she has no relationship to it, and that she merely heard of it and that was the reason why she referred it to Subin & Associates. (ECF Docket Entry 355-1 at 64:3-69:7). While Safa's testimony when questioned by the Court about Accompanied Exam Services appeared to raise concerns with the Court about her truthfulness, Go Daddy's subpoena response now confirms that Safa lied to this Court, yet again.

On the other side of his mouth Liddie concedes that Safa did, in fact, tell Liddie that she wanted to create a partnership with him. However, Liddie denies agreeing to go into business with Defendants because Liddie "is not the person for that type of partnership." However, Liddie had no experience in the IME industry, purchased Defendants' website because he had no experience in the industry, and has a full-time job with the NYPD, and, apparently, another job with Amway. Therefore, Liddie was the perfect person for a partnership with Defendants.

Nevertheless, Liddie declares that he purchased a domain name for IMELR on April 10, 2023 – the same day as the virtual meeting with GP – and that it was an "urgent situation that needed to be done that day", which confirms the expediency that Safa expressed to GP during the virtual meeting. If Liddie was starting his own business without Safa's involvement there was no

need for expediency.

The Court should not accept Liddie's self-serving general denials where he provides no supporting documentary evidence, especially based on (i) his lie at the May 29, 2024 hearing regarding the Bergman firm (which he now concedes); (ii) his lie at the May 4, 2023 hearing that his interactions with GP were solely by phone; (iii) his lie at the May 29, 2024 hearing about the circumstances surrounding his name being misspelled; and (iv) the overwhelming evidence establishing Liddie's relationship with Defendants, including the contents of the April 10, 2023 virtual meeting with GP wherein Safa explained her plan and her statement that she was going to "play the criminal's game" and do what she needed to, and that she was merely transferring her business and customers over to Liddie but she would remain the operator of the business behind the scenes to evade this Court's Orders.

Liddie argues that Sheldon Katz's ("Katz") testimony was not based on his personal knowledge.  Liddie is correct since Katz appeared at the deposition as GP's 30(b)(6) witness, and not as a witness in his personal capacity.  As a 30(b)(6) designee, his testimony was based on GP's knowledge, not Katz's personal knowledge.  See Fed. R. Civ. Proc. 30(b)(6).  Although Katz was unable to testify about certain topics, after the 30(b)(6) deposition, Jeremy Koening ("Koenig"), a GP employee who (unlike Katz) was present for the April 10, 2023 virtual meeting with Defendants, provided a declaration concerning information about which Katz was unable to testify; namely, that following the April 10, 2023 meeting, Safa decided to use the name IMELR instead of the name Plaintiff Advocates that she referred to during the April 10, 2023 virtual meeting.  See ECF Docket Entry 355-8.  Liddie has submitted no evidence from Safa rebutting the contents of Koenig's declaration.

Liddie argues that Koenig's declaration does not state that Liddie would be the front man

for Safa.  However, the declaration states that Safa decided to use the name IMELR instead of Plaintiff Advocates and that "all the work that was discussed at the April 10, 2023 virtual meeting was for IME Legal Reps."  Id.  This averment, made by a non-party with no interest in this litigation, establishes that the entirety of the plan discussed at the April 10, 2023 meeting – including Liddie being the front-man to evade the Court's Orders enjoining Defendants – went into action with IMELR, debunking Liddie's self-serving denial that Safa has any involvement with IMLER.

Liddie and IMELR argue that Safa's intent and desires should not be the sole factor as to a determination as to Liddie and IMELR and that Safa's plan did not materialize.  This sounds eerily similar to Defendants' argument that they should not be held in contempt because their plan to bug Carlos Roa's car did not materialize because Mr. Roa found the tracking device before it could be put to use.  In any event, Defendants' plan to have Liddie as the face of IMELR to attempt to shield Defendants from violating the Court's Orders did, in fact, materialize, as confirmed by Koenig.

Liddie recycles Defendants' previous argument – that Plaintiff has no trade secrets – but this Court has previously rejected this argument making it law of the case.  See IME Watchdog, Inc. v. Gelardi, No. 22-CIV.-1032 (PKC) (JRC), 2023 WL 6958855, at *8 (E.D.N.Y. Oct. 20, 2023) ("the Court finds that Plaintiff's customer lists constitute trade secrets").

