UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IME WATCHDOG, INC.,

                      Plaintiff,

        -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                      Defendants.
---------------------------------------------------------------X
SAFA GELARDI and IME COMPANIONS, LLC,

              Third-Party Plaintiffs,

        -against-

CARLOS ROA,

             Third-Party Defendant.
---------------------------------------------------------------X
CARLOS ROA,

          Third-Party Counter-Claimant,

        -against-

SAFA ABUDLRAHIM GELARDI, VITO GELARDI,
and IME COMPANIONS, LLC,

           Third-Party Counter-Defendants.
---------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC) (JRC)

**PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO
DEFENDANTS' GREGORY
ELEFTERAKIS, ROMAN POLLAK, AND
ANTHONY BRIDDA'S  MOTION TO
<u>DISMISS THE COMPLAINT</u>**

**MILMAN LABUDA LAW GROUP PLLC**
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL STANDARD ...................................................................................................... 2

ARGUMENT ................................................................................................................. 3

      I.     **Plaintiff has Properly Pled a Claim under the Defend Trade Secrets Act & for Misappropriation** ……………………………………………………… 3

      II.    **Plaintiff has Properly Pled its Claim for Unfair Competition** ..................... 8

      III.   **Plaintiff has Properly Pled its Claim for Tortious Interference** .................. 9

      IV.   **Plaintiff has Properly Pled its Claim for Unjust Enrichment** ..................... 10

      V.    **Plaintiff has Properly Pled its Claim for Civil Conspiracy** ......................... 11

      VI.   **Plaintiff has Properly Pled its Claim for Conversion** ................................. 11

      VII.  **Plaintiff's Second Amended Complaint Should Not be Stricken** ............... 12

      VIII. **Leave to Replead Must Be Granted in the Event of Dismissal** ................. 13

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

16 Casa Duse, LLC v. Merkin,
    791 F.3d 247 (2d Cir. 2015)....................................................................................................10

Art and Cook, Inc. v. Haber,
    416 F.Supp.3d 191 (E.D.N.Y., 2017) ........................................................................................6

Ariz. Premium Fin. Co. v. Emp'rs Ins. of Wausau,
    586 Fed. Appx. 713 (2d Cir. 2014)............................................................................................4

Arizona v. California,
    460 U.S. 605 (1983)...................................................................................................................4

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...................................................................................................................2

B & M Linen, Corp. v. Kannegiesser, USA, Corp.,
    679 F. Supp. 2d 474 (S.D.N.Y. 2010).......................................................................................9

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................................................2

Broker Genius, Inc. v. Zalta,
    280 F.Supp.3d 495 (S.D.N.Y., 2017).........................................................................................6

Carvel Corp. v. Noonan,
    3 N.Y.3d 182 (2004) ................................................................................................................10

Chadha v. Chadha,
    2020 WL 1031385 (E.D.N.Y., 2020).........................................................................................8

Chan Ah Wah v. HSBC N. Am. Holdings Inc.,
    No. 15-CIV.-8974, 2019 WL 859042 (S.D.N.Y. Feb. 22, 2019)...............................................4

Colavito v. New York Organ Donor Network, Inc.,
    8 N.Y.3d 43 (2006) .................................................................................................................11

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991)......................................................................................................13

Cruz v. TD Bank, N.A.,
    742 F.3d 520 (2d Cir. 2013).....................................................................................................13

Dairy, LLC v. Milk Movement, Inc.,
    2022 WL 584003 (E.D. Cal. 2022)............................................................................................8

Elliot-Leach v. New York City Dep't of Educ.,
    201 F. Supp. 3d 238 (E.D.N.Y. 2016) ............................................................................................13

Elliot-Leach v. New York City Dep't of Educ.,
    710 Fed. Appx. 449 (2d Cir. 2017)................................................................................................13

Elsevier Inc. v. Doctor Evidence, LLC,
    2018 WL 557906 (S.D.N.Y., 2018).................................................................................................7

