# EXHIBIT "A"

*Proceedings*                                                    274

1    idea what the meeting was actually about either.

2            You can re-watch the video.  He starts off on his

3    own tangent about doctors.  And Vito doesn't know anything

4    about the IME business.

5            So he was there in and out, but, yeah, you can watch

6    the video again.  He has no clue what he's talking about when

7    it comes to the IME business, and he just said something to

8    say something.

9            THE COURT:  All right.  I'll take a look at it.

10   Because I think I also noticed him in the background walking

11   back and forth as you're having a meeting and maybe adjusting

12   things or giving you things, and then he does actually appear

13   and speak at the end there.  So, I'll take another look at

14   that.

15           MS. GELARDI:  Well, he just -- he says something so

16   unrelated, Your Honor, to the IME.

17           THE COURT:  All right.

18           So I am going to let you all go.  I know it's been a

19   very long day without a lunch break, so my apologies for that.

20           I am going to defer on ruling, however, except for

21   on one issue, which is I am going to set a deadline by which

22   defendants have to pay BRG.  And for every day past the

23   deadline when the full balance is not paid, defendants will be

24   assessed $200 a week.

25           So, we are getting to the point that this promise of

1  paying has worn out its welcome and the payment should be made

2  because I have ordered it multiple times.

3           MS. GELARDI:  Your Honor, can --

4           THE COURT:  You said you were going to pay it.

5           MS. GELARDI:  Yes.

6           THE COURT:  You are going to pay it.

7           MS. GELARDI:  I am just gonna request if you could

8  just give me a time span that I can make these payments.

9           I wouldn't be able to make them in a short time

10 span, but I'm definitely gonna reach out to them today.  And I

11 am going to make an agreement.  I'm looking maybe if you could

12 kindly maybe give me at least 24 months to --

13          THE COURT:  Oh, no, no, no, no, no.

14          MS. GELARDI:  There's no possible way I could go

15 quicker than that.

16          THE COURT:  No.  I was thinking thirty days because

17 this has been --

18          MS. GELARDI:  I won't be able to.

19          THE COURT:  This has been over a year now that

20 you've owed this money and --

21          MS. GELARDI:  Your Honor, I would not be able to,

22 Your Honor.  I'm so sorry.

23          I'll give you all my bank statements.  There's no --

24 I promise you I will give you everything.  There's no possible

25 way I can come up with that.

1          However, I will make a payment agreement with them,

2    if you allow me to, and I will start making increments.  And I

3    know that they'll agree to it because they asked me to it

4    before.  And I am capable of doing it now, only because Vito

5    is doing construction.  And if -- if you --

6               THE COURT:  Hang on a second.

7               You claim he's been doing construction all of this

8    time?

9               MS. GELARDI:  No, he wasn't, Your Honor.  He just --

10   we were trying to do construction.  We depleted our savings

11   and just starting businesses to create an income.  And I will

12   show you.  Like, I'm not gonna hide it from you.

13              I will give you all our bank statements, anything

14   that you ask for, to prove to you there's no possible way I

15   could come up with something like that in thirty days.

16              However, if you allow me to reach out to them today

17   and if they allow me to, if they accept the payment agreement,

18   I will not, I will not go -- I will not be late on that

19   agreement and I will make a payment agreement with them and I

20   will pay them monthly.  And I'll -- I'll copy Mr. Warner on

21   every payment.  But there's no possible way I could do

22   something in thirty days.

23              THE COURT:  How much equity do you have in your

24   house in Texas right now?

25              MS. GELARDI:  I don't have income to be able to take

*Proceedings*                                                277

1   out equity, but the downpayment that I used for my house was a

2   20 percent downpayment, which is conventional mortgage.  And I

3   used the proceeds from the Philadelphia property, Your Honor.

4               THE COURT:  Okay.  So there's some equity in that

5   600-thousand-dollar --

6               MS. GELARDI:  Correct.

7               THE COURT:  -- property?

8               MS. GELARDI:  Yes.

9               THE COURT:  So you could get a home equity loan and

10  get some cash?

11              MS. GELARDI:  Your Honor, I would love to, and I

12  tried to actually pay my attorney through an equity.  However,

13  the issue that I'm having in retrieving equity is I don't have

14  the income to support the payment.

15              This is why I keep getting turned down.  Mr. Warner

16  knows, I've tried even to -- to -- to get equity on multiple

17  of my properties in order to pay him.

18              THE COURT:  You said your monthly mortgage is only

19  $4,000 a month; is that it?

20              MS. GELARDI:  Four-thousand -- yeah, like around

21  4 -- like around 4200, yes.

22              THE COURT:  You realize it's relatively low for a

23  mortgage payment.  I mean in New York City you spend $5,000 in

24  monthly rent.

25              Now, obviously, I realize these are different

*Proceedings*                                                278

1    markets, but if your husband is working and making money,

2    $4,000 a month should be doable and leave --

3                MS. GELARDI:  Now.  It's now doable for us.

4    Mr. Warner knows it's now doable for us.

5                And once I get my daycare open, this is the thing,

6    Your Honor, we've started businesses to create income.

7    Without income, we can't get -- we've tried to get these

8    equity loans.

9                THE COURT:  Let me ask you a question.

10               How many properties do you currently own besides

11   your residence?

