UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IME WATCHDOG, INC.,

                              Plaintiff,

                - against -

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, GREGORY ELEFTERAKIS,
ROMAN POLLAK, ANTHONY BRIDDA,
IME COMPANIONS, LLC, CLIENT EXAM
SERVICES, LLC, and IME MANAGEMENT
& CONSULTING, LLC,

                              Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-1032 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

Plaintiff IME Watchdog, Inc. ("Watchdog" or "Plaintiff") initiated this action on

February 25, 2022, against Safa Abdulrahim Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME

Companions, LLC ("Companions") (collectively "Defendants"), alleging, *inter alia*,

misappropriation of Watchdog's confidential information and trade secrets, and seeking monetary

and injunctive relief.[1]  (Compl., Dkt. 1.)  On the same day, Plaintiff also filed a motion for a

preliminary injunction, which the Court ultimately granted in part and denied in part on April 5,

2022 ("April 2022 Injunction") after a hearing.  (*See* Dkts. 6–14, 66; 3/29/2022 Dkt. Order;

4/5/2022 Dkt. Order; Dkt. 66.)  The April 2022 Injunction barred Defendants from using Plaintiff's

trade secrets, from franchising Companions, and from contacting Plaintiff's clients, employees,

and agents.  (Dkt. 66-1 at 2.)  On June 8, 2022, the Court issued an amended preliminary injunction,

---

[1] Plaintiff filed an Amended Complaint on October 13, 2022, adding Gregory Elefterakis,
Roman Pollak, Anthony Bridda, and Nicholas Liakis as additional Defendants.  (Dkt. 114.)  On
April 28, 2023, Plaintiff filed a Second Amended Complaint.  (Dkt. 203.)  The parties subsequently
stipulated to the dismissal of Defendant Liakis.  (Dkt. 192.)

enjoining both parties from making misleading or defamatory statements about one another ("Amended Injunction").  (Dkt. 80; *see also* 6/8/2022 Dkt. Order.)  On March 10, 2023, Plaintiff filed (1) a second motion for a temporary restraining order ("TRO"), (2) a second motion for a preliminary injunction, (3) a second motion for a permanent injunction, (4) an emergency motion for contempt as to the April 2022 Injunction and Amended Injunction, and (5) an accompanying motion for a hearing to address the filed motions.  (Dkts. 151–55.)  The Court ordered the TRO on the same day ("March 2023 TRO") and held a hearing regarding the motion for preliminary injunction and contempt on March 27, 2023, where the parties presented and examined witnesses and presented documentary evidence.  (Dkt. 156; 3/27/2023 Min. Entry.)

After the March 27, 2023 hearing, the Court found Defendants in contempt for violating the Court's Amended Injunction, which barred Defendants from, *inter alia*, communicating with Plaintiff's employees and agents.  (3/27/2023 Min. Entry; *see also* Am. Contempt Mem. & Order, Dkt. 299;[2] 4/5/2022 Dkt. Order.)  Relevant here, the Court found that Defendants had hired a private investigator "to track and contact Third-Party Defendant and Plaintiff's employee, Carlos Roa ('Roa')."  (Am. Contempt Mem. & Order, Dkt. 299, at 11.)  The Court also found that Defendants violated the March 2023 TRO, which prohibited Defendants from operating their or any other business that unfairly competes with Plaintiff in violation of the law, (*see* Dkt. 156 at 3; 3/10/2023 Dkt. Order), by helping to start Client Exam Services, (Am. Contempt Mem. & Order, Dkt. 299, at 29–32).  The Court, however, reserved "making a final ruling on damages and

---

[2] The Court issued its initial Memorandum and Order on Plaintiff's contempt motion on October 20, 2023.  (*See* Contempt Mem. & Order, Dkt. 254.)  Subsequently, on March 13, 2024, the Court issued the Amended Memorandum and Order to clarify that it had found Defendants in contempt, but "reserved issuing a ruling on sanctions and damages pending the resolution of Plaintiff's . . . motion for attorneys' fees."  (3/13/2024 Dkt. Entry; *see also* Am. Contempt Mem. & Order, Dkt. 299.)

imposing sanctions" until the parties briefed the issue of compensatory damages, including attorneys' fees for the March 27, 2023 proceeding. (*Id.* at 33.) Both Plaintiff and Roa (collectively, "Movants") have now moved for attorneys' fees and costs that they incurred as a result of Defendants' contempt. (Dkts. 261–65, 267.) For the reasons explained herein, Plaintiff is awarded $47,321.63 in attorneys' fees and $11,036.60 in costs, and Roa is awarded $6,980 in attorneys' fees and $1,209.11 in costs.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of the case, and so only sets forth those facts relevant to the issue of compensatory damages for contempt.[3] This Court previously found Defendants in civil contempt of the Amended Injunction and the March 2023 TRO and ordered Plaintiff to "submit[] supplemental briefing regarding its compensatory damages, including attorneys' fees for the March 27, 2023 contempt proceedings." (Am. Contempt Mem. & Order, Dkt. 299, at 33.) In that supplemental briefing, Plaintiff argues that it is entitled to $186,038.67 in attorneys' fees and costs, including: (1) $72,802.50 in attorneys' fees for Plaintiff's attorneys, (Movants' Ltr. Mot., Dkt. 261, at 5), (2) $66,640 in attorneys' fees for work performed by the law firm of Plaintiff's principal, Daniella Levi ("Levi"), as "in-house counsel," (*id.* at 6), (3) $20,965.11 in attorneys' fees and costs expended by Roa, (*id.*), and (4) $26,840.17 in costs expended by Plaintiff and its attorneys, (*id.* at 7).[4]

