**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

IME WATCHDOG, INC.,                                   Case No.: 1:22-cv-1032 (PKC) (JRC)

       **Plaintiff,**

    -against-

**SAFA ABDULRAHIM GELARDI, VITO**
**GELARDI, GREGORY ELEFTERAKIS, ROMAN**
**POLLAK, ANTHONY BRIDDA, IME**
**COMPANIONS LLC, CLIENT EXAM SERVICES**
**LLC, and IME MANAGEMENT & CONSULTING**
**LLC,**

       **Defendants.**

-----------------------------------------------------------------X

<br><br>

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. PROC. 11

<br><br>

      **MILMAN LABUDA LAW GROUP PLLC**
       Attorneys for Plaintiff
       3000 Marcus Ave., Suite 3W8
       Lake Success, NY 11042
       (516) 328-8899

      **SAGE LEGAL LLC**
       Attorneys for Plaintiff
       18211 Jamaica Avenue
       Jamaica, NY 11423-2327
       (718) 412-2421

## PRELIMINARY STATEMENT

Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants") intentionally withheld the existence of a March 1, 2024 Purchase Money Mortgage & Rent to Buy agreement from the Court while they made at least eight (8) misrepresentations that they were selling their home located at 148 Claypit Rd, Staten Island, NY (the "Staten Island Property") and were awaiting a closing date.  The Defendants also lied to the Court that the buyer backed out of the deal.  Defendants have engaged in a fraud upon this Court and the Plaintiff to prevent the attachment of the proceeds from the sale.   Severe sanctions are warranted under Rule 11 for this conduct.[1]

## STATEMENT OF FACTS

On February 29, 2024, this Court issued an order of pre-judgment attachment of the net proceeds from sale of the Staten Island Property (the "Order").  See ECF Docket Entry 284.  The Court also directed the Defendants to provide status reports regarding the closing date for the Staten Island Property.   See Text Only Orders dated March 1, 2024, March 19, 2024, March 29, 2014, April 12, 2024, May 2, 2024.

On July 29, 2024, this Court issued an order directing the Defendants to, in relevant part, "submit complete financial records to the Court, including bank statements and documentation of all rental agreements, real property, investments, and other assets" based on Safa's representations in Court that her and Vito were unable to afford paying the forensic examiner.  See Text Only Order dated July 29, 2024.

---

[1] To the extent that Plaintiff learns, after discovery on the issue, that Defendants' counsel and their real estate counsel were aware of the existence of the March 1, 2024 Purchase Money Mortgage & Rent to Buy when Defendants made these numerous misrepresentations to the Court, Plaintiff reserves the right to move for sanctions against them, as well.

The documents that Defendants produced pursuant to the July 29, 2024 Order establish unequivocally the Defendants' intent to end run the Order directing pre-judgment attachment of the Staten Island Property as well as their brazen material misrepresentations concerning their sale of their Staten Island Property.

Specifically, in response to the July 29, 2024 Order, the Defendants produced a document entitled "Purchase Money Mortgage & Rent to Buy" for the Staten Island Property, which was executed on March 1, 2024.  See Sealed ECF Docket Entry 379 at 16.  This reflects a blatant end-run around of this Court's February 29, 2024 Order – from just a day earlier – ordering attachment of the net proceeds from the Defendants' sale of the Staten Island Property.  The Purchase Money Mortgage & Rent to Buy also establishes that all of the representations made to this Court by Defendants concerning the sale of the Staten Island Property which sale was eventually purportedly "killed" by the purchaser were false.  This is particularly the case because the Defendants' agreement to rent the home was entered into with the putative purchaser, and because the agreement, a "rent to buy," effectively amounts to a sale.  Defendants have thus engaged in a fraud upon this Court and the Plaintiff to prevent an attachment of the proceeds from the sale.

Prior to the production of the Purchase Money Mortgage & Rent to Buy, this Court and the Plaintiff were none the wiser about this arrangement.  This is because the Defendants repeatedly made material misrepresentations and omissions concerning the status of the sale of the home.

On May 17, 2024, Defendants informed the Court "we have been advised by the sellers' attorney that the purchaser 'killed the deal' and that the sale is thus not expected to close."  See ECF Docket Entry 334.  The identity of that seller was Anthony Masullo.  See ECF Docket Entry 280-2.  However, the Purchase Money Mortgage & Rent to Buy produced by Defendants on

August 26, 2024 in response to the July 29, 2024 Order establishes that this representation was entirely false.

