UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IME WATCHDOG, INC.,

                Plaintiff,

                              Case No.: 1:22-cv-1032 (PKC)(JRC)

       -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                Defendants.
-----------------------------------------------------------------X


### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION


**WARNER & SCHEUERMAN**
Attorneys for Defendants
Safa Abdulrahim Gelardi, Vito Gelardi
and IME Companions, LLC
6 West 18th Street, 10th Floor
New York, New York 10011
(212) 924-7111

-1-

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

STATEMENT OF FACTS...................................................................................................2

    The Order Of Attachment.........................................................................................3

    The July 29 Order.....................................................................................................5

    Plaintiff's Attorneys Have Been Provided With
    Documentary Evidence Refuting Their False Accusations.......................................7

ARGUMENT.....................................................................................................................10

POINT I:     PLAINTIFF'S REQUEST FOR RULE 11 SANCTIONS
            SHOULD BE DENIED AS DEFECTIVE ON ITS FACE............................9

POINT II:    PLAINTIFF'S REQUEST FOR RULE 11 SANCTIONS IS MERITLESS................11

POINT III:   PLAINTIFF IS NOT ENTITLED TO ANY INJUNCTIVE RELIEF.........................17

POINT IV:   PLAINTIFF IS NOT ENTITLED TO RULE 37 SANCTIONS................................18

POINT V:    DEFENDANTS ARE ENTITLED TO COSTS AND ATTORNEYS'
            FEES FOR OPPOSING PLAINTIFF'S BASELESS RULE 11 MOTION................18

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.,
758 F.Supp.2d 153 (E.D.N.Y. 2010)...................................................................................10

Desilva v. North Shore-Long Island Jewish Health System, Inc.,
27 F.Supp.3d 313 (E.D.N.Y. 2014)...................................................................................16

Falso v. Rochester City School Dist., 784 F.Supp.2d 226 (W.D.N.Y. 2011)......................................10

Intravaia ex rel. Intravaia v. Rocky Point Union Free School Dist.,
919 F.Supp.2d 285 (E.D.N.Y. 2013)...................................................................................10

Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58 (2nd Cir. 2012)..............................16

Kiobel v. Millson, 592 F.3d 78 (2nd Cir. 2010)...................................................................16

Lee v. Grand Sichuan Eastern (N.Y.) Inc., 2014 WL 199512 (S.D.N.Y. 2014)..................................18

Safe-Strap Co. v. Koala Corp., 270 F.Supp.2d 407 (S.D.N.Y. 2003)...................................................19

Storey v. Cello Holdings, L.L.C., 347 F.3d 370 (2d Cir.2003).........................................................16

Williamson v. Recovery Ltd. Partnership, 542 F.3d 43 (2nd Cir. 2008)..............................................10

**Statutes**

Fed. R. Civ. P. 11...............................................................................................passim

Fed R. Civ P. 17.......................................................................................................18

## PRELIMINARY STATEMENT

Defendants Safa Abdulrahim Gelardi ("Safa"), Vito Gelardi ("Vito") and IME Companions LLC ("Companions")[1] respectfully submit the instant Memorandum of Law in opposition to the motion of plaintiff IME Watchdog, Inc. ("Plaintiff") for an Order:

(1)     Pursuant to Rule 37 of the Red. R. Civ. Proc. for violating this Court's July 29, 2024 Order:

(a)     directing Defendants to submit complete financial records to the Court, including bank statements and documentation of all rental agreements, real property, investments, and other assets;

(b)     directing Defendants to submit a sworn declaration stating that no other bank accounts exist or have existed for any of the Defendants and any of their businesses in the last two (2) years other than those identified in the documents produced by Defendants in ECF Docket Entry 379;

(c)     directing Defendants to pay civil penalties and Plaintiff's attorneys' fees; and

(2)     Pursuant to Rules 11(b) and (c) of the Fed. R. Civ. Proc., 28 U.S.C. § 1927, and this Court's inherent power, for making numerous misrepresentations that Defendants were selling their Staten Island home and were awaiting a closing date and that the buyer backed out of the deal:

---

[1]     Safa, Vito and Companions will sometimes be referred to as "Defendants."  Safa and Vito will sometimes be referred to as the "Individual Defendants."

