# EXHIBIT "C"

Proceedings 274

1  idea what the meeting was actually about either.
2  You can re-watch the video. He starts off on his
3  own tangent about doctors. And Vito doesn't know anything
4  about the IME business.
5  So he was there in and out, but, yeah, you can watch
6  the video again. He has no clue what he's talking about when
7  it comes to the IME business, and he just said something to
8  say something.
9  THE COURT: All right. I'll take a look at it.
10 Because I think I also noticed him in the background walking
11 back and forth as you're having a meeting and maybe adjusting
12 things or giving you things, and then he does actually appear
13 and speak at the end there. So, I'll take another look at
14 that.
15 MS. GELARDI: Well, he just -- he says something so
16 unrelated, Your Honor, to the IME.
17 THE COURT: All right.
18 So I am going to let you all go. I know it's been a
19 very long day without a lunch break, so my apologies for that.
20 I am going to defer on ruling, however, except for
21 on one issue, which is I am going to set a deadline by which
22 defendants have to pay BRG. And for every day past the
23 deadline when the full balance is not paid, defendants will be
24 assessed $200 a week.
25 So, we are getting to the point that this promise of

Proceedings 275

1   paying has worn out its welcome and the payment should be made
2   because I have ordered it multiple times.
3           MS. GELARDI:  Your Honor, can --
4           THE COURT:  You said you were going to pay it.
5           MS. GELARDI:  Yes.
6           THE COURT:  You are going to pay it.
7           MS. GELARDI:  I am just gonna request if you could
8   just give me a time span that I can make these payments.
9           I wouldn't be able to make them in a short time
10  span, but I'm definitely gonna reach out to them today.  And I
11  am going to make an agreement.  I'm looking maybe if you could
12  kindly maybe give me at least 24 months to --
13          THE COURT:  Oh, no, no, no, no, no.
14          MS. GELARDI:  There's no possible way I could go
15  quicker than that.
16          THE COURT:  No.  I was thinking thirty days because
17  this has been --
18          MS. GELARDI:  I won't be able to.
19          THE COURT:  This has been over a year now that
20  you've owed this money and --
21          MS. GELARDI:  Your Honor, I would not be able to,
22  Your Honor.  I'm so sorry.
23          I'll give you all my bank statements.  There's no --
24  I promise you I will give you everything.  There's no possible
25  way I can come up with that.

Proceedings    276

1    However, I will make a payment agreement with them,
2  if you allow me to, and I will start making increments.  And I
3  know that they'll agree to it because they asked me to it
4  before.  And I am capable of doing it now, only because Vito
5  is doing construction.  And if -- if you --
6           THE COURT:  Hang on a second.
7           You claim he's been doing construction all of this
8  time?
9           MS. GELARDI:  No, he wasn't, Your Honor.  He just --
10 we were trying to do construction.  We depleted our savings
11 and just starting businesses to create an income.  And I will
12 show you.  Like, I'm not gonna hide it from you.
13          I will give you all our bank statements, anything
14 that you ask for, to prove to you there's no possible way I
15 could come up with something like that in thirty days.
16          However, if you allow me to reach out to them today
17 and if they allow me to, if they accept the payment agreement,
18 I will not, I will not go -- I will not be late on that
19 agreement and I will make a payment agreement with them and I
20 will pay them monthly.  And I'll -- I'll copy Mr. Warner on
21 every payment.  But there's no possible way I could do
22 something in thirty days.
23          THE COURT:  How much equity do you have in your
24 house in Texas right now?
25          MS. GELARDI:  I don't have income to be able to take

*Proceedings* 277

1  out equity, but the downpayment that I used for my house was a
2  20 percent downpayment, which is conventional mortgage.  And I
3  used the proceeds from the Philadelphia property, Your Honor.
4              THE COURT:  Okay.  So there's some equity in that
5  600-thousand-dollar --
6              MS. GELARDI:  Correct.
7              THE COURT:  -- property?
8              MS. GELARDI:  Yes.
9              THE COURT:  So you could get a home equity loan and
10 get some cash?
11             MS. GELARDI:  Your Honor, I would love to, and I
12 tried to actually pay my attorney through an equity.  However,
13 the issue that I'm having in retrieving equity is I don't have
14 the income to support the payment.
15             This is why I keep getting turned down.  Mr. Warner
16 knows, I've tried even to -- to -- to get equity on multiple
17 of my properties in order to pay him.
18             THE COURT:  You said your monthly mortgage is only
19 $4,000 a month; is that it?
20             MS. GELARDI:  Four-thousand -- yeah, like around
21 4 -- like around 4200, yes.
22             THE COURT:  You realize it's relatively low for a
23 mortgage payment.  I mean in New York City you spend $5,000 in
24 monthly rent.
25             Now, obviously, I realize these are different

1  markets, but if your husband is working and making money,
2  $4,000 a month should be doable and leave --
3         MS. GELARDI:  Now.  It's now doable for us.
4  Mr. Warner knows it's now doable for us.
5         And once I get my daycare open, this is the thing,
6  Your Honor, we've started businesses to create income.
7  Without income, we can't get -- we've tried to get these
8  equity loans.
9         THE COURT:  Let me ask you a question.
10         How many properties do you currently own besides
11  your residence?
12         MS. GELARDI:  I own the Staten Island property.
13         THE COURT:  Which is being rented.
14         MS. GELARDI:  Well, it's being rented, yes.
15         THE COURT:  For how much a month?
16         MS. GELARDI:  It's 4,500, which only covers the
17  mortgage.
18         THE COURT:  So you still have a 4500-dollar-a-month
19  mortgage on your Staten Island home?
20         MS. GELARDI:  Correct.
21         THE COURT:  All right.  And then --
22         MS. GELARDI:  And there's 4200 in Texas, right.  And
23  then the two properties in Pennsylvania, but they -- but
24  they're Airbnb'd, so they cover their mortgage.  They're not
25  liabilities to us.

