# THE CHARRINGTON FIRM, P.C. Attorneys and Counselors at Law

| | |
|---|---|
| One Cross Island Plaza | 11 Broadway |
| Suite 229 | Suite 615 |
| Rosedale, New York 11422 | New York, New York 10004 |
| (718) 528-4422 Fax: (718) 528-4420 | (*New York City Office*) |

September 16, 2024
Hon. Justice Pamela K. Chen
United States District Court
Eastern District of New York
Courtroom: 4F
225 Cadman Plaza East
Brooklyn New York 11201

          Re:    IME WatchDog, Inc. v. Gelardi, et al.
                Case No.: 1:22-cv-1032 (PKC) (JRC)

Dear Honorable Justice Chen:

      This office represents Eugene Liddie, a non-party in the above-referenced action.

      This supplemental submission is submitted in opposition to Plaintiff's application for a Temporary Restraining Order (TRO) and other requested relief by the Plaintiffs.

      Here, Plaintiff seeks to preliminarily enjoin a n on-party, Eugene Liddie and IME Legal Reps (hereinafter "Liddie"), and any persons or entities acting in concert with or on behalf of Defendants, Liddie, and IMELR from serving customers on the Enjoined Customers List and that the court make a finding that Liddie committed perjury and willfully and contumaciously disobeyed this Court's Orders.

      Without restating all arguments within Non-party Liddie's Memorandum of Law filed on June 25, 2024( ECF #361), Liddie seeks to incorporate the same arguments by reference and will highlight certain points and address the newly submitted evidence regarding the April 10, 2023

phone call between Safa Gelardi and Giant Partners and deposition of Mr. Corey Weisman and Jeremy Koenig.

The introduction of the April 10,2023 Gelardi Telephone call does not change Liddie's position that his company IME Legal Reps is not a successor entity of IME Companions or un by the Gerardi's. All of the evidence presented surrounding whether IME Legal Reps stems from a time period of approximately three weeks in August an approximately 3 week period in April 2023.. The recorded phone call, the Safa Gelardi and Giant Partners video and the emails all surround the transfer of the IME Companions website to IME Legal Reps.

Pursuant to Liddie's prior testimony, Eugene Liddie had no desire to partner with Safa Gelardi. Her plans on April 10,2023 were thwarted by Eugne Liddie. Liddie had prior plans and desires to open this very same business and he built his business with research and cold calling.

There was evidence presented regarding a separate and different corporation in which <u>Safa Gelardi</u> stared with the intent to circumvent the Court's injunction. There is evidence related to <u>Safa Gelardi</u> that she did attempt and did intend to do the same with IME Legal Reps. The difference here is that Liddie was not going to be Safa Gelardi's pawn in her quest to violate the Court's orders.

There is absolutely no evidence to establish that Liddie was complicit with Safa Gelardi to be the "face" of her company. The phone call and video of Safa Gelardi reflects her intents and desires. But what was presented is insufficient to find that Liddie was in fact complicit with her.

Liddie has been fighting for his business. On July 25, 2024, the Court warned Liddie of the risks of testifying untruthfully and asked Mr. Liddie if he still chose to testify with such warning and he agreed to do so to defend ahis character and his business.

Liddie truthfully testified that the Gelardis have no relationship with his business. Liddie did not work with Safa to create a business on behalf of the Gelardis. Liddie truthfully testified that he knew Safa Gelardi communicated with Giant Partners to migrate the site and that he knew she would have to speak to Giant Partners to do so. Tr. 137…

Other than the emails and the communications between Safa Gelardi and Giant partners limited to April of 2023, there was no further evidence presented that there was any further relationship between Liddie and the defendants. The evidence presented only goes to demonstrate Safa Gelardi intent, nothing more.

Plaintiff's theory is pure speculation as to the question of whether IME Legal Reps is truly Safa or Vito Gerlardi's company. There is no evidence or facts presented that support the Defendants actual involvement with IME Legal reps .

As Liddie previous argued, "A nonparty acts in active concert or participation if the nonparty aids and abets an enjoined party's violation of the injunction, which requires showing that the challenged action was taken for the benefit of, or to assist, a party subject to the decree in violating it." *Hanes v. James,* 76 F4th 103 (2d 2023)

For the above stated reasons, Plaintiffs have failed to show any active participation on the part of Liddie for the benefit of the Defendants. The Plaintiff must show that Liddie assisted the Defendants and/or Liddie acted with the Defendants for their benefit.

