UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IME WATCHDOG, INC.,

                          Case No.: 1:22-cv-1032 (PKC) (JRC)

               **Plaintiff,**

     -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI, GREGORY ELEFTERAKIS, ROMAN POLLAK, ANTHONY BRIDDA, IME COMPANIONS LLC, CLIENT EXAM SERVICES LLC, and IME MANAGEMENT & CONSULTING LLC,

               **Defendants.**
-----------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO RULE 11**

**MILMAN LABUDA LAW GROUP PLLC**

    3000 Marcus Ave., Suite 3W8
    Lake Success, NY 11042
    (516) 328-8899

**SAGE LEGAL LLC**

    18211 Jamaica Avenue
    Jamaica, NY 11423-2327
    (718) 412-2421

    *Attorneys for Plaintiff*
    *IME WatchDog, Inc.*

## **PRELIMINARY STATEMENT**

In their opposition to the motion for sanctions filed against them, Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants") dance around a critical fact that they intentionally omitted in their numerous status updates to this Court regarding their impending sale of 148 Claypit Rd, Staten Island, NY (the "Staten Island Property"). Indeed, when providing Court-ordered status reports to the Court, Defendants failed to inform the Court that they did, in fact, sell the Staten Island Property on March 1, 2024, but that they disguised the sale by entering into a sham agreement which they named a Purchase Money Mortgage & Rent to Buy Agreement (the "Sale Agreement") - <u>the day after this Court issued an order on February 29, 2024 of pre-judgment attachment of the net proceeds from sale of the Staten Island Property</u> (the "Order") and the date on which the closing was originally supposed to take place according to the Contract of Sale with the putative buyer. See ECF Docket Entry 284. Defendants do not address why they failed to inform the Court about this fact because Defendants know that the Sale Agreement was entered into the day after the issuance of the Order in order to avoid an attachment of proceeds from the sale of the Staten Island Property.

A Purchase Money Mortgage is a legal instrument that is only signed in connection with the Sale of real property. Indeed, a "purchase-money mortgage has been defined as a mortgage executed at the time of the purchase of the land and contemporaneously with the acquisition of the legal title, or afterward, but as a part of the same transaction, to secure an unpaid balance of the purchase price." Barone v. Frie, 99 A.D.2d 129 (2d Dept. Feb. 21, 1984).

Defendants changed the title of a standard Purchase Money Mortgage to include the words "& Rent to Buy", hoping that they could try to pass the Sale Agreement off as a rental agreement

1

with a buy option. However, that did not work. Rental agreements have expiration dates, but the Sale Agreement has no expiration date. This Sale Agreement is, in actuality, a reverse sale wherein the purchaser, Anthony Masullo ("Mr. Masullo"), is required to make monthly payments to Safa's and Vito's mortgagee, Mr. Cooper, or "at a different place if required by the Note Holder", i.e. Safa and Vito, until it is paid in full. See ECF Docket Entry 407-6. The result of this sham transaction which has been utilized by Safa and Vito to evade the Order, is that Safa and Vito will receive their "equity" at the back end of the sale instead of at the front end, as the case would be with a regular sale of property transaction.

If there was a legitimate reason for entering into the Sale Agreement and had it been in the works prior to the issuance of the Order, Defendants surely would have submitted evidence to support same. But they did not and their failure to do so coupled with their failure to address the specific details surrounding how the Sale Agreement came into existence confirms that it was entered into to hide the fact that the sale was actually consummated and to avoid an attachment of the proceeds from the sale of the Staten Island Property, in defiance of the Order.

Indeed, and as further set forth below, a review of the terms of the agreement establishes that it constitutes the sale of the Satten Island Property as contemplated by the February 6, 2024 Contract of Sale. ECF Docket Entry 407-1 at 7-19.

Because the Defendants have continually and consistently engaged in clumsy and contrived campaigns to end-run and evade this Court's Orders, this Court should grant Plaintiff's motion and, among other appropriate sanctions in the Court's discretion, require Defendants to pay Plaintiff all monies they have received since March 1, 2024 from Mr. Masullo and all payments Mr. Masullo makes towards the Staten Island Property going forward.

# ARGUMENT

## DEFENDANTS SHOULD BE SANCTIONED

Defendants fail to address the central argument in Plaintiff's motion: Defendants entered into the Sale Agreement on March 1, 2024 - <u>the day after the Court's issuance of the February 29, 2024 Order - to avoid attachment of the proceeds from the sale of Staten Island Property</u>, and failed to apprise the Court of same in multiple Court Ordered status reports.

