# THE CHARRINGTON FIRM, P.C. Attorneys and Counselors at Law

One Cross Island Plaza                                                                                11 Broadway
Suite 229                                                                                                      Suite 615
Rosedale, New York 11422                                                                      New York, New York 10004
(718) 528-4422 Fax: (718) 528-4420                                                    (*New York City Office*)

---

November 5, 2024

Hon. Justice Pamela K. Chen
United States District Court
Eastern District of New York
Courtroom: 4F
225 Cadman Plaza East
Brooklyn New York 11201

                       Re:    IME WatchDog, Inc. v. Gelardi, et al.
                               Case No.: 1:22-cv-1032 (PKC) (JRC)

Dear Honorable Justice Chen:

      This office represents Eugene Liddie and IME LegalReps, non-parties in the above-referenced action. The Court allowed the parties to provide responses to the post-hearing submissions. This submission is submitted in response to Plaintiff's October 25, 2024 post-hearing letter.

      Plaintiff alleges that Mr. Liddie committed perjury as to the following testimony:

- *The circumstances surrounding his name being misspelled*;

      As argued, Mr. Liddie testified that he believed that autocorrect may have changed the spelling of his name. Otherwise, he was not aware of any other way his name could have been misspelled. He testified as to his understanding of how this could have happened. Mr. Liddie testified truthfully about this issue.

- *The circumstances under which he allegedly began to serve Bergman; He initially testified that his interactions with GP were solely by phone, and then his testimony changed*

*after Plaintiff obtained emails between GP and, purportedly, him at which time he changed his testimony*;

Mr. Liddie testified that he initially contacted Bergman and Bergman to solicit their business. During the May 29, 2024 hearing, Mr. Liddie mistakenly stated that they initially contacted him but then he clarified the error in his declaration within *ECF NO. 362 ¶12*. Mr. Liddie made a mistake but did not intentionally give false testimony.

• *Falsely testifying that Defendants' involvement with him was solely to sell the website to Liddie so Defendants could make a mortgage payment; in fact, Defendants maintained an active and primary role with respect to Liddie and the IME Legal Reps website*;

Mr. Liddie testified regarding his conversations with Safa Gelardi surrounding the purchase of the website. Based upon the evidence presented, there were emails and communications with Giant Partners related to the website migration only. Those communications began on April 10, 2023, and ended on or about April 19, 2023. These communications took place for less than a nine (9) day period, not weeks, and once the website was complete all communications ended. If IME LegalReps was truly Safa's company, Giant Partners would have continued working with Safa to market this new "undercover" business. But that did not happen. The only evidence presented, as it relates to Eugene Liddie, are communications related to the website only. The new evidence of the Safa call does not change this fact.

• *Liddie denied receiving Plaintiff's customer list, when, in fact, this Court provided same to him (ECF Docket Entry 219-1 at 127:16-129:6) and Liddie's purported website developer, GP, was in possession of the customer list. Moreover, information about Plaintiff's customers was on the backend of IMELR's website.*

Here, the actual list was never given to Mr. Liddie. On May 4, 2023, after Mr. Liddie testified, the Court stated to him "…I do want to give a copy of this <u>amended preliminary</u>

2

<u>injunction</u> to your lawyer so she can properly advise you about the overall contours of that, because you have in some way received information, it appears, maybe through your wife….” (*ECF No. 229 Tr. pg. 127*). For some reason, Mr. Liddie nor my office was given a copy of the enjoined list at that time. He testified truthfully that he did not receive a copy of the list at that time, nor did I receive a copy of such list after the hearing.  In fact, on July 1, 2024,  I requested a copy of the list from counsel by email.

Nevertheless, Mr. Liddie heeded the Court's warning to avoid obtaining any marketing advice or referrals of law firms from the Gelardis, Jeff Beiben or his wife at the time, Shakkiya Hall.  Mr.  Liddie testified that he sought law firms by researching firms and/or cold calling the firms and/or physically meeting with firms.

