**WARNER & SCHEUERMAN**
Attorneys at Law
6 West 18th Street, 10th Floor
New York, New York 10011
Tel: (212) 924-7111
Fax: (212) 924-6111

| | |
|---|---|
| **Jonathon D. Warner, Esq.** | **Karl E. Scheuerman, Esq.** |
| jdwarner@wslaw.nyc | kescheuerman@wslaw.nyc |

November 7, 2024

**VIA ECF**

Pamela K. Chen, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 4F North
Brooklyn, New York 11201-1804

Re:   *IME Watchdog, Inc. v. Gelardi, et al.*
         Case No.: 1:22-cv-1032 (PKC)(JRC)

Dear Judge Chen:

We represent defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito") and IME Companions LLC ("IME Companions") and make the instant submission in reply to plaintiff's post-contempt hearing submission.

Plaintiff's post-hearing submission underscores the complete lack of evidence supporting its accusation that Defendants have used Liddie and IME Legal Reps as a "front" for continuing to service law firms on the enjoined customer list. Plaintiff has simply repeated *ad nauseam* the accusations which it failed to prove at the hearing, while focusing on 1) Safa's Zoom meeting with Giant Partners where she discussed her ill-conceived and never implemented plan to use Liddie and "Plaintiff Advocates" as a front for staying in the IME observation business in New York, and 2) emails exchanged by Safa and Liddie with Giant Partners in the Spring of 2023.

The Zoom meeting could not and did not come close to proving plaintiff's accusations where it revealed nothing more than an unrealized plan that never came to fruition. Plaintiff never offered any proof showing that there was ever any "Plaintiff Advocates," let alone that it serviced law firms on the enjoined customer list. If Safa followed through with everything which she said to Giant Partners as plaintiff maintains, why did plaintiff fail to prove the existence of "Plaintiff Advocates?" If Safa is working through IME Legal Reps in New York, why did she move to Texas and start The IME Company? The emails could not and did not come close to proving plaintiff's accusations where they showed only that Safa was involved in the migration of IME Companions' website to Liddie's newly-created IME Legal Reps. IME Legal Reps never retained Giant Partners to conduct its marketing, although Giant Partners had been IME Companions' marketing company. If IME Legal Reps was IME Companions' "alter-ego" or

"successor" as plaintiff maintains without evidence, why did IME Legal Reps fail to continue with IME Companions' marketing company?

     Conspicuously absent from plaintiff's post-hearing submission is any citation to any admissible evidence showing that Liddie ever agreed to Safa's proposed scheme or that IME Legal Reps ever became IME Companions' "alter-ego" or "successor" in the IME observation business in New York. Plaintiff has focused like a laser on the Zoom meeting and the emails with Giant Partners to divert the Court's attention from the complete lack of evidence showing that Safa's alleged scheme was ever actually implemented. It is significant to note that the Zoom meeting was held and the emails were exchanged shortly after Safa had been forced to shut down IME Companions, which was an emotionally-charged period of time. Plaintiff's allegations of contempt are based upon the statements made by Safa during this brief period of time and are unsupported by any admissible evidence showing that Safa followed through with anything she might have said to Giant Partners. That Safa thereafter moved to Texas and started The IME Company refutes plaintiff's allegations.

     Plaintiff has not cited to any evidence showing that Liddie agreed or otherwise acquiesced to Safa's plan as conveyed to Giant Partners. Plaintiff has not cited to any evidence showing that Safa was in any way involved in the day-to-day operations of IME Legal Reps. Plaintiff has not cited to any evidence showing that Safa has an ownership interest in IME Legal Reps. Plaintiff has not cited to any evidence showing that Safa has received any remuneration from IME Legal Reps. Plaintiff has not cited to any evidence showing that IME Legal Reps disregarded corporate formalities or was inadequately capitalized. Plaintiff has not cited to any evidence showing an intermingling of funds and property between IME Companions and IME Legal Reps. Plaintiff has not cited to any evidence showing that IME Legal Reps was not an independent profit center. Plaintiff has not cited to any evidence showing that Defendants' sale of IME Companions' website to Liddie was not at arms-length.

