# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

November 8, 2024

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

        *Re:*    <u>**IME WatchDog, Inc. v. Gelardi**, *et al.*</u>
               <u>**Case No.: 1:22-cv-1032 (PKC) (JRC)**</u>

Dear Judge Chen:

      This office, along with Sage Legal LLC, represents the Plaintiff, IME WatchDog, Inc. ("Plaintiff"), in the above-referenced case. Plaintiff respectfully submits its reply to the post-hearing letters submitted by Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), IME Companions LLC ("Companions") (collectively "Defendants"), and non-parties, Eugene Liddie ("Liddie") and IME Legal Reps ("IMELR"). <u>See</u> ECF Docket Entries 413 and 415.

      Defendants' post-hearing letter largely consists of references to Safa's testimony which Defendants ask this Court to believe despite this Court's repeated prior conclusions that Safa perjured herself. Safa is so desperate to continue evading this Court's Orders by opening different corporate entities and utilizing Plaintiff's confidential information (which she undeniably stole from Plaintiff) that she has the gall to now rely on Plaintiff's and the Court's prior conclusions that she is a liar and a perjurer to argue that she was lying to Giant Partners ("GP") when she told GP during an April 10, 2023 virtual meeting about her newest scheme to continue to evade this Court's Orders through IMELR and Liddie. None of Safa's nor Liddie's testimony is credible and none of it should be considered.

      At the July 29, 2024 hearing, a recorded virtual meeting between Defendants and GP dated April 10, 2023 was introduced into evidence. At that virtual meeting, Safa outlined Defendants' latest scheme to continue to evade this Court's Orders by creating a new corporate entity, Plaintiff Advocates, by using Liddie, a full-time NYPD police officer, as the face of the company, with Safa remaining as the majority owner and the operator of the business behind the scenes. The overwhelming evidence establishes that Safa was not lying to GP and she did exactly what she told GP she was going to do: evade this Court's Orders by any means necessary, while being cautious not to get caught. Her plan failed, and a treasure trove of evidence uncovered through GP's response to a subpoena clearly and convincingly establishes that Safa, through Liddie and IMELR, continues to operate an IME observer business utilizing Plaintiff's trade secrets and serving customers on the Enjoined Customers List.

At the July 29, 2024 hearing, emails between Safa, Liddie and GP were also introduced into evidence (as discussed in Plaintiff's October 25, 2024 post-hearing letter and further below) which establish, clearly and convincingly, that IMELR and Liddie are the latest of several agents and/or successors to Companions utilized by Defendants to violate this Court's Orders.

At the conclusion of the July 29, 2024 hearing, the Court explained that the one thing left for her to consider was the "missing link" between Plaintiff Advocates and IMELR:

> Ms. Gelardi just says it was her idea, a thought, a wish, but it never came to fruition, even though that conversation occurred on April 10, 2023, and all the E-mails about IME Legal Reps getting created, the website, et cetera, occurred just a few days later. There is no evidence as to what happened to that conversation. I am particularly struck by the fact that there is nothing in any E-mails or anything else I have received that explains why Giant Partners does not say, hey, what about Plaintiff Advocates? Aren't we going forward with that? So, quite honestly, I am suspicious that there is some conversation no one is telling me about with Giant Partners explaining that they were not going to go with that idea, or that IME Legal Reps is effectively the same entity in which the same Plaintiff Advocates entity in which Ms. Gelardi and Mr. Gelardi have a 90 percent interest. So there is some missing link here and I am sure the plaintiff wants to argue by inference that IME Legal Reps is Plaintiff Advocates. That is what it became. And that Mr. Liddie is lying, because he said there is no agreement between them. And Ms. Gelardi is lying, because there is supposedly no agreement between them giving the Gelardis an ownership interest, 90 percent or so. The one thing I would actually like to hear, and this is why I am sort of thinking I do not want to hear closing statements from you is because I would like to hear from Giant Partners.

See ECF Docket Entry 412-1 at 203:18-204:20. Accordingly, on July 30, 2024, the Court issued a text only order seeking testimony from GP on this "missing link." See July 30, 2024 Text Only Order. Plaintiff undertook the effort of securing GP's cooperation in voluntarily appearing for a virtual hearing. That hearing was conducted at which time Plaintiff provided the "missing link" this Court sought.

