UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IME WATCHDOG, INC.,

                *Plaintiff*,

                Case No.: 1:22-cv-1032 (PKC)(JRC)

    -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
DECLARATION OF GREGORY ELEFTERAKIS,
ROMAN POLLAK, JONATHON D. WARNER, ESQ.
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

**OPPOSITION TO THE COURT'S OSC**

                *Defendants*.
---------------------------------------------------------------X

I write respectfully to address the plaintiffs' defamatory allegations that the defendants, "stole money" or "clients" from Watchdog Services. These claims are factually baseless and have unjustly harmed the defendants' reputations. Below, I outline key points supported by evidence (attached) to refute these accusations and respectfully request the court's intervention to rectify this matter.

  Monies and Clients Were Not "Stolen"
The plaintiffs' narrative misrepresents fundamental principles of business competition. Clients, as free agents, voluntarily chose to discontinue services with Watchdog. To assert they were "stolen" is both legally and logically unsound clients cannot be compelled, as though "locked in a basement," to use a company's services.

The plaintiffs' loss of clients to the defendants and other IME service providers stems directly from their own unethical business practices, which eroded client trust and goodwill. For instance, one client was billed for three hours of observation services and provided a falsified report, only to later discover that Watchdog had never actually attended the appointment. This deceptive conduct—fraudulently charging for services never rendered—exemplifies a pattern of misconduct that drove clients to terminate their relationships with Watchdog and seek reputable alternatives, including the defendants. While the affected client has requested anonymity to avoid retaliation, this information will be disclosed to the court under seal or protective order upon request. Such breaches of integrity, coupled with Watchdog's failure to address grievances transparently, illustrate why clients willingly and permanently transitioned to competitors who prioritized ethical standards and accountability

The court must acknowledge the undeniable fact that the defendants partnered with Greg Elefterakis *specifically* to access his client list—a central purpose of the collaboration that has been conspicuously overlooked throughout these proceedings. This partnership was predicated on Mr. Elefterakis's established professional network, which he openly brought to the venture as a key asset. To suggest any alternative motive ignores the foundational logic of such a business arrangement: Why else would defendants enter into a partnership with Mr. Elefterakis if not to leverage the very source he uniquely provided? The plaintiffs' deliberate misrepresentation of this list as exclusively "theirs" ignores reality, as evidenced by the fact that over one-third of these clients now work with *other* IME service providers—not the defendants. This omission distorts the narrative and falsely implies wrongdoing where none exists. The court should recognize this critical context to refute the plaintiffs' baseless claims of "theft" and affirm that clients freely chose to leave Watchdog due to its own conduct, not coercion or unethical acts by the defendants. The defendants partnered with Mr. Elefterakis expressly to access his client list, which is a lot larger than the Watchdog list but so happened to have the same clients, falsely claims as exclusively theirs. Evidence demonstrates that over one-third of the watchdog list works with competing IME providers, disproving the plaintiffs' assertion of exclusive ownership.

Post-TRO Client Retention: Despite the court's Temporary Restraining Order (TRO) barring defendants from engaging these clients, many did not return to Watchdog, and some were never Watchdog clients to begin with. This underscores their independent decision to seek alternatives, likely due to dissatisfaction with Watchdog's services.

The plaintiffs, including Daniela Levi, have repeatedly misled the court by:

- Falsely alleging exclusive ownership of a client list.
- Ignoring evidence that clients freely transitioned to competitors.
- Omitting that Adam Rosenblatt, Watchdog's current President, sought defendants' assistance to launch his own venture, IME Guard Dogs—a fact undermining claims of "theft."

The plaintiffs' accusations ignore their own misconduct:
Adam Rosenblatt, Watchdog's President, actively solicited defendants' help to establish IME Guard Dogs. Claims that defendants "used his information" are illogical—why would they build a business for his benefit?
Mr. Rosenblatt's disloyalty to Watchdog (while still employed there) raises ethical questions, yet plaintiffs target defendants instead.
The defendants have been prejudiced by the plaintiffs' refusal to respect the court's stay, which was intended to preserve the status quo while defendants secure legal representation. Despite this order, Plaintiffs continue to file frivolous motions and accusations, further burdening the court and defendants. This conduct reflects a broader strategy to harass defendants, drain resources, and prejudice the court through a barrage of unsubstantiated claims.

The defendants provided Adam Rosenblatt with limited assistance only after he repeatedly solicited their help to launch his own independent business, a venture he explicitly sought to create as a competitor to IME Watchdog. At Mr. Rosenblatt's request, the defendants directed him to professional resources, including an accountant, to lawfully establish an LLC *registered solely in his name*. This underscores that the business, IME Guard Dog, was entirely his initiative and property, not the defendants'. Notably, this entity has never been relevant to this litigation except in plaintiffs' baseless insinuation during Safa Gelardi's deposition—an accusation that defies logic, as there is no evidence or rational motive for Ms. Gelardi to build a business *for Mr. Rosenblatt's benefit*. The plaintiffs' attempt to conflate this good-faith referral with nonexistent wrongdoing is a transparent effort to deflect from their own unethical conduct. The record confirms that defendants derived no advantage from Mr. Rosenblatt's independent actions, and the court should reject this fabricated narrative outright.

While defendants refrain from speculative allegations, the plaintiffs' own conduct merits scrutiny. Their repeated lies, deceit, and misrepresentation to the court (e.g., falsely claiming that all clients on list submitted to the court were using plaintiff services) undermine their credibility. Plaintiffs' aggressive tactics—including defamation and refusal to comply with court orders—reveal a pattern of weaponizing litigation to harm opponents rather than seek justice.

Defendants are pillars of their community:
Vito Gelardi: A 28-year construction and real estate professional (age 47), he has built, renovated, and sold numerous properties through diligent work.
Safa Gelardi: A Fordham University scholarship graduate, she leveraged her finance career to purchase a home, support her disabled parents, and raise four children (Children that were taken in by the defendants, loved  and provided for to adulthood like they were her own).
Now operating a childcare services business, they exemplify integrity and self-sufficiency. Their success derives from hard work—not the exploitation alleged.

Defendants are actively seeking counsel to ensure robust representation, but plaintiffs' incessant filings have created undue pressure and confusion.
The court's protection is critical to level the playing field and prevent further irreparable harm to defendants' reputations and livelihoods.

We ask the court to:
Enforce the stay and bar plaintiffs from filing additional motions until defendants retain counsel.
Sanction plaintiffs for contempt of the stay order and abuse of judicial process..

Defendants reserve the right to disclose evidence of plaintiffs' unethical history should the court require justification for sanctions or credibility assessments.

The defendants implore the court to:

1. **Enforce the stay** and halt plaintiffs' abusive filings.
2. **Dismiss all defamatory claims** as meritless.
3. **Sanction plaintiffs** for misrepresentation, contempt of court, and bad-faith litigation.

This case transcends mere contractual disputes—it is a campaign of malice against ethical, hardworking individuals. The court's intervention is essential to uphold justice and deter such predatory behavior.