UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IME WATCHDOG, INC.,
*Plaintiff,*

-against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI DECLARATION OF GREGORY ELEFTERAKIS, ROMAN POLLAK, JONATHON D. WARNER, ESQ. ANTHONY BRIDDA, IME COMPANIONS LLC, CLIENT EXAM SERVICES LLC, and IME MANAGEMENT & CONSULTING LLC,
*Defendants.*

----------------------------------------------------------------X

Case No.:1:22-cv-1032 (PKC)(JRC)

RESPONSE TO ORDER TO SHOW CAUSE

I respectfully submit this response to the Court's inquiry regarding the proceeds from the sale of 9 Woods End, PA. However, I must first express my profound concern over the Court's demonstrated bias and the inequitable handling of this case, which has unjustly prejudiced against the Defendants at every stage.

1. Lack of Proof of Damages

For 3.5 years, this litigation has far exceeded the typical 12–18-month duration for civil cases, yet the Plaintiff has never provided proof of damages—despite Court orders mandating them to do so. The Court's preoccupation with preserving Defendants' assets for a hypothetical judgment is legally unsupported and unfairly presumes liability where none has been established. The burden of proof rests entirely on the Plaintiff, yet the Court has allowed this case to persist without requiring them to meet it.

2. Judicial Overreach & Harm to Defendants

The Court's earlier injunction blocking the sale of the Florida property—later acknowledged as beyond its jurisdiction—cost the Defendants $80,000 due to the buyer's withdrawal. This interference, coupled with the Plaintiff's baseless claims, has forced the Defendants to liquidate investments merely to survive after the Plaintiff's fraudulent misrepresentation of a *marketing list* as a "client list" destroyed their business. The IME business constituted 90% of Defendants' income, and the Court's restraining order effectively put them out of business. Where is the justice in this? This Court continues to entertain claims rooted in demonstrable fraud - the Plaintiff's fabricated 'marketing list' that was deliberately misrepresented as a client list, a material deception that strikes at the very heart of these proceedings yet has shockingly escaped judicial scrutiny or consequences. Even more troubling is the Court's preferential treatment of a convicted criminal (having been found guilty of money laundering for a murderous cartel), who receives unwarranted judicial deference while offering absolutely no evidence of actual damages. Meanwhile, our family - having lost everything- faces microscopic examination of every desperate financial decision made simply to keep food on the table and a roof over our heads. This glaring double standard, where fraud is ignored and criminals are coddled while honest tax paying citizens are persecuted, calls into serious question the fundamental fairness of these proceedings.

### 3. Plaintiff's Bad Faith & Unjust Strategy

The Plaintiff's refusal to accept a full settlement offer—after a 3-hour phone call negotiation where Defendants detailed Adam Rosenblatt's misconduct—proves this case is not about recovery but destruction. The Plaintiff's fear of disclosing damages suggests potential tax evasion, as their 2017 profit/loss statements (provided by Rosenblatt himself) show only an average of a $45,000/year income despite allegedly having 473 clients. The credibility of Plaintiff's claims must be examined. The Court must question why the Plaintiff refuses to prove damages while demanding Defendants defend their every financial decision. Mr. Rosenblatt, betrayed Plaintiff by disseminating these confidential financial documents to multiple parties and establishing his competing venture (IME Guard Dog INC) in May of 2017, he remarkably retains his position as company president—a circumstance that raises serious questions about Plaintiff's business practices. IME Companions LLC was established in October of 2017, 5 months after IME Guard Dog INC, which Adam Rosenblatt, solely owns and exclusively establsihed by Adam himself. This pattern of financial irregularity suggests potential tax evasion, which would explain Plaintiff's inexplicable refusal to substantiate her alleged damages in these proceedings. The Court cannot in good conscience permit a party engaged in such demonstrable misconduct to use this judicial process as both sword and shield.

### 4. The Court's Duty to Impartiality

The law does not require Defendants to preemptively safeguard assets for an unproven judgment. The Court's focus should be on compelling the Plaintiff to prove their case, not on scrutinizing Defendants' survival strategies. The Defendants are tax-paying citizens who provided full financial transparency, while the Plaintiff has been allowed to evade accountability.

Justice demands that this Court focus first on whether the Plaintiff has proven her case—not on whether Defendants will have assets left if an unsubstantiated judgment is enforced. The very foundation of due process requires that *no party be deprived of property or livelihood without proof of liability.* The U.S. Supreme Court has long held that 'the party seeking relief bears the burden of proving its claims' (*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). Here, after 3.5 years, the Plaintiff has not provided a single shred of evidence proving damages, yet the Court has allowed her to weaponize litigation to bankrupt Defendants—freezing their assets, blocking sales, and forcing them to defend their survival strategies while she faces zero accountability. This is not equity; it is persecution. This court permits the plaintiff to drag out meeting their burden and without evidence of imminent harm.

