UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IME WATCHDOG, INC.,

                                Plaintiff,

     -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                                Defendants.
----------------------------------------------------------------X

**Case No.: 1:22-cv-1032 (PKC) (JRC)**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SAFA GELARDI AND VITO GELARDI'S MOTION TO VACATE THIS COURT'S PRE-JUDGMENT ORDER OF ATTACHMENT**

Dated: Lake Success, New York
       July 1, 2025

**MILMAN LABUDA LAW GROUP PLLC**
Jamie S. Felsen
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899

Dated: Jamaica, New York
       July 1, 2025

**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421

ii

## PRELIMINARY STATEMENT

Plaintiff, IME Watchdog, Inc. respectfully submits this opposition to the motion filed by the Defendants, Safa Gelardi ("Safa") and Vito Gelardi ("Vito") (Safa and Vito collectively hereinafter the "Gelardis" or the "Individual Defendants"), to vacate this Court's May 30, 2025 Order of attachment on the Gelardis' East Stoudsburg, PA (the "Milford Property") because they purportedly need the funds to pay for an attorney, their years-old tax debts to the IRS, and monies owed to the neutral forensic examiner. The motion should be denied and the levy must remain on the Milford Property because the Individual Defendants have not paid one dollar of the attorneys' fees owed to Plaintiff for the Gelardis' contempt, and willfully failed to pay the forensic examiner until this Court began to impose sanctions for their failure to do so.

Notably, since the Gelardis' counsel has been relieved, the Gelardis have made statements to this Court about their alleged contrition, apologizing for their conduct, and stating that they are "done" with the IME observer business because they recognize and now, allegedly, respect this Court's Orders (but, they are not done with the IME business as is evident in their submission of bank records in support of the instant motion wherein they continue to pay IME observers).[1] See transcript of proceedings held on April 2, 2025.

Critically, the Gelardis' submission itself highlights the reason the attachment Order must remain in full force and effect; there continues to exist a real risk that that they will be unable to satisfy the attorneys' fees award or the inevitable judgment Plaintiff will obtain against them.

Defendants' financial position, according to them, is weak, with several hundred

---

[1] As previously noted by Plaintiff, the Gelardis failed to produce their bank records/statements for two (2) years. ECF Docket Entry 500. They should now be directed to produce same immediately so that all of the payments they have made to IME observers can be uncovered. Should they fail to do so, another forensic exam is warranted.

1

thousands of dollars owed in taxes, alone, from years prior. Notably, it is difficult to reconcile the Gelardis' assertion that they are destitute with the representation made to the Court that they offered to pay Plaintiff $316,000 to settle this case (ECF Docket Entry 485), their income generated from several businesses they own and operate (in addition to the stolen IME business), as well as Vito's threatening text message to Daniella Levi stating that he gambled away all his money.

Among a slew of factors, Defendants' past conduct in failing to pay creditors such as the taxing authorities and the forensic examiner weigh against vacating the Order.

Based on the foregoing, the Gelardis' motion to vacate the attachment must be denied.

## FACTS

On February 29, 2024, this Court issued an Order of Attachment over the net proceeds from the Gelardis' sale of their Staten Island property. See ECF Docket Entry 284. Plaintiff secured this Order after satisfying every statutory requirement under Rule 64 of the Federal Rules of Civil Procedure ("Rules") and CPLR § 6201, including: (i) a valid cause of action; (ii) a strong likelihood of success on the merits; (iii) ample grounds for attachment based on the Gelardis' well-documented intent to defraud; and (iv) the fact that the Gelardis did not have any counterclaim. Id.

On March 8, 2024, the Court spoon-fed the Gelardis crystal-clear instructions: Notify the Court within three (3) days of entering into any contract to sell an interest in *any* other property aside from 148 Clay Pit Road, Staten Island, including the buyer's identity and anticipated closing date. See March 8, 2024 Text Order. In their typical fashion, the Gelardis chose to ignore that directive entirely, failing to disclose the pending sale of their 9 Woods End, Lake Harmony, Pennsylvania property (the "Lake Harmony Property").

