UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IME WATCHDOG, INC.,

                            Plaintiff,

    -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI, GREGORY ELEFTERAKIS, ROMAN POLLAK, ANTHONY BRIDDA, IME COMPANIONS LLC, CLIENT EXAM SERVICES LLC, and IME MANAGEMENT & CONSULTING LLC,

                            Defendants.
------------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC) (JRC)

**CARLOS ROA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SAFA GELARDI AND VITO GELARDI'S MOTION TO VACATE THIS COURT'S PRE-JUDGMENT ORDER OF ATTACHMENT**

Dated: New York, New York
       July 1, 2025,

Carlos Roa
*Pro Se* former Third-Party Defendant
and Counter Claimant
Office of Zieher & Associates
11 Broadway, Suite 615
New York, NY 10004

**PRELIMINARY STATEMENT**

Your affirmant respectfully submits this opposition to the motion filed by Defendants Safa Gelardi ("Safa") and Vito Gelardi ("Vito") (collectively, the "Gelardis" or "Individual Defendants") seeking to vacate this Court's May 30, 2025, Order of Attachment on the Milford Property located in East Stroudsburg, PA. This motion must be denied in its entirety.

Defendants' sole argument rests on their objection to the attachment despite their continued and willful non-payment of court-ordered monetary obligations, which remain outstanding. Specifically, this Court issued an order on September 25, 2024 See ECF Docket Entry 394. , directing the payment of $6,890.00 in attorneys' fees and $1,209.11 in costs to your affirmant. To date, Defendants have made no effort to satisfy these obligations.

Additionally, Defendants demonstrated similar disregard toward their financial responsibilities to BRG, the neutral forensic examiner, only initiating partial payments after this Court warned of potential financial and criminal sanctions during the April 2, 2025, hearing.

It bears noting that Defendants have accumulated considerable unpaid legal fees, reportedly exceeding $250,000 to their very own counsel, while simultaneously failing to compensate Plaintiff, your affirmant, and BRG as ordered. Their conduct demonstrates a pattern of evading financial accountability throughout this litigation. Meanwhile, they chose to incept many businesses, and sell their real-estate holdings.

Further aggravating matters, Defendants continue to engage in meritless arguments, where this very Court has already ruled that Defendants engaged in misconduct, including bribing a key employee of Plaintiff—an individual with documented cognitive vulnerabilities, Asperger's—as substantiated by text messages retrieved by BRG during the forensic analysis of Defendant's devices. This misconduct was part of a deliberate scheme to misappropriate Plaintiff's trade secrets and undermine Plaintiff's business operations.

Despite these actions, Defendants now seek leniency from this Court under the guise of

financial hardship. Yet, their disregard for Court orders, their obligations to legal professionals, and their past conduct—including unauthorized contact with Plaintiff's employees, unlawful competitive activity by violating Court orders and creating alter egos, and even the placement of a GPS tracking device on your affirmant's vehicle—demonstrate a complete lack of respect for this Court's authority.

This Court has already exercised considerable discretion and patience in affording Defendants opportunities to comply with its orders—opportunities they have repeatedly defaulted on, even when Safa begged for mercy during the April 2, 2025, hearing, only to default and fall short on all her April 2nd promises. Your affirmant should not be further prejudiced by continued delays in the enforcement of valid court orders.

As the courts have often held: "Justice delayed is justice denied." Continued delay in entering judgment against Defendants serves only to deepen the prejudice against your affirmant, in addition, granting Defendant's motion will also only deepen the prejudice against your affirmant. Accordingly, your affirmant respectfully requests that this Court:

Deny Defendants' motion to vacate the Order of Attachment in its entirety; and

Enter judgment against Defendants in the amount of $8,099.11, representing attorneys' fees and costs previously awarded to your affirmant by this Court more than 9 months ago.

