UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Safa Gelardi,
Defendant/Counterclaim-Plaintiff,

v.

IME Watchdog, Inc., Daniella Levi, Adam Rosenblatt, and Carlos Roa,
Plaintiffs/Counterclaim-Defendants.

## COUNTERCLAIM

I, Safa Gelardi, as Defendant and Counterclaim-Plaintiff, bring this counterclaim against IME Watchdog, Inc., Daniella Levi, Adam Rosenblatt, and Carlos Roa, and allege as follows:

## PRELIMINARY STATEMENT

This counterclaim is not just a legal response—it is an unmasking. It exposes a coordinated, malicious, and sustained assault on my life, my family, my livelihood, and my name. This is not a civil dispute. This is character assassination carried out through litigation—and I can prove every word of it.

I am not a litigious person. I am a builder. I built my business from nothing. I worked hard. I played fair. And I lost everything—not because I did anything wrong, but because I trusted the wrong people, and one by one, they turned on me, weaponized my goodwill, and handed my life over to a lie.

This lawsuit was not born of injury. It was born of vengeance.

It began with **Carlos Roa**, a disgruntled former contractor, who by Daniella Levi's own sworn admission, **initiated contact with her in February 2022**. He did not report wrongdoing. He saw an opportunity to destroy me. And she welcomed him—because she had her own agenda.

Rather than investigate, mediate, or communicate, Daniella Levi declared war.

Immediately after I was served, I had my attorney reach out to her to ask for a meeting—a conversation. I wanted to understand the allegations. I wanted to put it behind us. **Instead of dialogue, I received a $10 million demand.** When I later **agreed to pay her full settlement demand of $316,000**, just to put this nightmare to rest, she **rejected it**.

That was the moment I knew: this was never about compensation.
**This was about destruction.**

Since then, I have lost more than most people could survive:

- My business was paralyzed by a weaponized TRO based on lies.

- I lost **over $2 million in property equity**.

- I lost **over $900,000 in income**.

- I paid **over $250,000 in legal fees** and owe **$260,000 more**.

- I now owe **$270,000 in unpaid taxes** because I was barred from working.

- My credit has been destroyed.

- My name has been slandered.

- My clients were targeted with anonymous smear messages quoting this lawsuit.

- I was followed by private investigators—me, a mother, a business owner—stalked, surveilled, and humiliated.

- I fled New York City—**the only home I've ever known**—with my family, in fear.

We didn't relocate. We escaped.

And why? Because I tried to help someone.

**Adam Rosenblatt**, the supposed victim, was—and still is—the President of IME Watchdog. He always worked for Daniella Levi. In 2017, he came to me claiming he was being abused by her. He cried. He begged me for help leaving her company and starting something of his own. I believed him. I tried to help. I even tried to get him a job at one of my client's firms.

He pitched me **IME Guard Dog**. He sent me documents. He brought ten IME Watchdogs to a meeting, and I have the proof.

He contacted **LawCash** and **Dr. Henry**, pitching the same business with the same materials—

He betrayed her first.
He betrayed me next.
And he is still President of her company today.

That speaks volumes.

As late as February 2022—**just days before I was served with this lawsuit**—he was still texting me, **asking to purchase a franchise of IME Companions.** He wasn't scared. He wasn't threatened. He was growing. Until he got caught.

And rather than fire him like I did Carlos, **Daniella Levi kept him. Why? Because she needed him to flip**. And he did. He became her weapon.

Together, they sealed filings, falsified narratives, and buried exculpatory evidence like **ECF 526**—which contains my communications with Adam showing mutual collaboration, not coercion. They made accusations they couldn't prove, and refused to produce any evidence of damages, because **there are none**. All they have is a story. **I have facts. Documents. Recordings. Sworn statements. Invoices. Forensics.**

I tried to settle. I tried to comply. I tried to be quiet.

But I will not be erased.

