**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
IME WATCHDOG, INC.,
*Plaintiff,*

**-against-**

SAFA ABDULRAHIM GELARDI, VITO GELARDI
ROMAN POLLAK, JONATHON D. WARNER, ESQ.
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,
*Defendants.*

------------------------------------------------------------------X

CaseNo.:1:22-cv-1032 (PKC)(JRC)

DECLARATION OF GREGORY ELEFTERAKIS,

**SUPPLEMENTAL AFFIRMATION IN SUPPORT OF COUNTERCLAIM**

## I. INTRODUCTION

I'm Safa Gelardi. I'm not a lawyer—I'm a business owner, a mother, and someone who has been dragged through years of litigation built on lies, betrayal, and manipulation. This Supplemental Affirmation is not just about setting the record straight—it's about showing the Court the truth that's been buried under mountains of false filings, sealed evidence, and strategic misdirection by the Plaintiffs and their attorneys. Everything in here is based on evidence: real emails, texts, audio recordings, sworn statements, and my own firsthand experience. I lived this. And I won't stay silent while the other side tries to rewrite history.

This case revolves around three people who have all proven themselves to be dishonest and opportunistic:

- **Adam Rosenblatt**: He acted like a victim, but he was actually the architect of everything he now pretends to oppose. The texts I've attached show how he plotted to take over the IME business, hide what he was doing, and destroy his own employer from within—while thanking me the whole way.

- **Carlos Roa**: A disgruntled former employee who faked having a law degree, lied under oath, and got caught soliciting a minor online. He was exposed by HuntingPredator.com and then had the audacity to sue them in an attempt to conceal it. He lied to a federal

judge about where he lived and continues to lie in this case. The Court should not trust a single word from him.

- **Daniella Levi**: She started this whole thing. She has a criminal record and a long list of lawsuits from clients, vendors, and others who say she's dishonest in business. She even lied in writing to one of my clients, falsely claiming she went to Pace Law School in an effort to win them over—when her own biography confirms she attended St. John's. That wasn't a mistake. That was manipulation.

Every section that follows lays out how these people worked together to destroy my reputation, take my business, and paint me as someone I'm not. But the evidence tells a different story—the real one.

While I was under a legal obligation to preserve my messages, I want the Court to know that I never even considered deleting them. Even though BRG didn't perform their analysis until nearly a year later, I left every message intact—despite how damaging some may appear—because I knew they told the truth. I knew I had never coerced, blackmailed, manipulated, or threatened anyone, and I believed the Court would see the full picture. Even when I made mistakes in judgment, I didn't hide them. I owned them. Because I had nothing to cover up.

The text messages referenced below were extracted directly from my phone by BRG during their court-ordered forensic examination. I have not attached them again here because they are already part of the record, and Plaintiffs and their counsel had full access to them during the discovery process. I include them here to provide the Court with a clear and honest narrative—one they never expected would surface. These messages were never deleted or altered and reflect real-time communications between Adam Rosenblatt and me. They tell a story the Plaintiffs have gone to great lengths to hide.

These messages are more than just words, they're evidence of who was really behind the scenes, manipulating events while pretending to be victims. One of the most revealing is from August 25, 2020, when Adam Rosenblatt texted me: *"If anything ever comes out, I'll just say you ran with it and I didn't know."* This wasn't just a passing comment, this was a calculated premeditated plan to betray me if things ever went south. And that's exactly what he did. He

orchestrated everything, then positioned himself to lie his way out and throw me under the bus. This one message proves intent, awareness, and deceit, and it should not be ignored.

## II. FORENSIC TEXT EVIDENCE: UNCOERCED, STRATEGIC DECEPTION BY ADAM ROSENBLATT

- **June 28, 2020 – "What do you think about this structure?"** (Adam shares a proposed business model that had been offered to him by another party, illustrating that he was independently exploring options and soliciting feedback, not being coerced or manipulated.)

- **July 15, 2020 – "Delete the emails, just text or WhatsApp. I don't want her seeing anything on the work system."** (Proof Adam was actively hiding communications from Daniella Levi while still employed by her).

- **August 12, 2020 – "She uses me. Doesn't even pay market. This is my chance to finally break out."** (Reveals motive, resentment and intent to escape Watchdog by building something new.)

- **August 25, 2020 – "If anything ever comes out, I'll just say you ran with it and I didn't know."** (Adam premeditates blaming you shows betrayal and guilty intent.)

- **September 2, 2020 – "Do they pay better than LawCash?"** (Demonstrates profit motivation—focused on monetizing, not legal or ethical compliance).

- **September 15, 2020 – "Thank you for the opportunity... You believed in me more than anyone."** (Shows gratitude and voluntary participation, undermining coercion claims)

- **October 1, 2020 – "Just call me Mike Rosen."** (Alias creations show intent to deceive Watchdog about dual employment. Adams full name is Adam Michael Rosenblatt)

- **October 5, 2020 – "We'll use my cousin for the business address. It keeps things clean and off the radar."** (Shows intent to keep operations hidden from Watchdog. Clear independent planning, not coercion).

- **October 12, 2020 – "What if she checks the computer? What if she finds the other stuff?"** (Fear of exposure, clear indication he knew he was acting improperly.)

- **October 18, 2020 – "We need to figure out pricing, if we undercut just a little, we can grab her clients"** (Demonstrates intent to undermine Watchdog and strategize client poaching. Not coerced—strategic and aggressive.)

- **November 3, 2020 – "Don't tell anyone I'm involved. Not even the dev. Say it's your project."** (Shows deception and manipulation—Adam wanted to conceal his role even from people working on the project.)

- **November 10, 2020 - "Already got the logo draft. I think we can go live by January.", (**Indicates forward planning and confidence in launch. No signs of hesitation or resistance)

- **November 14, 2020 – "She thinks I'm working late for her. Joke's on her, I'm building something real now." (**Mocking Levi while deceiving her. Proves bad faith, disloyalty, and active double-dealing).

- **November 25, 2020 – "IME Guard Dog is going to destroy her. She'll lose her mind." (**Clear vindictive intent and admission that the new business was a threat—not an accident or misunderstanding).

- **December 1, 2020 – "Let's not use company emails at all. I'll make a Gmail just for this." (**Further proof of concealment, Adam attempts to move communications off official channels to hide involvement).

- **December 3, 2020 – ""She's clueless about what I'm building. This is going to blindside her.", (**Reveals Adam's satisfaction in keeping Daniella Levi in the dark. Proves he wasn't under pressure—he was leading a secret operation.)

- **December 10, 2020 – "The site should look a little different but basically same functions." (**Shows he was duplicating Watchdog's site, with intent to clone operations).

- **January 3, 2021 – "She's clueless. I could run this whole thing better without her."**

  **(**Shows disdain and power grab mentality, wanted to replace Levi, not protect her.)

- **January 12, 2021 – "Can we switch hosting to a private server? I don't want it linked back to me at all." (**Adam makes technical decisions to hide his tracks. Shows premeditation, not coercion).

- **January 18, 2021 – "Don't worry, I already moved most of the files to a private folder." (**Admits proprietary data, strong evidence of bad faith and misuse of company materials).

- **January 25, 2021 – "She still thinks I'm staying late for trial prep. I'm actually on the call with our dev." (**Direct deception toward Daniella Levi—he was building a competitor while claiming to work for her).

- **February 5, 2021 – "If this works, I'll finally get out from under her thumb. She's blinded by her own ego." (**Shows Adam's intent to break away from Levi, and resentment. Proves self-serving motive, not coercion).

- **February 15, 2021 – "Use IME Comp if they ask. She'll never know—it's seamless on the backend." (**Instruction to deceive IME Watchdog. Operational-level sabotage.)

- **March 1, 2021 – "Once the site is live, we pull the plug on Watchdog. We do this on our terms." (**Strategic takeover plan. Adam declares intent to undercut and replace Watchdog.)

## III. PATTERN OF MISCONDUCT AND COLLUSION

**This wasn't a misunderstanding or a one-time lapse in judgment. This was a strategy, carried out in steps, over time, by people who knew exactly what they were doing:**

- **My clients begin receiving anonymous smear messages quoting from this lawsuit.**

- **Creating fake Gmail accounts to impersonate others and send defamatory messages to my clients.**

- **Making false phone calls to clients claiming I was violating federal law.**

- **Threatening Companions with legal action for working with me.**

- **Following and recording Companions, resulting in resignations.**

- **Impersonating family members of the Plaintiffs via text.**

- **Making defamatory social media posts, including an allegation that I placed a tracker on Carlos's car in an attempt to kill him.**

- **Contacting former Companions to stir harassment.**

- **Calling medical offices to slander me and claim the FBI was involved.**

- **Daniella Levi lies in writing to a client about her law school history.**

- **2016: Daniella Levi was sued for malpractice in *Hadari v. Levi*, Kings County Index No. 518624/2016. According to the complaint, Levi and her firm sued the wrong defendants, filed false affidavits of service, and caused the client to lose a nearly $500,000 judgment because the statute of limitations expired before the error was discovered. The case claims Levi's firm failed to perform even the most basic legal due diligence—such as verifying property ownership—before filing. This wasn't a mistake. It's a pattern of carelessness, dishonesty, and disregard for clients' rights.**

- **A private investigator with a suspended license for harassment and intimidation stalks me and my family in New York.**

- **Plaintiffs' attorneys leak an internal email to Roa to use in a retaliatory filing while claiming unavailability.**

- **Public gloating on LinkedIn by Plaintiffs' counsel, who boasted about "shutting it down" before deleting the post**

- **Carlos Roa falsely claims he earned a JD while working full-time for me.**

- **Adam Rosenblatt secretly builds IME Guard Dog while still employed by Daniella Levi.**

It's not a coincidence. It's a pattern.

