*** Filed ***
10:53 AM, 14 Jul, 2025
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

IME WATCHDOG, INC.,

                   *Plaintiff,*

                                         **Case No.: 1:22-cv-1032 (PKC)(JRC)**

      -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
ROMAN POLLAK, JONATHON D. WARNER, ESQ.
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                   *Defendants.*

------------------------------------------------------------- X

## DEFENDANTS' MOTION TO STRIKE OR DISMISS BASED ON PLAINTIFF'S MATERIAL INCONSISTENCIES AND BAD FAITH

Defendants Safa Gelardi and Vito Gelardi, appearing pro se, respectfully move this Court to strike the Supplemental Declaration of Adam Rosenblatt filed in support of Plaintiff's motion for injunctive relief and any further proceedings reliant upon it. This declaration is not simply incorrect—it is a calculated and fabricated narrative contradicted by hard evidence, sworn affidavits from third parties, and Adam Rosenblatt's own contemporaneous emails and actions.

This declaration, made by the still-sitting President of Plaintiff IME Watchdog, Inc., falsely claims he was bribed, manipulated, and coerced into sabotaging his employer's business. In reality, Rosenblatt spent months proactively initiating the formation of a new business while still working for the Plaintiff, disseminated internal materials voluntarily, directed branding and infrastructure setup, and even hired third-party vendors—without ever being pressured or compelled. Adam Rosenblatt's affidavit is not a confession—it is a **scripted piece of fiction** designed to deflect responsibility, save himself from prosecution, and weaponize lies to further destroy defendants, who once tried to help him. His story is not supported by any contemporaneous communications, contracts, bank statements, or affidavits from any corroborating witnesses. **Everything he claims happened in private, without evidence—and everything that *did* happen leaves a digital trail proving the opposite.**

This case is not the result of any legitimate business dispute. It is the result of a calculated conspiracy—a coordinated, and malicious effort orchestrated by Plaintiff's President Adam Rosenblatt, former employee Carlos Roa, and Plaintiff Daniella Levi to weaponize the legal system and destroy the lives of the Defendants.

Together, these individuals fabricated a false narrative, alleging that Safa and Vito Gelardi stole confidential information, coerced a corporate officer, and unlawfully diverted clients—when in truth, it was Adam Rosenblatt himself who orchestrated the very conduct he now falsely attributes to others.

While still employed as President of IME Watchdog, Inc., and under the direction of Daniella Levi, Rosenblatt voluntarily and enthusiastically shared the company's financials, client rosters, marketing structure, and profit margins—in dozens of emails sent without a single request from Defendants. He solicited help in forming a new business, directed the incorporation, oversaw website and invoice designs, and hired vendors, all while acting as the Plaintiff's top executive.

Carlos Roa, a disgruntled former employee with a personal vendetta, falsely claimed to others that Defendants were under investigation by the FBI. And Daniella Levi, with no credible evidence, adopted that narrative, submitted perjurious affidavits to the Court, and initiated this action with full knowledge of Adam's duplicity.

Every core allegation in this case—coercion, theft, and unfair competition—is contradicted by contemporaneous documents, sworn third-party affidavits, and internal inconsistencies in Plaintiff's own filings. This motion will lay out that evidence, expose the truth, and demonstrate that Plaintiff's claims are not only meritless but fraudulent.

This is not just a case built on lies, it is a case built by liars.

The Court has already been burdened by this lawsuit, and the false foundation upon which it was built now threatens to undermine the integrity of the proceedings. Defendants seek to have this declaration stricken, and for the Court to take judicial notice of the substantial body of evidence directly contradicting every material representation contained therein

Safa Gelardi, appearing pro se, respectfully move this Court to strike or dismiss Plaintiff's claims to the extent they rely upon materially false and misleading representations by Plaintiff's President, Adam Rosenblatt.

In support of this motion, Defendants state the following:

1. Mr. Rosenblatt personally incorporated IME Guard Dog, Inc. on May 4, 2017, in the State of New York. (See Exhibit A.). From the very beginning of this case, I have consistently explained that I referred him to the office that handled the incorporation. At the time, I was already overwhelmed, balancing my job, caring for my family, and pursuing a medical malpractice business venture in partnership with his father. Despite this, Nevertheless, I offered to support his efforts and, acted in good faith, introduced him to two of my trusted contacts: the web developer and the tax preparer who could assist him in launching IME Guard Dog. These referrals were made transparently and without any secret arrangement or hidden interest in the corporation. The record reflects that Adam acted independently in incorporating and setting up IME Guard Dog.

### A.       Rosenblatt initiated the partnership.

As early as **April 28, 2017**, Rosenblatt was emailing Defendant Safa Gelardi internal IME Watchdog financials and client lists. These weren't stolen or requested under pressure — they were voluntarily sent with subject lines like:

"IME Watchdog Clients" – a complete internal list

"IME Watchdog P&L Last 3 Years" – a full breakdown of Watchdog's income from 2014 to 2016

"Sales by Client for 2016" – showing how much each law firm paid, with names, numbers, and volumes

He also sent breakdowns of monthly volume, scheduling, and internal financial projections—all while employed by IME Watchdog and all without a single word about confidentiality.

### B.   Rosenblatt directed the creation of the so-called "stolen" business.
On **May 3, 2017**, Rosenblatt emailed Defendant Gelardi and the web developer (Yaniv from Lumina Systems) with the subject line: "Website Concept." In it, he laid out a plan to launch a new company — **IME Guard Dog** — and explicitly wrote:

*"We want to build a website for IME Guard Dog with a significant amount of content to be          taken          from          IME          Watchdog…"*
*(See Exhibit <u>B</u> – "Website Concept," May 3, 2017)*

He specified design, branding, and even improvements over Watchdog's existing platform. He did this openly, eagerly, and with no coercion whatsoever.

### C.    Rosenblatt   proposed   the   salary   structure   and   future   profits.
Weeks later, on **June 28, 2017**, Rosenblatt emailed again, laying out a **proposed salary and profit-sharing model** based on projected earnings — assigning himself a base pay and escalating bonuses depending on how well the company did.

*(Exhibit <u>C</u> – "What Are Your Thoughts On This Structure?")*

These are not the actions of a victim. This is a man building a business, directing its strategy, recruiting help — and then turning around years later to weaponize his own actions as the basis for a lawsuit.

### D.    Adam Rosenblatt   remains   Plaintiff's   President   to   this day.   The same individual who built this business and shared its information is still Plaintiff's acting President. He was never terminated. Never disavowed. And never discredited — even as his communications directly contradict the sworn allegations in this case.

Let's walk through the indisputable timeline:

- **April 28, 2017** – on April 28, 2017, Mr. Rosenblatt emailed me a PowerPoint presentation titled "IME Watchdog 2016," containing internal business breakdowns from the prior year. In his own words, Mr. Rosenblatt stated that "DL never really asked for this but I did it anyway," affirming that this was yet another unsolicited and voluntary disclosure of allegedly sensitive material. (See Exhibit D.) This evidence further demonstrates that Mr. Rosenblatt repeatedly and without prompting shared internal Watchdog materials, contradicting the sworn claims of misappropriation now alleged in this case.
- **April 28, 2017** -Rosenblatt sends Safa Gelardi the full **client list** of IME Watchdog (subject line: "IME Watchdog Clients"). (See Exhibit E.)

- **Furthermore, on April 28**, 2017, Mr. Rosenblatt emailed me a full breakdown of IME Watchdog's March 2017 operations, including the P&L statement, client list, IME coverage, invoices, and billing/payroll data. (See Exhibit F.) This demonstrates a clear and voluntary disclosure of internal business information before any alleged misappropriation and reinforces that Mr. Rosenblatt did not treat such information as confidential.

- **Same day** – He sends a **three-year Profit & Loss breakdown** of IME Watchdog, including 2014, 2015, and 2016 (subject: "P&L Last 3 Years"). (See Exhibit G.)

- **April 29, 2017** – He sends detailed **sales breakdowns by client** (e.g. 80-pack, 40-pack purchases from firms like Subin and Cherny) to illustrate Watchdog's income stream (subject: "Sales by Client 2016"). (See Exhibit H.)
- **April 29, 2017** – He sends yet another **breakdown of IME scheduling and invoicing** for further transparency. (See Exhibit I.)
- **May 3, 2017** – Rosenblatt also provides sample client invoices for Watchdog services titled "Ortho Queens" and "Neuro City," further illustrating that he was providing Watchdog's billing templates openly and voluntarily. (subject: "What the Invoice Looks Like"). (See Exhibit J.)
- **On May 3, 2017**-, a day prior to filing the incorporation, Mr. Rosenblatt emailed a web developer (referred to him by me) stating that the IME Guard Dog website should be built using "a significant amount of content to be taken from IME Watchdog." (See Exhibit K.)

- On **May 4, 2017**, while still employed as President of IME Watchdog, Inc., **Adam Rosenblatt personally formed IME Guard Dog, Inc.**, initiating its incorporation through Five Pillars Financial Services—a fact confirmed by the official **New York State Division of Corporations** record and a sworn affidavit from Jay Abdelaziz, the accountant who filed the documents at Rosenblatt's direction. (See Exhibit L.)
- **Additionally, on June 23, 2017**, Mr. Rosenblatt forwarded a formal website and marketing proposal for "IME Guard Dogs" from the developer he contacted, further demonstrating that he was orchestrating a business using Watchdog-derived concepts. He later renamed the project to "IME Sentinel" during this same correspondence. (See Exhibit G.) The thread confirms that I was a secondary participant and not the architect or instigator of any plan to misuse proprietary materials. (See Exhibit M.)

- These claims are contradicted not only by the documents but also by an affidavit from Yaniv Liron, the neutral third-party web developer involved. Mr. Liron confirms that Mr. Rosenblatt independently approached him to build a website for IME Guard Dog and that the project was never completed. Mr. Liron further confirms that months later, I independently contracted his company to build a completely separate website for IME Companions. (See Exhibit N.)

- **June 28, 2017** – Rosenblatt proposes a **full business compensation structure**, assigning himself different salary/equity combinations based on profit tiers (subject: "What Are Your Thoughts on This Kind of Structure"). (See Exhibit O.)

- Adam Rosenblatt continued to communicate with me regularly—even up until the onset of litigation, sending internal documents and guidance that completely contradict Plaintiff's claim of coercion or theft. In one such exchange, I told Adam about a watchdog named David Bloomfield, an elderly man who had come to me seeking work. After I hired him, he sued me for unemployment. Adam immediately informed me that Bloomfield had done the same thing to Watchdog and was terminated for it. He then forwarded me Watchdog's own appeal brief from that prior case, explicitly encouraging me to "change the facts to your case and use the supporting cases in your argument." This is clear, undeniable evidence that Adam was freely supplying me with Watchdog's internal litigation strategy and sensitive documents—voluntarily and without hesitation. (See Exhibit P.)

At no point did Mr. Adam Rosenblatt mark his shared communications as confidential, nor did he seek a non-disclosure agreement prior to sharing proprietary models or business information. Communications demonstrate a clear intent to build a derivative company based on IME Watchdog's structure with me as a potential partner. The plaintiff now falsely claims that the materials Mr. Rosenblatt voluntarily shared as part of his partnership solicitation were somehow stolen or misappropriated.

In a previous motion, I informed the Court that after Adam Rosenblatt pitched his IME Guard Dog concept to Law Cash, just as he previously pitched it to me, he turned down their offer and instead referred Jamal Aaron—a former IME Watchdog who had been fired by Daniella Levi—to take the position. The evidence reveals a disturbing pattern. Text messages confirm Adam was offered the job, and emails show he actively supported Jamal's transition into that role. Far from stepping away, Adam remained engaged—sending marketing materials and even boasting about the work he did to help IME Guards, the company born out of that very opportunity. This was not coercion. This was calculated, voluntary, and strategic behavior from someone still employed as the president of IME Watchdog, all while feeding information and resources to competitors behind his employer's back. Far from being victimized, Adam actively facilitated the creation and success of IME Guards, even celebrating his role in its development. This email directly contradicts the false narrative of coercion peddled by Daniella Levi, Adam Rosenblatt, and Carlos Roa. It exposes their claims as nothing more than a desperate attempt to criminalize ordinary business interactions and bury their own internal discord.

Not once in any of these emails does Adam Rosenblatt express concern that this information was confidential, misused, or being taken without authorization. In fact, many messages are prefaced with "see attached," "please review," or "as discussed."

