UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
IME WATCHDOG, INC.,

                        Plaintiff,

    - against -

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, GREGORY ELEFTERAKIS,
ROMAN POLLAK, ANTHONY BRIDDA,
IME COMPANIONS LLC, CLIENT EXAM
SERVICES LLC, and IME MANAGEMENT
& CONSULTING LLC,

                       Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-1032 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

The Court assumes familiarity with the underlying facts and extensive procedural history of this case. As relevant here, on February 29, 2024, the Court issued an Order of Attachment of the net proceeds from Safa and Vito Gelardi's ("Individual Defendants"[1]) sale of their Staten Island property, in order to satisfy any judgment Plaintiff secures in this matter.[2] (*See* First

---

[1] As of April 30, 2025, Individual Defendants have been proceeding *pro se* in this matter, following the withdrawal of their attorney, Jonathon Warner. (*See* 4/30/2025 (noting grant of Attorney Warner's motion to withdraw).) The case was then stayed for two months to allow Individual Defendants to retain new counsel, though Individual Defendants were not ultimately able to do so. (*See* 5/28/2025 Docket Order (extending stay of case to end on June 30, 2025); 7/11/2025 Minute Entry (confirming that Individual Defendants were unable to obtain new counsel).)

[2] Rather than deposit the proceeds of this sale into an escrow account, as the Court had ordered, (First Attachment Order, Dkt. 284), Individual Defendants entered into a "Rent to Buy" agreement with the Staten Island property's tenant, (Dkt. 379-4.) This action, along with other conduct by Individual Defendants, formed the basis of one of Plaintiff's sanctions motions, (Sanctions Mot., Dkt. 395), which the Court now denies. In declining to impose sanctions, the Court has considered the fact that all of the rent proceeds are going to a third party, "Mr. Cooper," who reportedly holds the mortgage. (Opp. to Sanctions Mot., Dkt. 407, at 6.) Thus, even assuming that Individual Defendants negotiated the "Rent to Buy" agreement to avoid attachment of sale

Attachment Order, Dkt. 284.) On March 8, 2024, the Court ordered Individual Defendants to "notify the Court within three (3) days of entering into any contract to sell their ownership interest in any other property, including the identity(ies) of the buyers and an anticipated closing date." (3/8/2024 Docket Order.) Since then, the Court has found Individual Defendants in contempt multiple times, and assessed tens of thousands of dollars in contempt sanctions against them. (Dkt. 394 (awarding attorneys' fees and costs after finding Individual Defendants in contempt); Dkt. 448 (finding Individual Defendants in contempt once more).) And Individual Defendants still owe approximately $30,000 plus interest to Berkeley Research Group, LLC, the neutral forensic examiner appointed by the Court on June 22, 2022. (2/14/2025 Scheduling Order, Dkt. 441; 4/2/2025 Minute Entry.)

In late April 2025, Plaintiff informed the Court that in February and April 2025, Individual Defendants had sold and/or listed for sale their two Pennsylvania properties, located at 9 Woods End, Lake Harmony, PA 18624 (the "Woods End property") and 5265 Milford Road, East Stroudsburg, PA 18302 (the "Milford property"). (Pl.'s 4/28/2025 Letter, Dkt. 472 (notifying the Court of the February 27, 2025 sale of the Woods End property); Pl.'s 4/30/2025 Letter, Dkt. 474 (notifying the Court that the Milford property was, at that time, listed for sale).) In violation of the Court's March 8, 2024 Order, Individual Defendants did so without informing the Court. On May 2, 2025, Plaintiff filed a motion requesting, among other things, that Individual Defendants accordingly be found in contempt and that the Court attach the proceeds of the sale of the Woods End property. (Pl.'s Mot., Dkt. 477.) On May 5, 2025, the Court granted this motion in part and ordered Individual Defendants to provide financial information that "include[d] details about the

---

proceeds from the Staten Island property, there is no evidence that the Individual Defendants are receiving any of the rent money or "proceeds" from the Staten Island property.

