# EXHIBIT E

Case 1:22-cv-01032-PKC-JRC Document 577-5 Filed 08/12/25 Page 2 of 28 PageID #: 10603

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-----------------------------------------------------------------------X
ARJOLA COLLAKU MANAHASA,

Index No: 34328/22E

Plaintiff,

**SUPPLEMENTAL
EXPERT WITNESS
DISCLOSURE
PURSUANT TO CPLR
§3101(d)**

-against-

EDDIE J CALI-HERAS and CARLO MINUTO
CARTING, CO INC.

Defendants.
-----------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that Defendants, EDDIE J CALI-HERAS and CARLO

MINUTO CARTING CO INC., by their attorneys, O'CONNOR REDD ORLANDO LLP,

pursuant to the rules of the Appellate Division, First Department governing exchange of

medical information, in compliance with any demands served pursuant to CPLR Section

3101(d) regarding expert witness disclosure, and in compliance with any directives

contained within the Preliminary Conference Order, set forth as follows:

1.      Defendants designate Saran S. Rosner, M.D., 245 Saw Mill River Road,

Hawthorne, New York, as an expert witness who may be called upon to testify at the time

of trial of this action.

2.      Qualifications and Specialty - See copy of *curriculum vitae* annexed hereto

as **Exhibit "A"**.

3.      The substance of the opinions and facts upon which this expert will testify

at the time of trial can be found within Dr. Rosner's report dated January 23, 2024 annexed

hereto as **Exhibit "B"**, including, but not limited to, his findings upon plaintiff's physical

examination, his diagnosis of plaintiff and prognosis and his opinion regarding causal

connection between the subject accident and plaintiff's alleged injuries, as well as plaintiff's

ability to engage in his activities of daily living.

4.      A summary of the grounds of the expert's anticipated testimony is as

follows: his physical examination of the plaintiff, his review of plaintiff's treatment records

as set forth within his respective report, his medical expertise within the area of

neurological care, the expert's personal, professional and educational background, together with any and all information which may become part of the record during trial or pretrial discovery. Dr. Rosner may also testify in response to any evidence and/or rebuttal of any lay or expert witness testimony raised at the time of trial.

**PLEASE TAKE FURTHER NOTICE**, that Defendants reserve their right to supplement and/or amend their expert witness disclosure up to and including the time of trial.

DATED:     August 22, 2024
          Port Chester, New York

                                Yours, etc.,

                                **O'CONNOR REDD ORLANDO LLP**

                            By: /s/ *Anthony J. Ruggeri*
                                Anthony J. Ruggeri
                                **Attorneys for Defendants**,
                                **EDDIE J CALI-HERAS and CARLO MINUTO CARTING CO INC.**
                                PO Box 1000|242 King Street
                                Port Chester, New York 10573
                                Main 914-686-1700|Fax 914-328-3184

TO:     JOUDEH & KULLER, LLP
           **Attorney for Plaintiff**
           1539 Franklin Avenue - Suite 101
           Mineola, NY 11501
           (516) 540-2000
           Att:    Ramy Joudeh
           File No.: 1189.RJ

2

# EXHIBIT "A"

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 5 of 28 PageID #: 10606

# CURRICULUM VITAE

Saran S. Rosner, M.D.

**Birth Date:** October 11, 1951

**Home Address:** 62 West Lake Blvd.

Mahopac, NY 10541

**Personal:** Married

**Education:** 1972 – A.B. Dartmouth College

Hanover, New Hampshire

    Summa Cum Laude – Phi Beta Kappa

    Valedictorian Rank

1976- M.D. Columbia University College of Physicians and Surgeons

New York, New York

**Post- Doctoral Training:** 1976-1977 Intern - General Surgery

    Johns Hopkins Hospital Baltimore, Maryland

1978-1982 Assistant Resident – Neurological Surgery

    The Neurological Institute – Columbia Presbyterian Medical Center – New York, New York

1982-1983 Chief Resident – Neurological Surgery

    The Neurological Institute – Columbia Presbyterian Medical Center - New York, New York

