UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IME WATCHDOG, INC.,

                Plaintiff,

    -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and
IME MANAGEMENT & CONSULTING LLC,

                Defendants.
---------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC) (JRC)

**AMENDED DECLARATION OF DANIELLA LEVI IN SUPPORT OF PLAINTIFF'S DAMAGES IN CONNECTION WITH THE COURT'S MARCH 31, 2025 ORDER FINDING SAFA AND VITO GELARDI AND IME COMPANIONS LLC IN CONTEMPT**

I, Daniella Levi, pursuant to 28 U. S.C. § 1746, declare as follows:

1. I am the Chief Executive Officer of IME WatchDog, Inc. (hereinafter "Plaintiff"), the plaintiff in the above-referenced case.

2. I submit this declaration in accordance with Loc. R. 83.6 and in furtherance of the Court's March 31, 2025 Memorandum & Order directing Plaintiff to set forth the specific amounts of attorneys' fees and compensatory damages it seeks as a result of the Court's finding of contempt by, *inter alia*, Safa Gelardi ("Safa"), Vito ("Vito") Gelardi, and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants").

3. In the March 31, 2025 Memorandum & Order, this Court once more found Defendants in civil contempt for violating the June 8, 2022 Amended Injunction, the March 2023 TRO, and the March 2023 Expanded Injunction. See ECF Docket Entry 448.[1]

---

[1] The Court also found Eugene Liddie and IME Legal Reps in contempt. However, Plaintiff has settled its dispute with Eugene Liddie and IME Legal Reps and does not seek damages from them in connection with the Court's contempt finding. However, because the Court found that Defendants created IMELR, Plaintiff is entitled to recover compensatory damages from Defendants related to the independent medical examinations performed by IMLER.

4.      Before the Court can enter an order finding Defendants in civil contempt, the Court directed Plaintiff to submit "the required affidavit set[ting] out with particularity . . . the claim, if any, for damages occasioned [by Defendants' contemptuous actions] and such evidence as to the amount of damages as may be available to the moving party." *Id. quoting* Loc. R. 83.6(a); *see also* Loc. R. 83.6(c) (requiring the Court "to set[] forth the amount of damages, if any, to which the complainant is entitled" and "fixing the fine, if any, imposed by the court" in an order of civil contempt). This declaration is submitted in compliance with that directive.

5.      Between 2018 and 2022, through their theft of Plaintiff's trade secrets, Defendants stole at least sixty-seven (67) customers from Plaintiff. A list of the customers is annexed hereto as **Exhibit "A"**.

6.      Companions continued to serve some of the sixty-seven (67) customers in defiance of multiple Court Orders and in contempt of Court, as the Court concluded in the March 31, 2025 Memorandum & Order.

7.      Although requested by Plaintiff, Defendants have not produced Companions' sales data regarding its revenue since 2022.

8.      In order to obtain information regarding independent medical examinations performed by Defendants through Companions and their alter ego entities, Plaintiffs also served subpoenas on Companions' observers, Fari Gutierrez (who operated Client Exam Services for Defendants), Christian Hogarth, Lizbeth Medina, Mark Purficati, and Sara Gonzalez, but they failed to comply with the subpoenas.

9.      Therefore, the amount of independent medical examinations performed by Vito, Safa, and Companions, and their alter egos, during the contempt period is unknown to Plaintiff.

10. In the absence of this information, Plaintiff has extrapolated from Companions' 2022 data to compute the amount of Plaintiff's lost business, which I am advised is permitted in such circumstances where the opposing party fails to provide information in its exclusive possession, custody, and control.

11. In 2022, Companions' sales were $883,046.00. Annexed hereto as **Exhibit "B"** is Companions' Sales by Customer Detail produced during discovery.[2]

12. However, Companions' 2022 sales data is incomplete as it did not include a dollar amount for Zemsky & Salomon, a customer who is listed in Companions' 2022 sales records, but for whom the dollar amount is blank. Zemsky & Salomon paid Companions $54,015.00 in 2021. Extrapolating the $54,015.00 amount that Zemsky & Salomon paid in 2021 for 2022, the total amount of Companions' sales for 2022 would be $937,061.00.

