UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IME WATCHDOG, INC.,

                Plaintiff,

      - against -

SAFA ABDULRAHIM GELARDI, VITO
GELARDI, GREGORY ELEFTERAKIS,
ROMAN POLLAK, ANTHONY BRIDDA,
IME COMPANIONS LLC, CLIENT EXAM
SERVICES LLC, and IME MANAGEMENT
& CONSULTING LLC,

                Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-1032 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

On May 30, 2025, the Court found that Defendants Safa Gelardi ("S. Gelardi") and Vito

Gelardi ("V. Gelardi") (together, "Individual Defendants" or the "Gelardis"), currently proceeding

*pro se*, had waived their attorney-client privilege with respect to whether they had informed their

former attorney, Jonathon Warner ("Attorney Warner"), about the sale of one of their properties.

On July 18, 2025, the Court ordered Attorney Warner to file an affidavit addressing this topic.

Attorney Warner opposed this directive in two submissions to the Court, which the Court now

addresses.   As explained further below, the Court denies Attorney Warner's requests and,

accordingly, he is instructed to file his responsive affidavit by September 2, 2025.

I.      **Procedural History**

The Court assumes the parties' familiarity with the underlying facts and extensive

procedural history of this case, and therefore recites only those facts necessary to resolve the

attorney-client privilege issue raised by Individual Defendants and their former attorney.  This

case was stayed from April 30 to June 30, 2025, following the withdrawal of Attorney Warner, to

allow Individual Defendants to obtain new counsel.  (4/30/2025 Min. Entry (staying case);

5/28/2025 Dkt. Order (extending stay in case to June 30, 2025).)  Notwithstanding the stay, on

May 2, 2025, Plaintiff filed motions for a temporary restraining order ("TRO") and to hold *pro se*

Individual Defendants in civil contempt, as Individual Defendants had purportedly violated the

Court's March 8, 2024 Order by selling their property located at 9 Woods End, Lake Harmony,

PA 18624 (the "Woods End property") without notifying the Court within three (3) days of

entering into the contract to sell.  (Dkts. 477, 478.)  On May 5, 2025, in response to Plaintiff's

motions, the Court ordered Individual Defendants to provide certain financial disclosures and show

cause why all proceeds from the sale of the Woods End property should not be attached.  (5/5/2025

Order to Show Cause ("OTSC"), Dkt. 482.)  The Court also "defer[red] resolution of Plaintiff's

remaining requests until after the stay of this case is lifted, after which [Individual] Defendants

will be given time to oppose Plaintiff's remaining requests." (*Id.* at 4.)  On May 9, 2025, the Court

repeated these instructions.  (5/9/2025 Dkt. Order.)

Still, without waiting for the stay in the case to be lifted or for the Court to grant them time

to oppose Plaintiff's motions, on May 28, 2025, Individual Defendants filed their opposition to

Plaintiff's contempt motion.  (Individual Defs.' Opp'n, Dkt. 498.)  In their opposition brief,

Individual Defendants represented to the Court that they had "kept Attorney . . . Warner fully

informed at every step" of the Woods End property sale.  (*Id.* at 1.)  On May 30, 2025, the Court

found Individual Defendants had, in effect, waived their attorney-client privilege with respect to

whether they had told Attorney Warner about that sale.  (Second Attach. Mem. & Order, Dkt. 500,

at 3.)  The Court further stated that, after the stay in the case was lifted, it would "direct Attorney

Warner 'to respond to Individual Defendants' allegation that they told him about the impending

sale.'"  (7/18/2025 Dkt. Order (quoting Second Attach. Mem. & Order, Dkt. 500, at 3).)  On

July 18, 2025, the Court accordingly directed Attorney Warner "to submit a sworn affidavit stating whether Individual Defendants ever advised him that they had sold the Woods End property and, if so, when and how that communication occurred."  (*Id.*)

