UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

IME WATCHDOG, INC.,

*Plaintiff,*

Case No.: 1:22-cv-1032 (PKC)(JRC)

-against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
ROMAN POLLAK, JONATHON D. WARNER, ESQ.
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

*Defendants.*

-------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW (NO-DAMAGES)**

**Preliminary statement**

**INTRODUCTION**

After 3½ years of preliminary-injunction protection and extensive discovery, Plaintiff still has not proved **any compensable loss** with **reasonable certainty** or **proximate causation**. Its "damages" consist of (i) a **QuickBooks "Sales by Customer Summary"** and (ii) an **Excel worksheet created for this litigation**—neither of which proves that **any dollar of revenue** was **lost because of Defendants**. The "customer list" underpinning both is **inflated**—including **deceased attorneys** and **attorneys Defendants never serviced**—and padded with **zero-dollar entries, dormant accounts, one-off matters**, and names duplicated across years. On this record, the only lawful award is **$0**, and the absence of measurable harm forecloses a **permanent injunction**.

**I. GOVERNING STANDARDS: ACTUAL, PROVEN LOSS; NO SPECULATION**

**Compensatory only; no punishment.** Civil contempt compensation and damages must **compensate actual loss**, not punish. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947); *CBS Broad., Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).

**Reasonable certainty & causation.** The Second Circuit requires damages proven with **reasonable certainty** and **proximate causation**; speculative, "average," and back-of-the-envelope models fail. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110–12 (2d Cir. 2007); *Schonfeld v. Hilliard*, 218 F.3d 164, 172–76 (2d Cir. 2000); *Kenford Co. v. Cnty. of Erie*, 67 N.Y.2d 257, 261–63 (1986).

**Trade-secret money must mirror Plaintiff's loss.** New York's high court rejects avoided-cost/defendant-benefit windfalls; **Plaintiff must prove its own loss**. *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 454–58 (2018).

**Injunctions are exceptional.** There is **no presumption** of irreparable harm; if injuries are quantifiable by money (and here they were—if they existed), **permanent injunctions are improper**. *eBay Inc. v. MercExchange*, 547 U.S. 388, 391–94 (2006); *Salinger v. Colting*, 607 F.3d 68, 76–83 (2d Cir. 2010); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117–20 (2d Cir. 2009).

## II. PLAINTIFF'S TWO "PROOFS" DO NOT PROVE DAMAGES

### A. QuickBooks "Sales by Customer Summary" is not damages evidence

1. **It proves Plaintiff's historical sales, not Defendants' causation.**
   A "Sales by Customer Summary" is an **internal roll-up** of Plaintiff's receipts; it does **not** show that any name was **lost to Defendants**, **when**, or **why**—nor the **dollar delta** attributable to Defendants. It cannot satisfy the **reasonable-certainty** and **causation** requirements. (*Tractebel; Schonfeld.*)

2. **The inputs are facially inflated and unreliable.**
   The summaries include **zero-dollar rows**, **dormant accounts**, **one-off $150–$265 matters**, and **duplicative names** across periods—plus **deceased attorneys** and **attorneys Defendants never serviced**. Such inclusion demonstrates the reports are **marketing/contact universes**, not a set of **revenue-bearing customer relationships**.

3. **Even if accurate historically, it cannot compute loss.**
   Lost profits require **customer-level, before/after proof** (last spend with Plaintiff; allegedly diverted spend to Defendants; the difference) and **cost data** to reach profit. A QB roll-up provides **neither**.

**B. The Excel worksheet is inadmissible or entitled to no weight**

1. **Not a business record (FRE 803(6)).**
   A spreadsheet **compiled for litigation** is not a regularly-kept business record. Without a proper custodian foundation and the **underlying source records**, it's **hearsay**.

2. **Fails Rule 1006 summary requirements.**
   If offered as a **summary of voluminous records**, Plaintiff must **produce the underlying invoices, deposits, reconciliations, and tax returns** so the Court can verify accuracy. It did not. A "summary" with no underlying records is inadmissible or weightless.

3. **Methodology is unreliable.**
   The workbook uses **assumptions** (e.g., porting **2021 margins** into **2022**, applying "average revenue per client," or redacted "profit" rates with no cost proof). That is not a **reliable** measure of **Plaintiff's** loss. (*Schonfeld*.)

## III. THE "CUSTOMER LIST" IS INFLATED AND UNTRUSTWORTHY

**Marketing lists are not protectable "customer lists."** New York draws a line between **true, non-public customer information** and **readily ascertainable contact directories**; the latter are **not** protectable and cannot support speculative loss theories. *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 392–94 (1972).

**Concrete defects here (to be supported by Exhibits):**

- **Deceased attorneys included.** Plaintiff's list counts attorneys who are **deceased** as "customers," rendering the dataset facially unreliable.

- **Attorneys never serviced by Defendants included.** Names appear for which **Defendants never performed any service**—eliminating causation.

- **Sued/alienated "customers."** At least two attorneys on the list were **defendants in this case** or otherwise **alienated by Plaintiff's own conduct**. It is not credible to treat them as "lost to Defendants" or likely "returning" customers.

- **Zero-dollar/dormant/duplicates.** These entries cannot support lost-profit calculations "with reasonable certainty." (*Tractebel; Kenford; Freund.*)

**Revenue reality contradicts the narrative.** If Plaintiff truly had ≈**476 paying clients**, its **2015–2016 gross receipts** would be multiples higher than Defendants' **2021 receipts from ~67 clients**. They were not. This **economic contradiction** destroys Plaintiff's "hundreds of clients" premise. *Schonfeld*, 218 F.3d at 172–73 (rejecting models that conflict with business realities); *E.J. Brooks*, 31 N.Y.3d at 454–58.

