*** Filed ***
01:07 PM, 17 Dec. 2025
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

**BROOKLYN DIVISION**

 **IME WATCHDOG, INC.,**

Plaintiff,

v.

**SAFA GELARDI, VITO GELARDI, and IME COMPANIONS, LLC,**

Defendants.

 **Case No. 1:22-cv-01032 (PKC) (JRC)**


## PRO SE DEFENDANT SAFA ABDULRAHIM GELARDI'S EMERGENCY MOTION FOR (1) IMMEDIATE ADMINISTRATIVE STAY AND STAY OF ENFORCEMENT UNDER FED. R. CIV. P. 62(b) AND (2) TEMPORARY RESTRAINING ORDER UNDER FED. R. CIV. P. 65 HALTING COLLECTION PENDING THE COURT'S RULING ON DEFENDANT'S NOVEMBER 10, 2025 SUBMISSION

**EMERGENCY: PLAINTIFF IS USING A NYC MARSHAL LEVY AGAINST INNOCENT HOME PURCHASERS AND DIVERTING PAYMENTS THAT COVER THE MORTGAGE**.

I am Safa Gelardi, pro se. I respectfully request an immediate administrative stay and stay of enforcement under Fed. R. Civ. P. 62(b), and a temporary restraining order ("TRO") under Fed. R. Civ. P. 65 halting collection on the approximately $66,000 contempt sanctions judgment/order entered on or about August 13, 2025 (the "Sanctions Judgment"), pending the Court's ruling on my November 10, 2025 submission addressing willfulness—the basis for the sanctions.


This motion is an emergency because Plaintiffs are actively enforcing in a manner that harms innocent third parties and threatens housing stability. A NYC Marshal is directing home purchasers to divert the monthly payments that keep a mortgage current. The Court should preserve the status quo while it reviews willfulness.

**RELIEF REQUESTED (SUMMARY)**

Immediate administrative stay.

Stay of all enforcement under Rule 62(b) pending the Court's ruling on willfulness.

TRO under Rule 65 stopping all collection activity (including levy/execution/garnishment/demands to third parties) until the Court rules.

Order Plaintiff to immediately instruct NYC Marshal Edward F. Guida Jr. (Badge #14; Marshal's Docket # E3048) to hold the levy and file proof of compliance within 24 hours.

## I. EMERGENCY FACTS AND IRREPARABLE HARM

On or about December 14, 2025, New York City Marshal Edward F. Guida Jr. (Badge #14) served execution/levy papers at 148 Claypit Rd, Staten Island, NY 10309 and directed the occupants to divert payments to the Marshal. The Marshal's paperwork reflects a total of $72,021.50 (judgment plus interest/fees/poundage). (Ex. B-1–B-3.)

These people are not tenants. They are purchasers under a rent-to-own arrangement, paying the mortgage monthly to own the home. The purchaser texted me immediately after the Marshal visit, in fear (verbatim):

*"Yo Safa WTF A Marshall just came to my house with papers saying Inhave to pay him 66k from some judgment on you or he's siding my house today. We have kids here, we've been paying the mortgage every month to own this place. What thehell are we suppose to do. I'm freakin out. Sending you the paper work he left behind." (Ex. B-4.)*

This case has been going on for **almost four years**. That matters. If Plaintiffs truly had evidence that I threatened anyone, coerced anyone, or sent trade secret materials to workers, that evidence would have been presented long ago—especially after years of discovery and extensive forensic work. Instead, after years of litigation, they choose *now*—right before the holidays—to escalate with a marshal levy at a family home and a new federal case against former workers. The timing supports the inference that this is pressure and intimidation, not a normal, evidence-driven enforcement step

This is immediate irreparable harm. It destabilizes a family home and directly threatens the mortgage-payment arrangement while the Court is reviewing willfulness. Irreparable harm is the "single most important prerequisite" for injunctive relief. Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990).

Plaintiffs could have pursued ordinary collection routes that do not involve showing up at a family home and diverting mortgage payments from non-parties. Instead, Plaintiffs chose the most coercive route—pressuring innocent third parties at their home. Emergency relief is necessary now.

## II. WHAT I UNDERSTOOD AND WHY THIS IS NOT WILLFUL

At the time I retained an investigator, I understood the injunction to prohibit me from direct contact or proximity with Plaintiff and Plaintiff's agents. After the tracker incident and after Plaintiff filed the contempt motion, my understanding is that the Court later clarified/amended the order to address indirect conduct through third parties.

I did not act with the mindset of "let me violate an order." I acted with the mindset of: "I need proof, I need protection, and I need to show the Court what is being done to me."

While I was represented, I looped counsel into the investigator/forensics process and relied on counsel for guidance. For example, on November 3, 2022, PI Michael Roberts sent the Zoom link for an investigator call and copied my counsel, Jonathon Warner, who affirmatively participated and confirmed the meeting time ("Yes, 8 am tomorrow is good for me."). (Ex. A.) This contemporaneous record supports that I was acting transparently, with counsel involved, and not with willful intent to violate any order.

## III. WHAT ACTUALLY HAPPENED (THE REAL FACTS)

There was no contact and no communication with Plaintiff, Plaintiff's agents, or anyone on Plaintiff's side—no calls, no texts, no messages, and no threats.

 What happened is this: the investigator I used (Steve) pitched me a GPS tracker as a cheaper option. The tracker was placed on Carlos Roa's vehicle while it was parked on a public street. It was discovered within minutes (approximately five minutes), and nothing came of it. There was no communication with anyone.

