**PRO SE DEFENDANT SAFA GELARDI'S**

**SUPPLEMENTAL DECLARATION IN SUPPORT OF EMERGENCY MOTION FOR (1) IMMEDIATE ADMINISTRATIVE STAY**
**AND STAY OF ENFORCEMENT UNDER FED. R. CIV. P. 62(b)**
**AND (2) TEMPORARY RESTRAINING ORDER UNDER FED. R. CIV. P. 65**

I, Safa Gelardi, declare under penalty of perjury as follows:

1. **Identity and Purpose**

I am a Defendant in this action, appearing pro se. I submit this Supplemental Declaration in support of my Emergency Motion for (1) an immediate administrative stay and a stay of enforcement under Rule 62(b), and (2) a temporary restraining order under Rule 65 (the "Emergency Motion"), which seeks to halt collection activity on the contempt-sanctions judgment while the Court considers my pending submission on willfulness.

Supplemental to motion to stay …

2. **Limited Scope of This Declaration**

This Supplemental Declaration is not intended to relitigate the merits of the underlying case. I am submitting a limited, representative set of contemporaneous documents to show:
 (a) the environment of intimidation and pressure I repeatedly reported while represented by counsel;
 (b) that I attempted to raise these issues through counsel and relied on him to approach the Court; and
 (c) why immediate interim relief is necessary now that enforcement is directly harming innocent third parties and being leveraged in separate litigation.

Supplemental to motion to stay …

## A. Harassment, Stalking, and My Reliance on Counsel

3. While I was represented by Jonathan Warner, Esq., I repeatedly begged him—**in real time**—to bring harassment and stalking to the Court's attention and to protect my family. For example:
    a. **April 20, 2023:** "If you can kindly address the harassment and stalking please. The same suburban and minivan follow us everywhere we go… It followed us all the way to our PA home." (Ex. A-1.)

Gmail - harrassment

    b. **April 26, 2023:** "I am filing harassment charges today. This has gone too far and is damaging my mental health. This is mental abuse and intimidation… You must must speak to the judge on our behalf." (Ex. A-2.)

Gmail - Call

    c. **September 26, 2024:** "Jonathan, I don't understand why you only play on the defense. Please file a motion describing the abuse of the law and harassment. You must do this or it is going to get ugly. You have to do something." (Ex. A-3.)

Gmail - (no subject)

    d. **April 18, 2025 ("WHY" email):** I wrote that I had "begged [him] for years to… file the motion to compel… contest the list… file a motion exposing her harassing me and my family… file a motion of the slander," and that by moving to withdraw instead, he was "deliberately sabotaging" me. (Ex. A-4.)

Gmail - WHY

4. These emails are contemporaneous, specific, and were all sent while I was represented. They show that my instinct was **not** to act behind the Court's back, but to ask my lawyer to go **to** the Court. I did not file harassment motions myself during this period because I believed my counsel—not me—was responsible for deciding how to present these issues to the Court.

Gmail - Re_ Pre-Suit Legal Malp…

5. When I began receiving humiliating porn-site sign-up emails and wrote that this was "disgusting" and damaging to my reputation as "a mother, a wife and a daughter of a very conservative man," Mr. Warner's entire written response to me and his partner was: "Ignore it." (Ex. A-5.)

Gmail - Their new form of haras…

This response, too, shows why I did not personally run to the Court at that time: my own lawyer told me to ignore what I saw as abuse and intimidation.

## B. The PI and the Carlos Roa Proceedings

6. From early on, my counsel knew I was exploring and then using a private investigator to document harassment and to protect my family. The Zoom scheduling emails with PI Michael Roberts show Mr. Warner and/or his firm were **copied and participating** in those communications. (Exs. B-1–B-3.)

At no point in these emails did Mr. Warner instruct me not to retain a PI, warn that doing so could violate a court order, or advise me to seek guidance from the Court. I reasonably believed I was acting within the law and under counsel's supervision.

