UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
 IME WATCHDOG, INC.,

                                                      Case No.: 1:22-cv-2032 (PKC) (JRC)

                          Plaintiff,

      -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                         Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER PENDING A HEARING, A PRELIMINARY INJUNCTION, AND FOR CONTEMPT**

                                              **SAGE LEGAL LLC**
                                              Emanuel Kataev, Esq.
                                              18211 Jamaica Avenue
                                              Jamaica, NY 11423-2327
                                              emanuel@sagelegal.nyc

                                              **MILMAN LABUDA LAW GROUP PLLC**
                                              Jamie Falsen Esq.
                                              3000 Marcus Avenue, Suite 3W8
                                              Lake Success, NY 11042-1073
                                              jamiefelsen@mllaborlaw.com

                                              *Attorneys for Plaintiff*
                                              *IME WatchDog, Inc.*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT & RELEVANT FACTS**.................................................................. 1

**LEGAL STANDARD** .................................................................................................................. 5

      **ARGUMENT**................................................................................................................ 6

        A.    **Plaintiff Has Suffered Irreparable Harm & Injunctive Relief is Warranted** .................................................................................................................... 6

        B.    **IME WatchDog Has Repeatedly Proven Likelihood of Success On The Merits** ................................................................................................................ 7

        C.    **The Balance Of Hardships Tips Tremendously In IME WatchDog's Favor and Granting An Injunction Would Not Harm The Public Interest.** .......... 8

        D.    **A Bevy of Coercive Sanctions are Necessary to Enforce Compliance with Orders** ............................................................................................................. 8

**CONCLUSION** ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

Chevron Corp. v. Donziger, 384 F. Supp. 3d 465 (S.D.N.Y. 2019) ............................................... 8
IME Watchdog v. Beibenm, et al., 1:25-cv-10218 ....................................................................... 2
IME Watchdog, Inc. v. Gelardi, 2022 WL 1525486, at *9, 2022 WL 2316137
   (E.D.N.Y. June 28, 2022). ......................................................................................................... 9
IME Watchdog, Inc. v. Gelardi, 2023 WL 6958855, at *8; ECF 448 at 35 .................................. 7
IME Watchdog, Inc. 732 F.Supp.3d at 242………………………………………………………8
Markus v. Rozhkov, 615 B.R. 679 (S.D.N.Y. 2020) ................................................................... 10
Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,
   369 F.3d 645, 657 (2d Cir. 2004) ........................................................................................... 8,9
Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53 (2d Cir.1982)). ......................................... 9
SAM Party of New York v. Kosinski, 576 F. Supp. 3d 151 (S.D.N.Y. 2021) .............................. 7
Shillitani v. United States, 384 U.S. 364, 370 (1966). ................................................................. 8
Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979). ........................... 8

**Statutes**

Fed. R. Civ. P. 65 ........................................................................................................................... 5

**Treatises**

In re 1990's Caterers Ltd., 531 B.R. 309, 320-21 (Bankr. E.D.N.Y. 2015) ................................. 9

## PRELIMINARY STATEMENT & RELEVANT FACTS

Plaintiff IME WatchDog, Inc. ("IME WatchDog" or "Plaintiff") respectfully submits this memorandum of law in support of its Order to show cause for contempt consistent with this Court's January 28, 2026 Order. This Court has previously issued various Orders granting injunctive relief prohibiting the Defendants and their agents from using or retaining Plaintiff IME WatchDog, Inc.'s (hereinafter "Plaintiff" or "IME WatchDog") trade secrets and serving Plaintiff's customers on the Enjoined Customers List ("ECL"). These Orders have been disregarded by the Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants") with impunity from the get-go.

The Defendants have, once again (at least for the fifth time), orchestrated an alter ego – this time – Direct IME Services ("Direct") – which is purportedly owned and operated by nonparty Mark Purificati ("Purificati"), a former observer for Companions. See Declaration of Carlos Roa ("Roa Decl.") ¶ 8. Moreover, Purificati and other non-parties continue serving Plaintiff's customers on ECL in violation of this Court's Orders.

