UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IME WATCHDOG, INC.,

                       Plaintiff,

      -against-

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC, and IME
MANAGEMENT & CONSULTING LLC,

                       Defendants.
------------------------------------------------------------------X

Case No.: 1:22-cv-1032 (PKC) (JRC)

**DECLARATION OF NON-PARTY CARLOS ROA IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

       Carlos Roa, declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

       1.    I am a judgment creditor of Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), and IME Companions LLC ("Companions") (Safa, Vito, and Companions collectively hereinafter the "Defendants").

       2.    As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of the file maintained by me and IME WatchDog, and provide certain exhibits relevant to this Court's determination of the instant motion.

       3.    Plaintiff attaches a true and accurate copy (with some necessary redactions pursuant to Rule 5.2 of the Federal Rules of Civil Procedure) of the response by non-party J.P. Morgan Chase Bank, N.A. ("Chase") to an information subpoena issued by the judgment creditors of Defendants, of Safa's December 2024 through December 2025 bank statements produced by Chase hereto as **Exhibit "A."**

       4.    The Court should not be persuaded by Defendants' claims of financial

1

destitution. As evidenced by the submitted Chase bank statements, there is substantial account activity and consistent access to funds, demonstrating the availability and use of financial resources inconsistent with such assertions. Indeed, Safa's Chase bank statements show that for the period of December 2024 through December 2025, she received nearly $130,000.00 in income, and that is just from this particular bank account. A summary of her income through her Chase account for this period, based on my review of the Chase statements, is annexed hereto as **Exhibit "B"** at 2-6.

5. More importantly for this motion, the Chase bank statements unquestionably present evidence that Defendants continue to engage in the IME observer business despite their repeated sworn representations that they are no longer involved in the industry. See **Exhibits "A,"** generally, and **Exhibit "B"** at 1-2 (summarized) (reflecting payments to Dave Segovia ("Segovia"), Christian Hogarth ("Hogarth"), "Marianne IME," and Jeff Beiben ("Beiben")).

6. I compared the amounts of the deposits on Safa's Chase statements received from Intuit, which is the QuickBooks payment processor Defendants used when they operated Companions, totaling $31,150.00 with the payments Defendants made to the various IME observers, totaling $14,803.00, and this is consistent with the approximately fifty percent (50%) profit margin that Companions utilized throughout its existence.

7. This circumstantial evidence is sufficient to prove that Defendants were lying and perjuring themselves when they made representations that they were out of the IME observer industry, continue to defy this Court's injunction orders with impunity and total disregard for the consequences; although these financial records do not state *who* Defendants provided IME observer services for, publicly available documents elucidate this issue.

8. On April 24, 2025, Plaintiff Quiana Woodbury, represented by Law Offices of Zemsky and Salomon, P.C. ("Zemsky"), a customer on the enjoined customers list ("ECL"),

2

attended an IME where Mark Purificati ("Purificati") from Direct IME Services LLC ("Direct"), who was a former Companions' observer, was the observer. See Index No.: 506527/2024, NYSCEF Docket Entry 24.

9.     On April 30, 2025, Plaintiff Joseph Rajkumar, also represented by Zemsky, attended an IME where Tiffany Uribe ("Uribe"), who was a former Companions' observer, was the observer. See Index No.: 704084/2023, NYSCEF Docket Entry 31.

10.    On May 28, 2025, Plaintiff Emily Persaud, also represented by Zemsky, attended an IME where Purificati, from Direct, was the observer. See Index No.: 815982/2024E, NYSCEF Docket Entry 24.

11.    On June 5, 2025, Plaintiff Maria Alfaro Nunez, represented by Bergman Bergman Fields & Lamonsoff, LLP ("Bergman"), a customer on the ECL, attended an IME where Uribe from Direct was the observer. See Index No.: 603853/2020, NYSCEF Docket Entry 40.

12.    On July 11, 2025, Plaintiff Rafael Cuevas, represented by The Kuller Law Firm, LLP[1], attended an IME where Hogarth, who was a former Companions' observer, was the observer. See 151711/2024, NYSCEF Docket Entry 21.

13.    Based on a conversation between myself, Eugene Liddie ("Liddie"), Liddie's attorney, Daniella Levi, Esq., and Plaintiff's counsel on June 16, 2025, which I recorded using my cellular device, I learned from Liddie that after this Court enjoined him, Jeff Beiben ("Beiben") – Safa's and Vito's brother-in-law – continued to operate IME Legal Reps in Liddie's stead whereby Beiben would drop off the invoices and Liddie would pick up checks from customers, and Liddie deposited the checks into his bank account and give the money to

---

[1] The principal of this law firm previously worked at Chopra & Nocerino, a customer on the ECL, and would have utilized Plaintiff for its IME observer services at The Kuller Law Firm, LLP if it were not for Defendants' unlawful conduct.

3

Beiben.  Annexed hereto as **Exhibit "C"** is a true and accurate copy of a certified transcription of the June 16, 2025 audio recording of Liddie.  See Exhibit C at 5:13-5:51 mark.[2]

14.     Immediately thereafter, Direct was organized as a Florida limited liability company on June 11, 2025 with a principal place of business at 1733 Woodlark Way, Winter Garden, FL 34787, and Purificati is the registered agent for Direct IME LLC.  Annexed hereto as **Exhibit "D"** is he corporate filing for Direct.

