UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

IME Watchdog,

Plaintiff,

v.

Safa Gelardi and Vito Gelardi,

Defendants.

-----------------------------------------------------------x

Case No. 22-CV-1032


# DECLARATION OF MARK PURIFICATI


## I. Identity and Limited Role

1. I am over 18 years old and competent to make this declaration. I have personal knowledge of the facts stated herein and, if called a witness, I could and would testify truthfully and competently to them.

2. I am the sole member/owner and primary operator of Direct IME Services LLC ("Direct IME"). I manage Direct IME's day-to-day operations, including scheduling, invoicing, and arranging coverage. (See Ex. J.)

3. Direct IME is independently owned and operated. Safa Gelardi and Vito Gelardi have no ownership interest in Direct IME and no right to control its operations. They do not manage Direct IME's scheduling, invoicing, banking, staffing, or client communications.

4. I provide IME observer coverage services. My role is limited to observer coverage and related logistics, such as confirming appointment times and locations, and invoicing for the observer services provided.

5. I am not a named party in this action.

6. Direct IME is a Florida limited liability company organized for administrative and tax purposes. Direct IME's EIN and Florida LLC formation documents are attached as Exhibit J. (See Ex. J.)

7. For purposes of this declaration: "WD" means Plaintiff IME Watchdog; "WD Materials" means IME Watchdog's confidential/proprietary materials (including any customer lists or data); and "ECL" means the "Enjoined Customers List" referenced in the Court's Order.

8. Some payments in the exhibits are made payable to 'IME Services.' Those payments correspond to the IME observer services reflected in the accompanying invoices and were deposited as payment for my/Direct IME's work. (See Exs. G–I.)

9. Direct IME is a small business. During the relevant period, Direct IME has operated as a two-client business. The two clients are Zemsky & Salomon, P.C. and Bergman, Bergman, Fields & Lamonsoff, LLP ("BBFL"). These clients contacted me directly for IME observer coverage. (See, e.g., Exs. A–E).

10. Most Direct IME work is performed by me personally. My fiancée, Tiffany Uribe, assists only on an as-needed basis when she is available. Tiffany is a licensed speech-language pathologist who provides pediatric therapy services, including children with special needs and families in underserved communities.

11. Direct IME uses independent contractors intermittently only for coverage when I am away or otherwise unavailable.

12. No Defendant directs, controls, supervises, or manages Direct IME's operations, scheduling, invoicing, staffing, or communications with clients.

**II. How Law Offices Keep Observer Contact Information**

13. Based on my experience performing IME observer work, law offices commonly keep IME observer contact information for scheduling and logistics, including

transmitting appointment details, confirming, attendance, communicating time-and-location information, and coordinating day-of logistics.

14. In my experience, law offices may obtain and retain an observer's contact information through prior matters in which an observer was assigned by an IME observer company and the law office needed to communicate logistical details directly with the observer.

15. The communications I receive directly from law offices (including by text and email) are typically logistics-forward communications, such as appointment times, locations, and similar scheduling details. (See, e.g., Exs. A–E.)

**III. Chronology of April 2025 Assignments**

16. This declaration addresses (a) the Zemsky & Salomon, P.C. IME observer assignment I performed on April 7, 2025 after a verbal request on April 4, 2025, and (b) the Bergman, Bergman, Fields & Lamonsoff, LLP ("BBFL") IME observer assignment I performed on April 14, 2025 after contact on April 11, 2025, as reflected in the attached correspondence, invoice, and payment records. A brief timeline summary is attached as Exhibit K. (See Ex. K.)

17. April 4, 2025: A representative from Zemsky & Salomon, P.C. called me and asked whether I was accepting IME observer work. I told her I was available as an independent contractor. During that call, she verbally requested that I provide IME observer coverage for an IME scheduled for April 7, 2025.

18. April 7, 2025: I performed the April 7 IME observer assignment described above. An invoice reflecting that April 7, 2025, IME is attached. (See Ex. F.) Any identifying client information may be submitted under seal and/or in redacted form.

19. April 11, 2025: A BBFL representative contacted me by phone regarding IME observer coverage for an IME scheduled for April 14, 2025, and then followed up by email stating "Thank you for taking my call," providing the appointment logistics and requesting confirmation. I replied confirming my availability for April 14, 2025, and BBFL responded "Thank you." (See Ex. A.)

20. April 14, 2025: I performed the BBFL IME observer assignment scheduled for April 14, 2025. (See Ex. A.)

21. Copies of deposited checks reflecting payment for the referenced invoices are attached as Exhibits G–I (See Exs. G–I.)

22. Additional ordinary course records reflect that Zemsky & Salomon, P.C. continued to send me appointment logistics by text message and that I issued invoices reflecting IME dates in April 2025, including April 24, 2025, and April 30, 2025. (See Exs. C–E.)

23. I have no personal knowledge of what other observers (if any) these law offices may have contacted for any assignment. I can only testify to the communications and assignments directed to me.

**IV. No Solicitation / No Marketing / No Website**

24. I do not solicit business for Direct IME. Direct IME does not advertise and does not maintain a website.

25. The assignments described in Section III above were initiated by inbound contact from law offices seeking IME observer coverage and were followed by logistics-only communications such as texts and emails providing appointment details and requesting confirmations. (See Exs. A–E.)

**V. No WD Materials / No ECL / No Ability to Target**

26. I have never received WD Materials from any person or entity. I have never been provided WD Materials, I have never requested WD Materials, and I have never used WD Materials.

27. I have never received the ECL. I do not know what names, entities, or customers are on the ECL, and I do not have the ECL in my possession, custody, or control.

28. I do not possess WD Materials or the ECL in any form (paper, electronic, email, text, cloud storage, or otherwise).

29. Because I have never received the ECL and do not know its contents, I have no ability to identify whether any person or entity is included on it.

30. I do not possess and have never possessed WD Materials or the ECL; therefore, expedited discovery or forensic examination directed at me would not produce WD Materials or the ECL.

31. At no time have I sought, requested, accessed, received, possessed, or used any WD Materials.

32. Direct IME's ordinary-course business records, including invoices, confirmations, and deposited checks, reflect Direct IME's independently developed client relationships and operations and are not derived from any WD Materials. (See, e.g., Exs. A–I,)

**VI. Clarifications to Prevent Misinterpretation**

33. Safa Gelardi and Vito Gelardi do not direct or control my IME observer work, or Direct IME's operations, including client intake, scheduling, invoicing, banking, or any communications with law offices. They have not provided me with WD materials, the ECL, or any information from either.

34. I have never received the ECL and do not know what names or entities it contains.

35. The exhibits may contain sensitive information (including client identifiers and appointment details). Any such information may be submitted under seal and/or in redacted form as appropriate.

**VII. Verification (28 U.S.C. § 1746)**

36. Direct IME Services LLC does business under the trade name IME Services. In 2025, I used the name 'IME Services' and the email address directimeservices@gmail.com in the ordinary course for scheduling and invoicing. (See Exs. A–H.)

37. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

These exhibits are offered to show when I first began receiving inbound observer requests from Zemsky & Salomon and BBFL, as reflected in the ordinary-course correspondence, invoice, and payment records attached.

Executed on February 18, 2026.

*Mark Purificati*
_____
Mark Purificati