# Sage Legal LLC

**18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc**

February 23, 2026

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F North
Brooklyn, NY 11201-1804

      *Re:*    **IME WatchDog, Inc. v. Gelardi, *et al.*
             Case No.: 1:22-cv-1032 (PKC) (JRC)**

Dear Judge Chen:

      This office, together with Milman Labuda Law Group PLLC, represents the Plaintiff IME WatchDog, Inc. ("Plaintiff") in the above-referenced case. Plaintiff respectfully submits this letter response in opposition to Defendant Safa Gelardi's ("Safa") "emergency" letter-motion[1] seeking to modify the Court's appearance requirement and permit her to appear remotely on March 3, 2026.

      The Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") require a witnesses' testimony to be taken in open court. <u>See</u> Fed. R. Civ. P. 43(a). Indeed, the Rules "emphasize the 'importance of live testimony in open court,' see Fed. R. Civ. P. 32(a)(4)(E), and '[t]here is a strong preference for live testimony, long recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness.'" <u>See</u> <u>United States v. Int'l Bus. Machines Corp.</u>, 90 F.R.D. 377, 381 (S.D.N.Y. 1981). This is especially important, whereas here, there have been multiple findings that Safa has perjured herself because this Court had the benefit of live testimony. <u>See</u>, <u>e.g.</u>, 2023 WL 6958855, at *2 (E.D.N.Y. Oct. 20, 2023) ("The Court also finds that Safa ... has repeatedly perjured herself throughout this case and is thus wholly uncredible as a witness"); <u>see</u> <u>also</u> 2024 WL 866136, at *5 (E.D.N.Y. Feb. 29, 2024) ("Furthermore, as the Court has noted on the record several times, the Court does not find the Individual Defendants' factual representations to be credible").

      Here, Safa acknowledges the Court has already denied her prior request for remote appearance and required her in-person attendance so Defendants can "answer for" conduct that appears "again" violative of the Court's orders. Safa now seeks the same relief again, rebranded as an "emergency." The request should be denied for a multitude of reasons.

      First, Safa's motion is really a motion for reconsideration in disguise. Reconsideration is "an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." <u>See</u> <u>Van Buskirk v. United Grp. of Companies, Inc.</u>, 935 F.3d 49, 54 (2d Cir. 2019).

---

[1] Notably, Defendant Vito Gelardi ("Vito") has not sought this relief, as the letter motion is signed solely by Vito. As such, he must appear regardless of this Court's decision.

It "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." See United States *ex rel.* Five Star Elec. Corp. v. Liberty Mut. Ins. Co., 758 F. App'x 97, 101 (2d Cir. 2018) (quotation omitted). As such, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Here, Safa identifies no legitimate controlling decisions or data warranting relief from the Court's in-person directive that was not previously available to her when she first made her original request to proceed remotely. Indeed, Safa admits that this Court's February 20, 2026 Order denied her request to appear remotely and required in-person attendance because Defendants must "answer for" conduct the Court believes is violative of its orders. Safa's present submission is not an emergency; it is a do-over. She "does not seek an adjournment," but instead requests the Court reduce its control over a critical enforcement proceeding. That is not "good cause."

Safa argues that new declarations from non-parties Mark Purificati ("Purificati") and Tiffany Uribe ("Uribe") "materially narrow" any inference that she directed or participated in prohibited conduct. But these declarations are (i) self-serving, (ii) untested by cross-examination, and (iii) not dispositive of whether Safa directed, facilitated, financed, or benefited from enjoined activity. See Okeke v. N.Y. & Presbyterian Hosp., 2017 U.S. Dist. LEXIS 87449 (S.D.N.Y. June 6, 2017) ("No one will testify by affidavit at the upcoming trial, because affidavits cannot be cross-examined"). In addition, it is worth highlighting that Eugene Liddie made similar arguments and provided near-identical testimony which were ultimately proved to be utterly false. Indeed, Safa's own framing confirms that the Court's focus is Safa's conduct, and the Court required her in-person attendance so she may answer for it.

