UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

IME WATCHDOG, INC.,

                Plaintiff,

       -against-                            Case No.: 1:22-cv-1032 (PKC) (JRC)

SAFA ABDULRAHIM GELARDI, VITO GELARDI,
GREGORY ELEFTERAKIS, ROMAN POLLAK,
ANTHONY BRIDDA, IME COMPANIONS LLC,
CLIENT EXAM SERVICES LLC,
and IME MANAGEMENT & CONSULTING LLC,

                Defendants.

-------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS SAFA GELARDI, VITO GELARDI, AND IME COMPANIONS LLC

**MILMAN LABUDA LAW GROUP PLLC**

3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899

**SAGE LEGAL LLC**

18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421

*Attorneys for Plaintiff*
*IME WatchDog, Inc.*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**…………………………………………………………………..1

**FACTS** ................................................................................................................... 1

**STANDARD** ......................................................................................................... 2

**ARGUMENT** ........................................................................................................ 3

**POINT I** ................................................................................................................ 3
**LIABILITY ON ALL OF PLAINTIFFS' CLAIMS IN THE SECOND AMENDED
COMPLAINT HAS BEEN ESTABLISHED** .............................................................. 3

**POINT II** ............................................................................................................. 11
**PLAINTIFF SHOULD BE AWARDED $1,414.80.00 PLUS INTEREST AS DAMAGES
ON ITS UNDERLYING CLAIMS IN ADDITION TO $2,781,074 IN PUNITIVE
DAMAGES AND $299,256.59 IN ATTORNEYS' FEES AND A PERMANENT
INJUNCTION** ..................................................................................................... 11

**CONCLUSION** ................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (N.Y. 2010) .................. 8

Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).................................... 2

Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) ...................................................... 6

Arbor Hill, 522 F.3d at 190) ............................................................................... 14, 15

Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008............................. 15

Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2d Cir. 2012)............................................... 8

Burrowes v. Combs, 25 A.D.3d 370, 808 N.Y.S.2d 50, 53 (N.Y. App. Div. 2006)...................... 6

Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96 (N.Y. 2006 .................................................................................................. 9

Cont'l Cas. Co. v. Contest Promotions NY, LLC, 15-CV-501 (MKB), 2016 U.S. Dist. LEXIS 40782, 2016 WL 1255726, at *6 (E.D.N.Y. Mar. 28, 2016) ........................................ 2

Data Device Corp. v. W.G. Holt, Inc., No. 19-CV-4105 (JS) (ARL), 2020 U.S. Dist. LEXIS 223438, 2020 WL 7024312, at *6 (E.D.N.Y. Nov. 30, 2020)..................................... 5

Espada v City of NY, 2026 U.S. Dist. LEXIS 36795 (E.D.N.Y. Feb. 23, 2026) ......................... 3

Farrar v. Hobby, 506 U.S. 103, 114 (1992) ................................................................ 15

Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ................................................. 2

Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010) ............................ 2

Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020).............................................. 15

Fustok, 873 F.2d at 40.......................................................................................... 2

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)......... 2

Hunter v. City of NY, 2021 U.S. Dist. LEXIS 204295 (E.D.N.Y. Oct. 22, 2021)...................... 14

IME Watchdog, Inc. v. Gelardi, 2022 U.S. Dist. LEXIS 86997, at *17 (E.D.N.Y. May 13, 2022) .................................................................................................... 11, 13

IME Watchdog, Inc. v. Gelardi, 2023 U.S. Dist. LEXIS 189054 (E.D.N.Y. Oct. 20, 2023) ....... 13

IME Watchdog, Inc. v. Gelardi, 2024 U.S. Dist. LEXIS 173763, *16 (E.D.N.Y. Sep. 25, 2024)15

IME Watchdog, Inc. v. Gelardi, 2026 U.S. Dist. LEXIS 26340, *3 (E.D.N.Y. Feb. 9, 2026). 1, 16

IME Watchdog, Inc. v. Gelardi, 732 F. Supp. 3d 224 (E.D.N.Y. March 13, 2024) ................. 5, 13

IME Watchdog, Inc. v. Gelardi, 2023 U.S. Dist. LEXIS 189054, at *12 (E.D.N.Y. Oct. 20, 2023) ....................................................................................... passim

IME Watchdog, Inc. v. Gelardi, 2026 U.S. Dist. LEXIS 26340 (E.D.N.Y. Feb. 9, 2026). 1, 16, 17

Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)................................................... 7

La Barbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) ............................ 2

Lilly v. City of New York, 934 F.3d 222, 229–30 (2d Cir. 2019)...................................... 14

Lyons P'ship, L.P. v. D & L Amusement & Entm't, 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) .. 2

M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A., 853 Fed. Appx. 690, 693 (2d Cir. 2021) ..................................................................................................... 14

McLean v. Wayside Outreach Dev. Inc., 624 F.App'x 44, 45 (2d Cir. 2015)................................ 2

Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011)....................................................... 14

Morales v. B&M Gen. Renovation Inc., 14-cv-7290 (MKB) (MDG), 2016 U.S. Dist. LEXIS 31940, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016) ..................................................... 2

Nimkoff v. Drabinsky, 2020 U.S. Dist. LEXIS 101748 (E.D.N.Y. June 9, 2020) <u>adopted</u> <u>by</u> 2020 U.S. Dist. LEXIS 118669 (E.D.N.Y. July 7, 2020) .................................................... 1

Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019)............................................................ 9

Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 553-54 (2010) ......................................... 14

Pereira v. Marshall & Sterling, Inc (In re Payroll Express Corp), 2005 Bankr. LEXIS 3147, *6-7 (Bankr. S.D.N.Y. July 28, 2005) ............................................................................... 16

Rich v. Fox News Network, LLC, 939 F.3d 112, 126-27 (2d Cir. 2019)....................................... 6

Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011)..................................................... 2

Schroeder v. Pinterest Inc., 133 A.D.3d 12, 17 N.Y.S.3d 678, 693 (N.Y. App. Div. 2015) .......... 5

Techno-Comp, Inc. v. Arcabascio, 130 F. Supp. 3d 734, 743-44 (E.D.N.Y. 2015)....................... 7

Treyger v. First Class Furniture & Rugs Inc., 2022 U.S. Dist. LEXIS 125214 (E.D.N.Y. July 14, 2022) ................................................................................................................................. 14

U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34 (2d Cir. 2004) ................. 16

V&A Collection, LLC v. Guzzini Props. Ltd., 46 F.4th 127, 133 (2d Cir. 2022) ......................... 9

Weitzman, 98 F.3d at 72 ................................................................................................................ 14

Wowio, 2018 U.S. Dist. LEXIS 69848, 2018 WL 3202077, at *8.................................................. 2

Zurich Am, Life Ins. Co. v. Nagel, 538 F.Supp.3d 396 (S.D.N.Y. 2021)…………………….. 11

**Statutes**

18 U.S.C. § 1836.................................................................................................................. passim

28 U.S.C. § 1961.................................................................................................................. 1, 13, 16

<u>Federal Practice & Procedure Civil</u>§ 2688 ................................................................................... 2

New York Civil Practice Law & Rules § 5004........................................................................... 16

Fed. R. Civ. Proc. 55(b)(2) ......................................................................................................... 1, 2

**PRELIMINARY STATEMENT**

In light of the Court's February 9, 2026 Memorandum & Order, which imposed case-ending sanctions, directed that a certificate of default be entered against the Gelardis under Rule 55(a) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), and ordered Plaintiff to move for default judgment under Rule 55(b)(2), Plaintiff respectfully submits this memorandum of law in support of its motion for judgment by default against Defendants Safa Gelardi ("Safa"), Vito Gelardi ("Vito"), IME Companions LLC ("Companions"), Client Exam Services LLC ("CES"), and IME Management & Consulting LLC ("IME M&C").

Plaintiff, IME Watchdog, Inc. ("Plaintiff" or "IME WatchDog"), respectfully requests that the Court enter judgment by default against Safa, Vito, and Companions in the amount of $1,414,800.00 for Plaintiff's lost profits for the period 2018 through 2022, together with pre-judgment interest and post-judgment interest at the statutory rate computed as provided under 28 U.S.C. § 1961, in addition to $2,829,600 in punitive damages under the Defend Trades Secret Act ("DTSA") and Plaintiff's attorneys' fees under the DTSA.

**FACTS**

On October 30, 2025, this Court found Companions in default on the grounds that its counsel failed to respond to Court orders and deemed its attorney as having withdrawn. See Text Only Order dated October 30, 2025. On February 9, 2026, this Court, in relevant part, (i) found Safa and Vito in civil contempt; (ii) ordered case-ending sanctions; (iii) concluded that a default will be entered against the Gelardis under Rule 55(a); and (iv) ordered Plaintiff to file a motion for default judgment pursuant to Rule 55(b)(2). See *IME Watchdog, Inc. v. Gelardi*, 2026 U.S. Dist. LEXIS 26340 (E.D.N.Y. Feb. 9, 2026). This motion is filed in accordance with that Order.

