Law Offices of Jared M. Lefkowitz
880 Third Avenue, 5th Floor
New York, NY 10022
T (212) 682-1440
JMLefLaw@Gmail.com
*Attorney for Defendant*
*Direct IME Services LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
IME WATCHDOG, INC,                                    Case No. 25 cv 10218

               Plaintiff,

      - against -

JEFF BEIBEN, MARK PURIFICATI,
FARI GUTIERREZ, CHRISTIAN HOGARTH,      **REPLY AFFIRMATION**
TIFFANY URIBE, DAVID SEGOVIA, and
DIRECT IME SERVICES LLC,
               Defendants.
--------------------------------------------------X

     **JARED LEFKOWITZ**, an attorney duly admitted to practice in this Court affirms as follows under penalty of perjury:

     1.  I represent the Defendant Direct IME Services LLC ("Direct"), and this affirmation is submitted in further support of Direct and the individual Defendants' *(pro se)* motion to dismiss. Direct hereby joins in the arguments and exhibits submitted in the reply submitted separately by the individual Defendants. This Affirmation is to address other issues which are not set forth in the papers submitted by the individual Defendants.

     2.  As the Court knows, the Plaintiff here is also a Plaintiff in the case IME Watchdog, Inc. v. Safa Abdulrahim Gelardi, et al, Case No. 22 cv 1032 in the Eastern District of New York before District Judge Pamela K. Chen (the "EDNY" case). Direct and its principal Mark Purificati are not parties in that case.

**The June 13, 2025 IME Observation**

3.  In the EDNY case the Plaintiff recently brought an Order to Show Cause against Direct and Mr. Purificati making the same allegations against them as they do in this case. See, Exhibit A. This Affirmation is submitted to alert the Court as to what happened in that motion because it bears directly on the Plaintiff's ability in our case to maintain any claims whatsoever based upon the utter lack of evidence.

4.  Crucially, there is a certain "irregularity" in Plaintiff's primary piece of evidence.

5. An evidentiary hearing was held in the EDNY on March 3, 2026 in connection with the Order to Show Cause. At the close of testimony Judge Chen ruled off the bench denying Plaintiff's motion. Judge Chen stated on the record "there is no ***there*** there."[1] At that point on behalf of Direct I made an oral application for recovery of Direct's attorney's fees. Judge Chen set a briefing schedule for that motion.

6.  During the testimony Plaintiff attempted to impeach Mr. Purificati with a June 13, 2025 Independent Medical Examination ("IME") observation which Plaintiff alleges was performed by Mr. Purificati "on behalf of Safa [Gelardi]" who is the primary Defendant in the EDNY case. Allegedly, the law firm Morgan and Morgan hired Safa Gelardi or one of her companies to perform that observation and accompany their client Jeannie Tam, and the claim is that Mr. Purificati did so as an agent of or in collusion with Ms. Gelardi.

---

[1] I have tried to order the transcript, but my understanding is that the Court reporter is ill. He has not been responsive to my requests.

7. Mr. Purificati testified to the best of his recollection during the hearing that if he had done such an observation it would have been in approximately April or May 2025, but that in all cases he is an independent contractor and was never an agent of Ms. Gelardi or in collusion with her.

8. Following the hearing, the Defendant Gelardi checked her records, and Mr. Purificati went home and checked his records, and both learned that Mr. Purificati had NOT done such an observation, and what's more, Mr. Purificati had never performed an observation for a Morgan and Morgan law firm client. Attached hereto as Exhibit B is a letter to Judge Chen in that regard.

9. On March 9, 2026 Judge Chen Ordered Plaintiff to "file any documents related to this alleged observation, as well as a brief description of the documents and where they were obtained." Plaintiff thereafter provided the Court with a copy of the report prepared by Dr. Francis Pflum of the Tam IME which does state that the claimant was "accompanied by legal representative, Mark Purificati." Exhibit C. That report and that filing by Plaintiff is the "irregularity" we refer to above.

10. As set forth in Mr. Purificati's accompanying Declaration, he maintains that he did not perform that observation. Accordingly, when Mr. Purificati saw this IME report alarm bells went off in his head. There is one innocuous explanation for these circumstances, but there is another devastatingly serious and more likely possibility. We are referring to it herein, for now, as an "irregularity" subject to further action if this case proceeds.

