UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

IME WATCHDOG, INC,                                             Case No. 22 cv 1032

               Plaintiff,

    - against -

SAFA ABDULRAHIM GELARDI, et al,

               Defendants.
-------------------------------------------------X

# DIRECT IME SERVICES LLC'S REPLY
# IN FURTHER SUPPORT
# OF MOTION FOR ATTORNEYS FEES

LAW OFFICES OF
JARED M. LEFKOWITZ
880 Third Avenue, 5th Floor
New York, NY 10022
(212) 682-1440
JMLefLaw@Gmail.com

Direct IME Services LLC ("Direct"), by and through its counsel Jared M. Lefkowitz respectfully submits this reply in further support of its motion for attorney's fees. Before delving into the merits there are three preliminary matters we wish to address. *First*, we thank the Court for extending until April 14, 2026 our time to submit these reply papers following the circumstances surrounding the Morgan and Morgan IME. Inasmuch as we have been able to complete the investigation which we are able to do at this point, we saw no reason to wait two weeks. *Second*, we respectfully refer the Court to the updated account statement submitted today to the Court *in camera*. It includes fees following the hearing which we respectfully submit ought also to be reimbursed. *Third*, we alert the Court to the below market hourly rate being charged to Direct, and therefore in turn to Plaintiff if this application is granted. I am a member of the New York City Bar Association Legal Referral Panel, which is how Direct came to retain my services. The hourly rate is preferential for a client in Direct's financial circumstances which was required to retain counsel. It is respectfully submitted that an enormous benefit is inuring to the extreme benefit of Plaintiff in having that fee rate passed through.

## SUMMARY OF ARGUMENT

In its opposition papers the Plaintiff has ignored the entire purpose of the evidentiary hearing. Under the Defend Trade Secrets Act ("DTSA") the Plaintiff needed to present evidence, *inter alia*, that Direct and/or Mr. Purificati "misappropriated the trade secret of the applicant by improper means." 18 U.S.C.A. § 1836. Absent such evidence, it would not matter if Direct or Mr. Purificati worked for every single customer on the Enjoined Customer List. Direct and Mr. Purificati were entitled to compete with Plaintiff if they wished.

The Plaintiff was not able cite for this Court one single piece of evidence that Direct or Mr. Purificati obtained any of Plaintiff's trade secrets, much less used them for any purpose. In this motion we do not allege that we are merely a "prevailing party" or that we were subjected to garden variety "bad faith." To

1

be blunt, we allege that the Plaintiff knowingly and intentionally submitted false or misleading papers to the Court; and then in an attempt to justify those papers, Plaintiff made additional material misrepresentations relied upon by the Court (the so-called impeachment evidence in their exhibit list). Plaintiff is subject to sanctions not only pursuant to the DTSA but also FRCP Rule 11 and this Court's inherent power to regulate papers and conduct before the Court. It is respectfully submitted that an attorney's fee award should be the least of the penalties imposed upon Plaintiff.

**ARGUMENT**

When we made the application for attorney's fees at the close of the hearing there were two grounds. *First*, Plaintiff submitted papers to this Court alleging wrongdoing by Direct and its principal Mark Purificati with no actual evidence, and thereby obtained extraordinary emergency relief against Direct, shut Direct down, and forced Direct to retain counsel and appear. *Second*, inasmuch as the papers contained no specific allegation of wrongdoing by Direct or Mr. Purificati, Plaintiff doubled down and provided this Court with an exhibit list containing 19 so-called "impeachment" documents. The rationale for that was that the Plaintiff did not want Mr. Purificati to be able to tailor his testimony during the evidentiary hearing. This Court relied upon that representation by Plaintiff in permitting those documents to be withheld from Direct and Mr. Purificati until cross examination.

As we have set forth in previous papers submitted to the Court, we now know that such rationale provided to the Court by the Plaintiff to be knowingly false. And the way we know it was false is that Mr. Purificati testified consistently with his innocence, consistently with his written submission, and yet none of this alleged smoking gun impeachment evidence was presented to the Court. As previously noted, what happened here is that the Plaintiff bluffed. They had no evidence of any wrongdoing by Direct or Mr. Purificati, and they bluffed in an attempt to cause Mr. Purificati to "come clean" on the witness stand for fear of the phantom impeachment evidence and a perjury charge. This strategy backfired because Mr.

