**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

IME WATCHDOG, INC.,

Plaintiff,

v.

SAFA GELARDI, VITO GELARDI, et al.,

Defendants.

---------------------------------------------------------X

**Case No. 1:22-cv-01032 (PKC) (JRC)**

**DEFENDANTS' REVISED MOTION UNDER FED. R. CIV. P. 54(b) AND LOCAL CIVIL RULE 6.3**
**FOR RECONSIDERATION OR RENEWAL OF THE APRIL 10, 2026 ORDER DENYING LEAVE TO**
**SERVE A LIMITED RULE 45 SUBPOENA ON MORGAN & MORGAN AS "UNNECESSARY";**
**OR, IN THE ALTERNATIVE, FOR AN INDICATIVE RULING UNDER RULE 62.1, TOGETHER**
**WITH LIMITED RULE 45 DISCOVERY, PRESERVATION, AND CLARIFYING RELIEF**

Defendants Safa Gelardi and Vito Gelardi, appearing pro se, respectfully move under Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3 for reconsideration or renewal of the Court's April 10, 2026 order denying Defendants leave to serve a limited Rule 45 subpoena on Morgan & Morgan as "unnecessary." In the alternative, if the pending appeal limits the Court's authority to grant this relief directly, Defendants respectfully request an indicative ruling under Rule 62.1 that the motion raises a substantial issue or that the Court would grant the requested limited relief on remand.

This motion seeks only narrow, nonprivileged third-party business records sufficient to determine what objectively occurred in connection with the June 13, 2025 IME of Jeannie Tam. Defendants do not seek broad reopening, privileged material, or merits-wide discovery. They seek only the underlying third-party records that can answer a discrete question the Court has already held the present record does not answer: who Morgan & Morgan actually retained, assigned, confirmed, paid, expected to appear, or recorded as appearing for that June 13, 2025 IME.

**PRELIMINARY STATEMENT**

On April 10, 2026, the Court denied Plaintiff's request for further contempt. In doing so, the Court held that Plaintiff failed to prove further contempt by clear and convincing evidence and specifically concluded that the June 2025 Morgan & Morgan material did not establish

Defendants' involvement. The Court further noted that Plaintiff had not even introduced the underlying document into evidence at the hearing.

That ruling made one point unavoidable: the present record does not establish what Plaintiff said it established. Yet the same order denied Defendants' request for narrow Rule 45 discovery from Morgan & Morgan as "unnecessary." Respectfully, once the Court has held that the existing June 2025 Morgan & Morgan material does not establish Defendants' involvement, limited third-party discovery becomes more necessary, not less.

This issue is objectively verifiable. Defendants seek only records sufficient to show who Morgan & Morgan retained, who was assigned or substituted, whether any invoice issued or payment was made, and who was expected to appear or who actually appeared. The truth of the June 13, 2025 episode is not a matter of speculation or sweeping discovery. It is capable of resolution through ordinary business records.

The need for those records is heightened by the way Plaintiff chose to present the issue. Plaintiff did not present the June 13 attribution through Morgan & Morgan's own records, a declaration from Nicholas Gerschman, or a neutral custodian affidavit. Instead, Plaintiff routed disputed facts through Carlos Roa. Plaintiff first obtained the February 2026 OSC/TRO based on Roa's affidavit, then later used Roa again in a March 23, 2026 supplemental declaration to press the June 13 attribution. In that later declaration, Roa identified himself as a "judgment creditor," yet simultaneously claimed familiarity through "review of the file maintained at IME WatchDog." Plaintiff's own public materials, however, identified Roa as "President, Operations," i.e., an operational insider, not a detached outsider.

That contradiction matters because the June 13 issue is an operations question, not a public-record abstraction. Someone at IME WatchDog had to receive the booking request, route or assign the coverage, confirm attendance, generate billing, and record who was expected to appear or who actually appeared. Plaintiff's own public-facing materials represented that law firms could book a WatchDog through centralized booking emails or directly through the website. This was therefore an internal intake-and-assignment event inside Plaintiff's own business process.

Jared Lefkowitz separately reported that Nicholas Gerschman advised Morgan & Morgan uses IME WatchDog for IME observations and identified a prior Morgan & Morgan IME report in which IME WatchDog was expressly named as the observer. He also described the June 13 episode as an "irregularity" requiring objective testing. Yet Plaintiff never directly answered that point with a sworn denial from Morgan & Morgan, a declaration from Gerschman, a custodian affidavit, or the underlying Morgan & Morgan business records. If Plaintiff wished to say that WD had no booking, no assignment, no confirmation, no invoice, and no payment record for that IME, a short sworn no-record declaration from the obvious source would have been simpler than silence.