Liddie denies receiving Plaintiff's customer list.  However, this Court provided same to him (Kataev Decl. Exh. A at. at 127:16-129:6) and Liddie's purported website developer, GP, was in possession of the customer list.  Moreover, information about Plaintiff's customers was on the backend of IMELR's website.

Despite their argument to the contrary, Liddie and IMLER are, in fact, serving customers on the enjoined customer list.  Indeed, five (5) of the twelve (12) customers Liddie identified in

his declaration are on the enjoined customer list.  Liddie has not produced any documentary evidence identifying any of his customers.  He expects Plaintiff and the Court to accept his word that these are his only customers despite his repeated lies.

Liddie does not address the fact that, in addition to many of IMELR's customers previously being Plaintiff's customers which were stolen by Defendants, IMELR's observers are the same as Companion's observers.  Similarly, Liddie does not address the fact that IMELR's website is the same as Companion's website.  If the IME business is not "rocket science", as Liddie testified, there would be no need for Liddie to (i) have the same customers as Companions (who were stolen by Companions from Plaintiff); (ii) use Companion's observers; (iii) use the same website as Companions; and (iv) discuss purchasing a franchise from Companions.  Given the ease, according to Liddie, with which anyone can operate an IME business, there should not have been a need for Liddie to purchase Companion's website, use Companions' observers, and serve Companions' customers.

Liddie refers generically to his vision of the IME business and his vision for IMELR's website, but he has not submitted any evidence describing his vision or that anything involving IMELR relates to Liddie's own vision, rather than simply operating in the same manner as Companions.  In fact, the emails produced by GP establish that Safa, and not Liddie, was involved in the creation of the IMELR website.

Liddie denies that the emails produced by GP establish that he was working with Defendants.  Critically, Liddie does not address Safa's communications with GP on behalf of IMELR under the guise that she was Liddie.  Now that it has been confirmed through the GP virtual meeting that it is Safa who spells Liddie's name "Liddy", Liddie has, apparently, thrown in the towel with regard to the misspelling of his name, confirming the obvious – that he perjured

himself when he testified on May 29, 2024 that the spell check function caused his name to be misspelled.

Lastly, Liddie provides no explanation as to why he produced no communications with Defendants in response to the subpoena seeking

> all communications, including but not limited to, text messages and emails, between you on the one hand, Safa Gelardi, and/or Jeff Beiben, Safa Gelardi, and/or Vito Gelardi on the other hand, concerning anything related to IMEs and the operation of any IME business between March 10, 2023 and the present.

See ECF Docket Entry 355-7.  The only logical conclusion is that Liddie destroyed this evidence; indeed, communications between Liddie and his observer, Beiben, and between Liddie and Safa, certainly exist as GP produced emails on which Safa and Liddie are together included.  This, along with Liddie's claim that IMELR's website was recently hacked, cements the need for a forensic examination of Liddie's and IMELR's digital devices (as well as Defendants' devices).

## **CONCLUSION**

For these reasons and the reasons set forth in Plaintiff's initial moving papers, Plaintiff, respectfully requests that this Court grant its Order to Show Cause for Preliminary Injunction and Temporary Restraining Order and issue further relief as is just, equitable, and proper.

Dated:  Lake Success, New York
      June 26, 2024

    Respectfully submitted,

    **MILMAN LABUDA LAW GROUP PLLC**

    By:  _/s/Jamie S. Felsen, Esq._
    Jamie S. Felsen, Esq.
    3000 Marcus Avenue, Suite 3W8
    Lake Success, NY 11042-1073
    (516) 328-8899 (office)
    (516) 303-1391 (direct dial)
    (516) 328-0082 (facsimile)
    jamiefelsen@mllaborlaw.com

    _Attorneys for Plaintiff_

7

*IME WatchDog, Inc.*

Dated:  Jamaica, New York
        June 26, 2024

**SAGE LEGAL LLC**

By:  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Additional Attorneys for Plaintiff*
*IME WatchDog, Inc.*

8