Employers Ins. of Wausau v. Musick, Peeler, & Garrett,
    871 F. Supp. 381 (S.D. Cal. 1994)................................................................................................12

Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,
    402 F. Supp. 636 (S.D.N.Y. 1975)...............................................................................................12

Goldman v. Belden,
    754 F.2d 1059 (2d Cir. 1985)..........................................................................................................2

Hill v. Cray Research, Inc.,
    864 F. Supp. 1070 (D.N.M. 1991) ................................................................................................12

IQ Dental Supply, Inc. v. Henry Schein, Inc.,
    924 F.3d 57 (2d Cir. 2019)........................................................................................................9, 10

Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,
    58 F.3d 27 (2d Cir. 1995)................................................................................................................8

Katz v. Travelers,
    241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017) ....................................................................................9

Katz v. Travelers,
    No. 16-CIV.-4389 (ADS) (SIL), 2017 WL 4180012, 2017 U.S. Dist. LEXIS 153275 (E.D.N.Y. Sept.
    20, 2017) ..........................................................................................................................................9

Kirch v. Liberty Media Corp.,
    449 F.3d 388 (2d Cir.2006)............................................................................................................9

Kraus USA, Inc. v. Magarik,
    No. 17-CV-6541, 2020 WL 2415670 (S.D.N.Y. May 12, 2020).................................................3, 5

Levin v. Kitsis,
    82 A.D.3d 1051 (2d Dept 2011) ...................................................................................................11

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,
    797 F.3d 160 (2d Cir. 2015)..........................................................................................................14

M&A Metals, Inc. v. Fina,
    No. 21-CIV.-5570 (PKC) (PK), 2023 WL 2734794 (E.D.N.Y. Mar. 31, 2023)...............................5

Mazzaro de Abreu v. Bank of Am. Corp.,
    525 F. Supp. 2d 381 (S.D.N.Y. 2007)..........................................................................................10

McCarthy v. Dun & Bradstreet Corp.,
    482 F.3d 184 (2d Cir. 2007).....................................................................................................2

McKenzie-Morris v. V.P. Records Retail Outlet, Inc.,
    1:22-CIV.-1138 (GHW), 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022)............................14

Nault's Auto. Sales v. Am. Honda Motor Co.,
    148 F.R.D. 25, 30 (D.N.H. 1993) .........................................................................................12

Popat v. Levy,
    328 F. Supp. 3d 106 (W.D.N.Y. 2018)...................................................................................9

Ragbir v. Lynch,
    640 Fed. Appx. 105 (2d Cir. 2016).........................................................................................4

Rezzonico v. H & R Block, Inc.,
    182 F.3d 144 (2d Cir. 1999)...................................................................................................4

State of New York v. Seventh Regiment Fund,
    98 N.Y.2d 249 (2002) ..........................................................................................................11

The Wilderness Soc'y v. Kane County, Utah,
    581 F.3d 1198 (10th Cir. 2009) ............................................................................................12

Vacold LLC v. Cerami,
    No. 00-CIV.-4024 (AGS), 2002 WL 193157 (S.D.N.Y. Feb. 6, 2002)................................13

Vengalattore v. Cornell Univ.,
    36 F.4th 87 (2d Cir. 2022) .....................................................................................................2

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,
    956 F.2d 1245 (2d Cir. 1992).................................................................................................4

Weitzman v. Stein,
    908 F. Supp. 187 (S.D.N.Y. 1995).........................................................................................4

Ysais v. N.M. Judicial Standard Comm'n,
    616 F. Supp. 2d 1176 (D.N.M. 2009) ..................................................................................12

Zirvi v. Flatley,
    433 F. Supp. 3d 448, 464 (S.D.N.Y. 2020), aff'd, 838 Fed. Appx 582 (2d Cir. 2020) .......3

## Rules

18 U.S.C. § 1836.........................................................................................................................3, 5