12               MS. GELARDI:  I own the Staten Island property.

13               THE COURT:  Which is being rented.

14               MS. GELARDI:  Well, it's being rented, yes.

15               THE COURT:  For how much a month?

16               MS. GELARDI:  It's 4,500, which only covers the

17   mortgage.

18               THE COURT:  So you still have a 4500-dollar-a-month

19   mortgage on your Staten Island home?

20               MS. GELARDI:  Correct.

21               THE COURT:  All right.  And then --

22               MS. GELARDI:  And there's 4200 in Texas, right.  And

23   then the two properties in Pennsylvania, but they -- but

24   they're Airbnb'd, so they cover their mortgage.  They're not

25   liabilities to us.

*Proceedings*                                                          279

1            THE COURT:  Let me ask you a question.

2            Does plaintiff have all this information?  Because I

3    know you've sent me a lot of information about the defendant's

4    properties.

5            MR. KATAEV:  We have information based on deposition

6    testimony from February 2023, as well as information from

7    publicly available records.  Nothing from the defendant, other

8    than the deposition.

9            THE COURT:  All right.

10           So you are going to turn over all your financials

11   because, I hate to tell you --

12           MS. GELARDI:  I will.

13           THE COURT:  -- you do not have much of a reservoir

14   of credibility when it comes to --

15           MS. GELARDI:  That's totally fine, Your Honor.

16           I will turn it over to Jonathon by the end of the

17   week.  I will gather all the information you need to see for

18   yourself that we are living paycheck to paycheck.  We are

19   living mortgage to mortgage.  So, there's no excess.

20           And yes, I am going to -- listen, I've started

21   businesses before and I've succeeded in them.  I have no doubt

22   in my head that I will bounce back; however, we need income in

23   order to bounce back.  So now with Vito's construction

24   business, the daycare opening up, the IME company in Texas.  I

25   haven't acquired any -- any clients yet, but it all takes

1   time.

2          So in the interim, I can make a payment agreement

3   with BRG, and I will -- I will submit all my financials for

4   you to see yourself, and the defendants if they need to see

5   it, that we are literally living paycheck to paycheck.  There

6   is no excess.

7          THE COURT:  All right.

8          So you have two weeks in which to report back on

9   your efforts to come up with a compromise deal with BRG.  You

10  will tell me exactly what it is that has been accepted, if

11  anything has been negotiated.

12         And then also, you will turn over all of your

13  financial records, bank records, property records, income

14  records, such as rental agreements, et cetera, so that I can

15  see exactly--

16         MS. GELARDI:  Okay.

17         THE COURT:  -- whether or not you have the means to

18  pay this.  Because it is a debt that's been outstanding for

19  far too long with no effort, no seeming effort to try to pay

20  it.

21         MS. GELARDI:  Your Honor, I just want to say in

22  regards to the BRG, I might have totally misunderstood in the

23  initial order in April of 2022, I believe.  For some reason, I

24  thought that it was going to be 30,000.  Right.  And I thought

25  that we were gonna pay 15, 15.

*Proceedings* 281

1        Maybe I'm wrong, but this is what I understood.  And

2   then we made the initial payment of 75, which, again, I

3   thought was 50 percent of my payment.  So when this went

4   berserk, I got thrown off.  I didn't understand.

5        THE COURT:  All right.  We discussed this at the

6   last hearing.  That is just incorrect.

7        So even if you misunderstood, the situation is that

8   you still owe, I forget, about 30 or $40,000 to BRG for your

9   share of the forensic examination.

10        I think that's correct, right?

11        MR. KATAEV:  32,000, thereabouts.

12        THE COURT:  Okay.

13        So that's what has to be paid.  If you can come up

14   with some payment arrangement that BRG will accept, let me

15   know in two weeks, but otherwise I might impose a deadline

16   with some potential penalties --

17        MS. GELARDI:  Understood.

18        THE COURT:  -- civil penalties to follow.  These are

19   meant to be coercive, quite frankly, to get you to pay the

20   bill.  If you don't --

21        MS. GELARDI:  I will make a -- I will make a payment

22   agreement with them.  And I'm hoping that they accept it and

23   it will not be -- it will be paid every month without --

24   without a problem.

25        THE COURT:  That's fine.  If you can get them to

*SAM   OCR   RMR   CRR   RPR*

*Proceedings*                                                                282

1    agree to a longer payment plan, that's fine with me, but you

2    have to make an effort to get that down.

3              MS. GELARDI:  Okay.

4              THE COURT:  All right.

5              So I've deferred on ruling on all the other requests

6    of plaintiff.  I will issue a written decision in short order

7    on all of those requests.  Okay.

8              So thank you, everyone.

9              MR. FELSEN:  Your Honor.

10             THE COURT:  Yes.

11             MR. FELSEN:  There is one motion that has been

12   outstanding.  It's our motion for fees with respect to the

13   last contempt finding.

14             THE COURT:  Right.  I think where we left it was you

15   were supposed to submit -- oh, so we have the documentation of

16   your attorneys' fees request.  Okay.

17             MR. FELSEN:  Yes.

18             THE COURT:  So, we'll also take care of that as

19   well.

20             MR. FELSEN:  All right.  Thank you.

21             THE COURT:  Thank you, everyone.

22             MS. CHARRINGTON:  Your Honor, one other thing.

23             THE COURT:  Ms. Charrington, yes, go ahead.

24             MS. CHARRINGTON:  So I was given copies of the

25   exhibits for this hearing today, which I believe are the