---

[3] The Court provided more thorough background of the case in its Memorandum and Order on Plaintiff's contempt motion, which lays out the Court's conclusions with regard to the contempt proceedings. (*See* Am. Contempt Mem. & Order, Dkt. 299, at 2–13.)

[4] Although Plaintiff requests a total of $186,038.67 in fees and costs, their requests actually add up to $187,247.78.

Defendants counter by noting that Plaintiff "has failed to identify any actual damages incurred due to Safa's alleged contemptuous conduct[.]"  (Defs.' Opp'n Ltr., Dkt. 267, at 4.) Defendants further argue that the Court should deny or reduce Movants' request for attorneys' fees and costs for numerous reasons, including, *inter alia*, that Safa's contempt was not willful, Plaintiff's request is overbroad, the submitted attorney time records are excessively vague, any attorney time spent by Levi's law firm is not compensable, and that Roa's attorneys' time is not compensable.  (*Id.* at 5–14.)  To the extent that the Court grants Movants' request for attorneys' fees and costs, Defendants also argue that any such award should only be against *Safa* (as opposed to Vito and Companions) because, according to Defendants, the contempt finding was only against Safa.  (*Id.* at 14.)

## LEGAL STANDARD

Generally, in contempt proceedings, "[t]he decision to award fees rests in the court's equitable discretion."  *Gucci Am., Inc. v. Li*, No. 10-CV-4974 (RJS), 2015 WL 7758872, at *4 (S.D.N.Y. Nov. 30, 2015) (quoting *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001)).  There is an open question as to whether "a finding of willfulness or bad faith is required before a court may order attorneys' fees as a sanction for violating a court order" in this Circuit.  *MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-CV-1294 (PKC) (VMS), 2021 WL 1946380, at *11 (E.D.N.Y. May 14, 2021) (quoting *Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-8627 (SHS), 2019 WL 2462333, at *4 n.3 (S.D.N.Y. June 13, 2019)); *see also Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("[W]illfulness may not necessarily be a prerequisite to an award of fees and costs[.]").

Once a court has determined that a fee award is appropriate, it must calculate the presumptively reasonable fee using the "lodestar" method.  *See Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902 (EK) (RLM), 2022 WL 18356256, at *5 (E.D.N.Y. July 14, 2022)

(applying the lodestar method to calculate presumptively reasonable attorneys' fees on contempt motion) (collecting cases), *R. & R. adopted*, 2023 WL 199698 (E.D.N.Y. Jan. 17, 2023).  The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  "District courts have broad discretion, using 'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness' of each component of a fee award." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 94 (E.D.N.Y. 2012) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).  Among other considerations, the district court must determine a reasonable hourly rate for the attorneys' work.  Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  In assessing fees, then, district courts "bear in mind all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of [attorneys'] fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted).  Ultimately, a "presumptively reasonable [attorneys'] fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted).

Moreover, a fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous records.  *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983).  If a court finds that claimed hours

are "excessive, redundant, or otherwise unnecessary," it should exclude those hours in calculating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "A district court is not, however, required to set forth item-by-item findings concerning what may be countless objections to individual billing items . . . and may either subtract uncompensable hours or use percentage reductions to eliminate excessive or duplicative hours." *Marshall v. Reisman*, No. 11-CV-5764 (AAR) (VV), 2013 WL 1563335, at *4 (E.D.N.Y. Mar. 25, 2013) (cleaned up), *R. & R. adopted*, 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013).

## DISCUSSION

### I.     Contempt Sanction Limited to Attorneys' Fees and Costs

As an initial matter, in its ruling on the underlying contempt motion, the Court noted that when a court makes a contempt finding, "'[c]ompensatory sanctions should reimburse the injured party for its actual damages' and be 'based upon evidence of such loss or injury.'" (Contempt Mem. & Order, Dkt. 254, at 25.)  The Court ordered Plaintiff to "submit further briefing setting forth the actual damages it has incurred due to (1) Safa's 'contact' with Roa, and (2) the creation of Client Exam Services[.]" (*Id.* at 32–33.)  In its briefing, Plaintiff does not identify any actual losses it suffered due to Defendants' contemptuous conduct apart from attorneys' fees and costs. (*See generally* Movants' Ltr. Mot., Dkt. 261.)  Because Plaintiff has not requested any other forms of compensatory damages, the Court considers any claim for compensatory damages apart from attorneys' fees and costs to be abandoned. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (explaining that when claims are not advanced by the moving party, they are abandoned).