Indeed, instead of proceeding with the sale and placing the proceeds in escrow as required by the Order of a pre-judgment attachment issued on February 29, 2024, the Gelardis entered into the Purchase Money Mortgage & Rent to Buy agreement with Anthony Masullo – the original putative purchaser, pursuant to the Contract of Sale dated February 2, 2024 for the Staten Island Property – on March 1, 2024, just a day later.  See ECF Docket Entry 280-3.

Notably, on the same day that the Gelardis entered into the Purchase Money Mortgage & Rent to Buy agreement, they misrepresented to the Court "we have conferred with real estate counsel for Safa and Vito concerning the closing of the sale of their Staten Island home and the payment of the net proceeds into escrow, and have been advised that the closing has not yet been scheduled, despite this Court's Order directing my office to account for the net sale proceeds as if it were a fact that the closing would be held today."  See ECF Docket Entry 287.  As set forth above, this was also a materially false statement.

Then, on March 8, 2024, Defendants informed the Court "we have been advised by the real estate attorney for Safa and Vito that the closing of the sale of their Staten Island home has not yet been scheduled. We have further been advised that the purchaser's loan application remains "in underwriting" and that "the lender has not cleared the loan for closing."  See ECF Docket Entry 297.  This was similarly a false statement.

On March 15, 2024, Defendants informed the Court that no closing date was scheduled.  See ECF Docket Entry 300.  This was also a misrepresentation because the Defendants pivoted to a "rent-to-buy" agreement to avoid a closing from going forward indefinitely in order to enjoy the benefit of receiving the rent proceeds without having to place the sale proceeds in escrow.

On March 28, 2024, Defendants again informed the Court that there was no closing scheduled.  See ECF Docket Entry 308.  Again, there was no reason to schedule a closing in light of the "rent-to-buy" agreement and, as such, Defendants engaged in making material misrepresentations to this Court.

On April 5, 2024, Defendants informed the Court that the closing was scheduled for April 12, 2024.  See ECF Docket Entry 309.   However, according to the terms of the "rent-to-buy" agreement, no such closing was in order, as it provides that payment of the purchase amount was to be made over time until paid in full.  See Sealed ECF Docket Entry 379.

On April 11, 2024, Defendants informed the Court that the closing would not occur the following day as scheduled and "we have further been advised that the lender's attorney does not yet have clearance to close."  See ECF Docket Entry 310.

On April 19, 2024 and May 2, 2024, Defendants informed the Court that no closing date had been scheduled.  See ECF Docket Entries 314 & 320.

Each of these representations were false as the Gelardis had entered into the Purchase Money Mortgage & Rent to Buy agreement on March 1, 2024 to avoid having the proceeds attached.  Defendants intentionally withheld the existence of the Purchase Money Mortgage & Rent to Buy agreement from the Court while they made numerous misrepresentations that Defendants were selling the house, were awaiting a closing date, and that the buyer backed out of the deal when, in fact, no closing was to occur due to the March 1, 2024 rent-to-buy agreement.

While this conduct would be considered utterly shocking in any other case, it is par for the course for the Defendants, who have failed to obey virtually every Order this Court has issued and have already been found in contempt of this Court's prior Orders.  Defendants' conduct is designed

to flout this Court's authority, and prevents justice from being served by those, like Plaintiff, availing themselves of the Court's power.

## STANDARD OF REVIEW

Pursuant to Rule 11, by presenting to the court a pleading and paper, such as letters to the Court, the signing attorney "certifies" that:

> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2)   the claims, defenses, and other legal contentions are warranted by existing law or by a non frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

See Fed. R. Civ. P. 11(b)(1)-(3).  Violations of Rule 11 are subject to sanction by the Court, the purpose of which is to deter baseless filings.  See Caisse Nationale de Credit Agricole-CNCA, New York Branch v Valcorp, Inc., 28 F.3d 259, 266 (2d Cir. 1994).

Rule 11 is violated if the factual allegations are "utterly lacking in support." See O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir.1996).  In deciding whether a pleading or other filing violates Rule 11, the Court applies an "objective standard of reasonableness." See Catcove Corp. v. Patrick Heaney, 685 F.Supp.2d 328, 337 (E.D.N.Y.2010) (citing cases).

The sanction itself is left to the broad discretion of the Court.  Caisse Nationale, 28 F.3d 259, 266 (2d Cir. 1994) (citing cases).