-1-

(a)     forcing the sale of Defendants' Staten Island home located at 148 Clay Pitt Rd., Staten Island NY 10309;

(b)     the payment of monetary sanctions by Defendants and their counsel[2];

(c)     the payment by Defendants and their counsel of Plaintiff's attorneys' fees incurred for filing this motion; and

(d)     requiring Defendants to place all rental income received since March 1, 2024 in escrow together with all future rental income received until the sale of the home.

## STATEMENT OF FACTS

On February 23, 2024, Plaintiff filed a emergency motion for a temporary restraining order regarding the Individual Defendants' pending sale of their Staten Island home. (Dkt. No. 278). Plaintiff's attorneys represented to the Court that after it had ordered Safa on February 21, 2024, to "appear in Court on March 13, 2024 with regard to Plaintiff's renewed motion seeking an Order requiring Safa to place all proceeds from the sale of her Staten Island property in escrow," the Individual Defendants went into contract on the sale of their Staten Island home on "[t]he following day, February 22, 2024." (Dkt. No. 178).

This was a misrepresentation of fact by Plaintiff's attorneys intended to mislead this Court into believing that the Individual Defendants were hastily selling their Staten Island home to circumvent a potential Order of Attachment. The truth is that the signed written offer to purchase was executed on January 24, 2024, and that the contract of sale was fully executed on February 6,

---

[2]     Plaintiff has withdrawn its request for sanctions against Defendants' counsel although such request remains in its notice of motion.

-2-

2024, which was **before** this Court's February 21, 2024 Order. (Ex. A)[3]. Plaintiff's attorneys simply lied to this Court about the timing of the contract of sale in Plaintiff's "emergency" application.

In their reply submission on Plaintiff's emergency application, Plaintiff's attorneys stated: "Plaintiff submits this reply letter in further support of its motion for a temporary restraining order given the urgency of the motion now that there is a March 1, 2024 closing date on the Staten Island property, which is *this Friday*." (Dkt. No. 283).

Plaintiff's attorneys' representation to the Court that "there is a March 1 2024 closing date" was similarly false. The truth is that March 1, 2024, was simply the "on or about" closing date in the contract of sale, with the sale being contingent upon the purchaser obtaining a mortgage commitment and selling his Brooklyn property. (Ex. A). Plaintiff's attorneys simply lied to this Court about the alleged "March 1, 2024 closing date."

**The Order Of Attachment.**

On February 29, 2024, and in reliance upon Plaintiff's attorneys' misrepresentation regarding the "March 1, 2024 closing date," this Court issued an Order attaching the net proceeds from the Individual Defendants' sale of their Staten Island home (the "Attachment Order"). (Dkt. No. 284). This Court held:

> Pursuant to CPLR § 6201(3), the Court orders attachment of the net proceeds from the Individual Defendants' sale of the Staten Island Property. The Individual Defendants are further directed to provide an accounting of all funds disbursed as part of the sale, including all closing costs, and proof that the net proceeds from the sale were deposited in the escrow account of their attorneys in this matter, **within fourteen (14) days of the closing**, and in any event, no later than **March 15, 2024**."

---

[3]    Letters in parentheses preceded by "Ex." cite to Defendants' exhibits attached to the Declaration of Jonathon D. Warner, Esq.

(Dkt. No. 284).

This Court expressly noted at pg. 4 of its Attachment Order that "[o]n February 28, 2024, Plaintiff filed a reply, indicating that the Individual Defendants were scheduled to close on the sale of the Staten Island Property on March 1, 2024. (284). It is thus clear that Plaintiff's attorneys' misrepresentation to the Court concerning the closing date was a material misrepresentation of fact.

It is significant to note that this Court did not order the Individual Defendants to proceed with the sale. Nor could any such Order have been issued by this Court for numerous reasons, including the fact that a sale requires a ready, willing and able buyer. This Court merely ordered that the net sale proceeds, if any, be attached. The Individual Defendants were free to pull out of the transaction without closing if they so desired. The only legal consequences arising out of any such decision would be the possibility of a specific performance action brought by the purchaser.