1    THE COURT:  Let me ask you a question.

2    Does plaintiff have all this information?  Because I
3    know you've sent me a lot of information about the defendant's
4    properties.

5    MR. KATAEV:  We have information based on deposition
6    testimony from February 2023, as well as information from
7    publicly available records.  Nothing from the defendant, other
8    than the deposition.

9    THE COURT:  All right.

10   So you are going to turn over all your financials
11   because, I hate to tell you --

12   MS. GELARDI:  I will.

13   THE COURT:  -- you do not have much of a reservoir
14   of credibility when it comes to --

15   MS. GELARDI:  That's totally fine, Your Honor.

16   I will turn it over to Jonathon by the end of the
17   week.  I will gather all the information you need to see for
18   yourself that we are living paycheck to paycheck.  We are
19   living mortgage to mortgage.  So, there's no excess.

20   And yes, I am going to -- listen, I've started
21   businesses before and I've succeeded in them.  I have no doubt
22   in my head that I will bounce back; however, we need income in
23   order to bounce back.  So now with Vito's construction
24   business, the daycare opening up, the IME company in Texas.  I
25   haven't acquired any -- any clients yet, but it all takes

1   time.
2           So in the interim, I can make a payment agreement
3   with BRG, and I will -- I will submit all my financials for
4   you to see yourself, and the defendants if they need to see
5   it, that we are literally living paycheck to paycheck.  There
6   is no excess.
7           THE COURT:  All right.
8           So you have two weeks in which to report back on
9   your efforts to come up with a compromise deal with BRG.  You
10  will tell me exactly what it is that has been accepted, if
11  anything has been negotiated.
12          And then also, you will turn over all of your
13  financial records, bank records, property records, income
14  records, such as rental agreements, et cetera, so that I can
15  see exactly--
16          MS. GELARDI:  Okay.
17          THE COURT:  -- whether or not you have the means to
18  pay this.  Because it is a debt that's been outstanding for
19  far too long with no effort, no seeming effort to try to pay
20  it.
21          MS. GELARDI:  Your Honor, I just want to say in
22  regards to the BRG, I might have totally misunderstood in the
23  initial order in April of 2022, I believe.  For some reason, I
24  thought that it was going to be 30,000.  Right.  And I thought
25  that we were gonna pay 15, 15.

1          Maybe I'm wrong, but this is what I understood.  And
2    then we made the initial payment of 75, which, again, I
3    thought was 50 percent of my payment.  So when this went
4    berserk, I got thrown off.  I didn't understand.
5          THE COURT:  All right.  We discussed this at the
6    last hearing.  That is just incorrect.
7          So even if you misunderstood, the situation is that
8    you still owe, I forget, about 30 or $40,000 to BRG for your
9    share of the forensic examination.
10         I think that's correct, right?
11         MR. KATAEV:  32,000, thereabouts.
12         THE COURT:  Okay.
13         So that's what has to be paid.  If you can come up
14   with some payment arrangement that BRG will accept, let me
15   know in two weeks, but otherwise I might impose a deadline
16   with some potential penalties --
17         MS. GELARDI:  Understood.
18         THE COURT:  -- civil penalties to follow.  These are
19   meant to be coercive, quite frankly, to get you to pay the
20   bill.  If you don't --
21         MS. GELARDI:  I will make a -- I will make a payment
22   agreement with them.  And I'm hoping that they accept it and
23   it will not be -- it will be paid every month without --
24   without a problem.
25         THE COURT:  That's fine.  If you can get them to

1  agree to a longer payment plan, that's fine with me, but you
2  have to make an effort to get that down.
3          MS. GELARDI:  Okay.
4          THE COURT:  All right.
5          So I've deferred on ruling on all the other requests
6  of plaintiff.  I will issue a written decision in short order
7  on all of those requests.  Okay.
8          So thank you, everyone.
9          MR. FELSEN:  Your Honor.
10         THE COURT:  Yes.
11         MR. FELSEN:  There is one motion that has been
12 outstanding.  It's our motion for fees with respect to the
13 last contempt finding.
14         THE COURT:  Right.  I think where we left it was you
15 were supposed to submit -- oh, so we have the documentation of
16 your attorneys' fees request.  Okay.
17         MR. FELSEN:  Yes.
18         THE COURT:  So, we'll also take care of that as
19 well.
20         MR. FELSEN:  All right.  Thank you.
21         THE COURT:  Thank you, everyone.
22         MS. CHARRINGTON:  Your Honor, one other thing.
23         THE COURT:  Ms. Charrington, yes, go ahead.
24         MS. CHARRINGTON:  So I was given copies of the
25 exhibits for this hearing today, which I believe are the