No facts or evidence supports the same. As previously argued, it is not reasonable to believe that Mr. Liddie is sacrificing his time and resources to benefit the Defendants. There is flatly no legal support for Plaintiff's claims. Thus, the court should deny Plaintiff application for a TRO in this case.

Moreover, there is absolutely no evidence that IME legal reps ever had access to a client list or any trade secrets belonging to IME Companions or the Plaintiff. As we previously argued, the witnesses from Giant partners completely discredited plaintiff's theory.

During the Giant Partners deposition of Sheldon Katz, he testified the Hubspot which "stores clients information …. was not transferred to IME LegalReps because IME LegalReps was going to be completely separate and, in the witness', humble opinion, "nothing would be transferred and IME LegalReps was to be a "brand new entity". (*GP Tr. 26- pg. 22 ln. 2*)

The witness further stated that the back end information was not also transferred from Companions to IME Legal Reps. *(GP Tr. pg. 27 ln. 3)*

And on July 25, 2024, another representative of Giant Partners, Jeremy Koenig testified that Giant Partners did not incorporate any customer list they received from Safa Gelardi or Eugene Liddie into their 50,000.00 customer list they created. (7/25/2024 hrg Tr. 58 lns. 3-16) ; and due to their policy, they would not have merged such data. (7/25/2024 hrg Tr. 585 lns 23-25)

Therefore Liddie would not have had access any trade secrets that belonged to the Plaintiff. This information is important because it further supports Liddie's testimony that he did not rely on any referrals from the defendants or their agents. Liddie testified that he would research firms online and cold call them and go to their office with edible arrangements gifts to drum up business.

If Liddie was merely the face of the company, there would be no need for him to reach out to firms in an effort for the business to utilize his company. Thus far Liddie was only servicing approximately 14 law firms before the was enjoined. If Liddie was merely a successor company for the defendants, he would clearly be servicing more law firms on that list. Liddie has been prejudiced for months. His business was shut down by the court based upon the Plaintiff's unsupported theory.

During the July 25, 2024 hearing the Court expressed a concern about Liddie's claim that he never had any arrangement, written agreement or anything with the Velardi's where they were going to have some ownership or operational interest in IME Legal Reps."

Here it is the Plaintiff's burden to demonstrate by clear and convincing proof that there was some sort of agreement or arrangement where the Geldard were going to have some own ownership or operational interest in IME Legal Reps. Liddie cannot prove what is not true. Only the Plaintiffs can submit acceptable proof to support such a contention, but hey have failed to do so. The Court should not rely upon claims made solely by Safa Gelardi.

There is proof in the record that Liddie is running this company – not Safa Gelardi. For example, Exhibit "9" that was introduced during the July 25 hearing shows certain purchases of edible arrangements that Liddie testified to using as a marketing g strategy, in addition to Liddie's testimony that he personally goes to certain firms for their business. Liddie has acquired his client based upon his own merit. Liddie further testified that he does a google search for top personal injury law firms to locate firms he will solicit. The Plaintiffs have failed to submit any proof that the Safa or Vito Gelardi run any operations of his business.

As to the emails where Liddie's name was spelled "LIDDY", Liddie also testified that he believed and assumed that the autocorrect may have changed the spelling of his name in that email. He could not say that happened for a fact but that was his only explanation for the error (7/25/20 hrg Tr. 141; Tr. 140)

## THERE CAN BE NO FINDING OF PERJURY AGAINST EUGENE LIDDIE

As previously argued, "[p]erjury requires that a witness believe that the testimony he gives is false" *See U.S. v. Cicalese*, (868 F.Supp.2d 231 (E.D.N.Y. 2012); *Citing to, United States v.*

*Lighte*, 782 F.2d 367, 372 (2d Cir.1986). Here, Mr. Liddie testified truthfully and there is no evidence to the contrary. There will be extreme prejudice to Eugene Liddie, not only to his business but to him personally and his livelihood. In this case, the evidence does not support such a finding.

Based on the foregoing, non-party IME LegalReps and Eugene Liddie respectfully requests that Plaintiff's application be denied in its entirety, together with such other and further relief as to this Court may seem just and proper.

Dated: Rosedale, New York
October 25, 2024

                                                        Respectfully Submitted,

                                                        _____/s/_____

                                                       KAREN CHARRINGTON, ESQ.