It was not just a coincidence that the Sale Agreement was entered into the day after the issuance of the Order. This fact is bolstered by: (i) Defendants' intentional omission of the existence of the Sale Agreement from this Court while Defendants provided numerous updates to the Court between March 1, 2024 and May 17, 2024 about the status of the sale of the Staten Island Property when Defendants actually did sell the property in a reverse sale through the Sale Agreement; and (ii) the absence of any evidence submitted by Defendants about the circumstances surrounding when the idea of the Sale Agreement was conceived and the reason for it.

No admissible evidence was submitted establishing that Mr. Masullo, the buyer of the Staten Island Property, was unable to obtain a mortgage and if so, when he was denied a mortgage and the reason why he was denied a mortgage. Notably, on March 21, 2024, Mr. Masullo's Brooklyn property was sold for $1,770,000.00. <u>See</u> Felsen Reply Decl. ¶ 4, Exhibit A. It is unfathomable that Mr. Masullo sold his home for $1,770,000.00 with which proceeds he satisfied a mere $667,500.00 mortgage that was provided to him on June 18, 2013, but he could not obtain a mortgage for the Staten Island Property which he was purchasing for $975,000.00, substantially less than the house he sold, or pay for the Staten Island Property without the need for a mortgage given the more than $1M windfall from the transaction.

3

It is worthy to recall that since the commencement of this action, Defendants have sold the following real estate and have moved to a sizeable estate in Texas:

- 1523 N Hollywood St, Philadelphia, PA 19121 sold on December 5, 2023 for $229,000 (https://www.zillow.com/homedetails/1523-N-Hollywood-St-Philadelphia-PA-19121/10317908_zpid/)
- 1475 Moon Valley Dr, Champions Gate, FL 33896 sold on December 15, 2023 for $760,000 (https://www.zillow.com/homedetails/1475-Moon-Valley-Dr-Davenport-FL-33896/122987470_zpid/)

Notably, the Defendants' Florida home was initially placed on the market on September 14, 2022 for $975,000.00 and was sold eight (8) months later for only $760,000.00.

It is respectfully submitted that Safa and Vito (i) had every intention of selling the Staten Island Property just like they sold the above properties since the commencement of this action; and (ii) in fact sold it in a reverse sale when they entered into the Sale Agreement the day after the Order to avoid an attachment of the Staten Island Property, at which time they also removed the Staten Island Property from the market.[1]

Safa's and Vito's argument that they are receiving no income through the Sale Agreement is disingenuous. According to the Sale Agreement, Mr. Masullo is paying $4,516.22 each month directly to Mr. Cooper, the mortgagee on the Staten Island Property, on behalf of Safa and Vito. Therefore, Safa and Vito are receiving $4,516.22 in monthly income from the Staten Island Property while having the principal on their mortgage substantially reduced each month. This is being done to deprive Plaintiff of the proceeds from the sale which would have been used to pay the forensic examiner and the $66,457.34 in attorneys' fees and costs Defendants were ordered to

---

[1] https://www.zillow.com/homedetails/148-Clay-Pit-Rd-Staten-Island-NY 10309/32373563_zpid/

4

pay Plaintiff and Carlos Roa and other anticipated monetary sanctions related to Defendants' further acts of contempt.  See ECF Docket Entries XXX and 394.

Not only does the timing of when the Sale Agreement was entered into (the day after the Order was issued) establish the intent of Safa and Vito to avoid having the proceeds of the sale of the Staten Island Property attached, but the terms of the Sale Agreement also establish same.  A review of the Sale Agreement should leave the Court with the inescapable conclusion that it constitutes a reverse sale with equity on the back end.  The terms of the Sale Agreement consist of monthly payments of $4,516.22 which is based on a $995,000.00 loan amortized over twenty-seven (27) years at 3.25% interest.  The Defendants significantly benefit from this deal as they effectuated a sale but without the need to transfer title on the Staten Island Property which allows them to keep their equity in the Staten Island Property and not turn over the proceeds to the Court while earning 3.25% interest for 27 years.  Mr. Masullo significantly benefits from this deal as he did not have to make a down payment or obtain a mortgage - which mortgage would likely include an interest rate of more than double the 3.25% interest rate he is paying the Defendants.