With respect to Ms. Hall,  she testified that she was not surprised that Mr. Liddie opened an IME business because "he always had an interest" in opening this type of business; she also called him "very business like mined"  (*ECF No. 229, Tr. 137 lns. 13-24; pg. 140, lns. 7-11*).

In fact, Ms. Hall testified that, at one point, Mr. Liddie spoke to Jeff Beiben when he called her and that Mr. Liddie shadowed Mr. Beiben. The testimony in this case bore out that this type of business had been a venture Mr. Liddie wanted to operate for quite some time.

- *Liddie testified that he never gave Safa his credit card despite Safa's testimony to the contrary.*

There was no evidence presented that Safa ever actually possessed or used Mr. Liddie's credit card despite her claim to have had it.

Plaintiff also alleged that, *"[i]n response to a subpoena served on him, Liddie produced zero communications he had with (i) Liddie, (ii) Safa, and/or (iii) Vito between the issuance of*

3

*the March 10, 2023 Order and the present. Liddie's failure to produce any documents, especially between Liddie and Beiben, who he testified is operating Liddie's purported business, IMELR, is telling, and only supports Plaintiff's request for a forensic examination of Liddie's and Defendants' electronic devices.*"

This statement is not true. Mr. Liddie turned over many pages of the calls between himself, Safa, Vito and Beiben. Mr. Liddie had no text messages or emails to turn over to Plaintiff. A forensic examination of Mr. Liddie's devices would only amount to a fishing expedition. There is no evidence to support the need to have his devices examined forensically and such a request should be denied.

In summary, Plaintiff's entire argument as it relates to Liddie stems from statements made by Safa. This very Court has found Safa Gelardi to be an "uncredible witness" who has "perjured herself throughout this case" (*ECF No. 299 Fn. 4*). Thus, no credible evidence can come from her.

In the July 13, 2023 Order of the Court, the Court held, at that time, that "Plaintiff has failed to produce clear and convincing evidence—or almost any evidence—that Liddie, Beibin, or Defendants were violating the Court's injunction after March 27, 2023." (*ECF No. 231, pg. 3*) During the May 4, 2023 hearing, the Court found Eugene Liddie to be a credible witness; and that he started IME Legal Reps as "a venture of his own"; and that Liddie's business, IME Legal Reps, was not in violation of the Court's injunctions. (*ECF No. 229. 5/4/23 Tr. Pg 142.*) The Court previously found that Mr. Liddie was a credible witness, and he is. Mr. Liddie testified truthfully during all of the testimony to the Court.

The fact that Safa Gelardi made statements on video and a phone call to Giant Partners should not change the Court's position without any supportive clear and convincing evidence

4

that Liddie acted with the Defendants in an effort to violate the Court's injunction. The Plaintiff has failed to provide any clear and convincing evidence to enjoin Mr. Liddie any further.

It may have been Safa's intent to have Mr. Liddie as the "face " of her business, but Mr. Liddie utilized the opportunity to start his business when Safa called him to purchase her site. Moreover, there is no proof to suggest that Liddie ever observed or utilized the enjoined customer list or any other material that could be a trade secret of the Plaintiff. In fact, the Giant Partners evidence, as previously argued, refutes any claim that the list was ever transferred over to Liddie or IME LegalReps.

Jeff Beiben's name has repeatedly come up in this case, but the Plaintiff did not seek to enjoin him. The Plaintiff is seeking to enjoin IME LegalReps in an effort to shut down a competing business. The Court should not allow this type of tactic.

Lastly, Mr. Liddie truthfully testified that he never had any agreement with Safa under which he would be a silent partner despite Safa's statements to the contrary during her virtual meeting with GP and there is no proof to the contrary. The Plaintiff is now improperly seeking to attach properties owned by Liddie by way of a post hearing letter. No proof has been submitted by any standard to support such relief, thus such a request must be denied.

Based on the foregoing, non-party IME LegalReps and Eugene Liddie respectfully requests that Plaintiff's application be denied in its entirety, together with such other and further relief as to this Court may seem just and proper.

Dated: Rosedale, New York
      November 5, 2024

Respectfully Submitted,

_____/s/_____

KAREN CHARRINGTON, ESQ.

5