     In short, plaintiff has failed to cite to one iota of admissible evidence supporting its "alter ego" and/or "successor" theory of contempt and has relied solely upon its attorneys' supposition, conjecture and surmise concerning the Zoom meeting and the emails exchanged among Liddie, Safa and Giant Partners concerning the migration of IME Companions' website to IME Legal Reps. While it is certainly possible to draw some negative inferences from the Zoom meeting and the emails, such inferences alone do not constitute clear and convincing evidence of a violation of any Court Order, particularly where no evidence was submitted showing that Safa's "plan" to use Liddie ever came to fruition. No amount of spin and innuendo concerning the emails and any spelling errors therein can change the undisputed fact that plaintiff failed to introduce any evidence showing that Safa serviced clients through Liddie's IME Legal Reps.[1] No law firm clients of IME Legal Reps testified that it was really Safa with whom they were

---

[1] Upon preparing the instant reply, I noticed that I inadvertently misquoted "Liddy" as "Liddie" when quoting one of the emails to Giant Partners in Defendants' initial post-hearing submission. I apologize to the Court for this inadvertent clerical error.

dealing. None of the independent contractors utilized by IME Legal Reps testified that they were really working for Safa rather than Liddie. Plaintiff rested its contempt case on nothing more than its attorneys' supposition that the things which Safa said she wanted to do during her Zoom meeting with Giant Partners subsequently occurred. The purported significance of the Giant Partners emails is undermined by the undisputed fact that Liddie never retained Giant Partners to conduct any marketing services. Liddie only retained Giant Partners to migrate the website he had purchased, and Liddie proceeded to market his fledgling IME observation business on his own through cold-calling and follow up visits with gifts from Edible Arrangements. Liddie's testimony concerning his purchases from Edible Arrangements was corroborated by IME Legal Reps' banking records. These banking records confirm that IME Legal Reps was an independent entity operated by Liddie.

It bears repeating that plaintiff had the burden to establish, by "clear and convincing" evidence, that a Court Order was actually violated. See, e.g., King v. Allied Vision, Ltd., 65 F.3d 1051 (2nd Cir. 1995). A contempt order has been described a "potent weapon" to which Courts should not resort if there is a fair ground of doubt as to the wrongfulness of the conduct. Id. A finding of contempt cannot be based upon this record which is devoid of any admissible evidence of any violation. That Safa told Giant Partners that she had an operating agreement with Liddie for "Plaintiff Advocates" does not mean that she has an operating agreement with Liddie for IME Legal Reps. No such operating agreement was admitted into evidence. Nor were any formation documents admitted supporting plaintiff's accusation. That Safa told Giant Partners about her alleged plan to use Liddie for "Plaintiff Advocates" does not mean that she used Liddie for IME Legal Reps. There was simply no evidence at the hearing showing that the potential matters which Safa discussed during the Zoom meeting ever occurred. Plaintiff's "proof" of contempt is limited to alleged holes and/or inconsistencies in the alleged contemnors' testimony concerning plaintiff's accusations, rather than clear and convincing evidence establishing a violation of any Court Order. Plaintiff's proof of noncompliance falls far short of meeting the clear and convincing standard of proof.

That the record lacks clear and convincing evidence of any violation is confirmed by plaintiff's attorneys' repeated attempts to portray disputed accusations as evidence and by plaintiff's attorneys' numerous citations to "evidence" that is either outside the contempt record or was inadmissible. All of plaintiff's references and hyperlinks to matters *de hors* the contempt record should be disregarded, including plaintiff's attorneys' belatedly submitted declaration (submitted without authorization) and the 2023 testimony of Jeff Beiben. If plaintiff wanted to prove contempt through Beiben, plaintiff should have subpoenaed him as a witness and made him available for cross-examination with respect to plaintiff's latest accusations of contempt. Plaintiff failed to call Beiben and should not be allowed to cherry-pick portions of his 2023 testimony to prove contempt. Plaintiff's attorneys' repeated citations to inadmissible "evidence" should similarly be disregarded where contempt proceedings are governed by the Federal Rules of Evidence. Nor should this Court consider plaintiff's "propensity" evidence. That this Court previously found that Defendants were behind Client Exam Services does not constitute admissible evidence that Defendants were behind IME Legal Reps. Safa's prior conduct is

irrelevant.