At the September 25, 2024 hearing, a tape recording of a conversation between Safa and GP from April 10, 2023 that occurred mere hours after the virtual meeting on the same day was entered into evidence and unequivocally provides the missing link. In that recorded phone conversation on April 10, 2023, Safa told GP that she will use IMELR rather than Plaintiff Advocates because a law firm in Chicago owns the domain "Plaintiff Advocate" and she does not want another legal battle. See ECF Docket Entry 412 ¶ 16. This conversation provides the missing link this Court sought and explains precisely why the name IMELR was ultimately used by Defendants instead of Plaintiff Advocates, a decision Safa made on the heels of ending the virtual meeting, such that this Court can infer she did not consult with Liddie about it, demonstrating the already-undeniable extent of Safa's reach and control over IMELR which her and Liddie purport to be an independently owned company of Liddie's.

The April 10, 2023 recorded phone conversation completely obliterates Defendants' and Liddie's testimony that IMELR was Liddie's idea and that Liddie operated IMLELR without any involvement from the Defendants. This missing link is so damming to Defendants that any reference to it is glaringly absent from Defendants' post-hearing letter. This missing link, which Defendants ignore, should respectfully end their existence in the IME industry and warrant harsh sanctions to put an end, once and for all, to their blatant disregard for this Court's Orders. The mountain of evidence is so stacked against Defendants and Liddie, as summarized below.

This Court previously concluded that Safa lied about her involvement in Companion's successor Client Exam Services, and Plaintiff presented evidence that Safa was not truthful when called to testify about who owned Accompanied Exam Services and why she recommended it to Subin, both companies which she created and operated behind the scenes by using her family members and friends and the same employees that worked for Companions. See IME Watchdog, Inc. v. Gelardi, 2023 U.S. Dist. LEXIS 189054 (E.D.N.Y. Oct. 20, 2023). After Safa's unsuccessful attempts to utilize Accompanied Exam Services and Client Exam Services as successors to Companions to evade the Court's Order, she created IMELR which is at least the third successor to Companions known to Plaintiff, as evidenced by:

1. The creation of IMELR on April 10, 2023, merely two (2) weeks after the March 27, 2023 hearing where Defendants became aware that their scheme involving Client Exam Services was uncovered (ECF Docket Entry 355-1 at 93:24-94:6; ECF Docket Entry 412-6);

2. Despite Safa's testimony that she told GP that she is "out of the game" (ECF Docket Entry 355-1 at 114:25-115:6), she actually attended a virtual meeting with GP on April 10, 2023 where she told GP, among other things, that (i) she was creating a new entity that she wanted to name "Plaintiff Advocates" to evade the Court's orders; (ii) the plan was to have Liddie be the front man for just six months to one year until Defendants got Plaintiff "off [Defendants'] back", (iii) there is an operating agreement which establishes that Safa was the 90% owner and that Liddie was a 10% owner; (iv) she is going to "play the criminal's game" and do what she needed to until she got "these criminals" "off her back;" and (v) Liddie's name is spelled "Liddy" despite the correct spelling being "Liddie" (ECF Docket Entries 355-5 and 355-6);

3. The April 10, 2023 recorded phone conversation between Safa and GP that took place mere hours after the virtual meeting where she explained that she is going to use the name IMELR instead of Plaintiff Advocates because a law firm in Chicago owns the domain "Plaintiff Advocate" and she does not want another legal battle, which the Court should infer she unilaterally decided without discussing with Liddie (ECF Docket Entry 412, par. 16);

4. On April 10, 2023, the same day Safa told GP about her scheme to evade the Court's Orders, GP sent Safa a contract stating "Safa here is the new agreement, *same details just new company*, and us helping you build the new website" (ECF Docket Entry 412-3) (emphasis added);

3

5. The next day, April 11, 2023, imelegalreps@gmail.com sent an email to GP with the godaddy log-in info for IMELR with the password "Levicunt62 (ECF Docket Entry 412-3), which Safa confirmed in a recorded phone call with GP that she sent when she asked GP if they "got what [they] needed", namely the GoDaddy password for IMELR (ECF Docket Entry 412, par. 18). The phone call and Safa's admission that she sent the e-mail from imelegalreps@gmail.com establishes that Safa had access to the imelegalreps@gmail.com email account;

6. On April 14, 2023 Safa sent from her personal Gmail account an email to GP stating "lets change it up a little bit" so it doesn't look so much like Companions (ECF Docket Entry 412-7);

7. On April 14, 2023, Safa sent another email to GP on which Liddie is not even copied, stating "please deactivate[]imecompanions.com. it is very important that the domain[]imecompanions.com be deactivated asap. imelegalreps.com has to go up asap and when a client books *we* should get an email to info@imelegalreps.com. It is imperative this is done asap" (Id.) (emphasis added);

8. On April 14, 2023, Safa sent another email to GP stating the IMELR website has to go up asap (as it was urgent for her to continue Companions' business without interruption) (Id.);