A notable case in the U.S. that addresses plaintiffs dragging out litigation without proving damages and employing tactics to burden defendants financially is *EEOC v. CRST Van Expedited, Inc., 679 F.3d 657 (8th Cir. 2012)*, which was later affirmed in part by the Supreme Court in *CRST Van Expedited, Inc. v. EEOC, 578 U.S. 419 (2016)*. Federal courts have repeatedly condemned plaintiffs who abuse the legal process to force settlements or bankrupt defendants.

**Key principles include: Rule 11 (FRCP) sanctions for frivolous motions.**

**Inherent power of courts to dismiss cases where plaintiffs fail to prosecute diligently** *(Link v. Wabash R.R. Co., 370 U.S. 626 (1962))*.

**Fee-shifting statutes (e.g., § 1988, Title VII) to protect defendants from meritless claims. Yet, this Court permits the Plaintiff to drag out proceedings without meeting their burden. Where is the precedent that excuses a plaintiff from proving damages but empowers a judge to interrogate defendants about asset sales? There is none. The law protects Defendants from precisely this kind of prejudgment financial scrutiny** *(Connecticut v. Doehr, 501 U.S. 1 (1991)* **(due process prohibits prejudgment restrainThe Defendants have lost their business, their income, and their dignity while begging for the chance to confront the** *real* **culprit, Adam Rosenblatt, and pleading for this Court to enforce the most basic rule of civil litigation: No proof, no judgment. The Court's role is to administer justice, not to act as a collection agency for a Plaintiff who refuses to prove her claims. Enough is enough.**

Your Honor, with the utmost respect for this Court and with heavy hearts, we come before you not just as litigants, but as a family brought to our knees by what can only be described as a merciless campaign of legal attrition. As we represent ourselves pro se—exhausted, financially devastated, and clinging to the last vestiges of our dignity—we beg the Court's mercy and intervention. The sale proceeds in question were not squandered, but desperately allocated to prevent total collapse: $10,000 to Jonathan Warner, $5,000 to Attorney James Brando to resolve permit issues that threatened our livelihood, $8,500 to repair the work van that was our sole means of income, $27,000 to replace a failed AC unit during Texas' lethal summer heat, and $45,000 to repay a debt who threatened legal action of their own. The remaining funds staved off disaster—$28,000 prevented two business accounts from imploding, while the rest fed our children and kept collectors from seizing what little we had left. The Milford property remains unsold as we drown. The Court may question the $27,000 expenditure to replace our failed central AC unit, but in Texas—where summer temperatures routinely exceed 100°F with lethal humidity—this was not a discretionary luxury but a matter of survival. Our home's design compounds the danger: the windows are sealed glass panels (common in modern construction), making it impossible to install window units or rely on natural ventilation. Without functioning AC, indoor temperatures would have soared above 120°F within hours, rendering the home uninhabitable and posing severe health risks to our children, including heatstroke (a leading cause of death in Texas summers, per the Texas Department of State Health Services).

This was not a theoretical risk. During the 2023 Texas heatwave, over 300 deaths were attributed to extreme heat—many in homes with failed cooling systems. As a family already pushed to the brink by this litigation, we had no choice but to repair the AC immediately. The alternative—abandoning our home or risking hospitalization—would have cost far more in emergency housing, medical bills, or worse. We acted out of necessity, not extravagance, to preserve the bare minimum required for human safety: shelter that does not kill us.

This Court's repeated leniency toward the Plaintiff—while subjecting Defendants to relentless financial and procedural harassment—has deprived them of due process. I urge the Court to rectify this imbalance and enforce the law fairly.

Defendants respectfully acknowledge that the tone of this motion is firm, and if it conveyed any unintended frustration, we sincerely apologize to the Court. Our language stems not from disrespect, but from desperation—having endured three and a half years of litigation abuse while facing financial ruin due to Plaintiff's tactics. We trust the Court understands that our urgency comes from a place of exhaustion, not defiance, and we humbly beg for intervention before Defendants are irreparably harmed. Thank you, Your Honor, for your time, patience, and consideration.

**Relief Requested:**

1. Order Plaintiff to file, within [7] days, admissible proof of all alleged damages—or face dismissal under FRCP 41(b) (involuntary dismissal for failure to prosecute);

2. Stay all motions until Plaintiff complies;

3. Sanction Plaintiff under FRCP 11 and/or the Court's inherent authority (*Chambers, 501 U.S. at 45-46*) for forcing Defendants to incur needless expenses;

4. Warn Plaintiff that further abusive tactics will result in dismissal with prejudice.

5. Cease prejudicial scrutiny of Defendants' assets absent proof of liability

6. Compel Adam Rosenblatt to testify regarding his role in this scheme

7. Sanction Plaintiff for prolonging litigation in bad faith

Respectfully submitted,

Safa Gelardi and Vito Gelardi

Pro Se Defendants