As a result of this deliberate violation, on May 30, 2025, the Court ordered the Gelardis to deposit the $123,670.47 in sale proceeds from the Lake Harmony Property into the Court Registry Investment System ("CRIS") by June 6, 2025.

If they'd already burned through the money (a safe assumption at this point), they were required to: (1) deposit whatever crumbs remained into CRIS, and (2) provide a detailed, itemized breakdown of how they managed to squander nearly $125,000 in record time. See ECF Docket Entry 500. The same instructions applied to the proceeds for the Milford Property. Id. As the Court explained, the attachment was necessary to ensure proceeds are preserved to satisfy potential judgments *and* existing obligations.

True to form, on June 6, 2025, the Gelardis reported that the $123,670.47 had magically vanished. Their alleged spending spree included: (i) $10,000 to their attorney Jonathan Warner; (ii) $5,000 to another attorney, James Brando, to handle supposedly existential "permit issues"; (iii) $8,500 to repair a work van they claim is essential to their survival-even though their own filings confirm they're still running an IME business that doesn't require a van (see ECF Docket Entry 516, pages 27-29); (iv) $27,000 to replace an air conditioning unit (apparently, climate control is a higher priority than court orders); (v) $45,000 toward some conveniently vague legal debt; (vi) $28,000 to "prevent their business accounts from imploding"-translation: no documentation provided; and (vii) the remainder allegedly used to feed their children. See ECF Docket Entry 508.

Of course, the Gelardis did not provide receipts, declarations, or any shred of credible proof to support these self-serving claims. The only thing they've proven beyond doubt is their commitment to avoiding accountability, all while ignoring their debts to Plaintiff, the forensic analyst, the IRS, and the State taxing authority.

3

And let's not forget, the Gelardis still haven't paid Plaintiff and non-party Carlos Roa the court-ordered attorneys' fees from September 25, 2024. See ECF Docket Entry 394.

To top it all off, we now know how they really manage their finances: they gamble it away. Their own words say it all-"I took whatever money I had and I gambled it all to try to double it, there's no proof, stick that up your ass." See ECF Docket Entries 469; 469-1.

The record speaks for itself—and so do the Gelardis, usually to their own detriment.

## ARGUMENT

I.  **Legal Standard**

On a defendant's motion to vacate or modify an order of attachment, the plaintiff bears the burden of establishing "the need for continuing the levy." See Iraq Telecom Ltd. v. IBL Bank S.A.L., 43 F.4th 263, 270 (2d Cir. 2022) (citing CPLR 6223(b)).

It "must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment." See Id. (citing VisionChina Media Inc. v. S'holder Representative Servs., LLC, 109 A.D.3d 49 (1st Dept. 2013)).

"The risk should be real" and may include "a defendant's financial position," "past and present conduct," "history of paying creditors," or a "stated or indicated intent to dispose of assets." Id. (citing VisionChina Media Inc., 967 N.Y.S.2d at 346) (internal quotation marks omitted).

The question of whether extraordinary circumstances can be considered on a motion to vacate an order of attachment has not been addressed by the Second Circuit nor the New York Court of Appeals.  However, the Second Circuit has predicted that the New York Court of Appeals would conclude that a court has discretion to weigh extraordinary circumstances even where the statutory requirements for attachment are satisfied. See Iraq Telecom Ltd. v IBL Bank

S.A.L., 43 F.4th 263, 272 (2d Cir 2022) ("Common-sense application of First Department caselaw compels this conclusion. Trial courts have discretion in deciding motions for attachment, …, and that discretion includes the power to consider nonstatutory factors such as the impact an attachment would have on *nonparties* …) (citations omitted).

Applying this standard, the Gelardis' motion must be denied.