## STATEMENT OF FACTS

On February 29, 2024, this Court entered an Order of attachment of the net proceeds from the Gelardis' sale of their Staten Island Property. See ECF Docket Entry 284.

Defendants were ordered by this Court to "notify the Court within three (3) days of entering into any contract to sell their ownership interest in any other property [aside from 148 Clay Pit Road, Staten Island, NY], including the identity(ies) of the buyers and an anticipated closing date." See Text Only Order dated March 8, 2024.

Defendants, consistent with their ongoing pattern of noncompliance, violated this

Court's order by executing the sale of the property located at 9 Woods End, Lake Harmony, Pennsylvania, without providing prior notice to the Court or seeking the Court's permission as required. On May 30, 2025, the Court directed the Gelardis' to deposit the $123,670.47 proceeds of the sale of the Lake Harmony Property into the Court Registration Investment System ("CRIS") no later than Friday, June 6, 2025, and if they no longer have the entire proceeds of that sale, to (1) deposit all remaining proceeds into CRIS, and (2) submit a detailed, itemized summary by June 6, 2025, explaining what they did with the outstanding proceeds. See ECF Docket Entry 500. The Court issued the same directive with regard to the Gelardis' 5265 Milford Road, East Stroudsburg property.

Defendants now petition this Court to lift the attachment previously imposed on the property located at 5265 Milford Road, East Stroudsburg, Pennsylvania. Notably, Defendants continue to own and reside at 26118 Crosswood Trails Lane, Cypress, Texas 77433—a 3,265 square foot residence mansion with a backyard oasis as described in the property listing:

> "Texas-sized lot with stately Taylor Morrison home features a **backyard paradise** (*emphasis added*) with 40' pool with spa, & HUGE covered patio with Fire Place!! BEE in LOVE with the sweet front porch, large driveway, porte-cochere & 3 car detached garage!! Master suite is SWEET with views of the backyard. Posh master bath features double vanities, double closets and corner garden tub. Gorgeous wood floors downstairs, den with beautiful stone fireplace, real wood blinds on windows. Gourmet Island kitchen has tons of cabinets, gas cook top and is open to den. Access to a private pond with fishing, wildlife, waterfowl and bird watching. Oven & Microwave to be replaced June 1st with Kitchen Aid Stainless Steel Appliances, Granite Allowance. Roof 2016, NO MUD TAX!"

(https://www.zillow.com/homedetails/26118-Crosswood-Trails-Ln-Cypress-TX-77433/58679840_zpid/)

Despite their continued assertions of financial hardship, Defendants currently reside in a luxury residence. They had the opportunity to relocate to a more modest home but elected to maintain a high-end lifestyle, including residence in a property marketed as a "backyard paradise" consisting of a 40-foot pool and hot tub, which maintenance and upkeep on such luxuries can be inferenced to be expensive. This decision reflects a voluntary choice to prioritize personal comfort over satisfying outstanding legal obligations.

In addition, Defendants have liquidated substantial portions of their real estate holdings. Specifically, they have sold the following real estate holdings:

- 1475 Moon Valley Drive, Champions gate, FL 33896 on May 15, 2023
- 1523 N Hollywood Street, Philadelphia PA 19121 on December 5, 2023
- 148 Claypit Road, Staten Island NY 10309 on March 1, 2024, in a sham rent to buy agreement.
- 9 Woods End, Lake Harmony PA 18624 on February 27, 2025

In Defendants' motion to lift attachment on the Milford Road property, Defendants produced bank statements, IRS balances owed, *inter alia* to their meritless arguments which have been already decided by this court, and Plaintiff's trade secrets. Although this Court Ordered defendants at the April 2, 2025, hearing to produce all financial records, See Text Only Order dated April 2, 2025:

> **By Wednesday, April 16, 2025, Defendants shall file all relevant documentation from the last two years, of all of their sources of income (even if the money received is then used to make a mortgage payment, for example) and of all of their assets. The statement of Defendants' finances should include a summary of all of their businesses (including, but not limited to , any independent medical exams ("IME") businesses, their daycare business, and their possible Italian sandwich deli business), a summary of all of their personal and business financial accounts (including bank accounts Defendants have signatory rights to, even if the account is in the name of another person or entity), a summary of all property they own and any related rental or rent-to-buy agreements, and full disclosure of all assets of any kind which they own. In addition to this summary,**

> **Defendants shall file all financial statements and/or records from the last two years that are related to the businesses, accounts, and/or assets identified.** (emphasis added)

Defendants failed to fully comply with the Court's April 2, 2025, Order and are only now attempting to provide partial information that was required to be disclosed by the April 16, 2025, deadline. This continued noncompliance reflects an ongoing pattern of disregard for Court directives.

Furthermore, in their June 27, 2025, submission to the Court, Defendants—while simultaneously claiming financial hardship and requesting leniency—admitted to making Zelle payments totaling $1,000, to Christian Hogarth, a long-standing associate who has served as an observer for each of the various alter ego entities established by Defendants:

> "Christian works in social media marketing and was hired to assist with digital campaigns for our businesses… These payments were for legitimate marketing services—not for any improper or unlawful conduct."

Additionally, defendants sent Zelle payments, totaling $1,750, to Jeff Beibin, a longtime associate of defendants, who also worked at every single alter ego entity established by Defendants:

> "As for the Zelle payment to Jeff, it is entirely unrelated to the claims in this litigation. Jeff is a personal acquaintance who recently obtained full-time employment in retail. Out of respect for his privacy, I will not disclose the nature of the payment—but I firmly assert that it had nothing to do with Plaintiff, IME Watchdog, or any alleged wrongdoing."

Defendants continue to assert claims of financial hardship, yet based on the information they provided, they appear to have sufficient resources to invest in digital marketing for one or more of their numerous business ventures. While portraying themselves as impoverished and seeking the Court's compassion, Defendants reside in a luxury residence and have nevertheless proceeded to create, form, and operate the following business entities, that your affirmant knows of:

- The IME Company aka The IME Advocate Company LLC incepted on January 30, 2024
- Little Companions LLC incepted on July 9, 2024
- The Makeover Experience LLC incepted on December 7, 2023
- Sammy Subs LLC incepted on January 26, 2023

Defendants continue to make commercial rent payments for both Little Companions LLC and Sammy Subs LLC and are actively compensating employees at these business entities. Despite being explicitly ordered by this Court, Defendants have failed to produce any financial documentation reflecting these expenditures or other business-related financials.

It is also worth noting, that although in Defendant's June 25, 2025, motion, they claim, "The Milford property is not our primary residence and was not acquired for investment…", Contrary to Defendant's statement, the property is currently being marketed as a short-term rental on multiple public platforms. In fact, since its purchase in April of 2022 by the Gelardis, the property has consistently operated as a short-term rental.

https://www.airbnb.com/rooms/1406633828747296837?adults=8&check_in=2025-09-18&check_out=2025-09-23&location=East%20Stroudsburg%2C%20PA&search_mode=regular_search&source_impression_id=p3_1750973159_P3FvGZ1IPpjqmgwz&previous_page_section_name=1001&federated_search_id=ce5fc8fc-2536-4216-9ed3-e29c3abbb89a

https://www.vrbo.com/20140819ha?chkin=2025-09-18&chkout=2025-09-24&d1=2025-09-18&d2=2025-09-24&startDate=2025-09-18&endDate=2025-09-24&x_pwa=1&rfrr=HSR&pwa_ts=1750973570479&referrerUrl=aHR0cHM6Ly93d3cudnJiby5jb20vvS G90ZWwtU2VhcmNo&useRewards=false&adults=8&regionId=7122&destination=East%20Stroudsburg%2C%20Pennsylvania%2C%20United%20States%20of%20America&destType=BOUNDING_BOX&latLong=41.08084%2C-75.02932&privacyTrackingState=CAN_TRACK&productOffersId=46639579-db70-4c3e-aaa2-009969ccde4f&searchId=e2b6107c-d6b0-425f-8384-fe51bdedf8f0&sort=RECOMMENDED&top_dp=589&top_cur=USD&userIntent=&selectedRoomType=115411364&selectedRatePlan=0000fc739383fdb94416ab54e193b751be22&expediaPropertyId=115411364