This counterclaim is not emotional. It is not retaliatory. It is not performative. It is the product of **three years of silence, survival, and evidence collection.** It is legally grounded, factually fortified, and morally necessary. And now—**I will be heard**

.

## PARTIES

1. **I, Safa Gelardi**, am an individual currently residing in the State of Texas. At all relevant times, I resided in New York and operated a lawful business providing IME coordination services.

2. **IME Watchdog, Inc.** is a New York corporation with its principal place of business located in New York. It is owned and operated by Daniella Levi and is the corporate plaintiff in this action.

3. **Daniella Levi** is an individual residing in New York and the owner and principal operator of IME Watchdog, Inc. She has initiated and directed all litigation against me, both directly and through her agents and co-conspirators.

4. **Adam Rosenblatt** is an individual who works for Daniella Levi as the **President of IME Watchdog**. He **betrayed her trust** by disseminating her business's confidential information to multiple third parties, including competitors and business contacts. Despite this, he later aligned himself with Daniella Levi and Carlos Roa to conspire in the campaign of **defamation, sabotage, and litigation abuse** that forms the basis of this counterclaim.

5. **Carlos Roa** is a former independent contractor who worked with me between 2018 and 2022, and who, while still in that position, began secretly collaborating with Plaintiff Daniella Levi to fabricate claims and weaponize this lawsuit against me for personal and financial gain

# FACTUAL BACKGROUND

This case is not about stolen clients or trade secrets. It is about a calculated and malicious effort to destroy me—personally, professionally, and financially. It began with a lie, and it has been sustained by a coordinated smear campaign, sealed filings, and outright abuse of the legal system.

In early 2022, Carlos Roa—a disgruntled former contractor—initiated contact with Daniella Levi. He did not approach her as a victim. He approached her as an opportunist, seeking revenge. In her own affidavit, Daniella Levi admits that Carlos contacted her. From that moment forward, this case was no longer about facts. It was about destruction.

Immediately after being served, I had my first attorney reach out to Daniella Levi to request a conversation. I wanted to sit down. I wanted to understand what I was being accused of. Instead of a discussion, I received a **demand for $10 million**. Later in the litigation, she demanded **$316,000**—and **I agreed to pay it in full** to put this case behind me. She rejected it. Why? Because this was never about settlement. It was about watching me drown.

I have lost nearly everything since then. My business was paralyzed by a baseless TRO. My income collapsed. My properties—into which I had invested years of work and equity—had to be sold under duress. I lost over **$2 million in equity**. I lost over **$900,000 in income**. I paid over **$250,000 in legal fees** and still owe another **$260,000**. I fell behind on taxes—over **$270,000 owed to the IRS**—because I wasn't allowed to work. My credit is destroyed. My finances are devastated. My family was harassed and surveilled by private investigators. We fled New York in fear. I left behind my dream home. I left behind the only city I've ever lived in.

While I was being drained, the Plaintiffs used every tool available—not to litigate, but to suppress. They filed motions to seal key evidence. They manipulated discovery. They made public accusations, then fought to hide the truth. One critical filing, **ECF 526**, was sealed without justification, burying communications that show Adam Rosenblatt voluntarily provided me with IME Watchdog materials as early as 2017. Not once—but repeatedly. I have emails.

Let the record be clear: **Adam Rosenblatt was no victim. He was the architect.** He asked me to help him build a new company, IME Guard Dog. He sent me emails. He coordinated with me. He used my business to cover cases when he couldn't. He came to

me—disillusioned with her, frustrated with her leadership—and asked for help leaving her IME Watchdog business. I believed him. I supported him. I offered to help him start something of his own. I even tried to help him find alternative employment.

In fact, I have **text messages from Adam Rosenblatt as late as February 2022—just days before I was served with this baseless lawsuit—asking to buy a franchise of IME Companions.** That's right: while this lawsuit was already in the works, he was privately asking for permission to grow with me.

That's not coercion. That's not theft. That's **partnership**—right until the moment he betrayed me.