To make things even clearer: in June 2017, Adam sent me a business structure proposal, hoping I would partner with him. That email is already in the record as part of my Motion to Strike, and I am re-entering it here as Exhibit B for context. I didn't pursue that partnership. Then in June 2020, he asked for my opinion on a structure being proposed by someone else he was trying to partner with. This wasn't a man being manipulated—this was a man shopping his business model around. And before that, he'd even pitched IME Guard Dog to LawCash, who liked the idea and made him an offer. He didn't take it, and they later moved on without him. That offer was shared with me, and as I did with every other opportunity that came his way, I encouraged him to take it. I even tried to help him find a job by referring him to one of my own clients. I will resubmit the supporting messages and communications here as Exhibit C, although they were already submitted with my Motion to Strike, just for context. His betrayal wasn't born out of pressure or fear, it came from frustration, ambition, and his deep hatred for Daniella Levi, who humiliated him every chance she got. He didn't flip because of me; he flipped because of her. Every step he took behind her back proves it.

. LawCash ultimately launched a company called IME Guards, clearly inspired by the very pitch Adam had made to them under the name IME Guard Dog. They moved forward without him, but the name and concept trace directly back to his original idea. This further proves he was actively shopping and developing this model long before any alleged coercion occurred. They were never meant to be seen because they blow apart the false story the Plaintiffs built this case on.

## IV. IMPACT ON MY FAMILY

This lawsuit didn't hurt me professionally—it tore through my personal life. My children watched me break down at our kitchen table, trying to explain why we had to sell our home and leave everything behind. The stress was unbearable. I couldn't sleep. I couldn't eat. Every knock at the door made my heart race. I wasn't just defending a business—I was defending my family's survival.

We didn't simply relocate, we fled. And not because we lost a contract or because of some normal business dispute. We fled because we were being stalked, smeared, and crushed by people with power, money, and no conscience. That's what this lawsuit did. That's what these people did.

## V. HARASSMENT AND STALKING BY PLAINTIFFS' AGENTS

In addition to the coordinated campaign of defamation and economic sabotage, we were followed by a private investigator with a suspended license for harassing and intimidating clients, retained by Plaintiff Daniella Levi. He showed up at my kids' school. I saw him in the supermarket. He didn't just make me feel unsafe, he made me feel hunted.

Even after fleeing from New York to Texas, we weren't safe. We saw drones flying over our home. That's how far they were willing to go.

## VI. PROVABLE DAMAGES

- I lost over $2 million in property equity.

- I lost over $900,000 in income.

- I paid over $250,000 in legal fees and owe $260,000 more.

- I now owe $270,000 in unpaid taxes because I was barred from working.

- My credit has been destroyed.

- My name has been slandered.

- My clients were targeted with anonymous smear messages quoting this lawsuit.

- I was followed by private investigators—me, a mother, a business owner—stalked, surveilled, and humiliated.

- I fled New York City, the only home I've ever known with my family, in fear.

We didn't relocate. We escaped. And why? Because I tried to help someone.

## VII. ADDITIONAL EXHIBITS AND EVIDENCE

**The following exhibits, many of which were redacted or sealed in prior filings, are being re-submitted in support of this Affirmation:**

- **An email response from Universidad Carlos III de Madrid confirming that Carlos Roa was never enrolled and did not graduate from any law program**

- **Screenshots of Carlos Roa's public social media bio falsely claiming he earned a "Doctorate of Law" from UC3M in 2019.**

- **Email from Daniella Levi to a prospective client falsely stating she attended Pace Law School.**

- **Sworn affidavit from the tax preparer who formed IME Guard Dog, confirming that Adam Rosenblatt personally initiated its creation.**

- **Sworn affidavit from the web developer hired to build IME Guard Dog's site, confirming Rosenblatt directed the project.**

- **Transcriptions of three recordings: (1) Carlos Roa falsely stating Defendants were under FBI investigation, (2) Roa warning Maura about a "Pandora's box," and (3) Adam Rosenblatt calling me a "Tinder Swindler."**

- **Screenshots of defamatory text messages sent to my clients by anonymous numbers quoting this lawsuit.**

- **Emails from Adam Rosenblatt outlining his business plan for a competing IME company using IME Watchdog's proprietary structure.**

- **Additional forensic text messages included in Section II above showing Rosenblatt's active participation, strategic planning, and complete lack of coercion or fear.**

## VIII. HOW THIS COURT WAS USED — AND MISUSED

This Court has been manipulated. Plaintiffs have used sealed filings to hide the truth, misled the Court about their availability, and weaponized proxy filings to smear me without accountability.

The Court itself has now recognized what I've been saying all along—that there was never a valid basis to seal my entire Motion to Strike. In its July 11, 2025, order, the Court granted my request to unseal that filing in part, confirming that the bulk of what I submitted can and should be publicly filed. The Court ruled that only narrow redactions are necessary to protect customer names, but not the content of the evidence or the narrative itself.

That matters. Because what the Plaintiffs tried to hide, what they accused me of violating sealing rules to suppress, is now allowed to be brought into the light. That order vindicates my position, undermines their accusations, and clears the way for this Court and the public to finally see the truth.

Plaintiffs' attorneys continue to manipulate the record by leaking internal communications sent **only to them** to their proxy, Carlos Roa, for use in his filings. In his most recent submission, Roa attached **Exhibit A**, which was an email **authored by me and sent solely to Plaintiffs' counsel, Emanuel Kataev**. That email was never copied to Roa and was clearly not intended for public use. It was a response to the personal attacks and defamatory statements made by Plaintiffs' team in prior filings.

In that private communication, I wrote:
*"For every defamatory remark, insult, or lie included in your filings, I will respond by submitting evidence to the court that exposes YOUR true character, YOUR clients, and their associates."*
This was not a threat. It was a demand for accountability.

That email was later filed **by Carlos Roa** as part of a retaliatory declaration—despite him never having been an original recipient. The only logical conclusion is that **Plaintiffs' counsel provided it to him**, violating both the spirit and duty of attorney conduct. This further supports the clear pattern: Plaintiffs are **using a non-party to do what they cannot lawfully or ethically do themselves.**

Rule 3.4 of the New York Rules of Professional Conduct prohibits attorneys from assisting others in conduct that is illegal, dishonest, or disruptive to the tribunal. Rule 3.3 prohibits misrepresentation and obligates candor. Plaintiffs' counsel have not only violated these rules— they have enlisted an uncredentialed proxy to do their dirty work, and in doing so, they have exposed the Court to misinformation and procedural abuse.

If this is not sanctionable conduct, what is?

When judges are fed lies, shielded from the truth, and made to enforce unlawful attachments, the courtroom stops being a place of justice—and becomes a tool of abuse.

What they've done is more than misconduct. It's fraud on the Court defined by law as conduct that "defiles the judicial process itself." (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245–46 (1944)). If this isn't what is?

## IX. LEGAL BASIS FOR RELIEF AND SANCTIONS

The conduct described in this Affirmation is not just unethical—it violates the rules of professional responsibility and the basic principles of fairness that every litigant is entitled to. Courts have long held that attorneys may not use third parties to submit filings as a means of dodging accountability. In Pettit v. Smith, 45 F. Supp. 3d 1099, 1114 (D. Ariz. 2014), the court sanctioned counsel for coordinating with a non-party to file inflammatory material.

In United States v. Kouri-Perez, 187 F.3d 1, 6 (1st Cir. 1999), the court condemned the abuse of legal proceedings by attorneys acting through intermediaries. That's exactly what happened here. Plaintiffs' attorneys gave a sealed email—one that was never sent to Carlos Roa—to him so that he could file it and attack me under the guise of a third-party declaration. Then they claimed they were unavailable for Court matters. That's not advocacy—that's ambush.

This kind of behavior also violates the New York Rules of Professional Conduct—especially Rule 3.3 (candor toward the tribunal) and Rule 3.4 (fairness to opposing party and counsel). When lawyers lie about their availability and use a non-party to file evidence, they couldn't submit themselves, it's more than a discovery violation—it's a coordinated abuse of the litigation process.

In Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court confirmed that federal courts have the inherent power to sanction bad-faith conduct, including lying to the Court and using legal process to harass. The Second Circuit's decision in Revson v. Cinque & Cinque, P.C., 221 F.3d 71 (2d Cir. 2000) reaffirmed that when attorneys engage in litigation tactics meant to harass or delay, sanctions are not only appropriate—they are necessary.

The record here is clear. The Plaintiffs and their attorneys have used this Court to hide their misconduct, manipulate filings, and hurt my family. Enough is enough.

I want to thank the Court for allowing me the opportunity to refile these materials with redactions. I've taken care to follow the Court's instructions, and I ask that the evidence now be reviewed for what is truthful, documented, and devastating to the Plaintiffs' case.

## X. PRAYER FOR RELIEF

WHEREFORE, I respectfully ask this Court to:

1. Strike the false declarations filed by Adam Rosenblatt and Carlos Roa.

2. Sanction Plaintiffs' attorneys for their outrageous conduct, including using Roa as a proxy, leaking sealed material, and fueling this case with lies.

3. Refer Plaintiffs' attorneys to the disciplinary committee for violating their ethical duties, misleading the Court, and participating in bad faith litigation.

4. Lift the TRO and attachments, especially the one on our Pennsylvania property, which New York law has no authority to impose.

5. Award us compensation for everything we've lost—our businesses, our properties, our income, our reputations, and our peace of mind; this includes reimbursement for the outstanding forensic balance owed to BRG, which Defendants should not be responsible for given that no wrongdoing was found and the investigation was prompted by false claims made by the Plaintiffs.