**No threats. No coercion. No duress.** Just active engagement in launching what he viewed as a joint opportunity.

2. Daniella Levi's sworn affidavit, submitted to this Court on March 3, 2021, is not only inaccurate—it is knowingly false and intended to mislead. In Paragraph 5 of her affidavit, Levi claims that "**Adam Rosenblatt… was approached by Defendants and improperly influenced to provide proprietary Watchdog information including client contacts, pricing, and other confidential business strategies.**" This claim is a lie—and it is contradicted by **over a dozen contemporaneous emails** sent by Rosenblatt himself, voluntarily and without any solicitation, between April and June 2017, sharing Watchdog's financials, client data, invoice formats, and website structure. (See Exhibits [A–O]). She further states in Paragraph 4 that the Defendants "**misappropriated our client list and targeted our clients directly**," then proceeds to name several law firms. However, a simple comparison of the client list, referenced in her affidavit to the internal IME Companions client roster, shows that **a majority of these firms were never clients of Defendants at all.** They were not solicited, serviced, or even contacted by IME Companions. (See Exhibit G: Client Comparison Chart). Levi knew this, or had the ability to verify it, before submitting her affidavit, making her claims not only false, but recklessly so. Worse, Levi fails to mention that her own President, **Adam Rosenblatt**, was the individual who **personally formed IME Guard Dog, Inc.** while still employed by Watchdog—on May 4, 2017—by directing the accountant at Five Pillars Financial Services to file the incorporation. (See Exhibit Q: Incorporation Docs and Five Pillars Affidavit). Rosenblatt, not Defendants, established the infrastructure, engaged the web developer, prepared client reports, and even forwarded proprietary breakdowns of IME Watchdog's business model. (See Exhibit R.) This is further supported by the sworn affidavit of the web developer, Yaniv, who confirms Rosenblatt as the sole point of contact and project lead. (Exhibit S). To suggest, as Levi does, that Defendants *coerced* or *influenced* Rosenblatt is not only unsupported by any evidence—it is **refuted by her own employee's digital and documentary trail.** In reality, Daniella Levi's affidavit is not a good-faith representation of the Court. It is an intentional misstatement of facts, propped up by silence and omissions, to punish the defendants through litigation rather than truth**.** Although Levi is a licensed attorney, she is not representing herself in this matter, meaning her false claims were submitted not only as a party, but with the support and imprimatur of legal counsel. This raises grave concerns about the integrity of Plaintiff's filings and the extent to which this litigation has been weaponized in bad faith. Her affidavit should be stricken in its entirety, and any argument or relief premised upon it must be rejected**.**

**The Court Deserves to Know Why Daniella Levi Deleted the Malpractice Watchdog Post**

In 2016, I met Ronald Rosenblatt at the bank where I worked. He looked like he was struggling. I helped him cash a check, and over time, he returned and began sharing ideas—two in particular: a *Malpractice Watchdog* business and an *IME Watchdog* business. He told me he had once been a doctor but lost his license. Despite that, I found his concepts intriguing. I tried starting a malpractice watchdog company with him, but it didn't succeed.

Later, Ronald introduced me to his son, Adam Rosenblatt, who was working for Daniella Levi. Adam, like his father, asked for help starting his own IME-related business. That's how this all began—not through coercion, but through a request for help. I didn't pursue them—they came to me.

What's striking now, years later, is that Daniella Levi publicly promoted a *Malpractice Watchdog* business—just like Ronald described to me. That's not hearsay. It was on her Facebook page, clear as day. (See Exhibit T.)  Then, as soon as this case was filed, that post disappeared.

Why, if Daniella Levi was the sole architect of IME Watchdog, did she delete a Facebook post that promoted her earlier business, Malpractice Watchdog, at the exact time this lawsuit was initiated? The timing is suspicious. Defendants contend that the deletion was a calculated move to erase digital evidence that could corroborate Ronald Rosenblatt's claim that *both* the IME and Malpractice Watchdog businesses were his intellectual property—pitches he gave to multiple individuals, including both Defendants and Plaintiff.

Further supporting this theory, attached as (See Exhibit U.) is a text message from Ronald Rosenblatt explicitly claiming credit for the Watchdog concepts. The post-deletion timing and her aggressive litigation tactics appear designed to distance Plaintiff from the true origin of the business models at issue.

Daniella now claims IME Watchdog was her idea. But if Ronald Rosenblatt pitched the same two ideas to both of us—and if *Malpractice Watchdog* failed under her just like it did under me—why pretend she wasn't pitched by Ronald at all? Why erase a public record that confirms his involvement?

This suspicion is confirmed by additional emails from Ronald Rosenblatt. Attached as (See Exhibit V.), Ronald emailed Defendant a proposed "Mission Statement" for a malpractice screening business—strikingly similar in language and structure to the concept later marketed by Daniella Levi under the name *Malpractice Watchdog*. Notably, Levi deleted a Facebook post about this very business just as litigation began, suggesting a deliberate effort to conceal the origin of the idea.

Even more damning is (See Exhibit W.), where Ronald Rosenblatt explicitly names Daniella Levi among the law firms he had worked with or was pitching ideas to. The clear implication is that Levi was exposed to these same concepts. The facts strongly support the conclusion that Plaintiff did not originate the Watchdog model but co-opted it from Ronald Rosenblatt—just as she now falsely accuses Defendant of doing.

The most plausible explanation is that the Facebook post undermines her entire story of origin. She deleted it because it would show that Ronald Rosenblatt—not Daniella Levi—was the original source of both ideas. That doesn't mean she didn't develop the business. It means she wasn't the first to conceive it. And that directly contradicts her sworn statements to this Court.

In further support of the assertion that Ronald Rosenblatt originated the IME Watchdog concept, Defendants submit an email dated August 13, 2017, from Ronald Rosenblatt to

Safa Gelardi, titled "IME REPORT," wherein he outlines in detail the structure, sections, and core components of an ideal IME observer report. (See Exhibit X.) This format mirrors the structure used by IME Watchdog and supports the assertion that Ronald, not Daniella Levi or Adam Rosenblatt, conceived the foundational framework for the business. This email, in tandem with Ronald's earlier text message claiming credit for both the malpractice and IME watchdog concepts, further discredits Daniella Levi's representation that she was the original creator of IME Watchdog.

The truth is: Ronald pitched *both* businesses to *both* of us. One failed. One succeeded. But the story Daniella Levi is now telling requires pretending that never happened—and deleting evidence to make sure it looks that way.

3. As further proof of Defendants' good faith and the complete absence of coercion, **Safa Gelardi personally referred Adam Rosenblatt to Subin Associates**, a prominent client law firm, in February 2019—**offering to help him secure employment with no benefit to herself.** Attached as (See Exhibit Y.) is an email from me to attorney Arnie Baum of Subin Associates, forwarding Mr. Rosenblatt's resume and personally advocating for his candidacy. If I were exploiting Mr. Rosenblatt, as Plaintiffs claim, she would not have been assisting him in finding employment elsewhere. This referral was made not for personal gain, but because Mr. Rosenblatt expressed dissatisfaction with his current situation—and I responded with empathy, not manipulation. This singular act alone dismantles the idea that she coerced or took advantage of him. **She opened a door for him to leave.** He chose not to walk through it. This is not the behavior of someone trying to harm another; this is someone **trying to help a man who was clearly conflicted and unraveling**

4. Plaintiff, IME Watchdog, Inc., alleges that Defendants misappropriated confidential and proprietary information. Plaintiff's incorporation of IME Guard Dog, Inc. directly contradicts his narrative. Mr. Rosenblatt has claimed that Defendants misappropriated his confidential business information, yet he himself formed a corporation—IME Guard Dog, Inc.—with a name deliberately similar to Plaintiff's IME Watchdog, Inc. Importantly, Defendants note that their established and documented practice in forming business entities is through Limited Liability Companies (LLCs). Defendant Safa Gelardi has consistently operated under the LLC structure for all her businesses, including her IME services company, daycare center, and her husband's construction business. This consistent use of LLCs stands in stark contrast to Mr. Rosenblatt's incorporation of IME Guard Dog INC as a corporation, reinforcing that he acted independently and not in concert with Defendants. This distinction undermines Plaintiff's narrative that Defendants secretly orchestrated or were involved in forming a competing entity. Rather, it supports the position that Mr. Rosenblatt acted of his own volition and with a separate business strategy, thereby weakening his credibility and highlighting his bad faith in pursuing these claims. Furthermore, this LLC-versus-corporation distinction confirms that the entity structure was Mr. Rosenblatt's independent decision and outside the scope of Defendants' usual business practice—further, discrediting the notion that I or any other Defendant played an integral role in IME Guard Dog INC's formation. This inconsistency underscores Mr. Rosenblatt's bad faith attempts to obscure his own actions while shifting blame onto Defendants.

5. Taken together, the evidence reveals Plaintiff is litigating in bad faith by advancing knowingly false allegations and misrepresenting the nature of its relationship with the

Defendants.

## 6. Carlos Roa: A Disgruntled Employee Who Betrayed the Defendants and Aligned with the Plaintiff

Carlos Roa, a former employee, did not simply leave our company, he **betrayed our trust** by forming an alliance with Plaintiff, **Daniella Levi** and **Adam Rosenblatt**, becoming an active participant in what can only be described as a coordinated effort to destroy my life and my business. As soon as I discovered his betrayal, I **terminated him immediately**.

This was not a mere employment dispute—this was a calculated backstab by someone who pretended to be loyal while secretly conspiring with the very individuals who would later sue me. Roa's personal vendetta quickly transformed into weaponized litigation, driven not by facts but by collusion and vengeance. Carlos Roa is not a whistleblower. He is a disgruntled former employee who was terminated immediately after betraying his employer and was rewarded with a position at IME Watchdog—the very entity now suing the Defendants. He claims to be compelled by conscience, yet offered no specific dates, no documents, and no firsthand misconduct. Instead, he spread false rumors of FBI investigations, (See Exhibit Y.) aligned with the Plaintiff's legal team—who previously represented him—and made wild allegations already discredited in prior litigation. His prior false lawsuit, in which he claimed to be denied bathroom breaks while working from home, was dismissed upon production of his own billing records. This is not a credible witness, it is a co-conspirator in a campaign of legal retaliation. "This recording, made after Mr. Roa had already aligned himself with the Plaintiff and been terminated by Defendants, captures him falsely informing a third party that Defendant was under FBI investigation. This baseless and slanderous statement was not made in the context of litigation or whistleblowing but rather as an act of deliberate reputational sabotage. It further underscores the extent to which Plaintiff and its agents have weaponized defamatory tactics to poison the well against Defendants outside the courtroom."

Adding to the seriousness of this situation, **Daniella Levi—the plaintiff in this case—is also an attorney who previously represented Carlos Roa** in a different legal matter. While she is not representing herself in this action, the existence of this prior attorney-client relationship severely undermines the credibility of Roa's affidavit and calls into question the ethical integrity of using him as a key witness. This connection should have been disclosed to the Court and must be viewed as a glaring red flag for collusion.

Separate from this alliance, during the early stages of litigation, a **recording surfaced** of Roa falsely telling others that I was under investigation by the FBI. This reckless, defamatory claim was baseless and utterly false. His willingness to spread such serious lies further obliterates any pretense that Roa is a credible or neutral witness.

Roa is not a whistleblower. He is a **disgruntled, deceptive opportunist** with a personal grudge, hiding behind a veneer of professionalism while aligning himself with the Plaintiff in a vendetta that has no place in a court of law. His affidavit is tainted, his motives are corrupt, and his credibility is shattered.

1- Carlos Roa repeatedly makes statements about Safa Gelardi's intentions, business practices, and alleged misconduct **without direct knowledge or involvement**. His affidavit lacks specificity and seems more like speculation or parroting of third-party allegations, especially those presumably told to him by Daniella Levi or Adam Rosenblatt. "Roa's affidavit is riddled with hearsay, lacking any personal, first-hand knowledge. He does not assert that he witnessed any misconduct but rather relies on conjecture and third-party narratives."

2- Roa Was Represented by Daniella Levi in Prior Litigation

This is highly significant. Daniella Levi, the plaintiff in this matter, previously represented Carlos Roa in a lawsuit. That case was still active at the time this lawsuit was initiated.

"Mr. Roa's sworn declaration must be scrutinized with caution. He was previously represented by Daniella Levi—the Plaintiff in this very case. This prior attorney-client relationship severely undermines the objectivity of his statements. His declaration is not that of an impartial witness, but of a conflicted party aligned with the Plaintiff's interests."

3- He Was Fired for Cause—Betrayal and Disloyalty

I terminated Carlos Roa immediately upon discovering his betrayal, after he secretly aligned himself with your adversaries. He was not an aggrieved whistleblower—he was a disgruntled ex-employee who retaliated by aligning with opposing counsel.

"Mr. Roa was terminated the moment his duplicity came to light. His decision to collaborate with the Plaintiff and its president, while still employed by Defendants, casts his entire affidavit in a light of retaliatory bias."

4- The Recording Completely Undermines His Integrity

In the early stages of litigation, I obtained a recording of Roa falsely claiming that I was under investigation by the FBI. This statement was blatantly false, dangerous, and meant to cause reputational harm. The recording of Carlos Roa making reckless and demonstrably false statements about a supposed FBI investigation—an investigation that never existed, is a malicious fabrication and calls into question his credibility and motivations in submitting an affidavit in this case.

5- No Direct Evidence Offered in His Affidavit

Roa's affidavit does not introduce any physical, documentary, or electronic evidence. He does not attach emails, text messages, or documents to support his assertions.

Unlike the evidence we present—emails, affidavits, text messages, Roa provides no documentary proof to support any of his accusations. His statements are unsupported, biased, and entirely uncorroborated.

6- Roa Stands to Benefit if Defendants Are Ruined

Given Roa's termination and prior legal history, he may have a personal motive for participating in this litigation—revenge, retaliation, or possible financial interest. As a disgruntled former employee, Roa has every motive to assist the Plaintiff in this lawsuit—not for justice, but for vengeance. His testimony should be viewed through the lens of bias and self-interest.

His affidavit is not the product of neutral observation, but rather one of retaliation, crafted in collaboration with the Plaintiff for strategic litigation gain. A man who claims to be an attorney—despite questions about the legitimacy of his degree—should know better than to submit a declaration so transparently biased. The Court should give his statement little to no weight.