2

sale(s) of any real property since March 8, 2024." (5/5/2025 Order to Show Cause ("OTSC"), Dkt. 482, at 2.)  The Court also ordered Individual Defendants to show cause "why they should not be required to deposit all proceeds from any sales of their properties since March 8, 2024, with the Court Registration Investment System ('CRIS') during the pendency of this case." (*Id.* at 3.) Individual Defendants provided some, but not all, of the financial disclosures ordered by the Court.[3] (*Compare* 5/5/2025 OTSC, Dkt. 482, at 2 n.1 (requiring a fulsome disclosure of all of Individual Defendants' financial information from the preceding two years), *with* Dkts. 485, 487, 489–92 (providing only a partial disclosure of Individual Defendants' financial information).) Individual Defendants admitted that they had sold the Woods End property, but were silent as to the Milford property. (Dkt. 485.)

On May 30, 2025, the Court directed Individual Defendants to "deposit all proceeds of" the sale of their Woods End property into the CRIS. (Second Attachment Order, Dkt. 500, at 2.) The Court also ordered that, if Individual Defendants no longer had the proceeds of that sale, they had to "submit a detailed, itemized summary . . . explaining what they have done with the outstanding proceeds." (*Id.*) The Court further directed Individual Defendants to do the same with the proceeds of the Milford property, if that property had been sold, or if not, to advise the Court whether they intended to sell it. (*Id.*)

---

[3] The financial disclosures ordered in the 5/5/2025 OTSC were also previously ordered by the Court on April 2, 2025. (*See* 5/5/2025 OTSC, Dkt. 482, at 2 n.1 (explaining that "the [Individual Defendants] were previously ordered to provide" the summary of their financial information (quoting 4/2/2025 Minute Entry)).)  In the interest of attempting to move this unwieldy and ever-expanding case forward, the Court declines, at this time, to order Individual Defendants to more fully comply with its directive regarding the disclosure of their financial information. However, as sought by Plaintiff in the contempt motion filed on May 2, 2025, Individual Defendants face possible sanctions for this ongoing non-compliance. (*See* Pl.'s Mem., Dkt. 478, at 5–10.)

3

On June 6, 2025, Individual Defendants responded and confirmed that they had completely exhausted the proceeds of the Woods End property sale by, among other things, paying attorneys' fees and debts, and paying for repairs to a work van and replacement of an air conditioning unit in their Texas home.[4] (Defs.' Resp., Dkt. 508, at 3.) Individual Defendants also represented that they had not sold the Milford property. (*Id.*) On June 25, 2025, Individual Defendants filed a motion "to remove attachment on the Milford property,"[5] in which they requested the Court's permission to sell that property. (Defs.' Milford Mem., Dkt. 516.) Plaintiff filed two responses to this motion, arguing that Individual Defendants should be prevented from selling the Milford property and that the "levy must remain on the Milford Property."[6] (Pl.'s Milford Mem., Dkt. 527, at 1; *see also* Pl.'s 6/27/2025 Letter, Dkt. 517, at 2 (stating, prior to filing Dkt. 527, that Plaintiff intended to "separately file formal opposition papers" to Individual Defendant's motion to remove attachment).)

The Court declines to issue an order preventing Individual Defendants from selling the Milford property. But, having considered the standards for imposing the "drastic remedy" of

---

[4] The Court notes that on April 16, 2025, Defendant Vito Gelardi purportedly texted Daniella Levi, Plaintiff's Chief Operating Officer, that he "took whatever money [he] had and [he] gambled it all to try to double it, there's no proof, stick that up your ass." (Pl.'s Mem., Dkt. 531, at 8 (quoting Dkt. 469-1).)

[5] In fact, as discussed above, the Court had not attached the Milford property itself, but only the proceeds of its sale. (Second Attachment Order, Dkt. 500, at 2.)