**Honors, Scholarships:** 1969-1972 Rufus Choate Scholar – Dartmouth College

1971 Townsend Science Scholar – Dartmouth College

1972 High Distinction Major Subject (English Lit) – Dartmouth College

1972 Valedictorian Rank – Dartmouth College

1972 Phi Beta Kappa – Dartmouth College

**Professional Organizations:** American Board of Neurological Surgeons

New York State Neurosurgery Society

New York Society for Neurosurgery

|  | Board Certified – 1986 – Certificate # 8614 |
|---|---|
| **Publications:** | Rosner, Saran S., Rhoton, Albert.  The Microsurgical Anatomy of the Anterior Perforated Substance |
|  | Published: Journal of Neurosurgery 9/84 |
| **Research:** | 1981 – Research Fellowship Micro Neurosurgery |
|  | Department of Neurosciences – University of Florida |
|  | Gainesville, Florida |
| **Teaching:** | 1980-1982 Associate – Department of Anatomy |
|  | Division of Neurosciences – Rutgers Medical School |
|  | New Brunswick, New Jersey |
|  | 1984- Clinical Instructor – Neurosurgery – New York Medical College |
|  | Valhalla, New York |
|  | 1989 – Clinical Instructor – Neurosurgery – Columbia University |
|  | New York, New York |
| **Certifications:** | American Board of Neurological Surgery |
|  | 1982- Part 1- Written Examination |
|  | 1986- Part 2- Oral Examination |
|  | May 1986 – Board Certified |
|  | 1977 – Diplomat National Board of Medical Examiners |
|  | 1978 – Licensure – New York State |
|  | 1983 – Licensure – Common Wealth of Virginia |
|  | 3/22/98 ATLS Instructor – New York Certified |
|  | 2005 – Certified – Gamma Knife Radio Surgery |
|  | 2017 – Certified – Medical Doctor Expert Witness – State of Florida |
|  | 2018 – Licensure – State of Ohio |
| **Clinical Practice:** | 1983-1984 Neurological Associates of Roanoke, Inc. |
|  | 2601 Franklin Road SW, Roanoke, Virginia 24104 |
|  | 1984-1988 Practice of Saran S. Rosner, M.D. |
|  | Briarcliff Manor, New York – Relocated to 245 Saw Mill River Road |

Hawthorne, New York in 1985 and incorporated as Saran S. Rosner, M.D., P.C.

1988-2006 Saran S. Rosner, M.D. & John B. Robbins, M.D., P.C.

July 2006 – present Saran S. Rosner, M.D., P.C.

**Professional Appointments:** Phelps Memorial Hospital – Sleepy Hollow, New York

1984 – Present, Senior Attending in Neurosurgery

1998-2004, Chief of Neurological Surgery

New York Presbyterian Hudson Valley Hospital, Cortlandt Manor, NY

1984 – Present, Senior Attending in Neurosurgery

2011-2013 Chairman, Department of Surgery

2013-March,2017, Vice Chairman, Department of Surgery

2013-March, 2019, Chairman, Medical Board

2015-Jan,2018, Foundation Board

September, 2016 – Present – Member, Cancer Committee

Putnam Hospital Center, Carmel, New York

1984-Present, Active Staff in Neurosurgery

January, 2016 – Dec,2017, Director of Neuroscience

Northern Westchester Hospital, Mt. Kisco, New York

1985 – Present, Senior Attending in Neurosurgery

Vassar Brothers Medical Center, Poughkeepsie, New York

January, 2016 – Present, Attending in Neurosurgery

New York State Department of Health –

Office of Professional Medical Conduct – Expert Consultant

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 8 of 28 PageID #: 10609

# EXHIBIT "B"

Case 1:23-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 9 of 28 PageID
#: 10610

## SARAN S. ROSNER, M.D., P.C.

**NEUROLOGICAL SURGERY**

245 Saw Mill River Rd., Suite 101
Hawthorne, N.Y. 10532

(914) 741-2666

January 23, 2024

Mr. Anthony J. Ruggeri
O'Connor, Redd, Orlando, L.L.P.
Attorneys and Counselors at Law
Post Office Box 1000
242 King Street
Port Chester, NY 10573

## INDEPENDENT MEDICAL EXAMINATION

RE:  Arjola Collaku Manahasa
O'Connor, Redd, Orlando, LLP File
#:  D-7177
Caption:  Arjola Collaku Manahasa,
Plaintiff, against Eddie J. Cali-Heras
& Carlo Minuto, Carting Co., Inc.
Defendant Index #:  34328/22E
Date of Accident:  March 7, 2022

Dear Mr. Ruggeri:

I performed an independent medical examination of Ms. Arjola Collaku Manahasa on
January 23, 2024 in my office at 245 Saw Mill River Road, Hawthorne, New York. Ms.
Manahasa was joined by Mr. Jeff Beibin of IME Companions. Mr. Beibin attended my
entire examination of Ms. Manahasa and took handwritten notes during it. In addition, a
member of my office staff, Ms. Dale H.-C., chaperoned my examination of Ms.
Manahasa from its beginning to its end.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 10 of 28 PageID #: 10611

January 23, 2024
RE: Arjola Collaku Manahasa
Page 2

Ms. Manahasa provided me with photo identification in the form of a New Jersey probationary auto license, which was issued on October 28, 2021. I advised Ms. Manahasa of the restrictions which pertain to an independent medical exam and specifically informed her that no doctor-patient relationship existed between us.

**MATERIALS REVIEWED:** In preparing this report, I have reviewed the following materials: Verified Bill of Particulars index #34328/22E; Supplemental Verified Bill of Particulars index #34328/22E; report of x-ray of the cervical spine of March 8, 2022; report of CT scan of the cervical spine of March 8, 2022; report of x-rays of the cervical spine of May 14, 2022; report of x-rays of the lumbar spine of May 14, 2022; report of MRI of the brain of May 19, 2022; report of MRI of the cervical spine of May 19, 2022; report of MRI of the lumbar spine of September 1, 2022; laboratory reports of October 9, 2019, August 14, 2020, March 27, 2021, and July 25, 2022; care records of the Montefiore Nyack Hospital Emergency Department of March 7, 2022; outpatient care records of March 30, 2022 and March 29, 2023 authored by Michael Gerling, M.D.; operative report of October 6, 2023 authored by Michael Gerling M.D.; physical therapy treatment records of April 6, 2022 through August 28, 2023 of Synergy Spinecare and Rehabilitation Medicine Physical Therapy; outpatient care records of April 16, 2022 through July 31, 2023 authored by Seth Schran, M.D.; report of EMG/NCV testing of the upper extremities of August 3, 2022, authored by Seth Schran, M.D.; notice of EMG/NCV testing of the lower extremities of November 28, 2022 authored by Seth Schran, M.D.; report of epidurogram/transforaminal epidural steroid injection of May 6, 2023 authored by Seth Schran, M.D.; report of cervical/thoracic epidurogram of June 3, 2023 authored by Seth Schran, M.D.; report of transforaminal epidural steroid injection of July 1, 2023 authored by Seth Schran, M.D.; outpatient notes of September 26, 2022, November 9, 2022, and February 8, 2023 authored by Lilian Orellana, N.P.; and