13. "98.3% of the total revenue Defendants have generated since Companions' inception was obtained through sales from Plaintiff's former customers." IME Watchdog, Inc. v. Gelardi, 2023 U.S. Dist. LEXIS 189054, *12 (E.D.N.Y. Oct. 20, 2023).

14. Therefore, for 2022, Companions' revenue for the sixty-seven (67) customers was $921,130.96 (98.3% of $937,061).

15. Companions charged an initial rate of $179.00 for each independent medical examination while Watchdog charged $189, a 5.59% difference. Therefore, Plaintiff's revenue for these 67 customers would have been 5.59% higher than Companions' revenue, or $973,574.51.

16. Plaintiff's profit margin during the relevant period is ███ percent (██%). Annexed hereto as **Exhibit "C"** is a sample of documents kept in Plaintiff's ordinary course of business

---

[2] In 2018, Companions' revenue was $72,487.00, in 2019, Companions' revenue was $435,316.73; in 2020, Companions' revenue was $435,316.73; in 2021, Companions' revenue was $823,345.00. The annual increases are directly linked to Defendants' escalating bribery of Adam Rosenblatt.

identifying the amount Plaintiff billed its customers and payments to its observers (with the identities of the observers redacted) establishing an estimated [redacted]% profit margin.

17. At a [redacted]% profit margin, Plaintiff's annual damages on $[redacted] is $[redacted], or $[redacted] per month.

18. There are approximately twenty-four (24) months from March 10, 2023 through March 31, 2025, resulting in $973,574.40 in damages for this period of contempt.

19. In addition, IMELR received at least $197,605.00 for services it performed for Plaintiff's former customers. Annexed hereto as **Exhibit "D"** is a summary of all of IMELR's income which IMELR produced to Plaintiff in response to a subpoena.

20. Applying the 5.59% difference due to the $10.00 price difference for observing independent medical examinations, Plaintiff's revenue for these customers would have been $208,648.13.

21. At a [redacted]% profit margin, Plaintiff's damages on $[redacted] in revenue is $[redacted].

22. Accordingly, for the March 10, 2023 through March 31, 2025 period covered by the contempt finding, Plaintiff's lost profits total at least $1,077,898.46 ($973,574.40 + $104,324.06), for which it seeks a judgment.

23. In addition, Plaintiff incurred $151,259.69 in attorneys' fees in connection with the May 29, July 29, and September 25, 2024, hearings.

24. Milman Labuda Law Group PLLC ("MLLG") billed Plaintiff $112,770.00 for 250.6 hours of work at rates of $450 for Jamie Felsen and $300 for Emanuel Kataev since March 28, 2023 in connection with the May 29, July 29, and September 25, 2024, hearings. A summary

of MLLG's billing descriptions provided in the invoices Plaintiff received from MLLG is annexed hereto as **Exhibit "E"**.

25. Sage Legal LLC ("Sage") billed Plaintiff $38,489.69 for 128.3 hours of work at $300 per hour in connection with the May 29, July 29, and September 25, 2024 hearings. Sage's invoices to Plaintiff are annexed hereto as **Exhibit "F"**

26. Defendants have failed to pay any portion of the previous attorneys' fees award they were directed by the Court to pay to Plaintiff in the Court's September 25, 2024 Memorandum & Order for which a motion for entry of a judgment is pending before this Court.

27. Moreover, on April 16, 2025, I received an unsolicited text message from Vito stating "I took whatever money I had and gambled it all to try to double it, there's no proof, stick that up your ass." See ECF Docket Entry 469-1.

28. Based on the foregoing, it is abundantly evident that Defendants will not comply with any Court Order directing them to pay Plaintiff any sum of money.

29. Accordingly, Plaintiff seeks a judgment for $1,229,158.15 broken down as follows: (i) $1,077,898.46 for lost profit; and (ii) $151,259.69 for attorneys' fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ~~July~~ Aug 5, 2025.

Daniella Levi