That same day, S. Gelardi filed a letter in response to the Court's Order.  (S. Gelardi 7/18/2025 Letter, Dkt. 564.)  In that letter, she "confirm[ed] that Mr. Warner was informed of the pending sale of the Woods End property."  (*Id.* at ECF[1] 1.)  Specifically, S. Gelardi stated that in January 2025, she informed Attorney Warner, who had "called [her] about an overdue balance," that the Gelardis "were under contract" and "were hopeful the sale would close soon."  (*Id.*)  She "followed up with a text message [to Attorney Warner] on January 10, 2025, reaffirming [Individual Defendants'] intent to pay [Attorney Warner] $10,000 from the proceeds once the sale closed."  (*Id.*)  S. Gelardi included a copy of the text message and a March 2025[2] check payable to Attorney Warner in the amount of $10,000.  (*Id.* at ECF 2–3.)

On July 21, 2025, Attorney Warner submitted to the Court his first response to the Court's July 18, 2025 Order.  (Dkt. 566.)  In it, he "request[ed] that the Court reconsider its finding that attorney-client privilege has been waived with respect to" this issue.  (First Warner Resp., Dkt 566-1, at 1.)  Rather than submit an affidavit as directed, he presented several arguments challenging the Court's finding of waiver.  (*Id.* at 2–4.)  On July 31, 2025, Attorney Warner submitted a second response unprompted, wherein he repeated his requests from his first response and requested that the Court grant an extension for him to comply with the Court's Order to submit

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] Though the check is dated October 13, 2025—which has not yet occurred—S. Gelardi clarified that this "is a clerical error," and that check records show "the check was actually processed and cleared in March 2025."  (S. Gelardi 7/18/2025 Letter, Dkt. 564, at ECF 1.)

an affidavit.  (Second Warner Resp., Dkt. 572.)  He also stated that he had asked Individual

Defendants whether they consented to his "disclosure of client confidences in response to" the

Court's Order, and that S. Gelardi had not consented and V. Gelardi had not responded.  (*Id.* at 1.)

By Docket Order dated July 31, 2025, the Court indicated that it would "address Attorney Warner's

arguments . . . at a later date, at which point the Court will also, if necessary, set a renewed deadline

for Attorney Warner to provide an affidavit in response to the Court's 7/18/2025 Order."

(7/31/2025 Dkt. Order.)

## II.    Legal Standard

The party asserting attorney-client privilege "bears the burden of demonstrating that it has

not been waived."  *Benito v. E. Hampton Fam. Med.*, No. 18-CV-5275 (GRB) (AYS), 2020 WL

7481330, at *6 (E.D.N.Y. Dec. 17, 2020) (first quoting *HSH Nordbank AG N.Y. Branch v.

Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009); and then citing *Curto v. Med. World Commc'ns,

Inc.*, 783 F. Supp. 2d 373, 380 (E.D.N.Y. 2011)).  The privilege "can be waived[] either expressly

or impliedly."  *United States v. Tournant*, No. 22-CR-0276 (LTS), 2023 WL 5276776, at *6

(S.D.N.Y. Aug. 15, 2023) (citing *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000)).

"[C]ourts have found waiver by implication when a client testifies concerning portions of the

attorney-client communication, . . . and when a client asserts reliance on an attorney's advice as

an element of a claim or defense."  *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of

Just.*, 697 F.3d 184, 207–08 (2d Cir. 2012) (quoting *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir.

2008)).  For waiver to be implied from a party's claim or defense, "a party must *rely* on privileged

advice from [their] counsel to make [their] claim or defense."  *In re Cnty. of Erie*, 546 F.3d at 229.

"It is . . . well-settled that '[v]oluntary disclosure of privileged communications to a third

party results in waiver of the attorney-client privilege.'"  *Cicel (Beijing) Sci. & Tech. Co. v.

Misonix, Inc.*, 331 F.R.D. 218, 228 (E.D.N.Y. 2019) (quoting *Curto*, 783 F. Supp. 2d at 378).