**Missing the simplest proof: tax returns.** The **first page of Form 1065** (gross receipts) would have resolved this without revealing client identities. Plaintiff's choice **not** to supply it—while delivering 290 pages of summaries—speaks volumes.

## IV. CAUSATION FAILS AS A MATTER OF LAW

Plaintiff must prove that **Defendants' conduct caused the loss**, not that loss could have occurred for any number of reasons. *Tractebel*, 487 F.3d at 111–12. Here, causation is broken by:

- **Client choice.** Law firms and claimants choose vendors independently; switching vendors ≠ "loss caused by Defendants."

- **Plaintiff's own conduct.** Firms alleged Plaintiff **poached** their clients or otherwise soured the relationship; Plaintiff also **sued** certain attorneys. Those are **intervening causes** Plaintiff cannot charge to Defendants.

- **Temporal gaps and dormancy.** Many names reflect **no recent activity** with Plaintiff, precluding any inference that Defendants caused a contemporaneous loss.

## V. WITH NO PROVEN LOSS, THERE CAN BE NO PERMANENT INJUNCTION

Permanent injunctions require **(1) irreparable injury, (2) inadequacy of money damages, (3) balance of hardships, (4) public interest**. *eBay*, 547 U.S. at 391; *Salinger*, 607 F.3d at 76–83. Plaintiff's own submission reduces to a **money claim** it failed to prove. **No irreparable harm**

has been established; an injunction functioning as an **industry ban** is improper. The Court has already shown it will **not** enter overbroad permanent relief against others; the same principle applies here.

**VI. THE PROPER DISPOSITION IS $0 (AND DENIAL OF PERMANENT RELIEF)**

Because Plaintiff did not present **customer-level, dollar-specific** proof tied to **Defendants' conduct**, and because its models rely on **inflated directories**, **deceased/never-served names**, **duplicates**, **zero-dollar/dormant entries**, and **assumptions** instead of evidence, the burden has not been met. The Court should award **$0** and **deny** any request for a permanent injunction (or, at most, consider only a narrow, time-limited order tethered to **specifically proven, protectable, non-public** customer data—none shown).

**CONCLUSION**

Plaintiff was given every opportunity to prove damages "with particularity." Instead, it submitted a QuickBooks summary and an Excel worksheet that do not establish a single dollar of loss caused by Defendants. The "customer list" is padded with duplicates, zero-dollar entries, dormant names, deceased attorneys, and attorneys Defendants never serviced. After 3½ years of protection under preliminary injunctions, Plaintiff still cannot identify one actual client loss, one dollar of revenue diverted to Defendants, or one cost of goods sold to substantiate a profit margin.

The law requires damages to be proven with **reasonable certainty** and **proximate causation**. Speculation, averages, and inflated marketing lists are not proof. The law also forbids windfall measures untethered to Plaintiff's own loss. Where no actual loss is shown, the proper award is **$0**.

Because Plaintiff has failed to meet its burden, the Court should:

1. Deny Plaintiff's request for compensatory damages and award **$0**; and

2. Deny Plaintiff's request for a permanent injunction, as Plaintiff has failed to establish irreparable harm, inadequacy of legal remedies, or a basis in equity for continued restrictions.

Respectfully submitted,

/s/ Safa A. Gelardi

/s/ Vito Gelardi

| Atty | Companion | Client | Date of service | amount billed |
|---|---|---|---|---|
| Elliot Weinreb | Assaf | Janice Morris- 1 hour | 8/20/2024 | 150 |
| Kleban Law | Christian | john Louissaint | 3/20/2023 | 265 |
| Kleban Law | Fari | Martina Tiaxcuntitila | 3/14/2023 | 220 |
| Kleban Law | | Thomas Mendelsohn | 1/10/2024 | 175 |
| Kleban Law | | | 12/5/2023 | 175 |
| Kleban Law | Jeff | Thomas Mendelsohn | 1/9/2024 | 175 |
| Kleban Law | | David howard | 8/17/2023 | |
| Gabriel Law | Christian | Hector B collins | 4/9/2025 | 175 |
| Gabriel Law | Christian | Mark Bavner | 4/18/2025 | 175 |
| Gabriel Law | Mark | Mark Bavner | 4/24/2025 | 175 |
| Gabriel Law | Christian | John Gutierrez | 8/29/2024 | |
| Gabriel Law | | Luis Tolsen | 9/24/2024 | |
| Gabriel Law | | Jimenez Josef | | |
| Gabriel Law | Christian | Jason Kendall | 10/25/2024 | 175 |
| Gabriel Law | | Maurice | 11/11/2024 | 220 |
| Gabriel Law | | Ricardo Rojas | 11/27/2024 | 175 |
| Gabriel Law | | Elizabeth | 2/27/2025 | |
| Gabriel Law | | | 3/6/2025 | |
| Gabriel Law | | Carlos Molina | 3/10/2025 | |
| Gabriel Law | | Jose Manarez | 5/20/2025 | 175 |
| Gabriel Law | Christian | Benjamin | 5/30/2025 | |
| Gabriel Law | Christian | Pauline Cameron | 6/5/2025 | 225 |
| | Jeff | Eric Lackenbauer | 3/31/2023 | |
| Judeh Kuller | Jeff | ARJOLA COLLAKU MANAHASA, | 1/23/2024 | 150 |
| Salomon Aminov | Christian | MOHAMMED MOHSIN, | 7/29/2024 | |
| Judeh Kuller | Jeff | HENRY SAINT VIL | 7/2/2024 | 150 |
| Judeh Kuller | Christian | QUERIDA FLORES, ANDREW TORO | 11/15/2023 | 150 |