 My former attorney did not know about the tracker itself. But he did know I was retaining/using an investigator, and he did not advise me not to. I never willfully intended to violate any order.

## IV. LEGAL STANDARDS

**A. Stay / Administrative Stay. Rule 62(b) authorizes the Court to stay enforcement of a judgment "on terms for bond or other security." The Court also has inherent authority to enter a short administrative stay to preserve the status quo while it considers the merits. Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936). Courts weigh the stay factors articulated in Hilton v. Braunskill, 481 U.S. 770, 776 (1987) and Nken v. Holder, 556 U.S. 418, 434 (2009). The first two factors—merits and irreparable harm—are the most critical. Nken, 556 U.S. at 434.**


**B. TRO / Injunctive Relief (Second Circuit). In the Second Circuit, a TRO/preliminary injunction is warranted where the movant shows irreparable harm and either (1) likelihood of success or (2) sufficiently serious questions going to the merits plus a balance of hardships tipping decidedly in the movant's favor. Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010); Salinger v.**

Colting, 607 F.3d 68, 79–80 (2d Cir. 2010). The Supreme Court's Winter factors are consistent with this framework. Winter v. NRDC, 555 U.S. 7, 20 (2008).

## V. ARGUMENT

### A. At Minimum, There Are Serious Questions Going to Willfulness

The Sanctions Judgment rests on willfulness. That predicate is under review through my November 10, 2025 submission. The Court does not need to decide the entire merits today to grant interim relief; it only needs to recognize that enforcement is causing immediate harm while willfulness is unresolved.

The contemporaneous record supports serious questions about willfulness: counsel was copied, counsel participated in the investigator process (Ex. A), and there was no secret contact, no threats, and no communication with Plaintiff or her agents.

### B. Irreparable Harm Is Happening Now

This is not a routine "money later" dispute. A NYC Marshal is pressuring purchasers to divert payments that cover a mortgage and causing fear and chaos at a family home with children. (Ex. B-4.) That is irreparable harm under Second Circuit law. Reuters, 903 F.2d at 907. It also satisfies Winter's irreparable harm requirement. Winter, 555 U.S. at 20.

### C. The Balance of Hardships Strongly Favors a Pause

A short pause does not deprive Plaintiff of a judgment; it preserves the status quo while the Court rules on willfulness. By contrast, denial of interim relief risks mortgage default, housing instability, and coercive pressure on non-parties. Under Citigroup, this hardship imbalance supports injunctive relief.

This case has dragged on for nearly four years, and Plaintiffs have repeatedly escalated pressure at moments when the record is catching up to the narrative—through aggressive enforcement tactics, third-party targeting, and collateral filings. I am not asking the Court to referee emotions or rhetoric. I am asking the Court to recognize the pattern and stop further harm to innocent people while willfulness is under review. Whatever Plaintiffs hoped to accomplish by escalating pressure, I am focused on resolving this on the record and through the Court

### D. Public Interest and Integrity of the Court's Process Favor Relief

The public interest favors orderly judicial process and preventing misuse of court orders to coerce outcomes through third-party pressure. Courts have inherent authority to prevent abuse and protect the integrity of proceedings. Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991).

The sanctions narrative has been framed as if I was the coercive actor. But the record already contains indicia pointing the other direction. A recording was played to the Court involving Steven Rambam's questioning of Adam Rosenblatt, and when the parties believed the

microphone was off, Mr. Rosenblatt is heard saying: **"Am I going to jail?"** That statement is not consistent with a simple story in which I was the coercive party.

Plaintiffs also used Mr. Rambam to interrogate the investigator I retained (Steve), after subpoenaing him for records. This pattern—aggressive interrogation and pressure directed at witnesses and third parties—matters here for a narrow reason: it helps explain why Plaintiffs' current strategy is to escalate pressure outward (purchasers, workers) rather than allow the Court to complete its review of willfulness. The Court does not need to decide the entire merits today. It should stop enforcement escalation now and preserve the status quo

Two weeks before the holidays, Plaintiffs filed a new SDNY action against former workers/associates—IME WatchDog, Inc. v. Beiben et al., No. 1:25-cv-10218 (S.D.N.Y. filed Dec. 10, 2025). (Ex. C.) Plaintiffs have not identified any specific communications tying those workers to wrongdoing despite extensive forensics in the related litigation. The timing and escalation support Court supervision to prevent pressure tactics while this Court reviews willfulness.

I have previously informed the Court that, at one point, I offered to meet Plaintiff's full demand in an effort to end this litigation. Plaintiff declined. I am not raising settlement details for the Court to adjudicate, but to underscore a point the Court has already heard: the escalation here—levying a family home and expanding litigation to former workers—appears aimed at pressure and destruction rather than a good-faith effort to resolve a damages dispute. This is why the Court should halt enforcement and preserve the status quo while willfulness is under review

### E. Direct Statement to the Court

Your Honor, I understand you served as a federal prosecutor before joining the bench and prosecuted serious cases. In that work you evaluated coercive and intimidation tactics in real time. This behavior will be familiar to you: using "process" to apply maximum pressure to vulnerable third parties while key issues are still under review. I respectfully ask the Court to stop the escalation, hold the levy, and preserve the status quo while willfulness is being decided.

Plaintiffs' narrative remains unsupported by identifiable communications, despite years of discovery and forensics and

### F. Bond Should Be Waived

Rule 65(c) leaves the amount of security to the Court's discretion, and courts may require no bond. Corning Inc. v. PicVue Elecs., Ltd., 335 F.3d 132, 156 (2d Cir. 2003); Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 136 (2d Cir. 1997). Defendant requests waiver or nominal bond due to hardship and the narrow, temporary nature of relief.