7. Attached also is a transcript of an in-person call in which Carlos Roa told a former worker to "watch out [because] FBI is investigating Safa… that ship's about to sink… they're looking at everyone's communication with her… you're young you don't need [this]." (Ex. B-4; see also Queens County petition and subpoena to Silver Shield and Stephan Stanulis for tracking-device-related records.)

Whether or not Mr. Roa had any basis to say these things, their effect was obvious: to frighten and isolate people connected to me and to my livelihood. The Queens County filing shows that tracking accusations and investigation into devices were serious enough to reach a state court petition, not something I imagined after the fact.

Motion to Stay W Exhibits

8. I respectfully submit that, taken together, these exhibits show why I was in a **hyper-vigilant, fearful state** and why I relied so heavily on counsel to protect us. They go directly to my state of mind and are relevant to the Court's present evaluation of "willfulness."

## C. Current Enforcement Against Innocent Home Purchasers

9. Since filing my Emergency Motion, enforcement has escalated against people who had nothing to do with this case. In Kings County Supreme Court, Plaintiffs have obtained an

    **Execution with Notice to Garnishee** directed at the tenants/purchasers of 148 Claypit Rd, Staten Island, New York. (Ex. C-1, C-2.) The accompanying Marshal's letter commands them to turn over "all property of the judgment debtor" and tells them to stop paying rent to us and pay the Marshal instead.

10. One of the purchasers, Anthony Massulo, texted me in a panic:

"Yo Safa WTF A Marshall just came to my house with papers saying I have to pay him 66k from some judgement on you or he's siding my house today. We have kids here, we've been paying the mortgage every month to own this place… I'm freakin out." (Ex. C-3.)

Supplemental to motion to stay …

These buyers have children in that home, are paying their mortgage, and had no role in any alleged contempt. If enforcement continues unchecked, they face the risk of losing their home or being forced to pay tens of thousands of dollars on a judgment against me.

11. This is classic **irreparable harm** to third parties: fear, instability, and potential loss of a family residence. Money later cannot fully repair that damage, particularly to their credit, their children, and their sense of security. I respectfully submit that the Court should not allow this to proceed while my willfulness is still under review.

## D. New SDNY Case Leveraging the EDNY Injunction and Contempt Record

12. On December 10, 2025, Plaintiffs filed a new lawsuit in the Southern District of New York, IME Watchdog, Inc. v. Beiben, et al., Case No. 1:25-cv-10218. (Ex. D-1.) The complaint expressly relies on this Court's preliminary-injunction and contempt orders, alleging that the Gelardi case produced "substantial injunctive relief and contempt awards" against me, my husband, and "any persons/entities acting in concert with them."

Supplemental to motion to stay …

13. The SDNY complaint cites this Court's March 10, 2023 order enjoining us and "any persons/entities acting in concert with [us]" and alleges that third parties later created Client Exam Services LLC ("CES") "at Safa's directive" to circumvent the TRO. (Ex. D-2.)

As I have stated in other filings, CES was formed only after we followed our lawyer's advice to "give the business away," and we did not own or control CES.

Gmail - Re_ Pre-Suit Legal Malp…

The SDNY complaint, however, treats CES and anyone who ever worked near me as if they were acting in secret concert with me to violate this Court's orders.

14. The result is that this Court's orders—entered on a record that I believe was distorted by my former counsel's omissions—are now being used as weapons in new litigation against former coworkers and associates who were never parties here. That is another reason I am begging the Court to **pause enforcement activity** while you decide whether I actually acted willfully and in bad faith.

### E. Why Immediate Interim Relief Is Warranted

15. I understand that the Court is currently evaluating my willfulness in connection with the contempt sanctions. This Supplemental Declaration is offered solely to assist that evaluation and to show why enforcement should be stayed in the meantime:

- The harassment and stalking emails, and my "WHY" email, show I was pleading with my lawyer to go to the Court and did not understand myself to be defying it.
- The PI emails and Queens County subpoena show that concerns about tracking and safety were real and were being handled through lawyers and courts, not in secret.
- The Kings County execution and Marshal's Notice, together with the buyer's text, show that innocent home purchasers and their children are now bearing the brunt of enforcement based on those same orders.