Notably, Safa has repeatedly testified she is no longer in the IME observer industry and has moved to Texas. On April 27, 2023, Safa submitted a declaration in opposition to a prior contempt motion wherein she declared "Defendants do not have any connection to or financial interest in IME Legal Reps. Nor do we have any connection to or financial interest in IME Management & Consulting LLC. Defendants are presently out of the business." See ECF 202-3. Later, at a contempt hearing on June 19, 2024, Safa testified that she told Giant Partners, the marketing company she had used for Companions, that she is "out of the game." See ECF 355-1 at 114:25-115:6. Moreover, in its March 31, 2025 Memorandum & Order, this Court noted that

1

at a July 2024 hearing, Safa testified she is "not doing any work in New York City." See ECF 448 at 15.

This Court is painfully familiar with Defendants' repeated creation of alter ego entities to evade this Court's injunctions. In its March 31, 2025 and February 9, 2026 Orders, this Court detailed each of the entities created and/or operated by Defendants to evade the Court's Orders. See ECF Docket Entries 448 and 616. Indeed, each time Plaintiff has filed a contempt motion arguing that Safa created an alter ego entity to Companions to evade this Court's injunctions, this Court has concluded that the entity was, in fact, created to evade this Court's Orders. See ECF 448 at 40 ("she understood the Court's Orders very well and took efforts to conceal her efforts to violate them, including by making multiple successor entities and attempting to hide the related paper trails").

After this Court enjoined Eugene Liddie ("Liddie"), Jeff Beiben ("Beiben"), Safa's and Vito's brother-in-law, continued to operate IME Legal Reps in his stead. Roa Decl. ¶ 13. That was until the next alter ego – Direct – was created by Defendants. Direct was organized in Florida by Purifcati who lives in New York[1] and, as discussed herein, operates in New York by conducting IMEs in New York. Roa Decl. ¶ 14, **Exhibit "D"**.

Although Direct, Purificati, and other non-parties are subject to suit in the Southern District of New York,[2] Plaintiff respectfully seeks to hold Defendants in contempt for creating Direct and enlisting the non-parties to aid in their repeated evasion of this Court's Orders. Through the limited means that Plaintiff has at its disposal at this stage of this litigation where

---

[1] Indeed, Purificati was served by Plaintiff with the Complaint in the SDNY Action at his home in Corona, New York. See IME Watchdog v. Beibenm, et al., 1:25-cv-10218, ECF Docket Entry 9.

[2] In that regard, Plaintiff respectfully notes that the only relief it seeks against Direct and the non-parties herein is an injunction, as damages will be sought in the case before the Hon. Vernon S. Broderick, U.S.D.J.

2

discovery has concluded (post-judgment discovery mechanisms), Plaintiff has uncovered, through its receipt of Safa's December 2024 through December 2025 J.P. Morgan Chase Bank, N.A. ("Chase") statements, that while Defendants were purportedly out of the IME observer industry – and certainly out of the IME industry in the State of New York – that Defendants made substantial payments to IME observers – some of whom worked for Companions. See Roa Decl. ¶¶ 8-12. 15-19, **Exhibit "A."**

Moreover, through its own independent research of publicly available documents that this Court may take judicial notice of, Plaintiff has learned that several former observers who worked for Companions have recently observed IMEs for customers on the ECL, some on behalf of Direct, as summarized below:

- On July 25, 2024, Plaintiff Jhony Cristian Macario Cotom, represented by Zemsky and Salomon, P.C. ("Zemsky"), a customer on the ECL, attended an IME where David Segovia ("Segovia"), a former Companions' observer, was the observer. See Index No.: 726000/2022, NYSCEF 16.

- On July 29, 2024, Plaintiff Rosario Dominguez, represented by Bergman Bergman Fields & Lamonsoff, LLP ("Bergman"), a customer on the ECL, attended an IME where Christian Hogarth ("Hogarth"), a former Companions' observer, was the observer. See Index No.: 513497/2023, NYSCEF 43.

- On August 28, 2024, Plaintiff Jetante Morris, represented by Zemsky attended an IME where Segovia was the observer. See 706274/2021, NYSCEF 75.

- On October 22, 2024, Plaintiff Querida Flores, represented by The Kuller Law Firm, LLP,[3] attended an IME where Hogarth was the observer. See 526522/2022, NYSCEF 36.

- On April 24, 2025, Plaintiff Quiana Woodbury, represented by Zemsky, attended an IME where Purificati, a former Companions' observer, from "Direct IME Services LLC" ("Direct") was the observer. See Index No.: 506527/2024, NYSCEF 24.