15.     I also uncovered the following IMEs performed by Companions' former observers in 2024.

16.     On July 25, 2024, Plaintiff Jhony Cristian Macario Cotom, represented by Zemsky, attended an IME where David Segovia ("Segovia") was the observer.  See Index No.: 726000/2022, NYSCEF Docket Entry 16.

17.      On July 29, 2024, Plaintiff Rosario Dominguez, represented by Bergman attended an IME where Hogarth was the observer.  See Index No.: 513497/2023, NYSCEF Docket Entry 43.

18.     On August 28, 2024, Plaintiff Jetante Morris, represented by Zemsky attended an IME where Segovia was the observer.  See 706274/2021, NYSCEF Docket Entry 75.

---

[2] I also respectfully incorporate by reference the following: (i) this Court's May 13, 2022 Order and resulting injunction (ECF Docket Entries 66 and 66-1); (ii) this Court's October 20, 2023 Order and resulting expanded injunction (ECF Docket Entries 254 and 254-1); (iii) this Court's February 29, 2024 Order and resulting injunction (ECF Docket Entry 284); (iv) the facts adduced at the April 4, 2022 hearing (ECF Docket Entry 46-1); (v) the facts adduced at Safa's February 2 and 3, 2023 depositions (ECF Docket Entry 154-4; 154-5; (vi)  the facts adduced at the March 27, 2023 hearing (ECF Docket Entry 197-5); (vii) the facts adduced at the May 4, 2023 hearing (ECF Docket Entry 219-1); (viii) the facts adduced at the May 29, 2024 hearing (ECF Docket Entry 355-1); (ix) the facts adduced at non-party Giant Partners, Inc.'s deposition on June 11, 2024 (ECF Docket Entry 347-1); (x) Daniella Levi, Esq.'s first declaration in support of Plaintiff's motion for contempt, with all accompanying exhibits (ECF Docket Entry 317); and (xi) Daniella Levi, Esq.'s second declaration in support of its motion for contempt, with all accompanying exhibits (ECF Docket Entry 321).

19. On October 22, 2024, Plaintiff Querida Flores, represented by The Kuller Law Firm, LLP,[3] attended an IME where Hogarth was the observer. See 526522/2022, NYSCEF Docket Entry 36.

20. On May 30, 2025, I duly served Jeff Beibin with a subpoena ad testificandum. Mr. Beibin had acted as the observer at a neuropsychological Independent Medical Examination that day, the duration of which is typically no less than three hours. Notwithstanding proper service, Mr. Beibin failed to appear for his duly noticed deposition, thereby depriving Plaintiff of the opportunity to examine him under oath as to the identity of the entity with which he was affiliated on May 30, 2025.

21. Additionally, Zelle payment records reflect that Safa remitted $1,000.00 to Mr. Beibin on June 3, 2025, and an additional $750.00 on June 4, 2025.

22. There can be no legitimate dispute that Direct IME Services is merely a continuation of, and operates as the alter ego of, Companions.

23. I also wish to address the requirements of Local Civil Rule ("LCR") 83.6, which requires, for an affidavit such as this one, to "set out with particularity the misconduct complained of, the claim, if any, for damages occasioned thereby, and such evidence as to the amount of damages as may be *available to the moving party*." See LCR 83.6(a) (emphasis added)

24. I believe I sufficiently set out with particularity the misconduct complained of *supra*; however, I am unable to provide evidence as to the amount of damages because that information is unavailable to me and Plaintiff.

25. Notably, this Court issued an Order on April 2, 2025 directing Defendants to,

---

[3] The principal of this law firm previously worked at Chopra & Nocerino, a customer on the ECL, and would have utilized Plaintiff for its IME observer services at The Kuller Law Firm, LLP if it were not for Defendants' unlawful conduct.

5

"… [b]y Wednesday, April 16, 2025, … file all relevant documentation from the last two years, of all of their sources of income (even if the money received is then used to make a mortgage payment, for example) and of all of their assets. The statement of Defendants' finances should include a summary of all of their businesses (including, but not limited to, any independent medical exams ("IME") businesses, their daycare business, and their possible Italian sandwich deli business), a summary of all of their personal and business financial accounts (including bank accounts Defendants have signatory rights to, even if the account is in the name of another person or entity), a summary of all property they own and any related rental or rent-to-buy agreements, and full disclosure of all assets of any kind which they own. In addition to this summary, Defendants shall file all financial statements and/or records from the last two years that are related to the businesses, accounts, and/or assets identified …"

26. Defendants have failed to comply with this Order as is evidenced by their failure to produce Safa's 2025 Chase records which Plaintiff received only because Plaintiff served a subpoena on Chase. Because Defendants' intransigence has resulted in the inability for Plaintiff to establish its damages, this Court should issue a *per diem* financial sanction of $1,000.00 per day until all evidence of Defendants' financials is provided as previously directed almost a year ago.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 11, 2026.

*[signature]*

_____
Carlos Roa