Remote testimony also introduces avoidable risks in a proceeding where the Court's supervision matters: coaching off camera, document-handling games, and reduced ability to ensure a clean record when exhibits and financial records are involved. Indeed, if history is a guide, conducting proceedings remotely is fraught with peril to a clear record. See ECF Docket Entry 199 at 38:15-23 (driving while testifying), 40:23-41:1 (audio interference), 41:2-11 (audio interference), 41:16-42:1 (more audio interference), 42:2-8 (indiscernible testimony), 42:17-25 (more indiscernible testimony), 43:4-20 (requests to repeat testimony due to inability to hear), 44:9-45:25 (indiscernible testimony), 49:8-10 ("Mr. Kataev, let's stick to both this case and what this witness might know, given the difficulties of getting his testimony"). There is therefore no reason to repeat what has already been demonstrably failed effort to obtain testimony remotely.

Plaintiff thus respectfully submits that this Court's prior posture on such requests and the seriousness of contempt issues weigh strongly against remote appearance.

Further, although Safa attempts to downplay the proceeding as "suspicion-based" and argues that Plaintiff is trying to convert it into contempt based on "association" or "speculation," that argument only underscores why the Court should not permit a remote appearance. Where the Court is evaluating compliance with its orders, and where contempt consequences may be in play, the proceeding must be conducted in a manner that is beyond reproach and maximizes Court control and reliability. And the broader context matters. This Court has already imposed escalating sanctions culminating in case-ending relief in response to Defendants' conduct.

2

Safa's request would dilute the seriousness of the show-cause proceeding at the precise time the Court has determined in-person accountability is necessary. In that regard, Rule 43(a) does not help Defendant; she has not shown "good cause," and her proposed "safeguards" do not solve the core problem. Defendant invokes Rule 43(a), proposes "safeguards," and suggests she can appear from a monitored location while agreeing not to record. But the issue is not Zoom bandwidth, it is whether the Court should reduce its control over a defendant whose conduct has already required heightened enforcement measures. In that context, generalized personal burdens (childcare, finances, religious observance, employment) do not justify rewriting the Court's appearance directive. Indeed, there is no burden in requiring the Defendants to appear in person as directed. Round-trip airfare costs $600.00 per person assuming the Defendants fly in the morning of and return in the evening. See ECF Docket Entries 296 and 296-1. Moreover, as was made evident at the first hearing in this case on April 4, 2022, Defendants have an extended family whom they could rely on to care for their children for this one (1) day hearing.

Safa labels this an "emergency" and claims she has acted in "good faith," including by making "efforts to comply with payment obligations." But this Court has already found contempt and imposed escalating sanctions culminating in case-ending relief, not because of confusion, but because Defendants repeatedly failed to do what the Court ordered and instead pursued delay and obstruction that required Court intervention. Against that backdrop, Safa's request is not a neutral logistical issue; it is another attempt to dilute the Court's control over a proceeding where credibility, intent, and willfulness are central. A remote appearance would reward the very conduct the Court has been forced to sanction and would undermine the coercive and deterrent purpose of the Court's directives. Having been sanctioned up to and including default, Defendant is in no position to ask the Court to relax the one safeguard that ensures accountability: showing up. Indeed, equity and good conscience require Defendants' presence in this courthouse as directed, as the sole reason for their move to Texas was to insulate them from the judgments Plaintiff has obtained against the Defendants in this case.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Safa Gelardi's emergency motion/motion for reconsideration in disguise and maintain the requirement that she appear in person on March 3, 2026 to show cause why she should not be held in contempt.

Plaintiff thanks this honorable Court for its time and attention to this case.

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

*/s/ Jamie S. Felsen, Esq.*

**SAGE LEGAL LLC**

*/s/ Emanuel Kataev, Esq.*

cc: All Counsel of Record