1

## STANDARD

As explained in *Nimkoff v. Drabinsky*, 2020 U.S. Dist. LEXIS 101748 (E.D.N.Y. June 9, 2020) adopted by 2020 U.S. Dist. LEXIS 118669 (E.D.N.Y. July 7, 2020) (Chen, J.):

> If a defendant defaults and the plaintiff moves for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted). Additionally, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see Morales v. B&M Gen. Renovation Inc., 14-cv-7290 (MKB) (MDG), 2016 U.S. Dist. LEXIS 31940, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), adopted, 2016 U.S. Dist. LEXIS 41814, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016).
>
> "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." La Barbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotation marks omitted); see also 10A Charles A. Wright et al., Federal Practice & Procedure Civil§ 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claims for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."). In other words, since the defaulting defendant has not admitted any legal conclusions, the plaintiff must "establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010) (citation omitted); see Lyons P'ship, L.P. v. D & L Amusement & Entm't, 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010). If the elements of the claim are established by the complaint's factual allegations, the defendant's default establishes its liability. Wowio, 2018 U.S. Dist. LEXIS 69848, 2018 WL 3202077, at *8 (citation omitted)… Even though allegations in a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Greyhound Exhibitgroup, 973 F.2d at 158. Rather, a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded. See Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). A court may determine the adequacy of the basis for damages based upon evidence presented at a hearing, but a hearing is not required. See Fed. R. Civ. P. 55(b)(2); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Fustok, 873 F.2d at 40.

2

> No hearing is necessary, for example, where the court is satisfied, based "upon a review of detailed affidavits and documentary evidence," that there is an adequate basis for the damages sought. Cont'l Cas. Co. v. Contest Promotions NY, LLC, 15-CV-501 (MKB), 2016 U.S. Dist. LEXIS 40782, 2016 WL 1255726, at *6 (E.D.N.Y. Mar. 28, 2016) (citation omitted); see also McLean v. Wayside Outreach Dev. Inc., 624 F.App'x 44, 45 (2d Cir. 2015). Here, in light of the documentary evidence submitted in support of plaintiff's motion, and because the damage calculations are relatively simple, this Court concludes that no hearing is necessary.

See 2020 U.S. Dist. LEXIS 101748 at *11-15; see also Espada v City of NY, 2026 U.S. Dist. LEXIS 36795 (E.D.N.Y. Feb. 23, 2026).

## ARGUMENT

## POINT I

## LIABILITY ON ALL OF PLAINTIFFS' CLAIMS IN THE SECOND AMENDED COMPLAINT HAS BEEN ESTABLISHED

The well-pled allegations in the Second Amended Complaint ("TAC") (ECF Docket Entry 203), accepted as true, establish Safa's, Vito's, and Companion's liability for (i) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (ii) misappropriation of trade secrets under New York common law; (iii) unfair competition under New York common law; (iv) tortious interference with contractual relations, business relations, and prospective economic advantage; (v) unjust enrichment; (vi) civil conspiracy; (vii) conversion; and (viii) defamation, along with all remedies sought in the TAC, including a permanent injunction.

## A. DTSA and Misappropriation of Trade Secrets Under NY Common Law

Plaintiff respectfully refers the Court to its March 13, 2024 Order for the elements of a DTSA claim and a claim for misappropriation of trade secrets under New York common law. ECF Docket Entry 299. Plaintiff has sufficiently pled the elements of a DTSA claim all of which must be deemed admitted as Safa and Vito are in default.

Plaintiff alleged:

3

- Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its customers, contact information, and all details related to customers, including *inter alia*, their preferences and pricing, in addition to private and confidential financial information, as well as Plaintiff's forms and checklists that its observers use at IMEs;

- IME WatchDog made and makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to Rosenblatt, the President of IME WatchDog, and Mrs. Levi, who are entrusted to act in the best interests of IME WatchDog;

- Defendants were prohibited by law from bribing Rosenblatt to obtain confidential information and trade secrets of IME WatchDog;

- The trade secret information belonging to Plaintiff that Defendants possess derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

- Defendants utilized this very information as a road map to open a competing business and unfairly competed against IME WatchDog in dastardly fashion;

- Defendants knew that this information contained trade secrets belonging to IME WatchDog;