11. The innocuous explanation is that the doctor made a ministerial error in naming Mark Purificati as the observer. Knowing that to be unlikely, I undertook an investigation. The first thing I did was look in the case details for the Tam case in NY Supreme Court to learn who the Morgan and Morgan attorney was on that case. It was Nicholas Gerschman.

12.  I called Mr. Gerschman on March 24, 2026, and he graciously accepted my call right away. I alerted him as to who I am and why I was calling. I told him that although Mr. Purificati is named in the Tam IME report, he maintains that he did not do the observation. I then asked if Mr. Gerschman would check his records to confirm who he hired to perform that observation.

13.  Mr. Gerschman then casually advised me that he uses *Plaintiff IME Watchdog* to do his IME observations.

14.  I have asked for written confirmation of that, and Mr. Gerschman explained that he would need to consult with other members of his firm before doing so. As of the date of this Affirmation I have not yet received written confirmation.

15.  There is no dispute in this case that Mr. Purificati never worked for Plaintiff IME Watchdog.

16.  The evidence does not end there. Through the New York State Electronic Case Filing System I searched for other cases handled by Mr. Gerschman from Morgan and Morgan. IME reports generally do not get e-filed until late in the case when a trial may be imminent, but after reviewing the docket on many cases I did find one.

17.  Mr. Gerschman and Morgan and Morgan is Plaintiff's counsel in the case Donna Petty as Executrix of the Estate of James Kelly v. Pasta La Vista, Inc. et al, Index No. 152154/2022. See the case detail attached as Exhibit D showing Mr. Gerschman as Plaintiff's counsel.

18.  Attached hereto as Exhibit E is an IME report in that Kelly case dated April 4, 2024 (which is approximately one year earlier than the Tam case) where *Plaintiff IME Watchdog was present and expressly named as the observer*.

4

19.   The conclusion is inescapable that Plaintiff IME Watchdog is the regular vendor of Morgan and Morgan for their observations.

20.   It is unclear how Mark Purificati's name came to be included on the Tam IME report. As noted, we are referring to this circumstance for now as an "irregularity." But it would appear likely that when Plaintiff submitted the Tam IME report to the EDNY Plaintiff had good reason to know that Mark Purificati was not correctly named because Plaintiff likely did the observation itself.

21.   Finally, there is one crucial thing to note. In order to discover the Kelly IME report there is a key detail I had to know *in advance*. I had to know the name of the law firm and lawyer in order to do a search for every single case they handled. Then, I had to sift through every single case, going docket entry by docket entry, to see if an IME report was filed.

22.   Plaintiff would not have had the advance knowledge to look for cases involving Mr. Gerschman in order to discover the Tam IME which *coincidentally* named Mr. Purificati as the observer. Plaintiff would have had to sift through thousands of cases, and even more thousands of docket entries. These circumstances suggest that Plaintiff had advance knowledge and knew precisely where to look. The implications of that we leave in the air – for now.

23.   This situation will have enormous implications in the EDNY for our attorney's fees application. Here, it shows that Plaintiff's primary piece of evidence against Direct and Mr. Purificati is not worthy of consideration to support a federal lawsuit and the case should be dismissed.

5

**The Do's and Don't Email**

24.  Attached hereto as Exhibit F is the Plaintiff's opposition to the attorney's fees application in the EDNY. We have not yet filed our reply. As the Court will note, the above IME and a mass "do's and don't email" from Safa Gelardi to multiple recipients are the only pieces of evidence cited by Plaintiff to avoid a negative finding and Order to pay Direct's attorney's fees.

25.  We do not have the do's and don't email to attach hereto. Plaintiff utilized it at the Order to Show Cause hearing as impeachment evidence, and refuses to provide us with a copy.

26.  But we did see it briefly at the hearing. It is simply advice on the best way for an observer to conduct themselves during an IME. The content is public and commonplace. Published New York decisions and official IME guidance openly describe the same ground rules: an observer may attend, but the observer may not interfere with the examination. Those are not trade secrets. They are standard, public, readily ascertainable IME ground rules.