Purificati is indeed innocent of the claims leveled against him and so he knew that evidence of his wrongdoing does not exist. It is respectfully submitted that such conduct by Plaintiff satisfies any standard for the award of attorney's fees.

But the evidence of Plaintiff's misconduct does not end there and it was revealed in their opposition papers to this motion. In yet another attempt to justify its conduct, the Plaintiff argues that it did not have the relevant evidence because Mr. Purificati did not comply with a subpoena. They argue that because there had been no discovery, that Plaintiff lacked a "full picture." The implication of such a statement is staggering bad faith and willful frivolous and malicious conduct. It is nothing less than an admission that the Plaintiff knew it did not have sufficient information or evidence of wrongdoing at the time it brought this order to show cause proceeding and obtained emergency relief.

There are procedures to enforce a subpoena, and filing motion papers based upon wishful thinking is not one of them. The Plaintiff caused a temporary restraining order to be issued, and an evidentiary hearing to be conducted -- all based upon what they *wanted* the alleged missing subpoenaed documents to say. As stated above, it is respectfully submitted that such conduct satisfies any standard for the award of attorney's fees.

In its papers the Plaintiff relies entirely on two supposed evidentiary items: a generic "do's and don't" email and an alleged June 13, 2025 observation supposedly performed by Mark Purificati. As set forth below, neither piece of evidence includes Plaintiff's confidential information or trade secrets, but even if they did, they do not come close to suggesting any wrongdoing by Direct or Mr. Purificati sufficient to warrant a TRO and evidentiary hearing.

**The Do's and Don't Email**

Even taking the email at face value, it proves nothing of consequence. It is not an instruction to violate the Court's orders. It does not include Plaintiff's confidential information or trade secrets, or evidence that Direct was an alter ego of Companions. It is not evidence that Direct knowingly served an enjoined customer even if the ECL applied to Direct.

Fundamentally, the subject matter of the email is public and commonplace. Published New York decisions and official IME guidance openly describe the same ground rules: an observer may attend, but the observer may not interfere with the examination. Those are not trade secrets. They are standard, public, readily ascertainable IME ground rules. Plaintiff's attempt to characterize such materials as proprietary or confidential only reinforces the lack of a factual basis for its claims. Information that is publicly available and widely reflected in industry practice cannot support allegations of trade secret misuse or justify the extraordinary relief Plaintiff previously obtained.

Finally, as the Court knows we do not have copies of the do's and don't email because Plaintiff claims it contains confidential and proprietary information. That is an absurd position. By definition, the email was sent by Safa Gelardi **to Mr. Purificati**, among others. If it were genuine, Mr. Purificati would already have it or could search his emails and find it. We believe that further scrutinization and investigation of the email would result in similar results as our investigation into the Morgan and Morgan IME observation (as described below). That is why they did not provide it in advance of the hearing, and why they do not provide it now.

4

**Zemsky and Bergman**

Further evidence of Plaintiff's wrongful conduct is demonstrated by what is conspicuously omitted from Plaintiff's opposition papers to this motion. One of the few actual specific or identifiable allegations against Direct or Mr. Purificati in Plaintiff's motion papers is their claim that Mr. Purificati performed observations for the Zemsky and Bergman law firms. As the Court will recall, Mr. Purificati testified that those firms contacted him, and not the other way around. Plaintiff had no impeachment evidence to contradict Mr. Purificati.

But now, mention of the Zemsky and Bergman observations is omitted from Plaintiff's opposition papers to this motion. In that light, it is eminently clear that the Plaintiff never had any evidence of wrongdoing by Direct or Mr. Purificati in the first place. As the Court noted, "there is no *there* there."

**The June 13, 2025 Morgan and Morgan Observation**

We have already responded in detail in previous Court submissions to the "irregular" circumstances surrounding this IME observation. These circumstances suggest that the Plaintiff performed this observation, knew Mr. Purificati's name on the IME report to be erroneous, and submitted it to the Court anyway. To avoid repetition, we hereby refer to and incorporate by reference Docket #'s 655 and 655-1.

<u>**CONCLUSION**</u>

For the foregoing reasons, Direct respectfully requests that the Court grant its motion for attorneys' fees.

Dated: April 1, 2026
         New York, NY                        Respectfully submitted,

                                             LAW OFFICES OF
                                             JARED M. LEFKOWITZ

                                             By _*jared lefkowitz*_
                                                Jared M. Lefkowitz

5