The asymmetry matters. Defendants were never permitted to depose Adam Rosenblatt, the central declarant whose assertions anchored Plaintiff's broader narrative. Defendants now seek only narrow third-party records concerning a separate, objectively verifiable event. If this request is denied even after the Court has held the current proof insufficient, the practical result is that a concededly unproven attribution remains insulated from objective testing while appellate review proceeds on an unevenly tested record.

The Court need not accept Defendants' version or Plaintiff's version on faith. It need only permit the narrow Rule 45 subpoena that allows the June 13 operational facts to be tested by the party most likely to possess neutral records: Morgan & Morgan.

**BACKGROUND**

At the March 3, 2026 hearing, Plaintiff pressed a June 13, 2025 IME theory involving Morgan & Morgan and Mark Purificati. Defendants denied receiving any request for that IME, denied retaining or assigning Mark Purificati for that IME, and denied being paid for that IME. Defendants promptly requested that Plaintiff provide the specific source document referenced at the hearing, both on March 3 and March 4, 2026, but Plaintiff did not produce it.

The Court's March 1 and March 2, 2026 docket orders required exchange of hearing exhibits, except exhibits offered only for impeachment, and expressly stated that admission of impeachment exhibits was not guaranteed and would be limited to that purpose. Thus, even if Plaintiff attempted to deploy June 13 material as impeachment, that did not convert the material into admitted substantive proof of Defendants' involvement.

The March 3, 2026 minute entry reflects that, after the hearing, the Court lifted the TRO, denied the motion for a preliminary injunction, reserved decision on contempt, granted Plaintiff a 90-day extension to move for default judgment, and granted Plaintiff leave to move to compel production of records.

That procedural history matters. Plaintiff represented that it needed additional time and additional records before seeking final relief, yet later continued to rely on the June 13 attribution without first obtaining the Morgan & Morgan records that would objectively confirm or refute it.

In the March 29, 2026 subpoena request, Defendants identified the exact IME, the exact date, the exact Morgan & Morgan attorney, the exact report naming Mark Purificati, the D & D rescheduling letter tying Morgan & Morgan to the IME, and Jared Lefkowitz's affirmation reporting that Nicholas Gerschman advised Morgan & Morgan uses IME WatchDog for IME observations.

That same March 29 filing attached Plaintiff's own public webpage identifying Carlos Roa as "President, Operations." The same public materials explained that bookings could be made through Plaintiff's booking emails or through Plaintiff's website.

On March 23, 2026, Plaintiff filed a supplemental declaration from Carlos Roa. In that declaration, Roa identified himself as a "judgment creditor," claimed familiarity through "review

of the file maintained at IME WatchDog," pointed the Court to a public NYSCEF entry, and doubled down on the accusation by asserting that the June 13 material was sufficient to demonstrate—or at least support an inference of—active concert by Defendants.

On April 1, 2026, Jared Lefkowitz expressly accused Plaintiff of knowingly and intentionally submitting false or misleading papers to the Court and argued that Plaintiff had used the June 13, 2025 Morgan & Morgan observation despite what he described as an "irregularity" serious enough to warrant further action if the matter continued.

On April 10, 2026, the Court denied Plaintiff's further contempt request, held that Plaintiff failed to prove further contempt by clear and convincing evidence, concluded that the June 2025 Morgan & Morgan material did not establish Defendants' involvement, and noted that Plaintiff had not introduced the document into evidence at the hearing.

The same April 10, 2026 order denied Defendants' request for leave to subpoena Morgan & Morgan as "unnecessary."

**LEGAL STANDARD**

Rule 54(b) provides that any order or other decision adjudicating fewer than all claims or the rights and liabilities of fewer than all parties may be revised at any time before entry of final judgment as to all claims and parties. A motion for reconsideration is strict, but it is appropriate where the movant identifies controlling law or material facts the Court overlooked that might reasonably alter the result. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Rule 45 authorizes a subpoena directing a nonparty to produce documents in that nonparty's possession, custody, or control. A document subpoena does not require an in-person appearance unless the subpoena separately commands one, and the Rule already protects nonparties against undue burden and significant expense. Fed. R. Civ. P. 45(d)(2)(A), (d)(2)(B)(ii), (d)(3).