Fed. R. Civ. P. 15...........................................................................................................................13

Fed. R. Civ. P 12 ........................................................................................................................1, 2

**PRELIMINARY STATEMENT**

Plaintiff IME WatchDog, Inc.'s (hereinafter "Plaintiff" or "IME WatchDog") Second Amended Complaint alleges that Defendants Gregory Elefterakis ("Elefterakis"), Roman Pollak ("Pollak"), and Anthony Bridda ("Bridda") (Elefterakis, Pollak, and Bridda collectively hereinafter the "Former Owner Defendants") knowingly engaged in the same conduct as Defendant Safa Abdulrahman Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Companions Defendants").  Notwithstanding, the Former Owner Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") to dismiss the causes of action against them, and also move under Rule 12(f) to strike what they refer to as "scandalous" allegations against them.  Their motion must be denied in its entirety.

The Former Owner Defendants argue that they were merely investors in order to distance themselves from the Companion Defendants, but the allegations in the complaint – which must be accepted as true – do not permit this argument to be considered at this stage of the litigation.

The Former Owner Defendants also argue that the detailed 26-page, 166-paragraph complaint does not sufficiently set forth that they participated in any wrongful conduct despite Rule 8's simple requirement that a pleading must contain a short and plan statement of the claim showing that the pleader is entitled to relief, which has been met with respect to the Companions Defendants at least twice as this Court has found Plaintiff's claims to have a likelihood of success on the merits.  They also argue, ineffectively, that the allegations in the complaint are conclusory.

The Former Owner Defendants' motion to strike must also be denied.  There is nothing redundant, immaterial, impertinent, or scandalous in the pleadings warranting such relief.  The Former Owner Defendants' reliance on the hearing record similarly provides no basis for relief.

The March 27, 2023 hearing concerned Plaintiff's motion for contempt against the Companion Defendants, and was not focused on the Former Owner Defendants, except to provide facts establishing that virtually every single customer the Defendants served was sourced from Plaintiff by improper means, and to challenge the Companions Defendants' assertions that Elefterakis was a legitimate source of customers.  The evidence adduced at the hearing therefore does not warrant the striking of the allegations in the complaint.

Accordingly, Defendants' motion must be denied in its entirety.

**LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The plausibility standard under Rule 12(b)(6) requires "more than a sheer possibility that a defendant has acted unlawfully," and determining whether a complaint meets this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022).

**ARGUMENT**

I.     **Plaintiff has Properly Pled a Claim under the Defend Trade Secrets Act & for Misappropriation**

The Defend Trade Secrets Act ("DTSA") creates a private right of action for plaintiffs to bring claims for the misappropriation of trade secrets in federal court. See 18 U.S.C. § 1836(b).

To prevail on a claim under the DTSA, "a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, *knew or had reason to know that the trade secret was acquired through improper means*, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." See Kraus USA, Inc. v. Magarik, No. 17-CV-6541, 2020 WL 2415670, at *4 (S.D.N.Y. May 12, 2020); accord Zirvi v. Flatley, 433 F. Supp. 3d 448, 464 (S.D.N.Y. 2020), aff'd, 838 Fed. Appx 582 (2d Cir. 2020).

Defendants first argue that the complaint fails to identify a trade secret, that Plaintiff's customer list is not protected unless it contains additional secret information, and that Plaintiff does not allege how it took reasonable measures to keep the trade secrets safe.  All of these arguments are meritless.

This Court has already determined that there is a likelihood of success on the merits as to Plaintiff's DTSA and misappropriation claims.  See ECF Docket Entry 46-1 at 153:18-25, 154:16-155:3, 155:14-156:21, 163:18-164:2; see also ECF Docket Entry 197-5 at 10:11-17, 30:14-21 ("there was this constant exchange of information and communication between [Safa] and Mr. Rosenblatt to *begin the business*") (emphasis added), 120:11-17; ECF Docket Entry 219-1 at 36:2-37:12 ("There are zero trade secrets to this business.  There are no trade secrets.  THE COURT: You can dispute this with me, but I found otherwise …").  This is the law of the case, such that the Former Owner Defendants cannot now challenge this finding.