### II.    Availability of Attorneys' Fees and Costs

Defendants raise a threshold question of whether attorneys' fees and costs are available at all in this case.  To the extent that attorneys' fees and costs are available, Defendants also challenge

the request for attorneys' fees and costs for Roa, because Roa did not join the initial motion for contempt and expansion of the preliminary injunction, and the Court did not order Roa to submit briefing on attorneys' fees.  (*See* Defs.' Opp'n Ltr., Dkt. 267, at 13.)  For the reasons below, the Court finds that attorneys' fees and costs are available to both Movants.[5]

### A.   Generally

Defendants contend that Movants' request for attorneys' fees and costs should be denied "because this Court did not expressly find that Safa's alleged violation of the Amended Preliminary Injunction was willful[.]"  (Defs.' Opp'n Ltr., Dkt. 267, at 10.)  This argument is borderline frivolous.  As Defendants themselves note, the Court explained in its contempt order that "it would find willfulness if required to do [so.]"  (*Id.*; *see also* Am. Contempt Mem. & Order, Dkt. 299, at 27–28 ("[B]ased on the evidence produced in connection with the hearing, as well her conduct throughout these proceedings, the Court would find Safa's conduct willful, if that were a requirement.").)  Thus, to the extent that the Court is required to find willfulness to impose an award of attorneys' fees and costs[6] against Safa, it does so, as it indicated it would in its prior Memorandum and Order.  (Am. Contempt Mem. & Order, Dkt. 299, at 27–28.)

---

[5] Defendants also argue that to the extent the Court awards attorneys' fees and costs, any award should only be against Safa since "this Court's preliminary findings of contempt were limited to Safa."  (Defs.' Opp'n Ltr., Dkt. 267, at 1 n.1.)  That is incorrect.  As this Court previously explained, "the Court's finding of contempt was as to all Defendants, i.e., the Individual Defendants and Companions."  (Attachment Mem. & Order, Dkt. 284, at 3 n.3; *see also* Contempt Mem. & Order, Dkt. 254, at 3 (finding "Defendants to be in civil contempt for violating both the Amended Injunction and the March 2023 TRO").)

[6] "[W]illfulness may not necessarily be a prerequisite to an award of fees and costs" after a finding of contempt, but "a finding of willfulness strongly supports granting them."  *Weitzman*, 98 F.3d at 719.

**B.    On Behalf of Roa**

Defendants also argue that Plaintiff is not entitled to recover for Roa's attorneys' fees and expenses because only Plaintiff moved for the contempt order, and Plaintiff has not submitted any proof that it has paid Roa's attorneys' fees.  (Defs.' Opp'n Ltr., Dkt. 267, at 13.)  As a result, Defendants argue, Roa's attorneys' fees do not constitute actual damages suffered by *Plaintiff*. (*Id.*)

Defendants are correct that Roa's attorneys' fees are not payable to Plaintiff because Plaintiff has not shown that it has paid those fees.  But they are payable to Roa.  Roa joined the motion for attorneys' fees and was impacted by Defendants' contempt.  (*See* Movants' Ltr. Mot., Dkt. 261, at 6, 8; *see also* Am. Contempt Mem. & Order, Dkt. 299, at 11–12, 26–28.)  Indeed, Defendants' contempt involved hiring a private investigator to "befriend" Roa and placing a GPS tracker on Roa's car in violation of the preliminary injunction, which barred Defendants from contacting Roa.  (Am. Contempt Mem. & Order, Dkt. 299 at 26–29.)  Consequently, the Court finds that Roa is entitled to attorneys' fees and costs incurred because of Defendants' contempt. Any award for Roa's attorneys' fees and costs shall be payable to Roa, not to Plaintiff.[7]

## III.   Attorneys' Fees

Defendants argue that any award of attorneys' fees and costs should be reduced for a variety of reasons, each of which is discussed in turn below.

**A.    In-House Counsel**

Plaintiff seeks $66,640 in fees for attorney time spent by Levi and her son, Eliyahu Levi (collectively "the Levis"), assisting with the contempt motion and proceedings.  (*See* Movants'

---

[7] There is a separate issue of whether Plaintiff may recover costs stemming from Plaintiff's payments to Roa for his time as a cooperating employee/witness, (*see* Defs.' Opp'n Ltr., Dkt. 267, at 13), which the Court addresses in Discussion § IV.A.1, *infra*.

Ltr. Mot., Dkt. 261, at 6.)  Both Levis are personal injury attorneys who work at Levi's law firm, Daniella Levi & Associates, P.C. ("DLA").  (Daniella Levi Decl., Dkt. 262, ¶ 20; Eliyahu Levi Decl., Dkt. 263, ¶ 1.)  Plaintiff asserts that DLA serves as Plaintiff's "in-house counsel," and therefore, work by DLA is compensable.  (Movants' Ltr. Mot., Dkt. 261, at 6; Eliayahu Levi Decl., Dkt. 263, ¶ 1.)  For the reasons explained below, the Court does not find this assertion to be plausible, and Plaintiff's request for attorneys' fees[8] for work performed by DLA is denied in its entirety.