Before a court may consider the merits of a Rule 11 motion, the movant must have complied with the 21-day safe-harbor notice required under Rule 11(c)(2) by (1) first serving a motion for sanctions on the opposing party, and (2) providing the opposing party with a 21-day

period to withdraw or appropriately correct the challenged document before a motion for sanctions is filed or presented to the court. See Fed. R. Civ. P. 11. "The safe-harbor provision is a strict procedural requirement." See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012); see also Guarino v. Resciniti (In re Resciniti), 2019 Bankr. LEXIS 951, 2019 WL 1451278, at *1 (Bankr. E.D.N.Y. Mar. 29, 2019).

If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court may impose sanctions on an attorney or party, either by motion or on its own initiative. See Fed. R. Civ. P. 11(c)(1)-(3).

In addition, the proposed Rule 11 motion must be served upon the opposing party prior to the motion being filed with the Court so that the opposing party will have "notice of the alleged violation and an opportunity to respond before sanctions are imposed." See Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Further,

> Rule 11 and principles of due process require that "the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (3d Cir. 1999). "Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable." Id. (citation omitted); accord Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 389 (2d Cir. 2003).

See Star Mark Mgmt., Inc., 682 F.3d at 175.

In Star Mark Mgmt., Inc., the Second Circuit held that service of an informal letter outlining the basis for sanctions and an attached notice of motion meets the procedural requirements to trigger the safe-harbor period even though the defendant did not serve any supporting affidavits or memorandum of law. Id. at 175-77 citing Ideal Instruments, Inc. v. Rivard

Instruments, Inc., 243 F.R.D. 322, 339 (N.D. Iowa 2007) ("Rule 11 says nothing about requiring service of the *brief* in support of a Rule 11 motion to trigger the twenty-one day 'safe harbor'").

In its analysis, the Second Circuit reasoned that requiring a party to go through the expense of preparing a fully supported motion with a memorandum of law and exhibits would undermine one of the main purposes of the safe-harbor provision, *i.e.*, "to reduce, if not eliminate, the unnecessary expenditure of . . . adversary resources." Id. at 177 (citing Lawrence v. Richman Grp. Of CT LLC, 620 F.3d 153, 158 (2d Cir. 2010) (*per curiam*).

Here, Plaintiff served a Notice of Motion and a Rule 11 Safe Harbor Notice on August 28, 2024. See Declaration of Jamie S. Felsen, Esq. (hereinafter "Felsen Decl."), ¶ 3, Exhibit A.  The Rule 11 Safe Harbor Notice outlined the reasons why sanctions are warranted.  Despite the unequivocal notice, Defendants have refused to withdraw their material misrepresentations and omissions and otherwise comply with the pre-judgment attachment Order, forcing Plaintiff to engage in additional costly motion practice.  Based on the contents of Notice of Motion and the safe harbor notice, Defendants received sufficient notice as required by Rule 11 such that the procedural prerequisites for Plaintiff's motion for sanctions have been satisfied.

## ARGUMENT

## POINT I

### DEFENDANTS SHOULD BE SANCTIONED

**A.  Defendants Were Afforded a Safe Harbor**

Pursuant to Rule 11(c), if after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

On August 28, 2024, a notice of motion was served on Defendants and their counsel along with a letter explaining the basis for the anticipated motion and the directive that if (i) Defendants and their counsel do not acknowledge that they made the misrepresentations to the Court as outlined in Plaintiff's August 26, 2024 letter to the Court (ECF Docket Entry 377); (ii) Defendants do not place all rental income for the Staten Island Property received since March 1, 2024 in escrow together with all future rental income received; and (iii) Defendants do not proceed immediately with the sale of the Staten Island Property to Anthony Masullo within twenty-one (21) days upon service, the instant motion would be filed with the Court.  See Felsen, Decl., Ex. A.[2]  Defendants failed to take any of the demanded actions.

Instead, Defendants' counsel merely informed Plaintiff that the representations Defendants' counsel made to this Court were based on information provided to Defendants' counsel by the Gelardis' real estate attorney.  Although Plaintiff will obtain discovery from Defendants' counsel in this case and the real estate attorneys involved in the Staten Island Property to determine whether they were aware of the existence of the March 1, 2024 Purchase Money Mortgage & Rent to Buy agreement when Defendants made material misrepresentations to this Court, which would warrant sanctions being issued against them, at this time, sanctions are certainly warranted at least against the Defendants as they knew about the existence of the March 1, 2024 Purchase Money Mortgage & Rent to Buy agreement (which they executed) when they made repeated material misrepresentations to the Court.

**B.  Sanctions Are Warranted**

---

[2] Service of a notice of motion explaining the basis for the motion under Rule 11 is sufficient to satisfy the Rule 11 safe harbor provision.  See Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170 (2d Cir. June 13, 2012).