Defendants' counsel immediately contacted the Individual Defendants' real estate attorney to assure compliance with the February 29 Order. Defendants' counsel wrote:

> Please see below Minute Order of Judge Pamela Chen directing that the net proceeds from the sale of the premises known as 148 Clay Pit Road, Staten Island, New York, not be released to the sellers and instead be delivered to Warner & Scheuerman, as attorneys, to be held in escrow. I also attach the Judge's Memorandum & Order dated February 29, 2024.
>
> Warner & Scheuerman will also need you to deliver with the escrow check any HUD Settlement Statement or other document reflecting charges against the sale proceeds at the closing, including any closing statement prepared by your office.
>
> It is absolutely imperative that you comply with the Judge's Order.
>
> Thank you for your anticipated cooperation.

-4-

(Ex. B). Defendants' counsel was informed by real estate counsel that no closing had been scheduled.

On March 1, 2024, and based upon the information supplied by real estate counsel, Defendants' counsel informed the Court that no closing had been scheduled, and that the sale was contingent upon the purchaser obtaining a mortgage and selling another residence. (Dkt. No. 287). The Individual Defendants were thereafter directed by the Court to provide a series of status reports, and their litigation attorneys did so based upon statements made by real estate counsel. These statements – all of which were true to the best of Defendants' counsel's knowledge – now serve as the purported basis for Plaintiff's request for Rule 11 sanctions. Defendants' counsel eventually informed the Court on May 17, 2024 that we had "been advised by the sellers' attorney that the purchaser 'killed the deal' and that the sale is thus not expected to close." (Dkt. No. 334). The purchaser was Anthony Masullo ("Masullo"). (Ex. A).

**The July 29 Order.**

On July 29, 2024, this Court directed Defendants to provide financial records to the Court to verify their claim that they lacked sufficient funds to pay the court-appointed forensic examiner in full (the "July 29 Order"). The July 29 Order arose out of Safa's offer to the Court at the conclusion of the July 29th omnibus hearing to produce financial records showing that the Defendants lacked the means to pay the forensic examiner. (Ex. C). Safa stated: "I will give you all our bank statements, anything that you ask for, to prove to you that there's no possible way I could come up with something like that in thirty days" (Ex. C, at pg. 276, lines 13-15) and that "I will gather all the information you need to see for yourself that we are living paycheck to paycheck" (Ex. C, at pg. 279, lines 17-18). This Court stated:

> So you have two weeks in which to report back on your efforts to come up with a compromise deal with BRG. You will tell me exactly what it is that has been accepted, if anything has been negotiated.
>
> And then also, you will turn over all of your financial records, such as rental agreements, et cetera, so that I can see exactly –... – whether or not you have the means to pay this. Because it is a debt that's been outstanding for far too long with no effort, no seeming effort to try to pay it.

(Ex. C, at pg. 280, lines 8-20).

Defendants complied with the July 29 Order on August 27, 2024. (Dkt. No. 378). Included among the documents provided by Defendants was an agreement between the Individual Defendants and Masullo titled "Purchase Money Mortgage Note & Rent To Buy" which was dated March 1, 2024 (the "Rental Agreement"). The Rental Agreement requires Masullo to pay the sum of $4,516.12 every month "to Mr. Cooper, 5801 Postal Road, Cleveland, OH 44181 or at a different place if required by the Note Holder." (Ex. F). Mr. Cooper is the holder of the mortgage encumbering the Individual Defendants' Staten Island Home. (Ex. D). The Individual Defendants' monthly mortgage statement shows that their monthly mortgage payment is $4,516.22. (Ex. D). As such, the Rental Agreement requires Masullo to pay the Individual Defendants' mortgage payment while he resides at their Staten Island Home. Pursuant to the Rental Agreement, the Individual Defendants are not receiving any monthly rent from Masullo. The Individual Defendants voluntarily produced the Rental Agreement for the Court's review, notwithstanding Plaintiff's attorneys' allegation that the Rental Agreement constitutes proof of a fraud being practiced upon the Court through a series of misrepresentations by Defendants' counsel.

**Plaintiff's Attorneys Have Been Provided With
Documentary Evidence Refuting Their False Accusations.**

On August 28, 2024, plaintiff's counsel served Defendants' counsel with a "safe harbor notice" which gave Defendants and their attorneys twenty-one days to: (a) acknowledge that Defendants and their attorneys made the misrepresentations to the Court as outlined in Plaintiff's August 26, 2024 letter to the Court; (b) place all rental income for their Staten Island home received since March 1, 2024 in escrow together with all future rental income received; and (c) proceed immediately with the sale of the Staten Island home to Masullo.