This is inarguably the area of expertise of Defendants' litigation counsel, Warner & Schuerman, who specializes in judgment enforcement.  Indeed, the homepage of Warner & Schuerman's website says in large capital letters "THE RELENTLESS PURSUIT OF YOUR MONEY IS OUR BUSINESS".  https://wslaw.nyc/ (last visited October 23, 2024).  The website also states "With more than seven decades of collective commercial litigation experience, we are highly knowledgeable in the tactics that debtors use to try to hide assets and prevent recovery." Id.

Defendants' reliance on Exhibit A to their litigation counsel's declaration, which contains an unsworn letter from Safa's and Vito's real estate attorney describing the "history and timeline"

5

of events in connection with the sale of the State Island Property, should not be considered as it is submitted by Defendants' litigation counsel, not through a declaration of their real estate lawyer, and thus, constitutes hearsay. See, e.g., Tzilin v. Jimmy G Constr. Corp., No. 23-CIV.-4047 (ENV) (MMH), 2024 WL 4309775, at *11 (E.D.N.Y. Sept. 26, 2024) ("Counsel's unsworn assertions … with no citation to admissible evidence, are inadequate"); see also Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence").

Notably, conspicuously absent from Safa's and Vito's real estate lawyer's inadmissible letter is any reference to the Sale Agreement. Equally of note, the letter from Safa's and Vito's real estate lawyer references that the sale was contingent on Mr. Masullo selling his Brooklyn property - although the Contract of Sale does not contain any such contingency - which he apparently was unable to do, were the contents of the unsworn letter given any credit.

However, as noted above, on March 21, 2024, Mr. Masullo's Brooklyn property was sold for $1,770,000.00 at which time he satisfied a $667,500.00 mortgage.[2]

Defendants' argument that Plaintiff's motion is procedurally defective as it seeks "other forms of relief" must be rejected. Unlike the cases relied on by Defendants, here, all of the relief

---

[2] Defendants' argument that Plaintiff attempted to mislead this Court must be rejected. Defendants first argue that Plaintiff misled the Court on February 23, 2024 when it informed the Court that, on February 22, 2024, the day after the Court ordered Defendants to identify all real property they have owned and disposed of since February 1, 2022 Defendants entered into contract on the sale of their Staten Island property. See ECF Docket Entry 278. Plaintiff did not attempt to nor did it mislead the Court. Indeed, Plaintiff provided a Zillow link in their February 23, 2024 letter indicating that the Staten Island Property (Id.) went into contract on February 22, 2024, so this was not an attempt by Plaintiff to mislead the Court.

Defendants also accuse Plaintiff of misleading the Court into believing that the closing was scheduled for March 1, 2024 in order to convince the Court to issue the Order. The Contract of Sale stated that the closing would be "on or about March 1, 2024." There was no basis to believe that the closing would not occur on March 1, 2024. In any event, there is no dispute that Defendants were in the process of imminently selling the Staten Island Property which is why the Court issued the Order.

6

Plaintiff seeks in this motion relates directly to Defendants' violation of Rule 11. Under Rule 11, "[t]he court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . . ." Celestin v. Martelly, 2024 U.S. Dist. LEXIS 178119 (E.D.N.Y. Sept. 30, 2024) (quoting Rule 11 advisory committee's note to 1993 amendment); see also Arabco Contracting & Trading Co. v. Chemical Bank, 1987 U.S. Dist. LEXIS 887 (S.D.N.Y. Feb. 11, 1987) ("I have discretion in determining the form of the sanction.").[3]

Based on the foregoing, Plaintiff's motion should be granted, with appropriate sanctions issued in the Court's discretion, including that all monies paid thus far under the Sale Agreement and any future payments be turned over to Plaintiff. Finally, Defendants' request that Plaintiff should be ordered to pay Defendants' attorneys' fees in connection with this motion should be denied.

Dated: Lake Success, New York
October 29, 2024

**MILMAN LABUDA LAW GROUP PLLC**

By: /s/ Jamie S. Felsen

3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899

Dated: Jamaica, New York
October 29, 2024

**SAGE LEGAL LLC**

By: /s/ Emanuel Kataev, Esq.

18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421

---

[3] Plaintiff expressly stated that this motion is not being filed against Defendants' counsel, so Defendants' litigation counsel's argument that they were passing along information they received from Defendants' real estate attorney is immaterial to this motion.

7

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*