Plaintiff also failed to prove by clear and convincing evidence that Defendants had serviced Subin in violation of any Order. Again, the only admissible evidence concerning Subin was Safa's testimony that Defendants serviced Subin through March of 2023, which was <u>before</u> Defendants were enjoined from doing so. Defendants were only restrained on March 10, 2023 from "unfairly compet[ing] with plaintiff" (which is not a clear and unambiguous mandate). Defendants were not unfairly competing with plaintiff by servicing Subin where Subin was not one of plaintiff's clients and had no intention of employing plaintiff due to its own issues with plaintiff, unrelated to Defendants. Defendants were not servicing Subin in violation of this Court's March 27, 2023 expanded injunction where Subin was not on plaintiff's 2016 customer list. This Court's expanded injunction only prohibited "Defendants from providing services to any customers who were former customers of Plaintiff IME Watchdog **and** listed on Plaintiff's 2016 customer list." (Emphasis added). Defendants were only restrained from servicing Subin after it was added to the enjoined customer list in April 2023. No admissible evidence has been cited showing that Defendants serviced Subin after it was added to the enjoined customer list. Subin did not testify that Defendants serviced them in April 2023, and the Subin invoice for April 2023 was not admissible where no Subin employee was called to the stand to authenticate it. Not only did plaintiff fail to call Subin, but plaintiff even objected to Defendants' attempt to call Subin in their defense. The bottom line remains that no admissible evidence has been cited showing that Defendants had serviced Subin in April 2023, when Defendants were first enjoined from doing so.

As for Safa's emailing of a client list to Giant Partners while IME Companions was still in business, Safa credibly explained how it was attached inadvertently among many other things, and Jeremy Koenig from Giant Partners testified that it was not used in Giant Partners' marketing efforts. Moreover, IME Legal Reps never retained Giant Partners for marketing, meaning that Liddie never got access to any of the subject marketing materials. It is well-settled that a party may only be held in civil contempt if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." <u>Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 655 (2nd Cir. 2004). Safa explained her diligence in attempting to comply with this Court's Order regarding the return of plaintiff's "trade secrets," and no evidence was introduced to the contrary. Plaintiff failed to prove by clear and convincing evidence that Safa had not been diligent.

Although plaintiff's supporting Rule 83.6 declarations were devoid of any evidence of damages and plaintiff failed to testify at the hearing, plaintiff's attorneys now have the temerity to demand various types of damages in their post-hearing submission, both monetary and equitable. Plaintiff was required to set forth its alleged damages with particularity in its Rule 83.6 declarations and to prove its damages at the hearing, but failed to do so. Plaintiff cannot now maintain through an attorneys' hearsay letter that it is entitled to damages in the amount of $2,490,000, based upon a hyperlink to "evidence" which was not part of the contempt hearing

record. Nor has plaintiff briefed and explained the legal justification for any of its damages, including its request for an order of attachment. If plaintiff believes it is entitled to another order of attachment, plaintiff should make the appropriate motion.

Plaintiff's attorneys have just made up plaintiff's alleged monetary damages out of whole cloth in a hearsay submission based upon "evidence" which is *de hors* the contempt record because plaintiff sustained no damages whatsoever as a result of any of the alleged acts of contempt in servicing law firms that do not want to work with plaintiff. Plaintiff's attorneys' request for contempt damages in the amount of $2,490,000 is beyond the pale where plaintiff only presented evidence of a handful of IME observations performed by IME Legal Reps (for law firms which prefer to work with a company other than plaintiff). Unless plaintiff's profit margin is in excess of $100,000 per IME, plaintiff's attorneys' hearsay demand for monetary damages in the amount of $2,490,000 is frivolous on its face. In any event, plaintiff's failure to offer any proof of any actual contempt damages shows that its contempt motion is nothing more than plaintiff's latest attempt to harass and to punish Defendants, which is not a proper goal of civil contempt.

Plaintiff has failed to submit any admissible proof of contempt as evidenced by its post-hearing submission which merely relies upon purported holes in the defense rather than actual evidence of contempt and has failed to submit any admissible proof of damages, as evidenced by its attorneys citation to matters *de hors* the contempt record to support plaintiff's outrageous demand for damages in the amount of $2,490,000. Plaintiff's motion should be denied, *in toto*.

                                                                          Respectfully,

                                                                     */s/ Jonathon D. Warner*

cc:    All counsel (via ECF)