9. On April 18, 2023, the day on which Plaintiff filed an order to show cause to hold Defendants in contempt, GP sent Safa a logo mock up for IMELR and provided her an update on the website transfer (ECF Docket Entry 412-8), and the very next morning an email was sent by imelegalreps@gmail.com to GP stating: "This is Eugene *Liddy*. I am the owner of IMELR… Please communicate only with me as Safa is no longer involved" (ECF Docket Entry 412-7) (emphasis added);

10. On April 19, 2023, the day after Plaintiff filed an Order to show cause to hold Defendants in contempt, Liddie e-mailed GP asking that the "client page" which had all of the clients on the Enjoined Customers List be hidden (ECF Docket Entry 412-12);

11. On June 21, 2023, almost two (2) months after the May 4, 2023 hearing where Safa represented that all she did was assist Liddie to transfer the website and after she swore in her declaration she had nothing to do with IMELR and was "out of the IME business", Safa requested from GP access to a folder labeled marketing materials (ECF Docket Entry 412-10);

4

12. The misspelling of Liddie's name by Safa as "Liddy" again in an e-mail on April 19, 2023 (ECF Docket Entry 412-7), after she spelled it the same way on April 10, 2023 during the virtual meeting (and misspelled it on the IMELR website), which confirms that Safa was ghost writing the emails to GP as if she was Liddie, who did not credibly testify about the misspelling;[1]

13. Liddie is a full-time police officer with no prior experience with IMEs (ECF Docket Entry 219-1 at 67:1-10, 73:20-74:3, and 125:6-8; ECF Docket Entry 355-1 at 115:18-20) and utilizes Jeff Beiben, who is Safa's and Vito's relative, and who also worked for Companions, as well as all of their successor entities, Accompanied Exam Services and Client Exam Services, to operate IMELR (ECF Docket Entry 197-5 at 96:25-97:14; 98:6-18; 412-1 at 89:10-18; 116:17-20; 122:20-23; 129:10-12);

14. IMLER uses the same observers that Companions, Accompanied Exam Services, and Client Exam Services used (ECF Docket Entry 355-1 at 196:1-197:16); and

15. IMELR has virtually the same customers that Companions had, all but one of which are contained on the Enjoined Customers List, including Bergman, Bergman, Fields & Lamonsoff ("Bergman"), a customer that Liddie admittedly lied to the Court about with regard to the manner in which he obtained it (ECF Docket Entry 219-1 at 108:6-13; ECF Docket Entry 355-1 at 208:6-210:14).

16. Safa and Vito prepared a list of Plaintiff's clients with over $10,000 in revenue. ECF Docket Entry 197-5 at 65:6-18. When Safa and Vito used Liddie as their front man to evade this Court's Order, they similarly needed a handful of clients with high sales clients. Liddie claims IMELR only has 12-14 clients. Liddie knows how damning this is, which is why he has refused to unredact his sales by customer list.

---

[1] Defendants argue that the Court's suspicions and concerns regarding the veracity of testimony is not sufficient to support a finding of contempt. They are wrong. Credibility determinations, of course, are necessary to decide a motion for contempt. See In re Doria/Memon Disc. Stores Wage & Hour Litig., 2016 U.S. Dist. LEXIS 7225, *13 (S.D.N.Y. Jan. 21, 2016) ("Memon was called as a witness at the contempt hearing, but his testimony was not credible"). Notably, in Doria, the court concluded that "[a]lthough there is insufficient evidence to support a finding of fact regarding certain individual incidents, particularly the alleged threatening phone calls or the confrontation between the parties on the courthouse steps, the overall pattern of retaliation is clear. The Plaintiffs' evidence, *which has not been credibly contradicted*, demonstrates that the Defendants deliberately engaged in a campaign of retaliation and repeatedly communicated with their employees regarding their participation in this lawsuit, in violation of the TRO and the preliminary injunction issued by Judge Sullivan. Id.; see also IME Watchdog, Inc. v. Gelardi, 2024 U.S. Dist. LEXIS 177014 (E.D.N.Y. March 13, 2024) (making credibility determinations to find defendants in contempt). Indeed, the purpose of a contempt hearing is to make credibility determinations. See Plaza Motors of Brooklyn v. Rivera, 2022 U.S. Dist. LEXIS 4768, *6 (E.D.N.Y. Jan. 10, 2022).

Liddie, like the Defendants, asks the Court to merely believe his self-serving statements but his testimony is also not credible (i.e., his explanation of the misspelling of his name and the circumstances under which Bergman became his client, to name a few blatant lies by Liddie) and flies in the face of the other overwhelming evidence produced by Plaintiff and GP.