## II. There is a Grave Risk that the Individual Defendants will Never Pay a Judgment in this Case

One of the two primary purposes of New York's attachment statutes is to secure judgments against defendants who reside outside the state, recognizing that "[t]here is much more propriety in requiring a debtor, whose domicile is without the state, to give security for the debt, than one whose domicile is within. Such a debtor, pending litigation, might sell his property, and remain at home, in which event he could not be reached by any of the provisional remedies or supplementary proceedings provided by [New York] laws." See ITC Ent., Ltd. v. Nelson Film Partners, 714 F.2d 217, 220 (2d Cir. 1983) (quoting Houghton v. Ault, 16 How. Pr. 77, 84 (Sup. Ct.), aff'd 16 How. Pr. 87 (Sup. Ct. Gen. Term. 1858)). New York courts have found a need for continuing a levy for security purposes where the defendant was a nonresident, the assets in question were liquid or easily liquidated, and plaintiffs had advanced "substantial allegations of misappropriation." Deutsche Anlagen-Leasing GMBH v. Kuehl, 111 A.D.2d 69, 71 (1st Dept. 1985); see also CI Sys. (Israel) Ltd. v. Melamed, 290 A.D.2d. 266, 266 (1st Dept. 2002).

The facts in this case are precisely the same as those in which the aforementioned courts found a continuing need for a levy: the Defendants have moved out of the State of New York to the State of Texas, have assets that may be and have been sold, and unquestionably owe significant sums to the Plaintiff in the form of attorneys' fees (with more to come in the future) and to the neutral forensic examiner.

5

Courts deny motions to vacate an Order of attachment under these circumstances. See Pantheon Properties, Inc. v. Houston, No. 20-CIV.- 3241 (ALC) (SN), 2022 WL 785168, at *3 (S.D.N.Y. Mar. 14, 2022) ("Plaintiffs have persuasively argued that Houston is a resident of Texas, that the assets in question are liquid, and that there is substantial evidence corroborating their allegations of misappropriation. Indeed, plaintiffs have shown that Houston withdrew thousands of dollars from the accounts in question after the discovery of the fraud, and, as a result, they were only successful in attaching less than $7,000, a small fraction of the more than $250,000 that Houston allegedly embezzled. Furthermore, there is no indication that Houston, JHC, or M&MLS have other assets in New York that would be sufficient to satisfy a judgment") (citing Davila Pena v. Morgan, 149 F. Supp. 2d 91, 94 (S.D.N.Y. 2001) (holding that there was a continuing need for security where defendant was a nonresident, his assets were located outside New York, and his answers regarding the assets were evasive).

Based on the foregoing, there is sufficient evidence for the Court to infer the continuing need for security. Indeed, Defendants have had a history of non-compliance with this Court's Orders, both with respect to injunctive relief it has granted, as well as Orders requiring Defendants to pay the neutral forensic examiner and Plaintiff attorneys' fees that this Court has awarded. Indeed, the Gelardis have not paid Plaintiff any of the attorneys' fees they were ordered to pay Plaintiff and non-party Carlos Roa more than nine (9) months ago, on September 25, 2024. See ECF Docket Entry 394.

Vito Gelardi made it clear to Plaintiff he has no intention of paying anything to them. See ECF Docket Entries 469; 469-1 ("I took whatever money I had and I gambled it all to try to double it, there's no proof, stick that up your ass.")

6

Each factor that this Court may consider militates in favor of denying the Gelardis' motion to vacate the Order of pre-judgment attachment.

As to the their financial position, the Gelardis claim that they are in dire financial straits and have failed to disclose all sources of income as this Court has repeatedly ordered them to provide. With respect to their past and present conduct, the Gelardis have repeatedly, openly, and brazenly flouted this Court's Orders, engaging in subterfuge and fraudulent conduct throughout the entire history of this case.

The Gelardis' history of paying creditors is similarly admittedly poor. They have failed to pay the neutral forensic examiner for years, and have an open balance of over $30,000.00 with them. Similarly, the Gelardis have admittedly failed to pay their taxes for years and have failed to provide any evidence showing the existence of any alleged payment plan. The Gelardis seek to vacate the attachment order claiming they need to pay their $270,000 debts to the IRS and New York State (ECF Docket Entry 516), which notably, the Gelardis concede they have not made any payments for throughout this litigation. It is respectfully submitted that they only intend on paying off that debt now because their bank accounts were frozen by New York State due to their failure to pay taxes. Id. Finally, the Gelardis have not only stated and indicated their intent to dispose of assets, they have actually already done so, all in violation of this Court's Orders. See ECF Docket Entry 508 at 3 (detailing expenditures made from sale proceeds); ECF Docket Entries 469; 469-1.