All the properties the Gelardis have owned in their real estate portfolio, with the exception of

the Staten Island, New York and Cypress, Texas houses, have been investment properties including their Florida and Lake Harmony properties—both of which were sold after being used as investment and income generating properties as well as their Philadelphia property, which was tenant-occupied, after the house was bought and flipped; and later on sold.

It is also worth noting that the Gelardis did not present one iota of financial records from their short-term rental income regarding the Milford Road property.

Perhaps most concerning is the admission by Defendant Vito that he has used funds for gambling purposes, as evidenced by a text message he sent directly to the Plaintiff's CEO. This conduct raises serious questions regarding Defendants' financial priorities and further undermines their claims of financial hardship, "I took whatever money I had and I gambled it all to try to double it, there's no proof, stick that up your ass." See ECF Docket Entries 469; 469-1.

## ARGUMENT

I. **Lifting the Attachment on the Milford Road Property will Prejudice Many**

Defendants remain indebted to your affirmant, the Plaintiff, and BRG—the Court-appointed neutral forensic examiner. On June 6, 2025, this Court properly issued an Order of Attachment on Defendants' property located at Milford Road. Defendants no longer reside in the State of New York, and aside from the 148 Claypit Road property—which is currently subject to a sham rent-to-own agreement—the Milford Road property is Defendants' only remaining real property asset on the East Coast.

Defendants now assert that financial hardship necessitates the sale of the Milford Road property. However, permitting such a sale absent a prejudgment attachment would significantly prejudice your affirmant, as it would severely diminish or eliminate the likelihood of recovering the sums owed pursuant to this Court's September 25, 2024, Order. Given that outstanding amounts are also owed to both BRG and Plaintiff, allowing the sale without maintaining the attachment risks prejudicing all parties entitled to enforcement of monetary judgments. Accordingly, the attachment

must be sustained to preserve the integrity of this Court's prior rulings and ensure the enforceability of its judgments. "Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution." DLJ Mortg. Cap., Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009) (citation omitted). Rule 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64(a).

## II. Defendant's Intent to Defraud

There exists no reasonable basis to believe that Defendants will apply any proceeds derived from their multiple business operations or from the sale of the Milford Road property toward satisfying their financial obligations to your affirmant or to any other party to whom they remain indebted in this litigation. Section 6201(3) of the New York Civil Practice Law and Rules governs an order of attachment when "the defendant, with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, here also your affirmant's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." On February 27, 2025, Defendants sold the property located at 9 Woods End, Lake Harmony, Pennsylvania 18624, without notifying the Court, in direct violation of this Court's directive issued on March 8, 2024. That directive explicitly required Defendants to notify the Court at least three (3) days prior to entering into any contract for the sale of their ownership interest in any real property. It further mandated that Defendants disclose the identity of the prospective buyer(s) and the anticipated closing date. Defendants' failure to comply with these clear and unambiguous terms constitutes a willful violation of a court order and further demonstrates their disregard for the authority of this Court.

On May 30, 2025, the Court directed the Gelardis to deposit the $123,670.47 proceeds of the sale of the Lake Harmony Property into the Court Registration Investment System ("CRIS"), Defendant's papers are a badge of fraud as there was no proof or receipts as to what happened to the $123,670.47, even after being given an opportunity to explain where the monies went.