It doesn't stop there. **I also have evidence that Adam Rosenblatt went to LawCash, pitched his IME Guard Dog business to them, and received a formal employment offer.** He texted me about the offer they made him. He was open about it. He wasn't hiding. He was **actively marketing** the very business that Plaintiffs now pretend he never consented to.

Later, he referred a fired IME Watchdog employee to LawCash—**and that person ultimately became the president of the rebranded IME Guard Dog operation, which now calls itself IME Guards.** That name didn't come out of nowhere. It came from Adam. It came from his own vision. The idea. The branding. The materials. The ambition.
**It was his.** He was not misled. He was not used. **He was the one using everyone. Including me.**

He provided me IME Watchdog materials **voluntarily**, via email. He initiated conversations about launching IME Guard Dog. I have the receipts—literally.

He was not misled. He was not stolen from.
**He was collaborating. He was leading. He was scheming.**

And then he turned on me.

**Carlos Roa**, the so-called whistleblower, is a fraud. He falsely claimed to have earned a JD from Universidad Carlos III de Madrid. I contacted the university. They confirmed **he never attended.** He also claimed to be working 80 hours a week for me while supposedly enrolled in in-person law school in Spain. He even filed a lawsuit against me for unpaid overtime, which was dismissed after I submitted his own invoices showing he worked far less than he claimed.

And **Daniella Levi**—the woman claiming to be the victim of all of this—is a convicted criminal with a long history of lawsuits. She was sued by **Goldblatt & Associates**, her co-counsel on a case, after she tried to alter their agreed fee structure once the case was

won. She was also sued by an **elderly client**, who successfully proved in court that Daniella Levi and her husband coerced her into purchasing a Staten Island property as partners—only to try to swindle her out of her rightful share. And she was **sued by another client for forging affidavits—and lost.** That is the person hiding behind sealed filings and pretending to be wronged.

They sent anonymous emails to my clients. They impersonated family members. They referenced this lawsuit and said, "How could you use a company that lies?" They wanted to shame and scare my clients into leaving—and it worked. They poached my business under cover of this lawsuit while calling me a criminal.

I have physical, admissible evidence of all of this:

- Emails
- Text messages
- Recordings
- Affidavits
- Court records
- Financial data
- Title transfers
- Communications directly from the Plaintiffs and their agents

What do they have? Nothing. After three years, they still have not produced a single document showing damages. Because this was never about damages, it was about watching me lose everything.

But I haven't. And I won't. And I'm done staying quiet

## PATTERN OF LITIGATION ABUSE AND JUDICIAL MISUSE

This case has not been litigated in good faith. It is a coordinated attack carried out by:

- **Carlos Roa**, a proven fraud who falsely claims to have earned a JD from Universidad Carlos III de Madrid—an institution that has **confirmed via email** that no such record exists. He claimed in his affidavit that he "felt compelled" to act against me, yet he never explained what allegedly compelled him, by whom, or based on what. He provided no factual basis, no documentation, and no corroboration. This omission speaks volumes. If there had been any coercion,