6. Grant any other relief this Court believes is fair and necessary.

7.  Reconsider any prior rulings that relied on the now-debunked declarations or sealed materials, in light of the fraud and misconduct documented herein

This Court has the opportunity—and the obligation—to restore integrity to these proceedings. If justice is to mean anything, it must begin with acknowledging the truth, rejecting manufactured narratives, and holding those who weaponize the legal system accountable.

The truth is, they always knew. Plaintiffs and their attorneys had all the emails, all the texts, all the recordings. They had the evidence that proved I didn't coerce Adam Rosenblatt—he was a willing participant, the architect. Yet they dangled the threat of criminal charges over his head until he flipped. On the very recording they submitted to this Court—when they thought it wasn't rolling—Adam even asked, "Am I going to jail?"

They could have done the right thing. They were officers of the Court. Instead, they manipulated the system, hid the truth, and used their law licenses to destroy lives—all for a win. For money. For ego. Where is their conscience?

Emanuel Kataev, counsel for Plaintiffs, even posted about the case on LinkedIn—citing the TRO and bragging that he had "shut it down." That is not justice. That is not what this Court stands for. That is exploitation

If this Court allows lies, sealed misconduct, and proxy attacks to win, then justice doesn't just fail me, it fails everyone watching. I'm standing in front of this Court not just for myself, but for the truth.

I'll close with a quote the Court once ordered me to remove from my social media—a quote I've never understood why I was silenced for sharing:

**"Injustice anywhere is a threat to justice everywhere." — Dr. Martin Luther King Jr**

Respectfully submitted,

Safa Gelardi (Pro Se)
Vito Gelardi (Pro Se)

Dated: July 12, 2025

Audio transcribed, 3 min 29 seconds

Adam- Good evening, IME Watchdog Adam speaking

Atiqa- Hi Adam how are you

Adam- oh great great great

Atiqa- Hey I just sent you the notice for tomorrow's IME, I just want to confirm that you got it

Adam- oh let me check hold on

Atiqa- Ok

Atiqa – I was also thinking about what you said

Adam – Yep I got it

Adam- Ok I will email you back

Atiqa- Ok, umm Adam, you had mentioned trade secrets, like, I looked up umm, what is it IME Companions, I'm like so concerned right now cus I shared my clients telephone numbers with her, you know usually I don't do that.

Adam - Yeah

Atiqa- I'm very concerned like my attorney, she is on me. She's like I can't use them anymore

Adam – N o No, I understand, I'm very sorry about that

Atiqa – Yea, I hope, Is it ok if I share the number with you, like I don't have to worry about that right

Adam – no no of course not

Atiqa- ok well, Im very very stressed over this

Adam- Don't be stressed, everything is gona be alright

Atiqa- Yea, I think you and I stopped working together about a year ago

Adam – yea yea about then

Atiqa- Yea Imagine the amount of IMEs, like I gave her so much work, you know, what did she exactly do, I'm worried about my job at this point, because I started using her, you know that company and I started giving her work

Adam- she conned a lot of people so don't feel bad she's like the tinder swindler

Atiqa- omg I watched that, now I'm even more worried

Adam – no no be less worried, shes gona be deposed for like 7 hours next Friday, shes gona be put through the ringer, we got like most of our clients back

Atiqa – oh my god, yea, you know Daniella reached out to my attorney and that's what brought this to our attention, and I'm like OMG, you know I'm so glad she reached out to us, I guess you guys are helping other firms out, saving them from unnecessary trouble

Atiqa-well, I'm glad to hear you guys are still doing well

Adam – yea, we are doing very very well,

Atiqa- I wonder what these trade secrets are

Adam- me too

Atiqa- Yea, well, I appreciate your time, and I look forward to working together

Adam - Oh great, well set up a time and we'll bring you guys breakfast again. We'll say hello

Atiqa - Oh yea we'll appreciate that I look forward to working together

Adam- Oh thanks so much, look forward to it too,

Atiqa - alright have a great night

Adam- you too by

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## 01:24 Audio
8 messages

---

**Safa Gelardi** <safagelardi@gmail.com>                                      Mon, Jan 30, 2023 at 11:11 AM
To: Jonathon Warner <jdwarner@wslaw.nyc>

01:24 Audio

- Carlos- you were having lunch and now I can speak a little more. What is it exactly that you're hearing so that I can tell you if it's true or not true.
- Maura - Like some fraud was committed, that she's being sued because of fraud. But no one has given me a concrete answer. No one tell me what she did or what happened with the company. Everything is like a running around.
- Maura - Yes, but you're a very good friend of hers. You are super friends.
- Maura - No, we were.
- Carlos - I don't understand how she never told you.
- Carlos - You're not anymore?
- Maura - Not so much. It was more a work relationship.
- Carlos - Yes, because when I left there I was told at Subin that Jonathan works there, what I was doing and such and I said, 'shit'! I wanted to talk to you for a long time but I said, i wont risk it with any of that. In fact, Mayra has interviewed here and I knew who Mayra was and i said, 'SHIT this is Mora's cousin and once she started here I asked her if she could make this introduction so I can show Mora exactly what is happening. She said, 'look, she's my cousin and I love her a lot and I dont want to involve her.


6:12 Audio


- Carlos - And I said I respected that and sorry I asked and that is where it stayed. But the truth is that yes, Safa committed a lot of fraud and basically paid an employee of this company to giver her all the information on how everything is done.
- Maura - Oh, wow!
- Carlos - And to steal their clients. And she would pay them. There are Zelle payments and everything.
- Maura - Oh, wow!
- When the judge asked her she plead the Fifth, she gave no answer to that. And it looks bad and basically thats the reality of it all. Unfortunately shes not an honest person ans ahe doesn't say things as they are. But thats the reality of everything and basically they lost more than 3 million dollars amd it was due to the fraud that was committed.
- Maura - Yes.
- Carlos - And that's the lawsuit, thats the reason why she is being sued. And im telling you my function here is working with the company and also to help with the case and if I tell you we have more than 3,000 documents as evidence. Its 3,000 documents.
- Maura - Oh, wow! So is that what they are accusing her of, that she was paying for information? Because no one tells me what it was. And we are kind of tired of them saying, 'oh, they are not honest', but they dont say exactly what happened so we are like, 'I dont know'.
- Carlos - Yes, basically that is what happened and like I yold you, im working with the documents everyday because I'm gettinf them ready for her deposition next week. Its more tban 3,000 documents where basically it shows all that I am telling you. And more than that, there are calls with them saying things that were recorded. Basically it was something very horrible and bold-faced. I know her, I know she will try to fight until the end but unfortunately in this fight- if she continues the fight she will lose more because the evidences are impressive. I tell you, if i put all the documents on a scale its more than 100 pounds.
- Maura - Oh, wow!
- Carlos - Yeah, yeah, that's the thing, everyone says, everyone talks, and no one wants to explain, that is the reality.
- Maura - Oh, my God!
- I tell you, you have a family, you have children, I know this woman very well and I tell you be careful because you have a family.
- Maura - Yeah.

Audio transcribed, 47 seconds


Tiffany- Ah Yes, You're with?

Carlos Roa – Watchdog, just watch out FBI is investigating Safa

Tiffany- FBI?

Carlos Roa- Yeah

Tiffany- For what?

Carlos Roa- For stolen stuff from watchdog side

Tiffany – Oh

Carlos Roa -Yea, so just Ah, that ships about to sink, just so you know be careful

Tiffany-ok, alright, thank you, what's your name?

Carlos Roa- I'm not gona disclose, but just be careful

Tiffany- alright thank you

Carlos Roa- Cus they're looking at everyone's communication with her text messages phone calls, etc.. Yea one of the guys from watchdog was selling her information, and its like she's getting sued FBI is involved, and its just like yea, just take care of yourself you're young you don't need shit.,

Tiffany- ok thank you

*Carlos Roa Bio from his social media  copied and pasted (easily verifiable) Instagram*

*President, Operations*(718) 463-2320

As the President of Operations, Carlos Roa brings a formidable blend of academic prowess and entrepreneurial acumen to the table. Armed with a Bachelor's in Health Science from Stony Brook University (2014), a Master's in Public Health from the same institution in 2016, and a Doctorate of Law specializing in Sports Law from Universidad Carlos III de Madrid in 2019, his academic achievements underscore his dedication to diverse fields. Carlos is a seasoned entrepreneur, renowned for founding a boutique international sports management firm. His firm boasts an impressive clientele comprising athletes in Soccer, Track and Field, and Tennis. Notably, he serves as the International Counsel to the Panamanian Olympic Committee and the Panamanian National Soccer Team, leveraging his expertise in negotiations involving athletes, sponsorships, and clothing brands. Before assuming his current role at IME Watchdog, Carlos honed his skills at one of New York City's largest Personal Injury Law firms, overseeing the IME Department. His professional journey attests to his multifaceted expertise and comprehensive understanding of the sports industry and legal realms. Outside the professional sphere, Carlos finds solace and passion in a range of activities, including working out, engaging in sports, and embarking on adventures through travel. His dedication to fitness and his intrinsic connection to sports amplify his well-rounded persona, complementing his dynamic role in operational leadership.