Additional evidence supports Defendants' position. Text messages from Mr. Rosenblatt to me show that he requested IME Companions contractors because he lacked Watchdog coverage for certain client requests. (See Exhibit Z.) On other occasions, Mr. Rosenblatt acknowledged that clients praised the professionalism of IME Companions' observers. One of the messages even concluded with a smiley face emoji — reflecting the friendly and informal tone of our working relationship. These are two text messages of many reflecting a consistent pattern of collaboration. These communications confirm that both parties shared independent contractors at

times, a fact that I have openly admitted in court. Furthermore, the Zelle payments made to Mr. Rosenblatt were for use of his Watchdog observers—not for stolen materials.

Mr. Rosenblatt now claims in his affidavit that he was given cash in exchange for confidential Watchdog materials, but no such transactions are supported by the evidence. In fact, every payment made to Mr. Rosenblatt was traceable Zelle activity tied to observer assignments. These further discredits his sworn testimony and supports the Defendants' contention that no confidential materials were purchased, solicited, or exchanged improperly. These facts directly refute any implication that improper payments or coercion occurred. Additionally, it is important to clarify that the situations leading to these unethical exchanges were instigated by Mr. Rosenblatt himself. On numerous occasions, Mr. Rosenblatt voluntarily shared complaints regarding his observers— instances where Watchdog observers failed to appear, showed up late, dressed inappropriately, or

smelled of marijuana—causing clients to become dissatisfied with Watchdog's services. These disclosures, coupled with his willingness to let me cover those assignments, created conditions that led me to act unethically. He not only permitted this arrangement but embraced it. Payments made to Mr. Rosenblatt were for the use of his observers, and he retained those payments without objection. Sometimes, if Mr. Rosenblatt used one of my companions and I used one of his observers, we would barter those services. If the exchanges were roughly equal, no payment would be made. This mutual arrangement occurred occasionally, particularly in urgent or last-minute situations where either party needed coverage. Many of these exchanges were arranged through phone calls due to the urgency of the assignments, and decisions had to be made quickly to avoid losing client trust or coverage commitments. This context further undermines the credibility of his affidavit and reveals that the Plaintiff's portrayal of events is incomplete and misleading. The Zelle payments I made to Mr. Rosenblatt were almost always between $100 and $200—200, responding with what I paid my own companions per assignment, which typically ranged from $100 depending on distance and other minor factors. Since we charged $175 for the first hour, these Zelle transfers matched standard business practices and were consistent with the emergency or occasional nature of the arrangement. I preferred using my own staff and only relied on Watchdog observers as a last resort. The payments never exceeded $400 in any given month and were traceable, routine contractor payments—not secret exchanges for confidential materials.

Additionally, attached as Exhibit L is an affidavit from Yehad Abdelaziz, owner of Five Pillars Financial Services LTD, the firm that incorporated IME Guard Dog Inc. Mr. Abdelaziz attests under oath that Adam Rosenblatt personally contacted him to incorporate the business and provided all required ownership information and payment. He further declares that, as a matter of strict company policy, his firm does not and would never form a corporation on behalf of someone else. This sworn statement confirms that Mr. Rosenblatt alone was the initiator of the incorporation, further disproving Plaintiff's narrative and supporting Defendants' position that the claims are fabricated and misleading.

Furthermore, to fully disprove any suggestion of misconduct, a comprehensive forensic examination was conducted on all of my electronic devices, my husband's devices, and the device of a companion, Jeff Belbin's. **Despite over $80,000 in forensic analysis of my devices, not a single request, threat, coercive act, or indication of blackmail was ever found.** What was

found—and deliberately ignored by Plaintiffs and their attorneys—were numerous emails and communications from Adam Rosenblatt willingly and repeatedly providing IME Watchdog information, entirely unprompted. Instead of acknowledging this, Plaintiffs cherry-picked fragments that they thought could help them, while concealing the overwhelming evidence that undermines their narrative. This selective, dishonest approach underscores the bad faith driving this lawsuit. This independent audit, which cost close to $80,000, revealed no evidence whatsoever of Safa Gelardi requesting or making payment for IME Watchdog proprietary materials. The only payments identified were Zelle transfers made in connection with the use of Watchdog observers, consistent with normal contractor transactions. This forensic report further corroborates that the claims against me are false, unsupported by any credible digital or financial evidence, and purely retaliatory in nature.

In full transparency, I acknowledge that in 2021-2022, prior to the commencement of litigation, I exchanged private text messages with Mr. Rosenblatt that were ethically inappropriate and are now relied upon by the Plaintiff. While I acknowledge that some of my text messages may appear unprofessional, they reflect a moment of vulnerability—Adam Rosenblatt played on my trust and ambition, feeding me information and opportunities that ultimately made me act out of character. He manipulated the situation to his advantage, and I regret allowing myself to be influenced by him. These messages arose from situations in which Watchdog observers would miss assignments, arrive late, appear unprofessionally dressed, or otherwise upset clients— causing Watchdog to risk losing accounts. Mr. Rosenblatt frequently disclosed these complaints to

me, and on some occasions encouraged me to contact the clients directly. While I admit that my responses escalated and were driven by a lapse in judgment, these messages were not part of any agreement to exchange proprietary materials, nor do they reflect the founding or intent of IME Guard Dog, which was incorporated years earlier. I deeply regret the tone and content of those communications, which were not my proudest moments, but affirms that at most they reflect a temporary ethical lapse—not any unlawful behavior or scheme. Importantly, I never deleted any of these text messages; despite knowing they could be used against me. I believed in the truth and in justice—I would rather explain the context behind them than destroy evidence and appear guilty of something far worse. My transparency reflects not wrongdoing, but my willingness to be accountable and let the facts speak for themselves. My decision to preserve all communications further underscores that I had nothing to hide and that my intent was never malicious.

It is critical to note that the results of the comprehensive forensic examination were made available to Plaintiff's counsel. Despite having access to these exculpatory findings, Plaintiff's attorneys knowingly advanced a narrative that omitted this evidence and misrepresented the facts. The audit showed no improper payments, no trafficking of confidential materials, and no record of any meeting place, no dates, no evidence of cash exchange for documents—because none of it ever happened. The plaintiffs offer only vague, unsupported allegations without a single detail to corroborate them. If their story were true, there would be some trace—yet $80,000 in forensic review turned up nothing. By continuing to prosecute this case while suppressing forensic proof that undercuts their central claims, Plaintiff and its counsel demonstrate a pattern of litigation in bad faith. This conduct raises serious ethical concerns and further supports the need for judicial intervention. Additional evidence further erodes the Plaintiff's credibility. Several emails

submitted as (Exhibits1 through 6)—sent by Plaintiff's agents to my clients—contain slanderous and defamatory accusations designed to disrupt my business relationships. These communications represent an effort to weaponize litigation by poisoning my client base with false claims.

Furthermore, Plaintiff submitted a list of alleged clients as part of their confidential materials claim. However, I possess physical proof that this was a generic marketing list, not a proprietary or confidential client list. Supporting documents, including medical reports from various doctors, clearly show that these supposed 'clients' are currently being represented at IMEs by other companies such as CLS (Client Liaison Services), IME Guards, and others. (See Exhibits 7–12.) These examples are a few of many that demonstrate that the clients in question are not exclusive to Plaintiff, undermining their claim that I improperly used their protected information. This widespread usage of common IME contractors by various companies reveals that Plaintiff's asserted trade secrets were not, in fact, proprietary or confidential.

**Plaintiff's Narrative Is Implausible and Contradicted by the Evidence**

Plaintiff's President, Adam Rosenblatt, has claimed in his sworn affidavit that he held multiple in-person meetings with Defendant Safa Gelardi, during which he allegedly exchanged confidential Watchdog materials for cash payments. This allegation is not only false — it is entirely fabricated. In reality, Mr. Rosenblatt sent all the purported "Watchdog" materials via email in early 2017, as evidenced by the numerous emails already provided in this motion (See Exhibits A_through O). There was only **one** in-person meeting, which occurred at the Irish Cottage, where Mr. Rosenblatt introduced approximately **ten Watchdog observers** to Defendants in what was clearly a recruitment and networking effort — not a covert exchange of trade secrets. To suggest that physical cash and in-person exchanges were necessary when all materials had already been emailed in April 2017 insults the Court's intelligence. There is no logical reason why we would need to engage in covert physical transactions for documents that were already sent electronically — timestamped, dated, and attached to clear communications. Either the Plaintiff believes this Court will ignore common sense and basic evidence, or they are so deep in their own fiction they've forgotten the paper trail they left behind. To suggest that I met with Adam Rosenblatt and exchanged cash for confidential documents is not only false, but also completely unsupported by any detail. Not a single date, time, location, or even a coherent recollection of these alleged meetings has ever been offered by the Plaintiff. That's because they didn't happen. The truth is simple: Adam sent me everything via email in April 2017—digitally, voluntarily, and unsolicited. There was no need for any in-person handoff. The notion that we would arrange secret meetings to exchange documents already sent electronically is absurd. Adam Rosenblatt has never testified—despite being the central figure in the allegations—because his testimony would collapse under cross-examination. His story is riddled with contradictions, and the documentary evidence proves he acted voluntarily, repeatedly communicated with the Defendants, and shared proprietary information without coercion. If he were to testify under oath, he would risk perjury. The plaintiffs and their attorneys likely chose to shield him from the stand to avoid exposing the truth: that Adam Rosenblatt was not a victim, but the orchestrator

**THE TRUTH IS that Mr. Rosenblatt was freely distributing Watchdog materials to multiple parties in pursuit of launching his own business, IME Guard Dog.**

Taken together, these contradictions show that Plaintiff's case rests not on facts or law, but on personal vendettas and fabricated narratives.

The totality of evidence presented undermines the foundation of Plaintiff's case. Not only did Adam Rosenblatt initiate and orchestrate the creation of IME Guard Dog, but he did so willingly, while actively employed by IME Watchdog. He solicited my participation, shared internal documents freely, and embraced an informal business exchange of observers. Despite clear evidence that Mr. Rosenblatt betrayed Plaintiff, he remains employed by Daniella Levi. Conversely, Carlos Roa, who betrayed me and then conspired with Ms. Levi, was only terminated after I discovered his actions following service of the lawsuit.

Plaintiff's claims of coercion and theft ring hollow when considered alongside Rosenblatt's proposal for partnership, the Zelle payments consistent with standard observer fees, and the forensic audit showing no illicit transactions. Furthermore, the defamatory nature of statements—like Roa falsely claiming to others that I was under FBI investigation—demonstrates the smear tactics underpinning this litigation.

This case is not about protection of trade secrets—it is a personal vendetta masquerading as a legal complaint. The contradictions, selective enforcement, and bad faith behavior all demand close scrutiny by this Court.

**Human and Financial Harm Caused by Plaintiff's False Allegations**

As a direct result of the false allegations made by Plaintiff and the restraining order granted in this case, Defendants have suffered immense financial and personal harm. The TRO deprived Defendants of their primary income, making it nearly impossible to sustain basic expenses, including the loss of homes.

The relentless and defamatory campaign extended beyond court filings. Defendants were subjected to harassment by Plaintiff's private investigator, forcing them to relocate out of state and leave behind their family, community, and support system.

These consequences are not hypothetical; they reflect real devastation inflicted by a lawsuit premised on fabrications. I am not a large corporate actor but a member of a simple family whose lives have been upended by Plaintiff's calculated effort to damage their reputation and livelihood.

**WHEREFORE**, Defendants respectfully request that this Court:

1. **That the Court strikes from the record any declarations, affidavits, or allegations that are demonstrably false, materially inconsistent, or contradicted by documentary evidence, particularly the affidavits of Adam Rosenblatt and Carlos Roa**, which have been discredited by their own communications, timelines, and contradictory public records.
2. **That the Court dismiss with prejudice all claims that rely solely or substantially on those tainted affidavits**, including but not limited to claims of misappropriation of trade secrets, unfair competition, and breach of fiduciary duty.

3. **That the Court takes judicial notice of the extensive documentary evidence submitted**, including text messages, email correspondence, affidavits from third-party professionals, and publicly available business filings that corroborate Defendants' version of events and disprove Plaintiff's allegations.

4. **That the Court clarify the scope and limitations of the current injunctive orders**, particularly as they pertain to documents that were originally filed or disclosed by Plaintiff, and that have since become central to Defendants' good-faith efforts to defend themselves.

5. **That the Court reject Plaintiff's attempt to misuse the injunction orders as a sword rather than a shield**, and to instead ensure that litigation proceeds on a foundation of truth, fairness, and factual integrity.

6. **That the Court grant such other and further relief as it deems just and proper**, including the opportunity to move for sanctions or summary judgment if Plaintiff's witnesses continue to be shown to have made false or misleading statements under oath.

Respectfully Submitted

Safa Gelardi

Pro Se defendant

6/13/25, 10:02 AM
Case 1:22-cv-01032-PKC-JRC    Document 551    Filed 07/14/25    Page 16 of 99 PageID #: 9916
Screenshot 2022-03-28 at 12.36.07 PM.png

**12:36**






**Adam** ‑



You too 🙂

███████████████████

## He needs someone for a‚n Ime Tuesday

## David

Sun ‚ Jul 4, 2:02 Pfv1

## Nelson will be calHng you for a Tuesday Ime , I don't have anyone to cover , he's from

███████████████████

Mon, Jul 5, 12:28 PM

# Lawyer emailed me to say client was happy

# Great! We received positive feedback regarding your representative who attended my client's IME on Monday, I believe his name is Mark. Thanks again!

# Steve

█████████████████████

## AFFIDAVIT OF SERVICE

**State of New York**                **County of Eastern**            **United States District Court**

Index Number: 1:22-CV-1032 (PKC) (JRC)
Date Filed: _____

Plaintiff:
**IME Watchdog, Inc.**

vs.