[6] Both parties appear to mistakenly believe that the Court previously attached the Milford property itself, rather than just the proceeds of the sale of that property. In fact, the Court cannot attach the Milford property because it is outside of New York State. *Adler v. Solar Power, Inc.*, No. 16-CV-1635, 2018 WL 11447340, at *2 (S.D.N.Y. Apr. 9, 2018) ("New York courts have recognized that concerns of comity and sovereignty render attachment of real property located outside of the state inappropriate at the very least." (first citing *Gryphon Dom. VI, LLC v. APP Int'l Fin. Co., B.V.*, 836 N.Y.S.2d 4, 9 (App. Div. 2007); and then citing *JSC VTB Bank v. Mavlyanov*, 63 N.Y.S.3d 40, 43 (App. Div. 2017)).

4

attachment, (First Attachment Order, Dkt. 284, at 5 (quoting *Ne. United Corp. v. Lewis*, 26 N.Y.S.3d 810, 812 (App. Div. 2016)), the parties' arguments, Individual Defendants' significant financial obligations stemming from this case, and Individual Defendants' repeated and blatant refusals to comply with this Court's orders, the Court once again finds that attachment of the proceeds from any sale of the Milford property, should that occur, is warranted.[7] *Adler v. Solar Power, Inc.*, No. 16-CV-1635 (LLS) (GWG), 2019 WL 2210661, at *3 n.5 (S.D.N.Y. May 22, 2019) (explaining that a court "may attach as intangible property" the "proceeds of [the] disposition of assets" that belong "to a party over which the Court has personal jurisdiction" (citing *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303 (2010))).

Accordingly, the Court ORDERS that: (1) Individual Defendants shall file a letter advising the Court and Plaintiff of any listing of the Milford property for sale, and shall provide a copy of the listing *within one (1) business day of the listing*; (2) Individual Defendants shall file a letter notifying the Court and Plaintiff of any purchase agreement relating to the sale of the Milford property that Individual Defendants enter into, and shall provide a copy of the purchase agreement *within one (1) business day of the purchase agreement being* signed; and (3) in the event of a sale of the Milford property, Individual Defendants shall deposit each and every dollar and cent of the proceeds of that sale into the CRIS *within one (1) business day of receipt of the proceeds of that*

---

[7] The Court also notes that attachment of the proceeds of the sale of the Milford property does not leave Individual Defendants without any source of revenue. For example, they continue to financially benefit from the rent-to-buy agreement of their Staten Island property, in which Individual Defendants have an equity interest, (Dkt. 379-4, Defs.' Milford Mem., Dkt. 516, at 1), and they have represented to the Court that they have many (non-IME) businesses, such as a daycare center, (*see, e.g.*, 4/2/2025 Minute Entry (describing Individual Defendants' businesses)). The Court also notes that, while Individual Defendants are now proceeding *pro se*, they were represented throughout the vast majority of this litigation to date—including, importantly, in February 2025 (when they sold the Woods End property without notifying the Court) and April 2025 (when the Milford property was listed for sale).

*sale*. Individual Defendants should make this deposit via check, payable to "Clerk, U.S. District Courts," and the memo line of the check should include the case number for this proceeding, "No. 22-CV-1032." Individual Defendants should mail the check to "Clerk, U.S. District Courts," 225 Cadman Plaza East, Brooklyn, NY, 11201, *and should file proof of that mailing on the docket within one (1) business day of receipt of proceeds from any sale of the Milford property.* Once Individual Defendants have deposited the proceeds of the sale of the Milford property into the CRIS, Individual Defendants may file a motion with the Court seeking approval for the disbursement of funds needed to meet their financial obligations. Each motion for disbursement must explain the reason for the requested disbursement and provide supporting documentation for that claim.

                                        SO ORDERED.

*/s/ Pamela K. Chen*

Dated: July 18, 2025                               Pamela K. Chen
      Brooklyn, New York                United States District Judge