Case 1:22-cv-01032-PKC-JRC   Document 577-5   Filed 08/12/25   Page 11 of 28 PageID #: 10612

January 23, 2024
RE: Arjola Collaku Manahasa
Page 3

treatment records (acupuncture) of February 8, 2023 through March 13, 2023 authored by Fatma Minhas-Kucuk, D.Ac..

I have read the Examination Before Trial of Arjola Manahasa of December 4, 2023.

Additionally I have seen videos of the March 7, 2022 accident.

I have also reviewed the images of the following studies, which were formatted on CD-ROM: X-ray of the cervical spine of March 7, 2022; x-ray of the lumbar spine of May 14, 2022; x-ray of the cervical spine of May 14, 2022; MRI of the cervical spine of May 19, 2022; MRI of the brain of May 19, 2022; and, MRI of the lumbar spine of September 1, 2022.

Neither Ms. Manahasa, nor her IME Companion, Mr. Beibin provided me with any additional records, documents, or diagnostic studies for my review.

**HISTORY OF INJURY:** Ms. Arjola Collaku Manahasa is a 42-year-old right-handed woman who claims injury from a motor vehicle accident in which she was involved on March 7, 2022. Specifically, Ms. Manahasa was the seat-belted driver of a Honda HR-V, which was at a complete stop when her car was struck in the rear end by a garbage truck. Ms. Manahasa reported that she struck her forehead on the steering wheel of her vehicle. According to Ms. Manahasa, after she moved forward and hit her head on the steering wheel, she was sent backwards against her driver's seat and its headrest. She did not lose consciousness. At the accident scene, Ms. Manahasa exited her automobile and was independently ambulatory. Ms. Manahasa indicated that she had no untoward symptoms generally or pain specifically at the scene of the accident (Examination Before Trial, Arjola Manshasa, December 4, 2023, page 108, line 7 and pages 108 through 109).

disc disease with spondylosis of Ms. Manahasa's cervical spine was demonstrated.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 4

Accordingly, absent any untoward symptoms or discomfort, Ms. Manahasa proceeded to work. Her car had sustained only a dent to its rear end (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 118, lines 9 through 18), and Ms. Manahasa was able to drive her vehicle to her place of employ.

Hours after the subject accident, Ms. Manahasa experienced pain in her head and neck, for which she left work in the late afternoon, seven-and-a-half hours after the subject accident. She presented to the Montefiore Nyack Hospital Emergency Department for care. Ms. Manahasa was triaged at the Montefiore Nyack Hospital at 4:11 p.m. on March 7, 2022, where she complained of upper back pain. Mary R. Abplanalp, a nurse practitioner evaluated Ms. Manahasa at the Montefiore Nyack Hospital, E.D., on March 7, 2022. Nurse Abplanalp noted that Ms. Manahasa complained of neck pain and headache, which had "improved." Numbness, tingling, weakness, and dizziness were denied by Ms. Manahasa. Lumbar pain or radicular symptoms were missing from Ms. Manahasa's presenting complaints that afternoon. In fact, Ms. Manahasa acknowledged in her Examination Before Trial that she did not have lower back pain (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 146, lines 6 through 8). On physical examination, Ms. Manahasa was found to have a normal gait, mild midline cervical tenderness, normal range of neck motion, and intact strength and sensation. Generally, Ms. Manahasa was observed to be "in acute distress" (mild painful). Diagnostically, an x-ray of Ms. Manahasa's cervical spine was obtained, which did not evidence fracture, subluxation, or prevertebral soft tissue swelling. A CT of the cervical spine was also done at the Montefiore Nyack Hospital Emergency Department on March 7, 2022, which revealed congenital assimilation of C1 with the occiput and fusion of the C2 and C3 vertebral bodies. Additionally, multilevel facet arthropathy and degenerative disc disease with spondylosis of Ms. Manahasa's cervical spine was demonstrated.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 5

Ms. Manahasa was medicated with Tylenol. On reassessment, she was "feeling well," and discharged from the Montefiore Nyack Hospital Emergency Department.

**CLAIMANT'S DETAILED HISTORY OF POST ACCIDENT SYMPTOMS:** At its onset, Ms. Manahasa indicated that her cervical pain was more severe than her lumbar pain. She experienced pain in her neck almost every day, which she rated at 7-8/10 on a VAS scale. Ms. Manahasa indicated that her cervical pain would last for hours after it began. About a week after the March 7, 2022 motor vehicle accident in which she was involved, Ms. Manahasa also began to have pain, which radiated into her left arm and extensor forearm. Ms. Manahasa's left upper extremity pain did not extend beyond her wrist into her hand. Her left arm pain presented 3-4 times per week and lasted 3-4 hours in its duration. The pain in Ms. Manahasa's left arm and forearm was lesser in severity at 4-5/10 than her cervical pain. Although Ms. Manahasa stated that she did not have pain that extended into her hand, she experienced tingling and paresthesias that radiated along the ulnar aspect of her left forearm into the small and ring finger of her left hand. Ms. Manahasa did not have pain in her right upper extremity, but appreciated some tingling in her right arm proximally, "up to" her elbow. Sometimes, the paresthesias of Ms. Manahasa's left arm, forearm, and hand accompanied the pain that radiated into her left upper extremity, but at other times the tingling and paresthesias of her left arm and hand were independent of her left upper extremity pain.