"Public . . . disclosures[] constitute a waiver of the privilege 'for the communications or portions of communications disclosed.'" *Rekor Sys. v. Loughlin*, No. 19-CV-7767 (LJL), 2023 WL 1972587, at *2 (S.D.N.Y. Feb. 10, 2023) (quoting *United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997)). "Case law has emphasized the role and responsibility of the client in preserving the confidentiality of her communications, and, by extension, the attorney-client privilege." *Hollis v. O'Driscoll*, No. 13-CV-1955 (AJN), 2013 WL 2896860, at *2 (S.D.N.Y. June 11, 2013) (collecting cases); *see also Acme Am. Repairs, Inc. v. Katzenberg*, No. 03-CV-4740 (BMC) (SMG), 2007 WL 952064, at *8 (E.D.N.Y. Mar. 29, 2007) ("A client who voluntarily discloses a communication, consents to its disclosure by another, or even 'voluntarily undertakes actions that will predictably lead to disclosure' to a third party, waives the attorney-client privilege." (quoting *GPA Inc. v. Liggett Grp.*, Nos. 94-CV-5735, 95-CV-2652 (AGS), 1996 WL 389288, at *2 (S.D.N.Y. July 10, 1996))).

## III.    Discussion

### A.    Attorney Warner's Arguments

As noted, Attorney Warner makes several arguments in opposition to the Court's finding that Individual Defendants have waived attorney-client privilege regarding their communications with him about the sale of the Woods End property. First, Attorney Warner stated that he did "not believe that the Individual Defendants made any statements" in their *pro se* opposition to Plaintiff's contempt motion "sufficient to constitute a waiver of this crucial privilege." (First Warner Resp., Dkt 566-1, at 2; *see* Individual Defs.' Opp'n, Dkt. 498.) He "presume[d] that the Court's finding of a waiver is based upon its belief that the Individual Defendants asserted an 'advice-of-counsel' defense" in the opposition brief where they stated they had informed him of the pending sale of the Woods End property. (First Warner Resp., Dkt 566-1, at 2.) He argues that Individual Defendants, however, did not present an advice-of-counsel defense in that brief

5

because they had not asserted that he "had ever advised them that they could secretly sell the . . . Woods End [p]roperty without informing the Court of the sale." (*Id.* (citing *In re Cnty. of Erie*, 546 F.3d 222).) Attorney Warner's argument is factually incorrect, as Individual Defendants explicitly argued in their opposition brief that they had relied on his advice, writing, "[w]e did everything we thought was right. We relied on our lawyer's guidance, and now we're being punished for it. How is that fair?" (Individual Defs.' Opp'n, Dkt. 498, at 2.) Individual Defendants implicitly waived their attorney-client privilege on the subject of the Woods End property sale by expressly claiming to "*rely* on . . . advice from [their then-]counsel" in presenting a defense to Plaintiff's contempt motion. *In re Cnty. of Erie*, 546 F.3d at 229.

Second, Attorney Warner argues that "any purported advice-of-counsel defense is immaterial at this time" because (1) the Court has yet to find Individual Defendants in contempt for failing to timely disclose the sale of the Woods End property, and (2) the advice-of-counsel defense is not a defense to a contempt charge, as it is only relevant when determining appropriate sanctions for contempt. (First Warner Resp., Dkt 566-1, at 2 (citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175 (KMW), 2021 WL 3418475, at *9 (S.D.N.Y. Aug. 5, 2021)).) Without citation to any legal authority, he then claims that "[t]he attorney-client privilege cannot be waived based upon an immaterial defense which does not put the attorney-client communications into issue." (*Id.*) Aside from being legally incorrect, *see, e.g.*, *In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 532 (S.D.N.Y. 2002) ("A party . . . can waive privilege by placing privileged communications 'at issue' in the litigation by, for example, asserting reliance on counsel as a defense to justify its actions." (quoting *In re Lifetrade Litig.*, No. 17-CV-2987 (JPO) (KHP), 2022 WL 3644357, at *2 (S.D.N.Y. Aug. 24, 2022)), this argument is ultimately irrelevant, as S. Gelardi doubled down on revealing Individual Defendants' communications with