### VI. NOTICE

I provided notice of this emergency motion to Plaintiff's counsel on December 15, 2025 by email and requested that they halt enforcement pending the Court's ruling.

## VII. REQUESTED RELIEF

Enter an immediate administrative stay.

Stay all execution, collection, and enforcement of the Sanctions Judgment under Fed. R. Civ. P. 62(b) pending the Court's ruling on the willfulness record / November 10, 2025 submission.

Issue a TRO under Fed. R. Civ. P. 65 prohibiting Plaintiff and anyone acting at its request or direction from continuing any levy, execution, restraint, garnishment, or other collection steps pending the Court's ruling.

Order Plaintiff to immediately notify and instruct NYC Marshal Edward F. Guida Jr. (Badge #14; Marshal's Docket # E3048) to stop and hold the levy and file proof of compliance within 24 hours.

Waive bond .

Order Plaintiff to file, within 24 hours, a sworn certification identifying (a) all enforcement steps taken or threatened in the last 60 days relating to the sanctions judgment (including marshal instructions and third-party contacts), and (b) any specific communications Plaintiff contends exist tying the SDNY worker-defendants to the alleged conduct (identified by date/sender/recipient).

Order Plaintiff, within 24 hours, to file a notice on the SDNY docket in IME WatchDog, Inc. v. Beiben et al., No. 1:25-cv-10218 (S.D.N.Y.) attaching this Court's stay/TRO (or noting this emergency motion if the Court has not yet ruled), so the SDNY Court is aware enforcement and willfulness are under active review here.

Grant such other relief as the Court deems just.


Dated: December 15, 2025


/s/ Safa Gelardi

Safa Gelardi, Pro Se

EXHIBIT LIST (ATTACH AS SEPARATE EXHIBITS WHEN FILING)

Exhibit A: PI Mike / Zoom scheduling email chain (shows counsel copied and participating).

Exhibit B-1: Execution with Notice to Garnishee (Kings County).

Exhibit B-2: Notice to Garnishee (Dec. 2, 2025).

Exhibit B-3: NYC Marshal Levy and Demand (Marshal's Docket # E3048).

Exhibit B-4: Purchaser text message (verbatim).

Exhibit C: SDNY Complaint excerpts (IME WatchDog, Inc. v. Beiben et al., No. 1:25-cv-10218; filed 12/10/2025).

**EXHIBIT A-1: PI Mike / Zoom scheduling email chain (shows counsel copied and participating)**

12/15/25, 2:54 PM                                          Gmail - Zoom Link



Safa Gelardi <safagelardi@gmail.com>

**Zoom Link**
1 message

Michael @ Rexxfield <michael@rexxfield.com>                          Thu, Nov 3, 2022 at 6:54 AM
To: Safa Gelardi <safagelardi@gmail.com>
Cc: Jonathon Warner <jdwarner@wslaw.nyc>, Anna Brown Rexxfield <anna@rexxfield.com>

https://us02web.zoom.us/j/88191159231?pwd=YUJXQjVhd3RrR2szTW13STBPRkVjQT09

With my kindest regards,
*Michael Roberts*
Founder - Private Investigator

USA  +1-408-916-5977
Australia +61 73040 2223
Europe +358 9 2316 9888
United Kingdom +44 20 3286 3377
Hong Kong  +852-8199-9574

On 3 November 2022 at 12:47:39, Safa Gelardi (safagelardi@gmail.com) wrote:

Good morning Mike, please send Jonathan and I the zoom link please. We already to
Join the call.

On Wed, Nov 2, 2022 at 1:32 PM Safa Gelardi <safagelardi@gmail.com> wrote:
Yes! Eastern

On Wed, Nov 2, 2022 at 12:07 PM Mike Roberts <michael@rexxfield.com> wrote:
Eastern time yes?

Anna, can u join?

On Wed, Nov 2, 2022 at 17:03 Jonathon Warner <jdwarner@wslaw.nyc> wrote:

Yes, 8 am tomorrow is good for me.


+Jonathon D. Warner, Esq.

Warner & Scheuerman

6 West 18th Street, 10th Floor

New York, NY 10011

Office: 212.924.7111

Fax:     212.924.6111

Cell:     917.656.4197

www.wslaw.nyc



From: Safa Gelardi <safagelardi@gmail.com>
Sent: Wednesday, November 02, 2022 11:53 AM
To: Mike Roberts <michael@rexxfield.com>

**EXHIBIT A-2: PI Mike / Zoom scheduling email chain (shows counsel copied and participating)**

12/15/25, 2:54 PM                                                        Gmail - Zoom Link

**Cc:** Jonathon Warner <jdwarner@wslaw.nyc>
**Subject:** Re: forensics

Dear Jonathan, is there anyway we could do an 8am NY time conference call?

On Wed, Nov 2, 2022 at 11:51 AM Mike Roberts <michael@rexxfield.com> wrote:

11 AM works, but I am in Europe, and Anna is in Australia, so it would be better if we could do first thing in the morning your time.

On Wed, Nov 2, 2022 at 16:31 Jonathon Warner <jdwarner@wslaw.nyc> wrote:

At 11 am?

Sent from my iPhone

On Nov 2, 2022, at 11:20 AM, Safa Gelardi <safagelardi@gmail.com> wrote:

Hi Michael, I will let my attorney Jonathan know that tomorrow works for you, hopefully, it works for Jonathan.