Supplemental to motion to stay …

- The SDNY complaint shows that this Court's injunction and contempt record are actively being deployed to expand litigation against non-parties, all while my mental state and reliance on counsel are still being evaluated here.

Supplemental to motion to stay …

16. In light of all this, I respectfully ask the Court to:

(a) enter an immediate administrative stay of all enforcement of the contempt-sanctions judgment;
(b) stay enforcement under Rule 62(b) while the Court considers the willfulness record, my pending submission, and any motion for reconsideration; and
(c) issue a temporary restraining order under Rule 65 prohibiting Plaintiffs, their counsel, and their agents from (i) pursuing levies, garnishments, or other enforcement actions against the 148 Claypit Rd property, its purchasers, or tenants; and (ii) initiating new enforcement actions against third parties based solely on the contempt judgment, absent further order of this Court.

17. I am not asking the Court to decide the entire case through this Emergency Motion. I am only asking the Court to **preserve the status quo** and prevent further harm to innocent third parties and to me while the Court finishes its willfulness analysis and any related post-judgment proceedings.
18. I respectfully request that the Court consider this Supplemental Declaration and its exhibits together with my Emergency Motion, as further support for the limited, interim relief requested there.

Supplemental to motion to stay …

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/17/ 2025,



Safa Gelardi <safagelardi@gmail.com>

## Call
1 message

**Safa Gelardi** <safagelardi@gmail.com>  Wed, Apr 26, 2023 at 7:18 AM
To: Jonathon Warner <jdwarner@wslaw.nyc>

I am filing harassment charges today. This has gone too far and is damaging my mental health. This is mental abuse and intimidation. We have shut our business down and we have nothing left. You must must speak to the judge on our behalf



Safa Gelardi <safagelardi@gmail.com>

## (no subject)
1 message

**Safa Gelardi** <safagelardi@gmail.com>     Thu, Sep 26, 2024 at 12:47 PM
To: Jonathon Warner <jdwarner@wslaw.nyc>

Jonathan, I don't understand why you only play on the defense Pleas3 file a motion describing the abuse of the law and harassment. You must do this or it is going to get ugly. You have to do something



Safa Gelardi <safagelardi@gmail.com>

## (no subject)
1 message

**Safa Gelardi** <safagelardi@gmail.com>  Thu, Apr 20, 2023 at 10:12 AM
To: Jonathon Warner <jdwarner@wslaw.nyc>

If you can kindly address the harassment and stalking please. The same suburban and minivan follow us everywhere we go. It is major fear tactics. We went to the police and.rhey told us there is nothing they can do without a plate number. These two cars have no plates. Last time we seen the suburban following us we were on our way to PA. Monday April 10. It followed us all the way to our PA home and then disappeared.

                                                                                      Safa Gelardi <safagelardi@gmail.com>

# WHY
1 message

**Safa Gelardi** <safagelardi@gmail.com>                                                                  Fri, Apr 18, 2025 at 8:45 AM
To: Jonathon Warner <jdwarner@wslaw.nyc>, Karl Scheuerman <kescheuerman@wslaw.nyc>

Jonathan, as we are this close to the end, this is what you do. I want this over with just as you do. I am so curious to know
what made you do this. I know I put tremendous pressure on you to file the motion to compel,
I begged you for years to do it and get dates for her deposition, I begged you to contest the list. I begged you to file a
motion exposing her harassing me and my family. I provided you with proof of the cars following us, she flew drones over
our house in Texas. I begged you to file a motion of the slander that she did on me and my company. I provided you proof
of that slander. All you kept telling me was the judge hates you.
What happened? Did they threaten you?
You took an oath to uphold the law.  I asked you many many times why are you afraid of them? I need to know why you
decided to file a lotion to be relieved instead of filing the motion to compel. There is no way a lawyer will take my case. I
have no money for a retainer. You are deliberately sabotaging me.
You must stay and file the necessary motions no matter what. We are near the end.