---

[3] The principal of this law firm previously worked at Chopra & Nocerino, a customer on the ECL, and would have utilized Plaintiff for its IME observer services at The Kuller Law Firm, LLP if it were not for Defendants' unlawful conduct.

3

- On April 30, 2025, Plaintiff Joseph Rajkumar, represented by Zemsky attended an IME where Tiffany Uribe ("Uribe") a former Companions' observer, was the observer. See Index No.: 704084/2023, NYSCEF 31.

- On May 28, 2025, Plaintiff Emily Persaud, represented by Zemsky attended an IME where Purificati "from Direct" was the observer. See Index No.: 815982/2024E, NYSCEF 24.

- On June 5, 2025, Plaintiff Maria Alfaro Nunez, represented by Bergman, attended an IME where Uribe "from Direct" was the observer. See Index No.: 603853/2020, NYSCEF 40.

- On July 11, 2025, Plaintiff Rafael Cuevas, represented by The Kuller Law Firm, LLP, a former client of IME Watchdog, attended an IME where Hogarth was the observer. See 151711/2024, NYSCEF 21.

Roa Decl. ¶¶ 8-12, 16-19.

Additional formal discovery, including a forensic examination, will likely link these IMEs to Defendants and uncover a treasure trove of additional instances of contempt.[4] There thus exists significant circumstantial evidence that Defendants are continuing to violate this Court's Orders by utilizing Purificati as their latest straw man to operate their IME business in New York – now through Direct to serve customers on the ECL. The old adage of "if it walks like a duck and quacks like a duck, it's a duck" is very apt here. Indeed, Plaintiff's information subpoenas[5] issued after this Court's entry of judgment against Defendants yielded bank statements from Chase – records Defendants were previously ordered by this Court to produce on May 6, 2025 which deadline was later extended to May 19, 2025 after Defendants failed to comply (See 4/2/2025

---

[4] As this Court has noted, Defendants have forced Plaintiff and this Court down the proverbial rabbit hole to chase down evidence of Defendants' wrongdoing. This has hampered Plaintiff from ascertaining all instances of contempt and its exact damages.

[5] Discovery has been closed in this case since August 19, 2025 except for Defendants obligation to produce financial records pursuant to this Court's Orders, including, but not limited to, Companions' Sales by Customer Details since 2022, in addition to Defendants' obligation to comply with the August 18, 2025 Order requiring information and documents concerning customers served by Defendants. See ECF 586.

4

Minute Entry; 4/9/2025 Docket Order; 4/16/2025 Docket Order; 4/25/2025 Docket Order; ECF 482), yet failed to produce – demonstrates that Defendants knowingly engaged in conduct both violative of Court Orders and in another effort to hide their conduct from this Court.

As a result, the Defendants should be held in contempt, and this Court's Orders should now apply with equal force to Direct, Purificati and all other individuals working with them to evade this Court's Orders.  See ECF 448 (issuing injunction against IME Legal Reps).

This Memorandum of Law is thus respectfully submitted by IME WatchDog in support of its urgent need for a TRO and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure (hereinafter referred to as the "Rules" or "Rule") and this Court's prior Orders, see ECF Docket Entries 66, 299, 448, and 616 (collectively hereinafter the "Injunctions") against Defendants and their alter ego business and latest "front man", Purificati to, among other things, include Direct and the non-parties involved in Direct within the ambit of the Orders because they are agents of the Defendants and because Direct is an alter ego or proxy of Companions.

Based on the foregoing, Plaintiff is entitled to injunctive relief.

## LEGAL STANDARD

Plaintiff respectfully incorporates the legal standard required for a preliminary injunction described by this Court its prior Orders.  See e.g. 4/5/2022 Docket Order; ECF 66, 299, 448, and 616.  For the reasons argued herein, IME WatchDog has satisfied these requirements, and the Court should grant a TRO and Preliminary Injunction to prevent Defendants, Direct (as an alter ego of Companions), and the non-parties, including Purificati and all other observers performing work for Defendants through any entities from continuing to possess Plaintiff's trade secrets, to return those trade secrets through the means of a forensic examiner at their cost, and to enjoin them from serving customers on the ECL.  Plaintiff seeks to secure the immediate and complete return

5

of its proprietary confidential, trade secret information misappropriated by, and in the possession and control of Defendants, Direct, and the non-parties and to prevent their dissemination or use of such information to unfairly compete against and continue to harm Plaintiff.