- Defendants have no right to retain or use any of IME WatchDog's trade secrets or other confidential and proprietary information due to their illegal conduct;

- Defendants are retaining and using that information to compete with IME WatchDog; IME WatchDog did not consent to Defendants' use of the information as set forth above;

- Defendants knew that the information provided to them by Rosenblatt contained Plaintiff's proprietary trade secrets that they had no right to receive and could not receive absent the improper acts of Rosenblatt;
- Defendants' conduct thus constitutes knowing, willful, and malicious misappropriation;

- Defendants have used Plaintiff's trade secrets to sell, through interstate commerce, services that compete with the services that Plaintiff markets, causing substantial loss of sales to Plaintiff and damage to its relationships with its clients;

4

- Defendants have wrongfully acquired and used Plaintiff's trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others; and

- As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the misappropriation of its trade secrets and loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of trade secrets.

See Plaintiff's Second Amended Complaint ("SAC"), ECF Docket Entry 203, ¶¶ 90-103. All of these allegations, when deemed admitted, which they must, establish liability for Plaintiff's claims under the DTSA and for misappropriation of trade secret claims. Notably, the Court previously concluded that Plaintiff is likely to succeed on the merits of its DTSA and misappropriation of trade secret claims. *IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224 (E.D.N.Y. March 13, 2024).

**B. Unfair Competition**

To state a claim for unfair competition under New York law, "a plaintiff must allege that a defendant misappropriated plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so." *Data Device Corp. v. W.G. Holt, Inc.*, No. 19-CV-4105 (JS) (ARL), 2020 U.S. Dist. LEXIS 223438, 2020 WL 7024312, at *6 (E.D.N.Y. Nov. 30, 2020) (quoting *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 17 N.Y.S.3d 678, 693 (N.Y. App. Div. 2015)).

Plaintiff has sufficiently pled the elements of a DTSA claim all of which must be deemed admitted as Safa and Vito are in default. Plaintiff alleges each of these elements:

- As a result of Defendants' bribery of Rosenblatt to obtain confidential trade secrets, Defendants have stolen customers from IME WatchDog; and

5

- As a result of Defendants' use of the trade secrets they bribed Rosenblatt to obtain, Defendants have caused economic damages to IME WatchDog along with diminishing its goodwill.

See SAC ¶¶ 124-126.  All of these allegations, when deemed admitted, which they must, establish liability for Plaintiff's unfair competition claim.

### C. Tortious Interference With Contractual Relations, Business Relations, and Prospective Economic Advantage

Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)). The plaintiff also "must allege that the contract would not have been breached 'but for' the defendant's conduct." *Rich v. Fox News Network, LLC,* 939 F.3d 112, 126-27 (2d Cir. 2019) (quoting *Burrowes v. Combs*, 25 A.D.3d 370, 808 N.Y.S.2d 50, 53 (N.Y. App. Div. 2006)).

Plaintiff alleges each of these elements:

- Plaintiff has entered into valid written agreements with its clients and customers concerning the provision of IME observer services;

- Through their bribery of Plaintiff's key employee and President, Rosenblatt, Defendants were at all relevant times aware of these agreements between Plaintiff and its clients and customers;

- Defendants intentionally provided financial incentives in the form of bribes to Rosenblatt to induce him to direct Plaintiff's customers to Defendants in violation of the law;

- Defendants' conduct is a crime, codified in New York's Penal Law at §§ 180.03 and 180.00 as Commercial bribery;

- Defendants further induced Rosenblatt to obtain and provide Plaintiff's confidential information to Defendants;

6

- Defendants knew that it was illegal to engage in bribery to obtain Plaintiff's confidential information and trade secrets;

- Defendants' conduct has caused Plaintiff to lose sales as well as cause injury to Plaintiff's brand and reputation with its clients;

- As a consequence of Defendants' acts to steal clients of IME WatchDog, IME WatchDog has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct; and

- Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

See SAC ¶¶ 127-137. All these allegations, when deemed admitted, establish liability for tortious interference with contractual relations, business relations, and prospective economic advantage.