27.  Plaintiff's attempt to characterize such materials as proprietary or confidential only reinforces the lack of a factual basis for its claims. Information that is publicly available and widely reflected in industry practice cannot support allegations of trade secret misuse.


**Zemsky and Bergman**

28.  In paragraph 21 of the Complaint, as well as in the Order to Show Cause papers in the EDNY, Plaintiff referred to wrongful IME observations performed by Mr. Purificati on behalf of the Zemsky and Bergman law firms. These are one of the few actual specific or identifiable allegations against Direct or Mr. Purificati in their Complaint.

29. Mr. Purificati testified at the hearing that those firms contacted him, and not the other way around, which is entirely lawful. Plaintiff had no impeachment evidence to contradict Mr. Purificati and those allegations are notably omitted from Plaintiff's opposition papers to the attorney's fee application.

30. One would suppose that in order to avoid a finding and Order for Plaintiff to pay Direct's attorney's fees that Plaintiff would lay out all of its evidence, or at least its best evidence. In that light, the Plaintiff's abandonment of the claims regarding Zemsky and Bergman makes it eminently clear that the Plaintiff never had any evidence of wrongdoing by Direct or Mr. Purificati in the first place.

**This Whole Case is a Bluff**

31. When we made the application for attorney's fees at the close of the hearing in the EDNY case there were two grounds. *First*, Plaintiff submitted papers to this Court alleging wrongdoing by Direct and its principal Mark Purificati with no actual evidence, and thereby obtained extraordinary emergency relief against Direct, shut Direct down, and forced Direct to retain counsel and appear.

*32. Second*, inasmuch as the papers contained no specific allegation of wrongdoing by Direct or Mr. Purificati, Plaintiff doubled down and provided the Court with an exhibit list containing 19 so-called "impeachment" documents which had never been disclosed to us.

33. The rationale for that was that the Plaintiff did not want Mr. Purificati to be able to tailor his testimony. Judge Chen relied upon that representation by Plaintiff in permitting those documents to be withheld from Direct and Mr. Purificati until cross examination.

34. We now know that such rationale provided to the Court by the Plaintiff to be knowingly false. And the way we know it was false is that Mr. Purificati testified consistently with his innocence, consistently with his written submission, and yet none of this alleged smoking gun impeachment evidence was presented to the Court. It is certainly not included in their opposition to the attorney's fees application.

35. What happened here is that the Plaintiff bluffed. They had no evidence of any wrongdoing by Direct or Mr. Purificati, and they bluffed in an attempt to cause Mr. Purificati to "come clean" on the witness stand for fear of the phantom impeachment evidence and a perjury charge. This strategy backfired because Mr. Purificati is indeed innocent of the claims leveled against him and so he knew that evidence of his wrongdoing does not exist.

36. But the Plaintiff's misconduct does not end there. In yet another attempt to justify its conduct, the Plaintiff argues that it did not have the relevant evidence because Mr. Purificati did not comply with a subpoena. See, Exhibit F. They argue that because there had been no discovery, that Plaintiff lacked a "full picture." The implication of such a statement is staggering bad faith and willful frivolous and malicious conduct. It is nothing less than an admission that the Plaintiff knew it did not have any information or evidence of wrongdoing at the time it brought the Complaint in this case or the order to show cause proceeding in the EDNY.

37. There are procedures to enforce a subpoena, and filing a federal lawsuit and order to show cause motion papers based upon wishful thinking is not one of them. In the EDNY the Plaintiff caused a temporary restraining order to be issued, and an evidentiary hearing to be conducted -- all based upon what they *wanted* the alleged missing subpoenaed documents to say.

38.  In its papers the Plaintiff relies entirely on two supposed evidentiary items: a generic "do's and don'ts" email and an alleged June 13, 2025 observation supposedly performed by Mark Purificati. As set forth above, neither piece of evidence comes close to suggesting any wrongdoing by Direct or Mr. Purificati and neither can provide a sufficient basis to maintain this case.

39.  For the foregoing reasons, the motion to dismiss should be granted in all respects.

Dated: New York, NY
March 27, 2026

_jared lefkowitz_
_____
Jared M. Lefkowitz