In the Second Circuit, discovery requests directed to sensitive or potentially burdensome sources are evaluated through a flexible, fact-specific inquiry that considers need, role, privilege concerns, and the extent of discovery already conducted. In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 71-72 (2d Cir. 2003).

Procedural due process requires a meaningful opportunity to be heard at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Where additional, low-burden safeguards have substantial value in reducing the risk of error, that value matters in assessing what process is due. See Mathews, 424 U.S. at 335.

Bias and interest are proper subjects of evidentiary scrutiny. Proof tending to show bias is almost always relevant because it bears on the accuracy and truth of the witness's account. United States v. Abel, 469 U.S. 45, 51-52 (1984).

**ARGUMENT**

## I. THE COURT'S APRIL 10 ORDER CONFIRMS THAT THE PRESENT JUNE 2025 MATERIAL IS INSUFFICIENT, MAKING NARROW THIRD-PARTY DISCOVERY MORE NECESSARY, NOT LESS.

The Court has already made the decisive starting-point finding for this motion: the June 2025 Morgan & Morgan material did not establish Defendants' involvement. The Court also noted that Plaintiff had not even introduced the underlying document into evidence at the hearing.

That is not a finding that the June 13, 2025 issue has been resolved. It is the opposite. It confirms that the existing proof is insufficient. Once the Court has reached that conclusion, limited third-party discovery aimed at objectively verifying what occurred becomes more necessary, not less.

Defendants are not seeking broad discovery into every allegation in the case. They seek only records sufficient to determine whether Morgan & Morgan requested observer, companion, watchdog, or similar coverage for June 13, 2025; who was contacted, retained, assigned, confirmed, substituted, or replaced for that coverage; whether any invoice was issued or payment made, and to whom; and what nonprivileged record shows who was expected to appear or who actually appeared.

That is narrow, objective, and document-based. It goes directly to a factual attribution the Court has already found unproven on the present record.

The Court has already held that the present June 2025 Morgan & Morgan material does not establish Defendants' involvement. Defendants seek only the narrow third-party records that can resolve that attribution objectively. Denial of this request would therefore not rest on any finding that the issue is resolved, privileged, or irrelevant. It would leave an acknowledgedly unproven attribution beyond objective testing while appellate review proceeds on a record already shaped by asymmetrical fact development.

## II. PLAINTIFF'S OWN PRESENTATION OF THE JUNE 13 ISSUE UNDERSCORES WHY THE UNDERLYING MORGAN & MORGAN RECORDS ARE NECESSARY.

Plaintiff did not merely cite Roa once in passing. Plaintiff obtained the February 2026 OSC/TRO upon Roa's affidavit. Plaintiff then used Roa again in March 2026 to advance the June 13 attribution. Plaintiff repeatedly chose to route disputed facts through Roa.

That repetition matters because Roa did not present himself as a straightforward operational witness. In the March 23 declaration, he identified himself as a "judgment creditor" while simultaneously claiming familiarity through review of "the file maintained at IME WatchDog." Yet Plaintiff's own public materials identified him as "President, Operations." Those are not the markers of a detached outsider summarizing a neutral public record. They describe an interested operational insider speaking from the very lane of internal knowledge that Defendants seek to test.

The June 13, 2025 episode is an operational event. Someone at IME WatchDog had to receive the request, route or assign the coverage, confirm attendance, generate whatever billing or payment trail followed, and record who was expected to appear or who actually appeared.

Plaintiff's own public-facing materials represented that law firms could book a WatchDog through centralized booking emails or directly through the website. The dispute is therefore not merely whether a public document exists. The real question is what the internal booking-and-assignment records would show.

The identity of the observer is not a trivial clerical detail. Plaintiff's own public materials explain that the WatchDog who attended the examination may later prepare an affidavit and may testify at trial. The June 13 material named Mark Purificati as the accompanying legal representative, yet Mark states he did not perform that observation. If that discrepancy is left untested, the wrong person could be treated as the fact witness for an examination he says he never witnessed. That also means someone necessarily attended, someone necessarily generated the observer-side report or other attendance information sent back to Morgan & Morgan, and someone necessarily identified himself or herself to the claimant and physician's office. The claimant herself, Jeannie Tam, would be a percipient witness as to who accompanied her and how that person identified himself or herself. This is not the sort of discrepancy the Court should treat as immaterial without testing.