3

Like other preclusion doctrines, the purpose of the law of the case doctrine is to prevent courts from having to make the same decision twice. See Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999); see also Chan Ah Wah v. HSBC N. Am. Holdings Inc., No. 15-CIV.-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) (the law of the case doctrine is "driven by considerations" that include "judicial economy"); Weitzman v. Stein, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (the "law-of-the-case doctrine promotes judicial economy by permitting a court to refuse to revisit an issue that the court already has decided").

Since this Court has already determined whether Plaintiff possessed trade secrets, it should not reexamine the issue and the Former Owner Defendants cannot be permitted to relitigate it. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). "The law of the case doctrine commands that when a court has explicitly or implicitly ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." See Ragbir v. Lynch, 640 Fed. Appx. 105, 108 (2d Cir. 2016) (quotation and citation omitted); see also Ariz. Premium Fin. Co. v. Emp'rs Ins. of Wausau, 586 Fed. Appx. 713, 716 (2d Cir. 2014) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case" (quoting Arizona v. California, 460 U.S. 605, 618 (1983))).

Even if this Court were to consider it, the Second Amended Complaint ("SAC") more than adequately alleges that Safa presented Elefterakis with the idea of running a competing business to Plaintiff by showing him two (2) invoices from Plaintiff,[1] the Former Owner Defendants were aware of Safa and Vito's misappropriation of trade secrets, and nonetheless decided to participate in and profit from Safa and Vito's actions.   See ECF Docket Entry 203 at ¶¶ 68-77.

---

[1] These invoices constitute trade secrets as they are not known to the public.

4

The SAC further alleges that the Former Owner Defendants received Plaintiff's confidential information and trade secrets from Safa and analyzed it to decide whether to invest in such a business, and then did so. Id. Thus, there is no question that the Former Owner Defendants came into possession of Plaintiff's trade secrets and utilized it for their benefit. Indeed, Defendants' argument that Plaintiff alleges in conclusory fashion that Defendants have misappropriated trade secrets and that they were aware of and privy to such secrets ignores the well pleaded facts in the SAC explaining that: (i) Safa showed Defendants two (2) invoices of Plaintiff (¶ 69); (ii) Safa sent the confidential information and trade secrets she misappropriated to Pollak, who analyzed it and discussed investing into a competing business with Elefterakis and Bridda (¶ 72); (iii) Pollak knew the information he received was confidential and proprietary (¶ 73); and (iv) Pollak informed Elefterakis and Bridda about Safa's access to Plaintiff's confidential information and trade secrets and nonetheless invested in the business (¶¶ 74-76).

Therefore, the Former Owner Defendants used the trade secrets, *had reason to know that the trade secret was acquired through improper means*, and the trade secrets derived from or through a person who owed such a duty. See Kraus USA, Inc., 2020 WL 2415670, at *4. These detailed allegations are sufficient to form the basis of Plaintiff's claims under the Defend Trade Secrets Act ("DTSA"). See M&A Metals, Inc. v. Fina, No. 21-CIV.-5570 (PKC) (PK), 2023 WL 2734794, at *3 (E.D.N.Y. Mar. 31, 2023) ("[T]he DTSA provides a private cause of action for '[1] [a]n owner of a trade secret' which was '[2] misappropriated' and '[3] related to a product or service used in, or intended for use in, interstate or foreign commerce'") (citing 18 U.S.C. § 1836(b)(1). Indeed, Plaintiff identified the trade secrets it owns (¶¶ 58 and 90), that these trade secrets were misappropriated and related to a service used in interstate commerce (see, e.g., ¶¶ 53, 62, 69, 72, 74, 76). As such, the complaint states a claim under the DTSA.