Attorneys' fees can be awarded for work performed by in-house counsel "if such fees would be awarded for the same work performed by outside counsel."  *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98-CV-7128 (BSJ), 2004 WL 213032, at *6 (S.D.N.Y. Feb. 3, 2004).  This means that if a company is represented by in-house counsel in litigation, for example, that in-house counsel is eligible for attorneys' fees in the same way that otherwise retained counsel would be.  *See, e.g.*, *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 456 n.10 (S.D.N.Y. 2011) (awarding "attorneys' fees even though [defendants were] represented by in-house counsel" in the litigation); *Video-Cinema Films, Inc.*, 2004 WL 213032, at *6–7 (similar).  But that is not the case here.  To the contrary, as Plaintiff's principal, Levi is a *client* in this litigation, not "in-house counsel."  Indeed, soon after this case was filed (and well before the underlying contempt motion was filed), this Court expressly disqualified Levi from representing Plaintiff in this case as an attorney.  (*See* 6/28/2022 Min. Entry (granting motion to disqualify).)

In addition, the Levis' own billing records, and the billing records of Plaintiff's counsel of record (Milman Labuda Law Group ("MLLG")) confirm that the Levis have acted as clients in

---

[8] The Court does find, however, that some of the costs incurred by Levi and/or DLA are compensable.  Those are discussed in Discussion § IV.A, *infra*.

this litigation, not as in-house counsel.  MLLG's billing records refer to both Levis as "clients." (*See generally* MLLG Billing Records, Dkt. 262-6.)  Similarly, the Levis' records indicate that many, if not most, of their time entries were for calls and correspondence with their "attorneys," i.e., MLLG.  (*See generally* Daniella Levi Billing Records, Dkt. 262-7; Eliyahu Levi Billing Records, Dkt. 262-8.)  And while there are a limited number of entries for the Levis' work that *could* theoretically be compensated if performed by outside counsel, those entries represent a relatively small portion of DLA's overall billing records.  (*See, e.g.*, Daniella Levi Billing Records, Dkt. 262-7, at ECF[9] 9–10 (including small number of entries for time spent revising the memorandum of law in support of renewed injunction).)  And, as Defendants point out, there is no proof of any in-house counsel agreement between DLA and Plaintiff, (Defs.' Opp'n Ltr., Dkt. 267, at 11), which raises a troubling concern that Plaintiff and her attorneys invented this alleged "in-house counsel" relationship between DLA and Plaintiff in order to inappropriately inflate the fee award.  Indeed, awarding attorneys' fees to both the Levis' and MLLG whenever they met together would amount to double-billing.  The Court will not award fees for time Plaintiff's principal (or her son) spent communicating with Plaintiff's counsel simply because the Levis happen to be lawyers.  Consequently, the Court declines to award any fees for time expended by DLA attorneys.

**B.    Outside Counsel**

Plaintiff also seeks $72,802.50 in attorneys' fees for time spent by their counsel of record, MLLG.  In addition, Roa seeks $19,756 in fees for his attorneys' time.  (Movants' Ltr. Mot., Dkt. 261, at 6.)  Defendants contest the application for these fees on a number of grounds, each of which is addressed below.

---

[9] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

       1.     <u>Acceptable Hourly Rates</u>

           a.     <u>Plaintiff's Counsel</u>

Plaintiff seeks hourly rates of $300 for associates and $450 per hour for partners for work performed by MLLG.  (Movants' Ltr. Mot., Dkt. 261, at 5.)  The Court finds these rates to be reasonable.  "A reasonable hourly rate is 'the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'"  *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV) (RML), 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (second alteration in original) (quoting *Arbor Hill*, 522 F.3d at 190).  To determine reasonable hourly rates for the legal services performed, courts typically take into account several factors, such as "the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney."  *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941 (SLT), 2015 WL 3889577, at *7 (E.D.N.Y. June 4, 2015) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190).  "In assessing the hourly rate, courts typically consider rates awarded in the district in which the reviewing court sits, pursuant to what is known as the 'forum rule.'"  *Id.* (quoting *Simmons*, 575 F.3d at 174–75).

MLLG's hourly rates are in-line with the prevailing hourly rates for attorneys within this District.  Courts in this District regularly find hourly rates of $300 to $630 for partners, and $100 to $400 for associates, to be reasonable.  *Aptive Env't, LLC v. Village of East Rockaway*, No. 19-CV-3365 (DRH) (SIL), 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *R. & R. adopted*, No. 19-CV-3365 (JMA) (SIL), 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022); *see also Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023) (observing that courts in this District have awarded hourly rates of up to $630 for partners and $200 to $400 for associates); *see also Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH), 2022 WL 17820083, at *5 (E.D.N.Y. Jan. 10, 2022) (awarding MLLG partner

Jamie Felsen an hourly rate of $375).  Plaintiff's attorneys' hourly rates are well-within the normal range for attorneys in this District, and, based on the Court's knowledge of the case and the attorneys' performance, the Court finds these rates to be reasonable.

b.    Roa's Counsel

Two attorneys at different law firms have represented Roa in connection with the contempt proceedings at issue: Leo Shalit of the Law Office of Leo Shalit and Maria Zieher of Zieher & Associates, P.C.  Roa seeks a total of $1,456 for Shalit's work, billed at a rate of $350 per hour. (Movants' Ltr. Mot., Dkt. 261, at 6; Shalit Billing Records, Dkt. 262-4.)  Roa also seeks $18,300 in attorneys' fees for Zieher's work, billed at a rate of $500 per hour.[10]  (Zieher Billing Records, Dkt. 262-5.)