The misrepresentations made to this Court by Defendants violate Rule 11 because they do not have factual support and were presented for an improper purpose, including to unnecessarily delay and needlessly increase the cost of litigation.

Indeed, the existence of the Purchase Money Mortgage & Rent to Buy executed by Defendants on March 1, 2024 establishes the misrepresentation made to this Court by Defendants on May 17, 2024 that the sale of their Staten Island Property was "killed" by the purchaser was false. Moreover, Defendants repeatedly lied to this Court - on March 1, March 8, March 15, March 28, April 5, April 11, April 19, and May 2 - after Defendants entered into the Purchase Money Mortgage & Rent to Buy on March 1, 2024 about an impending closing on the Staten Island Property. There was no impending closing as Defendants entered into the Purchase Money Mortgage & Rent to Buy on March 1, 2024 to avoid a closing and prevent an attachment of the proceeds from the sale.

Simply stated, Defendants intentionally withheld from the Court the fact that, instead of the sale of the property and placement of the proceeds in escrow, they entered into a Purchase Money Mortgage & Rent to Buy agreement, while they made at least eight (8) misrepresentations that Defendants were selling the house and were awaiting a closing date and ultimately lying to the Court that the buyer backed out of the deal. The truth is there was no intention of having a closing following the March 1, 2024 rent-to-buy agreement because of the February 29, 2024 Order of attachment. Defendants have engaged in a fraud upon this Court and the Plaintiff to prevent the attachment of the proceeds from the sale.

As discussed *supra*, Defendants' conduct is unsurprising despite the fact it is shocking that they have gone through such great lengths to circumvent this Court's Orders. Defendants

9

frequently defend their conduct by novel interpretations of the law and word-smithing that amounts to sophistry.

In its October 20, 2023 Order, this Court issued a stern warning to Defendants' counsel about making any future false, disingenuous, and/or irresponsible claims and arguments which could result in sanctions and/or findings of contempt:

> The Court found Defendants' arguments and defense counsel's credibility troubling throughout the Court's probing of the Client Exam Services issue. Defense counsel opened the March 27, 2023 hearing by unequivocally asserting that "there's no connection" between Defendants and Client Exam Services, and boldly stated that "[Defendants] have nothing to do with Client Exam Services." (March 2023 Tr. 24:13–16.) However, Beibin's testimony during the hearing plainly revealed Safa's integral role in creating Client Exam Services, and her close— even familial—relationship with Client Exam Services' managers, Gutierrez and "Sammy." Thus, after Beibin's testimony, defense counsel conceded "[t]here's no question, Judge, of what you've heard [from Beibin] and I'm not denying that . . . [it] leads back to [Safa]." (Id. 126:3–5.) Defense counsel is again warned that future false, disingenuous, and/or irresponsible claims and arguments could result in sanctions and/or findings of contempt.

ECF Docket Entry 254 at f.n. 11.  Defendants have not heeded this warning by virtue of entering into the rent-to-buy agreement where they will undoubtedly argue there is no need to deposit the proceeds of the rent received because no "sale" occurred when, in fact, it has.

Rule 11(c)(4) provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Based on the egregious conduct of Defendants as described herein, their fraud upon this Court and the Plaintiff, and what amounts to a pervasive pattern and practice of poo-pooing this Court's Orders, severe sanctions are warranted, including (i) the forced sale of the Staten Island

Property; (ii) the placement of all rental income received from March 1, 2024 in escrow together with all future rental income received by Defendants; (iii) payment of Plaintiff's attorneys' fees for filing this motion; and (iv) the payment of monetary sanctions.

Defendants' repeated perjury and misrepresentations to this honorable Court should not go unpunished, and Plaintiff should not be forced to expend attorneys' fees uncovering and exposing lie after lie like an uninitiated sous chef peeling onions.

Dated: Lake Success, New York
          September 26, 2024

                                        **MILMAN LABUDA LAW GROUP PLLC**

                                        By:      /s/ Jamie S. Felsen
                                                 Attorneys for Plaintiff
                                                 3000 Marcus Ave., Suite 3W8
                                                 Lake Success, NY 11042
                                                 (516) 328-8899

Dated: Jamaica, New York
          September 26, 2024

                                        **SAGE LEGAL LLC**

                                        By:      /s/ Emanuel Kataev, Esq.
                                                 Attorneys for Plaintiff
                                                 18211 Jamaica Avenue
                                                 Jamaica, NY 11423-2327
                                                 (718) 412-2421