Plaintiff's safe harbor notice referenced Plaintiff's sanctions motion filed on August 27, 2024. (Dkt. No. 377). Plaintiff's sanctions motion accused Defendants and their attorneys of, among other things, making false statements to the Court concerning the status of the sale of the Staten Island home. Plaintiff alleged that the Rental Agreement "establishes that all of the representations made to this Court by Defendants and their counsel concerning the sale of their Staten Island house that purportedly was 'killed' by the purchaser were false and that Defendants and their counsel have engaged in a fraud upon this Court and the Plaintiff to prevent the proceeds from the sale to be attached." (Dkt. No. 377).

Defendants responded to Plaintiff's safe harbor notice on September 6, 2024. (Ex. E). Defendants advised Plaintiff that its safe harbor notice was rejected as defective due to Plaintiff's failure to comply with the separate motion and safe harbor provisions of Rule 11. Indeed, Plaintiff's accompanying notice of motion demanded various form of relief in addition to Rule 11 sanctions (as does the instant motion). Defendants further advised Plaintiff that its accusations were baseless where all statements made in the status reports to the Court concerning the sale of the Staten Island home were made for the proper purpose of advising the Court of the status of the sale and

were based upon information supplied by the Individual Defendants' real estate counsel. Defendants stated that all statements made to the Court concerning the sale of the Staten Island home were truthful to the best of Defendants' knowledge and were based upon Defendants' counsel's reasonable and good faith investigation into the facts. Defendants's counsel provided Plaintiff with copies of all emails exchanged with real estate counsel concerning the status of the closing and a summary of events prepared by real estate counsel with supporting documentation. (Ex. E).

The summary of events prepared by real estate counsel torpedoes Plaintiff's accusations of wrongdoing and confirms that it is Plaintiff's attorneys who have been untruthful with the Court. (Ex. A). Defendants' real estate counsel stated that:

a.      He received an Offer to Purchase signed by all parties on January 26, 2024, and that the contract of sale was fully executed on February 6, 2024. (Plaintiff's attorneys previously misrepresented to this Court that "on February 22, 2024, Safa went into contract on the sale of her Staten Island property" to bolster their false allegation that the Individual Defendants were attempting to circumvent this Court's Order of February 21, 2024).

b.      The Contract of Sale was contingent upon Masullo's sale of certain property in Brooklyn and obtaining of a mortgage.

c.      He received a notice from Masullo's attorney on April 1, 2024, that Masullo was seeking to enter into a 1031 like exchange with regard to the purchase of the Staten Island Home. Real estate counsel provided documentary proof of the proposed 1031 exchange. Real estate counsel stated that the Individual Defendants had no objection to the 1031 exchange.

-8-

   d. He spoke with Masullo's attorney on April 4, 2024, and was informed that "his client's loan was not clear nor did they have a mortgage commitment." Real estate counsel stated that Masullo's attorney assured him that a loan commitment would be forthcoming.

   e. The transaction was terminated weeks later "based on the inability of the purchaser to both obtain financing, sell his Brooklyn property on which this deal was contingent or obtain approval for a 1031 exchange from a suitable trustee" and that the "down payment funds were returned to the purchaser attorney."

(Ex. A).

   Plaintiff's attorneys were provided with a copy of real estate counsel's summary, including the attachments which clearly and unequivocally showed that the sale was still pending as of April 2024, when Masullo was attempting to complete a 1031 like exchange through National Granite 1031 Services, Inc.. Plaintiff's attorneys know full well that if a fraud was practiced upon the Court by the Individual Defendants in connection with the sale of the Staten Island home, then real estate counsel, Masullo, Masullo's attorney, and the 1031 exchange company retained by Masullo participated in the fraud as well. Plaintiff nevertheless filed its Rule 11 motion, without regard for the documentary evidence provided to Plaintiff establishing the truth of the challenged statements. Plaintiff's attorneys want this Court to sanction the Individual Defendants for making false statements to the Court, although their real estate attorney has confirmed the truth of all statements made by the Individual Defendants. It defies credulity for Plaintiff's attorneys to suggest that they know more about the underlying real estate transaction than real estate counsel and to demand Rule 11 sanctions based upon such suggestion.