Liddie also argues that Safa has nothing to do with IMELR as it obtained its own clients by sending edible arrangement packages to its prospective clients. However, the records produced by Liddie establishes that IMELR sent eighteen (18) edible arrangement packages, which were only sent in March and May 2024, almost one year after IMELR was created and Liddie first testified at the May 4, 2023 hearing. See Felsen Reply Decl. ¶ 3, Ex A. The fact that Liddie did not send edible arrangement packages until Liddie became aware that Plaintiff served a subpoena on GP and after a mountain of evidence from GP piled up against Liddie and Defendants is destructive to Liddie's reliance on the use of the edible arrangement packages to show that IMELR does its own marketing and has nothing to do with Defendants. Furthermore, it establishes another shameful instance where Liddie has been caught lying.

This overwhelming evidence, combined with the Court's prior conclusions on several occasions that Safa was untruthful (see IME Watchdog, Inc. v. Gelardi, 2024 U.S. Dist. LEXIS 177014, *7, n. 4 (E.D.N.Y. March 13, 2024) ("the Court also finds that Safa Gelardi has repeatedly perjured herself throughout this case and is thus wholly uncredible as a witness") (emphasis added), leads to the inescapable conclusion that IMELR is a successor to Companions, Accompanied Exam Services and Client Exam Services, and has been used to violate this Court's Orders, thus warranting a finding that Defendants and Liddie are in contempt.

With regard to Defendants serving customers on the Enjoined Customers List in violation of the Court Orders, Defendants argue that Plaintiff has failed to produce any admissible evidence that they violated Court Orders by serving customers on the Enjoined Customers List. They are wrong. Plaintiff submitted an invoice produced by Subin establishing that Subin utilized Defendants' services more than thirty (30) times after the April 3, 2024 Court Order in violation of same. Subin provided a certification declaring that the invoice was created in Subin's regular course of business thereby establishing its admissibility. See ECF Docket Entry 412-2 at 12. As for the IME reports themselves, they are admissible under Rules 902(11) and 803(6) of the Federal Rules of Evidence. United States v. Komasa, 767 F.3d 151 (2d Cir. 2014); Price v. Fox Entm't Group, Inc., 2007 U.S. Dist. LEXIS 6084 (S.D.N.Y. Jan. 26, 2007).

Defendants also argue that Subin was not on the 2016 customer list. However, Defendants conveniently ignore that the 2016 customer list was not the only trade secret they stole. See ECF Docket Entry 45-3 at 108 (noting Subin as the top law firm customer in a list of the top ten customers for both 2015 and 2016) (filed under seal). There, Defendants were able to learn that Subin was a top revenue client of Plaintiff; this is precisely why Subin was added to the Enjoined Customers List. Their argument is therefore meritless.

For the reasons summarized in Plaintiff's October 25, 2024 letter and herein, Plaintiff respectfully requests that the Court grant its motion for contempt and for injunctive relief against Defendants, Liddie, and IMELR (ECF Docket Entries 288, 353) and sanction them as follows:

1. Expand the TRO and Preliminary Injunction to also encompass Liddie, IMELR, the IME Company and Accompanied Exam Services;

2. Require the posting of a court notice on the websites of IMELR's and the IME Company, similar to the prior authorized court notice, and another mailing to customers on the Enjoined Customer List;

3. Issue an Order of pre-judgment attachment on all the properties owned by Safa, Vito and Liddie and any corporate entities they have an ownership interest in;

4. Conclude that Defendants, Liddie and IMELR are in contempt of court and issue case ending sanctions pursuant to Rule 16(f) due to the multiple and repeated violations of this Court's pretrial Orders including entry of judgment in favor of Plaintiff against Defendants, Liddie and IMELR for compensatory damages, attorneys' fees and costs, and punitive damages.  For compensatory damages, as was already established, 98% of Defendants' revenue came from Plaintiff's customers.  Defendants' 2022 revenue was approximately $1M in spite of the original injunction issued in April 2022.  See ECF Docket Entry 172 ¶ 6.  The derived monthly revenue is $83,000.  Defendants have continued to serve Plaintiff's customers for thirty (30) months to date.  That totals $2,490,000.00 in damages; and

5. Direct a forensic analysis to be paid for by Liddie and Defendants.

Plaintiff thanks this Court for its continued time and attention to this case.

Dated: Lake Success, New York
       November 8, 2024                    Respectfully submitted,

                                           **MILMAN LABUDA LAW GROUP PLLC**
                                           /s/ Jamie S. Felsen, Esq.

Dated: Jamaica, New York
       November 8, 2024

                                           **SAGE LEGAL LLC**
                                           /s/ Emanuel Kataev, Esq.

cc: All Counsel of Record (via ECF)