## III. There are no Extraordinary Circumstances Justifying Vacatur

Rather than addressing the factors to be considered on a motion to vacate an Order of attachment, Defendants continue to make impassioned pleas for compassion.

7

However, while the Second Circuit has predicted that the New York Court of Appeals might weigh "extraordinary circumstances" to vacate an attachment, it emphasized that such relief is purely discretionary and requires truly exceptional facts. No such facts are present here. While Defendants claim financial ruin and inability to pay legal fees, these assertions do not exceed ordinary consequences of being a defendant in litigation, are commonplace in civil cases involving attachment, and do not override the legal standard requiring identifiable risk to judgment collection.

Financial hardship—without more—is not legally sufficient to lift an otherwise valid attachment. Courts have routinely rejected such claims where the party fails to demonstrate a specific, compelling inequity beyond insolvency. See Oans on Fine Art LLC v. Peck, No. 23-CV-4143 (JHR) (JW), 2024 WL 2941292, at *10 (S.D.N.Y. Feb. 5, 2024), report and recommendation adopted 2024 WL 2941168 (S.D.N.Y. Apr. 4, 2024), superseded, 2024 WL 4601955 (S.D.N.Y. Oct. 29, 2024), and report and recommendation adopted 2024 WL 4601955 (S.D.N.Y. Oct. 29, 2024) ("On balance, this Court does not believe that attachment of the Property constitutes a 'hardship.' Considering the merits of success …., and the lack of other receivable assets, this Court believes that attachment is proper above the objections of the Peck Parties"); see also Eviner v. Eng, No. 13-CIV.-6940 (ERK), 2015 WL 4461022, at *1 (E.D.N.Y. July 20, 2015) ("Judge Orenstein's order also prohibits the sale, mortgage, or encumbrance of Yoketing and Trinh's numerous Brooklyn properties and requires that rental income from those properties be deposited into the segregated account. … Judge Orenstein also denied Yoketing and Trinh's motion to vacate or modify [the Order], after "conclud[ing] that [Yoketing and Trinh] have not established that they would suffer any cognizable harm from the [ ] constructive trust" and that they have not submitted "credible evidence" evincing a hardship, "nor have they credibly explained how they

sustain their claimed personal expenses with the income and assets they have disclosed").

The Gelardis also attack the merits of Plaintiff's claims, but this is not the stage for adjudicating liability, especially in light of this Court's repeated findings that Plaintiff has established a likelihood of success on the merits. Their arguments about Rosenblatt's conduct, the alleged lack of damages (which is disproven by Plaintiff's supplemental briefing regarding compensatory damages for the Gelardis' contempt), and purported false accusations do not bear on whether there is a present risk of asset dissipation or inability to satisfy judgment. Until the case is resolved on the merits, the Court must presume the validity of the claims justifying the attachment.

The Gelardis further argue that tax liens render the attachment "futile." But under New York law, a valid attachment remains enforceable even if there are superior liens, and the possibility of reduced recovery does not justify lifting it. In fact, Defendants' admission that there may be insufficient equity to satisfy tax debts and a judgment only reinforces the risk that Plaintiff's judgment will go unpaid. This supports continuation, not vacatur.

## CONCLUSION

For the foregoing reasons, the Gelardis' motion to vacate the Order of pre-judgment attachment must be denied.

Dated: Lake Success, New York
      July 1, 2025                       Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

By:   /s/ Jamie S. Felsen
        Attorneys for Plaintiff
        3000 Marcus Ave., Suite 3W8
        Lake Success, NY 11042
        (516) 328-8899

Dated: Jamaica, New York
       July 1, 2025

                                            **SAGE LEGAL LLC**

                                 By:    /s/ Emanuel Kataev, Esq.
                                         Attorneys for Plaintiff
                                         18211 Jamaica Avenue
                                         Jamaica, NY 11423-2327
                                         (718) 412-2421