Under CPLR § 6201(3), "it is incumbent upon [the plaintiff] to demonstrate that the defendant is acting with intent to defraud." Colon v. Cole Bros. Circus, Inc., 04-CV-3606, 2007 WL 3014706, at *2 (E.D.N.Y. Oct. 12, 2007) (quoting Brastex Corp. v. Allen Int'l, Inc., 702 F.2d 326, 331–32 (2d Cir. 1983)). It is "well established in New York" that "the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment." Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp., 54 F. Supp. 3d 287, 293–94 (E.D.N.Y. 2014) (quoting Bank of Leumi Trust Co. of N.Y. v. Istim, Inc., 892 F. Supp. 478, 483 (S.D.N.Y. 1995)); see also Computer Strategies v. Commodore Bus. Machs., 483 N.Y.S.2d 716, 721, 105 A.D.2d 167, 173 (N.Y. App. Div. 1984) (explaining the same requirement). "[I]ntent [to defraud] must be proved, and the facts relied upon to prove it must be fully set out in the moving affidavits." Eaton Factors Co. v. Double Eagle Corp., 232 N.Y.S.2d 901, 903, 17 A.D.2d 135, 136 (N.Y. App. Div. 1962) (per curiam); see also Colon, 2007 WL 3014706, at *2 ("Fraud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions—proving the fraud.") (quoting Brastex Corp., 702 F.2d at 331–32)); JSC Foreign Economic Ass'n Technostroyexport, 306 F. Supp. 2d at 487 (stating that it is insufficient "to submit affidavits containing allegations that merely raise suspicions of fraudulent intent").

"The property removed or secreted must be the property of the defendant," and "allegations . . . of a disposal of corporate assets will not sustain the warrant of attachment." Eaton Factors Co., 17 A.D.2d at 136. A plaintiff "must show the existence of a ground for attachment as to each defendant against whom he seeks a warrant." Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 465 N.E.2d 330, 334 (N.Y. 1984). As stated earlier, the fraud here is indicative in Defendant's failure to adequately explain and show the Court where the proceeds of the 9 Woods End Lake Harmony property were spent, as well as Vito's admission to gambling money away. Defendants are engaging in business marketing for their new business ventures and paying their associates Jeff Beibin, Christian Hogarth, David Segovia. A total of $3,285 was spent on all three associates of the Gelardis. Defendants are also producing income from the Milford Road property through short term rentals and refuse to

disclose the financials regarding the house.

### III. Defendants Milford Road Property Has Enough Equity

Defendants bought the Milford Road property for $535,000. Through publicly available information, it is a fact that Defendants initially obtained $428,000 Mortgage from RoundPoint Mortgage Servicing LLC. Defendants put down $107,000 as a down payment.

| Measurement | Total Increase (2022–2025) | Approx. Annual Growth |
| --- | --- | --- |
| FHFA Index | ~13.9% over 2 years | ~6.6% per annum |
| Zillow Home Value Estimate | ~14–20% over 3 years | ~5–6.5% per annum |

The figures above represent the average annual increase in real estate values in East Stroudsburg, Pennsylvania from 2022 to 2025. Applying a conservative 5% annual appreciation rate to a property valued at $535,000 in 2022 yields an estimated market value of approximately $615,000 in 2025. This reflects an accrued equity gain of approximately $80,000 over the three-year period and illustrates the Gelardis' potential to realize a significant profit upon the sale of the Milford Road property. The initial equity the Gelardis had from their down payment ($107,000) is sufficient to pay:

| | |
| --- | --- |
| Costs and Attorney Fees to your affirmant: | $8,099.11 |
| Cost and Attorney Fees to Plaintiff: | $58,358.23 |
| BRG, neutral forensic: | ~$30,000 |

Plaintiff and your affirmant have already been awarded a total of $66,452.39. Defendants collectively owe approximately $96,452.39 to your affirmant, the Plaintiff, and BRG, the Court-appointed neutral forensic examiner. Defendants' initial down payment of $107,000 is sufficient to satisfy these obligations in full and still leaves a surplus of approximately $10,000.