- threats, or wrongdoing, Carlos Roa—who is now aligned with Plaintiff—would have detailed it. He didn't, because it doesn't exist.
- **Adam Rosenblatt**, a traitor who remains to this day—the **President of IME Watchdog**, the company owned by Plaintiff Daniella Levi. That fact alone speaks volumes. Any legitimate business owner would have terminated an executive who secretly met with competitors, shared company materials, and sought to launch a competing business. But not Daniella Levi. She kept him.
- He initiated every conversation. He was the one proposing IME Guard Dog. He sent me documents, initiated planning,
- **Adam Rosenblatt personally reached out to my web developer** to discuss building the IME Guard Dog website.
- He also **contacted the tax preparer who later incorporated IME Guard Dog, Inc.**—on his own initiative. These were not accidents. They were the actions of a man actively building a business—**not a victim**.
- He reached out to **LawCash and a chiropractor named Dr. Henry**, pitching the same business idea using the same stolen materials. He received an offer from LawCash—and texted it to me. I have the messages.
- He was never coerced. I have dozens of communications proving that he acted willingly, aggressively, and with full agency. He asked me for help building a new business, **IME Guard Dog**.
- He used my company **IME Companions** to cover his cases when he couldn't.
- He submitted documents, sent me emails containing IME Watchdog materials in 2017, and maintained open lines of communication. He was not a victim. He was an architect.
- Even more damning, **just days before I was served with this lawsuit in 2022, Adam texted me asking to purchase an IME Companions franchise**. He was still trying to grow a business, he was still pitching ideas and looking for a way out of Watchdog. Until he got caught. That's when the betrayal flipped. The moment Daniella Levi confronted Adam with what he had done, she didn't fire him—she **threatened him**. She made him flip. And rather than face exposure or legal fallout, he **cooperated with her to turn the entire narrative against me**.
- The truth is this: **Adam Rosenblatt was the original defector**. He betrayed Daniella Levi. He asked me for help to build something of his own. And when he got caught, he betrayed me to save himself., **and the fact that he is still President of IME Watchdog today tells you everything you need to know**.
- The truth is simple: **Adam Rosenblatt betrayed Daniella Levi, not the other way around**. He weaponized his position inside her company and shared confidential materials with others. He tried to drag me into his betrayal. And when that narrative no longer worked for him, he flipped again collaborating **with Levi to manufacture this lawsuit against me**.
- Why has she kept him as President of IME Watchdog after all of this? Why was Carlos Roa fired, and Adam Rosenblatt rewarded?

- The answer is obvious: **Adam Rosenblatt was threatened, coerced, or compromised.** His loyalty is bought, not earned. His credibility is broken. His actions are documented. His betrayal is indisputable
- **Daniella Levi** is a convicted criminal who weaponized this litigation to try to destroy me—not to seek justice. She has a documented pattern of deception and betrayal, even toward the people she works with. She hired Goldblatt & Associates as co-counsel to help her win a case, then tried to change the agreed fee structure after the fact—forcing them to sue her. This is who she is. It's not just unethical. It's a pattern.
- And most shockingly, she and her husband were sued by an elderly woman whom they coerced into purchasing a Staten Island property with them as supposed partners—only to try to swindle her out of her rightful share. This is not just a pattern. It is a blueprint of manipulation, greed, and betrayal that defines how Daniella Levi operates—both in business and in the courtroom.
- Even more troubling, **she was sued by one of her own clients for forging affidavits—and the client won**. These cases are not misunderstandings. They are part of a broader pattern of misconduct and legal manipulation that undercuts any credibility she may claim in this matter
- This supports the broader pattern of manipulation and disregard for professional obligations that she has displayed throughout this case. Her credibility is non-existent. She continues to represent Carlos Roa in a separate matter where he seeks to be the administrator of a deceased Mexican man's estate—further proving their alliance.

Plaintiffs have misused this Court from the start. Carlos Roa filed a retaliatory overtime claim against me only after I asserted counterclaims in this case. That lawsuit was dismissed by the Supreme Court after I produced his own invoices, which showed he was billing consistently as an independent contractor—not a wronged employee. Meanwhile, he was allegedly attending full-time in-person law school in Madrid while claiming to work 80 hours a week for me. It doesn't add up—because it's not true.

The sealing of ECF 526, without any justification, is yet another tool used to bury the truth. The document contained emails between me and Adam Rosenblatt that show mutual business discussions and cooperation. No trade secrets were disclosed, and at most, narrow redactions could have been made. The sealing served no purpose other than to hide damaging evidence from the public and the record.