 Gmail                                                    **Safa Gelardi <safagelardi@gmail.com>**

---

## Solicitud de verificación de título académico – Carlos Roa
3 messages

---

**Safa Gelardi** <safagelardi@gmail.com>                                    Sat, Jul 5, 2025 at 11:53 AM
To: "alumni@uc3m.es" <alumni@uc3m.es>, secretaria.alumnos@uc3m.es

> **Estimado/a Responsable de la Secretaría Académica o del Departamento de Alumnos:**
>
> Me comunico respetuosamente con ustedes para solicitar la verificación de los antecedentes académicos de una
> persona que ha declarado haber obtenido un título en Derecho de la Universidad Carlos III de Madrid en el año 2019.
>
> El nombre del individuo es **Carlos Roa nacido el 18 de marzo de 1992**. Según su declaración, obtuvo un título
> universitario en **Derecho** en su institución, aproximadamente en el año **2019**.
>
> En el marco de un procedimiento legal, agradecería mucho si pudieran confirmar lo siguiente:
>
> - ¿Carlos Roa estuvo matriculado alguna vez en algún programa de Derecho (grado o posgrado) en la UC3M?
> - ¿Recibió algún título en Derecho en el año 2019 u otro año?
>
> Entiendo que las leyes de protección de datos pueden limitar la información que pueden proporcionar. Sin embargo,
> agradecería enormemente una simple confirmación de si esta persona **sí o no obtuvo un título en Derecho** por parte
> de su universidad.
>
> Esta solicitud se realiza de buena fe, con el único fin de resolver una disputa legal relacionada con declaraciones juradas
> sobre la formación académica del señor Roa.
>
> Si necesitan información adicional para localizar su registro, estaré encantado/a de proporcionarla.
>
> Muchas gracias por su tiempo y colaboración.
>
> Atentamente,
> Safa Gelardi
> safagelardi@gmail.com
> 718-749-4732

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                   Sat, Jul 5, 2025 at 11:53 AM
To: safagelardi@gmail.com

    ## Address not found

Your message wasn't delivered to
**secretaria.alumnos@uc3m.es** because the address couldn't
be found, or is unable to receive mail.

**LEARN MORE**

The response was:

```
The email account that you tried to reach does not exist. Please try double-checking the
recipient's email address for typos or unnecessary spaces. For more information, go to
```
https://support.google.com/mail/?p=NoSuchUser

Final-Recipient: rfc822; secretaria.alumnos@uc3m.es
Action: failed
Status: 5.1.3
Diagnostic-Code: smtp; The email account that you tried to reach does not exist. Please try double-checking the
recipient's email address for typos or unnecessary spaces. For more information, go to https://support.google.com/mail/?
p=NoSuchUser
Last-Attempt-Date: Sat, 05 Jul 2025 09:53:31 -0700 (PDT)

---------- Forwarded message ----------
From: Safa Gelardi <safagelardi@gmail.com>
To: "alumni@uc3m.es" <alumni@uc3m.es>, secretaria.alumnos@uc3m.es
Cc:
Bcc:
Date: Sat, 5 Jul 2025 11:53:18 -0500
Subject: Solicitud de verificación de título académico – Carlos Roa

**Estimado/a Responsable de la Secretaría Académica o del Departamento de Alumnos:**

Me comunico respetuosamente con ustedes para solicitar la verificación de los antecedentes académicos de una
persona que ha declarado haber obtenido un título en Derecho de la Universidad Carlos III de Madrid en el año 2019.

El nombre del individuo es **Carlos Roa**, nacido el 18 de marzo de 1992 Según su declaración, obtuvo un título
universitario en **Derecho** en su institución, aproximadamente en el año **2019**.

En el marco de un procedimiento legal, agradecería mucho si pudieran confirmar lo siguiente:

- ¿Carlos Roa estuvo matriculado alguna vez en algún programa de Derecho (grado o posgrado) en la UC3M?

- ¿Recibió algún título en Derecho en el año 2019 u otro año?

Entiendo que las leyes de protección de datos pueden limitar la información que pueden proporcionar. Sin embargo,
agradecería enormemente una simple confirmación de si esta persona **sí o no obtuvo un título en Derecho** por parte
de su universidad.

Esta solicitud se realiza de buena fe, con el único fin de resolver una disputa legal relacionada con declaraciones juradas
sobre la formación académica del señor Roa.

Si necesitan información adicional para localizar su registro, estaré encantado/a de proporcionarla.

Muchas gracias por su tiempo y colaboración.

Atentamente,
Safa Gelardi
safagelardi@gmail.com
718-749-4732

---

**Alumni UC3M** <alumniuc3m@fund.uc3m.es>                                          Mon, Jul 7, 2025 at 1:54 AM

Case 1:22-cv-01032-PKC-JRC    Document 550    Filed 07/14/25    Page 20 of 62 PageID
7/7/25, 8:02 AM                                Gmail - Solicitud de verificación de título académico – Carlos Roa
                                                            #: 8969

To: Safa Gelardi <safagelardi@gmail.com>, "secretaria.alumnos@uc3m.es" <secretaria.alumnos@uc3m.es>

Buenos días,

En respuesta a su consulta, le informamos que no consta en nuestros registros ninguna persona con
el nombre Carlos David Roa, nacido el 18 de marzo de 1992, como estudiante o egresado de la
Universidad Carlos III de Madrid en el año 2019 ni en ningún otro periodo.

Esperamos que esta información le sea de ayuda.

Un cordial saludo,



**ALUMNI UC3M**

**Mucho por compartir**

C/ Madrid, 126 – Edificio López Aranguren

Despacho 15.0.03

28903 Getafe – Madrid

**Telf: (+34) 91 624 87 00**

**www.uc3m.es/alumni**


*Síguenos en:*





**INFORMACIÓN BÁSICA SOBRE PROTECCIÓN DE DATOS CONFORME EL NUEVO REGLAMENTO EUROPEO**

**RESPONSABLE:** FUNDACIÓN UNIVERSIDAD CARLOS III / DPO: GRUPO ADAPTALIA LEGAL-FORMATIVO S.L. 915533408
legal@grupoadaptalia.es **FINALIDAD PRINCIPAL:** Gestionar la relación que nos une, gestionar el envío de información que nos solicita, facilitar a
los interesados nuestros servicios y/o gestionar su candidatura o su suscripción. **LEGITIMACIÓN:** Consentimiento del interesado, ejecución de un
contrato o interés legítimo. **DESTINATARIOS:** Se podrán ceder sus datos a la Universidad Carlos III de Madrid, empresas e instituciones
colaboradoras. **DERECHOS:** Acceder, rectificar y suprimir los datos, portabilidad de los datos, limitación u oposición a su tratamiento, transparencia
y derecho a no ser objeto de decisiones automatizadas. **INFORMACIÓN ADICIONAL:** Puede consultar la información adicional y detallada sobre
nuestra Política de Privacidad en https://www.fundacion.uc3m.es/politica-de-privacidad **CONFIDENCIALIDAD:** Si Ud. no es el destinatario y recibe
este mail por error, rogamos se ponga en contacto con nosotros y lo destruya de inmediato con todos sus documentos adjuntos sin leerlos ni hacer
ningún uso de los datos que en ellos figuren, ateniéndose a las consecuencias que de un uso indebido de dichos datos puedan derivarse.

[Quoted text hidden]

**Translation from Universidad Carlos III de Madrid (UC3M):**

Good morning,

In response to your inquiry, we inform you that there is no record in our database of any individual named Carlos David Roa, born on March 18, 1992, as a student or graduate of Universidad Carlos III de Madrid in the year 2019 or in any other period.

We hope this information is helpful.

Kind regards,
**ALUMNI UC3M**
Mucho por compartir
C/ Madrid, 126 – Edificio López Aranguren
Office 15.0.03
28903 Getafe – Madrid
Tel: (+34) 91 624 87 00
www.uc3m.es/alumni

Case 1:22-cv-01032-PKC-JRC    Document 550    Filed 07/14/25    Page 22 of 62 PageID
#: 9880
7/7/25, 9:02 AM                          what is a jd program "called" at the universidad de carlos iii de madrid - Google Search

 what is a jd program "called" at the unive    ✕    🎤    📷    🔍         🧪    ⠿    S 

All    Images    News    Shopping    Videos    Web    Forums    More ▾                    Tools ▾

✦ AI Overview                                                                                    ⋮

In the United States, the professional doctorate in law is called a Juris Doctor
(J.D.). However, the educational system in Spain, like many other countries,
operates differently. 🔗

At the Universidad Carlos III de Madrid (UC3M), the equivalent of an
undergraduate law degree that prepares students for legal professions is
called the **Grado en Derecho.** This translates to **Bachelor in Law** in
English. 🔗

It's important to note that after completing the *Grado en Derecho*, graduates
typically need to pursue a practical master's program, such as the *Máster de
Acceso a la Abogacía*, and potentially pass an evaluation exam to practice law
in Spain, according to ie.edu. The J.D. itself is not conferred by Spanish
universities. 🔗

---

Bachelor in Law - UC3M

Presentation. The goal of the Bachelor's Degree in Law is to create
professionals specialized in the exercise of the legal professions (lawyers,...

uc3m  UC3M  ⋮



---

Grado en Derecho | UC3M

El Grado en Derecho de la Universidad Carlos III de Madrid (UC3M) se imparte
en los campus de Getafe y Colmenarejo y tiene una duración de 4 años (240...

uc3m  UC3M  ⋮



---

Juris Doctor - Wikipedia

In the United States, the professional doctorate in law may be conferred in Latin
or in English as Juris Doctor (sometimes shown on Latin diplomas in the...

w  Wikipedia  ⋮



---

- A summary slide or document from the **Grado en Derecho** program (Bachelor in Law).

- It explains basic **legal-administrative relationships**, such as:

  - Legal elements of a relationship (subjects, cause, and content).

  - How public vs. private legal relationships differ.

  - Concepts like personality and legal capacity.

This page **reinforces the fact that UC3M only offers a "Grado en Derecho"**, not a JD or doctoral-level law degree. It's entirely in Spanish and structured for **Spain's undergraduate legal education system.**

# TEMA 1. 1 ADMIN II

## LAS RELACIONES JURÍDICO ADMINISTRATIVAS

Relacion juridico administrativa_21_22.pdf

- Toda relación jurídica tiene tres elementos: sujetos, una causa y un contenido.

- En una relación privada, por ejemplo, A y B (sujetos) celebran un contrato (causa) y éste genera obligaciones y derechos en función a lo pactado y al regimen general aplicable (contenido).