Defendant:
**Gelardi, et al.**

For:
Milman Labuda Law Group PLLC
3000 Marcus Avenue
Suite 3W8
Lake Success, NY 11042

Received by Nicoletti & Harris to be served on **Lumina Systems Inc., 99 Wall Street, Ste 1536, New York, NY 10005**.

I, Alex Colon, being duly sworn, depose and say that on the **14th day of March, 2023 at 1:42 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action and a witness fee check in the amount of $40.00** with the date and hour of service endorsed thereon by me, to: **Mr Evan** as **Clerk** for **Lumina Systems Inc.**, at the address of: **99 Wall Street, Ste 1536, New York, NY 10005**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 25, Sex: M, Race/Skin Color: White, Height: 5'10", Weight: 180, Hair: Black, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF      New York)
COUNTY OF    New York)

Subscribed and Sworn to before me on the 14th day
of March, 2023 by the affiant who is personally
known to me,

Sueget M. Mercado
Notary Public State of New York
Qualified in Kings County
Lic. # 01ME6434359
Commission Expires: June 6, 2026

**Alex Colon**
2104765

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: NHI-2023003989

Copyright © 1992-2023 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2n

**AFFIDAVIT**

STATE OF NEW YORK    )

) SS.:

COUNTY OF NEW YORK )

I Arnold Baum, being duly sworn, deposes and says, under the penalty of perjury:

I am Chief Operating Officer of Subin Associates. On or about January 2018, the firm was introduced to Safa Gelardi through a contact named Greg Elefterakis. She introduced a new IME service to us called IME Companions. My firm was using IME Watchdog. We were unhappy with their service. We started using IME Companions and have been ever since. We are happy with the service from IME Companions.

_____

Arnold Baum

Sworn to before me this

_15_ day of March, 2022

Notary Public

Bonita Woods
Notary Public, State of New York
No. 01W06091142
Qualified in Bronx County
Commision Expires April 28, 2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
CARLOS ROA, Proposed Administrator of the Estate of
DELFINO EDUARDO MACEDA, Deceased,
and Proposed Administrator of the Estate of TAURINO
ROSENDO MORALES,

                              Plaintiff,

          -against-

BALDOR SPECIALTY FOODS, INC., BALDOR
EXPRESS TRANSPORTATION CO. LLC, MILEA
LEASING CORP., and FRANK PETER SPORTELLO,
Individually,

                        Defendants.
-------------------------------------------------------------------X

Index No.: 153519/2022

**STIPULATION TO
ADJOURN DEFENDANTS'
MOTION TO DISMISS**

      **IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned,

attorneys for the respective parties herein that defendants BALDOR SPECIALTY FOODS, INC.,

BALDOR EXPRESS TRANSPORTATION CO. LLC, MILEA LEASING CORP., and FRANK

PETER SPORTELLO's motion to dismiss currently returnable on August 17, 2022, is here by

adjourned on consent of all parties to September 16, 2022, opposition papers to be served

September 2, 2022, and any reply papers to be served by September 15, 2022; and

      **IT IS FURTHER STIPULATED AND AGREED** that this stipulation may be executed

in counterparts and that facsimile/PDF signatures may be accepted as originals for all purposes.

Dated: New York, New York
       August 9, 2022

_Maria Zieher_____
Maria C. Zieher, Esq.
**ZIEHER & ASSOCIATES, P.C.**
Attorneys for Plaintiff
11 Broadway, Suite 615
New York, New York 10004
(212) 235-7010

Daniella Levi, Esq.
**DANIELLA LEVI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
159-16 Union Turnpike, Suite 200
Queens, New York 11366
(718) 380-7440

*Christopher Clarke*

Christopher D. Clarke, Esq.
**LEAHEY & JOHNSON, P.C.**
Attorneys for Defendants
120 Wall Street, Suite 2220
New York, New York 10005
(212) 269-7308

## JEFFREY PASSICK, M.D., F.A.A.O.S.
## DIPLOMATE AMERICAN BOARD OF ORTHOPEDIC SURGERY

**421 Ocean Parkway**                        **Tel. #  718-339-8200**
**Brooklyn, NY  11218**                        **Fax # 718-336-8200**

Examination Date:  9/19/23
Report Date: 9/29/23

James F. Butler & Associates
300 Jericho Quadrangle, Suite 260
P.O. Box 9040
Jericho, NY 11753

RE:                 Deryck Gordon
Claim #:            37 08N3 44H
DOI:                6/4/2020
Request Type:       Liability IME

To Whom It May Concern:

As per your request, I performed an orthopedic examination on the above
claimant on 9/19/23 in my Brooklyn, New York office.  The claimant presented
valid photo identification which was witnessed and copied.

The claimant was accompanied by Gerard Losquadro, a legal representative.

The claimant was provided with intake forms but refused to complete them at
the advice of his attorney.

My findings are as follows:

### HISTORY:

Mr. Gordon was involved in a motor vehicle accident on 6/4/20.  The claimant
verbalized that he was the driver of a car that was sideswiped.  He verbalized
he went to the emergency department on his own after the accident.  He
verbalized his car was totaled.

The claimant verbalized receiving injections (not specified).  He did not provide
any information as to whether he received physical therapy, chiropractic care,
or acupuncture subsequent to the accident of 6/4/20.

Case 1:22-cv-01032-PKC-JRC    Document 551    Filed 07/14/25    Page 23 of 99 PageID
#: 9923

**KHAVINSON & ASSOCIATES, P.C.**
Attorney(s) for Plaintiff(s)
Deryck M. Gordon
45 Broadway, Suite 720
New York, NY 10006
(718) 421-3815
tm@khavinson.com

# J. SERGE PARISIEN, M.D.

## Orthopedic Surgeon

337 Court Street
Brooklyn, NY 11231

November 6, 2023

Baker, McEvoy & Moskovits
c/o IME Services Inc.
960 Route 6
Suite 101
Mahopac, NY 10541

| | |
|---|---|
| **Claimant Name:** | **Enoch Otchere** |
| **Accident Date:** | **September 26, 2018** |
| **Claim #:** | **1064935-4** |
| **Date of Examination:** | **November 6, 2023** |
| **IME #:** | **AMTI-2023-9301** |

**TO WHOM IT MAY CONCERN:**

As per your request, the following report is being submitted on Mr. **Enoch Otchere**. This examination was performed on November 6, 2023 at my Bronx office. A valid NYS Driver's license was presented prior to examination. It is not disclosed how he arrived to the office.

He is accompanied by John Schreiber who identifies as the claimant's legal representative.

The claimant was the passenger of a vehicle involved in an accident causing him to sustain injury to the neck, left shoulder, low back and right ankle. He denies the loss of consciousness. There were no fractures or lacerations sustained. The same day he reportedly presented to St. Barnabas Hospital for emergency room treatment.

He states that he underwent left shoulder surgery on December 18, 2018.

**WORK HISTORY:** John instructed the claimant not to disclose any information regarding employment status.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**
-------------------------------------------------------------------------X   Index No.: 25761/19E

ENOCH S. OTCHERE,

                                         **NOTICE OF EXPERT**
                   **Plaintiff(s),**           **WITNESS PURSUANT TO**
                                           **CPLR 3101(d)**

      -against-

TERRENCE HOLDER, NEW YORK CITY TRANSIT
AUTHORITY, KHALIL LOUZ AND SEVERIN NONOSEE,,

                         **Defendant(s).**     **File No.: 1064935**
-------------------------------------------------------------------------X

**PLEASE TAKE NOTICE**, of Defendant(s), **SEVERIN NONOSEE**, response to Plaintiff(s)
request for expert disclosure pursuant to section 3101(d) of the Civil Practice Law and Rules.

Defendants expect to call **DR. J. SERGE PARISIEN, M.D.** as an expert witness at the trial in
the above matter.

The subject matter upon which the examining physician is presently expected to testify is set
forth in detail in report(s) dated **NOVEMBER 6, 2023**, attached hereto and incorporated by
reference herein.

The facts and opinions upon which the examining physician is expected to testify are based on
his/her physical examination of the plaintiff and/or his/her review of the plaintiff's medical
records and upon all matters in evidence.

The grounds of the physician's opinion come from his/her physical examination of the plaintiff
on the above date and/or his/her review of the plaintiff's medical records and is set forth in the
attached report.

The Curriculum Vitae for the examining physician is annexed to the report.

Dated: Freeport, New York
      June 3, 2024

                                         BAKER, MCEVOY & MOSKOVITS

TO:   KHAVINSON & ASSOCIATES, P.C.
       45 BROADWAY
       NEW YORK, NY 10006
       (212) 785-5000

                                    _____
                                    BY: RONIT Z. MOSKOVITS, ESQ.
                                    ATTORNEY FOR DEFENDANT(s)
                                    5 BROADWAY, SUITE 3
                                    FREEPORT, NY 11520
                                    (212) 857-8230

 Gmail

Safa Gelardi <safagelardi@gmail.com>

---

## Additional Breakdown of IMEs
2 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Sat, Apr 29, 2017 at 4:58 PM
To: Safa Gelardi <safagelardi@gmail.com>

See attached.

Adam

---
📄 **20170429180306756.pdf**
364K

---

**Safa Gelardi** <safagelardi@gmail.com>                    Fri, Mar 11, 2022 at 2:57 PM
To: Steven Siegler <steven@kilegal.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Adam Rosenblatt <adammrosenblatt@gmail.com>
> **Date:** April 29, 2017 at 5:58:37 PM EDT
> **To:** Safa Gelardi <safagelardi@gmail.com>
> **Subject: Additional Breakdown of IMEs**
>
>
> See attached.
>
> Adam

---
📄 **20170429180306756.pdf**
364K

                                                       **Safa Gelardi <safagelardi@gmail.com>**

---

## appeal
1 message

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                      Wed, Apr 3, 2019 at 3:17 PM
To: Safa Gelardi <safagelardi@gmail.com>

  change the facts to your case and use the supporting cases in your argument

---

  **IME Brief 122618 FINAL.docx**
    96K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## by state
1 message

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Mon, Jan 27, 2020 at 9:35 AM
To: Safa Gelardi <safagelardi@gmail.com>

---

 **Disbursement by State .xlsx**
11K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## can attend
2 messages

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Fri, Sep 18, 2020 at 4:13 PM
To: Safa Gelardi <safagelardi@gmail.com>

its seriously a settled matter, if its covid related its just going to have to be rescheduled.

**5 attachments**



The attached were case law, it is public information, I redacted as a precaution

**Safa Gelardi** <safagelardi@gmail.com>                    Fri, Sep 18, 2020 at 4:48 PM
To: info@imecompanions.com

Safa Gelardi

Begin forwarded message:

> **From:** Adam Rosenblatt <adammrosenblatt@gmail.com>
> **Date:** September 18, 2020 at 5:14:02 PM EDT
> **To:** Safa Gelardi <safagelardi@gmail.com>
> **Subject: can attend**

[Quoted text hidden]

**5 attachments**



143K



Safa Gelardi <safagelardi@gmail.com>

## Dr.DeBenedetto
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Tue, Mar 9, 2021 at 11:51 AM
To: Safa Gelardi <safagelardi@gmail.com>

see attached

**Dr. DeBenedetto.pdf**
94K



**Safa Gelardi <safagelardi@gmail.com>**

---

## email draft
1 message

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Tue, Mar 26, 2019 at 4:07 PM
To: Safa Gelardi <safagelardi@gmail.com>

Good Morning,

I wanted to take a moment to introduce you to 

 **Gmail**

Safa Gelardi <safagelardi@gmail.com>

---

**email template**
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Tue, Jan 28, 2020 at 2:29 PM
To: Safa Gelardi <safagelardi@gmail.com>



A Plaintiff Firm's *New Defense Weapon*

<u>against</u> Insurance Companies & their Hired Guns

 Gmail

**Safa Gelardi** <safagelardi@gmail.com>

## emails
2 messages

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Wed, Aug 21, 2019 at 9:51 AM
To: Safa Gelardi <safagelardi@gmail.com>



all paid full price

---

**Safa Gelardi** <safagelardi@gmail.com>                    Wed, Aug 28, 2019 at 2:49 PM
To: croa@imecompanions.com

Safa Gelardi

Begin forwarded message:

[Quoted te t hidden]

                                       **Safa Gelardi <safagelardi@gmail.com>**

---

### for the bloomfields
1 message

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                Fri, Mar 8, 2019 at 4:55 PM
To: Safa Gelardi <safagelardi@gmail.com>

---

 **IME Brief 122618 FINAL.pdf**
316K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## FW: Client IME Protection
16 messages

**Adam Rosenblatt** <adamrosenblatt@levilawny.com>                    Wed, Mar 6, 2019 at 4:36 PM
To: safagelardi@gmail.com


**Adam M. Rosenblatt**

President

IME Watchdog, Inc.