The lumbar pain, which Ms. Manahasa experienced after the accident of record, lagged in its onset. It began two or three days after the March 7, 2022 collision. Ms. Manahasa's lower back pain predictably began if Ms. Manahasa remained in any certain position or engaged in particular activities. Standing, sitting, lying, all would lead to pain in Ms. Manahasa's lower back, and require her change in position to relieve it. Walking and exertional endeavors were also provocative.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 6

Over time, Ms. Manahasa's lumbar pain (8-9/10) marginally exceeded her cervical pain. Pain which intermittently referred primarily to Ms. Manahasa's left lower extremity also developed. Her lower extremity pain specifically referred to Ms. Manahasa's anterior thigh and the anterior tibial surface of her legs. Ms. Manahasa's lower extremity pain did not extend beyond her ankles and to her feet. Ms. Manahasa valued her right lower extremity pain at 7-8/10 and her right leg pain at 5-6/10. However, because Ms. Manahasa's left leg pain was more frequent and of greater duration than her left lower extremity pain, Ms. Manahasa indicated that her left leg pain (90%), compared to her right lower extremity pain (10%), predominated. In addition, Ms. Manahasa appreciated periodic numbness and paresthesias in her left lower extremity, which occurred a couple of times per day and lasted about two hours. Such numbness and paresthesias involved only her left leg and spared her right leg. As noted, Ms. Manahasa described difficulty when she remained in any position for a period of time. She indicated that her sitting tolerance was 20 minutes, her ability to stand comfortably at 10 minutes, and the distance that she could walk before her lower back pain intensified was 3-4 blocks. Ms. Manahasa denied any impairment of her urinary function or control.

Additionally, Ms. Manahasa had headache, which began soon after the subject accident, but over time has mostly declined.

**SUBSEQUENT COURSE AND TREATMENT:** About three weeks after the March 7, 2022 motor vehicle accident herein under consideration, Ms. Manahasa presented to the Center for Musculoskeletal and Neurological Care in Clifton, New Jersey, where she was seen by Prosper Jerome, NP-C., under the supervision of Michael Gerling, M.D., an orthopedic spine surgeon. Dr. Gerling and his physician extender indicated that Ms. Manahasa complained of cervical and lumbar pain, when she was seen on March 30, 2022. Her lower back pain exceeded her cervical pain at that time.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 15 of 28 PageID #: 10616

January 23, 2024
RE: Arjola Collaku Manahasa
Page 7

Ms. Manahasa reported pain (7/10) in her neck, which was joined by numbness and paresthesias in her right and left upper extremities. Ms. Manahasa also complained of frequent occipital headaches. At the time of Ms. Manahasa's initial evaluation at The Gerling Institute, she had lower back pain (8/10), and pain equal in severity that radiated to her left buttock, lateral thigh, posterior thigh and anterior left thigh. Her left lower extremity pain was accompanied by numbness and paresthesias in the same distribution as her leg pain. The Gerling Institute record indicated that Ms. Manahasa was unable to walk more than three blocks and stand for periods in excess of 60 minutes without pain. Notwithstanding, the high level of Ms. Manahasa's cervical, lumbar, and left lower extremity pain, she medicated only with Tylenol for its relief to which Dr. Gerling just added a nonsteroidal anti-inflammatory medication, Mobic 15 mg. Nurse Jerome and Dr. Gerling's March 30, 2022 examination of Ms. Manahasa revealed mild restriction of her cervical range of motion and moderate limitation of her lumbar excursion. Her strength was fully intact, her deep tendon reflexes were unremarkable, but nonspecific "numbness left leg" was identified. Diagnostically, Ms. Manahasa was sent by Dr. Gerling for x-ray imaging of her cervical and lumbar spine. Therapeutically she was, as noted, prescribed Mobic, a nonsteroidal anti-inflammatory medication, and sent for physical therapy.

The x-rays of Ms. Manahasa's cervical and lumbar spine which had been requested by Dr. Gerling were performed of Affinity Radiology on May 14, 2022. By report, Ms. Manahasa's cervical x-rays showed some instability on flexion and extension views at C2/C3 and C3/C4. Degenerative changes at the C4-C5 and C5-C6 levels were also described. The anomalies at the cervico-occipital junction were not recognized. To my review, Ms. Manahasa's cervical x-rays demonstrated minimal excursion at C3-C4 and C4-C5 on flexion-extension views that was related to her degenerative disease and fused segments above those levels.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 8

The May 14, 2022 x-rays of Ms. Manahasa's lumbar spine revealed early degenerative changes at the L5-S1 level and mild reduction of the usual lordotic curvature of the lumbar spine, a nonspecific finding.