Attorney Warner in her July 18, 2025 letter, wherein she "confirm[ed] that Mr. Warner was informed of the pending sale of the Woods End property," and voluntarily provided a copy of the text message wherein they informed him of the sale. (S. Gelardi 7/18/2025 Letter, Dkt. 564, at ECF 1, 4.)  Thus, it is not necessary for the Court to determine whether Individual Defendants' attempt to rely on Attorney Warner's advice as a defense to a civil contempt charge can result in waiver because S. Gelardi subsequently voluntarily disclosed a copy of this communication to the Court, thereby voluntarily waiving attorney-client privilege as relates to it. *See Cicel (Beijing) Sci. & Tech. Co.*, 331 F.R.D. at 228 (noting that "[v]oluntary disclosure of privileged communications to a third party results in waiver" (collecting cases)).

Third, Attorney Warner suggests that the Court, rather than find that Individual Defendants have waived attorney-client privilege as to this issue, instead "strike the Individual Defendants' submission from the docket, and permit them to file [a] new opposition to [P]laintiff's contempt motion." (First Warner Resp., Dkt 566-1, at 3.)  This is appropriate, he argues, because Individual Defendants filed their opposition brief without the Court directing them to do so, "and it appears that the Individual Defendants did so only because they were not represented by counsel and were unaware that they could have waited to respond until after the stay was lifted." (*Id.* at 2–3.)  Thus, "[i]t would be unfair to the Individual Defendants for the Court to find that they had waived the attorney-client privilege." (*Id.* at 3.)

As the Court has explained, though, Individual Defendants filed their opposition to Plaintiff's motions and their July 18, 2025 letter after the Court twice stated that Individual Defendants would be given time to address Plaintiff's motions after the stay—which the Court explicitly imposed to allow Individual Defendants to obtain new counsel—was lifted. (5/5/2025 OTSC, Dkt. 482; 5/9/2025 Dkt. Order); *see also Hollis*, 2013 WL 2896860, at *3 ("Respondent

7

cites no case law—and the Court has found none—to support her argument that a party, whether proceeding *pro se* or represented by counsel, must thoroughly understand the nature of the attorney-client privilege before it can be waived."). And S. Gelardi filed the July 18, 2025 letter, which included a copy of the January 2025 text message informing Attorney Warner of the sale, one-and-a-half months after initially disclosing to the Court the nature of this communication *and weeks after the stay had been lifted*. (S. Gelardi 7/18/2025 Letter, Dkt. 564.) S. Gelardi's actions were considered and deliberate; indeed, by twice disclosing their communications with Attorney Warner, Individual Defendants were plainly seeking to avoid a contempt finding for having sold the Woods End property without the required notice, in direct contravention of the Court's prior Order. The Court thus finds this argument without merit, *see Hollis*, 2013 WL 2896860, at *3 (finding that a party, then acting *pro se*, had "waived any privilege that may have previously attached" to a document when "there [was] no indication that [the party] accidentally filed a document that she intended to keep confidential" (citations omitted)), and denies Attorney Warner's request to strike Individual Defendants' responses from the docket. *Cf. id.* (determining that a party's errors, committed while proceeding *pro se*, cannot be retroactively corrected when the party has later obtained counsel, who then advised the party that they previously "may have [taken] an unwise course of action"). As noted below, though, the Court will provide Individual Defendants the opportunity to more fully respond to the substance of Plaintiff's contempt and TRO motions at a later date, if necessary.

Fourth, Attorney Warner argues that the New York Rules of Professional Conduct 1.6 and 1.9 require him "to not knowingly reveal 'confidential information'" about his former clients, Individual Defendants. (First Warner Resp., Dkt 566-1, at 3.) He argues that he is in an "untenable position" of being directed by the Court "to disclose client confidences" when he is concerned that

"former clients have not had an opportunity to be heard on the waiver issue" and that the "Court did not provide any reasoning for its finding that the attorney-client privilege has been waived." (*Id.*) Attorney Warner further takes issue with the Court ordering him to disclose this information "based upon an unnecessary pro se submission made . . . during a stay of proceedings." (*Id.*) In his second response, Attorney Warner stated that S. Gelardi does not consent to the disclosure of client confidences, and V. Gelardi has not responded to his inquiry.  (Second Warner Resp., Dkt. 572, at 1.)