Safa G

On Wed, Nov 2, 2022 at 11:16 AM Mike Roberts <michael@rexxfield.com> wrote:

I thought you meant tomorrow, I had to leave now for a meeting sorry

On Wed, Nov 2, 2022 at 15:56 Safa Gelardi <safagelardi@gmail.com> wrote:

I will call you in 15 min.

On Wed, Nov 2, 2022 at 10:54 AM Mike Roberts <michael@rexxfield.com> wrote:

Yes, but earlier is better. Anna cant make that time. 8-9am your time is perfect

On Wed, Nov 2, 2022 at 15:53 Safa Gelardi <safagelardi@gmail.com> wrote:

Hi Michael, my atty can speak with us at 11:15. are you available at that time?

---------- Forwarded message ---------
From: **Jonathon Warner** <jdwarner@wslaw.nyc>
Date: Wed, Nov 2, 2022 at 10:52 AM
Subject: Re: forensics
To: Safa Gelardi <safagelardi@gmail.com>

How is 11:15-11:30 for you and them?

Sent from my iPhone

On Nov 2, 2022, at 8:15 AM, Safa Gelardi <safagelardi@gmail.com> wrote:

Good morning Jonathan, my apologies for the early call. The forensics company I am working with to get behind the slandering emails asked me to call you. they are in a different time zone. They would like to speak with you if possible today. please let me know if you have a few min to get on a call with us this morning.

**EXHIBIT A-3: PI Mike / Zoom scheduling email chain (shows counsel copied and participating)**

12/15/25, 2:54 PM                                        Gmail - Zoom Link

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

--

With my kindest regards,

Michael Roberts

Licensed Private Investigator # 3589109

Digital Forensic & Internet Litigation Support Consultant

--

With my kindest regards,

Michael Roberts

Licensed Private Investigator # 3589109

Digital Forensic & Internet Litigation Support Consultant

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

--

With my kindest regards,

Michael Roberts

Licensed Private Investigator # 3589109

Digital Forensic & Internet Litigation Support Consultant

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

--

With my kindest regards,

Michael Roberts
Licensed Private Investigator # 3589109
Digital Forensic & Internet Litigation Support Consultant

**EXHIBIT B-1: Execution with Notice to Garnishee (Kings County)**



### Edward F. Guida Jr. #14
**Marshal, City of New York**
47-26 104ᵗʰ Street
Corona, NY 11368
P(718)779-2134   F(718)779-8123
guidajr@nycmarshal14.com

**LEVY AND DEMAND ON**
TENANT
148 CLAYPIT RD
STATEN ISLAND NY 10309

**JUDGMENT CREDITOR**
IME WATCHDOG INC. AND CALOS
ROA

**vs.**

SAFA ABDULRAHAM GELARDI
VITO GLARDI AND IME
COMPANIONS LLC
**JUDGMENT DEBTOR**

GREETINGS:

Attached you will find a Property Execution with Notice to Garnishee. As directed under **CPLR §5232(a)**, you are required to turn over to me all property of the judgment debtor currently in your possession or custody, not to exceed the following amount:

| | |
|---|---|
| Judgment. . . . . . . . . . . . | $66,547.34 |
| Interest. . . . . . . . . . . | $1,808.09 |
| Statutory Fees. . . . . . . . | $235.00 |
| Expense . . . . . . . . . . . | $1.48 |
| Poundage. . . . . . . . . . . | $3,429.59 |
| **TOTAL** | **72,021.50** |

Should you have any questions, kindly contact my office.

**MARSHAL'S DOCKET # E 3048**

Very truly yours,

EDWARD F. GUIDA JR.
**Marshal City of New York**
Badge #14

Be it known:

Pursuant to this NOTICE TO GARNISHEE you are put on notice that you are no longer to pay rent to the above named Judgment Debtor and that any monies you do pay to the above named Judgment Debtor is in violation of certain New York State Laws. All rent monies must now be paid to the City Marshal. You will , of course, receive a receipt from the City Marshal. You have no reason to fear eviction, as the City Marshal will testify to all the monies that he has received.

I am sorry to put you in this position, but I have no other choice since the debtor has failed to meet the obligation that the Judgment has set forth.

SUPRME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

IME WATCHDOG INC. and CARLOS ROA,

Plaintiff(s),

-against-

SAFA ABDULRAHAM GELARDI, VITO GELARDI
and IME COMPANIONS LLC

Defendant(s).

-------------------------------------------------------------------X

*Index No.: 22-CV-1032*

**EXECUTION WITH
NOTICE TO GARNISHEE:**

The People of the City of New York
TO:  THE SHERIFF OR MARSHAL

**WHEREAS** in an action in the **SUPRME COURT OF THE STATE OF NEW YORK, COUNTY OF KINGS**, between **IME WATCHDOG INC. and CARLOS ROA,** as plaintiff(s), and **SAFA ABDULRAHAM GELARDI, VITO GELARDI and IME COMPANIONS LLC,** who are all the named parties in said action, a judgment was entered on **August 13, 2025**, in favor of **IME WATCHDOG INC. and CARLOS ROA,** judgment creditor(s), and against **SAFA ABDULRAHAM GELARDI, VITO GELARDI and IME COMPANIONS LLC,** debtor(s), whose last known address is **261118 CROSSWOOD TRAILS LANE, CYPRESS, TX 77433, 9207 245TH ST, FLORAL PARK, NY 11001,** and in the amount of **$66,547.34** including costs, of which **$66,547.34**, together with interest thereon from **August 13, 2025** remains due and unpaid;