**Audio transcribed, 47 seconds**

**Tiffany- Ah Yes, You're with?**

**Carlos Roa - Watchdog, just watch out FBI is investigating Safa**

**Tiffany- FBI?**

**Carlos Roa- Yeah**

**Tiffany- For what?**

**Carlos Roa- For stolen stuff from watchdog side**

**Tiffany-Oh**

**Carlos Roa -Yea, so just Ah, that ships about to sink, just so you know be careful**

**Tiffany-Ok, alright, thank you, what's your name?**

**Carlos Roa- I'm not gona disclose, but just be careful**

**Tiffany- alright thank you**

**Carlos Roa- Cus they're looking at everyone's communication with her text messages phone calls, etc.. Yea one of the guys from watchdog was selling her information, and its like she's getting sued FBI is involved, and its just like yea, just take care of yourself you're young you don't need shit.,**

**Tiffany- ok thank you**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------X
In the Matter of the Application of CARLOS ROA

               Petitioner,

FOR AN ORDER COMPELLING PRE-ACTION
DISCLOSURE PURSUANT TO CPLR § 3102(c)

           -against-

JOHN DOES 1-50, unknown individuals, and ABC
COMPANIES 1-50, unknown businesses,

               Respondents.
-------------------------------------------------------------------X

Index No.: 725915/2022

**SUBPOENA *AD TESTIFICANDUM* & *DUCES TECUM***

| TO: | Silver Shield Security LLC<br>Attn: Stephan Stanulis<br>680 Annadale Road<br>Staten Island, NY 10312-3115 | TO: | Stephan Stanulis<br>680 Annadale Road<br>Staten Island, NY 10312-3115 |
|---|---|---|---|

**YOU ARE HEREBY COMMANDED**, that all business and excuses being laid aside, to virtually appear and remotely attend before a notary public or other person authorized to administer oaths, at Milman Labuda Law Group PLLC ("MLLG"), located at 3000 Marcus Avenue, Suite 3W8, Lake Success, NY 11042-1073, State of New York on the 16th day of January, 2023 at 10:00 a.m., and at any adjourned date, to testify and give evidence, as a witness on an examination before trial by an oral, stenographic, and/or videographic deposition upon oral questions in the above-entitled action now pending in the Supreme Court of the State of New York, County of Queens. Enclosed, please find a check made payable to you in the amount of $25.12 for witness fees.

**YOU ARE FURTHER HEREBY COMMANDED**, pursuant to Article 23 and 31 of the New York Civil Practice Law & Rules ("CPLR"), to deliver to MLLG, located at the above within twenty (20) days after the service of this subpoena complete and accurate copies of the following documents in your possession, custody, or control:

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:

A. "Petitioner" or "Roa" refers to Petitioner CARLOS ROA.

B. "Silver Shield" refers to Silver Shield Security LLC, its parents, subsidiaries, affiliates, successors, assigns, divisions, past and present officers, owners, shareholders, directors, principals, employees, former employees, representatives, service providers, counsel, agents, and/or any licensed or unlicensed Investigative Agency, Private Detective Agency, Security Guard Company, and/or any entity providing investigative or security services as defined by law or regulation (whether in their personal or official capacity), and each of their respective successors and assigns.

C. "Gladys" refers to the individual who allegedly retained Silver Shield and/or Stephan Stanulis to place a tracking device on the motor vehicle(s) of Petitioner.