A broader array of contempt sanctions is also appropriate because numerous prior Orders have not caused Defendants to comply, as summarized in this Court's February 9, 2026 Order. ECF 616.

## ARGUMENT

### A. Plaintiff Has Suffered Irreparable Harm & Injunctive Relief is Warranted

Plaintiff has repeatedly demonstrated irreparable harm in this case. See 4/5/2022 Docket Order; ECF Docket Entries 66, 254, 299, 448 at 48.

Here, Defendants, Direct, and the non-parties have unquestionably stolen IME WatchDog's trade secrets containing its business plan, customers' contact information and the details concerning IME WatchDog's customers' details, pricing, and preferences which Defendants, Direct, and the non-parties have been and continue to utilize to solicit IME WatchDog's customers and Defendants have repeatedly violated Court Orders related to same. This is evident from a review of the Chase bank statements showing Safa's active involvement in the IME observer industry continuing to pay IME observers who formerly worked for Companions and then each alter ego Defendants created despite claiming that Defendants are out of the business and the many Orders requiring Defendants to turn those trade secrets over to Plaintiff as well as to cease using them.

This continued course of conduct has caused and will continue to cause IME WatchDog irreparable harm as Plaintiff stands to lose its business and customer base. Injunctive relief is thus necessary to obtain the return of and prevent the unlawful use of IME WatchDog's trade secrets

6

once and for all. Based on the foregoing, IME WatchDog has established that it will suffer irreparable injury in the absence of immediate injunctive relief.

### B. IME WatchDog Has Repeatedly Proven Likelihood of Success On The Merits

IME WatchDog has previously proven a likelihood of success on the merits. See IME Watchdog, Inc. v. Gelardi, No. 22-CIV.-1032 (PKC) (JRC), 2023 WL 6958855, at *8 (E.D.N.Y. Oct. 20, 2023) ("the Court finds that Plaintiff's customer lists constitute trade secrets and that Plaintiff is likely to succeed on the merits of their trade secret claims against Defendants"); ECF 448 at 45-46. This determination is therefore law of the case. See SAM Party of New York v. Kosinski, 576 F. Supp. 3d 151 (S.D.N.Y. 2021), aff'd No. 22-44-CV, 2022 WL 10763416 (2d Cir. Oct. 19, 2022) (determining, in deciding whether the law-of-the-case doctrine applies to preclude relitigation of an issue, a preliminary determination of the likelihood of success on the merits on a preliminary injunction motion should apply given that factual record remains substantially unchanged).

IME WatchDog similarly easily clears the hurdle to establish a likelihood of success on the merits of its contempt application which it has also previously established. See IME Watchdog, Inc. v. Gelardi, 2023 WL 6958855, at *8; ECF 448 at 35-43.

Indeed, it its March 31, 2025 Memorandum & Order, this Court previously concluded that The Amended Injunction, March 2023 TRO, and March 2023 Expanded Injunction are clear and unambiguous and were violated by Defendants. Id.

It is evident Defendants continued to do what they've been doing all along: enjoying access to Plaintiff's stolen trade secrets to serve customers that they have been enjoined from serving. Based on the foregoing, IME WatchDog is likely to succeed on the merits of its DTSA claim and contempt application against Defendants.

7

### C. The Balance Of Hardships Tips Tremendously In IME WatchDog's Favor and Granting An Injunction Would Not Harm The Public Interest.

This Court previously concluded the balance of equities tips decidedly in Plaintiff's favor and the public interest will be best served by an injunction prohibiting Defendants and their alter egos from further using what the Court found, based on clear and convincing evidence, are wrongfully obtained trade secrets to poach clients from Plaintiff. (ECF 448 at 50-52; *IME Watchdog Inc.*, 732 F. Supp. 3d at 242) and the circumstances have not changed warranting the same conclusion here.