### D. Unjust enrichment

To state a claim for unjust enrichment under New York law, "a plaintiff must allege '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 743-44 (E.D.N.Y. 2015) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). Plaintiff alleges each of these elements:

- Plaintiff has invested substantial time, money, and effort into developing and maintaining its confidential information and trade secrets in promoting and selling its IME observer services, including its customer & client lists, as well as the forms and checklists Mrs. Levi prepared for IME observers to utilize;

- Defendants have used and continue to use Plaintiff's confidential information to compete with Plaintiff and funnel Plaintiff's business opportunities away from Plaintiff to Defendants;

- As a result of Defendants' use of Plaintiff's confidential information and trade secrets, Defendants have all been enriched at Plaintiff's expense by, among other things, receiving substantial revenues from sales of services that compete with Plaintiff's services without bearing the expense and risk of identifying the services and developing the clients, customers, marketing plans, and materials necessary to achieve the sales; and

7

- As a consequence of Defendants' acts to steal customers of IME WatchDog, IME WatchDog has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

See SAC ¶¶ 138-142.  All these allegations, when deemed admitted, establish liability for unjust enrichment.

### E. Civil conspiracy

To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (quoting *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (N.Y. 2010)).

Plaintiff alleges each of these elements:

- Defendants conspired with each other for an unlawful purpose, to wit: obtaining Plaintiff's confidential information and developing a business to compete with Plaintiff using Plaintiff's confidential information obtained by the illegal act of bribery;

- Defendants have entered into a civil conspiracy to engage in, *inter alia*, misappropriation, unfair competition, unjust enrichment, and tortious interference with contract;

- Defendants each agreed to this common goal;

- Defendants acted in concert with the specific object of harming Plaintiff for their own personal gain;

- Each Defendant performed an overt act in furtherance of the conspiracy;

- The unlawful conduct was committed in furtherance of that conspiracy;

8

- As a result of the Defendants' combined, concerted, and continued efforts, Plaintiff was, is, and continues to be damaged; and

- As a consequence of Defendants' acts to steal customers of IME WatchDog, IME WatchDog has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

See SAC ¶¶ 143-151.  All of these allegations, when deemed admitted, establish liability for civil conspiracy.

**F. Conversion**

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96 (N.Y. 2006). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property . . . and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* (citations omitted). "[W]rongful intent is not required." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022).

Plaintiff alleges each of these elements:

- Plaintiff has a possessory right and legal ownership to its confidential information and trade secrets;

- Defendants exercised unauthorized dominion over Plaintiff's confidential information and trade secrets;

- Defendants willfully exercised unauthorized dominion over Plaintiff's confidential information and trade secrets to the detriment of Plaintiff;

- Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets was and is to the exclusion of Plaintiff's rights; and

- Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets constitutes conversion.

9

See SAC ¶¶ 152-158.  All of these allegations, when deemed admitted, establish liability for

conversion.

### G.  Defamation

The elements of a cause of action for defamation are: "(1) a written defamatory statement

of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the

defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.,*

*940 F.3d 804, 809 (2d Cir. 2019)*.

Plaintiff alleges each of these elements:

- The Defendants have published, made, and continue to make defamatory and false statements of fact about Plaintiff and its principal to third parties;

- These statements include false allegations to the effect that Plaintiff's principal stole the idea for her business from someone else, is a greedy and ruthless attorney, and that Plaintiff is abusing the law to sue Defendants out of business, constituting defamation *per se*;

- The Defendants made, and continue to make, the aforementioned statements knowing they were, and are, false and/or with reckless disregard as to their truth or falsity;

- The defamatory statements made by the Defendant are highly injurious to Plaintiff's reputation and good will in its trade or business and within the realm of its business community. The statements made, and continued to be made by the Defendants are made with actual malice because the statements are designed with the intent of damaging Plaintiff's reputation and good will;

- The Defendants' statements were made without privilege or authorization; and

- As a direct and proximate result of the Defendant' conduct, Plaintiff has suffered special damages consisting of, *inter alia*, reputational harm and loss of good will.

See SAC ¶¶ 159-165.  All of these allegations, when deemed admitted, establish liability for

defamation.

Accordingly, liability has been established for each of Plaintiff's claims.

## POINT II

## PLAINTIFF SHOULD BE AWARDED $1,414.80.00 PLUS INTEREST AS DAMAGES ON ITS UNDERLYING CLAIMS IN ADDITION TO $2,781,074 IN PUNITIVE DAMAGES AND $299,256.59 IN ATTORNEYS' FEES AND A PERMANENT INJUNCTION

Because the DTSA provides the largest damages of all of Plaintiff's claims, Plaintiff will analyze damages only under the DTSA. Remedies available under the DTSA include both equitable relief and monetary damages. In addition, the DTSA permits the granting of an injunction to prevent actual or threatened misappropriation of trade secrets. See 18 U.S.C. § 1836(b)(3)(A)(i); see also IME Watchdog, Inc. v. Gelardi, 732 F.Supp.3d 224 (E.D.N.Y. 2024); Zurich Am, Life Ins. Co. v. Nagel, 538 F.Supp.3d 396 (S.D.N.Y. 2021).