The record separately shows Adam Rosenblatt handling IME WatchDog client-list material as early as 2017. At minimum, that fact reinforces that Plaintiff's client-side and operational functions were handled through identified insiders rather than detached public sources. It further supports Defendants' point that the June 13 issue was an internal operational event requiring records, not a matter to be resolved by inference alone.

Jared Lefkowitz reported that Nicholas Gerschman advised Morgan & Morgan uses IME WatchDog for IME observations. Jared also identified a prior Morgan & Morgan IME report expressly naming IME WatchDog as the observer. He described the June 13 episode as an "irregularity" requiring objective testing.

If Plaintiff wished to dispute that point, Morgan & Morgan was the obvious source of the denial. Given Plaintiff's own public representation that bookings occurred through Plaintiff's booking emails or through Plaintiff's website, Plaintiff also could have answered the June 13 issue cleanly and directly with a short declaration from Morgan & Morgan, Nicholas Gerschman, or a WD records custodian stating that WD had no booking request, no website booking, no assignment, no confirmation, no invoice, and no payment record for that IME. Plaintiff did none of those things. Instead, Plaintiff continued to rely on Roa's declaration and a public NYSCEF citation.

That silence from the most direct source matters. Plaintiff did not meaningfully answer the subpoena request or Jared's allegations with the one kind of proof that would have resolved the matter cleanly: a sworn denial from Morgan & Morgan, Nicholas Gerschman, or a WD records custodian. Plaintiff chose not to resolve an operational booking-and-assignment dispute with operational records. It chose instead to filter that dispute through an interested declarant. Where a party declines to stand behind a factual attribution through neutral records and instead advances

it through an interested operational insider, limited third-party discovery is the minimum process required to test reliability.

That omission fits a broader pattern in this record: where a simple source record would clarify the issue, Plaintiff has not relied on the clearest business records available. A straightforward profit-and-loss statement shows economic reality at a glance in a way sprawling sales-by-customer compilations without expense, payroll, or net-loss context do not. So too here: the cleanest answer is not narrative layering through an interested declarant, but the underlying booking, assignment, invoice, payment, and report-transmission records.

## III. THE REQUESTED SUBPOENA IS NARROW, NONPRIVILEGED, AND LOW-BURDEN UNDER RULE 45.

This motion does not ask for attorney mental impressions, litigation strategy, or broad merits discovery. It seeks only routine business records for a single IME on a single date. That request is proportional by any measure.

Rule 45 already supplies the tools needed to protect Morgan & Morgan. The subpoena need only call for document production. No in-person appearance is required. Any arguable confidentiality concern can be addressed through redaction, a protective order, or production of documents sufficient to show the requested facts. Fed. R. Civ. P. 45(d)(2), (d)(3).

Under Dennis Friedman, the Court should evaluate this request through a flexible inquiry that considers need, role, privilege concerns, and the extent of discovery already conducted. Here, each factor favors allowing the subpoena. The need is high because the Court has already held the current proof insufficient. The role of the nonparty is direct because Morgan & Morgan is the booking source for the disputed June 13 IME. Privilege concerns are avoidable because Defendants seek only nonprivileged business records. And the extent of discovery already conducted favors this narrow request because, despite years of litigation and Plaintiff's repeated use of the June 13 attribution, the one source most capable of resolving it objectively has never been required to produce its records.

Measured against Rule 45's burden standard, this request is modest. Measured against the importance of the issue, it is indispensable.

## IV. DENIAL WOULD LEAVE AN UNPROVEN ATTRIBUTION INSULATED FROM OBJECTIVE TESTING AND WOULD SHARPEN THE DUE-PROCESS PROBLEM.

This motion does not ask the Court to presume fraud. It asks only that a concrete attribution be tested by the most objective evidence available.

The Court need not accept Defendants' view or Plaintiff's view on faith. The Court has already held that Plaintiff's existing June 2025 Morgan & Morgan material did not establish Defendants' involvement. At that point, the process question becomes straightforward: whether Defendants will be allowed to test that still-unproven attribution through narrow third-party records, or whether the attribution will remain in the factual narrative without the one set of neutral records most capable of confirming or disproving it.