The Former Owner Defendants also argue that the misappropriation element is not met. However, the SAC explains in detail how Safa provided the misappropriated trade secrets to Pollak, who studied it to determine whether the Former Owner Defendants would invest in the business with her.  See ECF Docket Entry 203 ¶¶ 72-74.  This is sufficient to meet the misappropriation prong.

None of the authorities relied upon by the Former Owner Defendants are applicable to this case, and are inapposite for a variety of reasons.

For example, in Art and Cook, Inc. v. Haber, the Hon. LaShann DeArcy Hall, US.D.J. found that "[t]he contact lists at issue in this case contain buyer information for approximately seventy-two companies. Notably, many of the companies on Plaintiff's lists cannot fairly be called customers. Mr. Ben-Ishai admitted during testimony that a number of the companies on the lists are companies to whom Plaintiff is merely 'trying to sell.' … Even where the company is a customer, the lists do not include information, such as customer preferences, that would be difficult to duplicate." See 416 F.Supp.3d 191, 196 (E.D.N.Y., 2017).  Here, contrary to the findings in Art and Cook, Inc., Plaintiff adequately pled that the trade secrets consist of "the identity of all of its customers and clients, their contact information, their preferences, pricing information, and all of the financial details of IME WatchDog."  See ECF Docket Entry 203 ¶¶ 49, 57-60, 64, 67, 76.

In Broker Genius, Inc. v. Zalta, the court found that trade secrets were sufficiently identified even without adequate specificity.  See 280 F.Supp.3d 495, 515 (S.D.N.Y., 2017) ("Although defendants are correct that Broker Genius has failed to describe certain of its fourteen software components with adequate specificity, the Court is satisfied that Broker Genius has identified three particular types of alleged trade secrets in a manner that enables 'the defendant [to] defend himself' and to 'divine the line between secret and nonsecret information'").

6

In <u>Elsevier Inc. v. Doctor Evidence, LLC</u>, the court found that the alleged trade secrets were not pled with specificity.  <u>See</u> 2018 WL 557906, at *5 (S.D.N.Y., 2018) ("Throughout its pleading, DRE refers principally to "confidential information.' The term 'trade secrets' is used several times—but in a manner interchangeable with the general category of confidential information").  This is distinguishable from the allegations in the complaint here, where specific categories of information have been identified, i.e., "the identity of all of its customers and clients, their contact information, their preferences, pricing information, and all of the financial details of IME WatchDog."  <u>See</u> ECF Docket Entry 203 ¶ 49.

Turning to misappropriation, the Former Owner Defendants' reliance on the authorities below are similarly misplaced.

In <u>Oneida Group Inc. v. Steelite International U.S.A. Inc.</u>, the late Hon. Arthur D. Spatt, U.S.D.J. found that the misappropriation prong had been met, albeit barely.  <u>See</u> 2017 WL 6459464, at *7 (E.D.N.Y., 2017) ("The Court finds that Oneida has met its burden [to adequately allege misappropriation], albeit barely, at this stage" where, *inter alia*, "reading the complaint liberally, it states that by offering the dishes previously sold by Oneida, Steelite must be using Oneida's trade secrets regarding pricing, margins, and strategy").  The allegations in the complaint here are more clear cut than <u>Oneida</u>, and as such, the misappropriation prong has been met.

Similarly, the Second Circuit in <u>Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.</u> did not decide any issue concerning misappropriation.  <u>See</u> 920 F.2d 171, 173 (2d Cir. 1990) ("On this appeal, DTI and the individual defendants do not challenge the district court's determination that any trade secret misappropriation would constitute a breach of confidence. Indeed, such a challenge would have been fruitless given the nondisclosure agreements signed by Newlin and Vafa").

In <u>Chadha v. Chadha</u>, the late Hon. A. Kathleen Tomlinson, U.S.M.J. decided whether a trade secret was willfully and maliciously misappropriated so as to award exemplary damages, not whether the misappropriation prong has been met, which in that case such a finding was implicitly made given the procedural posture of that case.  <u>See</u> 2020 WL 1031385, at *7 (E.D.N.Y., 2020).