Though Roa ostensibly joined the letter motion in support of an attorneys' fee award, the letter itself contains no argument as to whether Roa's attorneys' hourly rates are reasonable.  (*See* Movants' Ltr. Mot., Dkt. 261, at 6.)  In circumstances such as this, it is appropriate for the Court to undertake its own research into the attorneys seeking fees.  *See Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009); *Fox v. Triborough Bridge & Tunnel Auth.*, No. 17-CV-4143 (NGG) (JO), 2020 WL 7223177, at *4 (E.D.N.Y. Dec. 8, 2020) (adopting R. & R.); *Moreno v. Empire City Subway Co.*, No. 05-CV-7768 (HBP), 2008 WL 793605, at *6–7 (S.D.N.Y. Mar. 26, 2008).

Both of Roa's attorneys are personal injury lawyers at small or solo firms who appear to have limited experience practicing in federal court.  *See* Maria Christine Zieher, Esq., https://www.zieherlaw.com/copy-of-attorneys (last visited Sept. 24, 2024) (stating that Zieher's

---

[10] Roa also seeks costs incurred by Zieher.  (*See* Zieher Billing Records, Dkt. 262-5, at 1–4.)  Those are addressed in Discussion § IV.B, *infra*.

practice "focuses . . . in the areas of personal injuries" and that she has litigated cases "in State Courts throughout New York"); Principal Attorney, https://shalit-law.com/team/leo-shalit/ (last visited Sept. 24, 2024) ("The Law Office of Leo Shalit concentrates on personal injury . . . ."). As an initial matter, this Court has been unable to identify any federal decisions in which a court determined a reasonable hourly rate for either Zieher or Shalit.[11]  Based on a search of the New York State attorney database, Shalit appears to have been admitted to the bar in 2011, and Zieher in 2018.  Attorney Search, https://iapps.courts.state.ny.us/attorneyservices/search (last visited on Sept. 24, 2024).  This means that at the time the legal services in question were rendered (2022 and 2023), Shalit had over a decade of experience, but Zieher had only four or five years of experience.  When faced with a similar situation, another court in this District recently found an hourly rate of $250 to be reasonable for a personal injury attorney with four years of experience. *Fox*, 2020 WL 7223177, at *4–5 & n.5.  After all, "[t]he highest rates in this [D]istrict are reserved for expert trial attorneys with extensive experience before the federal bar."  *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012).  Moreover, in determining reasonable hourly rates, "[t]he size of the firm may be considered, as large firms tend to charge higher hourly rates than small firms." *Id.* at 299.

Taking into account Shalit and Zieher's areas of practice, seeming lack of experience in federal court, and their respective years of experience, this Court finds Shalit's hourly rate of $350 to be reasonable, but reduces Zieher's hourly rate to $250 per hour.

---

[11] This supports the Court's conclusion that both Zieher and Shalit have limited federal court experience.

2.     Unrelated and Redacted Time Entries

a.     Plaintiff's Counsel

Defendants argue that Plaintiff improperly seeks attorneys' fees for attorney time unrelated to the contempt proceedings by seeking compensation for all hours billed by Plaintiff's attorneys from November 1, 2022, through March 27, 2023, whether or not that time related to the contempt proceedings. (Defs.' Opp'n Ltr., Dkt. 267, at 5–6.) As explained above, the Court "is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items." *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 111 (E.D.N.Y. 2013) (quoting *Siracuse v. Program for the Dev. of Hum. Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *26 (E.D.N.Y. Apr. 30, 2012)). That said, a review of MLLG's billing records proves Defendants' accusation: Plaintiff seeks fees for attorney time billed for numerous matters *unrelated* to the contempt motion or Defendants' violation of the preliminary injunction. (*See generally* MLLG Billing Records, Dkt. 262-6.) These time entries include, for example, time spent reviewing documents related to Plaintiff's defamation claim, writing and revising Plaintiff's opposition to the motion to dismiss, and drafting a proposed amended complaint, among others. (*See, e.g.*, *id.* at ECF 16–17 (unrelated discovery matters, including training on discovery software, and service of amended complaint); *id.* at ECF 28 (opposition to motion to dismiss); *id.* at ECF 35 (opposition to motion to dismiss and preparation of proposed second amended complaint); *id.* at ECF 47 (review mailings related to defamation claim); *id.* at ECF 48 (conference regarding defamatory materials).) Indeed, a close look at MLLG's billing records reveals that there are *numerous* billing entries for attorney time unrelated to the contempt motion. (*See generally id.*) The Court is again troubled by MLLG's "efforts to inappropriately inflate their attorneys' fees," this time by including so many extraneous time entries. *Wang v. XBB, Inc.*, No. 18-CV-7341

14

(PKC) (ST), 2023 WL 2614143, at *5 (E.D.N.Y. Mar. 23, 2023), *recons. denied*, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024).  As a result, the Court reduces Plaintiff's attorney fee award by 30%.