## ARGUMENT

### POINT I

### PLAINTIFF'S REQUEST FOR RULE 11 SANCTIONS SHOULD BE DENIED AS DEFECTIVE ON ITS FACE.

Plaintiff's motion seeks various forms of relief, including Rule 11 sanctions "for making numerous misrepresentations that Defendants were selling their Staten Island home and were awaiting a closing date and that the buyer backed out of the deal." In addition to Rule 11 sanctions arising out of Defendants' alleged misrepresentations to the Court, Plaintiff seeks a mandatory injunction forcing the sale of the Individual Defendants' Staten Island home; a mandatory injunction requiring the Individual Defendants to place all rental income received since March 1, 2024 in escrow together with all future rental income received until the sale of the Staten Island home; and Rule 37 sanctions arising out of the Defendants' alleged failure to comply with this Court's July 29 Order. Plaintiff's motion is defective on its face for violating the separate motion rule of Rule 11.

Rule 11(c)(2) states that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." It is well-settled that a motion for Rule 11 sanctions should be denied as procedurally defective where the moving has requested other forms of relief. See Williamson v. Recovery Ltd. Partnership, 542 F.3d 43 (2nd Cir. 2008); Intravaia ex rel. Intravaia v. Rocky Point Union Free School Dist., 919 F.Supp.2d 285 (E.D.N.Y. 2013); Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq., 758 F.Supp.2d 153 (E.D.N.Y. 2010); Falso v. Rochester City School Dist., 784 F.Supp.2d 226 (W.D.N.Y. 2011).

Plaintiff's motion for Rule 11 sanctions must be denied as procedurally defective where Plaintiff has tacked on to its Rule 11 motion requests for various other forms of relief, including discovery sanctions and mandatory injunctive relief.

## POINT II

### PLAINTIFF'S REQUEST FOR RULE 11 SANCTIONS IS MERITLESS

In the event this Court entertains Plaintiff's defective Rule 11 motion, Plaintiff's motion should be denied as baseless where Plaintiff has fallen far short of establishing that the Individual Defendants made any misrepresentations to the Court in connection with the status of the closing on the sale of their Staten Island home. Indeed, all statements to the Court were based upon information provided by real estate counsel who had personal knowledge of the facts and no reason whatsoever to be untruthful.

On March 1, 2024, Defendants's counsel advised the Court that "we have conferred with real estate counsel for Safa and Vito concerning the closing of the sale of their Staten Island home and the payment of the net proceeds into escrow, and have been advised that the closing has not yet been scheduled, despite this Court's Order directing my office to account for the net sale proceeds as if it were a fact that the closing would be held today." (Dkt. No. 287). While Plaintiff alleges in its Rule 11 motion that this was "a materially false statement" by Defendants, the documentary evidence shows that the only false statement to this Court concerning the closing was Plaintiff's attorneys' bold-faced lie in its emergency application that the closing was scheduled for March 1, 2024.

On March 8, 2024, Defendants' counsel informed the Court that: "[W]e have been advised by the real estate attorney for Safa and Vito that the closing of the sale of their Staten Island

home has not yet been scheduled.  We have further been advised that the purchaser's loan application remains "in underwriting" and that the lender has not cleared the loan for closing."  (Dkt. No. 297). While Plaintiff asserts that "[t]his was similarly a false statement," the documentary evidence shows that it is Plaintiff's attorneys who have made a false statement to the Court by falsely accusing Defendants' counsel of misrepresenting their communications with real estate counsel.  Indeed, Defendants' March 8th submission was made after real estate counsel emailed Defendants' counsel on March 7th that: "Loan not clear still in underwriting of course before closing I will reach out to you to confirm."  (Ex. B).  Defendants' March 8th submission accurately set forth the facts conveyed by real estate counsel.

On March 15, 2024, Defendants' counsel informed the Court that no closing date was scheduled.  (Dkt. No. 300 ).  While Plaintiff's attorneys state that "[t]his was also a misrepresentation," the truth remains that no closing was ever scheduled.

Real estate counsel's subsequent emails prove that all of Defendants' statements to the Court concerning the sale of the Staten Island home were truthful and accurate.  On March 28, 2024, real estate counsel emailed: "We are getting very close.  I believe we should be scheduled to close next week."  (Ex. B).  In reliance upon real estate counsel's statement, Defendants' counsel represented to the Court that no closing was scheduled.  (Dkt. No. 308).  This representation was truthful: no closing was scheduled.