Further, your affirmant has calculated that Defendants have accrued an estimated $80,000 in equity from retaining ownership of the Milford Road property. Even after full payment of all outstanding obligations, Defendants would retain approximately $90,000 in net proceeds.

By not attaching the Milford Road property, Defendants would be walking away with approximately $186,000 liquid assets, which they can easily dispose of as they have done with all other

properties, specifically the 9 Woods End Lake Harmony property.

Accordingly, the attachment on the Milford Road property must remain in effect, as it ensures that all parties with valid claims will be made whole, while still allowing Defendants to realize a substantial financial benefit. There is no justifiable basis to lift the attachment when it does not impair Defendants' ability to recover surplus proceeds and serves the critical function of protecting the integrity of this Court's prior orders.

## IV. Attachment is Warranted Based on Defendant's Behavior

In, Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp., 500 N.Y.S.2d 278, 118 A.D.2d 769, 773 (N.Y. App. Div. 1986); JSC Foreign Economic Ass'n Technostroyexport, 306 F. Supp. 2d at 487–88, the Court found fraudulent intent when Defendant's counsel was unable to adequately explain where proceeds of company sales had gone.

Additionally, Your Honor presided over SONYA COLEY, ET AL., v. VANNGUARD URBAN IMPROVEMENT ASSOCIATION, INC., ET AL., (12-CV-5565) where the Court concluded that based on the testimony, Defendants' evasiveness throughout those proceedings, and documentary evidence Plaintiffs in that proceeding had submitted in connection with a hearing, there was sufficient evidence of fraudulent intent to warrant an attachment of assets under CPLR § 6201(3)

In the present matter, Defendants have once again demonstrated a lack of candor in their financial disclosures, in direct contravention of this Court's clear directives. This Court has previously observed repeated instances in which Defendants have provided false or misleading statements under oath, and the current conduct regrettably reflects a continuation of that pattern.

Despite claiming financial hardship, Defendants appear to possess sufficient resources to fund marketing campaigns for their various business entities—yet have failed to satisfy their Court-ordered financial obligations. This is evidenced both by the materials submitted in support of Defendants' recent motion and by the ongoing failure to produce the comprehensive financial documentation previously ordered by the Court. Such conduct reflects willful noncompliance and further underscores the necessity for continued judicial oversight and enforcement.

Accordingly, this opposition shall serve as formal notice to Defendants that they are required to produce all financial records—both business and personal—by no later than July 8, 2025, at 5:00 PM Eastern Time, in compliance with the Court's April 2, 2025, Order. Should Defendants fail to meet this deadline, your affirmant will have no alternative but to file a series of motions, along with any other appropriate relief to enforce compliance with the Court's multiple directives.

It is highly likely that Defendants will not produce all financial records as required, as full disclosure would likely establish their ability to satisfy the outstanding financial obligations imposed by this Court in connection with the present litigation. Such withholding appears to be a calculated effort to evade enforcement of the Court's prior orders and avoid accountability for debts lawfully owed.

This production is essential in connection with your affirmant's continued efforts to collect the attorneys' fees and costs awarded by this Court on September 25, 2024. Delays in production directly prejudice your affirmant and obstruct the timely administration of justice.

If the attachment is lifted, your affirmant and others will never be paid, the balance of equities shifts completely in favor of defendants and placed your affirmant in an inability to ever collect the already awarded costs and fees.

## CONCLUSION

For the foregoing reasons, Defendants' motion to vacate the prejudgment attachment should be denied, in *toto*.

Dated: New York, New York    Respectfully Submitted,
      July 1, 2025,

                                                                        _____/s/_____

                                        Carlos Roa
                                        *Pro Se* former Third-Party Defendant
                                        and Counter Claimant
                                        Office of Zieher & Associates
                                        11 Broadway, Suite 615
                                        New York, NY 10004