I respectfully ask the Court to clarify how I can safely and transparently file the following exhibits without triggering another seal:

# EXHIBIT INDEX (TO BE FILED UPON CLARIFICATION FROM THE COURT)

Exhibit A – Email from Universidad Carlos III confirming Carlos Roa was never enrolled or graduated from the institution

Exhibit B – April 2017 email from Adam Rosenblatt transmitting IME Watchdog documents to me voluntarily

Exhibit C – Text messages and emails showing Adam Rosenblatt's orchestration of IME Guard Dog, including franchise discussion

Exhibit D – Text messages from Adam Rosenblatt in February 2022 asking to purchase an IME Companions franchise, days before I was served

Exhibit E – Communications showing Adam pitched his IME Guard Dog business to LawCash and received an employment offer

Exhibit F – Email from Adam Rosenblatt in 2019 providing marketing help to the president of IME Guards.

Exhibit G – Audio recordings:

- Carlos Roa to Tiffany Uribe falsely claiming I'm under FBI investigation
- Carlos Roa to Maura saying "Pandora's box is going to explode"
- Adam Rosenblatt to Atiqa calling me a "Tinder Swindler" and a "con artist"

Exhibit H – Email from Daniella Levi falsely claiming to a client that she attended Pace Law School

Exhibit I – Daniella Levi's public bio and bar registration confirming she attended St. John's Law and NYU

Exhibit J – Court records of Daniella Levi's criminal conviction

Exhibit K – Lawsuit records showing Daniella Levi was sued by Goldblatt & Associates (co-counsel) for changing agreed fee terms

Exhibit L – Lawsuit records showing Daniella Levi and her husband were sued by an elderly client for coercing her into a Staten Island real estate deal and attempting to defraud her out of her share

Exhibit M – Records of Daniella Levi being sued by another client for forging affidavits, resulting in judgment against her

Exhibit N – Judgment against Carlos Roa from a Philadelphia company (satisfied during this litigation)

Exhibit O – Property records showing Carlos Roa purchased a home in Pennsylvania shortly after this litigation began

Exhibit P – Client affidavits and emails explaining why they left IME Watchdog (due to slander, harassment, and misrepresentation)

Exhibit Q – BRG Forensics report excerpts confirming no coercion, threats, or unauthorized access and documenting voluntary collaboration

Exhibit R – Financial documentation:

- $2M+ in equity lost due to forced property sales
- $900K+ in income lost due to the TRO
- $250K+ in attorney fees paid
- $260K in attorney debt owed
- $270K in unpaid taxes
- Credit reports and loan applications showing financial collapse

Exhibit S –Text messages confirming mutual collaboration between me and Adam Rosenblatt using IME Companions contractors

## LEGAL BASIS AND AUTHORITIES

This counterclaim rests on well-established legal principles under New York State law, federal law, and the U.S. Constitution. Every claim made herein is supported by binding precedent, procedural safeguards, and statutory authority. The conduct alleged is not only unlawful, but also actionable, egregious, and sanctionable.

1. Defamation Per Se

Statements that (a) falsely accuse someone of a crime or (b) tend to injure them in their trade, business, or profession are considered defamation per se, meaning damages are presumed.

- *Liberman v. Gelstein*, 80 N.Y.2d 429 (1992)
- *Sharratt v. Hickey*, 20 A.D.3d 734 (3d Dep't 2005)

The Plaintiffs and their agents falsely stated that I was under criminal investigation, was a "Tinder Swindler", and operated an unethical or illegal business. These statements were shared with clients, third parties, and business contacts. That is not protected speech—it is commercial and reputational sabotage.

---

2. Abuse of Process

Abuse of process occurs when legal proceedings are initiated not for their intended purpose, but to achieve a collateral objective such as harassment, intimidation, or competitive advantage.

- *Curiano v. Suozzi*, 63 N.Y.2d 113 (1984)
- *Board of Ed. v. Farmingdale Classroom Teachers*, 38 N.Y.2d 397 (1975)

This case was initiated based on a fabricated narrative, with no real damages, no police report, and no internal complaint from the supposed "victim." Instead, the legal process was used to suppress my business, intimidate my clients, and silence me through court-imposed restrictions and unjust sealing.