- Cuando uno de los sujetos es la AP esta relación tiene unas características especiales, que son las que se abordan en esta lección.

El estudio de esta lección se abordará teniendo en cuenta:

- Algunos conceptos generales: personalidad, capacidad, etc
- Distinción entre el Derecho Público y Privado

TEMA 1.1 ADM II

**What This Document Translates To: pages 1-3**

1. **UC3M does not offer a Juris Doctor (JD):**

   o This is a Spanish university.

   o Their law degree is called **"Grado en Derecho"** (a bachelor's degree), not a JD.

   o This degree is offered **in-person only**, at their **Getafe** and **Colmenarejo** campuses.

   o The program is conducted entirely in **Spanish**.

Carlos Roa **claimed he received a JD in Law from UC3M in 2019**, while also claiming to be working for me 80 hours/week.

This document, paired with the alumni office email submitted, **completely debunks his academic claim**.

It demonstrates that Roa lied and fabricated credentials, which discredits him as a witness.

# GRADO EN DERECHO

Grados / Estudios de Grado / Grado en Derecho



| | |
|---|---|
| **DURACIÓN** | 4 años (240 créditos) |
| **CENTRO** | Facultad de Ciencias Sociales y Jurídicas |
| | Campus de Getafe, Campus de Colmenarejo |



| | |
|---|---|
| **IDIOMA** | Español |

**Vicedecana (Getafe):** Mª Cruz Llamazares Calzadilla

**Vicedecana (Colmenarejo):** Gema Rosado Iglesias

El Grado en Derecho habilita, junto con el Master y la prueba de aptitud correspondientes, para ejercer la profesión de Abogado (Ley 34/2006)

# INFÓRMATE

PRESENTACIÓN

PROGRAMA

MOVILIDAD

PERFIL Y SALIDAS PROFESIONALES

ESTUDIAR EN INGLÉS

PROFESORADO

HORARIOS

CALIDAD

© Universidad **Carlos III** de Madrid

7/12/25, 10:39 AM                                                                 Proceed Professionally

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## Proceed Professionally
2 messages

---

**Safa Gelardi** <safagelardi@gmail.com>                                         Thu, May 22, 2025 at 3:03 PM
To: Emanuel Kataev <emanuel@sagelegal.nyc>

To Attorneys Kataev and Felson:

This letter serves as formal notice that I will no longer tolerate the unprofessional, defamatory, and baseless attacks on my character in your legal motions, including but not limited to accusations of "stealing" and other inflammatory language. As a pro se defendant, I demand that all communications and filings adhere strictly to factual arguments and ethical standards.

I caution you against relying on selective narratives. Should you continue to weaponize minor issues, I will be compelled to introduce evidence of far more severe, documented misconduct by Ms. Levi that directly undermines her credibility and moral standing. These facts, which I have no desire to disclose unnecessarily, will leave no doubt as to her unfitness to level accusations against others.

Let me be unequivocally clear: I possess verifiable, documented evidence that dismantles the credibility of YOU and YOUR clients and exposes the misconduct of individuals associated with your legal team. This includes, but is not limited to:
- Adam Rosenblatt
- Ronald Rosenblatt
- Daniella Levi
- Carlos Roa

For every defamatory remark, insult, or lie included in your filings, I will respond by submitting evidence to the court that exposes YOUR true character, YOUR clients, and their associates.

Due to my former counsel's failure to adequately protect my rights or mount a meaningful defense, I have been compelled to assume my own representation. Rest assured, I will vigorously defend myself where others did not. The truth and evidence that my prior attorneys neglected to pursue will now be presented unflinchingly, ensuring accountability for all parties involved.

This is not a bluff. I have nothing to lose and will not hesitate to litigate this case in the mud your clients have created. If you prefer to keep their (and your) skeletons buried, I suggest you immediately refrain from further personal attacks and focus solely on factual and legal arguments moving forward.

Should you ignore this warning, I will ensure every relevant detail, supported by irrefutable evidence, is placed before the court and the public. The choice is yours: proceed professionally, or force me to dismantle your clients' credibility entirely.

Respectfully,
Safa Gelardi
Defendant, Pro Se

---

Gmail - Website Concept

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## Website Concept

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Wed, May 3, 2017 at 3:38 PM
To: yaniv@luminasystems.com, Safa Gelardi <safagelardi@gmail.com>

Good afternoon Yaniv.

It was a pleasure meeting with you and your team today.

As discussed we need a website for IME Guard Dog with a significant amount of content to be taken from IME Watchdog.

The front end of the website is not complicated, something modern. Thinking the color scheme should be dark blue/ light blue/ white - font maybe Veranda or maybe you have a suggestion.

The areas that need improvement are the booking area and client area. A new area needs to be created for the Guard Dogs or GD.

Many of our current clients are baffled by the format and just email me.

Clients should be able to log on and book an ime for whatever time they need. We can go over a template and they should be able to see their past reports. Many clients will not want to take these steps and I should be able to enter the information in manually.

A majority of our IMEs are booked via email and the IMEs are assigned to the Watchdogs via Google calendar. I would like something more sophisticated and customized. We cannot really franchise and tell people they have to use Google calendar. The new calendar system should generate the necessary email to both the client and Guard dog.

After the IME Guard dog should be able to upload their report in a word format and I will make any necessary changes before uploading it to be send to the client as a pdf.  This way we will be better able to track reports. Sometimes a report is not needed, the client doesn't show, or the office made a mistake or something, so there should be an option for that for the Guard dog.

We should be able to run a report showing how many IMEs has been assigned to each GD, how many reports they uploaded and what they still owe. IMEs could be over one hour and so the GDs should have to enter in their time at each ime. This will make paying them easier. GDs are paid a different rate based on a number of factors, so I should be able to enter their rate and after they put in their time the dollar amount is generated. At the end of the month a payroll form is generated and they can be paid.

We should also be able to run a report based on who the doctor was and the law firm.

Billing needed to be capable with Quick-books.

I look forward to working with you.

Adam M. Rosenblatt

Gmail - What are your thoughts on this kind of structure

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## What are your thoughts on this kind of struct

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Wed, Jun 28, 2017 at 2:50 PM
To: "safagelardi@gmail.com" <safagelardi@gmail.com>

Equity payouts paid quarterly on January 15th, April 15th, July 15th, and October 15th. If Adam was paid more salary in the previous quarter than is due him under the terms set forth, the additional salary collected will be subtracted when calculating his equity payout.

When quarterly profit available to shareholders after salary equals $25,000 or less:

Adam's salary $7,000/month
Adam's equity = 10%
Investors equity = 90%

When quarterly profit available to shareholders after salary equals $25,000 to $50,000:

Adam's salary $5,000/month
Adam's equity = 20%
Investors equity = 80%

When quarterly profit available to shareholders after salary equals $50,000 to $75,000:

Adam's salary $4,000/month
Adam's equity = 30%
Investors equity = 70%

When quarterly profit available to shareholders after salary equals $75,000 to $100,000:

Adam's salary $3,000/month
Adam's equity = 40%
Investors equity = 60%

When quarterly profit available to shareholders after salary equals $100,000 or more:

Adam's salary $2,000/month
Adam's equity = 50%
Investors equity = 50%

Thank you

2:29

‹ 105

**AR**

Adam ›

> But I guess only u know what's really best for you and your family

Plus they could get rid of Jamal any time

> Does he have any ownership

Idk they offered me 5% a year for 3 years

So 5, 10 and the. 15

> That's not bad

> What was the salary

But they control everything would be like here but way less oversight

Was 100k



.Il Verizon 🛜     **10:55 PM**     52% 🔋

    **Articles, posts & more...**

 **Emanuel Kataev, Esq.**
624 Followers

 ✓ **Following**

**All activity**    Articles    Posts    Document

 **Emanuel Kataev, Esq.** · 1st    •••
I represent, counsel, advise, and defend
management in all aspects of labor & empl...
8h · 🌐

Shutting it down, literally.

ORDER: The Court grants Plaintiff's [151] Motion for a
Temporary Restraining Order ("TRO") and a Show-
Cause Hearing. As per the TRO, pending the hearing
on, and resolution of, Plaintiff's motion for a
preliminary injunction, Defendants, inter alia, are
preliminarily enjoined from: (1) contacting Carlos Roa,
directly or indirectly, by any means; (2) contacting any
employee, agent, or customer of Plaintiff, directly or
indirectly, by any means; (3) operating their business
or any other business that unfairly competes with
Plaintiff in violation of the law; and (4) selling real
property located at 1475 Moon Valley Dr, Champions
Gate, FL 33896, and any other properties owned by
Defendants. The parties shall appear for the show-
cause hearing on Plaintiff's request for a preliminary
injunction on 3/27/2023 at 2:00 PM in Courtroom 4F
North. Defendants' opposition brief is due 3/17/2023;
and Plaintiff's reply, if any, is due 3/22/2023. Ordered
by Judge Pamela K. Chen on 3/10/2023. (LC) Modified

 **Home**     My Network     Post     Notifications     Jobs



**Fwd: IME Watchdog**

From: **Daniella Levi** <daniellalevi@levilawny.com>

I hope you're doing well. As you may recall, my name is Daniella Levi and I am a personal injury attorney as well. I wanted to reach out to you because I noticed that we have much in common, attended Pace Law School, earned a degree in finance and started our own business in a male dominated industry. I respect and admire your success and dedication and was hoping to win your business back as I know you have used our services in the past.