159-16 Union Turnpike, Suite 200

Fresh Meadows, New York 11366

Office: 718-463-2320

Cell: 347 665 2160

Fax: 718-463-2324

email: adam@imewatchdog.com

www.imewatchdog.com

IME_Logo hi res NYSTLA_ptnshp_logo.png

ZA102637861 ZA102637857

---

**From:** IME Guards <jaaron@imeguards.com>
**Sent:** Wednesday, March 06, 2019 1:02 PM
**To:** adamrosenblatt@levilawny.com
**Subject:** Client IME Protection

# Find Out More

□   □   □   □

---

*Copyright © *|2018|* LawCash, All rights reserved.*

We have worked with you in the past

**Our mailing address is:**

*|26 Court ST Brooklyn NY 11242|*

Gmail - Fwd: IME Guard Dogs - Website & Online Marketing Proposal

 **Gmail**

**Safa Gelardi <safagelardi@gmail.com>**

---

## Fwd: IME Guard Dogs - Website & Online Marketing Proposal
10 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>
To: Safa Gelardi <safagelardi@gmail.com>

Fri, Jun 23, 2017 at 4:53 PM

---------- Forwarded message ----------
From: **Yaniv Liron** <docs@pdoc.co>
Date: Monday, May 22, 2017
Subject: IME Guard Dogs - Website & Online Marketing Proposal
To: Adam Rosenblatt <adammrosenblatt@gmail.com>



 **Yaniv Liron** sent you "**IME Guard Dogs - Website & Online Marketing Proposal**".

*Adam,*

*I have created a proposal based on the services we discussed. Please see the proposal below, and if all looks well, it can be signed electronically.*

*If you'd like to discuss any part of it - please call me anytime for any questions or concerns.*

*Looking forward to starting work together!*

*Best,*
*Yaniv Liron*
*CEO / Lumina*
*212.444.2658*

OPEN THE DOCUMENT

Gmail - Website & Online Marketing Proposal

Prepared by:

Lumina
1123 Broadway Suite 1018
New York, NY 10010

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Sat, Jun 24, 2017 at 7:18 PM
To: Yaniv Liron <yaniv@lumina.nyc>, Safa Gelardi <safagelardi@gmail.com>

Good afternoon Yaniv,

Small change it's now going to be ime sentinel

Also would you be able to create some mockups for a logo

Thank you

Adam
[Quoted text hidden]

---

**Yaniv Liron** <yaniv@lumina.nyc>                    Mon, Jun 26, 2017 at 1:53 PM
To: Adam Rosenblatt <adammrosenblatt@gmail.com>
Cc: Safa Gelardi <safagelardi@gmail.com>

Absolutely. Will update the proposal.

## Yaniv Liron
CEO



1123 Broadway #1018
New York, NY 10010
212.444.2658
lumina.nyc

    

[Quoted text hidden]

---

**Safa Gelardi** <safagelardi@gmail.com>                    Mon, Jun 26, 2017 at 2:25 PM
To: Yaniv Liron <yaniv@lumina.nyc>

Yaniv,
Please send me the proposal, I can't seem to find the break down for the cost. Thank you

Sent from my iPhone
[Quoted text hidden]

---

**Yaniv Liron** <yaniv@lumina.nyc>                                         Tue, Jun 27, 2017 at 4:32 PM
To: Safa Gelardi <safagelardi@gmail.com>

Here is the link again:

https://app.pandadoc.com/document/5a559f16026ca2ef1b4f1ae8d574f682aa6bafe9

## Yaniv Liron
CEO



1123 Broadway #1018
New York, NY 10010
212.444.2658
lumina.nyc



6/26/25, 9:42 AM
Case 1:22-cv-01032-PKC-JRC    Document 551   Filed 07/14/25    Page 42 of 99 PageID
#: 9942
Gmail - good contacts

 **Gmail**

**Safa Gelardi <safagelardi@gmail.com>**

## good contacts
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                     Tue, Dec 28, 2021 at 8:47 AM
To: Safa Gelardi <safagelardi@gmail.com>



 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## good luck
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>
To: Safa Gelardi <safagelardi@gmail.com>

Wed, Mar 20, 2019 at 3:48 PM

**5 attachments**



 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## head
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Mon, Oct 28, 2019 at 3:54 PM
To: Safa Gelardi <safagelardi@gmail.com>

---

 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## head
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                                    Mon, Oct 28, 2019 at 3:50 PM
To: Safa Gelardi <safagelardi@gmail.com>

 ▊▊▊▊▊▊▊▊▊▊

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## IME Watchdog 2016 Breakdown

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Fri, Apr 28, 2017 at 4:26 PM
To: Safa Gelardi <safagelardi@gmail.com>

Safa,

See attached.

DL never really asked for this but I did it anyway.

Thank you

Adam

---

 **IME Watchdog 2016.pptx**
1115K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## IME Watchdog Clients

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                                    Fri, Apr 28, 2017 at 4:37 PM
To: Safa Gelardi <safagelardi@gmail.com>

See attached

**IME Watchdog Clients Master List 2017.xlsx**
214K



**Safa Gelardi <safagelardi@gmail.com>**

## IME Watchdog for March 2017

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Fri, Apr 28, 2017 at 3:48 PM
To: safagelardi@gmail.com

Hi Safa,

Attached please find a breakdown of March 2017. Including the monthly P&L,  list of  clients for that month, a list of all the IME covered, the Watchdog invoices, a breakdown of their pay vs what we billed, etc.

Thank you

Adam M. Rosenblatt

---

📄 **20170410111302146.pdf**
14275K



**Safa Gelardi <safagelardi@gmail.com>**

## IME Watchdog P&L Last 3 years

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Fri, Apr 28, 2017 at 3:15 PM
To: safagelardi@gmail.com

Good evening Safa,

As per our discussion attached please find the P&L for IME Watchdog for the last three years.

I would like for you to really understand that this company could have achieved an even greater success had any reinvestment been made or if a serious marketing strategy been established.

Thank you,

Adam M. Rosenblatt

---

**3 attachments**


**P&L 2016.pdf**
14K


**P&L 2015.pdf**
13K

**P&L 2014.pdf**
13K



Safa Gelardi <safagelardi@gmail.com>

---

**instructions**
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                                    Mon, Oct 28, 2019 at 8:44 AM
To: Safa Gelardi <safagelardi@gmail.com>



 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## leads
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                Thu, Feb 6, 2020 at 1:57 PM
To: Safa Gelardi <safagelardi@gmail.com>

see attached

 **leads.xlsx**
303K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## New Template
2 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Mon, Oct 14, 2019 at 4:30 PM
To: Safa Gelardi <safagelardi@gmail.com>

they have to write better reports and they need to not dress like vagrants

---

**Safa Gelardi** <safagelardi@gmail.com>                    Tue, Oct 15, 2019 at 8:11 AM
To: "croa@imecompanions.com" <croa@imecompanions.com>

Sent from Mail for Windows 10

[Quoted text hidden]



---

 Gmail

Safa Gelardi <safagelardi@gmail.com>

## No notes
3 messages

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Wed, Jul 22, 2020 at 10:22 AM
To: Safa Gelardi <safagelardi@gmail.com>

---

**3 attachments**

 **Nov 2018- no WD Notes_EBT- Alston.pdf**
109K

 **Decision Denying IME Watchdog Notes.pdf**
294K

 **Markel- AD1 Decision & Order.3.19.19 re Appeal.pdf**
114K

---

**Safa Gelardi** <safagelardi@gmail.com>                    Wed, Jul 22, 2020 at 10:23 AM
To: IME Companions <info@imecompanions.com>

---------- Forwarded message ---------
From: **Adam Rosenblatt** <adammrosenblatt@gmail.com>
Date: Wed, Jul 22, 2020 at 11:22 AM
Subject: No notes
To: Safa Gelardi <safagelardi@gmail.com>

---

**3 attachments**

 **Nov 2018- no WD Notes_EBT- Alston.pdf**
109K

 **Decision Denying IME Watchdog Notes.pdf**
294K

 **Markel- AD1 Decision & Order.3.19.19 re Appeal.pdf**
114K

---

**Safa Gelardi** <safagelardi@gmail.com>                    Fri, Sep 18, 2020 at 4:10 PM
To: info@imecompanions.com

Safa Gelardi

Begin forwarded message:

> **From:** Safa Gelardi <safagelardi@gmail.com>
> **Date:** July 22, 2020 at 11:23:05 AM EDT
> **To:** IME Companions <info@imecompanions.com>

**Subject: Fwd:  No notes**

[Quoted text hidden]

---

**3 attachments**

 **Nov 2018- no WD Notes_EBT- Alston.pdf**
109K

 **Decision Denying IME Watchdog Notes.pdf**
294K

 **Markel- AD1 Decision & Order.3.19.19 re Appeal.pdf**
114K

 Gmail

Safa Gelardi <safagelardi@gmail.com>

---

## not all ?s
2 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Mon, Apr 5, 2021 at 3:21 PM
To: Safa Gelardi <safagelardi@gmail.com>



3 attachments

📄 **Latypov Aff In Opp 1.15.17- No new IME doc refused client had recent injections.pdf**
733K

📄 **No New IMEs for blocked questions and no paperwork- 2 IMES.pdf**
2370K

📄 **No New IME- not all questions.pdf**
102K

---

**Safa Gelardi** <safagelardi@gmail.com>                    Mon, Apr 5, 2021 at 3:27 PM
To: IME Companions <info@imecompanions.com>

---------- Forwarded message ---------
From: **Adam Rosenblatt** <adammrosenblatt@gmail.com>
Date: Mon, Apr 5, 2021 at 4:21 PM
Subject: not all ?s
To: Safa Gelardi <safagelardi@gmail.com>

3 attachments

📄 **Latypov Aff In Opp 1.15.17- No new IME doc refused client had recent injections.pdf**
733K

📄 **No New IMEs for blocked questions and no paperwork- 2 IMES.pdf**
2370K

📄 **No New IME- not all questions.pdf**
102K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## people
1 message

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Thu, Oct 10, 2019 at 11:12 AM
To: Safa Gelardi <safagelardi@gmail.com>

 Gmail

Safa Gelardi <safagelardi@gmail.com>

## report Ideas
2 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Thu, Mar 14, 2019 at 12:54 PM
To: Safa Gelardi <safagelardi@gmail.com>

Change letterhead,

Just have IME Companions on the top with logo, put the we watch out for you and the contact info on the footer.

Forget the double spacing and the little diagram.

change IME Physician to IME Examiner/ Examinee to plaintiff.

Use full sentences, looks lazy- use numbers for sentences, like they would a deposition transcript.

---

 **sample .docx**
13K

---

**Safa Gelardi** <safagelardi@gmail.com>                    Fri, Mar 11, 2022 at 3:00 PM
To: Steven Siegler <steven@kilegal.com>

His ideas that were not used

Sent from my iPhone

Begin forwarded message:

> **From:** Adam Rosenblatt <adammrosenblatt@gmail.com>
> **Date:** March 14, 2019 at 1:54:51 PM EDT
> **To:** Safa Gelardi <safagelardi@gmail.com>
> **Subject: report Ideas**

[Quoted text hidden]

---

 **sample .docx**
13K



**Safa Gelardi <safagelardi@gmail.com>**

---

## report
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                                   Fri, Dec 6, 2019 at 10:33 AM
To: Safa Gelardi <safagelardi@gmail.com>





**Safa Gelardi <safagelardi@gmail.com>**

---

## reports
1 message

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Tue, Mar 19, 2019 at 6:10 PM
To: Safa Gelardi <safagelardi@gmail.com>

---

**2 attachments**



Safa Gelardi <safagelardi@gmail.com>
To: abaum@subinlaw.com, Adam Rosenblatt <adammrosenblatt@gmail.com>

Dear Arnie,

Per our conversation, please see attached resume. I have copied Adam Rosenblatt on this email.

Thank You Arnie.

---

**Adam Resume Quantified _w AC ideas.docx**
18K

---

**From:** Safa Gelardi <safagelardi@gmail.com>
**Date:** February 11, 2019 at 1:47:04 PM EST
**To:** abaum@subinlaw.com, Adam Rosenblatt <adammrosenblatt@gmail.com>
**Subject:** Fwd: Resume

Dear Arnie,

Per our conversation, please see attached resume. I have copied Adam Rosenblatt on this email.

Thank You Arnie.

**Adam Resume Quantified _w AC ideas.docx**
**18K**



Safa Gelardi <safagelardi@gmail.com>

---

## sales by client for 2016.

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Sat, Apr 29, 2017 at 4:56 PM
To: Safa Gelardi <safagelardi@gmail.com>

Good afternoon Safa,

Attached please find sales by client for 2016.

Many of the clients prepay for IMEs on the first of the month. ██████████ gets and ██████████████ - gets a ████████. A number of other firms get smaller packs.