Soon after her visit with Dr. Gerling, Ms. Manahasa embarked upon a course of conservative care for her spinal complaints with Seth Schran, M.D., at Synergy Spinecare and Rehabilitation Medicine. Dr. Schran is a board certified physiatrist, who is fellowship trained in pain medicine. The history of Ms. Manahasa's spinal/neurologic complaints, which followed the subject accident that were recorded by Dr. Schran largely comport with the history which Ms. Manahasa provided to me. However, Dr. Schran's findings on his examination of Ms. Manahasa did not correlate with those that had been chartered by Dr. Gerling. Dr. Schran noted straight leg raising which was positive only on the left, but Dr. Gerling indicated that straight leg raise testing was bilaterally positive. Dr. Schran found sensory loss in Ms. Manahasa's left upper extremity and her bilateral lower extremities, weakness of Ms. Manahasa's left hip flexion, and absent deep tendon reflexes in her triceps, knees, and ankles, none of which findings were validated by Dr. Gerling just six days earlier. Upon his completion of his initial evaluation of Ms. Manahasa, Dr. Schran surmised that she had sustained a mild TBI/concussion, cervical radiculitis, thoracic sprain/strain, and lumbar radiculitis. Of course, Dr. Schran recommended physical therapy to be provided at his facility three times a week, in addition to which, he referred Ms. Manahasa for MRI imaging of her brain, C-spine, and L-spine.

Ms. Manahasa returned to Affinity Radiology for her MRI examinations of the brain, cervical spine, and lumbar spine.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 17 of 28 PageID #: 10618

January 23, 2024
RE: Arjola Collaku Manahasa
Page 9

The MRI of Ms. Manahasa's brain revealed an empty sella, but did not demonstrate any findings which suggested recent or remote head trauma. Her cervical MRI, which was completed on the same day as her MRI/brain, May 19, 2022, showed skeletal abnormalities of the upper cervical spine and skull base, which suggested a variant of a Klippel-Feil anomaly. Also a right central disc herniation at C3-C4, C4-C5, and C6-C7 was described. To my review, a small disc protrusion was demonstrated at the C6-C7 level on Ms. Manahasa's MRI of the C-spine of May 19, 2022. It appeared to be chronic, and occurred at the cervical level where her degenerative changes were most pronounced. I do not recognize disc herniation at C3-C4, nor do I appreciate any compromise or compression of the cervical cord or its nerve roots at any level. Months later, on September 1, 2022, an MRI of Ms. Manahasa's lumbar spine was completed, which was read by Michael D. Green, M.D., a diagnostic radiologist. Dr. Green reported a "bulging" disc at the L3-L4 level. Of note, bulging of the intervertebral discs is considered a normal variant generally without consequence. A broad-based central disc herniation at L5-S1, which was "more prominent" on Ms. Manahasa's markedly less symptomatic right side was also indicated. Also, Dr. Green identified a left lateral disc herniation at L2-L3, which extended into the foraminal fat and impressed upon the existing left L2 nerve root. I find that there was no disc herniation at any lumbar level. The disc at the L5-S1 met the radiologic criteria for a disc bulge displacement (less than 3 mm), and, like the intervertebral discs at the cervical levels, did not produce impingement of the adjacent neural structures.

Later, Dr. Schran supplemented Ms. Manahasa's radiologic studies with electrodiagnostic testing. On August 3, 2022, he performed an EMG/NCV examination of Ms. Manahasa's upper extremities, which showed evidence of right C5-C6 and left C6-C7 radiculopathy, for which there was no clear radiologic correlate. Then, on November 28, 2022, Dr. Schran completed EMG/NCV testing of Ms. Manahasa's lower extremities, which showed radiculopathic changes at right L5-S1, which were inconsistent with her clinical complaints.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 10

When Ms. Manahasa began physical therapy at Synergy Spinecare and Rehabilitation Medicine, P.C., in April 2022, she was noted to have not only mild weakness in her left hip flexors, as found by Dr. Schran, but also was seen to have mild weakness of her shoulder abduction left greater than right. Over the next 16 months, Ms. Manahasa underwent physical therapy nearly 60 times. Although the mild weakness in Ms. Manahasa's left hip flexors and shoulder girdle bilaterally improved by half a grade, her neck and lower back pain persisted.

Five acupuncture treatments were given to Ms. Manahasa's at Synergy Spinecare and Rehabilitation Medicine in late winter of 2023. Fatma Minhas-Kucuk, D.Ac., first saw Ms. Manahasa on February 8, 2023. At that time, Ms. Manahasa reported her neck pain at 5-6/10 and her low back pain at 8/10. Dr. Minhas-Kucuk also cataloged Ms. Manahasa's complaints of chest pain, palpitations, anxiety, depression, shortness of breath, tinnitus, floating, blurry vision, abdominal bloating, and dysuria. Acupuncture afforded Ms. Manahasa no significant relief of her spinal complaints or her other myriad symptoms.