Regarding his concern that Individual Defendants "have not had an opportunity to be heard on the waiver issue," (First Warner Resp., Dkt. 566-1, at 3), the Court notes that they have had the benefit of their former counsel submitting two letters in opposition to the Court's finding of waiver. Further, rather than indicate in any way that the initial disclosure of these communications with Attorney Warner might have been unintentional, S. Gelardi followed up with the Court not only to reiterate that Individual Defendants had informed Attorney Warner of the sale of the Woods End property, but to provide a copy of that communication—again, this was after the stay had been lifted.  (S. Gelardi 7/18/2025 Letter, Dkt. 564, at ECF 1, 4.)  And regarding his concern that the Court had not provided its reasoning for its finding, the Court has now addressed each of Attorney Warner's arguments in this Memorandum & Order.  Lastly, regarding Attorney Warner's claims in his second response about his former clients' purported lack of consent to him disclosing their communications, the Court first notes that Attorney Warner's second response was submitted on July 31, 2025, not even two weeks after S. Gelardi voluntarily filed with the Court a copy of the January 2025 text message informing Attorney Warner of the sale.  (*Id.*; Second Warner Resp., Dkt. 572.)  Yet, Attorney Warner fails to acknowledge this filing in his second response.  Even assuming S. Gelardi regretted making this filing, that does not undo or negate the waiver.  *See*

9

*Hollis*, 2013 WL 2896860, at *3 (noting that even when a *pro se* party "realizes that she may have made a mistake in choosing to submit [materials] to the Court, such after-the-fact regrets do not alter the analysis regarding whether she waived the privilege").

*        *        *

For the reasons stated above, the Court reiterates its finding that Individual Defendants have waived their attorney-client privilege with respect to conversations concerning the Woods End property sale, and directs Attorney Warner to, by September 2, 2025, submit a sworn affidavit stating whether Individual Defendants ever advised him that they had sold the Woods End property and, if so, when and how that communication occurred.  Attorney Warner's response should address all evidence S. Gelardi included in and attached to her July 18, 2025 letter, (S. Gelardi 7/18/2025 Letter, Dkt. 564), and should explain why, if Individual Defendants informed him of the sale, he did not notify the Court within three (3) days of Individual Defendants entering into the contract to sell, as was required by the Court's March 8, 2024 Order.  If, after reviewing Attorney Warner's affidavit, the Court determines additional briefing is necessary to resolve Plaintiff's contempt and TRO motions, (Dkt. 477), the Court will instruct Individual Defendants to further respond.

### B.        Plaintiff's Attempts to Obtain Additional Privileged Information

Attorney Warner notes that "[P]laintiff's always overzealous counsel has already threatened [his law firm] with a subpoena seeking all sorts of privileged materials as a result of this Court's May 30[, 2025] Order and has written [them] a letter . . . with the belief that the May 30[, 2025] Order has opened the door to disclosure of all sorts of privileged communications." (First Warner Resp., Dkt 566-1, at 4; *see* Second Attach. Mem. & Order, Dkt. 500.)  The Court clarifies that its finding has not, in fact, opened the door to any disclosures beyond those identified in this Memorandum & Order.

**IV.    Conclusion**

The renewed deadline for Attorney Warner to provide an affidavit in response to the Court's July 18, 2025 Order is September 2, 2025.  Attorney Warner's response should comply with the instructions provided above.  The Court will provide Attorney Warner with a copy of this Order via email, and so it is not necessary for either party to do so, or to file proof of service on the docket.  Attorney Warner should submit his affidavit to the Court via email, and the Court will file his affidavit on the docket.  In accordance with the Court's 7/21/2025 Docket Order instituting a filing injunction, no response to Attorney Warner's affidavit should be filed unless the Court later solicits any responses.

SO ORDERED.

*/s/ Pamela K. Chen*

Dated:  August 25, 2025                       Pamela K. Chen
            Brooklyn, New York                United States District Judge