**WHEREAS** a transcript of the judgment was filed on **October 14, 2025** with the Clerk of the County of Kings, in which County the judgment was entered; and

**WHEREAS** a transcript of the judgment was docketed in the office of the Clerk of your County on **October 14, 2025**.

**NOW, THEREFORE, WE COMMAND YOU** to satisfy said judgment out of the real and personal property of the above named judgment debtor(s) and the debts due it/him/her; and that only the property in which said judgment debtor(s), who is not deceased, has an interest, or the debts owed to him, shall be levied upon or sold hereunder; **AND TO RETURN** this execution to the Clerk of the above captioned Court within sixty days after issuance unless service of this execution is made within that time or within extensions of that time made in writing by the attorney of the judgment creditor(s).

Pursuant to CPLR § 5205 (1), $3,650 of an account containing direct deposit or electronic payments reasonably identifiable as statutorily exempt payments, as defined in CPLR § 5205 (1) (2), is exempt from execution and the garnishee cannot levy upon or restrain $3,650 in such an account.

Pursuant to CPLR § 5222 (i), an execution shall not apply to an amount equal to or less that 90% of the greater of 240 times the federal minimum hourly wage prescribed in the Federal Labor Standards Act of 1938 or 240 times the state minimum hourly wage prescribed in Labor Law § 652 as in effect at the earnings are payable, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor(s) and his or her dependents.

## NOTICE TO GARNISHEE

To: **TENANTS**
**Address: 148 CLAYPIT RD, STATEN ISLAND, NEW YORK 10309**

**WHEREAS**, it appears that you are indebted to the judgment debtor(s), above named, or in possession or custody of property not capable of delivery, in which the judgment debtor(s) has an interest, including, without limitation, the following specified debt and property:

**NOW THEREFORE YOU ARE REQUIRED,** by section 5232 (a) of the CPLR, forthwith, to transfer to the Sheriff or Marshal all personal property not capable of delivery in which the judgment debtor(s) is known or believed to have an interest in, or hereafter coming into your possession or custody, including property specified in this notice; and to pay the Sheriff or Marshal, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor(s), including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment;

**AND TAKE NOTICE** that until such further transfer or payment is made or until the expiration of ninety days after the service of this execution upon you, or such further time as is provided by any order of the Court served upon you, whichever event occurs first, you are forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the Sheriff or Marshal, except upon direction of the Sheriff or Marshal or pursuant to an order of the Court;

**AND TAKE FURTHER NOTICE THAT** at the expiration of ninety days after a levy is made by service of this execution, or of such other further time as the Court upon motion of the judgment creditor(s) has provided, this levy shall be void except as to property or debts which have been transferred or paid to the Sheriff or Marshal, as to which a proceeding under sections 5225 or 5227 of the CPLR has been brought.

Dated: Glen Cove, New York
        December 2, 2025

_____
Danielle N. Grzan, Esq.
DANIELLE N. GRZAN, ESQ., P.C.
*Attorneys for Plaintiff*
114 Forest Avenue, Unit 1
Glen Cove, New York 11542
(516) 216-4745
File No: *2025-8268*

**EXHIBIT B-4: Purchaser Text Message (verbatim)**



**Today** 2:45 PM

Yo Safa WTF A Marshall just came to my house with papers saying Inhave to pay him 66k from some judgement on you or he's siding my house today. We have kids here, we've been paying the mortgage every month to own this place. What thenhell are we suppose to do. I'm freakin out. Sending you the paper work he left behind.

**EXHIBIT C-1: SDNY Complaint (cover page; filed 12/10/2025; Case No. 1:25-cv-10218)**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IME WATCHDOG, INC.,

                                        Plaintiff,                    Case No.: 1:25-cv-10218

            -against-                                                 **COMPLAINT**

JEFF   BEIBEN,   MARK   PURIFICATI,   FARI
GUTIERREZ, CHRISTIAN HOGARTH, TIFFANY
URIBE, DAVID SEGOVIA, and DIRECT IME
SERVICES LLC,

                                        Defendants.
-----------------------------------------------------------------X

Plaintiff IME WatchDog, Inc. ("IME WatchDog"), by its attorneys Sage Legal LLC and

Milman Labuda Law Group PLLC, as and for its Complaint against Defendants Jeff Beiben

("Beiben"), Mark Purificati ("Purificati"), Fari Gutierrez ("Gutierrez"), Christian Hogarth

("Hogarth"), Tiffany Uribe ("Uribe"), David Segovia ("Segovia") (Beiben, Purificati, Gutierrez,

Hogarth, Uribe, and Segovia collectively hereinafter the "Individual Defendants"), and Direct

IME Services LLC ("Direct IME") (the Individual Defendants and Direct IME collectively

hereinafter the "Defendants"), hereby alleges as follows:

## NATURE OF THE CASE

1.          This is an action for damages and injunctive relief related to Defendants'

misappropriation, use of, and profit from Plaintiff's confidential information and trade secrets

resulting in Defendants': (i) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836

("DTSA"); (ii) misappropriation of trade secrets under New York common law; (iii) unfair

competition under New York common law; (iv) unjust enrichment; (v) civil conspiracy; and (vii)

conversion.