D. "Document" or "Details" is used in the broadest possible sense possible allowed under the CPLR, and includes (but is not limited to) any written, printed, typed, photocopied, photographed, recorded (including but not limited to magnetic, mechanical or electronic recordings), or otherwise reproduced communication or representation. This definition includes (but is not limited to) correspondence, memoranda, wires, cables, studies, maps, analyses, diagrams, electronic mail, scraps of paper, notes, loan documentation, application, drawings, charts, graphs, plans, plates, photographs, contracts, agreements, working papers, drafts, reports of investigations or inspections of any kind, diaries, minutes, calendars, other reports, vouchers, invoices, journals, bills, orders, time slips or records, books, computations, field notes, logs, financial records or statements, or work papers, checks, receipts, bank statements, and the like. Data compilations from which information may be translated into usable form (e.g., metadata or computer memory) are also included.

E. The foregoing definition includes, as a separate document, each duplicate or reproduction or copy of a document that contains any non-conforming note, marking, material or attachment. If it is maintained that any documents requested to be identified has been destroyed or is no longer within your possession or control, identify the document and state the date, place, and manner of its destruction or removal from your control, and identify the person who authorized or ordered such destruction or removal.

F. The "Relevant Period" is defined as March 1, 2022 through the present.

### DOCUMENT REQUESTS

1. All documents and records regarding or detailing any individual's status with Silver Shield, including owners, shareholders, managers, licensed managers, and/or employees, and whether each such individual is licensed in the State of New York or anywhere else in the United States of America during the Relevant Period.

2. All documents and records of Stephan Stanulis' ("Stanulis") employment in the State of New York or elsewhere in the United States of America as a private investigator, security services provider, and/or protective services provider during the Relevant Period.

3. All documents and records of Stephan Stanulis' ownership in the State of New York or elsewhere in the United States of America of Silver Shield, and/or of any other entity providing private investigative services, security services, and/or protective services during the Relevant Period.

4. All documents and records of Stephan Stanulis' status as a manager or licensed manager in the State of New York or elsewhere in the United States of America of Silver Shield, and/or of any other entity providing private investigative services, security services, and/or protective services during the Relevant Period.

5. All documents and records of license(s), insurance policies, and/or bonds used by Stanulis, any entity with which Stanulis is or was affiliated, and/or Silver Shield, to perform investigative services, security services, and/or protective services during the Relevant Period.

6. All documents and records of all employees of Silver Shield during the Relevant Period.

7. All documents and records of any kind identifying the full name, residence address, residence and cellular telephone numbers, personal identifiers, and investigative license and employment status of the person(s) who placed a tracking device on motor vehicle(s) owned by the Petitioner during the Relevant Period.

8. All documents and records of any kind identifying the person(s) and/or entities who purchased and/or activated and/or utilized tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period.

9. All documents and records of any kind containing information of any kind derived from any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period.

10. All documents and records of any kind indicating or identifying the phone number, serial number, e-mail address, or unique identifier of any electronic device utilized to retrieve information of any kind from any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period.

11. All documents and records used to purchase or otherwise related to the activation of any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner during the Relevant Period, including but not limited to customer name, phone number(s), address(es), email address(es).

12. All documents and records of any kind indicating or identifying payment information of any kind for any tracking device(s) placed or intended to be placed on motor vehicle(s) owned by the Petitioner, as well as for services related to any such tracking devices, during the Relevant Period.

13. All documents and records of any meetings, conversations, and/or communications with Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

14. All documents and records of any meetings, conversations, and/or communications with "Gladys" during the Relevant Period.

15. Any audio and/or video recordings of meetings or phone calls with Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

16. Any audio and/or video recordings of meetings or phone calls with "Gladys" during the Relevant Period.

17. All documents and records of payments and receipts of said payments made by Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

18. All documents and records of payments and receipts of said payments made by "Gladys" during the Relevant Period.

19. For the time period from March 1, 2022 to present, all contracts or agreements of any kind, whether or not signed, between Silver Shield and/or Stanulis, on the one hand, and Safa Abdulrahim Gelardi, Vito Gelardi, IME Companions LLC and/or their respective employees, associates, representatives, and/or agents, on the other hand, during the Relevant Period.