### D. A Bevy of Coercive Sanctions are Necessary to Enforce Compliance with Orders

Defendants have demonstrated a propensity for non-compliance with this Court's Orders. In such circumstances, additional coercive sanctions are necessary. See Chevron Corp. v. Donziger, 384 F. Supp. 3d 465, 504 (S.D.N.Y. 2019), aff'd in part, vacated in part, rev'd in part, 990 F.3d 191 (2d Cir. 2021) ("Donziger's failure to perform required acts that have not been performed warrant sanctions for the purpose of coercing compliance. Accordingly, the Court will afford a brief period before the commencement of coercive monetary sanctions during which Donziger may comply fully with the relevant orders. It imposes escalating fines for each day of continued non-compliance after the expiration of that brief period while reserving the possibility of increasing those fines and/or resorting to other remedies in the event Donziger does not swiftly comply. As with all such remedies, Donziger will have the option of purging himself of these contempts"). The district judge, sitting in equity, is vested with wide discretion in fashioning a remedy. See Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979). "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." See Shillitani v. United States, 384 U.S. 364, 370 (1966). The Court has "'broad discretion to design a remedy that will bring about compliance.'" See Paramedics

8

Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004) (quoting Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir.1982)).

Based on Defendants' willful non-compliance with the Orders, this Court should consider and impose the coercive sanctions requested in Plaintiff's Order to show cause.  See, e.g., In re 1990's Caterers Ltd., 531 B.R. 309, 320-21 (Bankr. E.D.N.Y. 2015) ("Having considered this serious matter in great detail, this Court concludes that there is no available lesser sanction than the coercive sanction of incarceration; given Mr. Bivona's conduct and his ignorance of prior monetary sanctions, it is extremely unlikely that any increased monetary sanctions would improve the likelihood of his compliance. He has exhibited a clear pattern of noncompliance and utter disregard for this Court's Orders, and the dignity of the judicial process.  As such, if Mr. Bivona does not purge his contempt … by June 22, 2015, this Court will issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt …").

In addition, another forensic examination is necessary of Defendants, along with Direct, and the non-parties' digital devices at the sole cost and expense of Defendants, Direct and the non-parties.  This Court previously ordered a forensic examination because evidence was presented that Defendants would spoliate evidence. See April 4, 2022 hearing exhibit 18C at https://www.dropbox.com/scl/fi/t346be37mz8p5mhocm7xn/PS-EX-18C.mp3?rlkey=7wk1qqa9lfqibsdc2lbuugpfa&dl=0 (recorded conversation between Adam Rosenblatt and Defendants wherein Rosenblatt was requested to delete everything and destroy everything); see also IME Watchdog, Inc. v. Gelardi, 2022 WL 1525486, at *9, reconsideration denied, 2022 WL 2316137 (E.D.N.Y. June 28, 2022).

Given the non-parties' repeated refusal to comply with subpoenas, this relief is now again

9

necessary along with coercive sanctions based on Defendants' repeated and contumacious disregard for this Court's prior contempt orders, including barring Defendants from the IME industry in New York and criminal sanctions against Defendants.

Plaintiff respectfully submits that it is unable to itemize its damages due to Defendants' contempt because Defendants are in possession of all records related to IMEs they conducted and all financial documentation related to same. As a result, Defendants should be ordered to produce all records concerning all IMEs conducted and all related financial records after which time Plaintiff should be permitted to supplement this motion to provide details concerning its damages, including lost profits and attorneys' fees. Moreover, this Court should issue a *per diem* financial sanction of $1,000.00 until the documentation is provided. See Markus v. Rozhkov, 615 B.R. 679 (S.D.N.Y. 2020) (contempt sanction imposed by bankruptcy court on foreign debtor's attorney, for his persistent refusal to produce documents sought by foreign representative despite having been warned of consequences, was civil, and properly imposed by bankruptcy court in exercise of its civil contempt powers, only to the extent of the ongoing, per-day fine of $1,000 imposed until attorney produced the documents in question).

## CONCLUSION

For these reasons and the reasons set forth herein, IME WatchDog respectfully requests that this Court grant its Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order based on contempt and issue further relief as is just, equitable, and proper.

Dated: Lake Success, New York
      February 11, 2026                       Respectfully submitted,

                                          **MILMAN LABUDA LAW GROUP PLLC**

                                          By: */s/Jamie S. Felsen, Esq.*
                                          Jamie S. Felsen, Esq.
                                          3000 Marcus Avenue, Suite 3W8

Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1391 (direct dial)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

Dated: Jamaica, New York
  February 11, 2026

**SAGE LEGAL LLC**

By:  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Additional Attorneys for Plaintiff*
*IME WatchDog, Inc.*