As to monetary damages, the DTSA permits the recovery of compensatory damages, punitive damages, and attorneys' fees. 18 U.S.C. §§ 1836(b)(3)(B)–(D). The DTSA's broad compensatory damages provision permits an award for: (1) "damages for actual loss caused by the misappropriation;" and (2) "damages for any unjust enrichment caused by the misappropriation ... that is not addressed in computing damages for actual loss;" or (3) "in lieu of damages measured by any other methods ... a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret." 18 U.S.C. § 1836(b)(3)(B).

The DTSA authorizes the court to award punitive damages in an amount not more than 2 times the amount of the damages and reasonable attorneys' fees where "the trade secret was willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(C)&(D).

Plaintiff alleges Defendants' willfully and maliciously misappropriated Plaintiff's trade secrets. See SAC ¶ 99. Accordingly, Plaintiff is entitled to (i) damages; (ii) punitive damages of two times the damages; and (iii) attorneys' fees.

11

### A. Damages

Between 2018 and 2022, through their theft of Plaintiff's trade secrets, Defendants stole at least sixty-seven (67) customers from Plaintiff. See Declaration of Daniella Levi, Esq. ("Levi Decl.") ¶ 5; see also IME Watchdog, Inc. v. Gelardi, 2022 U.S. Dist. LEXIS 86997, at *17 (E.D.N.Y. May 13, 2022) ("[T]here is no doubt that Companions' existence and growth is based almost entirely on Watchdog's misappropriated trade secrets, customers, and business opportunities"); IME Watchdog, Inc. v. Gelardi, 732 F. Supp. 3d 224, 242 (E.D.N.Y. 2024) ("Indeed, even with a preliminary injunction in place, Defendants disseminated Plaintiff's trade secrets, inflicting further harm against Plaintiff. Thus, Plaintiff will undoubtedly suffer additional irreparable harm absent a stricter preliminary injunction").

Indeed, this Court has already found that 98.3% of the total revenue Defendants generated since Companions' inception was obtained through sales to Plaintiff's former customers. Ime Watchdog, Inc. v. Gelardi, 2023 U.S. Dist. LEXIS 189054, at *12 (E.D.N.Y. Oct. 20, 2023).

Plaintiff's damages calculation in this motion is limited to Defendants' sales figures and Plaintiff's resulting lost profits for the period 2018 through 2022.  Plaintiff is not seeking damages 'through any extrapolated figures for later years, or any revenue attributed to IME Legal Reps or any other post-2022 entity.  Applying the court's prior determination that 98.3 percent of Companions' total revenue was derived from the theft of Plaintiff's customers, Plaintiff's damages for the period of 2018 through 2022 are $1,414.80.00 plus pre-judgment and post-judgment interest.  As set forth in the Levi Declaration, based on Companions' annual Sales by Customer Detail that Companions produced during discovery, Companions' sales for the period 2018 through 2022 totaled $2,625,787 (consisting of $72,847.00 in 2018; $411,215.00 in 2019; $435,316 in 2020; $823,345 in 2021; and $883,0646 in 2022. (Levi Decl. ¶ 7).

The 2022 sales figure had to be adjusted because it omitted the revenue associated with Zemsky & Salomon, a customer appearing in Companions' 2022 sales records which is on the Enjoined Customers List for whom the dollar amount was left blank. (Id. ¶ 8). Zemsky & Salomon paid Companions $54,015.00 in 2021; using that amount for 2022 yields a total 2022 Companions sales of $937,061.00. (Id. ¶ 9).  Therefore, Companions' total adjusted sales for the period 2018 through 2022 is $2,679,802.  (Id.)

Applying Plaintiff's typical fifty percent (50%) profit margin results in lost profits for the period 2018-2022 of $1,339,901.  (Id. ¶¶ 10-11).

In addition, because Companions charged $179.00 per independent medical examination while Plaintiff charged $189, Plaintiff's equivalent revenue would have been 5.59% higher, or $1,414,800.00 for that same time period.  (Id. ¶ 12).  Plaintiff respectfully submits that this amount represents the lost-profits damages to be awarded on the present motion.