Armstrong teaches that a meaningful opportunity to be heard requires more than a nominal chance to speak after an adverse account has already been lodged. 380 U.S. at 552. Mathews recognizes that the value of additional safeguards matters, especially where the risk of error is real and the added procedure is modest. 424 U.S. at 335. Here, the requested safeguard is exceptionally modest and its likely value is exceptionally high: Morgan & Morgan's ordinary business records can resolve a specific operational event that the present record does not resolve.

Abel makes clear that bias is almost always relevant. 469 U.S. at 51-52. That matters here because Plaintiff did not present the June 13 issue through a neutral source; Plaintiff presented it through a declarant who simultaneously styled himself as a "judgment creditor" and was publicly identified by Plaintiff as "President, Operations." When the intermediary is an interested operational insider, the need for neutral source records increases, not decreases.

If such limited discovery is denied even after the Court has held the current proof insufficient, the result is that an unproven attribution remains insulated from objective testing despite its continuing significance to the factual narrative used against Defendants. That is the due-process problem. The Court need not resolve that problem in Defendants' favor on the merits. It need only permit the modest process needed to test the attribution fairly.

## V. AT MINIMUM, PRESERVATION AND CLARIFYING RELIEF ARE WARRANTED.

If the Court grants the requested discovery, Defendants respectfully request a preservation directive requiring Morgan & Morgan to preserve all nonprivileged records relating to the June 13, 2025 IME pending compliance.

If the Court denies the requested subpoena, Defendants respectfully request clarifying relief so the record accurately reflects what that denial does—and does not—decide. Specifically, Defendants request that the Court clarify that any denial is not a finding that the June 13, 2025 attribution was accurate; not a finding that Morgan & Morgan retained Defendants or Mark Purificati for that IME; not a finding that the naming of Mark Purificati on the June 13 material was immaterial; not a finding that Carlos Roa was a detached witness to the June 13 episode; and not a finding that the requested Morgan & Morgan records are privileged, irrelevant, or disproven.

That clarification matters because, absent it, denial risks being misunderstood as a merits endorsement of an attribution the Court has already found unproven on the present record. If the subpoena is denied, the record should reflect that denial leaves the June 13 issue unresolved rather than resolved.

## VI. IN THE ALTERNATIVE, THE COURT SHOULD ISSUE AN INDICATIVE RULING UNDER RULE 62.1.

If the Court concludes that the pending appeal limits its authority to grant this motion directly, the Court should issue an indicative ruling under Rule 62.1 that the motion raises a substantial issue or that the Court would grant the requested limited discovery and preservation on remand.

At minimum, this motion raises a substantial issue because the Court has already held that the current June 2025 Morgan & Morgan material does not establish Defendants' involvement, and the truth of that episode is objectively verifiable through narrow third-party records.

**REQUESTED DISCOVERY**

Defendants respectfully request leave to serve a limited Rule 45 subpoena on Morgan & Morgan seeking only nonprivileged documents sufficient to show:

1. whether Morgan & Morgan requested observer, companion, watchdog, or similar IME coverage for June 13, 2025;

2. the identity of any company or person contacted, retained, assigned, confirmed, canceled, substituted, or replaced for such coverage;

3. the date of any such request, confirmation, cancellation, reassignment, substitution, or replacement;

4. whether any invoice was issued or payment made for such coverage, including the identity of the payee;

5. any nonprivileged document sufficient to show transmission or confirmation of the assignment for such coverage, including any observer-side report, attendance record, or other communication transmitted back to Morgan & Morgan; and

6. any nonprivileged document sufficient to identify the person expected to appear, who actually appeared, or how that person was identified to the claimant, physician, or law firm.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court:

1. grant reconsideration or renewal and authorize Defendants to serve the requested limited Rule 45 subpoena on Morgan & Morgan;

2. direct preservation of all nonprivileged Morgan & Morgan records relating to the June 13, 2025 IME pending further order;

3. in the alternative, issue an indicative ruling under Rule 62.1 that the motion raises a substantial issue or that the Court would grant the requested relief on remand;

4. if the Court denies the requested subpoena, clarify that the denial is not a finding that the June 13 attribution was accurate, not a finding that Morgan & Morgan retained Defendants or Mark Purificati, not a finding that Carlos Roa was a detached witness to the June 13 episode, and not a finding that the requested records are privileged, irrelevant, or disproven; and

5. grant such other and further relief as the Court deems just and proper.


Dated: April 11, 2026
Respectfully submitted,

/s/ Safa Gelardi
Safa Gelardi, pro se

/s/ Vito Gelardi
Vito Gelardi, pro se