Finally, in <u>Dairy, LLC v. Milk Movement, Inc.</u>, the court found that "plaintiff must show that defendant 'knew or had reason to know' about CDI's agreement with plaintiff [and that] Plaintiff provides no evidence to that effect." <u>See</u> 2022 WL 584003 (E.D. Cal. 2022).  This is not the case here, where the SAC adequately alleges that the Companions Defendants provided Plaintiff's confidential information and trade secrets to the Former Owner Defendants who analyzed same such that they would, at a minimum, have reason to know about same.

As such, Plaintiff properly pled its claims under the DTSA and for misappropriation.[2]

## II.   Plaintiff has Properly Pled its Claim for Unfair Competition

To establish a New York state law unfair competition claim, a plaintiff must allege (1) "misappropriation of the labors and expenditures of another," that is (2) "likely to cause confusion or to deceive purchasers as to the origin of the goods," and (3) "bad faith."  <u>See</u> <u>Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.</u>, 58 F.3d 27, 34-35 (2d Cir. 1995).

Here, the SAC adequately pleads that the Defendants collectively misappropriated Plaintiff's labors in creating the market for the IME observer industry and engaged in bad faith conduct through the use of Plaintiff's trade secrets to unfairly compete against Plaintiff.

---

[2] Because courts analyze state law misappropriation claims coextensively with the DTSA, this Court should find that Plaintiff properly pled its misappropriation claims for the same reasons argued concerning Plaintiff's DTSA claims.  <u>See</u> <u>ExpertConnect, L.L.C. v. Fowler</u>, 2019 U.S. Dist. LEXIS 114931, *18 (S.D.N.Y. July 10, 2019) ("The requirements are similar for showing a misappropriation of a trade secret under the DTSA and misappropriation under New York common law… For substantially the same reasons that the Complaint sufficiently pleads a DTSA claim, the Complaint also states a claim for misappropriation of trade secrets ….").

The SAC specifically alleges that the Former Owner Defendants participated in the Companion Defendants' campaign of espionage, bribery, misappropriation, and sabotage in order to steal and/or divert Plaintiff's customers to Companions.

Accordingly, Plaintiff has adequately pled its unfair competition claim.

## III.     Plaintiff has Properly Pled its Claim for Tortious Interference

To state a claim for tortious interference with contract under New York law, a plaintiff must allege: (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) damages. See Kirch v. Liberty Media Corp., 449 F.3d 388, 401–02 (2d Cir.2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996)).

Separately, "[u]nder New York law, a plaintiff claiming tortious interference with prospective business relations[3] must show (1) 'the defendant's interference with business relations existing between the plaintiff and a third party,' (2) 'either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any other way improper.'" See IQ Dental Supply, Inc. v. Henry Schein, Inc., 924 F.3d 57, 69 (2d Cir. 2019) (quotation omitted).

"To satisfy the first prong, 'the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff.'" Id. (quoting B & M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (quotation omitted)).

---

[3] "'[T]ortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action.'" See Popat v. Levy, 328 F. Supp. 3d 106, 131 n.5 (W.D.N.Y. 2018) (quotation and other citation omitted). "[N]o matter the term used, the elements are the same." See Katz v. Travelers, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017), reconsideration denied, No. 16-CIV.-4389 (ADS) (SIL), 2017 WL 4180012, 2017 U.S. Dist. LEXIS 153275 (E.D.N.Y. Sept. 20, 2017).

"[W]here 'the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct.'" Id. (quoting [IQ Dental Supply, Inc., 924 F.3d at 69] (quotation omitted)).

To satisfy the "wrongful means" element of the second prong, a plaintiff must show "'as a general rule,' that 'the defendant's conduct ... amount[ed] to a crime or an independent tort[.]'" See 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 262 (2d Cir. 2015) (quoting Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004)).