Moreover, a small number of Plaintiff's attorneys' time entries are so heavily redacted that they are not visible at all or their substance is impossible to determine.  (*See, e.g.*, MLLG Billing Records, Dkt. 262-6, at ECF 1, 2, 23, 25.)  The Court therefore is unable to determine whether those time entries relate to the contempt motion or Defendants' violation of the Amended Injunction and March 2023 TRO, and does not award attorneys' fees for those time entries.  The Court further reduces Plaintiff's attorneys' fee award by 5% because of these redacted entries.

    b. <u>Roa's Counsel</u>

Roa's attorneys, Shalit and Zieher, each submitted their own time records.  (*See* Shalit Billing Records, Dkt. 262-4; Zieher Billing Records, Dkt. 262-5.)  Shalit seeks fees for only three time entries: one for his appearance at the contempt hearing, and two for "client communications." (Shalit Billing Records, Dkt. 262-4.)  Shalit's time at the contempt hearing is compensable. However, his entries for "client communications" are impermissibly vague because it is not clear what the subject of those communications was.  *See Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-8627 (SHS), 2019 WL 3773856, at *3 (S.D.N.Y. Aug. 12, 2019) (holding that descriptions such as "call with client" "are exactly the type of descriptions that courts have found to be impermissibly vague in the context of recovering attorneys' fees").  As a result, the Court awards Shalit's fee only for the time he spent at the contempt hearing (four hours).

That leaves Zieher.  She seeks compensation for 36.6 hours of billable time.  (Zieher Billing Records, Dkt. 262-5, at ECF 4.)  Like MLLG, she submitted time records that are at least in part unrelated to the contempt proceedings.  (*See generally* Zieher Billing Records, Dkt. 262-5.) Notably, her submitted time records seemingly include all of her time entries for her work on this

case from December 2022 until August 2023—nearly six months *after* the contempt hearing took place. (*Id.* at ECF 3–4.) Moreover, her billing records include over four-and-a-half hours spent drafting and filing a complaint after the contempt hearing took place and nearly three hours related to Defendants' motion to dismiss. (*Id.* at ECF 3–4.) Those few time entries alone represent over 20% of Zieher's billed time, and are plainly unrelated to the underlying contempt.[12] Zieher also has numerous time entries for calls with "Richard Rosenzweig, Esq.," but provides no context or additional information on the subject of the communications in all but one instance. (*See id.* at ECF 1–4.) These entries are impermissibly vague. *See Broker Genius Inc.*, 2019 WL 3773856, at *3. As a result of these vague and unrelated entries, the Court reduces Zieher's billable time by 40%.

### 3.  Block Billing

Defendants also argue that any fee award should be reduced because Plaintiff's attorneys engaged in block billing.[13] (Defs.' Opp'n Ltr., Dkt. 267, at 7.) "Block billing is the aggregation of multiple tasks into a single billing entry." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 370 n.3 (S.D.N.Y. 2015). Block billing is generally "disfavored" because it can "lack the specificity required for an award of attorneys' fees." *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724 (PGG), 2010 WL 451045, at *8 (S.D.N.Y. Feb. 9, 2010). That said, "it is not prohibited as long as the Court can determine the reasonableness of the work performed." *Id.* "Though courts disfavor block billing in general, it 'is most problematic where large amounts of time (e.g., five hours or more) are block billed,' thereby 'meaningfully cloud[ing] a reviewer's

[12] If these time entries are in fact somehow related to the contempt proceedings, Plaintiff has not carried its burden of demonstrating relevancy.

[13] The Court notes that Roa's attorneys, Shalit and Zieher, did not engage in block billing. (*See* Shalit Billing Records, Dkt. 262-4; Zieher Billing Records, Dkt. 262-5.)

ability to determine the projects on which significant legal hours were spent.'" *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) (alteration in original) (quoting *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015)).  Here, MLLG engaged in extensive block billing.  (*See generally* MLLG Billing Records, Dkt. 262-6.)  However, the vast majority, if not all, of the block-billed entries were for fewer than five hours and were very detailed, thereby allowing the Court to determine whether the time billed was productively spent.  *See Village of Pomona*, 188 F. Supp. 3d at 343–44 (declining to reduce fee award for block billing where the majority of block-billed entries were detailed and were for fewer than five hours).  Consequently, the Court declines to reduce Plaintiff's fee award on this basis.