On April 5, 2024, real estate counsel emailed: "Finally have a date - a week from today 4-12."  (Ex. B).  In reliance upon real estate counsel's statement, Defendants' counsel represented to the Court that "we have been advised that the closing of the sale of the individual defendants' Staten Island home has been scheduled for April 12, 2024."  (309).  This representation

was truthful: Defendants' counsel had been advised by real estate counsel that the closing was scheduled for April 12, 2024.

On April 11, 2024, and in response to Defendants' counsel's email asking "Are you closing tomorrow," real estate counsel emailed: "No, the bank attorney does not yet have the clear to close." (Ex. B).  In reliance upon real estate counsel's statement, Defendants' counsel represented to the Court "that we have been advised that closing of the sale of the individual defendants' Staten Island home will not occur on April 12, 2024, as we had previously been informed" and that "[w]e have further been advised that the lender's attorney does not yet have clearance to close." (Dkt. No. 310). This representation was truthful: Defendants' counsel had been advised that the closing was not proceeding and that the bank was not prepared to close.

On April 19, 2024, real estate counsel emailed: "Buyer still hasn't gotten loan clearance.  Its killing me.  Confirming that no funds will be released to seller until confirmed with your office."  (Ex. B).  In reliance upon real estate counsel's statement, Defendants' counsel represented to the Court that "we have been advised that closing of the sale of the individual defendants' Staten Island home has not yet been scheduled" and that "[w]e have further been advised that the lender's attorney does not yet have clearance to close." (Dkt. No. 314). This representation was truthful: Defendants' counsel had been advised that the "Buyer still hasn't gotten loan clearance."

On May 2, 2024, real estate counsel emailed: "I think it may be dead.  I'm confirming today." (Ex. B).  In reliance upon real estate counsel's statement, Defendants' counsel represented to the Court that "we have been advised that there is no scheduled closing of the sale of the individual defendants' Staten Island home and that the purchaser has still been unable to obtain the

-13-

lender's clearance to close." (320). This representation was truthful: Defendants' counsel had been advised that the deal "may be dead."

On May 17, 2024, real estate counsel emailed: "The buyer killed the deal. I am still holding escrow for the initial downpayment and will likely need to pay it into the court." (Ex. B). In reliance upon real estate counsel's statement, Defendants' represented to the Court that "we have been advised by the sellers' attorney that the purchaser 'killed the deal' and that the sale is thus not expected to close." (Dkt. No. 334). This representation was truthful: Defendants' counsel had been advised that "[t]he buyer killed the deal."

As the Court can plainly see, Defendants' submissions to the Court regarding the status of the sale of the Staten Island home mirrored the facts conveyed by real estate counsel, and the submissions indicated on their face that the facts therein were based upon the information supplied by real estate counsel. Defendants had no reason to believe that real estate counsel had misrepresented any fact when Defendants submitted their status reports to the Court, and Plaintiff has no evidence showing that any of real estate counsel's statements were untruthful in any respect. That a separate agreement was entered into between the Individual Defendants and Masullo which required Masullo to, among other things, pay the Individual Defendants' mortgage to the mortgagee (Mr. Cooper) while Masullo resided at the Staten Island home does not mean that any misrepresentation of fact was made by anyone or that any fraud had been practiced on the Court. Plaintiff was provided with all written communications between Defendants' counsel and real estate counsel confirming the truth of every status report filed by Defendants' counsel, but nevertheless filed its baseless Rule 11 motion which falsely accuses the Individual Defendants of misrepresenting facts in their status reports. Such tactics should not be countenanced.

-14-

Not only is the truthfulness of Defendants' statements to the Court proven by the emails from real estate counsel, but real estate counsel has provided Defendants with a summary of the real estate transaction.   In his letter, real estate counsel states that the sale fell through due to "the inability of the purchaser to both obtain financing" and to "sell his Brooklyn property."  (Ex. A).  Real estate counsel states:

> After weeks of waiting for a response and based on the inability of the purchaser to both obtain financing, sell his Brooklyn property in which this deal was contingent on OR obtain approval for a 1031 exchange from a suitable trustee this deal was terminated, and all downpayment funds were returned to the purchaser's attorney.

(Ex. A).