---

3. Tortious Interference with Business Relationships

The intentional interference with known business relationships or expectancies—without justification—that causes economic harm is actionable.

- *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004)
- *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp.*, 87 N.Y.2d 614 (1996)

Plaintiffs and their agents sent anonymous emails and text messages to my clients, cited this case to scare them away, and directly contacted parties I had long-term relationships with. They didn't just compete. They sabotaged, and they did it with malice.

---

4. Civil Conspiracy

While not an independent tort under New York law, civil conspiracy supports joint liability when two or more parties act in concert to commit an underlying tort.

- *Alexander & Alexander v. Fritzen*, 68 N.Y.2d 968 (1986)

Daniella Levi, Adam Rosenblatt, and Carlos Roa collaborated to launch this case, using sealed filings, false affidavits, and public defamation to jointly ruin me. Their communications, coordinated actions, and mutual benefit from the destruction of my company demonstrate conspiracy in both fact and law.

---

5. Intentional Infliction of Emotional Distress (IIED)

Extreme and outrageous conduct that intentionally—or recklessly—causes severe emotional harm is actionable under New York law.

- *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)
- *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135 (1985)

The actions taken against me—PI surveillance, anonymous harassment, false criminal accusations, and a lawsuit built on betrayal—go far beyond civil dispute. They were designed to break me. They caused emotional, psychological, and familial trauma. That is not litigation—that is targeted cruelty.

---

6. Spoliation and Evidentiary Misconduct

Where parties conceal, destroy, or withhold relevant evidence, especially after litigation has begun courts may impose severe remedies, including sanctions and adverse inferences.

- *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004)
- *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999)

Given the evasiveness of Plaintiffs' affidavits, the absence of documentary support, and the extensive efforts to seal key filings, I reserve the right to seek spoliation sanctions should discovery show that messages, metadata, or documents were altered or withheld.

---

7. First Amendment & Due Process (Sealing Abuse)

Public access to civil court proceedings is protected under the First Amendment and due process doctrines. Improper sealing of evidence undermines truth and deprives litigants of a meaningful defense.

- *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)

- *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)

The sealing of ECF 526, which contained communications central to my defense, was unconstitutional and improper. If the goal is justice, then the public—and the court—deserve access to the truth, not selective concealment.

---

8. Sanctions for Frivolous and Retaliatory Litigation

Filing claims without factual support, or for improper motives, exposes the filer and their attorneys to sanctions under:

- Fed. R. Civ. P. 11(b)
- 28 U.S.C. § 1927
- *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003)

Plaintiffs have submitted false narratives, sealed filings to suppress contradictions, and filed retaliatory lawsuits (including Carlos Roa's failed wage suit). These tactics are sanctionable.

---

9. Fraud and Perjury

Affidavits submitted under oath that contain false material statements—particularly when contradicted by objective evidence—may constitute fraud on the court or perjury.

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)
- *United States v. Dunnigan*, 507 U.S. 87 (1993)

Carlos Roa's affidavit stated he felt "compelled" to act—but never explained what compelled him or what wrongdoing he witnessed. His fraudulent credentials and false testimony about his JD, hours worked, and intentions are provable lies.

---

This is not a personal conflict. This is a legal ambush that violates the principles of fairness, transparency, and truth that this Court is sworn to protect. I am not just defending my name, I am invoking the law

Given the extensive sealing efforts and evasive affidavit content, I reserve the right to seek spoliation sanctions should it be discovered that communications, devices, or data were concealed, altered, or destroyed.

These legal principles not only support this counterclaim—they demand that it be taken seriously, fully considered, and allowed to proceed publicly. The Plaintiffs have crossed every line. I am not merely asserting injustice—I am documenting it, and the law is on my side

## CONCLUSION

This counterclaim is not speculation. It is not noise. It is not a distraction. It is the documented, provable truth—backed by emails, texts, affidavits, recordings, forensics, financial records, and the plaintiffs' own words.