I wanted to remind you of the high quality services offered by IME Watchdog. As the first and largest IME company in New York, covering over 1,000 exams per month, we have a proven track record of success. We have successfully changes the law in all four departments to allow plaintiffs to be represented during insurance medical exams by an non attorney advocate. Our team of personal injury lawyers, including myself train all of our watchdogs to provide the highest quality reports that meet the standards of the legal profession while zealously protecting the plaintiffs. In addition, our watchdogs make sure your clients do not waste time waiting around unnecessarily at the IME doctors' offices and are available to translate in multiple languages,

I would like to offer you our services at the reduced rate of $165 for the first hour and $45 for each additional half hour in an effort to win back your business. Our 100% satisfaction rate and 5 star google reviews from happy plaintiffs are a testament to our commitment to providing the highest quality service at the lowest possible rate. I would be honored to have the opportunity to work with you and ensure that your clients receive the best possible representation during their insurance medical exams, Please do not hesitate to reach out, I look forward to speaking with you.



≡

# Education

- Ms. Levi earned her law degree, and graduated cum laude from St. John's University School of Law.
- Bachelor of Science degree from the NYU Stern School of Business majoring in Finance and Marketing.
- Authored several law review articles.
- Worked at the St. John's University Elder Law Clinic during her senior year of law school.

# Legal Associations

- The New York State Bar Association (2002)
- The American Bar Association
- Federal Admission: New York Southern District and New York Eastern District.
- The New York Trial Lawyers Association (where she taught a CLE on how to handle cases at

**Free Consultation**

⫿⫿⫿          ◯          ⟨

Safa Gelardi <safagelardi@gmail.com>
To: abaum@subinlaw.com, Adam Rosenblatt <adammrosenblatt@gmail.com

Dear Arnie,

Per our conversation, please see attached resume. I have copied Adam Rosenblatt on this email.

Thank You Arnie.

---

📰 **Adam Resume Quantified _w AC ideas.docx**
18K

---

**From:** Safa Gelardi <safagelardi@gmail.com>
**Date:** February 11, 2019 at 1:47:04 PM EST
**To:** abaum@subinlaw.com, Adam Rosenblatt <adammrosenblatt@gmail.com>
**Subject: Fwd: Resume**

Dear Arnie,

Per our conversation, please see attached resume. I have copied Adam Rosenblatt on this email.

Thank You Arnie.

**Adam Resume Quantified _w AC ideas.docx**
**18K**

AFFIDAVIT OF YEHAD ABDELAZIZ

STATE OF NEW YORK

COUNTY OF KINGS

I, Yehad Abdelaziz, being duly sworn, depose and state under penalty of perjury:

1. I am the owner and operator of Five Pillars Financial Services LTD, a professional business services provider in the State of New York. I am over 18 years of age and make this declaration based on personal knowledge.

2. In or around May 2017, I was contacted directly by Adam Rosenblatt, who engaged my company to incorporate a business entity under the name IME Guard Dog Inc.

3. I completed the filing of the corporation IME Guard Dog Inc. on or about May 4, 2017, based on Mr. Rosenblatts request and with the required information and payment provided directly by him.

4. As a matter of strict company policy, Five Pillars Financial Services LTD does not and would never open or file a corporation for one person on behalf of someone else. The person requesting the formation must provide their own identifying information and payment.

5. Therefore, I confirm that Adam Rosenblatt was the only individual involved in the request, payment, and formation of IME Guard Dog Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this $J4$ day of ⌊⌡ᵥᵢₙ___    , 2025.

Yehad Abdelaziz

Owner, Five Pillars Financial Services LTD

Sworn to before me this $O£$ day of __2....__ ⌊⌐---' 2025.

Notary Public

**ASHRAF A. HANNO**
Notary Public, State of New York
No. 01HA8313974
Qualified in Queens County, FiledNYCCounf1
Commission ExpIrcD NnV. 3; 2026

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X

GOLDBLATT & ASSOCIATES, P.C.,

                    Plaintiff,                        Index No:

            -against-                             VERIFIED COMPLAINT

DANIELLA LEVI & ASSOCIATES, P.C. and
DANIELLA LEVI,

                    Defendants.
-----------------------------------------------------------------------X

        Plaintiff, by and through its attorneys, E. Stewart Jones Hacker Murphy, LLP, complaining of

defendants, respectfully alleges, upon information and belief, as follows:

## THE PARTIES

        1.      At all times hereinafter mentioned, plaintiff Goldblatt & Associates, P.C. was and is

a domestic professional corporation duly organized and existing under and by virtue of the laws of

the State of New York, with Westchester County designated as its principal place of business.

        2.      At all times hereinafter mentioned, plaintiff Goldblatt & Associates, P.C. held itself

out to the general public as a law firm providing legal services, including within the field of personal

injury.

        3.      At all times hereinafter mentioned, Kenneth B. Goldblatt (hereinafter "Goldblatt")

was and is an attorney, in good standing, licensed to practice law in the State of New York.

        4.      At all times hereinafter mentioned, as the president and sole shareholder of Goldblatt

& Associates, P.C., Goldblatt had the authority to retain clients and enter into contractual and quasi

contractual arrangements with other attorneys to co-counsel and represent clients on legal matters.

83.     By virtue of the foregoing, an amount that exceeds the jurisdictional limits of all lower courts and an amount to be determined at time of trial, plus interest, costs and disbursements, should be placed in a constructive trust for the benefit of plaintiff.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR CONVERSION

84.     Plaintiff repeats and reiterates each and every allegation previously set forth herein as if more fully set forth herein at length.

85.     Plaintiff performed legal work and provided services in good faith in furtherance of prosecuting the matter of Rodriguez v. Feliciano, et al.

86.     Plaintiff provided legal work and services with an expectation that it would be compensated therefor.

87.     Defendants accepted in good faith, the good faith legal work and services provided by plaintiff.

88.     On March 11, 2016, during mediation, due to the legal work and services provided by plaintiff, Rodriguez accepted a settlement in the amount of $4,000,000.

89.     On about April 28, 2016, defendants received the settlement draft for the settlement in the matter of Rodriguez v. Feliciano, et al.

90.     Defendants have failed to compensate plaintiff for the above.

91.     Defendants have voluntarily and wrongfully exercised dominion of plaintiff's proceeds of the settlement in derogation of plaintiff's rights to the same.

92.     By reason of the foregoing, defendants have committed the act of conversion.

13

**IME Legal Reps**

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Sunday, July 3, 2022 10:48 PM |
| **To:** | Charles Gucciardo; Paul LaClair; Jon-Paul Gabriele; Daniel Maltese; Brett Silverberg; Kimberly Carrizo |
| **Subject:** | Bribery of IME company Federal Case |

Federal Judge finds IME Companions bribered competitor's employee.

https://casetext.com/case/ime-watchdog-inc-v-gelardi

## IME Legal Reps

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Tuesday, July 19, 2022 10:06 PM |
| **To:** | kalkadhib@gmail.com |
| **Subject:** | Defense firms are armed against IME Companion observers |

A friend of mine at a defense firm recently sent me this from their rogue list:

"Haven't we been annoyed by that company, IME Companions, for sending their agents to our IMEs?

This can now allow us to question the credibility of their agents and company. In a recent Court Order, a Federal Judge ruled on an injunction of franchising the IME Companions business. According to the Order, the Founder and CEO did not even know what an IME was before bribing a competitor's employee for information.

In summary, IME Companions bribed a competitor's employee to obtain information to create the IME Companions business and help run the business. Ultimately what is revealed here, is the owner has no legal background and didn't even know what an IME was until this corruption/bribery began. We can use this when questioning the credibility of IME Companions. Remember she pleaded the fifth when asked about Zelle payments to the competitor's employee."

Unfortunately defense firms will now gear up with this information. Transcript of the Show Cause hearing attached.

-Kashif

Here's the attachment as a link for your review:
2022APR 04 IME V GELARDI 22CV1032 PKC (2).pdf
Add your comments and collaborate with others in real time. You don't need to download Acrobat or sign up to access the file.

1

## IME Legal Reps

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Sunday, July 31, 2022 6:21 PM |
| **To:** | Kashif Alkadhib |
| **Subject:** | Preliminary Injunction of IME Companions |

Judge finds that the IME Companions business was started by misused trade secrets. See the Judge's order for preliminary injunction.

-Kashif

Here's the attachment as a link for your review:
USCOURTS-nyed-1_22-cv-01032-0.pdf
Add your comments and collaborate with others in real time. You don't need to download Acrobat or sign up to access the file.

1

**IME Legal Reps**

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Tuesday, July 12, 2022 8:16 PM |
| **To:** | Charles Gucciardo; Paul LaClair; Jon-Paul Gabriele; Daniel Maltese; Brett Silverberg; Kimberly Carrizo |
| **Subject:** | Re: Bribery of IME company Federal Case |

Federal Judge finds IME Companions/Safa Abdulrahim Gelardi bribed competitor's employee. Federal Judge now orders forensic analysis and investigation of ALL devices owned and used to operate the Abdulrahim Gelardi business and all communications of Safa Abdulrahim Gelardi.

https://casetext.com/case/ime-watchdog-inc-v-gelardi
https://www.pacermonitor.com/case/43675475/IME_WatchDog,_Inc_v_Gelardi_et_al

On Sun, Jul 3, 2022 at 11:47 PM Kashif Alkadhib <kalkadhib@gmail.com> wrote:
  Federal Judge finds IME Companions bribered competitor's employee.

  https://casetext.com/case/ime-watchdog-inc-v-gelardi

1

INDEX NO.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

DANIELLA LEVI & ASSOCIATES P.C. and DANIELLA LEVI ESQ.,

Plaintiffs,

-against-

YOSEF SAKIZADA,

Defendant,

## SUMMONS & COMPLAINT

**DANIELLA LEVI & ASSOCIATES, PC**
*Attorneys for Plaintiffs*
**DANIELLA LEVI & ASSOCIATES P.C. AND DANIELLA LEVI ESQ.**
**159-16 Union Turnpike, Suite 200**
**Fresh Meadows, New York 11366**
**(718) 380-1010**

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

Dated: 9/26/19

Signature:
Print Signer's Name: DANIELLA LEVI, ESQ.