On day one I could bring in money,

Adam

---

📄 **Sales By Client 2016.pdf**
25K



Safa Gelardi <safagelardi@gmail.com>

---

## sample report
2 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>
To: Safa Gelardi <safagelardi@gmail.com>

Thu, Mar 14, 2019 at 12:24 PM

thank you

 ██████████████████████████████
78K

---

**Safa Gelardi** <safagelardi@gmail.com>
To: croa@imecompanions.com

Thu, Mar 14, 2019 at 12:59 PM

---------- Forwarded message ---------
From: **Adam Rosenblatt** <adammrosenblatt@gmail.com>
Date: Thu, Mar 14, 2019 at 1:24 PM
Subject: sample report
To: Safa Gelardi <safagelardi@gmail.com>

thank you

 ██████████████████████████████
78K



**Safa Gelardi <safagelardi@gmail.com>**

---

## see attached
1 message

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                    Tue, Aug 13, 2019 at 8:47 AM
To: Safa Gelardi <safagelardi@gmail.com>

Thank you,

---

 **clients need attention .docx**
14K

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## snail mail
2 messages

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>          Mon, Jan 20, 2020 at 12:31 PM
To: Safa Gelardi <safagelardi@gmail.com>

---

**14 attachments**

📄 **Sept mailing.doc**
   41K

📄 **NY  Mailing.doc**
   42K

📄 **CT Mailing.doc**
   42K

📄 **Feb mailing5.doc**
   41K

📄 **Feb mailing4.doc**
   43K

📄 **Jan Mailing4.doc**
   43K

📄 **NY  Mailing10.doc**
   40K

📄 **NY  Mailing9.doc**
   40K

📄 **NY  Mailing8.doc**
   40K

📄 **NY  Mailing6.doc**
   41K

📄 **NY  Mailing5.doc**
   41K

📄 **NY  Mailing4.doc**
   40K

📄 **NY  Mailing3.doc**
   41K

📄 **NY  Mailing2.doc**
   40K

---

**Safa Gelardi** <safagelardi@gmail.com>          Wed, Mar 17, 2021 at 1:48 PM
To: Hesham Salameh <heshamsal30@icloud.com>

---------- Forwarded message ---------
From: **Adam Rosenblatt** <adammrosenblatt@gmail.com>
Date: Mon, Jan 20, 2020 at 1:31 PM
Subject: snail mail
To: Safa Gelardi <safagelardi@gmail.com>

---

**14 attachments**

📄 **Sept mailing.doc**
41K

📄 **NY Mailing.doc**
42K

📄 **CT Mailing.doc**
42K

📄 **Feb mailing5.doc**
41K

📄 **Feb mailing4.doc**
43K

📄 **Jan Mailing4.doc**
43K

📄 **NY Mailing10.doc**
40K

📄 **NY Mailing9.doc**
40K

📄 **NY Mailing8.doc**
40K

📄 **NY Mailing6.doc**
41K

📄 **NY Mailing5.doc**
41K

📄 **NY Mailing4.doc**
40K

📄 **NY Mailing3.doc**
41K

📄 **NY Mailing2.doc**
40K



**Safa Gelardi <safagelardi@gmail.com>**

## Website Concept

**Adam Rosenblatt <adammrosenblatt@gmail.com>**                     Wed, May 3, 2017 at 3:38 PM
To: yaniv@luminasystems.com, Safa Gelardi <safagelardi@gmail.com>

Good afternoon Yaniv.

It was a pleasure meeting with you and your team today.

As discussed we need a website for IME Guard Dog with a significant amount of content to be taken from IME Watchdog.

The front end of the website is not complicated, something modern. Thinking the color scheme should be dark blue/ light blue/ white - font maybe Veranda or maybe you have a suggestion.

The areas that need improvement are the booking area and client area. A new area needs to be created for the Guard Dogs or GD.

Many of our current clients are baffled by the format and just email me.

Clients should be able to log on and book an ime for whatever time they need. We can go over a template and they should be able to see their past reports. Many clients will not want to take these steps and I should be able to enter the information in manually.

A majority of our IMEs are booked via email and the IMEs are assigned to the Watchdogs via Google calendar. I would like something more sophisticated and customized. We cannot really franchise and tell people they have to use Google calendar. The new calendar system should generate the necessary email to both the client and Guard dog.

After the IME Guard dog should be able to upload their report in a word format and I will make any necessary changes before uploading it to be send to the client as a pdf.  This way we will be better able to track reports. Sometimes a report is not needed, the client doesn't show, or the office made a mistake or something, so there should be an option for that for the Guard dog.

We should be able to run a report showing how many IMEs has been assigned to each GD, how many reports they uploaded and what they still owe. IMEs could be over one hour and so the GDs should have to enter in their time at each ime. This will make paying them easier. GDs are paid a different rate based on a number of factors, so I should be able to enter their rate and after they put in their time the dollar amount is generated. At the end of the month a payroll form is generated and they can be paid.

We should also be able to run a report based on who the doctor was and the law firm.

Billing needed to be capable with Quick-books.

I look forward to working with you.

Adam M. Rosenblatt

 **Gmail**

**Safa Gelardi <safagelardi@gmail.com>**

---

## What are your thoughts on this kind of struct

---

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                                    Wed, Jun 28, 2017 at 2:50 PM
To: "safagelardi@gmail.com" <safagelardi@gmail.com>

Equity payouts paid quarterly on January 15th, April 15th, July 15th, and October 15th. If Adam was paid more salary in the previous quarter than is due him under the terms set forth, the additional salary collected will be subtracted when calculating his equity payout.

When quarterly profit available to shareholders after salary equals $25,000 or less:

Adam's salary $7,000/month
Adam's equity = 10%
Investors equity = 90%

When quarterly profit available to shareholders after salary equals $25,000 to $50,000:

Adam's salary $5,000/month
Adam's equity = 20%
Investors equity = 80%

When quarterly profit available to shareholders after salary equals $50,000 to $75,000:

Adam's salary $4,000/month
Adam's equity = 30%
Investors equity = 70%

When quarterly profit available to shareholders after salary equals $75,000 to $100,000:

Adam's salary $3,000/month
Adam's equity = 40%
Investors equity = 60%

When quarterly profit available to shareholders after salary equals $100,000 or more:

Adam's salary $2,000/month
Adam's equity = 50%
Investors equity = 50%

Thank you

---

Gmail - What the invoice looks like

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## What the invoice looks like
2 messages

**Adam Rosenblatt** <adammrosenblatt@gmail.com>                                Wed, May 3, 2017 at 3:59 PM
To: Safa Gelardi <safagelardi@gmail.com>

**2 attachments**

 **Ortho Queens.pdf**
61K

 **Neuro City.pdf**
61K

An official website of New York State

Here's how you know ⌄



🔍

# Department of State
## Division of Corporations

## Entity Information

---

| Return to Results | Return to Search |
|---|---|

**Entity Details** ⌃

**ENTITY NAME:** IME GUARDDOG INC

**DOS ID:** 5131773

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 05/04/2017

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 05/04/2017

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** PAST DUE DATE

**COUNTY:** QUEENS

**NEXT STATEMENT DUE DATE:** 05/31/2019

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** THE FIVE PILLARS FINANCIAL SERVICES LTD

**Address:** 508 72ND STREET, BROOKLYN, NY, UNITED STATES, 11209

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:** THE FIVE PILLARS FINANCIAL SERVICES LTD

**Address:** 508 72ND STREET, BROOKLYN, NY, 11209

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00000 |

Agencies App Directory Counties Events Programs Services

AFFIDAVIT OF YEHAD ABDELAZIZ

STATE OF NEW YORK

COUNTY OF KINGS

I, Yehad Abdelaziz, being duly sworn, depose and state under penalty of perjury:

1. I am the owner and operator of Five Pillars Financial Services LTD, a professional business services provider in the State of New York. I am over 18 years of age and make this declaration based on personal knowledge.

2. In or around May 2017, I was contacted directly by Adam Rosenblatt, who engaged my company to incorporate a business entity under the name IME Guard Dog Inc.

3. I completed the filing of the corporation IME Guard Dog Inc. on or about May 4, 2017, based on Mr. Rosenblatts request and with the required information and payment provided directly by him.

4. As a matter of strict company policy, Five Pillars Financial Services LTD does not and would never open or file a corporation for one person on behalf of someone else. The person requesting the formation must provide their own identifying information and payment.

5. Therefore, I confirm that Adam Rosenblatt was the only individual involved in the request, payment, and formation of IME Guard Dog Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of _____, 2025.

_____

Yehad Abdelaziz

Owner, Five Pillars Financial Services LTD

Sworn to before me this ___ day of _____, 2025.

_____

Notary Public

**ASHRAF A. HANNO**
Notary Public, State of New York
No. 01HA6313974
Qualified in Queens County, Filed NYC County
Commission Expires Nov. 3, 2026

# Debra A. Pollack, M.D.

### *Diplomate of the American Board of Psychiatry and Neurology*

*2114 Williamsbridge Rd, Bronx, NY, 10461*

Examination Date: June 14, 2023
Report Date: June 23, 2023

Ehrlich Gayner
150 Broadway
Suite 909
New York, NY 10038

Attn: Melina Quispe

| | |
|---|---|
| Re: | Almonte, Jose |
| Claim #: | 02330 |
| EW/GC Case #: | 22001175 |
| DOI: | 3/19/20 |
| Specialty Requested: | Neurology |
| Request Type: | Liability IME |

To whom it may concern.

I performed an independent neurology examination of the claimant noted above, on 6/14/23 in my Bronx, New York office. The claimant did present with a valid photo identification which was witnessed and copied. The claimant drove to the examination today. The claimant was accompanied by Joel Lachapelle, a legal representative. Per his attorney's advice, the claimant did not fill out the intake forms.

The following are findings of the examination:

## WORK HISTORY

The claimant was working as a taxi driver when the 3/19/20 incident occurred. He states that he missed time from work following the accident. Mr. Almonte is currently working at the same job with the same duties.

## INJURY HISTORY

Mr. Almonte was involved in an accident on 3/19/20. He did not provide any information regarding how the accident occurred, injuries he sustained or any emergency treatment he may have received. (*Records indicate the claimant was involved in a motor vehicle accident on 3/19/20 in which he was a restrained driver of a taxi that as struck from the right side resulting in headaches, neck pain, and low back pain.*)

## PAST MEDICAL HISTORY

Mr. Almonte did not provide any information regarding his past medical history.

Case 1:22-cv-01032-PKC-JRC    Document 551    Filed 07/14/25    Page 75 of 99 PageID #: 9975

SUPREME COURT OF THE STATE OF NEW YORK          FILED:
COUNTY OF NEW YORK                              INDEX NO:
------------------------------------------------------------------X

**MIGUEL RAMOS,**                               **SUMMONS**

                Plaintiff(s),          Plaintiff designates
                                                New York County
     -against-                        as the place of trial

**SCIAME CONSTRUCTION, LLC and OGDEN**          The basis of venue is:
**CODMAN, LLC,**                                Situs of Occurrence

             Defendant(s),
------------------------------------------------------------------X

TO THE ABOVE-NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a
copy of your answer, to, if the complaint is not served with the summons, to serve a notice of
appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons,
exclusive of the day of service (or within thirty (30) days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
herein.

Dated: New York, New York
       April 8, 2021

The nature of this action is for injuries sustained as a result of the Defendants' negligence.
The relief sought is monetary damages.

                       **LIAKAS LAW, P.C**

                       **/s/**

                       BY: Dean N. Liakas, ESQ.
                       *Attorney for Plaintiff*
                       65 Broadway, 13th Floor
                       New York, New York 10006
                       (212) 937-7765

**Failure to respond, a judgment will be against you, by default and interest from July 9, 2020.**

**Defendant(s) Addresses:**
**SCIAME CONSTRUCTION, LLC**          **OGDEN CODMAN, LLC**
c/o Frank J. Sciame                   C/O Blumberg Excelsior Corporate Services, Inc.
14 Wall Street                        16 Court Street, 14th Floor
New York, New York 10005              Brooklyn, New York 11241

# NEW YORK ORTHOPAEDIC SPINAL ASSOCIATES
## IRA J. CHERNOFF, M.D.
## MARC CHERNOFF, M.D.
### 897 Park Avenue
### Suite E
### New York, New York 10075
### (631) 246-6100

## INDEPENDENT MEDICAL EXAMINATION

January 10, 2024

Lewis Johs Avallone Aviles, L.L.P.
1377 Motor Parkway
Suite 400
Islandia, N.Y. 11749

Re:          **Miguel Ramos**
LJAA File No.:    0416.1016.0000
Date of Accident: 07/09/2020

To Whom It May Concern:

Miguel Ramos presented to my Manhattan office on January 10, 2024 for the purpose of an Independent Medical Examination. Mr. Ramos's New York State Driver's License was presented and photocopied for the purpose of picture identification. Carmen Dionico, an interpreter, was utilized via telephone speakerphone, who provided Spanish translation throughout this examination. He was accompanied by Salvador Matteo from Client Liaison Services, representing his attorney's office, who was present throughout this evaluation. A questionnaire that was provided to the claimant was not filled out, as the attorney representative stated, and the claimant confirmed that as per his attorney, he was not to fill out any forms in writing, and thus an oral history was obtained.

He is a 38-year-old right hand dominant male, who presents with a chief complaint of lower back and left foot pain. He has no other current complaints. He relates this to a work injury on July 9, 2020, when he was on a scaffold, carrying a bin on his right shoulder. He states that the scaffold went down, and that he hurt his right shoulder as the bin compressed into it. He notes that the scaffold did not collapse, and that he did not fall, but describes that when the scaffold lowered, the weight of the bin was on his right shoulder. He states that that afternoon, he went to a clinic. He was asked who referred him to the clinic, and who brought him to the clinic, but as per his attorney

Paul L. Kuflik, MD
*Associate Professor*
*Mt. Sinai School of Medicine*
*Spine Surgery*
*www.Drpaulkuflik.com*
*516 739 9270*

***Office Address:*** *955 Fifth Ave, New York, NY 10075*
*1122 Franklin Ave. Suite 106, Garden City, NY 11530*

***Mailing Address:*** *Please send all correspondence to:*
*912 Harvard Ct. Woodmere, NY 11598*

May 12, 2023

Coffey, Modica, O'Meara, and Capowski, LLP
200 East Post Road, Suite 210
White Plains, NY  10601

**Re:  Nicholas Bucci**
**File #2020000842**
**Express #41-528**
**Date of Loss:  3/29/2019**

To Whom It May Concern:

I had the opportunity to examine Mr. Bucci at my office at 955 Fifth Avenue, New York City, New York, 10075, at approximately 8:45 AM on May 3, 2023.  He was accompanied by Mr. Salvador Mateo, a representative of his attorney's office.  Mr. Mateo was present throughout and took notes.  Mr. Bucci's New York State commercial driver's license was used for identification.  Covid precautions were in place.  Mr. Bucci acknowledged that he understood he was there to be examined and not treated.