In addition, Ms. Manahasa was provided with a cervical epidural steroid injection and given two bilateral L5-S1 transforaminal epidural steroid injections by Dr. Schran. These injections too did not result in any durable symptomatic benefit to Ms. Manahasa. The transforaminal epidural steroid injections of May 6, 2023 and the CESI of June 3, 2023 were both prefaced by Dr. Schran with performance of epidurograms, both of which showed no evidence of epidural adhesions or obstruction to the flow of contrast dye.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 11

One year after Ms. Manahasa first consulted Dr. Gerling, she, on March 29, 2023, returned to see him. Except for Dr. Gerling's identification of positive SI joint provocative test on Ms. Manahasa's left, and his observation of a Trendelenburg gait on the right, those symptoms and signs, which Dr. Gerling recorded on March 29, 2023, were identical to the ones which he had documented on March 29, 2022. In his outpatient report of March 29, 2023, Dr. Gerling did not acknowledge that Ms. Manahasa had only 1 mm of retrolisthesis on MRI, and no malalignment or dynamic instability, which was demonstrated on lumbar flexion-extension studies. He also did not reconcile the EMG abnormalities at right L5-S1 with Ms. Manahasa's largely left lower extremity symptoms. Similarly, Dr. Gerling did not apparently consider the inconsistency of Ms. Manahasa's left anterior thigh pain with any disc pathology at the L5-S1 level. Notwithstanding, when Dr. Gerling reevaluated Ms. Manahasa on March 29, 2023, he contemplated lumbar discectomy and annuloplasty at left L5-S1. In addition, Dr. Gerling advised a left diagnostic SI joint injection be performed by Dr. Schran, in consideration of her physical signs on examination, which implicated sacroiliitis on the left. I have no records, which document that a left SI joint injection was actually provided to Ms. Manahasa.

Six months thereafter, on October 6, 2023, Dr. Gerling went forward with a lumbar operative procedure on Ms. Manahasa at the Hudson Ambulatory Surgical Center, NY. Somehow, in the six months that passed following his March 29, 2023 reevaluation of Ms. Manahasa, Dr. Gerling's surgical plan inexplicably expanded to include the L3-L4 intervertebral level in addition to the previously planned L5-S1 segment. In his operative report of October 6, 2021, Dr. Gerling stated that Ms. Manahasa had "numbness and weakness that correspond(ed) to the symptoms," but they did not.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 12

By Dr. Gerling's own account in March 2023, Ms. Manahasa, to whom Dr. Gerling generically referred as "the patient" had no weakness and diffuse numbness in the left lower extremity, which did not implicate a particular nerve root territory. Of note, notwithstanding Ms. Manahasa's complaint of disabling pain in her lower back and left leg, she did not require, nor was she provided analgesics for its mitigation.

Dr. Gerling began Ms. Manahasa's October 6, 2023 lumbar procedure with the performance of discography. He mistakenly identified the "indicated level L4-L5 and L5-S1" in his operative note. Elsewhere, Dr. Gerling described discography at L3-L4 and L5-S1. The description of Dr. Gerling's discography method did not comport with the strict standards outlined by the Dallas discography criteria. Disc herniation at L3-L4 and annular tears at L3-L4 and L5-S1 were reported by Dr. Gerling, for which there was no radiologic support in the MRI studies that had been performed within months of the subject accident. The grade of the annular tear was not specified. The operative report which ostensibly detailed Ms. Manahasa's procedure and findings appeared to be generic and formulaic. Further, Dr. Gerling noted that Ms. Manahasa, at the end of the procedure, was "without complaints or neurological changes." However, Ms. Manahasa offered an opposing account of her perioperative course.

Directly after her surgical procedure on October 6, 2023, Ms. Manahasa experienced worsened numbness and weakness of her left leg. She was unable to independently stand, weight bear, and ambulate. When she first attempted to leave her PACU bed to toilet, Ms. Manahasa's left leg buckled and she fell. Yet again, Ms. Manahasa could not support herself ably on her left leg and fell again on October 6, 2023, the day of her surgery, and October 9, 2023, three days after it. At first, Ms. Manahasa began the use of a cane to ambulate, when she returned home (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 172, lines 8 through 9).

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 21 of 28 PageID #: 10622

January 23, 2024
RE: Arjola Collaku Manahasa
Page 13

Later, she was provided with crutches by an orthopedic surgeon, Joseph Bellapianta, M.D., which Ms. Manahasa relies upon to ambulate up and through the present time.

**PRESENT SYMPTOMS AND COMPLAINTS:** Ms. Manahasa told me that she continues to have nearly constant pain in her lower back, which, like prior to surgery, escalates after she remains in any position (sitting, standing, walking, recumbency) for a period of time. Still, Ms. Manahasa's lumbar pain is accompanied by pain and numbness, which primarily affects her left lower extremity (90%) and to a much lesser extent (10%) her right leg. Ms. Manahasa rated her lumbar pain, at 7-8/10, her left lower extremity pain at 6-7/10, and her right leg pain at 4-5/10. Although Ms. Manahasa cannot describe any particular loss of strength in her legs or feet, she appreciates a sense of generalized weakness in her left leg and indicates insecurity climbing stairs and ambulating without the use of her crutches.

Now, three months postoperatively, Ms. Manahasa is scheduled to begin physical therapy imminently at a facility in Fort Lee, New Jersey. Tramadol had been prescribed for Ms. Manahasa <u>after</u> her October 6, 2023 lumbar procedure. She has recently stopped the use of tramadol and alternatively medicates with Tylenol 1000 mg Q. D., p.r.n. Tylenol reduces but does not eliminate Ms. Manahasa's ongoing lumbar pain issues.