**EXHIBIT C-2: SDNY Complaint excerpt (references EDNY injunction / "acting in concert")**



10.    Plaintiff has obtained substantial injunctive relief and contempt awards against Safa and Vito, together with any persons or entities acting in concert with or on behalf of them, in the Gelardi Case in the United States District Court for the Eastern District of New York before the Hon. Pamela K. Chen, U.S.D.J. ("Judge Chen") wherein that court there repeatedly found that Plaintiff has established a strong likelihood of success on its claims against Safa, Vito, and IME Companions LLC ("Companions"), the business Safa and Vito formed once they stole Plaintiff's trade secrets and other related businesses Safa and Vito created in attempts to thwart orders enjoining them.

11.    On March 10, 2023, the Court in the Gelardi Case enjoined "[the Gelardis, Companions] and any persons/entities acting in concert with them" from "operating their business or any other business that unfairly competes with Plaintiff in violation of the law." See Gelardi Case, ECF Docket Entry 156.

12.    As part of the relief granted in the Gelardi Case, Judge Chen enjoined the Gelardis, Companions, and any persons/entities acting in concert with them from serving certain identified customers who Plaintiff was able to show the Gelardis and Companions obtained through improper means, which customers are identified in the Enjoined Customers List ("ECL").

13.    Following the entry of the preliminary injunction, Gutierrez, at Safa's directive, created Client Exam Services LLC ("CES") to circumvent the Court's TRO in the Gelardi case. See IME Watchdog, Inc. v. Gelardi, 732 F. Supp. 3d 224 (E.D.N.Y. 2024).

14.    Beiben operated CES and attended approximately and at least twelve (12) IMEs on behalf of CES for the same clients he had been serving when he worked at Companions after the March 2023 TRO was issued. Id.

3

**EXHIBIT C-3: SDNY Complaint (signature page; dated Dec. 9, 2025)**



...cv-10218    Document 1    Filed 12/10/25    Page 24 of 24

...unitive and exemplary damages in an amount to be determined at trial in this case;

...interest (pre-judgment & post-judgment);

...Equitable relief in the form of the imposition of an injunction, constructive trust,

...counting, and a disgorgement of profits and other benefits received by reason of the unlawful

...onduct complained of herein;

h.    Enjoining Defendants from operating their business by virtue of its illegal conduct;

i.    Ordering that Defendants pay the costs of suit, including attorneys' fees; and

j.    Such other and further relief as this Court deems just, equitable, and proper.

Dated: Jamaica, New York
       December 9, 2025

Respectfully submitted,

**SAGE LEGAL LLC**
 /s/ Emanuel Kataev, Esq.
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11042-1073
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Jamie S. Felsen, Esq.
3000 Marcus Ave. Suite 3W8
Lake Success, NY 11042
(516) 328-8899
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

24

 **Gmail**

Safa Gelardi <safagelardi@gmail.com>

## Call
1 message

**Safa Gelardi** <safagelardi@gmail.com>
To: Jonathon Warner <jdwarner@wslaw.nyc>

Wed, Apr 26, 2023 at 7:18 AM

I am filing harassment charges today. This has gone too far and is damaging my mental health. This is mental abuse and
intimidation. We have shut our business down and we have nothing left. You must must speak to the judge on our behalf

 Gmail

Safa Gelardi <safagelardi@gmail.com>

## (no subject)
1 message

**Safa Gelardi** <safagelardi@gmail.com>                          Thu, Sep 26, 2024 at 12:47 PM
To: Jonathon Warner <jdwarner@wslaw.nyc>

Jonathan, I don't understand why you only play on the defense Pleas3 file a motion describing the abuse of the law and
harassment. You must do this or it is going to get ugly. You have to do something

 Gmail

Safa Gelardi <safagelardi@gmail.com>

## (no subject)
1 message

**Safa Gelardi** <safagelardi@gmail.com>                                      Thu, Apr 20, 2023 at 10:12 AM
To: Jonathon Warner <jdwarner@wslaw.nyc>

If you can kindly address the harassment and stalking please. The same suburban and minivan follow us everywhere we go. It is major fear tactics. We went to the police and.rhey told us there is nothing they can do without a plate number. These two cars have no plates. Last time we seen the suburban following us we were on our way to PA. Monday April 10. It followed us all the way to our PA home and then disappeared.

 Gmail

Safa Gelardi <safagelardi@gmail.com>

## WHY
1 message

**Safa Gelardi** <safagelardi@gmail.com>                                                    Fri, Apr 18, 2025 at 8:45 AM
To: Jonathon Warner <jdwarner@wslaw.nyc>, Karl Scheuerman <kescheuerman@wslaw.nyc>

Jonathan, as we are this close to the end, this is what you do. I want this over with just as you do. I am so curious to know
what made you do this. I know I put tremendous pressure on you to file the motion to compel,
I begged you for years to do it and get dates for her deposition, I begged you to contest the list. I begged you to file a
motion exposing her harassing me and my family. I provided you with proof of the cars following us, she flew drones over
our house in Texas. I begged you to file a motion of the slander that she did on me and my company. I provided you proof
of that slander. All you kept telling me was the judge hates you.
What happened? Did they threaten you?
You took an oath to uphold the law.  I asked you many many times why are you afraid of them? I need to know why you
decided to file a lotion to be relieved instead of filing the motion to compel. There is no way a lawyer will take my case. I
have no money for a retainer. You are deliberately sabotaging me.
You must stay and file the necessary motions no matter what. We are near the end.