20. For the time period from March 1, 2022 to present, all contracts or agreements of any kind, whether or not signed, between Silver Shield and/or Stanulis, on the one hand, and "Gladys," on the other hand, during the Relevant Period.

21. All documents and records of any kind related to the license plate(s) of supposed subjects of investigation provided to Silver Shield, Stanulis, and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

22. All documents and records of any kind related to the address(es) and/or any information concerning the identity of supposed subjects of investigation provided to Silver Shield, Stanulis, and/or their respective employees, associates, representatives, and/or agents during the Relevant Period.

23. All documents and records of any kind related to the investigation related to placing a tracking device on the motor vehicle(s) of Petitioner, including the entire case file, as well as any reports.

24. All documents and records of any kind concerning the name, address, and identifiers, including but not limited to the date of birth, phone numbers, and/or any other identifying information of the target of the investigation related to placing a tracking device on the motor vehicle(s) of Petitioner.

25. All documents and records of any kind concerning allegations or evidence of infidelity by the target of the investigation related to placing a tracking device on the motor vehicle(s) of Petitioner.

26. All documents and records of any kind concerning any employees, subcontractors, associates, representatives, and/or agents of Silver Shield, including but not limited to the personnel file(s), background investigation, and/or licensing of all such individuals.

27. All documents and records of any meetings, conversations, and/or communications between: (i) Stanulis and any employees, subcontractors, associates, representatives, and/or agents of Silver Shield; and (ii) employees, subcontractors, associates, representatives, and/or agents of Silver Shield and/or any other investigative services provider, security services provider, and/or protective services provider.

28. All documents and records identifying the cellular phone carrier utilized by: (i) Stanulis; (ii) any employees, subcontractors, associates, representatives, and/or agents of Silver Shield and/or any other investigative services provider, security services provider, and/or protective services provider who placed, activated, and/or monitored the tracking device placed pr attempted to be placed on the motor vehicle(s) of Petitioner.

Pursuant to CPLR § 3101(a)(4), these disclosures are required because Petitioner seeks to identify of the individual(s) who caused a tracking device to be placed on the motor vehicle(s) of Petitioner, as well as to ascertain the veracity of the reasons provided by Silver Shield and/or Stanulis for causing a tracking device to be placed on the motor vehicle(s) of Petitioner.

A form for the certification of business records is enclosed with this subpoena.

Silver Shield and Stanulis shall each respectively preserve all information, both tangible and electronically stored, potentially relevant to the preceding requests of this Subpoena.

**PLEASE TAKE FURTHER NOTICE** that failure to comply with this Subpoena is punishable by contempt of Court and shall make you liable to the person on whose behalf this Subpoena was issued for a penalty not to exceed $150.00 and all damages sustained by reason of your failure to comply.

Dated: New York, New York
December 13, 2022

Respectfully submitted,

**ZIEHER & ASSOCIATES, P.C.**

*[signature]*

Maria Christine Zieher, Esq.
11 Broadway, Suite 615
New York, NY 10004
(212) 235-7010 (office)
mzieher@zieherlaw.com

*Attorneys for Petitioner
Carlos Roa*

# CERTIFICATION OF BUSINESS RECORDS
## PURSUANT TO CPLR §3122-a

_____, being duly sworn, depose and says:

1. I am duly authorized custodian of records maintained by _____ and have authority to make this certification.

2. To the best of my knowledge, after reasonable inquiry, the records or copies thereof that are produced herewith are accurate versions of the documents described in the subpoena duces tecum that are in the possession, custody, or control of _____.

3. To the best of my knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in the subpoena duces tecum.

4. The records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence, or event recorded therein, or within a reasonable time thereafter, and that it was in the regular course of the business to make such records.

_____
**Signature**

_____
**Print Name**

Sworn to before me this
\_\_\_\_\_ day of _____, 2023

_____
**Notary Public**