Moreover, not only has Plaintiff pled that its trade secrets were willfully and maliciously misappropriated, which allegation must be deemed admitted, but this Court, on several occasions, has actually found that Defendants misappropriated Plaintiff's trade secrets.  See *IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224 (E.D.N.Y. March 13, 2024); *Ime Watchdog, Inc. v. Safa Abdulrahim Gelardi*, 2022 U.S. Dist. LEXIS 86997 (E.D.N.Y. May 13, 2022); *IME Watchdog, Inc. v. Gelardi*, 2023 U.S. Dist. LEXIS 189054 (E.D.N.Y. Oct. 20, 2023).

Accordingly, Plaintiff is entitled under the DTSA to an award of punitive damages of two (2) times the amount of its $1,414,800.00 in damages.  See 18 U.S.C. § 1836(b)(3)(C).  Therefore, Plaintiff is entitled to punitive damages of $2,829,600, for a total of $4,244,400 in lost profits and punitive damages.  Plaintiff is also entitled to pre- and post-judgment interest on the $1,414,800 for lost profits as provided by 28 U.S.C. § 1961.

13

**B. Attorneys' Fees**

The DTSA also provides for an award of attorneys' fees upon prevailing.  See 18 U.S.C. § 1836(b)(3)(B)–(D).   Under federal law, courts calculate attorneys' fees "by determining the appropriate billable hours expended and 'setting a reasonable hourly rate, taking account of all case-specific variables.'" See Lilly v. City of New York, 934 F.3d 222, 229–30 (2d Cir. 2019) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 189 (2d Cir. 2008)). This is known as the "lodestar" method. See, e.g., id. at 229 (explaining that "reasonable hours expended multiplied by the reasonable hourly rate" is the "lodestar").  The Supreme Court has "affirmed its long-standing position that 'the lodestar method yields a fee that is presumptively sufficient.'" Id. at 231 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 553-54 (2010)); see also Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case— creates a presumptively reasonable fee") (internal quotations omitted).

Accordingly, courts use the lodestar method to determine attorneys' fee awards resulting from contempt. See Treyger v. First Class Furniture & Rugs Inc., 2022 U.S. Dist. LEXIS 125214 (E.D.N.Y. July 14, 2022) (using the lodestar method to determine attorneys' fees owed due to contempt), report and recommendation adopted, 2023 WL 199698 (E.D.N.Y. Jan. 17, 2023); see also Hunter v. City of NY, 2021 U.S. Dist. LEXIS 204295 (E.D.N.Y. Oct. 22, 2021) (using the lodestar method to determine attorneys' fees owed for sanctioned conduct).  A court exercises "its considerable discretion" when it "bear[s] in mind all of the case-specific variables that ... courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." See Lilly, 934 F.3d at 230 (quoting Arbor Hill, 522 F.3d at 190) (alterations omitted); see

14

also M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A., 853 Fed. Appx. 690, 693 (2d Cir. 2021) (recognizing that "[d]istrict courts have 'considerable discretion' in determining the appropriate amount of attorneys' fees" to award on a finding of

contempt (quoting Weitzman, 98 F.3d at 720)). "'The most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)).

The courts may consider additional factors, including:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill, 522 F.3d at 184. The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." See Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020).

This Court previously concluded that the rates charged by Plaintiff's counsel, Jamie Felsen ($450) and Emanual Kataev ($300) are reasonable. See IME Watchdog, Inc. v. Gelardi, 2024 U.S. Dist. LEXIS 173763, *16 (E.D.N.Y. Sep. 25, 2024).

Given that liability has been established since Defendants have defaulted, Plaintiff is entitled to all of its fees expended throughout this litigation (less fees previously awarded to Plaintiff in connection with contempt motions).

15

Plaintiff's counsel has billed Plaintiff $452,460.00 comprised of $402,090.00 billed by Milman Labuda Law Group PLLC and $50,370.00 billed by Sage Legal.  (Levi Decl. ¶¶ 13-15).

After deducting the $153,203.41 in attorneys' fees that this Court previously awarded Plaintiff[1] there remains $299,256.59 in attorneys' fees Plaintiff incurred of which Defendants must be ordered to pay to Plaintiff.  (Id.)

**C.  Interest**

Plaintiff is also entitled to an award of prejudgment interest at the rate of nine percent (9%) per annum which equates to a total of $525,032.00 in pre-judgment interest.