Here, as set forth in the SAC, the Former Owner Defendants knew of Plaintiff's contracts and business relationships with its customers, interfered in those relationships by targeting the customers on the list they misappropriated and sabotaging the customers' relationship with Plaintiff, caused the customers to cease doing business with Plaintiff, and therefore caused Plaintiff damages.  As such, Plaintiff adequately pled its tortious interference claims.

## IV.    Plaintiff has Properly Pled its Claim for Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that: (1) the defendant benefited; (2) the benefit was at the expense of the plaintiff; and (3) that equity and good conscience require restitution." See Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 397 (S.D.N.Y. 2007).

As a result of their use of Plaintiff's trade secrets, as detailed in the SAC, the Former Owner Defendants have been enriched at Plaintiff's expense, by – among other things – receiving substantial revenues from sales of IME observer services based on Plaintiff's creation of the IME observer business concept without bearing the expense and risk of developing the services, materials, and marketing plans necessary to achieve sales and luring Plaintiff's customers away through the use of Plaintiff's confidential information obtained through bribery.

10

Thus, equity and good conscience require restitution to the Plaintiff, and accordingly, Plaintiff has adequately pled its unjust enrichment claim.

## V.      Plaintiff has Properly Pled its Claim for Civil Conspiracy

Although "New York does not recognize civil conspiracy to commit a tort . . . as an independent cause of action" … "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." See Levin v. Kitsis, 82 A.D.3d 1051, 1052 (2d Dept 2011).   Here, as set forth in the SAC, Plaintiff has adequately pled that the Defendants collectively committed various torts – i.e., misappropriation, unfair competition, tortious interference, and unjust enrichment – as part of their common scheme as a team to bribe a key employee of Plaintiff in effort to obtain Plaintiff's confidential information and to unfairly compete with IME WatchDog.   The Former Owner Defendants directly benefited from the Companions Defendants' tortious conduct by receiving distributions and ultimately selling their membership interests in Companions.

As such, Plaintiff has adequately stated a claim for civil conspiracy.

## VI.     Plaintiff has Properly Pled its Claim for Conversion

In New York, "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." See Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006); see also State of New York v. Seventh Regiment Fund, 98 N.Y.2d 249, 259 (2002).  Here, the complaint adequately states that the Former Owner Defendants exercised control of Plaintiff's confidential information and trade secrets, and interfered with Plaintiff's right of possession when they used it to further their competing business.

**VII.    Plaintiff's Second Amended Complaint Should Not be Stricken**

Rule 12 provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. See Fed. R. Civ. P. 12(f); see also Hill v. Cray Research, Inc., 864 F. Supp. 1070, 1073 (D.N.M. 1991); see also Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009).

"To be impertinent or immaterial, the allegations must have no possible bearing on the controversy." See Employers Ins. of Wausau v. Musick, Peeler, & Garrett, 871 F. Supp. 381, 391 (S.D. Cal. 1994). Evidentiary allegations are not usually proper pleading, but allegations supplying background or historical material or other matter of an evidentiary nature will be stricken if unduly prejudicial to defendant. See Fuchs Sugars & Syrups, Inc. v. Amstar Corp., 402 F. Supp. 636, 637-38 (S.D.N.Y. 1975).

Allegations will be stricken as scandalous if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court. See Nault's Auto. Sales v. Am. Honda Motor Co., 148 F.R.D. 25, 30 (D.N.H. 1993) (citation omitted).  Motions to strike are granted or denied in the court's discretion. See The Wilderness Soc'y v. Kane County, Utah, 581 F.3d 1198, 1226, n. 25 (10th Cir. 2009).

The Former Owner Defendants argue, in conclusory manner, that Plaintiff's allegations against them are "clearly 'redundant, immaterial, impertinent, or scandalous' … and should be stricken from the SAC" because the allegations in the complaint purportedly contradict their self-serving testimony at a hearing.