## IV.   Costs

Plaintiff seeks to recover a total of $26,840.17 in costs related to the contempt motion. (Movants' Ltr. Mot., Dkt. 261, at 7.)  In addition, Roa seeks to recover $1,209.11 in costs incurred by his attorneys.  (*Id.* at 6.)  Costs "normally include[] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [to] fee-paying clients."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citation omitted).  The party seeking to recover costs bears the "burden in adequately documenting and itemizing the costs requested."  *Cangemi v. Town of East Hampton*, No. 12-CV-3989, 2023 WL 7660124, at *9 (E.D.N.Y. Dec. 19, 2012). For the reasons described below, Plaintiff's request for reimbursement of costs is granted in part and denied in part.  Plaintiff is awarded $11,036.60 in costs, and Roa is awarded $1,209.11 in costs.

A.      **Plaintiff's Costs**

1.    Roa's Working Time

Plaintiff seeks $10,190 in reimbursement for Roa's working time.  (Roa Time Records, Dkt. 262-9.)  Plaintiff, however, does not explain how Roa's working time is an "out-of-pocket expense[]" that would "normally [be] charged to fee-paying clients."  *Fisher*, 948 F.3d at 600; (*see* Movants' Ltr. Mot., Dkt. 261, at 7 (requesting a reimbursement for costs including "Roa's working time" without further explanation).  Nor can the Court understand how it would be.[14]  The Court therefore denies this request.

2.    Private Investigator

Plaintiff also requests $8,800 in reimbursement for private investigator services.  (MLLG Expenses, Dkt. 262-3.)  However, Plaintiff fails to explain how the private investigator's services were related to the contempt motion.  (*See generally* Movants' Ltr. Mot., Dkt. 261.)  One of Plaintiff's attorneys briefly mentioned at the contempt hearing that Plaintiff had hired a private investigator, (*see* 3/27/2023 Hearing Tr., Dkt. 199, at 136:10–12), and Levi stated in a declaration that MLLG hired a private investigator who "was instrumental in serving Defendants' private investigator with a subpoena and securing that private investigator's cooperation," (Daniella Levi Decl., Dkt. 262, ¶ 9).  These conclusory statements alone, however, are insufficient to demonstrate that the claimed amount of $8,800 in private investigator's fees were "*reasonable* out-of-pocket expenses . . . which are normally charged [to] fee-paying clients."  *Fisher*, 948 F.3d at 600 (emphasis added).  Accordingly, the Court awards only a $1,000 reimbursement of fees paid to the private investigator.

_____

[14] Plaintiff might have intended to pursue Roa's working time as a form of compensatory damages resulting from Defendants' contempt, but Plaintiff has waived any such request by failing to make it.  (*See* Movants' Ltr. Mot., Dkt. 261, at 6–7); *see also supra* Discussion § I.

3.      Deposition-Related Costs

Plaintiff seeks $8,595.01 in reimbursements for court reporter and videographer costs related to the deposition of Safa Gelardi, through which Plaintiff learned information that was crucial to its contempt motion.  (Daniella Levi Decl., Dkt. 262, ¶ 4; *see also* 3/27/2023 Hearing Tr., Dkt. 199, at 16:10–13, 120:24–121:16 (discussing the deposition in question).)  A reasonable client would pay such fees.  Consequently, these costs are compensable.  *See Manzo v. Sovereign Motor Cars, Ltd*., No. 08-CV-1229 (JG) (SMG), 2010 WL 1930237, at *10 (E.D.N.Y. May 11, 2010) (awarding costs for deposition transcripts) (collecting cases), *aff'd*, 419 F. App'x 102 (2d Cir. 2011) (summary order).  Plaintiff is awarded $8,595.01 in deposition-related costs.

4.      Meals, Postage, and Other Costs

Plaintiff also seeks reimbursement for a number of other costs, including $554.47 paid to "GoDaddy in connection with subpoenas [that were] issued for Plaintiff's contempt application," $1,043.47 in "transcript-related costs," $1,285.21 "for the service of subpoenas," $57.94 for postage and shipping, $320.93 in meal expenses, and $81.55 for parking.  (Daniella Levi Decl., Dkt. 262, ¶¶ 5–6, 10–14.)  For the reasons explained below, the Court awards a portion of the requested GoDaddy subpoena, transcript-related, and subpoena-service costs, and denies all of Plaintiff's other requests.

First, regarding the GoDaddy subpoena costs, (*see id*. ¶ 5), Plaintiff should have provided a more detailed explanation and supporting documentation for its GoDaddy subpoena request to enable the Court determine whether these costs were related to the contempt proceedings, as opposed to the case overall.  Nonetheless, the Court is aware that some GoDaddy records or information have been introduced as part of the contempt proceedings and that private companies charge for subpoena compliance, such as record-searching, copying, reproduction, and other

processing expenses.  The Court therefore grants 50% of the requested GoDaddy subpoena costs, or $277.24.

Second, regarding the "transcript-related costs," (*see id.* ¶ 10), Plaintiff again should have provided itemized receipts and/or information indicating what transcripts were purchased to support this request.  Because the Court assumes that Plaintiff has requested transcripts of the contempt-related court proceedings, it will award Plaintiff 50% of the requested transcript-related costs, or $521.74.