Real estate counsel's assertion that the deal fell through due to the purchaser's inability to close rather than any alleged fraud upon the Court practiced by the Individual Defendants is corroborated by the documentary evidence.  Indeed, real estate counsel has produced documents confirming that the sale was contingent upon the purchaser's sale of his Brooklyn property and confirming the parties' continuing effort to close in April 2024, notwithstanding Plaintiff's allegation that the Individual Defendants had purposefully sabotaged the deal on March 1, 2024.  If the deal was secretly terminated on March 1st as Plaintiff's attorneys allege without evidence, why did Masullo thereafter retain a 1031 exchange company and attempt to make a like exchange?  Plaintiff's moving papers supply no answer.  In fact, Plaintiff has not even addressed real estate counsel's emails and summary of events, although they were provided to Plaintiff before it filed this frivolous motion replete with false accusations of wrongdoing.

Rule 11(b)(3) mandates that representations to the Court have evidentiary support, to the certifying person's best knowledge, information and belief, formed after an inquiry reasonable

under the circumstances. "Even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction for a Rule 11(b) violation is ... committed to the district court's discretion.'" Desilva v. North Shore-Long Island Jewish Health System, Inc., 27 F.Supp.3d 313,332 (E.D.N.Y. 2014), *quoting*, Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58 (2nd Cir. 2012). "District courts must exercise restraint in determining whether sanctions are necessary." Id., *quoting*, Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir.2003).

Where a motion for sanctions is based on the submission of unsupported factual allegations, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." Id., *quoting*, Storey v. Cello Holdings, L.L.C., 347 F.3d 370,388 (2nd Cir. 2003); see also Kiobel v. Millson, 592 F.3d 78,81 (2nd Cir. 2010)("A statement of fact can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support").

Here, Plaintiff seeks sanctions against Defendants for the statements made by their attorneys to the Court concerning the status of the sale of the Staten Island home, without showing that the statements were utterly lacking in support. As established above, all status reports filed with this Court pertaining to the real estate transaction were based upon the information relayed to Defendants' counsel by the Individual Defendants' real estate counsel, who had personal knowledge of the facts concerning the transaction and the reasons why it terminated. Plaintiff's attorneys (who have no personal knowledge of the facts whatsoever and have based their accusations on nothing more than their own self-serving interpretation of the Rental Agreement and its purpose) accuse Defendants of filing false status reports to the Court after purposefully torpedoing the deal on March 1, 2024. However, the Individual Defendants' real estate attorney has clearly and unequivocally stated that the deal was still on after March 1st and that the closing did not occur due to the

purchaser's inability to fulfill all contractual contingencies.  Real estate counsel's statements are corroborated by the documentary evidence, including the contract of sale and the documents demonstrating Masullo's efforts to conduct a 1031 like exchange in April.  Again, that the Individual Defendants and Masullo entered into a Rental Agreement which required Masullo to pay the Individual Defendants' mortgage directly to the mortgagee does not mean that the real estate transaction was over as Plaintiff's attorneys allege without evidence.  If the transaction had been effectively terminated on March 1, 2024, why was the purchaser hiring a 1031 exchange company in April 2024?  Plaintiff's motion papers provide no answer for any of the documents refuting its baseless accusations.  Plaintiff has only provided this Court with false accusations based on conjecture and surmise.  Plaintiff's motion should be denied.

## POINT III

### <u>PLAINTIFF IS NOT ENTITLED TO ANY INJUNCTIVE RELIEF.</u>

Plaintiff's demand for sanctions in the form of injunctive relief mandating the sale of the Staten Island home and the payment of rent into escrow or over to Plaintiff is frivolous for several reasons.  *First*, a sale of real property cannot be ordered without a ready, willing and able buyer, and there is none.  As established by the documentary evidence and the statements made by real estate counsel, the purchaser was unable to fulfill the contractual contingencies required to close.  Real estate counsel stated the transaction terminated "based on the inability of the purchaser to both obtain financing, sell his Brooklyn property on which this deal was contingent or obtain approval for a 1031 exchange from a suitable trustee."  *Second*, this Court lacks jurisdiction to order the sale of the Staten Island home.  A Court could only order such sale in a post-judgment enforcement proceeding brought pursuant to Article 52 of New York's C.P.L.R., and such sale would be by public

-17-

auction.  *Third*, this Court lacks jurisdiction to order the payment of rent  to Plaintiff where this is

not a post-judgment special proceeding and where Plaintiff has not moved to attach the alleged rental

income.    *Fourth*, and as established by the Rental Agreement upon which Plaintiff's false

accusations are based, all rental payments are being made directly to Mr. Cooper, the mortgagee,

meaning that there is no rental income to attach.  Plaintiff has failed to submit one iota of evidence

showing that the Individual Defendants are receiving rental income.  Nor has Plaintiff cited any

authority supporting its argument that it is entitled to mandatory injunctive relief or post-judgment

enforcement orders in this pending litigation.