I have been accused, defamed, surveilled, silenced, and forced out of the only city I've ever called home. I have lost income, equity, credit, clients, and peace of mind. I have watched my business be dismantled by a campaign of lies, sealed filings, and coordinated betrayal—and yet, I am still standing, and I still believe in this Court.

The Plaintiffs came here without evidence. I have brought proof. They brought emotion. I bring records. They sealed the truth. I demand that it be seen. They filed this case to destroy me. I am filing this counterclaim to expose them.

The forensic analysis revealed no wrongdoing. The affidavits collapse under scrutiny. The affidavits contradict one another. Their central witness fabricated credentials. Their claims of injury are unsubstantiated. Their tactics reek of retaliation, fraud, and judicial abuse

I did not ask for this war, but I will not be its casualty. For over three years, I have endured a campaign of destruction masquerading as litigation. I have lost my business, my home, my community, and my financial stability—not because of any wrongdoing, but because I became the target of a coordinated, malicious, and fraudulent effort to erase me.

I came to this Court in good faith. I produced documents. I complied with discovery. I tried to settle. I even agreed to Plaintiff Daniella Levi's full demand—only for her to reject it. She didn't want resolution. She wanted devastation. And through sealing, suppression, and bad-faith filings, she and her co-conspirators have sought to silence me while destroying everything I built.

But the truth speaks louder than intimidation.

I have the evidence: emails, affidavits, recordings, forensic reports, financial records, client statements, and judicial filings. Unlike the Plaintiffs, who have yet to produce any credible proof of damage, I have hard, undeniable facts.

This counterclaim is not performative. It is not emotional. It is not hypothetical. It is legally grounded, factually supported, and morally necessary. Every tort asserted here—

from defamation to abuse of process—is backed by admissible evidence and governing law.

If the Court is still willing to look at the facts—not just the filings—then I respectfully ask that my counterclaim be heard **in full**, **without sealing**, **without censorship**, and **without delay**. Let the truth stand. Let the record be public. Let justice correct what falsehood has built.

I respectfully request that this Court allow this counterclaim to proceed **without redaction or sealing** and allow me the dignity and legal standing to defend myself in full public view.

Let the record reflect:
I am not here to hide.
I am here for justice.
And I will not go away

**PRAYER FOR RELIEF**

**WHEREFORE, I, Safa Gelardi, respectfully request that this Court enter judgment in my favor on all claims stated herein, and grant the following relief:**

- **A. Compensatory damages in an amount to be determined at trial, but no less than $5 million, for financial loss, emotional distress, reputational damage, and loss of business opportunities;**

- **B. Punitive damages in an amount sufficient to punish Defendants and deter future misconduct;**

- **C. An order enjoining Defendants from contacting my clients, publishing false or defamatory statements about me, or using private investigators or proxies to surveil or harass me or my family;**

- **D. A declaratory judgment that Defendants' claims were initiated in bad faith, without merit, and in abuse of judicial process;**

- **E. Leave to file my supporting evidence and exhibits without sealing, or with minimal and specific redactions narrowly tailored to any legitimate privacy interest;**

- **F. Sanctions pursuant to Rule 11 and 28 U.S.C. § 1927 for filing knowingly false affidavits, abusing sealing procedures, and engaging in retaliatory litigation;**

- **G. Costs of suit, including reasonable attorneys' fees incurred prior to going pro se;**

- **H. Any other relief the Court deems just and proper in the interests of justice and equity**

**DECLARATION UNDER PENALTY OF PERJURY**

I, Safa Gelardi, declare under penalty of perjury under the laws of the United States of America that the foregoing counterclaim is true and correct to the best of my knowledge, information, and belief.

I have lived every asserted fact in this filing. I have reviewed and verified every document referenced. I have not exaggerated, fabricated, or misstated anything. This counterclaim reflects not just legal truth but lived truth—and I am prepared to testify to all of it under oath.

Dated: July 9, 2025

Respectfully submitted,


Safa Gelardi