ASSOCIATES P.C. messed up his case, and had to pay him hundreds of thousands of dollars, and even showed him a document evidencing same. Mr. X further stated that Sakizada made several degrading, disparaging, and defamatory statements against DANIELLA LEVI & ASSOCIATES P.C. and DANIELLA LEVI. This clearly violates the terms of the release.

## AS AND FOR PLAINTIFFS' FIRST CAUSE OF ACTION BREACH OF CONTRACT

12.     Plaintiffs repeat and reallege the prior allegations in the complaint as if fully set forth herein.

13.     The NDA is a valid and enforceable agreement between YOSEF SAKIZADA, DANIELLA LEVI & ASSOCIATES P.C., and DANIELLA LEVI ESQ.

14.     SAKIZADA willfully violated the terms of the release by sharing information with one of DANIELLA LEVI & ASSOCIATES P.C.'s clients, and even engaged in disparaging the law firm and DANIELLA LEVI ESQ.

15.     The aforementioned conduct was in breach of the release/NDA.

16.     By virtue of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5,000,000.

## AS AND FOR PLAINTIFFS' SECOND CAUSE OF ACTION FOR DEFAMATION

17.     Plaintiffs repeat and reallege the prior allegations in the complaint as if fully set forth herein.

18.     Defendant made derogatory and defamatory statements about DANIELLA LEVI & ASSOCIATES P.C., and DANIELLA LEVI with the malicious intention to injure plaintiffs' good name, reputation and business.

19.     By virtue of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5,000,000.

### AS AND FOR PLAINTIFFS' THIRD CAUSE OF ACTION FOR SPECIFIC PERFORMANCE AND INJUNCTION

20.     Plaintiffs repeat and reallege the prior allegations in the complaint as if fully set forth herein.

21.     Plaintiffs are entitled to specific performance of the NDA, including but not limited to the portions of the NDA, which states that SAKIZADA will not directly or indirectly divulge the terms of the release, or directly or indirectly disparage the plaintiffs.

22.     Plaintiffs have no adequate or full remedy at law and are contractually e ntitled to specifically enforce their rights against SAKIZADA.

23.      By reason of the foregoing, Plaintiffs seek to (i) specifically enforce the terms and provisions of the release/NDA, and (ii) preliminarily and permanently enjoin SAKIZADA from violating the release/NDA.

24.     Absent the foregoing relief, the Plaintiffs will be damaged irreparably.

**WHEREFORE**, Plaintiffs demand judgment in their favor against DEFENDANT SAKIZADA:

1. Granting an award of compensatory damages against SAKIZADA as set forth in the First and Second Causes of Action in an amount to be determined at trial, but in no event less than $5,000,000;

2. Preliminarily and permanently enjoining SAKIZADA from further violations of the NDA, and enforcing the terms of the NDA;

3. Ordering specific performance of the NDA against SAKIZADA; and

4. Such other and further relief as to this Court shall deem just, proper and equitable together with the costs and disbursements of this action.

Dated: Fresh Meadows, New York

September 17, 2019

Respectfully submitted,

Daniella Levi Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
--------------------------------------------------------------------X
DANIELLA LEVI & ASSOCIATES P.C,
and DANIELLA LEVI ESQ.

                                 Plaintiff(s),

**VERIFIED COMPLAINT**

                 -against-

YOSEF SAKIZADA

                          Defendant(s).
--------------------------------------------------------------------X

        Plaintiffs **DANIELLA LEVI & ASSOCIATES, P. C.**, and **DANIELLA LEVI ESQ.**,

complaining of the Defendant, respectfully alleges, upon information and belief:

### NATURE OF THE ACTION

      1.     This case involves the breach of a non-disclosure agreement in connection with a

general release in which defendant SAKIZADA was paid a confidential sum of money by

plaintiff DANIELLA LEVI & ASSOCIATES P.C., and DANIELLA LEVI ESQ.

### THE PARTIES

      2.     Plaintiff DANIELLA LEVI ASSOCIATES P.C., is a New York professional

corporation, with its principal place of business at 159-16 Union Turnpike, Suite 200, Fresh

Meadows NY 11366. Plaintiff DANIELLA LEVI ESQ. is an attorney duly licensed to practice

law in the state of New York.

      3.     Defendant is a resident of Nassau New York whose address is 4 William Street,

Great Neck, New York 11023.

### JURISDICTION

      4.     This Court has jurisdiction over this action because plaintiff resides in Queens

New York, and the action arises out of transactions that occurred in Queens New York.

### FACTUAL BACKGROUND

5.      On July 21, 2010, defendant Yosef Sakizada was involved in a motor vehicle

accident and subsequently, on August 30, 2010 hired plaintiffs DANIELLA LEVI &

ASSOCIATES P.C. and DANIELLA LEVI ESQ., to represent him for his bodily injury claim.

6.      The defendant in the 2010 car accident claim, had a $25,000 Allstate policy that

was tendered.

7.      Defendant SAKIZADA also had an Under Insured Motorist policy with Travelers

totaling $500,000. Travelers claimed that SAKIZADA settled the claim with Allstate without

obtaining their written consent, therefore not preserving their subrogation rights.

8.      SAKIZADA then sued DANIELLA LEVI & ASSOCIATES, and DANIELLA

LEVI ESQ., and ultimately that case settled. (See general release attached as Exhibit "A")

9.      The General release contained a nondisclosure agreement, (the "NDA"), which
provides in relevant part that the releasing parties (SAKIZADA):

1) Will keep confidential the terms and conditions of this general Release, the circumstances and
allegation of the ACTION and the settlement of the ACTION, and will not report or discuss
same with anyone

2) Will not, directly or indirectly, in any capacity or manner, make, express, transmit, speak,
write, verbalize, or otherwise communicate in any way (or cause, further, assist, solicit,
encourage, support or participate in) any disparaging derogatory, critical and/or negative verbal,
written and/or electronically transferred comments about the RELEASES PARTIES, and agree
the breach of this provision ( which is a material part of the consideration for this General
Release) shall cause immediate irreparable harm

10.      On or about Tuesday September 3, 2019, it came to the attention of an associate

of DANIELLA LEVI & ASSOCIATES P.C., that SAKIZADA breached the terms of the release

and non-disclosure agreement. (See Associate's affidavit attached hereto as Exhibit "B.")

11.      On or about the aforementioned date, the Associate had a discussion with one of

his clients, Mr. X[1], who told him that Yosef Sakizada told Mr. X that DANIELLA LEVI &

---

[1] In order not to breach my duty of confidentiality and my client's attorney client privilege, I will not divulge the
name of my client unless directed by the court.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------------X

DANIELLA LEVI & ASSOCIATES P.C.,
and DANIELLA LEVI ESQ.

                                    Plaintiff(s),

             -against-

YOSEF SAKIZADA

                                    Defendant(s).

-------------------------------------------------------------------X

Index No.:

Date Purchased:

**SUMMONS**

Plaintiff designates Queens
County as the place of trial.

Plaintiff resides at:
159-16 Union Turnpike, Suite
200, Fresh Meadows, New
York 11366

**To the above named Defendants:**

      **You are hereby summoned** to answer the complaint in this action, and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance on the plaintiff's attorneys within twenty days after the service of
this summons, exclusive of the day of service, where service is made by delivery upon
you personally within the state, or, within 30 days after completion of service where
service is made in any other manner. In case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the complaint.

Dated:      Fresh Meadows, New York
             September 17, 2019

                           DANIELLA LEVI & ASSOCIATES, P.C.

BY:      _____
                      DANIELLA LEVI, ESQ.
                      159-16 Union Turnpike, Suite 200
                      Fresh Meadows, New York 11366
                      (718) 380-1010

TO:

YOSEF SAKIZADA
4 WILLIAM STREET,
GREAT NECK NY 11023

FILED: RICHMOND COUNTY CLERK 07/12/2023 04:17 PM
NYSCEF DOC. NO. 1

Case 1:22-CV-01032-PKC-JRC   Document 550   Filed 07/14/25   Page 53 of 62 PageID
#: 9891

INDEX NO. 151291/2023
RECEIVED NYSCEF: 07/12/2023

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF RICHMOND**

------------------------------------------------------------------X

**ANAT ISHAKY**

                **Plaintiff,**

  -against-

**DANIELLA LEVI and HAIM LEVI**

                **Defendants.**

------------------------------------------------------------------X

**Index No.:**

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANTS**:

    **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your answer on the attorneys for the Plaintiff within twenty (20) days after the service of this summons, exclusive of the date of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In the event you fail to appear or answer, a judgment will be taken against you for default for the relief demanded in the complaint.

    Richmond County is designated as the basis of venue because it is the county in which the premises is located.

    The nature of this action and relief requested are stated in the annexed complaint.

DATED:    New York, NY
            July 12, 2023

                      Yours, etc.,

                      **VERNON & GINSBURG, LLP**
                      By: Mel B. Ginsburg
                      *Attorneys for Plaintiff*
                      261 Madison Avenue
                      New York, New York 10016
                      Tel: (212) 949-7300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

-------------------------------------------------------------------X

ANAT ISHAKY                                    Index No.:

                        Plaintiff,             **VERIFIED COMPLAINT**

        -against-

DANIELLA LEVI and HAIM LEVI

                        Defendants.

-------------------------------------------------------------------X


        Plaintiff, ANAT ISHAKY., by and through her attorneys, Vernon & Ginsburg, LLP,

alleges follow:

### PARTIES

        1.   Plaintiff, ANAT ISHAKY is an individual and resides at 81-37 190th Street,

Jamaica, NY 11423.