The history as obtained from Mr. Bucci is that he is a 49-year-old, right-hand-dominant construction worker for Verizon injured on the job on 3/29/2019.  He claims he was hit by a 24-inch bolt that hit him in his right arm and then into the face with associated loss of consciousness for several minutes.  He reports that he was taken by ambulance to Lincoln Hospital where he was stitched and released.  He then went to Orange Regional Hospital and underwent surgery on his right arm.  He claims he injured his neck, head, face, teeth, right hand, right wrist, and lower back.

He reports that his neck pain began immediately.  He reports he was treated with physical therapy, injections and then underwent surgery.  He reports that he had a pinching pain in the right side of his neck radiating to the right shoulder to the right top of his chest, and to the right upper extremity.  He reports that he was treated with neck surgery by Dr. DeMoura. He reports the surgery was of no benefit to him.  He claims that prior to the surgery his pain was a 9 on a scale of 0 to 10.  The pain

1

**Re:  Nicholas Bucci**
**File #2020000842**
**Express #41-528**
**Date of Loss:  3/29/2019**



8:19

‹ 53

R

Ron Rosenblatt ›

Safa its Doc you guys are something else you took my idea IME Watchdog then you took my idea malpractice screening. Can't you come up with an original idea I guess not. I am not angry because I know there are no doctors than have 30+ years of just doing medical malpractice. No physician you hire can give you the quality of work that i can provide. I thought of suing you based on our handwritten agreement which all three of us signed or i can build a new website and it will be of such high quality that it will be the premier website but then i thought maybe i should give you another chance to do what's not only right but will be very successful. If you use just any doctor you will find that patients will not be happy and it will end up failing. In order to



2:29

 105    **AR**    

Adam ›

> But I guess only u know what's really best for you and your family

Plus they could get rid of Jamal any time

> Does he have any ownership

Idk they offered me 5% a year for 3 years

So 5, 10 and the. 15

> That's not bad

> What was the salary

But they control everything would be like here but way less oversight

Was 100k

> Omg.

> U have major issues

     iMessage    

**David M. Erlanger, Ph.D., ABPP**

Psychological and Neuropsychological Assessment Services, P.C .
*Board Certified Clinical Neuropsychologist*
111 East 75th Street
Suite# 1B
New York, NY 10021

Clinical & Forensic
Children & Adults

Tel: (212) 396-2766
Fax: (212) 396-2762

July 13, 2023
Law Office of Eric D. Feldman-NY
485 Lexington Avenue
New York, NY 10017

## NEUROPSYCHOLOGICAL EVALUATION

Name: Victoria Targia
Date of Birth: September 29, 1980
Date of Incident: October 18, 2019
Date of Examination: July 6, 2023
Claim #: IIK8637

To Whom It May Concern:

Victoria Targia was evaluated to determine current neuropsychological status in regard to a 10/18/19 accident in which she reportedly fell and hit her head. Ms. Targia stated that she understood the general nature of the evaluation. She was advised of the limitations of an independent neuropsychological evaluation and agreed to proceed. She was advised that this evaluation did not establish a doctor-patient relationship and that there would be no treatment recommendations made by the examiner. Ms. Targia was informed that her level of effort would be assessed during the course of the examination. Approximately 10 minutes were used to review these issues, during which time she was provided with opportunities to ask questions and discuss all of these topics.

This evaluation was observed in its entirety by Danny Cai, who identified himself as an employee of Client Liaison Services. Mr. Cai instructed the examiner that he was not allowed to ask questions about Ms. Targia's routine activities, which is a standard component of any neuropsychological evaluation, limiting the conclusions and opinions expressed herein. When the examiner explained this limitation, Mr. Cai did not call his employer for guidance or clarification.

Plaintiff: IME WatchDog, Inc.,

vs.

Case No. Civil Action No. 1:22-cv-1032 (PKC) (JRC)

Defendant: Safa Abdulrahim Geraldi, et al.,

---

# AFFIDAVIT

## (SWORN STATEMENT)

Date: March 24 2023

My legal name is **Yaniv Liron** ("Affiant") and acknowledge I am:

a.) �: 42 years old
b.) Address: 99 Wall Street 1536, New York, New York, 10005
c.) Residency: New York

Being duly sworn, hereby swear under oath that: My company, Lumina Systems Inc, was contacted by Adam Rosenblatt, in regards to building him a website for a company named "IME Guard Dogs".

My company replied with a proposal. This website was never built, no follow up was ever done and no transactions ever occurred with him.

That was the extent of my contact with Adam Rosenblatt.

Months later, Safa Geraldi, requested for my company to build her a website named IME Companions.

That website was built, however currently a different company is working on the website and has renewed it.

I am currently in Israel, when I received the subpoena I was in Israel as it was delivered to a mail service handling the company's mail.

Under penalty of perjury, I hereby declare and affirm that the above-mentioned statement is, to the best of my knowledge, true and correct.

Affiant's Signature: _____ *Lu*⬜.. 03/24/2023 _____

FILED: BRONX COUNTY CLERK 10/14/2022 10:53 AM
INDEX NO. 34069/2019E
NYSCEF DOC. NO. 216
RECEIVED NYSCEF: 10/14/2022

Case 1:22-cv-01032-PKC-JRC    Document 551    Filed 07/14/25    Page 82 of 99 PageID #: 9982

FILED: APPELLATE DIVISION - 1ST DEPT 10/14/2022 11:57 AM
2022-04531
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 10/14/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------------------------------X

NICHOLAS BUCCI,                                    Index No.: 34069/2019E

                      Plaintiff(s),

                                    **NOTICE OF APPEAL**

     -against-

CITY OF NEW YORK, HUNTS POINT
COOPERATIVE MARKET, INC., HENRY HAAS,
INC., INTERCONTINENTAL TRUCK BROKERAGE
CORP., JOEL ENCARNACION, HUNTS POINT
TERMINAL PRODUCE COOPERATIVE
ASSOCIATION, INC. and HUNTS POINT TERMINAL
PRODUCE MARKET,

                      Defendant(s).

-------------------------------------------------------------------------X

CITY OF NEW YORK and HUNTS POINT
COOPERATIVE MARKET, INC.,

              Third-Party Plaintiff,

     -against-

VERIZON NEW YORK, INC.,

             Third-Party Defendant.

-------------------------------------------------------------------------X

COUNSEL:

     **PLEASE TAKE NOTICE**, that Defendants, HENRY HAAS, INC.,
INTERCONTINENTAL TRUCK BROKERAGE CORP. and JOEL ENCARNACION,
(Defendants/Appellants) hereby appeal to the Appellate Division of the Supreme Court of the
State of New York, First Judicial Department, from the Decision and Order of the Supreme
Court of the State of New York, County of Bronx, I.A.S. Part Honorable Lucindo Suarez, J.S.C.,
dated September 26, 2022, and entered on September 28, 2022 by the Bronx County Clerk in this

action, which was served by Defendants CITY OF NEW YORK and HUNTS POINT

TERMINAL PRODUCE COOPERATIVE ASSOCIATION, INC., with Notice of Entry on or

about September 30, 2022, which denied Defendants/Appellants, HENRY HAAS, INC.,

INTERCONTINENTAL TRUCK BROKERAGE CORP. and JOEL ENCARNACION's motion,

pursuant to CPLR 3212 and granted Plaintiff/Respondent's motion pursuant to CPLR 3212

against Defendants/Appellants. Defendants/Appellants appeal from each and every part of said

Decision and Order.


Dated:  White Plains, New York
        October 13, 2022


                                        Yours, etc.

                                        LAW OFFICE OF THOMAS K. MOORE

                                        By: Mary E. Marzolla
                                        Attorneys for Defendants
                                        HENRY HAAS, INC., INTERCONTINENTAL
                                        TRUCK BROKERAGE CORP. and JOEL
                                        ENCARNACION
                                        **Mailing Address**
                                        P.O. Box 2903
                                        Hartford, CT 06104-2903
                                        (914) 285-8500


TO:     ZAREMBA BROWN PLLC
        Attorney(s) for Plaintiff
        40 Wall Street, 52nd Floor
        New York, NY 10005
        (212) 380-6700

Start Time: 2/22/2022 5:44:03 PM(UTC-5)

Last Activity: 2/22/2022 5:49:51 PM(UTC-5)

Participants: +17187494732 MAMA👩🏽💛, +17706282828 Tom DuFore, +13476652160 Liar Snake

From: +17187494732 MAMA👩🏽💛 (owner)

Timestamp: 2/22/2022 5:44:03 PM(UTC-5)

Source App: Native Messages

Body:

Dear Tom, Hope all is well with your family. I am texting you and Adam Rosenblatt. As I mentioned to you once before I believe he is interested in purchasing a franchise. He has some questions that he would like to ask you. Please schedule a time where we can all speak. Thank you.

------------------------------

From: +17706282828 Tom DuFore

Timestamp: 2/22/2022 5:48:13 PM(UTC-5)

Source App: Native Messages

Body:

Hi Safa, Thursday at 2:30pm works and so does Friday between 1pm and 3pm.

------------------------------

From: +13476652160 Liar Snake

Timestamp: 2/22/2022 5:48:52 PM(UTC-5)

Source App: Native Messages

Body:

Thursday 2:30

------------------------------

From: +17706282828 Tom DuFore

Timestamp: 2/22/2022 5:49:02 PM(UTC-5)

Source App: Native Messages

Body:

Perfect!

------------------------------

From: +17187494732 MAMA 👩🏽 💛 (owner)

Timestamp: 2/22/2022 5:49:37 PM(UTC-5)

Source App: Native Messages

Body:

Great we will speak at 230. Tom will call me and I will connect Adam to the call

------------------------------

From: +13476652160 Liar Snake

Timestamp: 2/22/2022 5:49:51 PM(UTC-5)

Source App: Native Messages

Body:

Ty

------------------------------

```
                                        :
                                        :      For Use of Clerk
                                        :
                                        : .. .. .. .. .. .. .. .. .. ..
```

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**
_____X,

SAURY NOVA VARGAS,                          Index No. 20390/2015E

                    Plaintiff,

                                            **NOTE OF ISSUE**

       -against-

3750-62 EAST TREMONT HOLDING CORP.,

                    Defendants,
_____X
3750- 62 EAST TREMONT HOLDING CORP.,

                    Third- Party Plaintiff,

       -against-

3758 E. TREMONT REST CORP. d/b/a
VAPOR LOUNGE,

                    Third-Party Defendant,
_____X
                    **NOTICE FOR TRIAL**

_X_ Jury trial demand
       _X_ Of all issues
       __ Of issues specified below or attached hereto
___ Trial without jury
Filed by attorneys for the Plaintiff
Date summons served: <u>January 22, 2015</u>
Date service completed: <u>January 23, 2015</u>
Date issue joined: <u>April 29, 2015</u>

### NATURE OF ACTION OR SPECIAL PROCEEDING

<u>X</u> Tort
       __ Motor Vehicle Negligence
       __ Medical Malpractice
       _X__ Other Tort
___ Contract

___ Contested Matrimonial
___ Uncontested Matrimonial
___ Tax Certiorari
___ Condemnation
___ Other (Not Itemized Above) _____
___ This action is brought as a class action

___ This is a medical malpractice action: panel procedures
___ Prescribed by the court rules pursuant to Judiciary Law section 148(a)
   ___ Have been completed ___ Have not been completed
   _X_ Amount demanded - $5,000,000.00
     Other relief – COSTS AND DISBURSEMENTS
     Preference claimed under
     Insurance carrier(s), if known – Allstate Insurance Company

DATED:  Bronx, New York
    January 19, 2024

           Marina Tasevich, Esq.
           **LAW OFFICE OF**
           **ALEXANDER BESPECHNY**
           Attorney for Plaintiff
           **SAURY NOVA VARGAS**
           2360 Westchester Avenue
           Bronx, NY 10462
           (718) 792-4800

TO:  **MARKS, O'NEILL, O'BRIEN**
    **DOHERTY & KELLY, P.C.**
    Attorneys for Defendant and Third-Party Plaintiff
    **3750- 62 EAST TREMONT HOLDING CORP.**
    600 Third Avenue, Suite 1501
    New York, NY 10016
    (212) 967-0080

## Jessica B. Gallina, M.D., PC

Orthopaedic Surgery                              240 Central Park South, Suite 2-O, New York, NY 10019
Foot and Ankle Surgery                                  Tel: (212) 265-0255 — Fax: (212) 265 0233

541 Cedar Hill Avenue, Wyckoff, NJ 07491
Tel: (201) 904-2121 — Fax: (201) 904-2125

November 07, 2023
Marci Mitkoff, Esq.
Marks, O'Neill, O'Brien, Doherty & Kelly, PC
708, 3rd Avenue, Suite 2500
New York, NY 10017


**INDEPENDENT MEDICAL RE-EXAMINATION**


**CLAIMANT NAME:**      Nova Vargas, Saury
**DATE:**               11/07/2023
**DATE OF LOSS:**       01/04/2015
**CLAIM #:**            1279.104637
**FILE #:**             1279.104637

Dear Ms. Mitkoff,

I am a New York State Licensed and Board Certified Orthopedic Surgeon.  At your request, an
Independent Orthopedic Re-examination was performed on November 07, 2023, in my
Manhattan office at 240 Central Park South, Suite 2-0, New York, NY, 10019 in New York
County.  The findings of that evaluation are presented as follows.