With regard to her cervical pain, Ms. Manahasa reported that it is "not horrible." Presently, her neck pain occurs a few times per week, lasts for 2-3 hours, and thereafter abates.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 22 of 28 PageID #: 10623

January 23, 2024
RE: Arjola Collaku Manahasa
Page 14

Her left upper extremity pain has also decreased in its frequency to about once or twice per week. Still, Ms. Manahasa gauges her left upper extremity pain at 4-5/10. In contrast, Ms. Manahasa's upper extremity tingling and numbness has declined. Ms. Manahasa indicated that she did "not (have) much" tingling in her upper extremities. On the left, tingling involves only her forearm and the small and ring fingers of her left hand. In her right upper extremity such tingling does not extend distal to her elbow. These sensory complaints, like her left upper extremity pain happen about once or twice per week and last an hour or two before they subside.

The headaches, which Ms. Manahasa experienced after the subject accident, have mostly resolved. She indicated that her headaches are only "a little bit," and at her Examination Before Trial last month, she reported that her headaches were gone (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 265, lines 3 through 5).

**PAST MEDICAL HISTORY AND REVIEW OF SYSTEMS:** Ms. Manahasa has no medical allergies, nor does she have any chronic medical conditions for which she is treated. Ms. Manahasa identified, Alma Mesquita, a nurse practitioner in Astoria, New York as her general medical care provider (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 37, line 10).

Ms. Manahasa did have a COVID illness, after the subject accident and before her surgery (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 199, lines 5 through 6).

The lumbar surgery of October 6, 2023 comprises the only operative procedure which Ms. Manahasa has undergone.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 23 of 28 PageID #: 10624

January 23, 2024
RE: Arjola Collaku Manahasa
Page 15

Since the March 2022 motor vehicle accident in which she was involved, Ms. Manahasa has gained approximately 20 pounds (165 pounds to 187 pounds,) which she attributes to inactivity because of her subsequent pain complaints.

**PERSONAL AND SOCIAL HISTORY:** Ms. Manahasa was born in Albania and immigrated to the United States in 2007. She is fluent in several languages. Ms. Manahasa is divorced and has one child, a daughter, who is age 11.

Ms. Manahasa is employed in a management position at a cosmetic company, Intercos America. After the accident of record, Ms. Manahasa missed only "scattered" days for medical care, but otherwise continued to work (Examination Before Trial, Arjola Manahasa, December 4, 2023, page 228, lines 21 through 23, and page 229, lines 11 through 14). After surgery, Ms. Manahasa, as an accommodation, has worked mostly from home.

Ms. Manahasa indicated that she does not use tobacco products or habitually imbibe alcohol.

**PHYSICAL EXAMINATION:** I examined Ms. Manahasa in the standing, sitting, supine, and prone positions. Although she came to the examination using crutches, I was able to examine her gait and station without her use of the crutches. Ms. Manahasa presented as a well-developed, overweight, appropriately groomed individual. Her demeanor was initially guarded, but she became more cordial as the exam proceeded. Ms. Manahasa was particularly animated and engaging when she discussed the cosmetic industry with our chaperone. I observed that Ms. Manahasa moved her head and neck freely in the course of conversation without splinting or guarding. The chaperone sat to Ms. Manahasa's extreme right and Ms. Manahasa turned her head and neck to directly address her during their conversation about cosmetics.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 24 of 28 PageID #: 10625

January 23, 2024
RE: Arjola Collaku Manahasa
Page 16

I also saw that Ms. Manahasa was able to arise from a seated position without the use of her arms or appliance for support. After standing, Ms. Manahasa bent over to retrieve her water bottle from for the floor which she had placed it. Ms. Manahasa disrobed and dressed without assistance.

Ms. Manahasa was able to walk forwards, backwards, and in a tandem fashion without the use of her crutches. From time to time, Ms. Manahasa used touch guarding during my testing of her gait. She was stable in Romberg's position. Her gait was slightly broad-based and antalgic. She appeared to favor her left leg. Ms. Manahasa took seven steps to turn in a circle. With touch guarding, Ms. Manahasa was able to bear weight in plantar flexion, dorsiflexion, independently on each leg and perform a partial deep knee bend. To palpation, Ms. Manahasa reported tenderness from T3 through C2 and L3 through S1. There was no sciatic notch tenderness. I did not find tenderness over the anterior iliac crest or SI joints. Vertex compression did not elicit pain. Straight leg raise testing in the sitting position did not elicit pain. Straight leg raise testing in the supine position at 40 degrees elicited pain in Ms. Manahasa's left lateral thigh and left medial thigh. Straight leg raising in the supine position also at 40 degrees produced less pronounced pain in the right thigh. FABER's test on the right elicited pain in Ms. Manahasa's lower back. FABER's test on the left produced pain in Ms. Manahasa's left leg and lower back. There were small well-healed lumbar scars two vertical in the midline and one to the left of midline. Both scars measured about one-half inch in length. Cervical and lumbar range of motion was assessed by measurement of active range of motion with a handheld goniometer. Lumbar flexion was completed to 85 degrees/90 degrees and lumbar extension was measured at 35 degrees/30 degrees. Cervical rotation to the right was 77 degrees/80 degrees, cervical rotation to the left was 72 degrees/80 degrees, cervical flexion was full to limits of normal at 60 degrees/60 degrees and cervical extension was completed to 44 degrees/50 degrees.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 25 of 28 PageID #: 10626