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM    INDEX NO. 725915/2022
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 12/13/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
---------------------------------------------------------------------X

In the Matter of the Application of CARLOS ROA

Petitioner,

FOR AN ORDER COMPELLING PRE-ACTION
DISCLOSURE PURSUANT TO CPLR § 3102(c)

-against-

JOHN DOES 1-50, unknown individuals, and ABC
COMPANIES 1-50, unknown businesses,

Respondents.
---------------------------------------------------------------------X

Index No.: 725915/2022

**SUBPOENA *AD
TESTIFICANDUM
& DUCES TECUM***

| | | | |
|---|---|---|---|
| TO: | **Silver Shield Security LLC**<br>**Attn: Stephan Stanulis**<br>**680 Annadale Road**<br>**Staten Island, NY 10312-3115** | TO: | **Stephan Stanulis**<br>**680 Annadale Road**<br>**Staten Island, NY 10312-3115** |

**YOU ARE HEREBY COMMANDED**, that all business and excuses being laid aside, to virtually appear and remotely attend before a notary public or other person authorized to administer oaths, at Milman Labuda Law Group PLLC ("MLLG"), located at 3000 Marcus Avenue, Suite 3W8, Lake Success, NY 11042-1073, State of New York on the 16th day of January, 2023 at 10:00 a.m., and at any adjourned date, to testify and give evidence, as a witness on an examination before trial by an oral, stenographic, and/or videographic deposition upon oral questions in the above-entitled action now pending in the Supreme Court of the State of New York, County of Queens. Enclosed, please find a check made payable to you in the amount of $25.12 for witness fees.

**YOU ARE FURTHER HEREBY COMMANDED**, pursuant to Article 23 and 31 of the New York Civil Practice Law & Rules ("CPLR"), to deliver to MLLG, located at the above within twenty (20) days after the service of this subpoena complete and accurate copies of the following documents in your possession, custody, or control:

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM    INDEX NO. 725915/2022

NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 12/13/2022

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:

A.    "Petitioner" or "Roa" refers to Petitioner CARLOS ROA.

B.    "Silver Shield" refers to Silver Shield Security LLC, its parents, subsidiaries, affiliates, successors, assigns, divisions, past and present officers, owners, shareholders, directors, principals, employees, former employees, representatives, service providers, counsel, agents, and/or any licensed or unlicensed Investigative Agency, Private Detective Agency, Security Guard Company, and/or any entity providing investigative or security services as defined by law or regulation (whether in their personal or official capacity), and each of their respective successors and assigns.

C.    "Gladys" refers to the individual who allegedly retained Silver Shield and/or Stephan Stanulis to place a tracking device on the motor vehicle(s) of Petitioner.

D.    "Document" or "Details" is used in the broadest possible sense possible allowed under the CPLR, and includes (but is not limited to) any written, printed, typed, photocopied, photographed, recorded (including but not limited to magnetic, mechanical or electronic recordings), or otherwise reproduced communication or representation.   This definition includes (but is not limited to) correspondence, memoranda, wires, cables, studies, maps, analyses, diagrams, electronic mail, scraps of paper, notes, loan documentation, application, drawings, charts, graphs, plans, plates, photographs, contracts, agreements, working papers, drafts, reports of investigations or inspections of any kind, diaries, minutes, calendars, other reports, vouchers, invoices, journals, bills, orders, time slips or records, books, computations, field notes, logs, financial records or statements,  or work papers, checks, receipts, bank statements, and the like.  Data compilations from which information may be translated into usable form (e.g., metadata or computer memory) are also included.

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM    INDEX NO. 725915/2022

NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 12/13/2022

E.    The foregoing definition includes, as a separate document, each duplicate or reproduction or copy of a document that contains any non-conforming note, marking, material or attachment. If it is maintained that any documents requested to be identified has been destroyed or is no longer within your possession or control, identify the document and state the date, place, and manner of its destruction or removal from your control, and identify the person who authorized or ordered such destruction or removal.

F.    The "Relevant Period" is defined as March 1, 2022 through the present.

## DOCUMENT REQUESTS

1.    All documents and records regarding or detailing any individual's status with Silver Shield, including owners, shareholders, managers, licensed managers, and/or employees, and whether each such individual is licensed in the State of New York or anywhere else in the United States of America during the Relevant Period.

2.    All documents and records of Stephan Stanulis' ("Stanulis") employment in the State of New York or elsewhere in the United States of America as a private investigator, security services provider, and/or protective services provider during the Relevant Period.

3.    All documents and records of Stephan Stanulis' ownership in the State of New York or elsewhere in the United States of America of Silver Shield, and/or of any other entity providing private investigative services, security services, and/or protective services during the Relevant Period.

4.    All documents and records of Stephan Stanulis' status as a manager or licensed manager in the State of New York or elsewhere in the United States of America of Silver Shield, and/or of any other entity providing private investigative services, security services, and/or protective services during the Relevant Period.

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM    INDEX NO. 725915/2022
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 12/13/2022

5.    All documents and records of license(s), insurance policies, and/or bonds used by Stanulis, any entity with which Stanulis is or was affiliated, and/or Silver Shield, to perform investigative services, security services, and/or protective services during the Relevant Period.

6.    All documents and records of all employees of Silver Shield during the Relevant Period.

7.    All documents and records of any kind identifying the full name, residence address, residence and cellular telephone numbers, personal identifiers, and investigative license and employment status of the person(s) who placed a tracking device on motor vehicle(s) owned by the Petitioner during the Relevant Period.

8.    All documents and records of any kind identifying the person(s) and/or entities who purchased and/or activated and/or utilized tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period.

9.    All documents and records of any kind containing information of any kind derived from any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period.