This figure is computed by multiplying 1,505 (the number of days that has passed between now and the midpoint between January 1, 2018 when the lost profits began to be incurred and today, which is February 12, 2022[2]) by 0.09 (the annual pre-judgment interest rate provided under New York law[3] / 365, the number of days per year) times $1,414,800 (the total amount of damages).

Accordingly, Plaintiff is entitled to $525,032 in pre-judgment interest.  Plaintiff is also entitled to post-judgment interest.  28 U.S.C. § 1961.

---

[1] The Court awarded Plaintiff $47,321.63 in attorneys' fees on September 25, 2024.  ECF Docket Entry 394.  The Court awarded Plaintiff an additional $105,881.78 in attorneys' fees on February 9, 2026.  IME Watchdog, Inc. v. Gelardi, 2026 U.S. Dist. LEXIS 26340 (E.D.N.Y. Feb. 9, 2026).

[2] In instances where liabilities on which interest accrues were incurred over an extended period of time, courts have often found it useful to use the midpoint of such time for purposes of calculating the amount of interest accrued. See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34 (2d Cir. 2004).

[3] See New York Civil Practice Law & Rules ("CPLR") § 5004. The state law rate of interest governs for judgment on all claims arising under state law (even if such judgment is obtained in federal court). See, e.g., Pereira v. Marshall & Sterling, Inc (In re Payroll Express Corp), 2005 Bankr. LEXIS 3147, *6-7 (Bankr. S.D.N.Y. July 28, 2005).

**D.  Permanent Injunction**

18 U.S.C. § 1836(b)(3)(A) authorizes the court to issue an injunction to prevent any actual or threatened misappropriation on such terms as the court deems reasonable.

In its recent February 9, 2026 memorandum & Order directing Plaintiff to file the instant motion, the Court explained that "[t]hroughout the pendency of this case, the Court has issued multiple temporary restraining orders ("TROs") and preliminary injunctions ("PIs"), along with other orders directing the parties to act or refrain from acting in certain ways." IME Watchdog, Inc. v. Gelardi, 2026 U.S. Dist. LEXIS 26340, *3 (E.D.N.Y. Feb. 9, 2026). The Court explained that "Defendants have repeatedly violated the Court's orders and injunctions, and the Court has already found them in contempt multiple times." Id. at *6. The Court went on to summarize the various injunctions it issued and the various injunctions and orders that Defendants violated, including the April 2022 PI, the June 2022 Amended PI, the March 2023 TRO and Expanded PI. Id. at 3-13. Defendants' conduct has so been egregious that it concluded "Safa's only frustration appears to be that she was not more successful in violating this Court's Orders." Id. at *6. "In sum, Defendants have repeatedly flouted the Court's orders by retaining Plaintiff's customer information; contacting Plaintiff's employees; continuing—or attempting to continue—Companions' IME work as AES, CES, and IMELR; and failing to pay BRG. Id. at *16.

The Court also most recently found Defendants in contempt for dissipated their assets in violation of this Court's Orders to evade enforcement of judgments in this case. Id. at 17-26.

This is a textbook example of the need to impose a permanent injunction. Given Defendants misappropriation of Plaintiff's trade secrets and their repeated violations of this Court's Orders wherein Defendants set up alter ego entities to violate this Court's Orders for which they have been found in contempt.

17

Defendants must be enjoined permanently from performing IME observations directly or indirectly in the tri-state area.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a default judgment in the amount of $5,068,688.59 in favor of Plaintiff and against Defendants Safa Gelardi, Vito Gelardi, and IME Companions LLC, as follows: (i) $1,414,800 for lost profit together with pre-judgment interest in the amount of $525,032 and post-judgment interest, (ii) punitive damages in the amount of $2,829,600; (iii) attorneys' fees in the amount of $299,256.59; (iv) a permanent injunction prohibiting Defendants from conducting any independent medical examination observations directly or indirectly in new York, New Jersey and Connecticut; and (v) such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York
     March 28, 2026

          MILMAN LABUDA LAW GROUP PLLC

          By: /s/ Jamie S. Felsen
          Attorneys for Plaintiff
          3000 Marcus Ave., Suite 3W8
          Lake Success, NY 11042
          (516) 328-8899

Dated: Jamaica, New York
     March 28, 2026

          SAGE LEGAL LLC

          By: /s/ Emanuel Kataev, Esq.
          Attorneys for Plaintiff
          18211 Jamaica Avenue
          Jamaica, NY 11423-2327
          (718) 412-2421

18