However, the Former Owner Defendants have failed to establish that the allegations are impertinent or immaterial, which they cannot do as the allegations bear directly on Plaintiff's claims and their defenses.

Nor can the Former Owner Defendants establish that the allegations are scandalous, because there is no repulsive language in the SAC and the well-pled allegations do not detract from the dignity of this Court.   Further, while the allegations reflect upon the character of Elefterakis, Pollak, and Bridda, they do not go so far as to be morally degrading, as it is evident the Former Owner Defendants acted out of self-interest.   Contrary to their arguments, there is evidence in support of Plaintiff's allegations in the SAC which would be admissible, much of which has been borne out in the forensic examination, and the allegations have a direct bearing on the issues relevant in this case.   To that end, the Former Owner Defendants would be hard pressed to establish any prejudice from permitting the allegations to stand.   This is especially so when this Court has already held that Plaintiff likely has enough evidence to allege a claim for relief against the Former Owner Defendants.   See Text Only Order dated April 24, 2023 ("Furthermore, granting [the Former Owner] Defendants' renewed request for a pre-motion conference regarding a motion to dismiss will only result in a further waste of the parties' resources and time, given that the Court and all parties are aware that Plaintiff likely has enough evidence to allege a claim for relief against Defendants at the pleadings stage").   As such, the motion to strike must be denied.

## VIII.   Leave to Replead Must Be Granted in the Event of Dismissal

In the event that dismissal is granted, Plaintiff respectfully seeks leave to amend, which shall be freely given when justice so requires.   See Fed. R. Civ. P. 15(a).   Indeed, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'"   See Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also Vacold LLC v. Cerami, No. 00-CIV.-4024 (AGS), 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016), aff'd, 710 Fed. Appx. 449 (2d Cir. 2017).

Moreover, "[w]ithout the benefit of a ruling [from the Court], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." See McKenzie-Morris v. V.P. Records Retail Outlet, Inc., 1:22-CIV.-1138 (GHW), 2022 WL 18027555, at *12 (S.D.N.Y. Dec. 30, 2022) (citing Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015).

Accordingly, leave to replead should be granted to the extent the Former Owner Defendants succeed on their motion to dismiss and any deficiencies are identified by the Court.

## CONCLUSION

For all the foregoing reasons, the Former Owner Defendants' motion to dismiss the causes of action against them must be denied.

Dated: Lake Success, New York
      October 18, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**
_____/s_____
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

**VIA ECF**
United States District Court
Eastern District of New York
Attn: Hon. James R. Cho, U.S.M.J.
225 Cadman Plaza East
Courtroom 11D South
Brooklyn, NY 11201-1804

14

**VIA ECF**
Warner & Scheuerman
<u>Attn</u>: Jonathan D. Warner, Esq.
6 West 18th Street, 10th Floor
New York, NY 10011-4602
(212) 924-7111 (telephone)
(646) 692-0166 (direct dial)
(212) 924-6111 (facsimile)
jdwarner@wslaw.nyc

*Attorneys for Defendants*
*Third-Party Plaintiffs*
*Safa Abdulrahim Gelardi*
*Vito Gelardi, and*
*IME Companions LLC*

**VIA ECF**
Abrams Fensterman, LLP
<u>Attn</u>: Melanie I. Weiner, Esq.
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201-3831
(718) 215-5300 (office)
(718) 215-5304 (facsimile)
mweiner@abramslaw.com

*Attorneys for Defendants*
*Gregory Elefterakis,*
*Roman Pollak, and*
*Anthony Bridda*

**VIA ECF**
Leo Shalit, P.C.
<u>Attn</u>: Leo Shalit, Esq.
45 Glen Cove Road
Greenvale, NY 11548
(833) SHALIT-1 (office)
(646) 957-0009 (direct)
(833) 742-5481 (facsimile)
leo@shalit-law.com

*Attorneys for*
*Third-Party Defendant*
*Carlos Roa*