Third, regarding the subpoena-related costs, (*see id.* ¶ 11), while Plaintiff once again should have provided itemization and documentation supporting this request, the Court knows that witnesses had to be subpoenaed in connection with the contempt proceedings.  Therefore, the Court awards 50% of the requested subpoena-related costs, or $642.61.

That leaves Plaintiff's request for $57.94 for postage and shipping, $320.93 in meal expenses, and $81.55 for parking—all of which the Court denies.  Plaintiff does not specify what the postage and shipping costs were.  (*See* Daniella Levi Decl., Dkt. 262, ¶ 12 ("MLLG spent $57.94 for postage and shipping"); MLLG Expenses, Dkt. 262-3, at ECF 1, 3 (listing "Postage & Shipping" expenses without providing further information).)  Without further information, the Court is unable to determine whether these expenses were necessitated by the contempt hearing and/or Defendants' violation of the preliminary injunction.  Therefore, the Court declines to award these costs.

Plaintiff also seeks $320.93 in meal expenses for meal costs incurred the day of the contempt hearing.  (Daniella Levi Decl., Dkt. 262, ¶ 6.)  However, "meals that are not required by out-of-town travel are not compensable."  *Tatum v. City of New York*, No. 06-CV-4290 (PGG) (GWG), 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) (quoting *Lucky Brand Dungarees, Inc.*

*v. Ally Apparel Res.*, *LLC*, No. 05-CV-6757 (LTS) (MHD), 2009 WL 466136, at *6 (S.D.N.Y. Feb. 20, 2009)).  Plaintiff is a New York-based company "with its principal place of business in Queens County, New York." (Second Am. Compl., Dkt. 203, ¶ 4.)  Plaintiff's attendance at the hearing, therefore, did not necessitate out-of-town travel.  The Court denies this reimbursement request.  Finally, Plaintiff seeks $81.55 for its counsels' parking costs on the day of the contempt hearing.  (Daniella Levi Decl., Dkt. 262, ¶ 13.)  This request is denied because, like Plaintiff, Plaintiff's counsel is based in the New York area.  *See Lucky Brand Dungarees, Inc.*, 2009 WL 466136, at *7 (declining to award travel costs).

**B.    Roa's Costs**

Of Roa's two attorneys, only Zieher seeks reimbursement costs.  Specifically, she seeks $1,209.11 in incurred costs.  Those costs include $360.47 for "pre-action disclosure and RJI filing fees," (Zieher Billing Records, Dkt. 262-5, at ECF 1); $78.24 in postage for preservation letters, (*id.* at ECF 1, 3); and $770.40 for state court summons filing fees, (*id.* at ECF 2, 4).  In their letter, Plaintiff and Roa explain that Zieher "file[d] a pre-action discovery application, which resulted in obtaining crucial evidence from the private investigator Defendants hired to place the GPS device on [Roa's] vehicle." (Movants' Ltr. Mot., Dkt. 261, at 6.)  Movants further explain that this was "necessary because Safa perjured herself at her deposition in denying that she directed the private investigator to track Roa with a GPS device." (*Id.*)  The Court is satisfied that these costs were "reasonable out-of-pocket expenses incurred by [an] attorney and which are normally charged [to] fee-paying clients." *Fisher*, 948 F.3d at 600.  Consequently, the Court awards Roa $1,209.11 in costs.

V.      **Final Calculation**

Plaintiff requested $72,802.50 in attorneys' fees for MLLG's work. As explained above, the Court found MLLG's hourly rates to be reasonable, but reduced its award by 35% because many of the time entries in MLLG's billing records were unrelated to the underlying contempt and/or redacted. Therefore, MLLG's fee award is $47,321.63. At the same time, the Court declines to award any fees for work performed by DLA. Plaintiff is also awarded $1,000 for private investigator costs, $8,595.01 in reimbursements for court reporter and videographer costs, $277.24 in GoDaddy subpoena costs, $521.74 for transcript-related costs, and $642.61 for subpoena-related costs, for a total of $11,036.60 in costs.

Roa requested fees for two attorneys, Shalit and Zieher. Roa is awarded fees for four hours of Shalit's time at the rate of $350 per hour—that is, $1,400. Zieher's billable time of 36.6 hours, on the other hand, was reduced by 40%, meaning Roa is entitled to fees on only 21.96 hours of her work. The Court found that a reasonable rate for her time was $250 per hour. As a result, Roa is awarded $5,490 in fees for Zieher's work. Roa's total attorney fee award, then, is $6,890. Roa is also awarded $1,209.11 in costs.

## CONCLUSION

Based on the foregoing reasoning, the Court awards Plaintiff $47,321.63 in attorneys' fees and $11,036.60 in costs in connection with their contempt motion. The Court also awards Carlos Roa $6,890 in attorneys' fees and $1,209.11 in costs in connection with the contempt motion and Defendants' violation of the preliminary injunction. Defendants shall pay the awarded attorneys' fees and costs to Plaintiff and Roa, respectively, by November 25, 2024. Proof of payment shall be filed within one week of payment. Defendants are warned that the failure to timely pay the full amounts could result in further contempt sanctions and/or the imposition of interest.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  September 25, 2024
        Brooklyn, New York