## POINT IV

### PLAINTIFF IS NOT ENTITLED TO RULE 37 SANCTIONS.

Plaintiff's request for Rule 37 sanctions must be summarily denied where Plaintiff

has already moved for Rule 37 sanctions based upon the same alleged "discovery" defaults.  (Dkt.

No. 385). Plaintiff's Rule 37 motion has been referred to Magistrate Judge Cho and has been fully

briefed.  (Dkt. No. 390).  Defendants respectfully refer the Court to their opposition papers in the

event it entertains Plaintiff's duplicative request for discovery sanctions.  (Dkt. No. 390).

## POINT V
### DEFENDANTS ARE ENTITLED TO COSTS AND ATTORNEYS' FEES FOR OPPOSING PLAINTIFF'S BASELESS RULE 11 MOTION.

Rule 11(c)(2) states that "[i]f warranted, the court may award to the prevailing party

the reasonable expenses, including attorney's fees, incurred for the motion."  Courts award the

prevailing party costs and attorneys where the Rule 11 motion was objectively unreasonable or filed

for an improper purpose.  See Lee v. Grand Sichuan Eastern (N.Y.) Inc., 2014 WL 199512*2

(S.D.N.Y. 2014)("Pursuant to Rule 11(c)(2), the defendants seek costs and attorneys' fees incurred

in defending against Lee's Rule 11 motion. The court may grant such an award if it finds that Lee's motion is objectively unreasonable or filed for an improper purpose"); <u>Safe-Strap Co. v. Koala Corp.</u>, 270 F.Supp.2d 407 (S.D.N.Y. 2003)(Filing of Rule 11 motion for sanctions is itself subject to requirements of Rule 11, and can lead to sanctions against filer).

        Here, Plaintiff's Rule 11 motion was objectively unreasonable where Plaintiff has been provided with documents confirming the truth of every challenged representation made by Defendants' counsel concerning the status of the sale of the Staten Island home.  Plaintiff's attorneys were provided with all emails exchanged between Defendants' counsel and real estate counsel, but filed a Rule 11 motion anyway, without addressing the emails they had received confirming the truth of the challenged statements.  Plaintiff's attorneys were also provided with all pertinent documents pertaining to the real estate transaction, including proof of the parties' continuing efforts to close long after March 1, 2024, without addressing such documents in its Rule 11 motion.  There was simply no reasonable basis for Plaintiff's Rule 11 motion based upon the alleged misrepresentations made in Defendants' status reports concerning the sale of the Staten Island home where Plaintiff was provided with a mountain of evidence establishing the truth of Defendants statements.

        That Plaintiff filed its motion after receiving documentary evidence refuting its allegations establishes that Plaintiff filed with the improper purpose of harassing Defendants and driving up their defense costs, as Plaintiff has throughout this litigation.  Enough is enough.  Plaintiff and its attorneys should be directed to pay all costs and attorneys' fees incurred by Defendants in connection with Plaintiff's baseless accusations of a Rule 11 violation.  In that regard, Defendants' response to Plaintiff's safe harbor notice expressly warned: "Please be advised that if you fail to

withdraw your 'safe harbor notice' and proceed with your sanctions motion, we will be seek Rule 11 sanctions against you and your firm."  (Ex. E).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an Order denying plaintiff's motion in its entirety, granting Defendants costs and reasonable attorneys' fees, and granting such further relief as may be just.

Dated: New York, New York
      October 21, 2024

**WARNER & SCHEUERMAN**
Attorneys for Defendants
Safa Abdulrahim Gelardi, Vito Gelardi and
IME Companions, LLC

By:    */s/ Jonathon D. Warner*
      Jonathon D. Warner (5195)
      6 West 18th Street, 10th Floor
      New York, New York 10011
      (212) 924-7111