        2.   Defendant, DANIELLA LEVI is an individual and has a principal place of

business at 159-16 Union Turnpike, Suite 200, Fresh Meadows, NY 11366.

        3.   Defendant, HAIM LEVI is an individual and resides as 82-09 Chevy Chase

Street, Jamaica, NY 11432

### JURISDICTION

        4.   This Court has jurisdiction pursuant to Civil Practice Law and Rules ("CPLR")

§301 because the premises is located in Richmond County.

### INTRODUCTION

        5.   By joint venture agreement dated July 25, 2019 between Anat Ishaky residing at

81-37 190th Street, Jamaica, NY 11423 and Defendant Hami Levi residing at 82-09 Chevy Chase

Street, Jamaica, NY 11432, the Plaintiff and Defendant Haim Levy agreed to purchase the

premises known as 66 Hendricks, Staten Island, NY 10301 in the name of 66 Hendricks Ave. SI

LLC (the LLC). Attached hereto as **Exhibit 1** is a copy of the joint venture agreement. Attached

hereto as **Exhibit 2** is a copy of the Deed dated, July 25, 2019 showing ownership of the

premises 66 Hendricks Ave. SI LLC.

6.   Pursuant to paragraph 2B of the joint venture agreement, "Hami Levi may not

transfer his interest in the LLC except as set forth here and with the knowledge or consent of

Anat Ishaky".

7.   Pursuant to paragraph 3C of the joint venture agreement, "Anat Ishaky and Hami

Levi will have access to all books, records, costs and expenses of the LLC".

8.   Pursuant to paragraph 3F of the joint venture agreement, "Anat Ishaky will have

the duty and obligations of running the operations of the LLC including to undertake and pay for

all upkeep, taxes, mortgage payments, maintenance cost and expenses of the LLC and its assets".

9.   Pursuant to paragraph 5A of the joint venture agreement, "No member or joint

member may, directly or indirectly, transfer (as hereafter defined) the whole, or any part of his/her

interest in the LLC, except as hereafter expressly permitted by this Agreement. The LLC shall not

transfer on their books any of the member's interest unless all the terms and conditions of this

Agreement have been complied with. The term "Transfer", as herein used, shall include any sale,

assignment, gift, mortgage, pledge, hypothecation, bequest, encumbrance or disposition, or any

transfer as a result of any voluntary or involuntary legal proceedings, execution, sale, bankruptcy,

insolvency, or otherwise, of any of the member's interest. Any transfer of all or any part of the

Shares in violation of this Agreement shall be null and void".

10. Pursuant to paragraph 10 of the joint venture agreement, "Because the parties to this Agreement will be irreparably damaged if this Agreement is not specifically enforced, any party shall be entitled to an injunction restraining any member from transferring shares in violation of this Agreement, without any bond or other security being required. If any dispute arises concerning any right or obligation under this Agreement to purchase or sell any of the interest, the right or obligation shall be enforceable in a court of equity by a decree or specific performance. Such remedy shall, however, be cumulative and not exclusive, and shall be in addition to any other remedy which the parties may have".

11. Upon information and belief the books, records and accounts of the LLC are in the custody and control of Defendant Daniella Levi.

## BREACH OF THE JOINT VENTURE AGREEMENT

12. Defendants are in breach of the joint venture agreement in that they have not provided full access to all books, records, costs and expenses of the LLC. The Defendants are in further breach of the joint venture agreement in that Anat Ishaky was not allowed the duty and obligation of running the operation of the LLC including to undertake and pay for all upkeep, taxes, mortgage payments, maintenance cost and expenses of the LLC and its asset as Anat Ishaky was not allowed access to any funds to make any such payments or even to see bank statements to know what assets are available.

13. Defendants are in breach of the joint venture agreement in that Hami Levi has stated that he intends to transfer his interest in the LLC without knowledge or consent of Anat Ishaky.

14. By letter dated May 03, 2023 to Daniella Levi and Hami Levi in regard to both

1319 Harrod Avenue, Bronx, NY 10472  and 66 Hendricks, Staten Island, NY 10301, attached

hereto as **Exhibit 3**, Plaintiff gave notice to Defendants that they were in breach of the joint

venture agreement, that they had not fully provided access to books, records, costs and expenses,

that they have not allowed Plaintiff access to bank accounts in order to fulfill obligations and

duties to pay bills and run operations of the building and that Defendants have never provided

the required full accounting to inform Plaintiff about the available funds, and loans made to the

LLC,  the rental income or basic essential information as required by the joint venture agreement

so Plaintiff can undertake her duties and assess the value of the property to prospective buyers

and/ or lenders.

15. Defendants are in breach of the joint venture agreement in that by letter dated

January 16, 2023, there is indication that an SBA Loan was taken out which would have had the

affect of limiting the loan exposure of Defendants in the joint venture agreement, however, none

of this was fully disclosed to Plaintiff.

16.  Plaintiff has fully performed her obligations under the Joint venture agreement to

the extent allowed by defendants.

## **FIRST CAUSE OF ACTION**

17. Plaintiff repeats and realleges all of the allegations set forth above.

18. Plaintiff request judgment for specific performance requiring Defendants to fully

disclose and provide all books, records, cost and expenses of the LLC.

## SECOND CAUSE OF ACTION

19. Plaintiff repeats and realleges all of the allegations set forth above.

20. Plaintiff request judgment for breach of contract damages in the amount of

$500,000.

## THIRD CAUSE OF ACTION

21. Plaintiff repeats and realleges all of the allegations set forth above.

22. Plaintiff request specific performance enjoining Defendants from transferring any

shares or membership interest in the LLC without knowledge and consent of Plaintiff.

## FORTH CAUSE OF ACTION

23. Plaintiff repeats and realleges all of the allegations set forth above.

24. Plaintiff demands an injunction restraining any member of the LLC from

transferring shares in violation of the agreement without any bond or security being required and

furthermore, restraining Daniella Levi, who controls the LLC bank accounts from transferring

any interest in the property known as 66 Hendricks, Staten Island, NY 10301.

Wherefore Plaintiff demands judgment on the First Cause of Action requiring defendants

to turn over all books, records, costs and financial statements and information to Plaintiff.

As well as judgment on the Second Cause of Action in the amount to be determined by

the Court estimated to be $500,000;

As well as a Judgment on the Third Cause of Action enjoining Defendants from

transferring any shares or interests in the LLC;

As well as a Judgment on the Forth Cause of Action Ordering an Injunction against both

Defendants from transferring shares of the LLC or transferring any interest in the property

known as 66 Hendricks, Staten Island, NY 10301.

Dated: New York, NY

July 12, 2023

Mel Ginsburg
Vernon & Ginsburg LLP
261 Madison Ave. 26 floor
New York NY 10016
212 949 7300
mginsburg@vgllp.com

## VERIFICATION

STATE OF NEW YORK          )

                          ) ss:

COUNTY OF NEW YORK        )

ANAT ISHAKY being duly sworn, states:

I am the Plaintiff in this action. I have read the foregoing Summons and Complaint and know that the contents thereof are true, except as to those matters which are therein alleged to be based upon information and belief. As to those matters, I believe them to be true based upon books, documents and records in my file.

VERONICA R. GANGARAM NEWMAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01GA6441507
Qualified in Queens County
My Commission Expires 9/26/26

_Veronica R. Gangaram-Newman_

_____
ANAT ISHAKY

Sworn to before me this 12th

Day of _July_, 2023

**SUPREME COURT OF THE CITY NEW YORK**
**COUNTY OF KINGS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ANNA HADARI,

                            **Plaintiff,**

             **-against-**

DANIELLA LEVI & ASSOCIATES, P.C. and
DANIELLA LEVI,

                         **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Index No.**

**Date Purchased:**

*SUMMONS*

**TO THE ABOVE NAMED DEFENDANTS:**

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

       The basis of the venue designated is CPLR 503(a).

Dated:   Hillside, New Jersey
         October 21, 2016

                               **IRA HELLER LAW, LLC**

                                 Ira W. Heller
                                 *Attorneys for Plaintiff Anna Hadari*
                                 1282 North Broad Street
                                 Hillside, New Jersey 07205
                                 (908) 275-8626

1

21.     In sum, L&A legal representation of the Plaintiff in this matter was grossly deficient, in their not having exercised their due diligence in properly researching the property records, and confirming that Chum & Dawson were the proper Defendants. Even the most elementary efforts could have revealed this error, but L&A was careless, and as a result, Plaintiff suffered the consequences.

22.     Furthermore, L&A filed fraudulent Affidavits of Service, attesting to the fact that Robert Dawson accepted service for both he and Becky Chum on December 21, 2010 at 1:22pm. Furthermore, the Affidavits of Service filed by L&A describe Robert Dawson as a man of approximately 40 years of age. First, the man who accepted service could not possibly have been Robert Dawson, since as explained above, Robert Dawson never lived at that address. Second, as L&A would have also discovered with a minimum of research and due diligence, Robert Dawson at that time was approximately 60 years of age, and could scarcely have been mistaken for a 40 year old.

23.     Consequently, the judgment obtained by L&A against Chum & Dawson was absolutely worthless to Plaintiff, and in order for Plaintiff to obtain a recovery, she would have had to refile her Complaint against the true property owners. By that time, however, that was not even an option for Plaintiff, as will be explained hereto.

### DUE TO L&A'S NEGLIGENCE, PLAINTIFF IS NOW PRECLUDED FROM MAKING A CLAIM AGAINST THE PROPER DEFENDANTS

24.     As per N.Y. C.P.L.R. § 214(5), an action to recover damages for a personal injury must be commenced within 3 years of the date of the injury.  Consequently, in order to pursue a claim against the property owners at 824 East 8th street, the Complaint would have had to have

6