This is a follow-up to my independent medical evaluation performed on March 03, 2020.

The claimant  Saur_  Nova Var_as  was identified with a valid New York State Driver's
License.  Clara Vazquez, a legal representative was also present and identified with a valid New
York State Driver's License.

Consent to evaluation was explained to Mr. Vargas.  I explained that you requested that I
conduct an Independent Medical Evaluation.  I discussed the purpose of my evaluation and that I
would not be providing any treatment.  I explained that doctor/patient confidentiality did not
exist for the purpose of this evaluation and that I would submit a report of my findings.  I
instructed him to let me know if he had pain during the examination and we would then stop the
examination.  He stated that he understood and agreed to proceed with the examination.

# Home    Services    Photos    Videos    Reviews

 **Daniella Levi & Associates, P.C.**

Apr 13, 2015 · 🌐

Malpractice Watchdog
This is not another law firm, but a panel of physicians who will screen your potential medical malpractice cases. Our team will provide assistance and advice throughout the litigation process, ensuring your complete confidence in each case. Our services include:

    Case Evaluation
Let us thoroughly review the medical records of a potential case. We'll generate a comprehensive report that will be incredibly valuable throughout the litigation process.

    Ongoing Support
Let us help you through the discovery and litigation process as well. Everything you need to learn with respect to medicine will be explained to you in simple terms that any lawyer or juror will be able to understand.

    Experience You Can Trust
Don't get your case reviewed by a lawyer. Get your case reviewed by a true medical professional. Our panel of physicians has over 30 years of experience helping attorneys with their medical malpractice cases.

📞 Call Now

**IME Legal Reps**

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Sunday, July 3, 2022 10:48 PM |
| **To:** | Charles Gucciardo; Paul LaClair; Jon-Paul Gabriele; Daniel Maltese; Brett Silverberg; Kimberly Carrizo |
| **Subject:** | Bribery of IME company Federal Case |

Federal Judge finds IME Companions bribered competitor's employee.

https://casetext.com/case/ime-watchdog-inc-v-gelardi

## IME Legal Reps

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Tuesday, July 19, 2022 10:06 PM |
| **To:** | kalkadhib@gmail.com |
| **Subject:** | Defense firms are armed against IME Companion observers |

A friend of mine at a defense firm recently sent me this from their rogue list:

"Haven't we been annoyed by that company, IME Companions, for sending their agents to our IMEs?

This can now allow us to question the credibility of their agents and company. In a recent Court Order, a Federal Judge ruled on an injunction of franchising the IME Companions business. According to the Order, the Founder and CEO did not even know what an IME was before bribing a competitor's employee for information.

In summary, IME Companions bribed a competitor's employee to obtain information to create the IME Companions business and help run the business. Ultimately what is revealed here, is the owner has no legal background and didn't even know what an IME was until this corruption/bribery began. We can use this when questioning the credibility of IME Companions. Remember she pleaded the fifth when asked about Zelle payments to the competitor's employee."

Unfortunately defense firms will now gear up with this information. Transcript of the Show Cause hearing attached.

-Kashif

Here's the attachment as a link for your review:
2022APR 04 IME V GELARDI 22CV1032 PKC (2).pdf
Add your comments and collaborate with others in real time. You don't need to download Acrobat or sign up to access the file.

**IME Legal Reps**

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Sunday, July 31, 2022 6:21 PM |
| **To:** | Kashif Alkadhib |
| **Subject:** | Preliminary Injunction of IME Companions |

Judge finds that the IME Companions business was started by misused trade secrets. See the Judge's order for preliminary injunction.

-Kashif

Here's the attachment as a link for your review:
USCOURTS-nyed-1_22-cv-01032-0.pdf
Add your comments and collaborate with others in real time. You don't need to download Acrobat or sign up to access the file.

1

**IME Legal Reps**

| | |
|---|---|
| **From:** | Kashif Alkadhib <kalkadhib@gmail.com> |
| **Sent:** | Tuesday, July 12, 2022 8:16 PM |
| **To:** | Charles Gucciardo; Paul LaClair; Jon-Paul Gabriele; Daniel Maltese; Brett Silverberg; Kimberly Carrizo |
| **Subject:** | Re: Bribery of IME company Federal Case |

Federal Judge finds IME Companions/Safa Abdulrahim Gelardi bribed competitor's employee. Federal Judge now orders forensic analysis and investigation of ALL devices owned and used to operate the Abdulrahim Gelardi business and all communications of Safa Abdulrahim Gelardi.

https://casetext.com/case/ime-watchdog-inc-v-gelardi
https://www.pacermonitor.com/case/43675475/IME_WatchDog,_Inc_v_Gelardi_et_al

On Sun, Jul 3, 2022 at 11:47 PM Kashif Alkadhib <kalkadhib@gmail.com> wrote:
Federal Judge finds IME Companions bribered competitor's employee.

https://casetext.com/case/ime-watchdog-inc-v-gelardi

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

## IME REPORT
2 messages

**Ron Rosenblatt** <ronrosenblatt444@gmail.com>                     Sun, Aug 13, 2017 at 11:24 AM
To: Safa Gelardi <Safagelardi@gmail.com>

Clients Name:

Attorney or Name of Law Firm:

Exam Date:

Date of Accident:

IME physician:

Background check of physician:

Description of the facility:

Exam start time:
Exam end time:

Length of exam:

Intake details:

Clients complaints:

Exam (detailed description of physical examination):

Clients surgical history prior to accident:

Detailed description of clients injury

Type of accident:

List of clients medical problems:

**Safa Gelardi** <safagelardi@gmail.com>                            Wed, Jun 22, 2022 at 5:36 PM
To: Jonathon Warner <jdwarner@wslaw.nyc>

this is from ronald rosenblatt, explaining what is important and what should be recorded in the report

[Quoted text hidden]

 Gmail

**Safa Gelardi <safagelardi@gmail.com>**

---

## Law firms I work with most recently
1 message

**Ron Rosenblatt** <ronrosenblatt444@gmail.com>                     Sun, Oct 1, 2017 at 5:40 PM
To: Safa Gelardi <Safagelardi@gmail.com>

1) Morton Povman PC (Bruce Povman)

2) Kahn, Gorden, Timko, and Rodriguez, LLP

3) Peter Assail, Esq

4) Daniella Levi & Associates PC

5) James Newman PC

6)  Ricardo Rengifo, Esq

7) Lipsig, Menus & Moverman, PC

8) Ira Folengaren, Esq

9) Khavinson & Associates, PC

10)  Smiley & Smiley, PC

11)  Alan Ripka Esq.

12)  Novo Law Firm (Ilya Novofastovsky, Esq)

13)  Thomas McKenna, Gainey McKenna &
Egleston, LLP

14)  Albert, Slobin, & Rubinstein, LLP

15)   Lambros Lambrou, PC

Call me

 Gmail

Safa Gelardi <safagelardi@gmail.com>

## Mission Statement
2 messages

**Ron Rosenblatt** <ronrosenblatt444@gmail.com>                                      Sun, May 7, 2017 at 10:55 PM
To: Safa Gelardi <Safagelardi@gmail.com>

    This is not a law firm, but a panel of board certified physicians who will advocate for your substandard medical care. We are dedicated to help you discover the truth.  If you or a loved one is a victim of medical malpractice we are going to screen your case, not only will you learn the truth but you will receive a detailed report as to the specifics that caused your injuries or the wrongful death of a loved one.  While lawyers are necessary to litigate your case they do not possess the education and experience to determine the negligent care that has caused you horrible pain and suffering, lost earnings, and have changed your lives forever.  For the cost of a doctors office visit you will discover what the doctors and hospitals have been reluctant to tell you.  Most doctors who cause you a terrible injury wil try to cover up their physician errors.  Medical malpractice is now the third leading cause of untimely death in America.  When an autopsy is done there are 4 manners of death and they include homicide, suicide, accidental death, natural (illness), but there is a fifth manner of death which is physician error or medical malpractice.  This fifth manner of death has been excluded to protect physicians, hospitals, and pharmaceutical companies.   This is the first time in history that a patient or their families can discover what really happened.  It is our goal to expose the truth and we will help you understand why you have a meritorious case or no real malpractice occurred.  We realize that not every untoward or bad outcome is due to professional negligence but there are so many patients that are harmed or die from a physician error that the numbers are staggering.  For example a patient admitted for elective surgery sbould receive prophylactic therapy to prevent a deep venous thrombosis which if not recognized can cause a massive pulmonary embolism and death.  Last year alone over 400,000 patients developed this disease and more than half died.  These patients got sick and many died simply because the hospital failed to provide DVT prophylaxis using a low dose of heparin or mechanical prophylaxis using venodyne boots.  Many babies are born with severe brain damage or cerebral palsy because the obstetrician failed to diagnose fetal distress and should have performed an emergency cesarean thereby preventing hypoxic brain damage.  If you believe you or a loved one is a victim of negligent medical care then tell us what happened and we will advocate for you.  Each case will be carefully screened and if there is any evidence of malpractice we will help you, first to obtain the medical records which will be reviewed by the appropriate specialist and we will help you find a real medical malpractice attorney in your area.  This is the first and only website designed to help you not only to discover the malpractice but we will make sure you are given a list of prrscreened attorneys that actually specilize in medical malpractice.

**Safa Gelardi** <safagelardi@gmail.com>                                               Mon, Apr 3, 2023 at 4:09 PM
To: Jonathon Warner <jdwarner@wslaw.nyc>

From the doc

[Quoted te  t hidden]

**EXHIBIT LIST – MOTION TO STRIKE OR DISMISS**

1. **Exhibit 1** – NYS Business Entity Records: Adam Rosenblatt formed IME Guard Dog
   Inc. (Page 3)

2. **Exhibit 2** – Ronald Rosenblatt Mission Statement Email for Malpractice Watchdog
   concept (Page 6)

3. **Exhibit 3** – Deleted Facebook Screenshot from Daniella Levi promoting Malpractice
   Watchdog (Page 7)

4. **Exhibit 4** – Email from Ronald Rosenblatt to Defendant outlining IME Report format
   (Page 8)

5. **Exhibit 5** – Email from Adam Rosenblatt to web developer Yaniv Liron pitching IME
   Guard Dog using Watchdog material (Page 9)

6. **Exhibit 6** – Web Developer Affidavit from Yaniv Liron confirming Adam's direction
   (Page 11)

7. **Exhibit 7** – Five Pillars Affidavit from Jay re: branding & working with Adam (Page 12)

8. **Exhibit 8** – Resume email from Defendant to Subin Associates referencing Adam
   (Page 13)

9. **Exhibit 9** – Adam's Resume labeled "Quantified Resume with AC Ideas" (Page 14)

10. **Exhibit 10** – Adam Rosenblatt's email proposing franchise purchase of IME
    Companions (Page 15)

11. **Exhibit 11** – Email from Adam forwarding marketing materials for IME Guards /
    Jamal Aaron (Page 16)

12. **Exhibit 12** – LawCash salary offer text from Adam Rosenblatt (Page 17)

13. **Exhibit 13** – Text message from Adam Rosenblatt confirming he met with LawCash
    (Page 18)

14. **Exhibit 14** – Appeal document from David Bloomfield's NY Dept. of Labor
    unemployment dispute (Page 19)

15. **Exhibit 15** – Email from Adam referencing Bloomfield appeal and firing (Page 20)

16. **Exhibit 16** – Adam using IME Companions contractors (Zelle screenshot or text)
    (Page 21)

17. **Exhibit 17** – Carlos Roa Affidavit filed with motion for sanctions (Page 22)

18. **Exhibit 18** – Audio Transcript: Carlos Roa stating Defendant was under FBI investigation (Page 23)

19. **Exhibit 19** – Screenshot of Ronald Rosenblatt's text claiming ownership of both Watchdog concepts (Page 24)

20. **Exhibit 20** – Emails between Adam and Defendant (e.g., "What are your thoughts on this structure?") (Page 25)

---

**Note:**

Numerous **other emails, internal messages, and slanderous client communications** are cited in the body of the Motion. These communications are attached as part of the record and support the claims raised but are **not each individually assigned exhibit numbers** due to volume.

*Carlos Roa Bio from his social media  copied and pasted (easily verifiable) Instagram*

*President, Operations*(718) 463-2320

As the President of Operations, Carlos Roa brings a formidable blend of academic prowess and entrepreneurial acumen to the table. Armed with a Bachelor's in Health Science from Stony Brook University (2014), a Master's in Public Health from the same institution in 2016, and a Doctorate of Law specializing in Sports Law from Universidad Carlos III de Madrid in 2019, his academic achievements underscore his dedication to diverse fields. Carlos is a seasoned entrepreneur, renowned for founding a boutique international sports management firm. His firm boasts an impressive clientele comprising athletes in Soccer, Track and Field, and Tennis. Notably, he serves as the International Counsel to the Panamanian Olympic Committee and the Panamanian National Soccer Team, leveraging his expertise in negotiations involving athletes, sponsorships, and clothing brands. Before assuming his current role at IME Watchdog, Carlos honed his skills at one of New York City's largest Personal Injury Law firms, overseeing the IME Department. His professional journey attests to his multifaceted expertise and comprehensive understanding of the sports industry and legal realms. Outside the professional sphere, Carlos finds solace and passion in a range of activities, including working out, engaging in sports, and embarking on adventures through travel. His dedication to fitness and his intrinsic connection to sports amplify his well-rounded persona, complementing his dynamic role in operational leadership.