January 23, 2024
RE: Arjola Collaku Manahasa
Page 17

Cranial nerves II through XII were intact. Visual fields were full to confrontation. Strength was tested to opposition in the major motor groups of Ms. Manahasa's upper and lower extremities. I did not find any focal motor weakness. By measurement, there was no atrophy of Ms. Manahasa's arms, forearms, or calves. I did not identify any muscle irritability or fasciculations. Sensation was tested to pin, touch, temperature, position, vibration, traced figures, and stereognosis. There were hyperesthesias in the left lower extremity, which involved the L3, L4, L5, and S1 dermatomes. However, in the prone position, hyperesthetic sensation was not reproduced in the S1 nerve root territory. There was no saddle area numbness. Some decreased perception of temperature (cold) was identified in the ulnar aspect of Ms. Manahasa's left hand. Sensation was otherwise preserved to primary and cortical modalities. Tinel signs were present over the elbows, wrists, and fibular heads. Deep tendon reflexes were preserved, symmetric, and nonpathologic. The patellar reflexes were muffled in comparison to the Achilles reflexes and upper extremity DTRs. However, the patellar reflexes were present and symmetric. There were no myelopathic findings. Toes were downgoing to plantar stimulation. Cerebellar function was assessed by Ms. Manahasa's performance of rapid alternating movements of finger-to-nose, heel-knee-shin, and heel-to-toe in the standing position, all of which were well performed.

**SUMMARY AND CONCLUSIONS:** Thus, Ms. Arjola Collaku Manahasa is a 42-year-old woman who was involved in a rear-end type collision as the restrained driver of a vehicle on March 7, 2022, subsequent to which she experienced headache, neck pain, and back pain. However, of note, these complaints which followed the subject accident were not immediate in their onset.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 18

Her headache and neck pain began first several hours after the accident, and her lower back pain lagged behind for a couple of days before it began.

Ms. Manahasa's diagnostic workup included MRI imaging of her head, C-spine, and lumbar spine, along with EMG/NCV testing of her upper and lower extremities. The MRI examinations of Ms. Manahasa's head and cervical spine showed abnormalities, which were unrelated to trauma, recent or remote. She was found to have an empty sella for which Ms. Manahasa has not pursued further medical investigation. Her cervical MRI revealed congenital anomalies of the cervico-occipital junction along with multilevel degenerative changes. Right and central disc herniations were reported at C3-C4, C4-C5, and C6-C7, none of which resulted in compression of the cervical cord or its exiting nerve roots. Moreover, these described disc herniations lateralize to Ms. Manahasa's right side, which was contralateral to her more significant left upper extremity. The MRI studies of Ms. Manahasa's lumbar spine were noted by the radiologist to demonstrate a disc herniation at L2-L3 laterally on the left, and a disc herniation at L5-S1, which favored her clinically less symptomatic right side was reported as well. To my review, neither Ms. Manahasa's cervical or lumbar MRI studies revealed acute/subacute disc herniations or correlative impingement of her spinal neural structures. The low impact motor vehicle accident in which Ms. Manahasa was involved on March 7, 2022 unlikely resulted in disc herniations at five spinal levels. Similarly, Ms. Manahasa's electrodiagnostic testing showed results which neither well correlated with her symptoms nor were consistent with her radiologic findings.

Ultimately, Ms. Manahasa underwent an ill-conceived minimally invasive lumbar procedure for indications that cannot be reliably assigned to the accident of record, and from which predictably she has gleaned small benefit.

January 23, 2024
RE: Arjola Collaku Manahasa
Page 19

Interestingly, Ms. Manahasa's cervical symptoms, which have not been addressed surgically, have more improved than her operatively treated lumbar complaints.

I conclude that Ms. Manahasa sustained a sprain/strain to her cervical and lumbar spine from the March 7, 2022 accident in which she was involved. Resolution over time of such symptoms which follow spinal sprain/strains comprises the usual natural history of these type of injuries. The waning of Ms. Manahasa's cervical complaints comport with the general clinical course of sprain/strains with conservative treatment. Likely Ms. Manahasa's lumbar symptoms similarly would have resolved in time.

From an objective neurosurgical perspective, I do not find evidence of impairment or disability on my examination of Ms. Manahasa. Her limitations are subjectively based and cannot be well measured objectively. An element of symptom magnification and embellishment is suggested.

I am a physician duly licensed to practice medicine and surgery in the State of New York and I attest under penalties of perjury as per CPLR 2106, that the information which I have presented in this report is true and accurate to the best of my knowledge. Moreover, the conclusions which I have given herein are offered within a reasonable degree of medical certainty. However, I reserve the opportunity to amend these conclusions if I am provided with additional materials that require me to do so.

Case 1:22-cv-01032-PKC-JRC    Document 577-5    Filed 08/12/25    Page 28 of 28 PageID #: 10629

January 23, 2024
RE: Arjola Collaku Manahasa
Page 20

I attest to having the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue in this case. I have current, relevant, knowledge and experience to render an opinion for this case, and my opinions and conclusions are based solely upon the review of the records submitted as well as the results of my examination. There is no conflict of interest known to me regarding this specific case. I have received no financial incentive or compensation that is dependent in any way on the opinion I have rendered. No delegation of this examination and/or review was rendered.

Sincerely,

Saran S. Rosner, M.D.