10.    All documents and records of any kind indicating or identifying the phone number, serial number, e-mail address, or unique identifier of any electronic device utilized to retrieve information of any kind from any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period.

11.    All documents and records used to purchase or otherwise related to the activation of any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period, including but not limited to customer name, phone number(s), address(es), email address(es).

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM    INDEX NO. 725915/2022
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 12/13/2022

12.    All documents and records of any kind indicating or identifying payment information of any kind for any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner, as well as for services related to any such tracking devices, during the Relevant Period.

13.    All documents and records of any meetings, conversations, and/or communications with Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

14.    All documents and records of any meetings, conversations, and/or communications with "Gladys" during the Relevant Period.

15.    Any audio and/or video recordings of meetings or phone calls with Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

16.    Any audio and/or video recordings of meetings or phone calls with "Gladys" during the Relevant Period.

17.    All documents and records of payments and receipts of said payments made by Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

18.    All documents and records of payments and receipts of said payments made by "Gladys" during the Relevant Period.

19.    For the time period from March 1, 2022 to present, all contracts or agreements of any kind, whether or not signed, between Silver Shield and/or Stanulis, on the one hand, and Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents, on the other hand, during the Relevant Period.

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM    INDEX NO. 725915/2022

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 12/13/2022

20.    For the time period from March 1, 2022 to present, all contracts or agreements of any kind, whether or not signed, between Silver Shield and/or Stanulis, on the one hand, and "Gladys," on the other hand, during the Relevant Period.

21.    All documents and records of any kind related to the license plate(s) of supposed subjects of investigation provided to Silver Shield, Stanulis, and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

22.    All documents and records of any kind related to the address(es) and/or any information concerning the identity of supposed subjects of investigation provided to Silver Shield, Stanulis, and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

23.    All documents and records of any kind related to the investigation related to placing a tracking device on the motor vehicle(s) of Petitioner, including the entire case file, as well as any reports.

24.    All documents and records of any kind concerning the name, address, and identifiers, including but not limited to the date of birth, phone numbers, and/or any other identifying information of the target of the investigation related to placing a tracking device on the motor vehicle(s) of Petitioner.

25.    All documents and records of any kind concerning allegations or evidence of infidelity by the target of the investigation related to placing a tracking device on the motor vehicle(s) of Petitioner.

26.    All documents and records of any kind concerning any employees, subcontractors, associates, representatives, and/or agents of Silver Shield, including but not limited to the personnel file(s), background investigation, and/or licensing of all such individuals.

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM
NYSCEF DOC. NO. 7

INDEX NO. 725915/2022
RECEIVED NYSCEF: 12/13/2022

27.    All documents and records of any meetings, conversations, and/or communications between: (i) Stanulis and any employees, subcontractors, associates, representatives, and/or agents of Silver Shield; and (ii) employees, subcontractors, associates, representatives, and/or agents of Silver Shield and/or any other investigative services provider, security services provider, and/or protective services provider.

28.    All documents and records identifying the cellular phone carrier utilized by: (i) Stanulis; (ii) any employees, subcontractors, associates, representatives, and/or agents of Silver Shield and/or any other investigative services provider, security services provider, and/or protective services provider who placed, activated, and/or monitored the tracking device placed pr attempted to be placed on the motor vehicle(s) of Petitioner.

Pursuant to CPLR § 3101(a)(4), these disclosures are required because Petitioner seeks to identify of the individual(s) who caused a tracking device to be placed on the motor vehicle(s) of Petitioner, as well as to ascertain the veracity of the reasons provided by Silver Shield and/or Stanulis for causing a tracking device to be placed on the motor vehicle(s) of Petitioner.

A form for the certification of business records is enclosed with this subpoena.

Silver Shield and Stanulis shall each respectively preserve all information, both tangible and electronically stored, potentially relevant to the preceding requests of this Subpoena.

**PLEASE TAKE FURTHER NOTICE** that failure to comply with this Subpoena is punishable by contempt of Court and shall make you liable to the person on whose behalf this Subpoena was issued for a penalty not to exceed $150.00 and all damages sustained by reason of your failure to comply.

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM

NYSCEF DOC. NO. 7

INDEX NO. 725915/2022

RECEIVED NYSCEF: 12/13/2022

Dated: New York, New York
   December 13, 2022

Respectfully submitted,

**ZIEHER & ASSOCIATES, P.C.**

*Maria Zieher*

Maria Christine Zieher, Esq.
1 Broadway, Suite 615
New York, NY 10004
(212) 235-7010 (office)
mzieher@zieherlaw.com

*Attorneys for Petitioner*
*Carlos Roa*

FILED: QUEENS COUNTY CLERK 12/13/2022 12:22 PM
NYSCEF DOC. NO. 7

INDEX NO. 725915/2022
RECEIVED NYSCEF: 12/13/2022

## CERTIFICATION OF BUSINESS RECORDS
## PURSUANT TO CPLR §3122-a

_____, being duly sworn, depose and says:

1. I am duly authorized custodian of records maintained by _____ ___ _____ and have authority to make this certification.

2. To the best of my knowledge, after reasonable inquiry, the records or copies thereof that are produced herewith are accurate versions of the documents described in the subpoena duces tecum that are in the possession, custody, or control of

_____.

3. To the best of my knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in the subpoena duces tecum.

4. The records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence, or event recorded therein, or within a reasonable time thereafter, and that it was in the regular course of the business to make such records.


_____
**Signature**


_____
**Print Name**


Sworn to before me this
_____ day of _____, 2023


_____
**Notary Public**